Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:        amcdow@bakerlaw.com
              mdelaney@bakerlaw.com
              ffarivar@bakerlaw.com

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No.: 2016-10015 FEC<br><br>Chapter 9<br><br>Doc. No.: BH-16<br><br>**MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date:     March 22, 2017<br>Time:    1:30 p.m.<br>Place:   Dept. A, Ctrm. 11<br>          U.S. Bankruptcy Court<br>          2500 Tulare Street<br>          Fresno, CA 93721 |

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Southern Inyo Healthcare District (the "Debtor" and/or "SIHD"), the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"), hereby moves pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9019 for entry of an order approving the settlement and mutual release agreement (the "Agreement") by and between the Debtor and EverBank Commercial Finance, Inc. ("EverBank," and collectively with the Debtor, the "Parties").

In sum, by and through the Agreement, subject to Court approval, the Debtor has agreed to pay EverBank the sum of One Hundred Fifty Thousand Dollars ($150,000.00) (the "DPO Payment") in exchange for the transfer and/or release, as applicable, of any and all right(s), title and interest Everbank has in various medical equipment, including, the GE Optima CT660, the 2001 LANDC Trailer, and the VITROS 350 Chemistry System (collectively, the "Equipment"), to the Debtor, on an "as is, where is" basis. The Agreement also provides for mutual general releases of any and all claims by and between the Parties, including, but not limited to, those claims reflected in proof of claim no. 43-1 filed by Everbank in the Bankruptcy Case (collectively, the "Claim")

The Debtor believes that the compromise set forth in the Agreement is fair and reasonable and provides a substantial benefit to the Debtor and its creditors.

## II. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2) and venue is proper in this district pursuant to 28 U.S.C. § 1408.

Pursuant to 11 U.S.C. § 904, the Debtor consents to judicial review of the Agreement for purposes of adjudicating the Motion.

## III. STATEMENT OF FACTS

1.  The Debtor is a California healthcare district formed under the California Local Health Care District Law, Cal. Health & Safety Code § 3200, *et seq*. The Debtor operates the

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

1  Southern Inyo Hospital as well as the related skilled nursing facility and rural medical clinic in
2  Inyo County, California.

3        **A.**      **The EverBank Agreement Between the Parties**

4        2.      On or about November 13, 2012, SIHD and General Electric Capital Corporation
5  ("GE") entered into the Master EverBank Agreement Dated as of 11/13/2012 (the "Master
6  Agreement"). Thereafter, on or about October 30, 2014, SIHD and GE executed the Equipment
7  Schedule Dated as of 10/30/2014 to Master EverBank Agreement Dated as of 11/13/2012 (the
8  "Schedule"). In or about March 2015, the Schedule was amended pursuant to the Amendment to
9  Equipment Schedule Dated as of 10/30/2014 to Master EverBank Agreement Dated as of
10 11/13/2012 (the "Amendment" and, collectively with the Master Agreement and Schedule, the
11 "EverBank Agreement") to include the 2001 LANDC Trailer and VITROS 350 Chemistry
12 System within the scope of the EverBank Agreement.

13       3.      On or about November 3, 2014, a UCC Financing Statement (the "UCC-1")
14 asserting a security interest in the equipment identified in the Schedule was recorded—namely:

> One (1) GE HEALTHCARE GE Optima CT660 System Internal Order Ref. # 4214812 together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing property, and (v) all insurance and/or other proceeds of any type of the foregoing property.

      4.      On or about February 24, 2015, a UCC Financing Statement Amendment (the
"Amended UCC-1") was recorded, which purportedly amended the UCC-1. Through the
Amended UCC-1, GE asserted a security interest in the Equipment, which is identified therein as
follows:

> One (1) GE HEALTHCARE Optima CT660 System Internal Order Ref. # 4214812 and One (1) Fisher Healthcare Vitros 350 Chemistry System and One (1) GE HEALTHCARE Mobile CT Scanner System VIN 1LH142RH211011850 together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing property, and (v) all insurance and/or other proceeds of any type of the foregoing property.

- 3 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5. The Certificate of Title for the 2001 LANDC Trailer identifies GE as a lienholder on the 2001 LANDC Trailer ("Certificate of Title"). The rights and interests asserted under the UCC-1, Amended UCC-1, and Certificate of Title may be referred to herein collectively the "Security Interest".

6. EverBank contends that in or about March 2015, GE assigned its rights and interests under the EverBank Agreement, UCC-1, and Amended UCC-1 to EverBank.

7. On or about August 14, 2015, GE sent a Notice of Assignment of Account No. xxx7-001 to the Debtor. Therein, GE stated that "GE has assigned to Ever Bank [sic] … all right, title, interest and obligations (arising from and after the date of the assignment) of GE in and to the Assigned Account, the equipment and collateral described in the Assigned Account…."

**B.      The Bankruptcy Case**

8. On or about January 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code"). On or about June 29, 2016, the Court held a hearing to consider the eligibility of the Debtor to file under chapter 9 of the Bankruptcy Code. During the hearing, the Court concluded that the Debtor qualified as a debtor under chapter 9 of the Bankruptcy Code. On or about July 12, 2016, the Court entered the order confirming the foregoing.

9. On or about August 16, 2016, the Court entered the *Order Granting Motion to Set Claims Bar Date pursuant to FRBP 3003(c)(3)* (the "Bar Date Order") [Dkt. No. 216], setting September 30, 2016 as the deadline to file a proof of claim for all entities holding or wishing to assert a claim that arose prior to the Petition Date against the Debtor.

10. On or about June 7, 2016, EverBank filed a motion for relief from stay in the Bankruptcy Case with respect to the Equipment (the "RFS Motion"). On or about July 8, 2016, the Debtor filed an opposition to the RFS Motion. On July 21, 2016, the RFS Motion came on for hearing. During the hearing, the Bankruptcy Court granted the RFS Motion in part and denied the RFS Motion in part, and entered an order to this effect on or about September 8, 2016. The Court also set August 22, 2016, as the deadline for the Debtor to assume or reject the EverBank

- 4 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Agreement. The Debtor did not assume the EverBank Agreement on or before the deadline and,
2  as such, the EverBank Agreement was deemed rejected (the "Rejection").

3    11.   On or about September 27, 2016, EverBank filed the Claim. By and through the
4  Claim, EverBank asserted a claim against the Debtor totaling "[n]ot less than $602,845.62"—the
5  purported amount due and owing under the EverBank Agreement (assuming acceleration of the
6  payment requireds thereunder).

**C.   The Agreement**

Subject to the Court entering a final order[1] approving the Motion, the Parties desire to fully and forever resolve any and all disputes by and between the Parties. A true and correct copy of the Agreement is appended to the contemporaneously-filed Declaration of Alan Germany as **Exhibit A** and incorporated herein by reference. The salient terms of the Agreement are as follows:

1. **DISCOUNTED PAY-OFF.** In full and complete satisfaction of all amounts owing to EverBank under or in relation to the EverBank Agreement, the Debtor shall pay EverBank the sum of One Hundred Fifty Thousand Dollars ($150,000.00) (i.e., the DPO Payment). The DPO Payment shall be made in a single lump sum payment and shall be due no later than thirty (30) days after the Effective Date.[2] Upon payment of the DPO Payment, any and all security interests asserted by EverBank in the Equipment, including, without limitation, the Security Interest, shall be void and unenforceable;

2. **TRANSFER OF TITLE OF EQUIPMENT/SECURITY INTEREST TERMINATION.** No later than five (5) business days after receipt of the DPO Payment, EverBank shall: (a) transfer any and all of its right, title and interest in the Equipment, including, most notably, the GE Optima CT660, the 2001 LANDC Trailer, and VITROS 350 Chemistry System, to the Debtor, on an "as is, where is" basis, (b) file UCC termination statement(s) with the California Secretary of State terminating any and all UCC Financing Statements through which EverBank claims a security interest in any or all of the Equipment, and (c) cause the release of the lien shown on the Certificate of Title.

---

[1] Pursuant to the Agreement, an order shall be deemed a "Final Order" fifteen (15) calendar days after its entry *provided that* (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered. A notice of appeal shall be deemed timely if filed within the time allotted under Rule 8002 of FRBP.

[2] The Effective Date is the date on which the order approving the Agreement without material modification becomes a Final Order.

- 5 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

3. **WITHDRAWAL OF THE CLAIM.** Upon payment of the DPO Payment, the Claim shall be deemed satisfied in its entirety. No later than ten (10) calendar days after receipt of the DPO Payment, EverBank shall withdraw the Claim. Except in the case of an uncured breach of the Agreement, EverBank shall not assert any claims against the Debtor in the course of the Bankruptcy Case, including, without limitation, any administrative claims for the use of the Equipment following the Petition Date. Any claims asserted against the Debtor in violation of the preceding sentence shall be void *ab initio* and unenforceable.

4. **PLAN TREATMENT.** The plan for the adjustment of the Debtor's debts (the "Plan") shall not include any treatment for the Claim or the payment of any sums to EverBank. If the Debtor pays the DPO Payment in accordance with the terms of this Agreement, EverBank shall not take any actions adverse to the confirmation of the Plan or approval of the associated disclosure statement.

The Agreement further provides that the Parties shall receive reciprocal releases.

## IV. ARGUMENT

### A. Notice of the Motion Is Proper.

FRBP 2002(a)(3) and LBR 9014-1(f)(2) govern the notice requirements for approval of motions. In the case at bar, a notice of motion, which complies with the requirements set forth in both FRBP 2002(a)(3) and LBR 9014-1(f)(2), will be served upon all necessary parties simultaneously with this Motion. Accordingly, the Debtor respectfully requests that the Court find that notice of the Motion is sufficient and proper.

### B. The Compromise Should Be Approved.

FRBP 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FRBP 9019(a).

11 U.S.C. § 904 provides:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with –
> (1) any of the political or governmental powers of the debtor;
> (2) any of the property or revenues of the debtor; or
> (3) the debtor's use or enjoyment of any income producing property.

11 U.S.C. § 904.

While 11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to

- 6 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

follow the FRBP 9019 compromise-approval procedure, the debtor may need to account for prior compromises during plan confirmation proceedings.  See In re City of Stockton, Case No. 12-32118-C-9, *Opinion Regarding Applicability of Federal Rule of Bankruptcy Procedure 9019* issued for publication (Bankr. E.D. Cal. 2013) (the "Opinion").  As stated in the Opinion,

> The language of § 904 provides that the debtor may consent to judicial interference: "unless the debtor consents or the plan so provides, the court may not, ..., interfere with – ... (2) any of the property or revenues of the debtor." 11 U.S.C. § 904.
>
> When a chapter 9 debtor files a Rule 9019 motion to have the court approve a compromise or settlement, the municipality "consents" for purposes of § 904 to judicial interference with the property or revenues of the debtor needed to accomplish the proposed transaction. 11 U.S.C. § 904.
>
> …
> If, for any reason, a chapter 9 debtor decides that its interests would be served by consenting to submit to a judicial approval under bankruptcy settlement-review standards, it is free to make that § 904 consent in the form of filing a Rule 9019 motion or by including such a review as a plan provision. 11 U.S.C. § 904.

The Opinion, p.11:10-16.  Accordingly, the Debtor submits the Motion for the consideration of the Court and consent to its adjudication thereof.

The Agreement satisfies the requirements of FRBP 9019.  A bankruptcy court should approve a compromise if it was negotiated in good faith, is fair and equitable, reasonable, and in the best interests of the estate.  *See e.g., Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) ("[t]his court need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable') (citation omitted); *In re Guy F. Atkinson Co. of Cal.*, 242 B.R. 497, 502 (B.A.P. 9th Cir. 1999) ("[a]t its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate. The trustee and debtor in possession, as fiduciaries on behalf of the creditors of the estate, have the obligation and are in the best position to negotiate settlements that will best serve the interests of all creditors").

In the Ninth Circuit, the factors to be considered in determining whether to approve a compromise are "(a) the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A&C Properties*, 784 F.2d at 1381 (citation omitted); *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-245 (1968).  "It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas and Elec. Co.*, 304 B.R. at 417, *citing In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002).

In evaluating the *AC Properties* factors, courts give deference to the debtor's business judgment and solely endeavor to determine whether the proposed settlement falls below the lowest point in the range of reasonableness.  *See In re Pacific Gas and Elec. Co.*, 304 B.R. at 417. As the *Walsh Construction, Inc.* court stated:

> [t]he bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim.... It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is "doubtful."

*U.S. v. Alaska National Bank of the North, et al. (In the Matter of Walsh Construction, Inc.)*, 669 F.2d 1325, 1328-29 (9th Cir. 1982).  An analysis of the foregoing factors demonstrates that the terms of the Agreement are fair and equitable, and well within the range of reasonableness.

### 1. *Probability of Success*

The disputes regarding the nature, validity, and amount of the Claim would likely involve extensive law and motion practice, as well as one or more evidentiary hearings.  While the Debtor believes that its positions vis-à-vis the Claim are meritorious, this process is inherently uncertain. The proposed settlement removes the risks, provides certainty for the Debtor and EverBank, and avoids the inevitable costs and expenses associated with law and motion practice – especially

- 8 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

with respect to the nature, validity, and amount of a claim in excess of $600,000.  For these reasons, the Debtor respectfully submits its likelihood of success factor weighs in favor of approving the Agreement.

### 2. Any Impediments to Collection

As the Debtor is not seeking to recover funds from EverBank under the Agreement, this factor is inapplicable.  Nonetheless, to the extent it is considered, the Debtor respectfully submits that this factor weighs in favor of approving the Agreement.

### 3. The Complexity, Expense, Inconvenience and Delay of Litigation

Although the resolution of the issues relating to the Claim are not exceptionally complex, the attendant time and fees that would be expended to have those issues adjudicated would not only be inconvenient and significant, but would likely delay confirmation of the Plan unnecessarily.  This is particularly so when the result obtained by and through the Agreement is far better than that likely to be obtained if the Debtor proceeded with the adjudication of the Claim.

Based on the foregoing, the Debtor respectfully submits that this factor also weighs in favor of approving the Agreement.

### 4. Interests of Creditors

The Agreement serves the best interests of creditors by providing certainty and finality to the disputes between the Parties, and avoiding the costs associated with extensive law and motion practice.  In addition to avoiding the attendant administrative expenses, the withdrawal of the Claim directly increases the amount of funds available for distribution to creditors and eliminates what would otherwise be a significant monthly payment to EverBank for the use of the Equipment.

### 5. Additional Considerations

In addition to the *A&C Properties* factors, additional considerations also support the approval of the Agreement.  Particularly, the Agreement was extensively negotiated between the Parties and through competent counsel.  *See Air Line Pilots Ass'n. Int'l v. Nat'l Bank & Trust of*

- 9 -

MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610456215.1

*Chicago Ionosphere Clubs, Inc.)*, 156 B.R. 414,426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (participation by sophisticated parties and counsel, and arms' length bargaining also weigh in favor of approving a settlement.). Furthermore, the Agreement does not detrimentally affect the rights of any parties; indeed, the resolution of the disputes with EverBank pursuant to the Agreement (as discussed above) is beneficial to the Debtor and its creditors.

## V.    CONCLUSION

Based on the foregoing, the Debtor respectfully submits that the resolution provided for in the Agreement is well above the "the lowest point in the range of reasonableness" and, thus, should be approved. *In re Pacific Gas and Elec. Co.*, 304 B.R. at 417. Accordingly, the Debtor respectfully requests that the Court enter an order:

(1) Granting the Motion in its entirety;

(2) Finding that the notice of the Motion was proper;

(3) Approving the Agreement pursuant to FRBP 9019;

(4) Authorizing the Parties to enter into and take all efforts reasonably necessary to effectuate the Agreement;

(5) Authorizing the Debtor to make the DPO Payment as set forth in the Agreement; and

(6) Granting any further or additional relief deemed warranted by the Court.

Dated:    March 7, 2017          Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    /s/ *Ashley M. McDow*
       Ashley M. McDow

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT