Ashley M. McDow (245114)
Michael T. Delaney ( 261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:   310.820.8800
Facsimile:    310.820.8859
Email:         amcdow@bakerlaw.com
                    mdelaney@bakerlaw.com
                    ffarivar@bakerlaw.com

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No.: 2016-10015 FEC<br><br>Chapter 9<br><br>Doc. No.: BH-16<br><br>**DECLARATION OF ALAN GERMANY IN SUPPORT OF MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>Hearing:<br>Date:    March 22, 2017<br>Time:   1:30 p.m.<br>Place:   Dept. A, Ctrm. 11<br>            U.S. Bankruptcy Court<br>            2500 Tulare Street<br>            Fresno, CA 93721 |

DECLARATION OF ALAN GERMANY IN SUPPORT OF MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610429356.1

I, Alan Germany, hereby declare:

1. I am the duly appointed Chief Restructuring Officer of Southern Inyo Healthcare District. I submit the within declaration in support of the motion for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019, approving the compromise of the controversies by and between Southern Inyo Healthcare District and EverBank Commercial Finance, Inc. (the "Motion").[1]

2. Except as otherwise stated, I have personal knowledge of the matters set forth herein and, if called as a witness, could competently testify to the same.

3. A true and correct copy of the Agreement is appended hereto as **Exhibit A**, and incorporated herein and into the Motion by reference.

4. Based on my sound business judgment, I believe that the Agreement is in the best interests of the Debtor and its creditors. The Agreement was negotiated in good faith and at arms' length. I believe that the Agreement is fair and reasonable and provides a substantial benefit to the Debtor and its creditors by resolving the issues surrounding the Everbank claim without the cost and delay of litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of March, 2017, at _____Lone Pine_____, California.

_____
Alan Germany

---

[1] Any capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

DECLARATION OF ALAN GERMANY IN SUPPORT OF MOTION TO APPROVE COMPROMISE BETWEEN SOUTHERN INYO HEALTHCARE DISTRICT AND EVERBANK COMMERCIAL FINANCE, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

610429356.1

# EXHIBIT A

# SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement (the "Agreement") is entered into as of March 3, 2017, by and between SOUTHERN INYO HEALTHCARE DISTRICT ("SIHD" or the "District"), a California healthcare district, and EVERBANK COMMERCIAL FINANCE, INC. ("EverBank").  SIHD and EverBank may be referred to herein collectively as the "Parties" and each individually as a "Party".

## RECITALS

A.    On or about November 13, 2012, SIHD and General Electric Capital Corporation ("GE") entered into the Master Lease Agreement Dated as of 11/13/2012 (the "Master Lease"). Thereafter, on or about October 30, 2014, SIHD and GE executed the Equipment Schedule Dated as of 10/30/2014 to Master Lease Agreement Dated as of 11/13/2012 (the "Schedule"). Pursuant to the Schedule, GE agreed to lease to SIHD a GE Optima CT660.  In or about March 2015, the Schedule was amended pursuant to the Amendment to Equipment Schedule Dated as of 10/30/2014 to Master Lease Agreement Dates as of 11/13/2012 (the "Amendment" and, collectively with the Master Lease and Schedule, the "Lease Agreement") to include a 2001 LANDC Trailer and VITROS 350 Chemistry System within the scope of the Lease Agreement. The GE Optima CT660 with 2001 LANDC Trailer and VITROS 350 Chemistry System may be referred to herein collectively as the "Equipment".

B.    On or about November 3, 2014, a UCC Financing Statement (the "UCC-1") asserting a security interest in the equipment identified in the Schedule was recorded—namely:

> One (1) GE HEALTHCARE GE Optima CT660 System Internal Order Ref. # 4214812 together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing property, and (v) all insurance and/or other proceeds of any type of the foregoing property.

C.    On or about February 24, 2015, a UCC Financing Statement Amendment (the "Amended UCC-1") was recorded, which purportedly amended the UCC-1.  Through the Amended UCC-1, GE asserted a security interest in the Equipment, which is identified therein as follows:

> One (1) GE HEALTHCARE Optima CT660 System Internal Order Ref. # 4214812 and One (1) Fisher Healthcare Vitros 350 Chemistry System and One (1) GE HEALTHCARE Mobile CT Scanner System VIN 1LH142RH211011850 together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing

property, and (v) all insurance and/or other proceeds of any type of the foregoing property.

D. The Certificate of Title for the 2001 LANDC Trailer identifies GE as a lienholder on the 2001 LANDC Trailer ("Certificate of Title"). The rights and interests asserted under the UCC-1, Amended UCC-1, and Certificate of Title may be referred to herein collectively and individually as the "Security Interest".

E. EverBank asserts that in or about March 2015, GE assigned its rights and interests under the Lease Agreement, UCC-1, and Amended UCC-1 to EverBank.

F. On or about August 14, 2015, GE sent a Notice of Assignment of Account No. xxx7-001 to the District. Therein, GE stated that "GE has assigned to Ever Bank [sic] … all right, title, interest and obligations (arising from and after the date of the assignment) of GE in and to the Assigned Account, the equipment and collateral described in the Assigned Account…."

G. On or about January 4, 2016 (the "Petition Date"), the District filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court")—thereby commencing the bankruptcy case styled *In re Southern Inyo Healthcare District*, case no. 2016-10015 FEC (the "Bankruptcy Case").

H. On or about June 7, 2016, EverBank filed a motion for relief from stay in the Bankruptcy Case ("Motion for Relief from Stay") with respect to the Equipment. On or about July 8, 2016, the District filed an opposition to the Motion for Relief from Stay. On July 21, 2016, the Motion for Relief from Stay came on for hearing. During the hearing thereon, the Bankruptcy Court granted in part and denied in part the Motion for Relief from Stay. On or about September 8, 2016, the Court entered an order granting in part and denying in part the Motion for Relief from Stay and setting August 22, 2016, as the deadline for the District to assume or reject the Lease Agreement. The District did not assume the Lease Agreement by the deadline and, as such, the Lease Agreement has been deemed rejected ("Rejection of the Lease Agreement").

I. On or about September 27, 2016, EverBank filed proof of claim number 43-1 (the "EverBank POC") in the Bankruptcy Case. By and through the EverBank POC, EverBank asserts a claim against the District totaling "[n]ot less than $602,845.62"—the estimated amount owing under the Lease Agreement (assuming acceleration of the payments thereunder). Of this amount, EverBank contends that approximately $276,500.00, which EverBank estimates to be the value of the Equipment as of the Petition Date, was secured by the Equipment on account of the UCC-1, Amended UCC-1 and Certificate of Title.

## AGREEMENT

**NOW, THEREFORE,** in consideration for the promises, mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereby agree as follows:

1. **BANKRUPTCY COURT APPROVAL.** This Agreement shall not be deemed effective unless and until the Bankruptcy Court enters a final order[1] approving the Agreement without material modification pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As soon as practicable following the execution of this Agreement, the District shall file a motion seeking Bankruptcy Court approval of the Agreement. If the Bankruptcy Court denies the motion seeking approval of this Agreement or approves the Agreement subject to material modifications, the Agreement shall be deemed null, void *ab initio*, and unenforceable. The date on which the order approving the Agreement without material modification becomes a Final Order may be referred to hereinafter as the "Effective Date".

2. **DISCOUNTED PAY-OFF.** In full and complete satisfaction of all amounts owing to EverBank under or in relation to the Lease Agreement, the District shall pay EverBank the sum of ONE HUNDRED FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) (the "DPO Payment"). The DPO Payment shall be made in a single lump sum payment by delivering a cashiers' check, made payable to "EverBank Commercial Finance, Inc." to counsel for EverBank, Russ Fukano, at the address in Paragraph 21 below. The DPO Payment shall be due no later than thirty (30) days after the Effective Date. Upon payment of the DPO Payment, any and all security interests asserted by EverBank in the Equipment, including, without limitation, the Security Interest, shall be void and unenforceable.

3. **FAILURE TO PAY THE DPO PAYMENT.** In the event that the District fails to pay the DPO Payment in accordance with Paragraph 2, *supra*, this Agreement (including, but not limited to, the releases contained herein) shall be null and void, and the Parties shall each retain all of their respective rights and remedies.

4. **TRANSFER OF TITLE OF EQUIPMENT/SECURITY INTEREST TERMINATION.** No later than five (5) business days after receipt of the DPO Payment, EverBank shall: (a) transfer any and all of its right, title and interest in the Equipment, including, most notably, the GE Optima CT660, the 2001 LANDC Trailer, and VITROS 350 Chemistry System, to the District, on an "as is, where is" basis, by delivery to counsel for the District, Ashley M. McDow, at the address in Paragraph 21 below, of an executed Bill of Sale, in the form attached hereto as Exhibit "A"; (b) file UCC termination statement(s) with the California Secretary of State terminating any and all UCC Financing Statements through which EverBank claims a security interest in any or all of the Equipment, including, without limitation, UCC Financing Statement No. 14-7435158321 and UCC Financing Statement No. 15-74518422; and (c) cause the release of the lien shown on the Certificate of Title.

5. **WITHDRAWAL OF EVERBANK POC.** Upon payment of the DPO Payment, the EverBank POC shall be deemed satisfied in its entirety. No later than ten (10) calendar days after receipt of the DPO Payment, EverBank shall withdraw the EverBank POC. Except in the case of an uncured breach of this Agreement, EverBank shall not assert any claims against the District or bankruptcy estate in the course of the Bankruptcy Case, including, without limitation, any administrative claims for the use of the Equipment following the Petition Date. Any claims

---

[1] An order shall be deemed a "Final Order" fifteen (15) calendar days after its entry *provided that* (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered. A notice of appeal shall be deemed timely if filed within the time allotted under Rule 8002 of the Bankruptcy Rules.

asserted against the District or bankruptcy estate in violation of the preceding sentence shall be void *ab initio* and unenforceable.

6.  **PLAN TREATMENT.**  The District is in the process of preparing a plan for the adjustment of its debts (the "Plan"), which shall be filed in the Bankruptcy Case.  In anticipation of the satisfaction of the EverBank POC pursuant to this Agreement, the Plan shall not include any treatment for the EverBank POC or the payment of any sums to EverBank.  If the District pays the DPO Payment in accordance with the terms of this Agreement, EverBank shall not take any actions adverse to the confirmation of the Plan or approval of the associated disclosure statement.

7.  **RELEASES.**

    a.  EverBank Release.  Except for the obligations created or provided under this Agreement, and subject to Paragraph 1 above, the District hereby releases, remises, acquits, exonerates and forever discharges EverBank and each of its officers, directors, shareholders, employees, predecessors, successors in interest, attorneys, professional, agents, assigns, subsidiaries, parent companies, affiliates, accountants and representatives ("EverBank Release Parties") of and from any and all claims, acts or omissions arising between them whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the District had, has or may have against the EverBank Release Parties, or any of them, in connection with or arising from the Lease Agreement, Equipment, UCC-1, Amended UCC-1, Certificate of Title, Bankruptcy Case, Motion for Relief from Stay, Rejection of the Lease Agreement and/or EverBank POC.  In so doing, the District has had the benefit and advice of counsel and hereby knowingly and intentionally waives any right(s) under California Civil Code section 1542, or any analogous or similar law, which provides as follows:

    > A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release(s) provided under this Paragraph 7.a. shall be effective on the Effective Date.  The release(s) provided under this Paragraph 7.a., including the release under California Civil Code section 1542, shall be enforceable in any court of law or equity without respect to the laws generally applicable in such court.  The laws of the State of California shall apply to the application, interpretation, and enforceability of the release provided under this Paragraph.

    b.  District Release.  Except for the obligations created or provided under this Agreement, and subject to Paragraph 1 above, EverBank hereby releases, remises, acquits, exonerates and forever discharges the District and each of its officers, directors, shareholders, employees, predecessors, successors in interest, attorneys, professional, agents, assigns, subsidiaries, parent companies, affiliates, accountants and representatives ("District Release Parties") of and from any and all claims, acts or omissions arising

between them whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which EverBank had, has or may have against the District Release Parties, or any of them, in connection with or arising from the Lease Agreement, Equipment, UCC-1, Amended UCC-1, Certificate of Title, Bankruptcy Case, Motion for Relief from Stay, Rejection of the Lease Agreement and/or EverBank POC.  In so doing, EverBank has had the benefit and advice of counsel and hereby knowingly and intentionally waives any right(s) under California Civil Code section 1542, or any analogous or similar law, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release(s) provided under this Paragraph 7.b. shall be effective on the Effective Date.  The release(s) provided under this Paragraph 7.b., including the release under California Civil Code section 1542, shall be enforceable in any court of law or equity without respect to the laws generally applicable in such court.  The laws of the State of California shall apply to the application, interpretation, and enforceability of the release provided under this Paragraph.

**8.     BREACH AND CURE.**  Except as otherwise provided in Paragraph 3, upon the occurrence of a breach of this Agreement, the non-breaching Party shall notify the Party allegedly in breach of the Agreement of the nature of the breach.  Within ten (10) calendar days of receiving notice of an alleged breach, the Party allegedly in breach of the Agreement shall either (a) provide a response contesting the alleged breach, which shall including, among other things, the grounds for contesting the breach and any and all documents supporting its position, or (b) cure the breach.  If the Party contests the breach, the Parties shall meet and confer in an attempt to resolve the dispute within five (5) calendar days of the response contesting the breach.  If the Parties are unable to resolve the dispute regarding a purported breach of the Agreement or a Party fails to contest or cure a breach within the time allotted, the Parties may take any actions necessary to enforce their respective rights and interests under this Agreement.

**9.     NO IMPLIED ADMISSION.**  This Agreement shall not constitute an admission that any Party hereto is liable to any other Party hereto in any way for any claim asserted by any Party hereto or counsel to a Party hereto in the dealings and communications between the Parties and/or their counsel which preceded the execution of this Agreement.  Each Party hereto denies that it committed any wrongdoing, caused any damage, or is liable to any other Party hereto for any matter or thing.

**10.    HEADINGS.**  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

**11.    GOVERNING LAW/FORUM SELECTION.**  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE

STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that any legal action, suit or proceeding with respect to any matter under or arising out of or in connection with this Agreement shall be brought in the Bankruptcy Court. By the execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of the Bankruptcy Court, generally and unconditionally, with respect to any such action, suit or proceeding, and consents to the entry of any final order or judgment by the Bankruptcy Court.

12. **VOLITIONAL EXECUTION.** Each Party hereto enters into this Agreement knowingly and voluntarily, in the total absence of any fraud, mistake, duress, coercion, or undue influence and after careful thought and reflection upon and consultation with independent counsel regarding this Agreement and the matters referred to herein; and, accordingly, by signing this Agreement, each Party signifies full understanding, agreement, and acceptance.

13. **SEVERABILITY.** With the exceptions of Paragraphs 1 through 8 and Paragraph 15, in the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions hereof shall remain in full force and effect.

14. **AMENDMENT.** This Agreement may be amended, altered, modified, or otherwise changed in any respect or particular only by a writing duly executed by the Parties hereto or their authorized representatives.

15. **AUTHORITY.** The Parties represent and warrant to the others that each has all requisite power and authority to enter into this Agreement and perform its respective obligations hereunder. Each signatory represents and warrants to the Parties that he or she has the authority to execute this Agreement on behalf of the Party they purportedly represent and thereby bind such individual or entity to this Agreement. Any material misrepresentation of such authority will render the Agreement null and void *ab initio*.

16. **COOPERATION.** The Parties shall execute any additional documentation reasonably necessary to effectuate the intent and purpose of this Agreement. The Parties shall not take any action or counsel or assist any other individual or entity to take any action to interfere with or impede the performance this Agreement or any provision thereof.

17. **COUNTERPARTS/ELECTRONIC SIGNATURE.** This Agreement may be executed and delivered (by facsimile or otherwise) in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Digital copies, facsimile copies and/or Xerox copies of any signature by a Party or their representative shall have the same force and effect as an original signature.

18. **SETTLEMENT DISCUSSIONS.** This Agreement is part of a proposed settlement of the disputes between the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence and any applicable state rule of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

**19.** **NO THIRD PARTY BENEFICIARIES.** This Agreement is not intended to benefit any individual or entity that is not a Party hereto.

**20.** **INTEGRATION.** This Agreement constitutes the complete agreement between the Parties with respect to the subject matter hereof and, except as expressly provided herein, supersedes all prior agreements, oral or written, between or among the Parties to the extent such prior agreement are inconsistent with the terms of this Agreement or pertain to the subject matter of this Agreement.

**21.** **NOTICES.** All notices hereunder shall be deemed given upon dispatch if in writing and delivered via email and/or U.S. Certified Mail, postage prepaid, to the following addresses:

**To the District:** Alan Germany
Southern Inyo Hospital
P.O. Box 1009
Lone Pine, CA 93545
agermany@teamhcca.com

With copy to:

Ashley M. McDow
Baker & Hostetler LLP
11601 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90025
Email: amcdow@bakerlaw.com

**To EverBank:** EverBank Commercial Finance, Inc.
Attn: William C. Carey, General Counsel
10 Waterview Boulevard
Parsippany, NJ 07054
william.carey@everbank.com

With copy to:

Russ M. Fukano
Troy Gould PC
1801 Century Park East, Suite 1600
Los Angeles, CA 90067-2367
Email: rfukano@troygould.com

A Party may change the designated recipient and/or address(es) for the provision of notice(s) under this Agreement by transmitting a notice of address or recipient change by the means specified in this Paragraph. Any address or recipient change shall be deemed effective upon receipt. Any notices transmitted prior to receipt of a notice of address or recipient change shall be deemed valid and effective.

Dated: February 22, 2017

Southern Inyo Healthcare District

By: _____
    Carma Roper
Its: _Treasurer, Board of Directors_

Dated: March 3, 2017

EverBank Commercial Finance, Inc.

By: _____
Its: _EVP & General Counsel_

609969198.4
02553-0035 289383.3
610320179.1

APPROVED AS TO FORM AND CONTENT:

Dated: ~~January~~ March 3, 2017          **BAKER & HOSTETLER LLP**

By: /s/ Ashley McDow
Ashley M. McDow

Attorneys for SOUTHERN INYO HEALTHCARE DISTRICT

Dated: January ___, 2017          **TROYGOULD PC**

By: _____
Russ M. Fukano

Attorneys for EVERBANK COMMERCIAL FINANCE, INC.

609969198.4
02553-0035 289383.3
610320179.1

**APPROVED AS TO FORM AND CONTENT:**

Dated:  January___ , 2017        **BAKER & HOSTETLER LLP**

By: _____
     Ashley M. McDow

Attorneys for SOUTHERN INYO HEALTHCARE DISTRICT

Dated:  ~~January~~ _3/3 , 2017     **TROYGOULD PC**

By: _____
     Russ M. Fukano

Attorneys for EVERBANK COMMERCIAL FINANCE, INC.

**Exhibit "A"**

**BILL OF SALE**
(Equipment)

EverBank Commercial Finance, Inc. ("Seller"), for good and valuable consideration in the amount of One Hundred Fifty Thousand ($150,000.00) provided by Southern Inyo Healthcare District ("Buyer"), receipt of which is hereby acknowledged, grants, bargains, sells, conveys, transfers, and delivers all of its right, title and interest, if any, in the following equipment (collectively, the "Equipment") unto Buyer, and its successors and assigns, free and clear of any and all liens placed by Seller:

One (1) GE HEALTHCARE Optima CT660 System Internal Order Ref. # 4214812, One (1) Fisher Healthcare Vitros 350 Chemistry System, One (1) GE HEALTHCARE Mobile CT Scanner System, and One (1) 2001 LANDC Trailer with VIN 1LH142RH211011850.

The Equipment is sold AS IS, WHERE IS, and WITH ALL FAULTS without any covenant or warranty, express or implied, of any nature whatsoever.

By acceptance of said Equipment transferred hereunder, Buyer agrees to assume liability for and to pay all sales and use taxes payable in connection with this sale. The foregoing terms shall supersede any terms and conditions contained in any confirmation order, invoice, or other writing issued by Buyer.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of _____ \_\_, 2017.

SELLER

Dated: _____ \_\_, 2017        EVERBANK COMMERCIAL FINANCE, INC.

    By:_____
    Name:_____
    Its:_____