1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
3  Los Angeles, CA 90025-0509
   Telephone:     310.820.8800
4  Facsimile:     310.820.8859
   Email:         amcdow@bakerlaw.com
5                 mdelaney@bakerlaw.com

6  Attorneys for Debtor
   SOUTHERN INYO HEALTHCARE DISTRICT

7

8              UNITED STATES BANKRUPTCY COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                    FRESNO DIVISION

11
   In re                              | Case No.: 2016-10015
12
   SOUTHERN INYO HEALTHCARE           | Chapter 9
13 DISTRICT,
                                      | Doc. No.: BH-19
14          Debtor.
                                      | **DECLARATION OF ASHLEY M.
15                                    | MCDOW IN SUPPORT OF THE
                                      | EMERGENCY MOTION (1) FOR
16                                    | AUTHORITY TO IMMEDIATELY
                                      | TERMINATE HCCA MANAGEMENT
17                                    | AGREEMENT OR, IN THE
                                      | ALTERNATIVE, FOR AUTHORITY TO
18                                    | MODIFY THE TERMS OF THE HCCA
                                      | MANAGEMENT AGREEMENT IN
19                                    | ORDER TO DESIGNATE THE BOARD
                                      | AS THE SOLE SIGNATORY ON ALL
20                                    | DISTRICT BANK ACCOUNTS AND (2)
                                      | TO CONTINUE HEARING ON SECOND
21                                    | AMENDED DISCLOSURE STATEMENT
                                      | AND ASSOCIATED FILING
22                                    | DEADLINES**

23                                    | Proposed Hearing:
                                      | Date:    October 17, 2017
24                                    | Time:    2:00 p.m.
                                      | Place:   Dept. A, Ctrm. 11
25                                    |          U.S. Bankruptcy Court
                                      |          2500 Tulare Street
26                                    |          Fresno, CA 93721

27

28

_(left margin vertical text)_ BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDOW DECLARATION ISO MOTION TO TERMINATE HCCA MANAGEMENT AGREEMENT OR RESTRICT BANK ACCOUNT ACCESS AND TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT

611517936.2

I, Ashley M. McDow, hereby declare:

1.      I am an attorney duly admitted to practice before this court.  I am a partner with the law firm of Baker & Hostetler LLP, general insolvency counsel for the Southern Inyo Healthcare District in the above-captioned bankruptcy case.  I submit this declaration in support of the contemporaneously filed *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "Motion").  Unless otherwise defined herein, all capitalized terms and phrases shall have the same meaning ascribed to them in the Motion.

2.      Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if call as a witness, could and would competently testify to the same.

3.      On or about Thursday, October 5, 2017, I obtained copies of the bank statements and transactional records for the District's bank accounts.  Upon analyzing the Bank Records, I noted several inconsistencies with certain reports and representations previously provided by HCCA and numerous transactions not authorized by the District Board.

4.      With respect to the latter, I noted numerous transfers by and between the District and Tulare, which is another California local healthcare district managed by HCCA.  More precisely, following the Petition Date, it appears that HCCA caused the District to transfers funds totaling more than $3,000,000.00 to Tulare.  The Bank Records lack any indication of the reason(s) for the transfers.  I also noted a significant transfer from the District to Tulare in late 2016 of approximately $700,000.00 allegedly on behalf of HCCA (according to the check register prepared by HCCA and presented to the District board.  I am not aware of any board approval for these transactions.  Indeed, until reviewing the Bank Records, I was unaware of most, if not all, of the suspect transactions.

5.      Depending on how the transfers between the District and Tulare are categorized (namely, whether Tulare somehow acted as the conduit for funds loaned by HCCA to the

611517936.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

District), the Bank Records indicated that Tulare may owe the District more than $418,000.00. It appears that the amounts owing to the District remained unpaid as of the commencement of the Tulare Bankruptcy.

6.     In addition to the transfers involving Tulare, I also noted that the Bank Records contradicted information that was inconsistent with the financial reports and information that have been provided to the District board by HCCA. More precisely, in late 2016, it appears that HCCA caused the District to transfer approximately $700,000.00 to Tulare on behalf of HCCA, and represented to the board that this payment was in satisfaction of certain amounts owing under the line of credit extended by HCCA to the District. The Bank Records, however, demonstrate that the line of credit had a zero dollar ($0.00) balance as of the date of the $700,000.00 transfer. Accordingly, it appears that these funds were transferred to Tulare on behalf of HCCA for the purpose of satisfying a portion of the then outstanding management fee of HCCA rather than paying down the line of credit with HCCA.

7.     A portion of the funding for the District's operations is derived from state and federal programs, including, without limitation, Medicare and Medicaid. As I understand it, in order to receive the maximum amount of governmental funding, the District is required to provide an intergovernmental transfer ("IGT") of funds to the State of California, which are then matched, two-to-one, by the federal government and returned to the District. The Bank Records indicate that HCCA failed to make an IGT payment on behalf of the District in or about September, 2017.

8.     A true and correct copy of the motion filed by Tulare in the Tulare Bankruptcy seeking authority to terminate and reject its management agreement with HCCA is attached hereto as **Exhibit B**.

9.     On or about October 11, 2017, the District held a special board meeting to discuss, among other things, the findings from the evaluation of the Bank Records and whether to remove HCCA through the rejection and/or termination of the Management Agreement. Based on the available information and documentation, the District board concluded that HCCA had engaged in a series of improper actions, including, without limitation, (a) misusing and misappropriating

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

regarding the financial dealings of the District, (c) concealing material information regarding the financial dealings of the District, and (d) failing to comply with the terms of the Management Agreement by, among other things, failing to provide complete and accurate financial reports, failing to perform a myriad of administrative duties (including pursuing the bond), and failing to facilitate the preparation of audited financial statements.

10.     The removal of HCCA has several implications under the forthcoming Second Amended Plan and Second Amended Disclosure Statement. At present, the Second Amended Plan and Second Amended Disclosure Statement provide that HCCA will serve as the post-confirmation management for the Facilities and that the claims of HCCA shall be treated as professional and/or administrative claims. Accordingly, the removal of HCCA will require the District to revise significant portions of the Second Amended Plan, Second Amended Disclosure Statement, and supporting financial projections. More precisely, the removal of HCCA necessitates the inclusion of additional disclosures in the Second Amended Disclosure Statement regarding, among other things, alternate management, the costs associated with alternate management, the treatment of HCCA, potential damages associated with the rejection of the Management Agreement, and potential claims against HCCA related to what appears to be blatant mismanagement of the District in violation of the Management Agreement and applicable law. The removal of HCCA also requires modifications to the financial projections to account for the altered treatment of HCCA on the cash flow analysis and the proposed distributions to creditors under the Second Amended Plan, including the percentage distribution payable to general unsecured creditors.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of October, 2017, at Calabasas, California.

/s/ Ashley M. McDow
Ashley M. McDow

- 4 -

# EXHIBIT B

5

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:  (559) 435-9800
Facsimile:  (559) 435-9868
E-mail:     rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:  (559) 433-1300
Facsimile:  (559) 433-2300
E-mail:     mandy.jeffcoach@mccormickbarstow.com

District Counsel

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #:  94-6002897<br>Address:  869 N. Cherry Street<br>Tulare, CA 93274 | CASE NO.  17-13797<br><br>DC No.: WW-1<br><br>Chapter 9<br><br>Date:   October 12, 2017<br>Time:   10:30 a.m.<br>Place:  2500 Tulare Street<br>        Fresno, CA 93721<br>        Courtroom 13<br>Judge:  Honorable René Lastreto II |

**MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT
(HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY

JUDGE:

---

Tulare Local Healthcare District, dba Tulare Regional Medical Center, a California Health Care District, the Debtor ("Debtor" or "District"), hereby moves this Court pursuant to 11 U.S.C. §§ 365 and 901, and Bankruptcy Rules 6006 and 9014, for an Order Rejecting Executory Contract as described below. In support of its Motion, the Debtor represents as follows:

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding to 28 U.S.C. §157(b)(2). The statutory predicates for the relief sought in this Motion are §§ 365, 901 and 105 of title 11 of the United States Code (the "Bankruptcy Code"), as complemented by Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

2.      This case was filed as a Chapter 9 case on September 30, 2017 ("Petition Date").

3.      The Debtor is a California healthcare district located in Southern Western Tulare County.

4.      The Debtor is in the business of owning a hospital and other healthcare facilities which are all currently under the domination and control of Healthcare Conglomerate Associates, LLC ("HCCA").

5.      The Debtor entered into an integrated Contract involving four sub agreements consisting of Management Services Agreement, Interim Joint Operating Agreement, Joint Operating Agreement and Option ("Contract") on May 29, 2014, with HealthCare Conglomerate Associates, LLC ("HCCA"). The Contract is attached to the Declaration of Kevin B. Northcraft as Exhibits A1, A2, A3 and A4.

6.      The Contract is comprised of a several part agreement by which a prior board of directors for the District agreed to turnover and relinquish all control over the District's operations and management, including operation of its hospital and healthcare facilities to HCCA on the basis of a one sided, oppressive, overly expensive, unconscionable and unlawful agreement.

///

7.     The Debtor has analyzed the Contract and determined in its sound business judgment, and as declared by Kevin B. Northcraft, the Debtor's Chairman of the Board, that the pricing and terms contained in the Contract are grossly unfavorable to the District.  Also, the Debtor has determined that it does not need this Contract to achieve a successful reorganization because, *inter alia*, the Debtor has other viable alternatives at more competitive prices and much more favorable terms.

8.     Since execution of the Contract, the relationship between the Debtor and HCCA has been broken beyond repair and each accuses the other of breach of the Contract and wrongdoing.  On October 6 and 9, 2017, and prior dates, HCCA declared its intention to cease paying its employees which would devastate the ability of the hospital to continue to operate.  HCCA's failure to timely fund payroll and its threats to engage in conduct which would ensure closure of the hospital cause uncertainty amongst the staff and the public, and further destabilize the hospital and its operations.  The Contract must be rejected so the Debtor can engage a different operator and manager.

9.     On or about October 9, 2017, the Board directed that the District terminate all of business relationships with HCCA and that the District reject the subject Contract pursuant to Section 365 as incorporated by Section 901.

10.    The Debtor has determined that the Contract is unfavorable to the District and not needed in its restructured operations and seeks authorization to reject the Contract pursuant to Section 365.  The Contract, for instance, contains a number of unfavorable conditions, including but not limited to: Debtor irrevocably waiving any right to terminate the Contract, Debtor not having access to the hospital, clinic or other facilities unless express permission is given by HCCA, not having access to its bank accounts or financial information, not having access to its data systems utilized in connection with the operations of the hospital unless HCCA authorizes the same, Debtor being unable to criticize the services being provided by HCCA, Debtor maintaining the responsibility for the care of patients but not having any rights in the hiring and firing of hospital staff, paying HCCA 130% of the amount of leased employee

compensation, an irrevocable appointment of HCCA as Debtor's attorney in fact, an agreement not to reject the Contract in a Chapter 9 proceeding, a monthly payment of $225,000 (which increases every year) to HCCA for services, and a waiver of all liability in favor of HCCA. See Exhibit "A" which is a summary of the unfavorable contract provisions.  The rejection will allow the District to regain control over its assets and operations and permit it to engage with a qualified successor operator of the hospital. See the Declaration of Kevin B. Northcraft in support of the Motion.  The Debtor asserts that the rejection is in the best interest of the Debtor, is supported by sound business judgment and consistent with the District's powers to exercise control over its own assets and operations as a governmental entity.

11.    By this Motion, the Debtor seeks entry of an order pursuant to §§ 901, 365 and 105(a) of the Bankruptcy Code authorizing and approving the rejection of the Contract.  The Debtor requests that rejection be made effective as of September 30, 2017, the Petition Date.

12.    In order to facilitate the transition of the operation of the hospital and health care facilities, the Debtor requests that the Court enter an order rejecting the Contract effective as of September 30, 2017, with the understanding that the Debtor is willing to enter into an arrangement acceptable to the Debtor where HCCA would cooperate in an orderly and peaceful transition to a new operator for a transitional period of 30 days post rejection (the "Transition period")[1].

13.    Section 365(a) of the Bankruptcy Code provides that a Chapter 9 debtor, "subject to the court's approval, may assume or reject any executory contract... of the debtor."  11 U.S.C. § 365(a).

14.    It is well-settled that the business judgment rule applies to a debtor's decision to reject an executory contract or unexpired lease; absent a showing of gross abuse or bad faith, the Debtor's decision must stand.  This is especially true as here

---

[1] The Debtor has made arrangements with Wipfli LLP/HFS Consultants to step in and assume control over the operations of the hospital and healthcare facilities upon rejection of the Contract and has arranged needed emergency financing.

where the Debtor is a governmental entity and the Court does not have jurisdiction or powers over the District's property or assets.

15.    Upon review and analysis of the Debtor's obligations under the Contract, the Debtor has concluded that the relief requested in this Motion is in the best interests of the Debtor, its estate, its creditors, patients and citizens. The Contract is simply unconscionable, in violation of public policy, unfavorable, burdensome, overly expensive and contrary to the duties of elected officials to manage the affairs of the District is a prudent and fiduciary sound manner. It is more economic for the Debtor to cover operations through alternative arrangements at current market prices which are substantially lower than the Contract prices and terms. The Contract imposes excessive cost and expense to the Debtor without corresponding benefits. Thus, the Contract is neither needed nor desirable for the Debtor's continued operations.

16.    In short, the Debtor has determined, in the reasonable exercise of its sound business judgment, as a governmental entity operating in Chapter 9 that the Contract is burdensome and provides no economic value to the Debtor. Accordingly, the Debtor requests authority to reject the Contract effective as of September 30, 2017.

WHEREFORE, the Debtor respectfully requests entry of an Order (a) authorizing the Debtor to reject the Contract as of September 30, 2017 and (b) granting Debtor such other and further relief as this Court may deem just and proper.

Dated: October 10, 2017          WALTER WILHELM LAW GROUP,
                                 a Professional Corporation

                          By:    _____
                                 Riley C. Walter, Attorneys for Debtor,
                                 Tulare Local Healthcare District

                                 and

                                 McCormick BARSTOW, LLP, District Counsel

1 | 12
WALTER WILHELM LAW GROUP
2 | A Professional Corporation
Riley C. Walter #91839
3 | Matthew P. Bunting #306034
Danielle J. Bethel #315945
4 | 205 East River Park Circle, Ste. 410
Fresno, CA 93720
5 | Telephone:    (559) 435-9800
Facsimile:    (559) 435-9868
6 | E-mail:        rileywalter@w2lg.com

7 | Chapter 9 Counsel

8 | MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
9 | Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
10 | 7647 N. Fresno Street
Fresno, CA 93720
11 | Telephone:    (559) 433-1300
Facsimile:    (559) 433-2300
12 | E-mail:        mandy.jeffcoach@mccormickbarstow.com

13 | District Counsel

14 |

15 | IN THE UNITED STATES BANKRUPTCY COURT

16 | EASTERN DISTRICT OF CALIFORNIA

17 | FRESNO DIVISION

In re

TULARE LOCAL HEALTHCARE
DISTRICT, dba TULARE
REGIONAL MEDICAL CENTER,

Debtor.

Tax ID #:  94-6002897
Address:   869 N. Cherry Street
           Tulare, CA 93274

CASE NO.  17-13797

DC No.: WW-1

Chapter 9

Date:    October 12, 2017
Time:    10:30 a.m.
Place:   2500 Tulare Street
         Fresno, CA 93721
         Courtroom 13
Judge:   Honorable René Lastreto II

**DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT OF MOTION FOR
AUTHORIZATION TO REJECT EXECUTORY CONTRACT
(HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

I, Kevin B. Northcraft, hereby declare and represent as follows:

1.     I am the elected chairman of the board of directors of Tulare Local

Healthcare District ("District"), a California healthcare district covering a large part of Southwestern Tulare County. The District serves over 90,000 people. It is the only hospital in the District.

2.      The District has been embroiled in political and financial controversies for many years and this has impeded the ability of the District to move forward in providing quality healthcare to the citizens of the District.

3.      I am informed and believe that the controversies began in approximately 1994 when Dr. Pramood Kumar was appointed to the board to fill a vacancy. From and after that time, there have been significant controversies among the citizens and voters as to the proper management and control of the hospital. There have been deep divides within the community.

4.      For many years the board was controlled by Dr. Kumar. During that time the District embarked upon an ill-fated decision to borrow money to construct a hospital tower.

5.      The District borrowed $85 million in general obligation bonds and additional revenue bonds for the tower construction project but it was soon consumed by construction cost overruns, litigation and disputes over the proper use of bond proceeds. During this time, many citizens in the District began to express concern and dismay as to the management of the District's operations by the Kumar board.

6.      A historical overview and timeline prepared by me, based on information which has been provided to me, of the various controversies, missteps and confrontations is as follows:

## Tulare Local Healthcare District, dba Tulare Regional Medical Center
### History/Timeline of Events Leading to Financial Crisis

I am informed and believe that the District is a public agency, formed in 1945 under the State of California Local Healthcare District Law. The geographic area covered by the District encompasses a very large area in the Southwestern part of Tulare County and includes the City of Tulare. The permanent resident population of the District is estimated to be approximately 90,000 persons. The District provides healthcare services primarily to individuals who reside on the local area. The District's hospital is the only hospital in the District.

The voters of the District elect the Board of Directors by districts.

The District is governed by a five-member Board of Directors. The current members of the Board are Kevin B. Northcraft, Mike Jamaica, Senovia Gutierrez, and Xavier Avila. There is one vacant seat. On October 4, 2017, the Board approved the hiring of HFS to act as the Board's advisor and head the District's crisis management team, which is headed by Sanford Haskins and Rick Gianello of HFS. The fact that the Board is elected by the public causes both problems and opportunities that are generally associated with local government entities. Its governing body and senior staff undergo much closer public scrutiny and must devote more time to public affairs than would be the case if it were a private entity. On the other hand, as a local public entity, local residents tend to be supportive of the District.

As of the signing of this Declaration, day-to-day operations of the hospital were under the control of HCCA under various agreements. There have been and continue to be major disputes between TRMC and HCCA, briefly discussed below.

I am informed and believe that like most rural hospitals in California, the District faces immense financial pressures.

There has also been intense community involvement and disagreement over a 15 year management contract with HCCA a prior Board entered into on May 29, 2014, discussed below.

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT 36894-00000 4742360 1
OF MOTION FOR AUTHORIZATION TO REJECT     -3-
EXECUTORY CONTRACT (HEALTHCARE                  00158917-gaa-10.10.2017
CONGLOMERATE ASSOCIATES, LLC)

The District's residents desire and require nearby emergency, urgent and acute care services. To provide these services, I am informed and believe that the District must actively participate in developing and maintaining a panel of primary care and specialty physicians within the District and maintain and upgrade its medical, obstetrics/gynecology, imaging, laboratory equipment, physical plants, and rural health clinics.

Under California law, hospitals are required to treat any person who presents at the emergency room without regard to the patient's ability to pay for services. The District accepts all patients regardless of their ability to pay. The District absorbs the costs of medical care for uninsured patients who account for a very large percentage of its volume.

A patient is classified as a charity patient by reference to certain established policies of the political district. Essentially, these policies define charity services as those services for which no payment is anticipated.

The District has been contending with significant disruptions in its governance over several years. Based on my information and belief, a chronology that explains this political unrest and which lead to management turnover is as follows:

- 1994 - Parmood Kumar is appointed to the board of directors of Tulare Local Healthcare District, dba Tulare Regional Medical Center ("TRMC").

- November 2005 - Tulare voters pass a bond measure to build a tower expansion at TRMC.

- 2005 – 2010 - TRMC tower planning expands and the cost of the project exceeds original projections while hospital revenue declines.

- May 2010 – TRMC tower construction finally breaks ground and Shawn Bolouki, CEO at the time, tries to speed up the construction project.

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT 36894-00000 4742360 1
OF MOTION FOR AUTHORIZATION TO REJECT     -4-
EXECUTORY CONTRACT (HEALTHCARE     00158917-gaa-10.10.2017
CONGLOMERATE ASSOCIATES, LLC)

- January 2014 - TRMC board of directors, Parmod Kumar and Sherrie Bell, vote to hire Healthcare Conglomerate Associates ("HCCA") to run the hospital and Bolouki leaves as CEO. HCCA promises to finish tower expansion and get hospital on stable financial ground. In May 2014 the TRMC board signs a 15-year management agreement with HCCA.

- November 2015 - Due to low revenue vendor invoices continue to rack up including Cardinal Health, a large drug supplier, to whom the hospital incurred a debt of about $830,000 from Nov. 2015 to May 2016. TRMC later took out a loan to repay the company.

- Between 2014 and 2016 various vendors, suppliers and contractors file lawsuits claiming unpaid bills and services.

- March 2016 – HCCA extends a $200,000 line of credit from TRMC to the Southern Inyo Healthcare District which HCCA also manages. The line of credit was extended without TRMC board approval. In July 2016 this line of credit was extended to a $500,000 limit.

- 2016 - The State of California issues citations to HCCA and TRMC in patient deaths and surgical errors.

- September 1, 2016 – TRMC board approves taking out a $800,000 line of credit with no specific purpose at the time. Any use of these funds were to require further board approval. It was later revealed these funds were to be used to repay Cardinal Health.

- August 2016 - Voters vote down bond measure to secure financing to complete tower construction project and the hospital is forced to make significant layoffs.

- October 2016 – Dr. Benny Benzeevi of HCCA presents to the board that the hospital had reached 30 months of consecutive profits and states that the hospital has the ability to complete the tower expansion project but only two months later, in December 2016, the hospital's operating expenses become past due.

- November 2016 - Kevin Northcraft and Mike Jamaica are elected to TRMC board of directors.

- March 2017 – TRMC board votes to allow HCCA to seek and obtain a $79 million loan to complete the tower expansion.

- March 2017 – July 2017 certain vendors and suppliers continue to file suits for unpaid invoices.

- May 18, 2017 - HCCA donates $10,000 to a group working to prevent the recall of HCCA supporter and board member Dr. Parmod Kumar. Dr. Parmod Kumar was recalled by voters in July 2017. Senovia Gutierrez is voted in to replace Kumar on the board of directors.

- June 2017 – Board of directors vote to allow HCCA to again seek and obtain a $22 million loan to refinance certain debt and fund operations.

- July 2017 – Employee paychecks begin to bounce and some physicians claim to have gone without pay for months.

- July 27, 2017 – The majority of the Board vote to rescind any authority given to HCCA to seek any loans on behalf of TRMC. HCCA claims this vote is invalid and asserts Gutierrez is not recognized as a board member, despite her election.

- September 27, 2017 – Senovia Gutierrez is officially seated and recognized by TRMC board of directors.

- September 2017 - TRMC board issues and disputes with HCCA cause credit rating to downgrade.

- September 8, 2017 - HCCA issues a letter to TRMC claiming TRMC owes it $8 million including expenses and charges incurred in connection with "leased" employees. HCCA also claims TRMC is $526,066.86 past due in management fees.

- September 28, 2017 – HCCA is unable to make payroll and considers shutting down all operations due to mounting significant financial issues and lack of available funds.

- September 29, 2017 – TRMC board of directors unanimously vote to seek Chapter 9 bankruptcy protection.

1

2      • September 30, 2017 – Petition for relief under Chapter 9 is filed.

3

4      • October 5 and 9, 2017: HCCA informs TRMC it will lay off or suspend its
        employees working at the hospital as it is unable to pay them.

5

6      • October 9, 2017: TRMC authorizes counsel to file the necessary paperwork with
        the bankruptcy court to reject the HCCA contract.

7

8          Providing quality health services to District residents is the primary goal of the

9    District and necessary to the community, in part, because of the relative rural location of

10   the District.   The residents need emergency room, inpatient, obstetric and other

11   ancillary services.  The critical nature of the need for health care services requires the

12   Board to place a high priority on the continued financial viability of the District.

13

14                              **District's Financial Problems**

15         At the time the District's Board of Directors considered filing a Chapter 9 petition,

16   the District was facing a liquidity crisis that threatened its continued operations and was

17   concerned that preferential transfers were being made.  The Board concluded that filing

18   a Chapter 9 was the only available remedy to avoid continued litigation with and

19   collection action by creditors, while, at the same time, allowing the District to protect its

20

21   assets, preserve its business operations and continue providing uninterrupted

22   healthcare services to its patients while it developed a comprehensive business plan.

23   The task of restructuring the District is particularly complicated and time consuming

24   because of the multitude of financial and contractual relationships inherent in the

25   hospital enterprise. The decision to file Chapter 9 came only after the District attempted

26   alternatives that would have avoided such a filing as the District was told by HCCA it

27   was nearly out of cash and unable to meet payroll or purchase vital medical supplies.

28

---

I am informed and believe that in about May 2014 these various controversies reached a fevered pitch when the Kumar dominated board entered into a entered into a very unfavorable contract ("Contract") with Healthcare Conglomerate Associates, LLC ("HCCA"). A copy of these four integrated agreements are attached as Exhibits A1, A2, A3 and A4. By these contracts the Kumar dominated board sold out the District and gave all control over the District's operations and finances to HCCA. As a small example, members of the board were not even allowed to enter on the District's property without the consent of HCCA. The board was denied meaningful financial information. The Contract requires the District to pay HCCA a management fee of about $8 million per year. All of the District's money was turned over to HCCA. [I believe the District has an account but is swept every night by HCCA through the sweeping function, but we do not know where these accounts are and HCCA will not tell us.] After HCCA took control of the District's operations and finances, it insisted on pressing forward in a plan to obtain new borrowing to complete the hospital tower. The 2016 vote was overwhelmingly against the new bond issuance and the campaign pitted parts of the community against one another deepening the divide.

7.     Shortly thereafter Dr. Kumar was recalled by the voters by a large margin and shortly thereafter Senovia Gutierrez was elected on June 27, 2017. Gutierrez was aligned with myself and Director Mike Jamaica in seeking to regain control over the District's finances and governance. However the election did not end the controversy or interference by HCCA in the District's governance. Upon her election Gutierrez (and the rest of the board) was told by HCCA and then District Counsel who reported only to HCCA and not to the board) that she had not been "properly seated" and during this time HCCA sought to borrow money against the District's assets based on a consent

previously given by the Kumar board, but knowing that if Gutierrez were to be seated the consent would be withdrawn and demands for accountability would be given to HCCA.

8.      HCCA and its hand-picked counsel (paid from District funds but reporting only to HCCA)  continued to thwart and deny Gutierrez her seat on the board until September 15, 2017 when the District Attorney of Tulare County filed a Petition for Alternative Writ of Mandate which thereafter forced HCCA to cease opposing election her and she was officially seated on September 27, 2017, after an unconscionable delay of sixty days.  I am informed and believe that the delay in seating Ms. Gutierrez as a board member was because HCCA had the ulterior motive of attempting to find financing to pay themselves for services claimed to have been rendered.  I understand that HCCA paid itself and its lawyers a substantial amount of money instead of using that money to keep the hospital operational.

9.      Upon having a now functioning board of directors, the District turned its attention, again, to the one sided agreement that the Kumar board had entered into with HCCA on May 29, 2014.   It should be noted that even before Director Gutierrez was seated on September 27, 2017, Director Jamaica and I had been insisting upon receiving current, meaningful financial information from HCCA. Among the things that we requested were: 1. Tell us where our District's money is deposited? 2. Where are the District's money swept to and who has signatory power? 3.Who do we owe, how much and what is the aging of these accounts payable? 4. What do we owe HCCA and what makes up those charges? 5. What is owed to the District on account of on account of our accounts receivable and what is the status of collections? 6. What is our cash position and what are our short-term needs?

10.     Amazingly, to this day HCCA has refused to supply any of this vitally needed information to the elected representatives of the District. This has thwarted us in the administration and governance of the District and imperiled it financial survival.

11.     At the present time the board of directors is completely in the dark in terms of what is going on in the hospital, including revenues, debts, patient counts, etc. No material financial information has been provided to us about the condition of the Hospital. In fact, it appears as if the Board has been deceived about the financial condition of the hospital as prior to the Board Meeting on September 27, 2017, HCCA was reporting the hospital's profits were increasing.  However, at a public meeting held on September 27, 2017, which I attended, the CFO of HCCA publically stated and told the assembled crowd that the patient census had dropped to an ultra-low level, there was "no cash", accounts payable were at least $26 million and there was at least $25 million in uncollected charges.

12.     In recent days, we have also learned through third parties that the District may owe its utility company $139,000 and is being threatened with a power shut off.  I am also informed and believe that the District owes an important billing service no less than $2,000,000.   It owes its preferred provider of supplies and equipment about $400,000.   Physicians and medical groups have not been paid. The list goes on and on, but we do not know because HCCA will not tell us what we owe.

13.     At the public board meeting held on September 27, 2017 the CEO of HCCA, Benny  Benzeevi, M.D., publicly stated that the situation was so dire that the hospital had "only two options". Either accept a loan that HCCA had negotiated or close. However, Dr. Benzeevi did not inform us of the amount of the loan, the lender, the term of the loan, the collateral, or any other vitally needed details as to the supposed loan. He did not provide any terms or conditions as to the loan whatsoever.

14.    I have over 30 years' experience in municipal governance including 10 years as City Manager of the City of Tulare from 1995 to 2005. It is my professional opinion, and based on long professional experience, that the Contract between HCCA and the District is very unconscionable, unfavorable, void as to public policy, burdensome, over expensive and improperly interferes with the legally required governance of the District.  The District does not need nor want this Contract.  It has alternatives that are much more favorable.

15.    On September 28, 2017 the board was informed that only a few of the of the essential HCCA employees who operate the hospital were paid for their services, leaving a great number of nurses and other healthcare personnel unpaid.  The lifeblood of a hospital are the dedicated healthcare professionals who give care and comfort to the patients.  Nonpayment of employees threatened the survival of the hospital.

16.    I am informed and believe that on September 29, 2017 HCCA's CFO assembled groups of employees and told them that if the District did not accept the loan HCCA had negotiated and described to the board, the hospital would be shut down. This CFO was personally present at the meeting held the night before and he knew Dr. Benzeevi had NOT made such a disclosure to the board. He lied and told the employees that HCCA had presented the loan details and that the board had refused to consider it when, in actuality, the board did not receive any information about the so-called loan.

17.    From and after September 29, 2017  the District and HCCA reached out to each other, through counsel, and attempted to avoid a crisis. Proposals were exchanged and none were found to be mutually agreeable.

18.    Finally, on October 6 at 6:12 PM, the District was informed that unless agreement was reached by 8 AM on October 7, 2017, HCCA would proceed to

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT
OF MOTION FOR AUTHORIZATION TO REJECT          -11-
EXECUTORY CONTRACT (HEALTHCARE
CONGLOMERATE ASSOCIATES, LLC)

36894-00000 4742360 1

00158917-gaa-10.10.2017

1 | terminate or suspend its employees.

2 | 19. Having been unable to reach an acceptable agreement for a turnover of

3 | District governance and operations, on October 9, 2017 the board met and discussed at

4 | length its available courses of action and reviewed, again, the Contract. The board (the

5 | undersigned, Avila and Jamaica) voted to instruct its counsel to seek rejection and

6 | termination of the Contract so the District can recover control over the District's assets,

7 |

8 | finances and operations and so the Board can fulfil its fiduciary and statutory duties.

9 | Ms. Gutierrez was not present as she was out of the country.

10 | 20. On October 4, 2017 the District made arrangements with its Crisis

11 | Manager, HFS, to assume control over hospital operations if HCCA is terminated/

12 | rejected and HFS made arrangements with a healthcare provider of significant size,

13 | located in Fresno, to provide emergency interim management of the District's

14 | healthcare facilities and provide emergency funding to keep the hospital open for an

15 |

16 | interim period of time. The terms are still being negotiated.

17 | 21. The District respectfully requests that the Court authorize the District to

18 | reject the HCCA contract.

19 | I am over the age of 18 and if I were called as a witness in connection with this

20 | proceeding I would and could testify as is set out in this declaration. I so declare under

21 |

22 | penalty of perjury this blank day of October 10th, 2017 at Tulare, California.

23 |

24 | Kevin B. Northcraft

25 |

26 |

27 |

28 |

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT 36894-00000 4747360 1
OF MOTION FOR AUTHORIZATION TO REJECT          -12-
EXECUTORY CONTRACT (HEALTHCARE                                      00158913-gaa-10 10.2017
CONGLOMERATE ASSOCIATES, LLC)

4

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Attorneys for Chapter 9 Counsel


McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Timothy L. Thompson, #133537
 *tim.thompson@mccormickbarstow.com*
Mandy L. Jeffcoach, #232313
 *mandy.jeffcoach@mccormickbarstow.com*
Nikole E. Cunningham, #277976
 *niki.cunningham@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:   (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for District Counsel

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER , | DC No.: WW-1 |
| | Chapter 9 |
| Debtor. | Date:    October 12, 2017 |
| | Time:    10:30 a.m. |
| Tax ID # 94-6002897 | Place:   2500 Tulare Street |
| Address:    869 N. Cherry Street | Fresno, CA 93721 |
| Tulare, CA 93274 | Courtroom 13 |
| | Judge:   Honorable Rene Lastreto II |

**DECLARATION OF RICHARD GIANELLO IN SUPPORT OF MOTION FOR
AUTHORIZATION TO REJECT EXECUTORY CONTRACT
(HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

I, Richard A Gianello, declare:

1.    I am a Partner at Wipfli LLP/HFS Consultants ("HFS"), who has been hired as an advisor and crisis manager for Debtor TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER ("Debtor"). I have personal knowledge of the events and facts described in this Declaration, and if called upon to testify about the same, could and would competently do so.

2.    I am submitting this Declaration in Support of Debtor's Motion for Authorization to Reject Executory Contract (Healthcare Conglomerate Associates, LLC ("HCCA").

3.    The Board retained HFS during a Special Board Meeting on October 4, 2017. HFS has a long history of assisting hospitals and hospital districts who are in financial crisis. The purpose of our retention was for HFS to serve an interim role and have no intentions as serving as the long term manager for the Debtor, and specifically its Board. To delivery transparency, the Board indicated a desire to have an objective set of eyes to evaluate the Debtor's operations, provide meaningful analysis and report on the current financial position so that the Debtor and its Board can understand all of the issues it is facing and make informed decisions and recommendations. HFS was also intended to act an intermediary to communicate with and evaluate the information being provided by current management

4.    As part of our scope of work, we have evaluated the applicable to which Debtor has bond indebtedness. General Obligation Bonds, Election of 2005, Series A (2007); interest at 4.0% to 4.65% due semi-annually; principal due in annual amounts ranging from $15,000.00 on August 1, 2012 to $2 million due on August 1, 2037; collateralized by ad valorem tax revenues. General Obligation Bonds, Election of 2005, Series B (2009); interest at 6.45% to 8.0% due semi-annually; principal due in annual amounts ranging from $100,000.00 on August 1, 2014 to $17,240,000.00 due on August 1, 2039; collateralized by and valorem tax revenues. Series 2007 Refunding Revenue Bonds: Interest at 3.75% to 5.2% due semi-annually; principal due in annual amounts ranging from $405,000.00 due on November 1, 2008 to $1,210,000.00 due on November 1, 2032; collateralized by District revenues.

5.    Based on my review of the documents available to me, all bonds were current as of the date of this Declaration.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1      6.     The current Fitch rating for the Debtor is CC which was revised downward on or about

2  September 7, 2017.

3      7.     In connection with my work with hospital, I understand that under California law,

4  hospitals are required to treat any person who presents at the emergency room without regard to the

5  patient's ability to pay for services.  The District accepts all patients regardless of their ability to pay.

6  The District absorbs the costs of medical care for uninsured patients who account for a very large

7  percentage of its volume.  It is my understanding that a patient is classified as a charity patient by

8  reference to certain established policies of the political district.  Essentially, these policies define

9  charity services as those services for which no payment is anticipated.

10     8.     I am informed and believe that the Debtor has agreements with third party payors that

11 provide for payments to TRMC at amounts different from its established rates.  A summary of

12 payment arrangements with major third party payors follows:

13         a.     MediCare:  Payments for inpatient acute care services rendered to MediCare

14 program beneficiaries are based on prospectively determined rates, which vary according to the

15 patient diagnostic classification systems.  Outpatient services are generally paid under an outpatient

16 classification system subject to certain limitations.  The Debtor is subject to cost reimbursable services

17 in rural healthcare services.  As I understand it, filed cost reports are subject to final settlements

18 determined after submission of the annual cost reports and audits thereof by the MediCare fiscal

19 intermediary.

20         b.     Medi-Cal:  Payments for inpatient acute care services rendered to MediCal

21 program beneficiaries are based on prospectively determined rates, which vary according to the

22 patient diagnostic classification systems.  Outpatient services are generally paid through an outpatient

23 published fee schedule.

24         c.     Other:  Payments for services rendered to other than MediCare and Medi-Cal

25 patients are based on established rates or on agreements with certain commercial insurance

26 companies, health maintenance organizations and preferred provider organizations which provide for

27 various discounts from established rates.

28 ///

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1           d.      Medi-Cal and Medicare programs, which represents, as I understand it, a

2 considerable amount of gross patient revenues, are highly regulated and controlled, are subject to

3 frequent changes in reimbursement levels based upon actions of the California Department of Health

4 Care Services, the U.S. Department of Health and Human Services (CMS) and Congress. In addition,

5 many private insurers base their payment schedules on a percentage of Medicare rates. Payment

6 reductions by Medi-Cal and Medicare negatively affect the Debtor's revenue.

7         9.      As of the date of this Declaration, HFS has not been able to obtain any meaningful

8 financial information would enable HFS to evaluate the current operations of the hospital, including

9 what payments have been received from any of the above referenced programs.

10       I declare under the penalty of perjury and the laws of the state of California that the foregoing

11 is true and correct. This declaration was executed by the undersigned on this ⎽⎽10⎽⎽ day of October,

12 2017, in Oakland, California.

13

14                                    Richard Gianello

15

16

17

18

19

20

21

22

23

24

25

26

27  00158909-gaa-10.10.2017

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720