1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
3  Los Angeles, CA 90025-0509
   Telephone:   310.820.8800
4  Facsimile:   310.820.8859
   Email:       amcdow@bakerlaw.com
5                mdelaney@bakerlaw.com

6  Attorneys for Debtor
   SOUTHERN INYO HEALTHCARE DISTRICT

7

8                  UNITED STATES BANKRUPTCY COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                         FRESNO DIVISION

11

   In re                                    | Case No.: 2016-10015
12
   SOUTHERN INYO HEALTHCARE              | Chapter 9
13 DISTRICT,
                                            | Doc. No.: BH-19
14            Debtor.

15                                          **DECLARATION OF JAQUE HICKMAN
                                            IN SUPPORT OF THE EMERGENCY
16                                          MOTION (1) FOR AUTHORITY TO
                                            IMMEDIATELY TERMINATE HCCA
17                                          MANAGEMENT AGREEMENT OR, IN
                                            THE ALTERNATIVE, FOR
18                                          AUTHORITY TO MODIFY THE TERMS
                                            OF THE HCCA MANAGEMENT
19                                          AGREEMENT IN ORDER TO
                                            DESIGNATE THE BOARD AS THE
20                                          SOLE SIGNATORY ON ALL DISTRICT
                                            BANK ACCOUNTS AND (2) TO
21                                          CONTINUE HEARING ON SECOND
                                            AMENDED DISCLOSURE STATEMENT
22                                          AND ASSOCIATED FILING
                                            DEADLINES**

23                                          Proposed Hearing:
                                            Date:    October 17, 2017
24                                          Time:    2:00 p.m.
                                            Place:   Dept. A, Ctrm. 11
25                                                    U.S. Bankruptcy Court
                                                      2500 Tulare Street
26                                                    Fresno, CA 93721

27

28

HICKMAN DECLARATION ISO MOTION TO TERMINATE HCCA MANAGEMENT AGREEMENT OR RESTRICT BANK ACCOUNT
ACCESS AND TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT

611518916.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

I, Jaque Hickman, hereby declare:

1.     I am at least 18 years of age.  I am the secretary of the board of directors of the Southern Inyo Healthcare District.  I submit this declaration in support of the contemporaneously filed *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "Motion").  Unless otherwise defined herein, all capitalized terms and phrases shall have the same meaning ascribed to them in the Motion

2.     Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to the same.

3.     The District is a special district formed under the California Local Healthcare District Law, Cal. Health and Safety Code § 32000, *et seq*., located in Lone Pine, California.  As of the commencement of the Chapter 9 Case, the District owned and operated three facilities—namely, an emergency and acute care facility with four (4) beds, a skilled nursing facility with thirty-three (33) beds, and an out-patient medical clinic.

4.     On or about January 2, 2016, the Debtor retained HCCA pursuant to the Management Services Agreement.  A true and correct copy of the Management Agreement is attached hereto as **Exhibit A**.

5.     Without any assistance from HCCA, the District has made significant strides towards the approval of the bond and tax measures necessary to fund the plan for the adjustment of debts.  The District has retained PFM Financial Advisors, LLC as bond consultant in order to conduct several analyses relating to the proposed bond issuance.  The District has also retained Quint & Thimmig LLP as bond counsel to assist with the legal aspects of seeking approval of the bond measure and structuring the bond and bond measure in order to comply with applicable law.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6.       The District also began preparing the necessary analyses and submissions to obtain approval of the bond measure. One of the analyses pertained to the financial performance of the District. In order to prepare the financial analysis, the District requested financial information and reports from HCCA. HCCA failed to comply with the request. Accordingly, the District board took steps to compel HCCA to comply with the request and, simultaneously, obtain the requisite financial information from an alternate source. Regrettably, the District board was unable to obtain a complete set of financial records. The District, however, was able to obtain copies of bank statements and transactional records for the District's bank accounts.

7.       A portion of the funding for the District's operations is derived from state and federal programs, including, without limitation, Medicare and Medicaid. To receive the maximum amount of funding, the District is required to provide an intergovernmental transfer of funds to the State of California. The District generates in excess of $1,000,000.00 per year from these IGT payments.

8.       HCCA was due to make an IGT payment on behalf of the District in or about September 2017, which I recently learned HCCA failed to do. As a result, the District is now unable to participate in the IGT program for September 2017, which will ultimately cost the District hundreds of thousands of dollars in governmental funding. The District has applied for a loan from Inyo County in an effort to obtain the funds necessary to make the IGT payment for October 2017 as the District board has no confidence that HCCA will fund the October 2017 IGT payment; however, the District may be unable to obtain the funding in time to participate in the program.

9.       On or about October 11, 2017, the District held a special board meeting to discuss, among other things, the findings from the evaluation of the Bank Records and whether to remove HCCA through the rejection and/or termination of the Management Agreement. The District board concluded that HCCA had engaged in a series of improper actions. In order to protect the interests of the District and its creditors, as well as the health, safety and welfare of the community served by the District, the District board determined that it had no choice but to reject

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

HICKMAN DECLARATION ISO MOTION TO TERMINATE HCCA MANAGEMENT AGREEMENT OR RESTRICT BANK ACCOUNT ACCESS AND TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT

611518916.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  and terminate the Management Agreement and remove HCCA from the operations of the

2  Facilities. Accordingly, on or about October 11, 2017, the District board voted to terminate and

3  reject the HCCA Management Agreement.

4         10.    The District has already taken substantial steps to transition the management of the

5  Facilities from HCCA back to the District, and while none of the board members had any

6  particular hospital experience prior to their appointment, all of them are experienced business

7  people and over the last two years (at least for the three board members who have served on the

8  board since the Bankruptcy Case was commenced) have acquired a wealth of knowledge

9  regarding how the District can and should be run. Accordingly, the District board is confident

10  that they will be able to quickly replace HCCA, and have already interviewed numerous

11  candidates to this end. For example, the District retained a new assistant director who is not only

12  familiar with the management and operation of similar facilities, but who is also experienced with

13  the restructuring of distressed hospitals. The District also entered into discussions to retain a new

14  chief restructuring officer. Furthermore, the District authorized insolvency counsel to take any

15  and all steps necessary to reject and terminate the Management Agreement and to remove HCCA

16  from management of the Facilities.

17         11.    I anticipate that the District will be able to retain new management and replace

18  HCCA as its chief restricting officer within sixty (60) days. Due to the proposed timing for the

19  election relating to the I do not believe that the replacement of HCCA will delay the proposed

20  effective date of the Second Amended Plan or the timeline for approval of the bond and/or tax

21  measures.

22

23        I declare under penalty of perjury that the foregoing is true and correct. Executed this

24  16th day of October 2017, at Lone Pine, California.

25

26

27                           Jaque Hickman

28

# EXHIBIT A

Management Services Agreement

between

HealthCare Conglomerate Associates, LLC

and

Southern Inyo Healthcare District

608081584.4

## MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement ("**Agreement**") is made and entered into effective as of January 2, 2016 ("**Effective Date**"), by and between HealthCare Conglomerate Associates, LLC, a California limited liability company ("**Manager**"), and Southern Inyo Healthcare District (the "**District**").

### R E C I T A L S:

**WHEREAS**, the District owns and operates an acute care hospital, a clinic, and a skilled nursing facility at 501 East Locust Street in Lone Pine, California (the "**Hospital**") together with the Other Facilities;

**WHEREAS**, the parties have determined that Manager's provision of services in accordance with the terms of this Agreement will further the ability of the District (1) to provide for efficient delivery of health care services; (2) serve the best interests of the communities served by the District; and (3) enhance the ability of the parties to effectively and efficiently provide health care for the communities served by the District;

**WHEREAS**, the parties intend that this arrangement will allow them to achieve a number of mutually beneficial objectives, including the following: (1) further the development of a community-based integrated health care system; (2) enhance the quality of health care services available to residents of the communities served by the District; (3) respond to the health care needs and cost concerns of community residents by allowing evaluation of existing services and addition of new services, as deemed appropriate by Manager; (4) achieve efficiencies through coordination, consolidation, or reorganization, as appropriate, of certain identified health care services; and (5) improve the capacity of the parties and their affiliates to recruit and retain physicians necessary to serve the health care needs of the community, develop linkages with other providers and payers, and expand the geographical service area of the District;

**WHEREAS**, Manager has heretofore expended considerable effort and resources, including, but not limited to, financial resources to review and analyze information regarding the Hospital provided by the District; and

**WHEREAS**, the District desires to engage Manager, and Manager desires to be engaged, to manage the Operations of the District upon the terms set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual undertakings and representations herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to become legally bound, hereby agree as follows:

### AGREEMENT

1.      **Definitions**.

All capitalized terms not defined elsewhere in this Agreement shall have the following meanings, unless a different meaning clearly appears from the context:

(a)      "**Affiliate**" means any other firm, partnership, association, corporation, joint venture or public body, directly or indirectly controlling or controlled by, or under direct or indirect common control with, the District or Manager. The term "control," when used with respect to a

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

particular Person, means the possession, directly or indirectly, of the power to direct or cause the direction of management in the policies of such Person whether through the ownership of voting stock, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(b)     "Annual Budget" shall have the meaning set forth in Section 4(f)(i).

(d)     "Buildings" means those buildings and other structures in which the Operations, now or hereafter are conducted, together with such other buildings and structures now or hereafter owned, leased or otherwise operated by the District that Manager elects, in its sole and absolute discretion, to operate hereunder, by notice to the District from time to time.

(e)     "Chief Restructuring Officer" shall have the meaning set forth in Section 4(a)(i).

(f)     "CMS" means the Centers for Medicare and Medicaid Services.

(g)     "Collections" shall have the meaning set forth in Section 4(g)(i).

(h)     "Compliance Plan" shall have the meaning set forth in Section 5(a).

(i)     "Consultants" shall have the meaning set forth in Section 4(b)(xii).

(j)     "Controlling Person" means any Person, who acting alone or with others, has the ability to directly or indirectly influence, direct, or cause the direction of the management, expenditure of money, or policies of a Person submitting an Acquisition Proposal, including any shareholder owning, directly or indirectly, legally or beneficially, more than 5% of the equity of such Person submitting an Acquisition Proposal, a management company or similar service provider (together with a Person who is a Controlling Person of such management company or other business entity) and any other individual who, because of a relationship of any nature with the Person submitting an Acquisition Proposal or its owners, or managers, is in a position of actual control or authority with respect to the Person submitting an Acquisition Proposal, without regard to whether the individual is formally named as an owner, manager, director, officer, provider, consultant, contractor, or employee of the Person submitting an Acquisition Proposal.

(k)     "CPI" shall have the meaning set forth in Section 6(b)(i).

(l)     "CPI Increase" shall have the meaning set forth in Section 6(b)(ii)(1).

(m)     "Depository" shall have the meaning set forth in Section 4(g)(i).

(n)     "Depository Account" shall have the meaning set forth in Section 4(g)(i).

(o)     "District Default" shall have the meaning set forth in Section 10(a).

(p)     "Emergent Expenses" shall have the meaning set forth in Section 4(f)(ii).

(q)     "GAAP" means United States generally accepted accounting principles and practices as in effect from time-to-time as applied by Manager.

(r)     "Governing Body" shall have the meaning set forth in Section 3(a).

2

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
008081584.4

(s) "<u>Governmental Authority</u>" means any federal, State or local judicial, executive or legislative body or governmental municipality, department, commission board, agency or authority, including government contractors for federal health programs, and including without limitation, the State of California – Health and Human Services Agency Office of Statewide Health Planning and Development.

(t) "<u>Governmental Depository Account</u>" means a Depository Account established for the sole purpose of receiving checks, wire transfers and other forms of electronic payments governed under the Social Security Act (42 U.S.C. §§ 1395 et seq.), including payments under Medicare, Medicaid and TRICARE/CHAMPUS, and payments administered or regulated by the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services (collectively "**Governmental Health Payers**").

(u) "<u>HIPAA</u>" means the Health Insurance Portability and Accountability Act of 1996 and the regulations promulgated pursuant thereto.

(v) "<u>Hospital</u>" shall have the meaning set forth in the Recitals.

(w) "<u>Hospital Law</u>" means <u>California Health and Safety Code</u> §32000 et seq., including those provisions of the <u>California Health and Safety Code</u> applicable to skilled nursing facilities.

(x) "<u>Ineligible Person</u>" shall have the meaning set forth in <u>Section 5(f)</u>.

(y) "<u>Jeopardy Event</u>" shall have the meaning set forth in <u>Section 10(d)(ii)</u>.

(z) "<u>Law</u>" means any constitutional provision, statute, ordinance, or other law, rule, regulation, interpretation, judgment, decree, or order of any Governmental Authority or any settlement agreement or compliance agreement with any Governmental Authority, including Hospital Law, as the foregoing may be revised, replaced or amended from time to time.

(aa) "<u>Manager</u>" has the meaning set forth in the Preamble.

(bb) "<u>Manager Default</u>" shall have the meaning set forth in <u>Section 10(c)</u>.

(cc) "<u>Manager Parties</u>" shall have the meaning set forth in <u>Section 3(e)(i)</u>.

(dd) "<u>Master Account</u>" shall have the meaning set forth in <u>Section 4(g)(iii)</u>.

(ee) "<u>Medical Staff</u>" shall have the meaning set forth in <u>Section 3(e)(i)</u>.

(ff) "<u>Net Adjusted Management Fee</u>" shall have the meaning set forth in <u>Section 6(b)(ii)(2)</u>.

(gg) "<u>OIG</u>" means the Office of Inspector General of the Department of Health and Human Services.

(hh) "<u>Operating Contracts</u>" shall have the meaning set forth in <u>Section 4(n)(ii)</u>.

(ii) "<u>Operating Period</u>" shall have the meaning set forth in <u>Section 2(a)</u>.

3

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(jj) "Operations" means the healthcare and other operations and programs which are conducted at the Hospital and the Other Facilities, as the same may be modified by Manager from time to time during the Operating Period.

(kk)     "Other Facilities" means those facilities and businesses identified on **Exhibit A** to this Agreement, together with such other facilities and clinics owned, leased or otherwise operated by the District that Manager elects, in its sole and absolute discretion, to manage hereunder, by notice to the District from time to time.

(ll) "Person" means an association, a corporation, a limited liability company, an individual, a partnership (general or limited), a trust, a hospital district organized under the Hospital Law, or any other entity or organization, including a Governmental Authority.

(mm)     "PHI" shall have the meaning set forth in Section 4(s)(iv).

(nn)     "State" means the State of California.

(oo)     "Suspended" shall have the meaning set forth in Section 9(b).

(pp)     "Termination Fee" shall have the meaning set forth in Section 10(b)(i).

2.     **Operating Period**.

(a)     Initial Operating Period. The initial term of this Agreement shall commence on the Effective Date and end on the date five (5) years thereafter (as such initial term may be renewed pursuant to Section 2(b), the "Operating Period").

(b)     Extension of Operating Period. Upon completion of the initial Operating Period or of any subsequent renewal Operating Period, this Agreement shall automatically renew for additional five (5) year periods unless either party shall send a written notice of intent not to renew the Agreement to the other party not less than six (6) months prior to the end of the initial Operating Period or then current renewal Operating Period, as applicable. Each renewal Operating Period shall be on the same terms and conditions set forth herein. Notwithstanding the foregoing, nothing herein is intended to permit the Operating Period to exceed beyond any time period as is permissible under applicable Law, or under any tax-exempt bond financing requirements with respect to bonds hereafter issued by the District. In the event the Operating Period exceeds any permissible time period, then the Operating Period shall be conformed to the maximum time period permitted under applicable Law.

(c)     Irrevocability of Agreement. The District acknowledges and agrees that Manager is entering into this Agreement in reliance on the long term nature of this Agreement, and further acknowledges that the rights, duties, powers and authority of each of the parties hereto, are intended to be non-terminable throughout the Operating Period, except in accordance with the express provisions of this Agreement. The District acknowledges that neither party will achieve the benefits intended to be achieved if the District has any continuing right or power to terminate this Agreement, or the relationship hereby created, except in accordance with the express provisions of this Agreement. Accordingly, the District, as a substantial inducement to Manager to enter into this Agreement and provide its proprietary systems and knowledge, hereby irrevocably waives and relinquishes any right, power or authority existing at law or in equity to terminate this Agreement, except in strict accordance with the express provisions of this Agreement. The parties further

4

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584 4

hereby acknowledge that any breach of this Section will cause irreparable and permanent damage to Manager, not compensable by money damages.

3.    **General Responsibilities of the Parties.**

      (a)    <u>Appointment</u>. The District hereby engages and appoints Manager, and Manager hereby accepts such engagement, to exclusively provide day-to-day management services to and for the District with respect to the Hospital and the Other Facilities. Anything herein to the contrary notwithstanding, Manager's authority hereunder shall be limited as described in <u>Section 3(b)</u>, and Manager shall otherwise perform its services hereunder in accordance with <u>Section 5.</u> Manager's duties shall include but are not limited to financial and operating system management, preparation of proposed annual budgets, purchasing, contracting support and relationship management, expansion of the Hospital and the Other Facilities or the services offered, preparation and implementation of staffing plans, recruitment of personnel, and supervision of the day-to-day Operations of the Hospital and the Other Facilities. Manager shall perform its services hereunder in accordance with the District Bylaws, the policies lawfully adopted by the Board of Directors of the District (the "**Governing Body**") and applicable Law. It is understood and agreed that to the extent that (i) Hospital Law is in conflict with any of the District's Bylaws, then Hospital Law shall control or (ii) the District's Bylaws or policies conflict with the terms hereof, the terms hereof shall control.

      (b)    <u>General Control of the District</u>.

          (i)    Manager expressly acknowledges and agrees that the District exercises, and at all times during the Operating Period, shall exercise the ultimate control and direction of the Operations. Subject to the provisions of <u>Section 3(a)</u>, Manager shall operate within the reasonable parameters, policies and procedures adopted by the Governing Body and communicated to Manager by the District, (and provided that such parameters, policies and procedures do not, in Manager's reasonable judgment, jeopardize the quality of patient care provided at the Hospital and the Other Facilities, or require Manager or the District to engage in any illegal or unethical acts, or breach any express provision of this Agreement or any other agreement of the parties). Notwithstanding the ultimate control to be exercised by the Governing Body, Manager shall comply with its obligations under this Agreement, provided that the District shall not interfere with its ability to do so.

          (ii)    Notwithstanding anything to the contrary herein, any change in the licensure type, payment model chosen by the Hospital, classification or operations of the Hospital other than as a Medicare participating critical access hospital (and/or as a sole community hospital, as applicable) and skilled nursing facility, shall be subject to the prior written approval of the Governing Body and Manager.

          (iii)The District shall timely furnish Manager with sufficient funds to timely pay the expenses relating to the Operations, including funding of both operating expenses and non-operating expenses. Notwithstanding the foregoing, the District shall not be in default in its obligations to furnish Manager with sufficient funds to pay its

5

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

operating and non-operating expenses relating to the Operations if the District has insufficient revenue available for such purposes from the Operations and borrowings (and the District may, but shall not be required to, borrow funds to pay shortages in funds available to pay expenses relating to its Operations). Subject to the more expedient funding requirements set forth in Section 4(b)(viii), if funds in the Master Account are insufficient, Manager shall notify the District of the need for funds by submitting Manager's fund request to the District and the District shall supply the requested funds within three (3) days of Manager's notice to the District of the need for same, provided that for unanticipated Emergent Expenses, Manager shall have the right to provide a shorter notice period. Manager shall not be obliged to fund the District expenses hereunder or provide funds to accommodate shortfalls in revenue, however, Manager may, in its sole and absolute discretion, advance funds as provided in Section 4(j)(i)(1). Manager shall not be in default hereunder if Manager's failure to comply with the terms of this Agreement is due to the lack of adequate funds provided by the District.

    (iv)    The District shall assure that its funds are used to support the Hospital and the Other Facilities and to provide charitable care therein and are not diverted to other uses.

(c)    Cooperation and Responsiveness.

    (i)    The District and its Governing Body shall fully and timely cooperate in good faith with Manager and shall be responsive and available to Manager during the Operating Period in order that Manager can carry out its duties and obligations hereunder.

    (ii)    In any instance in which the District (or the Governing Body) has an obligation to provide input or decide an issue, or provide (or withhold) its approval or consent under the terms of this Agreement, the District (or the Governing Body) shall do so in accordance with the provisions of Section 11(o). Unless a specific period of time is set forth herein for a particular act, a reasonable period of time for the District to provide input or decide an issue, or provide (or withhold) its approval or consent shall generally be within five (5) to seven (7) calendar days.

    (iii)    In addition to its obligation to provide funds, the District will timely provide Manager with the necessary equipment, information and other resources to enable Manager to fully and timely perform its services hereunder.

(d)    Relationship.

    (i)    Except as otherwise required by applicable Law or as specifically authorized hereunder, the District shall not interfere, directly or

6

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

indirectly, with Manager's decisions or the daily Operations, and shall not interfere with Manager's ability to perform its obligations hereunder. Except upon request of Manager, individual members of the District's Governing Body shall not issue directions to Manager, except following and in accordance with the formal actions of the District's Governing Body.

(ii)     The District representatives' communications, formal and informal, regarding Manager and the Operations with Persons associated or affiliated with the Operations or Manager, shall be conducted exclusively with Persons designated by Manager's chief executive officer.

(iii)    Neither the District nor its Governing Body, on the one hand, nor Manager or any of the other Manager Parties on the other hand, shall (nor cause or encourage others to) disclose confidential or negative information regarding, or take any action or omit to take any action that is materially detrimental to the reputation of (anything which might tend to bring a party into public disrepute, hatred, contempt, scorn, scandal, or ridicule, or which might tend to reflect unfavorably on or otherwise degrade such party), the other or make any statements, verbally, in writing or otherwise, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of the other, to anyone other than the Manager's chief executive officer or the District's President, or as may be required under Hospital Law. Notwithstanding the foregoing, negative information may be discussed within official District Governing Body meetings and in connection with its internal operations, provided that if such information is used in a non-confidential forum, the party bringing up such information shall use reasonable efforts to verify the veracity and objectivity of such information prior to disclosing same in a non-confidential forum. However, nothing herein shall prevent the any party from testifying truthfully in a legal proceeding or governmental administrative proceeding. The parties acknowledges and agrees that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, bondholders, industry analysts, competitors, strategic partners, vendors, employees (past and present), and clients.

(iv)     The parties acknowledge that: (1) this Section is a material provision of this Agreement; (2) any breach of this Section shall be a material breach of this Agreement, and (3) a breach of this Section would cause irreparable harm.

7

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(e)   Medical and Professional Matters.

   (i)   All medical and professional matters relating to the care and treatment of patients requiring professional medical judgment shall remain the responsibility of the District medical director(s) and medical staff of the Hospital (the "**Medical Staff**").

   (ii)  Subject to Subsection 3(e)(i), Manager shall provide such oversight and support as Manager, in its sole and absolute discretion, deems appropriate for the Medical Staff's administrative affairs, including monitoring the performance of professional services by the Medical Staff and other licensed personnel.

   (iii) The District retains control and authority over all appointments to the District's Medical Staff, the granting of clinical privileges at the District to the extent required by applicable Law and applicable accreditation standards, and any actions taken with respect to Medical Staff members, including appeals of actions.   Notwithstanding  the foregoing, the Chief Executive Officer or his or her designee may grant an individual temporary clinical privileges for a period not to exceed the greater of (i) one hundred twenty (120) days or (ii) such period as is allowed under applicable Law, all in accordance with accreditation agency requirements and the District's Bylaws.

(f)   Standards of Performance. The District acknowledges that while Manager shall expend its commercially reasonable efforts in performing its obligations under this Agreement, Manager does not guarantee any particular results, notwithstanding projections which may be made by Manager. Manager's projections and forward looking statements are based on estimates and expectations, and reasonably available competitive, financial, economic and other data, and as a result are inherently uncertain. Actual results could differ materially from those anticipated as a result of a variety of factors. Manager shall use its commercially reasonable judgment in providing the services required under this Agreement. The parties acknowledge that implementation of the District's charitable care purposes may not permit the maximization of the District's profits. Manager shall, for and on behalf of the District, use commercially reasonable efforts to make recommendations and take actions required hereunder to assist the District to comply in all material respects with any material Law respecting the Hospital and the Other Facilities.  The District covenants that it will, in good faith, consider all of Manager's recommendations regarding the Operations, and will support and implement, through policies and/or other appropriate actions of the Governing Body, the recommendations it deems reasonably appropriate. The District is a California Health Care District organized and operating under the Hospital Law with, inter alia, a charitable mission, and it has under the Hospital Law certain responsibilities and obligations, including, but not limited to, obligations to provide charity care and indigent care. At all times, Manager, in managing the District, shall follow the charity and indigent care policies and obligations of the District (provided that the Hospital and the Other Facilities' financial obligations in that regard shall not be materially changed unless such change is required by applicable Law) and shall assist the District in meeting all of the District's required obligations under Hospital Law. the District will promptly notify Manager of any changes to any policy, procedure, or the District Bylaws which may impact Manager's rights or obligations under this Agreement, including but not limited to, those affecting the Hospital and the Other Facilities' charity care obligations.

8

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

4.    **Duties of Manager**.

(a)    Hospital Chief Restructuring Officer.

(i)    Manager shall provide a Chief Restructuring Officer ("**Chief Restructuring Officer**") to provide the administrative and management services for the Hospital and the Other Facilities during its period of restructuring, and until such time as the Manager has determined that this position is no longer necessary because the restructuring has been completed. Such Chief Restructuring Officer shall carry out the usual and customary duties of such position within the health care industry. The Chief Restructuring Officer shall be an employee or an independent contractor of Manager.

(b)    Personnel.

(i)    District shall remain the exclusive employer / contractor of the personnel of the Hospital and the Other Facilities.

(ii)    Without limiting the generality of the provisions in Section 4(b)(i), all employees shall be employees of District for purposes of District's benefit programs or plans now existing or hereafter created, including compensation and payment and withholding of federal, state and local income, social security, unemployment, Medicare, other payroll and employment taxes, Section 125 plans, Section 403(b) annuities, workers' compensation and health insurance. District is solely responsible for the administration of employee benefits, benefit plans and programs for its employees. All wages, salaries, benefits and other expenses and charges incurred in connection with the District's employees shall be borne by the District.

(iii)    In compliance with applicable Law, Manager shall have the sole right and obligation to hire, fire and supervise all District employees, including a chief executive officer for the Hospital, and the licensed administrator for the skilled nursing facility, and to determine their compensation. Manager shall also have the sole right and obligation to recruit, employ, train, discipline, assign and reassign District employees, as needed for the Operations, and shall provide oversight and consultation regarding performance standards, personnel policies, and employee benefits.

(iv)    Manager shall be responsible for the development and implementation of policies and practices, in conformity with the terms of this Agreement and in accordance with applicable Law, relating to personnel management services only, including without limitation, enrolling, recruiting, interviewing, selecting, training, evaluating, replacing, supervising, disciplining, reassigning and terminating District employees, subject to Governing Body approval of such policies as may be required pursuant to 22 C.C.R. § 72521 or patient care policy committee approval as may be required pursuant to 22 C.C.R. § 72523.

9

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(v)     Manager shall confer with the District in determining the general range of the number and qualifications of employees required for the efficient and effective operation of Hospital and the Other Facilities and in establishing and revising in-service training programs, and job descriptions, all in order to accomplish the goals and objectives of Hospital and the Other Facilities. However, Manager shall have the ultimate authority to hire, fire and set the terms of employment for all such employees. To discourage nepotism and conflicts of interest, the District and its representatives agree that they shall not request or require that Manager: (i) hire or fire any specific employee or (ii) select, reject or promote an employee or contractor (or its' personnel) based on the individual's political affiliation or beliefs or as a reward for political services or as a form of political patronage, directly or indirectly. Likewise, the District shall not refer potential employees or contractors to Manager for hiring or engagement.

(vi)    Manager may hire or retain any consultants, accountants, attorneys or other professional personnel (collectively, "**Consultants**") which Manager, in its sole and absolute discretion, determines is necessary or appropriate to assist Manager in carrying out its duties and responsibilities under this Agreement subject to the requirements of 22 C.C.R. § 72511. The expense of any Consultants so retained shall be an expense of the District, but Manager shall not retain any such Consultants without the approval of the Governing Body, if the cost of such services shall exceed $100,000 in any calendar year for such services, unless otherwise set forth in the approved Annual Budget.

(c)     _Patient Safety Quality and Performance Measurement_. Manager shall assist in the implementation of the Hospital and the Other Facilities' patient safety, quality, and performance measurement program. Manager shall provide oversight and facilitate the Hospital and the Other Facilities' patient safety, quality, regulatory readiness, infection control/prevention, and service excellence performance metrics. Manager activities shall include:

(i)     Coordination, data collection/analysis and recommendation/ facilitation of evidence-based practices to address the following:

(1)     Clinical program measures, hospital-acquired conditions, and other priority patient populations;

(2)     Patient and staff safety, including the reduction of preventable adverse events;

(3)     Infection control and prevention services to include electronic surveillance, tracking and transmission of required data;

(4)     Regulatory and accreditation readiness and compliance tracking;

(5)     Evidence-based policy and procedure development; and

10

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(6)     Patient satisfaction and loyalty.

(ii)    Manager will also recommend strategies to enhance the Hospital's patient safety and quality department infrastructures, assist the Hospital and the Other Facilities in implementation of evidence-based order sets, and disseminate best practices. The District shall be responsible for all expenses associated with surveys, licensure, permits, and accreditation.

(iii)   Manager shall use reasonable efforts, on a consultative basis, to guide or direct the District in maximizing its total performance score under the Federal government's value-based purchasing programs, including but not limited to the clinical process of core measures, the patient experience of care dimensions; and in connection with the Consumer Assessment of Health Care Providers and Systems surveys.

(d)     Standard Forms. Manager shall recommend standard formats for all charts, invoices, and other forms used in the Operations. Manager shall make reasonable efforts to ensure that such standard forms remain current as to applicable Law, as well as industry standards.

(e)     Revenue Cycle Management. Manager shall provide advice, direction, and reasonable assistance to the District and assist it in overseeing its revenue cycle management for the Hospital and the Other Facilities. Services provided by Manager include making recommendations regarding Hospital and the Other Facilities':

(i)     Charge master or similar schedule of charges;

(ii)    Adjustment coding;

(iii)   Patient / client billing and collections; and

(iv)    Coding and billing compliance audits.

All direct, out-of-pocket fees, expenses and charges incurred in connection with actual revenue cycle management shall be the District expenses.

(f)     Annual Budget.

(i)     Manager shall be responsible for preparation, presentation, monitoring, and reporting of the annual operating and capital budgets (collectively, the "**Annual Budget**"). Each proposed Annual Budget shall set forth an estimate of operating revenues and expenses (including capital expenses) for the next fiscal year, together with an explanation of anticipated changes in utilization, charges to patients and clients, payroll rates and positions, non-wage cost increases, and all other factors differing significantly from the then-current year. Manager shall be responsible for the oversight and review of the Annual Budgets, with final recommendations presented to the Governing Body for approval.  Each Annual Budget will be created

11

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

and implemented to coincide with the District's fiscal year. Once approved, Manager shall thereafter establish a plan necessary to implement such Annual Budget.

(ii)    Subject to the limitations set forth in Section 3(f), Manager shall take commercially reasonable efforts to oversee the management of the Hospital and the Other Facilities so that the actual revenues, costs, and expenses of the operation and maintenance of the Hospital and the Other Facilities shall be consistent with the approved Annual Budget. Inclusion of any item within the Annual Budget shall constitute all necessary approval of the Governing Body for Manager to take such act to effectuate the budgeted item. Notwithstanding anything to the contrary herein, Manager shall have the right, in its sole and absolute discretion, to make any expenditures necessary on an emergent basis to avoid or mitigate damage to the Hospital and the Other Facilities, obtain equipment repairs or to avoid or mitigate injury or potential injury to Persons or property or that are necessary on an emergent basis to comply with any Law or to cure or prevent any violation of any Law, whether or not provided for or within the amounts provided for in the approved Annual Budget for the applicable year (collectively, the "**Emergent Expenses**"). Manager shall use its reasonable efforts to give the District advance notice of any such Emergent Expenses, and in any event, shall give notice as soon as reasonably practicable after such expenditures, but in no event later than fifteen (15) days.

(g)    Bank Accounts.

(i)    The District shall maintain one or more bank accounts (the "**Depository Accounts**") at one or more financial institutions (a "**Depository**"), together with resident trust fund accounts as required pursuant to 22 C.C.R. § 72529. The District shall cause all amounts received by or on behalf of the District in connection with the operation, maintenance, or ownership of the Hospital and the Other Facilities (the "**Collections**") to be deposited in the Depository Accounts and resident funds to be deposited into the resident trust fund accounts. However, Collections received from Governmental Health Payers shall be deposited into a separate Governmental Depository Account. Funds in the Governmental Depository Account shall be transferred, on a daily basis to a Depository Account (other than the Governmental Depository Account.)

(1)    The District shall enter into an agreement with each Depository to cause the Depository to receive such payments and deposit them into Governmental Depository Account in the name of the District, and sweep the proceeds of such account on a daily basis, into the Depository or Master Account as designated by Manager.

(2)    The foregoing instructions of the District with respect to the Government Depository Account shall be revocable, at the

12

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

sole instruction of the District, to the extent required by applicable Law; provided, however, that, unless otherwise required by applicable Law, if the District revokes such instructions, it shall be in material default of this Agreement and Manager shall, in addition to all other rights hereunder, be entitled to seek an order or judgment from a court of proper jurisdiction for specific performance to sweep the Governmental Depository Account pursuant to this Agreement.

(ii)    Manager, acting in the District's name and as agent of the District, as provided in Section 4(h) shall make or direct to be made timely deposits, in the Depository Accounts or the Master Account of all Collections which Manager receives.

(iii)   The District shall provide disposition instructions to the Depository to transfer, at the end of each business day during the Operating Period all amounts in the Depository Account into a bank account controlled by Manager (the "**Master Account**"). Except for the transfers to the Master Account, the District shall not remove, disburse, transfer, use, pledge, hypothecate, grant a lien on or security interest in, or otherwise encumber any funds in the Depository Accounts or Master Account.

(iv)    The District shall execute such documents as any Depository or Manager may reasonably require, including without limitation, a limited power of attorney, to permit the Depository to receive the Collections, endorse any checks, drafts, notes, money orders, cash, insurance payments, and other instruments relating to such Collections, deposit the Collections into the Depository Account, and to transfer the Collections each day from the Depository Account into the Master Account. The District shall be responsible for all fees, costs and expenses incurred in connection with maintaining the Depository Account, including all fees, costs and expenses of a lockbox which may be deemed desirable and appropriate by Manager; provided, however if and to the extent permitted by applicable Law, at the request of Manager, the Collections or any part thereof, shall be deposited directly into the Master Account.

(v)     Manager is hereby authorized to make payment from the Master Account or other accounts of the District, including the Depository Account, to itself and its Affiliates of any amounts due to it or any of them by the District under this Agreement or otherwise, including, without limitation, the Management Fee, and the reimbursement of expenses and advances, and the District acknowledges that any amounts due to Manager or any of its Affiliates under this Agreement, including without limitation, any Management Fee, shall be senior in priority, and shall not be subordinate to the payment of, any amount due to any other creditor of Company, unless otherwise agreed to in writing by Manager and shall be paid as provided in Section 6(f).

13

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(vi)    Manager shall have no liability or responsibility for any loss resulting from the insolvency, malfeasance or non-feasance of any Depository with respect to the District bank accounts.

(vii)   Manager shall have the right to make disbursements from the Master Account, the Depository Account and other the District bank accounts, on behalf of the District in such amounts and at such times as the same are required to operate the Hospital and the Other Facilities, as provided in Section 4(i) and to pay the expenses and debts incurred in connection therewith. If the District fails to timely advance funds for to pay expenses, Manager shall have the right, in its sole and absolute discretion, but not the obligation, to advance such funds, as provided in Section 4(i)(i)(1).

(h)    Charges and Collections of Accounts.

(i)     Manager shall assist the District in billing and collecting for all fees payable with respect to all services, equipment, devices and supplies provided to patients and clients at the Hospital and the Other Facilities, including the enforcement of the rights of the Hospital and the Other Facilities and/or the District as creditor under any contract or in connection with the rendering of any service in accordance with the District's charity care policies. All out-of-pocket costs and expenses relating to the billing and collection services, including without limitation, any fees or expenses payable to collection agencies, shall be for the account of the District.

(ii)    The District shall direct all third party payors to provide Manager with copies of all remittance advices in electronic format or in such other format as shall be agreeable to Manager.

(iii)   The District hereby irrevocably appoints Manager during the Operating Period as its true and lawful attorney-in-fact to take the following actions for and on behalf of and in the name of the District and agrees to execute the Limited Power of Attorney, attached hereto as **Exhibit B** and any other instrument reasonably requested by Manager to evidence such appointment to:

(1)    Bill patients and third party payors (including reimbursement or indemnification from insurance companies and plans, and other third party payors or fiscal intermediaries) in the name and provider number(s) of the District;

(2)    Collect in the name of the District from patients, insurance companies and all other third party payors (other than from Governmental Health Payers), all charges resulting from the provision of items and services rendered to patients of the Hospital and the Other Facilities, and to collect capitated payments and all other charges, fees or salaries resulting from or related to the Operations, including but not limited to any and all incentive funds and funds from shared risk and

14

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

bonus pools under any risk sharing arrangements wherein the District is the provider of medical services, in whole or in part;

(3)    Take possession of and endorse in the name of the District all cash, notes, checks, money orders, insurance payments, and any other instruments received as payment of accounts receivable for deposit into the Depository Account or Master Account or other account, as applicable;

(4)    Deposit all such Collections directly into the Depository Account or the Master Account, other than with respect to Governmental Health Payer receivables;

(5)    Deposit Governmental Health Payer receivables into the Governmental Depository Account;

(6)    Make withdrawals from the Depository Account and other the Depository Accounts for such purposes as are consistent with the provisions of this Agreement;

(7)    Place accounts for collection, settle and compromise claims, and institute legal action for the recovery of accounts; and

(8)    Execute all instruments or documents necessary or appropriate in connection with the above.

(iv)    With respect to Government Health Payer patients and clients, Manager shall bill the Governmental Health Payers for same in the name of and on behalf of the District.

(v)    At the District's expense, Manager shall be entitled to obtain the assistance of one or more billing and/or collection agencies to bill and/or collect sums due to the District, in accordance with the District's charity care policies and applicable Law, including, without limitation, Section 9007 of the Patient Protection and Affordable Care Act.

(vi)    Manager, on behalf of the District, may, in its name or in the name of the District, but in any event at the expense of the District, appeal or contest any action taken by any Governmental Authority against the District and/or the Operations, including, without limitation any overpayment claims, or contest by legal proceedings the validity of any Law adverse to the District and/or the Operations; provided, however, that if Manager pursues any such appeal or contest, or asserts any such legal proceeding, the District shall adequately secure and protect Manager from all loss, cost, damage or expense by bond or other means satisfactory to Manager if any action taken by any Governmental Authority against the District and/or the Operations related to such action could result in a loss, cost, damage, or expense to Manager. Notwithstanding the foregoing, Manager shall not pursue any such appeal or contest, or assert any such legal proceeding, which involves in excess of $100,000, without first obtaining the prior approval of the Governing Body, which will not be unreasonably withheld.

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
508081584.4

(l)   Payment of Expenses.

(i)   Manager shall provide oversight of the District's funds in connection with the timely payment of the District's liabilities and other obligations, including wages of District employees, subject to conformance with applicable Law relating to the use of public funds. Manager shall review the payables of the District and shall cause payment thereof to be made from the Depository Account, the Master Account and / or from funds otherwise provided by the District. If the District fails to timely advance funds for such expenses, Manager shall have the right, in its sole discretion, but not the obligation, to advance such funds, as provided in Section 4(j)(i)(1).

(ii)  The District hereby grants to Manager, to the extent permitted by applicable Law, throughout the Operating Period, an exclusive special power of attorney and appoints Manager, to the extent permitted by applicable Law, the District's exclusive true and lawful agent and attorney-in-fact, and Manager hereby accepts such special power of attorney and appointment, to: (i) sign checks, drafts, bank notes or other instruments on behalf of the District, (ii) make withdrawals from the Depository Account, the Master Account or other the District accounts (other than resident trust fund accounts, which shall be held solely for the benefit of applicable residents) for payments specified in this Agreement and (iii) designate, remove, and change such signatories on such accounts as Manager deems necessary or appropriate from time to time.

(iii) Upon request of Manager, the District shall execute and deliver to any applicable financial institution such additional documents or instruments as Manager may reasonably request to evidence or effect the special power of attorney granted to Manager by the District pursuant to this Section. The special power of attorney granted herein is coupled with an interest and shall be irrevocable except with Manager's written consent.

(iv)  It is specifically agreed and understood, however, that Manager's obligations under this Section 4 are subject to availability of the District funds to make such payments. Nothing contained herein shall obligate Manager to make any such payments from its own funds or resources or to advance any monies whatsoever to the District. If the District fails to timely advance funds, Manager shall have the right, in its sole and absolute discretion, but not the obligation, to advance such funds, as provided in Section 4(j)(i)(1). Notwithstanding the foregoing, no advance of funds hereunder shall cure the District's default resulting from a failure to timely provide funds as required hereunder, but it is understood that pursuant to Section 3(b)(iii), the District may not be in default for the failure to timely provide funds as set forth therein. Manager shall not be liable either primarily or as guarantor for debts of the Hospital or the Other Facilities, or the District under the terms of this Agreement. The District shall be responsible for payment of all legal fees and

16

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081564.4

collection fees incurred by Manager if the District fails to pay its invoices timely.

(j)     Pledge of Credit.

(i)     Manager shall not engage in any financial lending, financing or banking actions that result in liens, mortgages, lines of credit, security interest or financial obligations in the name of the District, without the prior written consent of the Governing Body. Prior to requesting consent for approval, Manager shall provide a detailed proposal to the Governing Body describing the amount of required funding, the purpose of the financing, the strategic plan to generate sufficient revenue to repay such financing and all other alternatives evaluated to obtain sufficient funding.

(1)     Notwithstanding anything in this Agreement to the contrary, in the event the District fails to timely advance funds as required hereunder and/or meet any of its payment obligations under this Agreement, Manager shall have the right, but not the obligation, in its sole and absolute discretion, to advance funds or agree to undertake to advance funds to any Person, as a loan to the District to meet the shortfall caused by the District's failure. As set forth in Section 4(j)(iv), such advance of funds by Manager, however, shall not cure any default, if any under Section 3(b)(iii), of the District as a result of its failure to timely provide funds. All sums advanced by Manager pursuant to such agreements or undertakings shall be for the District's account. The District shall pay Manager interest on all advanced funds at the rate set forth in Section 6(e) and the principal upon demand by Manager. Any advance made shall be evidenced by a promissory note issued by the District in an amount equal to the amount advanced.

(2)     To the extent permitted by applicable Law, to the extent Manager advances funds, this Agreement constitutes a security agreement pursuant to which the District provides Manager with a lien on (a) all accounts receivable of the District, and (b) any and all of the District's other assets, as specified by Manager, to the extent allowed by Law, and Manager shall have the right to file a Uniform Commercial Code financing statement with respect to such obligation without the signature of the District. In addition, Manager may request that it be provided with additional collateral for any advanced funds. District agrees that Manager's security interest in the accounts receivable and any other assets shall be in a first priority position.

(ii)    Except as provided in Section 4(j)(i), Manager shall not, under any circumstance, in the name of, or on behalf of, the District borrow any money or execute any promissory note, bill of exchange or other obligation, or dispose of any asset of the District not in the ordinary

17

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

course of business, without the consent of the Governing Body; and only to the extent allowed by all applicable Law.

(k)      Information Technology. Manager shall provide oversight of the information technology activities associated with the Hospital and the Other Facilities. Manager shall be responsible for oversight of the selection, negotiation, installation, and implementation of the information technology systems and structures at the Hospital and the Other Facilities consistent with the Annual Budget. Manager shall seek approval from the Governing Body of any new systems and/or termination of any existing agreements, which approval shall not be unreasonably withheld. The District shall be responsible for the direct expense of all hardware and software for the information technology activities of the Hospital and the Other Facilities. The District shall be responsible for the cost of maintenance and support of all such hardware and software, as well as the training of Manager and the District employees, physicians and other applicable personnel on systems and software provided, however, that Manager shall not incur any expense in excess of $100,000 unless set forth in the approved Annual Budget or otherwise approved by the Governing Body. For avoidance of doubt, Manager shall not perform the information technology maintenance for the District under the terms of this Agreement.

(l)      Internal Audit. Manager shall provide oversight of the District's routine audits of internal procedures and systems, including auditing of billing, information systems, payroll, and other areas as identified and shall perform such internal audits as Manager, in its reasonable discretion, deems necessary for the purposes of providing its services hereunder. External audits, if requested by and performed for the District, shall be the responsibility of the District. All direct, out-of-pocket fees, expenses and charges incurred in connection with such external and internal audits shall be a District expense. All internal and/or external audit expenses in excess of $10,000 shall be approved by the Governing Body, unless such expenses are set forth in the approved Annual Budget.

(m)      Managed Care Contracting. Manager shall provide recommendations regarding managed care contracts and rates, and assist the District in the negotiation and consummation of such contracts, and monitoring of contract effectiveness and compliance.

(n)      Operating Contracts.

(i)      Manager shall assist the District in negotiating and securing all third party Operating Contracts necessary or desirable for the proper and efficient management and operation of the Hospital and the Other Facilities.

(ii)      Notwithstanding Section 4(j), Manager may enter into, or modify, supplement, amend, discharge, or terminate, or grant waivers or releases of obligations under such contracts, leases, licenses, instruments, and other agreements ("**Operating Contracts**") in the name of and at the expense of the District, as may be deemed necessary or advisable by Manager for the furnishing of all professional, consulting, and staffing services, concessions, drugs, supplies, utilities, equipment, property maintenance, insurance and other products, goods, and services as may be necessary or appropriate from time to time for the maintenance and operation of the Hospital and the Other Facilities, or as may otherwise be necessary or appropriate to carry out Manager's obligations under

18

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
808081584.4

this Agreement. Subject to the terms hereof, Manager is hereby expressly authorized, as the District's agent, to execute and deliver any of such Operating Contracts in the name of and on behalf of the District, and presentation of a copy of this Agreement shall constitute conclusive evidence of such agency; provided, however that, Manager is also authorized to enter into and maintain in its own name any national and regional contracts in which the District may participate, as well as such other contracts for the District which, in the judgment of Manager, are advisable to be entered into in Manager's name. Upon Manager's request, the District shall execute

such agreements, contracts, leases, instruments, documents and other Agreements as Manager shall determine are desirable to facilitate the operation and management of the Hospital and the Other Facilities. With respect to all cost and expenses associated with Operating Contracts in Manager's name, the District shall reimburse Manager for all such costs and expenses and / or pay such costs and expenses directly, at Manager's discretion. Manager is expressly authorized to contract, in the name and on behalf of the District, for the provision by Manager or its Affiliates of any services to be provided with respect to the Operations.

(iii) In the event of a termination of this Agreement which results in no further relationship between the District and Manager, Manager shall cause any contracts, including Operating Contracts, it has entered into in its own name to manage and operate the Hospital and the Other Facilities pursuant to this Agreement for the benefit of the District to be assigned to the District and the District shall assume the obligations under all such agreements and shall indemnify Manager from and against any liability

(iv) All such Operating Contracts in excess of $100,000 or which are for amounts which exceed the line items set forth in any approved Annual Budget shall be subject to approval by the Governing Body, such approval not to be unreasonably delayed or denied (unless the items or services that are the subject of the Contract in excess of $100,000) have been approved previously in the Annual Budget.

(v) The expense of such third party contracts shall be a direct expense of the District. Manager shall not be obliged to pay for any the District purchases from its own funds nor shall Manager be obliged to guarantee, directly or indirectly, any debts of the Hospital or the District under the terms of any purchasing arrangement. If the District fails to timely pay amounts due under such arrangements, Manager shall have the right, in its sole discretion, but not the obligation, to advance the funds necessary to satisfy such obligations, as provided in Section 4(j)(i)(1).

(o)     Insurance. Manager shall consult with the District as to the type of insurance or self-insurance, amount of coverage thereunder, deductibles and/or self-insured retentions therefor, premiums therefor, and issuers thereof to be carried with respect to the Hospital and the Other Facilities and the Operations. Approval of any change to the types or limits of insurance

19

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

coverage for the District shall be made by the Governing Body. The District shall, solely at its own expense, obtain and maintain in full force and effect throughout the Operating Period the following policies of insurance or self-insurance coverage:

      (p)     Comprehensive general liability insurance, including personal injury and property damage liability insurance naming the District and Manager as insureds.

      (q)     Property and casualty insurance, including coverage for all Buildings and their contents, including boiler insurance naming the District and Manager as insureds.

      (r)     If deemed necessary by the District or Manager, comprehensive automobile liability insurance naming the District and Manager as insureds.

      (s)     Worker's compensation and employer's liability insurance and other similar insurance naming the District and Manager as insureds for the District's and Manager's employees.

      (t)     Professional liability insurance covering all Operations and, to the extent available, directors and officers insurance, naming the District and Manager (and Manager's executive employees) as named insureds. The professional liability insurance shall afford minimum protection (which may be effectuated through primary and/or excess coverage) of not less than $1,000,000.00 combined single limit for damage in any one occurrence and not less than $3,000,000.00 aggregate for all occurrences. The insurer must be licensed by the California Department of Insurance and have a general policyholders rating of not less than A-X or better by Best's Key Rating Guide and with a claims paying ability rating from S&P of at least AA or an equivalent rating from another rating agency acceptable to Manager. Manager may require that the District obtain from the insurer a statement as to good standing with the California Department of Insurance.

      (u)     Commercial umbrella or excess liability coverage and, to the extent available, regulatory insurance coverage, covering all Operations, naming the District and Manager as named insureds. The commercial Umbrella and Excessive Liability Insurance shall afford minimum protection (which may be effectuated through primary and/or excess coverage) of not less than $1,000,000.00 combined single limit for damage in any one occurrence and not less than $3,000,000.00 aggregate for all occurrences, insuring Manager and the District and their respective employees and representatives in connection with Operations. The insurer must be licensed by the California Department of Insurance and have a general policyholders rating of not less than A-X or better by Best's Key Rating Guide and with a claims paying ability rating from S&P of at least AA or an equivalent rating from another rating agency acceptable to Manager. Manager may require that the District obtain from the insurer a statement as to good standing with the California Department of Insurance.

      (v)     Insurance Specifications. The foregoing insurance shall meet the following specifications subject to the provisions of the District's joint powers agreements in BETA Healthcare Group and ALPHA Fund:

            (i)     All such policies of insurance shall be in such amounts as are deemed necessary by the District and Manager (but in no event less than the amounts set forth above) and shall contain a waiver of rights of subrogation clause against Manager and the District, to the maximum extent permitted under applicable Laws. The parties and

20

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

their respective Affiliates shall not assert against the others, and each does hereby waive with respect to the others, any claims for any losses, damages, liabilities or expenses (including attorneys' fees) incurred or sustained by any of them on account of damage or injury to Persons or property arising out of the ownership, operation and/or maintenance of the Hospital and the Other Facilities, to the extent that the same would be covered and paid by the insurance required to be carried hereunder. The District shall present such policies of insurance to Manager for review, upon request by Manager.

(ii)     The District shall cause Manager, and any Person affiliated with Manager, that Manager so directs, to be named as additional insureds on the liability insurance coverage described above and on any fidelity bond (if any). It is the intention of the parties that the insurance and bonds (if any) maintained by the District with respect to the Operations shall protect both the District and Manager and will be primary insurance for both parties for any and all losses covered thereby.

(iii)    Certificates of insurance for the above coverages and a copy of the bond (if any) and accompanying endorsement naming Manager and/or Manager's employees (specifying his/her position), as applicable, shall be provided to Manager within thirty (30) days of the Effective Date and thereafter within thirty (30) days (i) of policy or bond (if any) renewal or replacement and (ii) of a request by Manager. All such policies shall provide that the subject policy may not be canceled, modified or reduced (including, without limitation, any amendment that would reduce the scope or limit coverage or remove any endorsement to such policy or cause the same to no longer be in full force and effect) except upon not less than thirty (30) days prior written notice to Manager. Originals of each renewal policy or certificates therefore from the insurers evidencing the existence thereof shall be provided to Manager at least thirty (30) days prior to, but not later than, the expiration or termination dates of the applicable policy. In addition, the District shall notify Manager in writing of any reduction or cancellation, increase of deductible or material modification of any term or condition of any of insurance coverage required herein within twenty-four (24) hours of receipt.

(iv)     Manager reserves the right to procure, at the District's cost, any or all of the foregoing required insurance coverage, if the District fails or refuses to do so, or if Manager in its sole discretion determines that Manager's procuring of such insurance is most efficient and/or in the financial benefit of Manager and/or the District. Manager is not required to act under this Section 4(p) and shall not be liable for its failure to effect or maintain recommended insurance upon the District's failure to do so.

(v)      Manager may obtain similar coverages for its benefit by taking out policies with such insurance companies as may be selected by Manager. Notwithstanding anything herein to the contrary, any

21

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

insurance obtained by Manager hereunder may, at Manager's election, cover only Manager's interest. All direct, out-of-pocket fees, expenses and charges incurred in connection with obtaining such insurance shall be the District expenses.

(vi) If, during the Operating Period, the District is covered by general liability, professional liability, or other liability insurance on a "claims made" basis, then at least ten (10) days before the termination of this Agreement, the District shall procure and maintain, at the District's sole cost and expense, an extended reporting endorsement or "tail" insurance coverage for a period of at least four (4) years after the termination date of this Agreement, with coverage limits and deductible amounts equivalent to those required hereunder on the date immediately preceding the termination of this Agreement for such coverage for general, professional and other liability claims reported after the termination of this Agreement but concerning services provided during the Operating Period or the term of the claims made policy. The District shall provide Manager with a certificate evidencing such coverage no later than ten (10) days before the termination of this Agreement. The District shall be named as the primary insured party on each policy of tail insurance and Manager shall be named as an additional insured. This Section will survive the termination or expiration of the Agreement.

(vii) To the extent any insurance is placed through a self-insurance program or captive insurance program, the District shall assure that such insurance shall comply with all applicable Law, if such self-insurance or captive program is domiciled outside the United States, and the District shall assure that such coverage shall be, as appropriate, reinsured by reinsurers acceptable to Manager, in Manager's sole and absolute discretion.

(w) Purchasing.

(i) Manager shall be responsible for the oversight and management of the District's purchasing systems and procedures for the Operations at the supervisory / management level, including but not limited to oversight of:

(1) Capital purchasing;

(2) Researching and negotiating equipment based on Hospital and the Other Facilities' needs, specifications, and the Annual Budget;

(3) Reviewing oversight of Inventory par levels (monthly audits); and/or

(4) Department purchasing structures and systems.

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

22

(ii)    The District shall be responsible for the direct expense of all purchases and for all purchasing expenses, including but not limited to utilities, concessions, drugs, equipment, supplies, furniture or furnishings, inventory items, linens, machinery, medicines, and services.

(iii)    In furtherance of the foregoing, all capital and other expenditures made shall be subject to the purchasing and procurement policies and procedures of the District, its Bylaws, and applicable Law.

(x)    <u>Marketing and Communications</u>.

(i)    Manager shall provide consultation, advice and oversight related to marketing, advertising, and promotional issues, as well as marketing strategies and policies, as it deems necessary in its sole and absolute discretion.

(ii)    Manager shall:

(1)    Provide direction and advice regarding the marketing program for the Hospital and the Other Facilities which shall be reasonably designed to inform and educate health care professionals and the general public served by the District of the existence of one or more of the services offered by the District.

(2)    Cause, to the extent required by applicable Law, including Internal Revenue Code §501(r), a community needs health assessment to be prepared identifying the health and welfare needs of the residents who reside in the communities served by the District, and propose an implementation strategy to meet the outstanding community health needs identified in the assessment.

(3)    Cause to be prepared and distributed such descriptive booklets, brochures or pamphlets as Manager determines are necessary, in its sole and absolute discretion, to inform health care professionals and members of the public of the nature and requirements of State and Federal reimbursement programs for patients and how the same relate to the services offered at the District.

(iii)    All direct, out-of-pocket fees, expenses and charges incurred in connection with marketing, advertising, and promotional activities shall be at the sole cost and expense of the District.

(y)    <u>Medical Records</u>.

(i)    Manager shall be responsible for the oversight of the District's medical records activities at the executive levels, including development of department strategies and systems and planning.

23

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(ii)     During and following the expiration of the Operating Period, all records of the District shall remain the property of the District.

(iii)    All patient medical records shall be treated as confidential so as to comply with all applicable Laws regarding the confidentiality of patient records, including, without limitation, the privacy standards promulgated under HIPAA.

(iv)     Manager shall be a "Business Associate" of the District, as that term is defined in the regulations implementing HIPAA, and Manager's use of "Protected Health Information," as that term is defined in the regulations implementing HIPAA ("PHI"). Manager shall execute and comply with the Business Associate Agreement attached hereto as **Exhibit C**.

(v)      Manager shall notify the District of any data breach that may occur at the Hospital and the Other Facilities, promptly after Manager becomes aware of same.

(z)     Additional Reports.  Manager agrees to prepare, cause to be prepared or otherwise make available reports regarding the Operations as follows:

(i)      Within forty-five (45) days after the end of each fiscal quarter, Manager shall make available to the District the following information:

(1)      Relevant utilization statistics for the District for the prior quarter, including but not limited to patient volume and payor mix; and

(2)      Financial statements and budget analysis for the District for the prior quarter, as provided in Section 7(c).

(ii)     Manager shall provide to the Governing Body, on at least thirty (30) calendar days' notice, or sooner if necessary, to implement such required action, a description of any needed or discontinued services, refinancing proposals, expansion plans or material changes in operating procedures. The proposal shall explain the reasons for the proposed activity.

(aa)    Agency.  Subject to (i) approval of the Governing Body for acts outside of the ordinary course of the Hospital and the Other Facilities' businesses, and (ii) the terms hereof, Manager shall have the right to act as the agent of the District and/or the Hospital and the Other Facilities in the procuring of licenses, permits and other approvals, the payment and collection of accounts and in all other activities necessary or appropriate or useful to Manager in the carrying out of its duties as specified herein.

(bb)    Bankruptcy Advice.  Manager shall provide District with consultation and advice in connection with a potential filing by District of a proceeding under Chapter 9 of the Bankruptcy Code. If such petition is filed, Manager shall generally arrange and supervise the bankruptcy proceedings. The Chief Restructuring Officer shall serve as the representative of the District in connection with any such Chapter 9 bankruptcy proceeding.

24

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

5.      **Legal Compliance**.

(a)     Compliance Plan.  Manager has received a copy of the District's Compliance Policies and Procedures, including the Code of Conduct and the Physician Referral, Stark Law, and Anti-Kickback policies and procedures. Manager shall abide by these policies and procedures and applicable Law. Any recommendations and/or revisions of such policies made by Manager must be approved by the Governing Body. Manager will be given prompt written notice of any changes made to the foregoing. Manager may develop and recommend changes to the District's existing Compliance Plan (the "**Compliance Plan**") for implementation during the Operating Period. Any such recommendations and/or revisions to the Compliance Plan must be approved by the Governing Body. Manager shall use its commercially reasonable efforts to support the Compliance Plan. All costs of developing, implementing and maintaining the Compliance Plan shall be borne by the District.

(b)     Government Regulations.  On behalf of the District, Manager shall, subject to the limitations set forth herein, use its reasonable commercial efforts to help assure that: (1) the District continuously complies with all material applicable Laws, including without limitation, Hospital Law, State and Federal False Claims Act, Civil Monetary Penalty Law, State and Federal Anti-Kickback statutes, State and Federal self-referral prohibitions and applicable Medicare conditions of coverage and/or participation and (2) the District retains and maintains in good standing all necessary accreditations, licenses, permits, approvals and authorizations required for the ongoing operation of the Hospital and the Other Facilities.

(c)     Accreditation Compliance. Manager shall, subject to the limitations set forth herein, take all steps necessary to assist the District to continue meeting the applicable accreditation agency's accreditation standards, as they exist or may be changed from time-to-time, and as may be applicable to the Hospital and the Other Facilities' then current accreditation(s). Manager shall have the right to select and/or change the applicable accreditation agency for the Hospital, and if applicable, the Other Facilities, in its sole and absolute discretion.

(d)     Licensure. Manager shall not act in a manner which adversely affects the licensure of the District by the State as a Medicare participating hospital and skilled nursing facility (or any other Medicare reimbursement designation as may be agreed to by the parties). Within thirty (30) days of receipt by the District or Manager of any final report or written assessment concerning the licensure of the District by the State as a hospital or skilled nursing facility or the accreditation of the District, Manager shall furnish a copy of such report to the District.

(e)     HIPAA Compliance. Manager shall comply with the applicable provisions of the Administrative Simplification and Privacy Rules of the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations promulgated pursuant thereto, and any related or applicable privacy Law regarding medical information and protected health information.

(f)     Ineligible Persons - Disclosure Obligation. Manager shall use reasonable commercial efforts to monitor that none of Manager's or the District's employees employed at the Hospital and the Other Facilities have been sanctioned, debarred or suspended or otherwise deemed ineligible to participate in Medicare, Medicaid or other Federal health care programs, and procurement, or non-procurement programs (collectively, an "**Ineligible Person**"). Manager represents to the District that Manager is not an Ineligible Person nor has any pending proceedings or received notice of any action or proceeding to exclude, debar, suspend, or otherwise declare Manager ineligible under any federally funded health program.  Manager shall notify the District

25

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584 4

within three (3) business days after becoming aware of any fact or circumstance that would make Manager an Ineligible Person.

(g)     Access to Records. Manager shall, in accordance with Section 1395x(v)(1) of Title 42 United States Code until the expiration of four (4) years, or longer as may be required by applicable Law, after the termination of this Agreement, make available upon written request to the Secretary of the United States Department of Health and Human Services, or, upon request, to the Comptroller General of the United States Accounting Office, or any of their duly authorized representatives, a copy of this Agreement and such books, documents and records as are necessary to verify the nature and extent of the costs of the services provided by Manager under this Agreement. Manager further agrees that in the event Manager carries out any duties under this Agreement through a subcontract with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve-month period with a related organization, such agreement shall contain a clause to the effect that until expiration of four (4) years, or longer as may be required by Law, after the furnishing of such services pursuant to such subcontract, the related organization shall make available upon written request to the Secretary of the United States Department of Health and Human Services, or, upon request, to the Comptroller General of the United States Accounting Office, or any of their duly authorized representatives, a copy of such contract and such books, documents and records of such organizations as are necessary to verify the nature and extent of such costs. This Section is included pursuant to and is governed by the requirements of federal Law. No attorney-client, accountant-client, or other legal privilege will be deemed to have been waived by the parties or any of the parties' representatives by virtue of this Agreement.

(h)     No Obligation to Refer Patients. Nothing contained in this Agreement shall require (directly or indirectly, explicitly or implicitly) either Manager or its Affiliates or the District or its Affiliates, to refer any patients to one another or to use the Hospital or the Clinics or Other Facilities as a precondition to receiving the benefits set forth herein.

6.     **Management Fee**.

(a)     Management Fee. As Manager's fee for the performance of the management services under this Agreement, Manager shall receive monthly (in advance on the first day of each month) a fee (the "**Management Fee**") in the amount of Sixty Five Thousand Dollars ($65,000). Effective as of each January 1st, commencing January 1, 2017, the Management Fee shall be increased as provided in Section 6(b).

26

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(b)    <u>CPI Adjustment</u>.

       (i)    "**CPI**" means the monthly index of the U.S. City Average Consumer Price Index for Urban Wage Earners and Clerical Workers – Medical Care Services (1982-84 equals 100) published by the United States Department of Labor, Bureau of Labor Statistics or any successor agency that shall issue such index. In the event that the CPI is discontinued for any reason, the parties shall use such other index, or comparable statistics, on the cost of medical care services in the United States, as shall be computed and published by any agency of the United States or, if no such index is published by any agency of the United States, by a responsible financial periodical of recognized authority.

       (ii)    Beginning on January 1, 2017, and every year thereafter, the Management Fee shall each be adjusted for inflation as follows:

           (1)    The then existing Management Fee shall be multiplied by the greater of (i) the CPI percentage increase using the latest published data since the last adjustment or (ii) five percent (5%) ("**CPI Increase**");

           (2)    The then existing Management Fee shall then be added to the CPI Increase ("**Net Adjusted Management Fee**"); and

           (3)    The Net Adjusted Management Fee will then be multiplied by 1.01 to determine the Management Fee for the next ensuing calendar year.

           (4)    For example, the latest published CPI in January 2017 (e.g. November 2016) will be compared to the CPI for November 2015 (assuming that was the latest available published data) and the 2016 Management Fee will be multiplied by the percentage difference. Assuming a three percent increase, the Management Fee of $65,000 would be increased by $1,950 for a new monthly Net Adjusted Management Fee of $66,950. That amount would then be multiplied by 1.01 resulting in a new monthly Management Fee of $67,619.50.

(c)    <u>Expenses</u>.    In addition to the Management Fee, Manager shall be reimbursed monthly by the District for expenses expressly made reimbursable hereunder together with (ii) other usual, customary, and commercially reasonable out-of-pocket expenses incurred on behalf of the District, in accordance with the approved Annual Budget, or with approval from the Governing Body, if such fees are in excess of the amount in the approved Annual Budget. Manager shall not be reimbursed for any indirect or overhead expenses of Manager or its Affiliates.

(d)    <u>Operating Expenses</u>. Except as otherwise provided in this Agreement, all of the costs and expenses of maintaining and operating the Hospital and the Other Facilities shall be the sole cost and expense of the District, and shall not be expenses of Manager. Expenses shall include, without limitation:

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(i)     any operating or non-operating expense incurred in the provision of services to the District (unless specifically excluded hereunder); and

(ii)     The cost of any employee or Consultant that provides services at or in connection with the Hospital or the Clinics or Other Facilities for improved clinic performance, such as management, billing and collections, business office consultation, accounting and legal services, including salaries, benefits, other compensation, travel costs, and other expenses.

(e)     <u>Late Payments</u>.    If payment of amounts due hereunder, including Management Fees, and reimbursement of other amounts, are not made on the due date, then interest shall accrue on any unpaid amounts for each day beyond the due date at the rate of ten percent (10 %) per annum (simple interest).

(f)     <u>Senior Indebtedness Status</u>. The obligations of the District under this Agreement rank and shall rank at least senior in priority of payment to all other unsecured debt of the District. Fund transfers and other payments received by the District shall be directed, regardless of the payment purpose indicated in the payment document, according to the following priority ranking: (1) payment of the Management Fee, and other amounts due hereunder; (2) payment of any secured indebtedness; and (3) all other debts of the District.

(g)     <u>Setoff</u>. Notwithstanding any provision of this Agreement to the contrary, Manager shall have the right from time to time to setoff any amounts owed by the District to Manager against any amounts owed by Manager to the District and/or from any funds of the District over which Manager has a power of attorney or right of disbursement, whether pursuant to this Agreement or otherwise.

7.    **Books and Records**.

(a)     <u>Maintenance of Books and Records</u>. Manager shall supervise the maintenance of the books of account covering the operation of the District. Such books of account shall be maintained on an accrual basis in accordance with GAAP.

(b)     <u>Accounting</u>. Manager shall be responsible for the oversight of Hospital and the Other Facilities' accounting functions.

(c)     <u>Reports and Financial Statements</u>. Manager shall from time to time deliver to the Governing Body, from the District's data, the reports and financial statements reasonably requested by the Governing Body, as well as any other reports or financial statements required by the terms of this Agreement. Oversight shall include consultation with respect to Hospital and the Other Facilities:

(i)     General ledger / financial accounting;

(ii)     Accounts payable;

(iii)     Payroll;

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(iv)   Facilitation of Hospital and the Other Facilities annual audit; fees paid to independent accountants, however, shall be the responsibility of the District;

(v)    Cost reporting. Year-end information required for preparation of Medicare and MediCal cost reports shall be available to the District, and at the District's direction, to its accountants, prior to one hundred twenty (120) days into the year following the year for which they are prepared; and

(vi)   Monthly bank reconciliation.

(d)  Financial Statements.

(i)    Monthly financial statements, including income statements, balance sheets, statement of cash flows. Such statements shall generally be available to the District by the 20th day of the month following the applicable period.

(ii)   Quarterly financial statements including unaudited financial statements reflecting the operations of the District for such quarter. Such statements shall generally be available to the District by the 45th day following the end of each applicable quarter. Quarterly statements shall also include Manager's usual and customary statistical and performance measures.

(iii)  Annual financial statements, including an unaudited balance sheet of the District dated as of the end of the fiscal year and a related statement of income or loss for the District for such fiscal year. Year-end income statements, shall be available to the District, and at the District's direction, to its accountants, prior to ninety (90) days into the year following the year for which they are prepared.

(e)  Audit.

(i)    If the District so elects, such financial statements will be certified in the customary manner by an independent certified public accountant approved by the District. The expense of any such independent accountants shall be borne by the District.

(ii)   Manager shall respond, in writing, to any and all recommendations made by the District's independent auditors, which response shall either acknowledge that an audit proposal or recommendation has been implemented or, if not, the reasons why not.

(f)    Financial Reporting Expenses. Fees paid to independent firms and professionals in connection with the foregoing together with the direct, out-of-pocket fees, expenses and charges incurred in connection with the preparation of such shall be the District expenses.

(g)    Inspection of Records. Authorized agents of the District shall have the right at all reasonable times during usual business hours, at the District's expense, to audit, examine and

29

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

make copies of or extracts from the books of account of the District maintained by Manager. Such right may be exercised through any agent, independent public accountant or employee of the District designated by the District.

(h) <u>Confidentiality</u>. The parties agree that: (a) neither party will disclose any secrets or confidential technology, proprietary information, or trade secrets of the other party without the prior written consent of the transmitting party, except (i) to the receiving party's agents, advisors, auditors and representatives; or (ii) as may be necessary by reason of legal, accounting or regulatory requirements beyond the reasonable control of the recipient party; and (b) should this Agreement expire or terminate, neither party will take or retain any papers, records, files, computer programs and software, other documents or copies thereof, or other confidential information of any kind belonging to the other party, except for copies of same as may be reasonably necessary to defend any anticipated litigation or respond to claims or pursuant to ordinary data backup or storage processes.

8. <u>Indemnification and Liabilities</u>.

(a) <u>District Indemnity Obligation</u>. Manager does not hereby assume any of the obligations, liabilities or debts of the District or the Hospital or the Other Facilities, except as otherwise expressly provided herein, and shall not, by virtue of its performance hereunder, assume or become liable for any of such obligations, debts or liabilities. The District hereby agrees to indemnify, defend and hold Manager harmless from and against any and all claims, actions, liabilities, losses, costs and expenses of any nature whatsoever, including reasonable attorneys' fees and other costs of investigating and defending any such claim or action, asserted against Manager on account of any of the obligations, liabilities or debts of the District or the Hospital or the Other Facilities, except for demands arising from Manager's willful misconduct. The District further hereby agrees to defend, hold harmless and indemnify Manager and Manager Parties from and against any and all claims, actions, liabilities, losses, costs and expenses of any kind imposed on account of or arising out of actions taken by Manager or Manager Parties in what Manager or any such Person reasonably believed to be within the scope of their responsibilities under this Agreement, except for acts of willful misconduct. However, in no event shall Manager or any Manager Parties be liable to the District for any loss of use, goodwill, revenues or profits, or any consequential, special, indirect or incidental loss, damage or expense, or for punitive or exemplary damages, except for punitive or exemplary damages to the extent resulting from the willful misconduct of Manager or Manager Parties. This Section shall survive the expiration or termination of this Agreement. The foregoing indemnification is an addition to and not in limitation of the indemnification provisions as they relate to agents of the District (it being agreed that Manager is an agent of the District for that purpose), as set forth in the District's Bylaws, and any other indemnification provisions set forth in this Agreement.

(b) <u>Manager Not Liable for District Liabilities</u>. The District is and shall be fully liable and legally accountable at all times to all patients and Governmental Authorities for all patient care and funds and all other aspects of the operation and maintenance of the Hospital and the Other Facilities. Manager shall have absolutely no obligation or duty to act for or on behalf of the District with respect to any matter which is not directly related to Manager's obligation to provide the administrative and management services described herein to the Hospital and the Other Facilities, as and to the extent provided herein. Manager shall not be or become liable for any of the existing or future obligations, liabilities, or debts of the District, or for any of the obligations of the Hospital and the Other Facilities. This Section shall survive the expiration or termination of this Agreement.

30

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(c)     <u>Manager Not Liable for Condition of Buildings or Equipment.</u> Notwithstanding anything contained herein to the contrary, in no event shall Manager be liable for any damages arising from, incident to, or in connection with, the physical condition (including the environmental condition) of the Buildings or other structures owned or leased by the District, or the land upon which such Buildings or other structures are situated, or any of the equipment located thereon, and any such damages as may arise shall be the sole responsibility of the District, as a the District expense, except to the extent that Manager engages in willful misconduct in carrying out its responsibilities hereunder, in which event Manager's liability shall be limited to amounts not covered by applicable insurance policies. In connection with the foregoing, the District shall, with the assistance of Manager, comply with any and all applicable fire and safety codes. This Section shall survive the expiration or termination of this Agreement.

(d)     <u>Manager Not Liable for Acts or Omissions of the District's Agents.</u> Manager shall not be responsible for the acts or omissions of any of the District's managers, officers, directors, Governing Body, agents, employees, contractors, subcontractors or any other Persons performing any work or rendering any services in connection with the operation, management, ownership or other use of the Hospital and the Other Facilities, or any Consultants or other Persons engaged with respect thereto. This Section shall survive the expiration or termination of this Agreement.

(e)     <u>Manager Not Liable for Consultants' Fees and Other Financial Obligations.</u> The District, and not Manager, shall be responsible for all fees and other compensation charged by Consultants and other Persons engaged by the District (or by Manager on behalf of the District in accordance with the terms hereof) to provide services related to the Hospital and the Other Facilities. Manager shall be responsible for reviewing such fees, and the District shall timely provide Manager with copies of all bills, invoices, and other information relating to such fees.

(f)     <u>Release.</u> Because of the unique services to be provided by Manager hereunder, neither Manager nor any Manager Parties shall be liable to the District for any damages or loss of any kind including, without limitation: (i) direct damages; (ii) consequential damages; (iii) loss of profits; (iv) business interruption; (v) damage to property or death or injury to Persons from any cause whatsoever including, without limitation, professional liability or malpractice, acts of vandalism, loss of trade secrets or other confidential information; or (vi) damage, loss, or injury caused by a defect in the structure of the Hospital and the Other Facilities, power failure, fire, strikes, shortage of supplies, or any cause whatsoever in or about the Hospital and the Other Facilities or any part thereof, unless such claims, losses, costs, damages or expenses are the result of the willful misconduct of Manager or Manager Parties. This Section shall survive the expiration or termination of this Agreement.

(g)     <u>Manager Indemnity Obligation.</u> Manager shall indemnify, defend and hold the District harmless from and against any and all claims, actions, liabilities, losses, costs and expenses of any nature whatsoever, including reasonable attorneys' fees and other costs of investigating and defending any such claim or action, imposed on the District including its officers, directors, partners, employees and agents on account of or arising out of any breach of the terms hereof by Manager, and resulting from the willful misconduct of Manager or any Manager Parties. NOTWITHSTANDING ANY PROVISION OF THIS AGREEMENT (INCLUDING ANY INDEMNIFICATION OBLIGATIONS), IN NO EVENT SHALL MANAGER BE LIABLE (WHETHER IN AN ACTION IN NEGLIGENCE, CONTRACT OR TORT OR BASED ON A WARRANTY OR OTHERWISE) FOR (I) FAILURE TO REALIZE SAVINGS OR LOSS OF PROFITS, REVENUE, OR ANY OTHER INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, AND (II) DIRECT AND OTHER DAMAGES IN EXCESS OF THE AMOUNT OF MANAGEMENT

31

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

FEES EARNED BY MANAGER UNDER THIS AGREEMENT DURING THE THREE (3) MONTHS PRIOR TO THE DATE OF THE APPLICABLE CLAIM FOR DAMAGES, IN EACH CASE, EVEN IF MANAGER HAS BEEN ADVISED OF POSSIBILITY OF SUCH DAMAGES.

9. **Intentionally Omitted**.

10. **Default**.

(a) <u>District Default</u>.  The following occurrences shall each be deemed an event of default by the District ("**District Default**"), unless waived in writing by Manager:

(i) Material breach of any representation, warranty, or covenant of the District contained within this Agreement, after giving written notice to the District, and the District 's subsequent failure to cure the breach (if such breach is capable of being cured) within sixty (60) days (or ten (10) days in the event of a monetary breach or thirty (30) days in the event of a breach of any provision requiring the District to: (i) provide the Manager with a consent or approval or (ii) execute an agreement or document hereunder); provided, however, that if the cure cannot reasonably be effectuated within the applicable cure period, a longer period shall be allowed not to exceed ninety (90) days, if the District has commenced to cure such breach in good faith or has otherwise provided adequate protection or security to protect Manager's interest hereunder (which security shall be sufficient in Manager's sole and absolute discretion) within the applicable cure period, and the District is proceeding with due diligence to effect a cure.

(ii) The occurrence of any of the following:  (a) the filing by the District of a voluntary petition under Chapter 9 of the Bankruptcy Code (other than any filing made within thirty (30) days after the Effective Date), or (b) the filing of a petition for the appointment of a receiver for all or any of the property of the District, or (c) the taking of any voluntary or involuntary steps to dissolve or suspend the powers of the District (unless such steps to dissolve or suspend are removed) within thirty (30) days, or (d) the consent by the District to an order for relief under the Bankruptcy Code or the failure to vacate such an order for relief within sixty (60) days from and after the date of entry thereof, or (e) the entry of any order, judgment or decree, by any court of competent jurisdiction, on the application of any creditor of the District or any other Person, adjudicating the District as a bankrupt, or to be insolvent, or approving a petition seeking reorganization or the appointment of a receiver, trustee or liquidator of all or a substantial part of the District's assets, if such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days. In the event that the District files a petition under Chapter 9 of the Bankruptcy Code, the District agrees, to the extent permitted under applicable Law: (a) not to reject this Agreement; (b) to designate Manager as a vendor supplier that is critical to the District's business and obtain a critical vendor order that (x) waives or releases any preference liability; and (y) provides administrative priority or other

32

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

preferred status, acceptable to Manager, with respect to Manager's pre-petition claims (if any), and any and all funds advanced by Manager post-filing.

(b) Liquidated damages

(i) Each of the parties acknowledges that it would be extremely difficult and impracticable, if not impossible, for Manager to ascertain with any degree of certainty the amount of damages that would be suffered by Manager in the event of the occurrence of a District Default. In the event this Agreement is terminated as a result of any District Default, the District shall pay a fee (the "**Termination Fee**"), which fee is not a penalty, but rather is liquidated damages in accordance with California Civil Code Section 1671, which the parties have negotiated in good faith and have agreed is a reasonable fee under the circumstances. The Termination Fee shall be paid within five (5) days after the effective date of the termination of this Agreement.

(ii) The Termination Fee shall be an amount equal to Thirty Two Thousand Five Hundred Dollars ($32,500) per month first increased by CPI, as provided below, and then multiplied by the remaining number of months in the Operating Period at the time of the termination, discounted to its present value using the discount rate of the Federal Reserve Bank of San Francisco at the time of termination plus one percent (1%).

(1) "CPI" means the monthly index of the U.S. City Average Consumer Price Index for Urban Wage Earners and Clerical Workers – Medical Care Services (1982-84 equals 100) published by the United States Department of Labor, Bureau of Labor Statistics or any successor agency that shall issue such index. In the event that the CPI is discontinued for any reason, the parties shall use such other index, or comparable statistics, on the cost of medical care services in the United States, as shall be computed and published by any agency of the United States or, if no such index is published by any agency of the United States, by a responsible financial periodical of recognized authority.

(2) Inflation Adjustment. The Termination Fee shall be adjusted for inflation by multiplying the above stated Termination Fee by the CPI percentage increase between January 1, 2016 and the date the Termination Fee is payable, using the latest published data since the last adjustment.

(iii) If the District fails to pay the Termination Fee when due, then the Termination Fee, or any unpaid portion thereof, shall bear interest

33

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

from the date such payment was required to be made until the date of payment at the interest rate set forth in Section 6(e).

(iv)     If upon termination of this Agreement, the District contends that the Termination Fee is not due and owing and Manager contends that same is due and owing, the District shall be obliged to deposit, within three (3) days, the amount of the Termination Fee into an Escrow account with a national bank with not less than $50,000,000,000 in assets. The funds shall be released to the applicable party upon the sooner to occur of: (a) mutual instructions of Manager and the District; (b) final non-appealable order of a court directing the release of the funds to a party; or (c) to the District if Manager has not contested, in a judicial proceeding, that the funds are owed to it within twenty four (24) months of the termination.

(v)      This Section shall survive the expiration or termination of this Agreement.

(c)      Manager Default. The following occurrences shall each be deemed an event of default by Manager ("**Manager Default**"), unless waived in writing by the District:

(i)      Material breach of any material covenant of Manager contained within this Agreement, after giving written notice to Manager, and Manager's subsequent failure to cure the breach within sixty (60) days; provided, however, that if the cure cannot reasonably be effectuated within such sixty (60) day period, a longer period shall be allowed, if Manager has commenced to cure such breach or has otherwise provided adequate protection or security to protect the District 's interest hereunder, and Manager is proceeding to effect a cure. In determining whether a breach has occurred, the District shall exercise its reasonable discretion in good faith and shall use its best efforts to assist Manager in effectuating a cure.

(ii)     The occurrence of any of the following: (a) the filing by Manager of a voluntary petition in bankruptcy or for reorganization under the Bankruptcy Code, or (b) the filing of a petition for the appointment of a receiver for all or any substantial portion of the property of Manager, or (c) the taking of any voluntary or involuntary steps to dissolve or suspend the powers of Manager (unless such steps to dissolve or suspend are removed) within sixty (60) days, or (d) the consent by Manager to an order for relief under the Bankruptcy Code or the failure to vacate such an order for relief within sixty (60) days from and after the date of entry thereof, or (e) the entry of any order, judgment or decree, by any court of competent jurisdiction, on the application of any creditor of Manager or any other Person, adjudicating Manager as a bankrupt, or to be insolvent, or approving a petition seeking reorganization or the appointment of a receiver, trustee or liquidator of all or a substantial part of Manager's assets, if such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days.

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

(d)     Early Termination Events.

    (i)     Notwithstanding anything herein to the contrary, Manager shall have the absolute right to terminate this Agreement, with or without "cause," upon at least thirty (30) days written notice to the District.

    (ii)    In the event either party should be determined by a Governmental Authority to be in violation of any Law, by virtue of this arrangement or this arrangement is otherwise deemed illegal by a Court of competent jurisdiction in a final non-appealable determination ("**Jeopardy Events**"), the parties shall use best efforts to negotiate an amendment to this Agreement to remove or negate the Jeopardy Event. If they are unable to do so within six (6) months, either party may terminate this Agreement by written notice to the other.

    (iii)   In the event that the District has insufficient funds to pay the expenses of Operations, and Manager fails or refuses to fund same, if the licensure of the Hospital is in imminent jeopardy of being suspended or revoked because of the failure to pay the expenses of Operations, then the District may terminate this Agreement upon not less than ten (10) days written notice to Manager (during which time period Manager may avoid termination by paying the expenses in question or otherwise making arrangements with the applicable licensing authority to avoid suspension or revocation of the Hospital's license).

    (iv)    The District may terminate this Agreement on not less than 30 days' notice to Manager in the event that Manager is excluded, debarred, or otherwise ineligible to participate in Federal healthcare programs as defined in 42 USC § 1320a-7b(f) or any state healthcare program.

(e)     Procedure.

    (i)     In the event either party to this Agreement deems the other party to be in default of its obligations hereunder, then said party shall be required to provide notice of the alleged default to the other party, which notice shall contain a detailed description of the alleged default.

    (ii)    If the claim of default is disputed by the party receiving such notice, within ten (10) business days thereafter the party receiving the notice shall give notice to the charging party that the party receiving such notice disputes that the factual matters alleged constitute a default under this Agreement. If the parties cannot resolve such dispute within ten (10) business days thereafter (commencing on the date that the charging party receives notice of the dispute) the parties shall submit such matter to binding arbitration in Los Angeles County, California, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules and Procedure for Arbitration, and applying the Law of the State. Any determination by the arbitrator shall be final and binding upon the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by the parties. During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall not be terminated as a result of the alleged default which is in dispute.

(f)     Termination.

    (i)     In the event of a party's failure to cure a default within the time allowed herein for curing such default, the non-defaulting party may immediately terminate this Agreement by notice to the defaulting party and none of the parties shall have any further obligations under this Agreement, except those obligations that by their terms or nature extend beyond the date of expiration or termination, provided, that the non-defaulting party shall have all rights and remedies available hereunder and at Law as a result of the default. It is understood that

35

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

in the event of any monetary default by the District which is not cured within the specified ten (10) day period, Manager may immediately terminate this Agreement by written notice to the District and may cease rendering any services hereunder to the District, all without any further liability to the District (without regard to whether Manager has advanced any funds pursuant to Section 4(j)(i)(1).

(ii)  The parties may mutually agree at any time to terminate this Agreement.

(iii)  This Agreement shall automatically terminate if:

(1)  The Operating Period hereunder has expired; or

(2)  A substantial portion of the Hospital and the Other Facilities are destroyed or subject to condemnation such that the Operations are, in the sole and absolute discretion of Manager, materially impaired.

(iv)  In the event of termination of this Agreement, Manager shall remove itself as a signatory on the District's accounts and turn over to the District within ten (10) business days following the expiration or termination of this Agreement all business records of the District pertaining to the District. All medical records shall be maintained by the District and shall remain the property of the District.

11.  **Miscellaneous**.

(a)  Complete Agreement. This Agreement constitutes the entire agreement between the parties with respect to the management of the Hospital and the Other Facilities, and supersedes any and all prior agreements, either oral or written, between the parties with respect thereto.

(b)  Recordation. At the request of either party and at the expense of the requesting party, the parties shall execute a short form memorandum of this Agreement which identifies this Agreement, the parties, the Operating Period, the legal description of the real property upon which the Hospital and the Other Facilities are located, and such other matters as the parties may agree. Such memorandum shall be recorded in the Office of the County Recorder of Inyo County, California, at the expense of the requesting party.

(c)  Binding Agreement. This Agreement and the rights and obligations of the parties hereunder are binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Except as provided in this Section, neither party shall have the right to assign its rights or delegate its duties hereunder unless it first obtains the written consent of the other party hereto. Manager may, in its sole and absolute discretion, assign this Agreement, without the District's consent, to any Affiliate of Manager, or to any other Person which is owned and controlled by Manager or the Controlling Persons of Manager, or in connection with a Manager consolidation or sale by Manager to any Person of all or substantially all of Manager's assets or ownership interests. Nothing herein prevents Manager from subcontracting with third parties to perform any of the services required of Manager hereunder. Any assignment in violation of this Section shall be null and void.

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

      (d)   <u>Governing Law</u>. This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed, and governed by and in accordance with, the Law of the State. The parties agree that the exclusive jurisdiction and venue of all actions claims, or other legal proceedings arising in any manner pursuant to this Agreement, shall be vested in the Superior Court of the County of Los Angeles in the State and in no other. Notwithstanding any other provisions contained in any other document executed simultaneously herewith, each party, for itself, and all successor, assigns, heirs, executors, or future parties at interest agree and accept the jurisdiction of these courts and waive any defense of personal jurisdiction, forum non conveniens, venue or similar defenses and irrevocably agree to be bound by any judgment rendered in the aforementioned Court; exclusive of any and all other Federal or State courts.

      (e)   <u>Headings</u>. The section and subsection headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

      (f)   <u>Notices</u>. Except as otherwise expressly permitted herein, all notices required or permitted to be given hereunder shall be in writing (whether or not written notice is specified herein) and shall be personally delivered, or mailed by United States mail, postage prepaid, registered or certified, return receipt requested, or sent by a nationally recognized overnight delivery service, or sent by electronic transmission system. Unless such information is changed by written notice given by the affected party, any such notices shall be sent to the following addresses:

> <u>If to Manager</u>:
> HealthCare Conglomerate Associates
> Attention: Benny Benzeevi, M.D.
> 869 North Cherry Street
> Tulare, CA 93274
> Email: Benny@Healthcca.com
>
> <u>With a copy to</u>:
> Baker & Hostetler LLP
> Attention: Bruce R. Greene, Esq.
> 11601 Wilshire Blvd., Suite 1400
> Los Angeles, CA 90025
> Email: BGreene@bakerlaw.com
>
> <u>If to the District</u>:
> Southern Inyo Healthcare District
> Attention: Chairman of the Board
> 501 E. Locust Street
> Lone Pine, CA 93545
> Email: dickfedko@gmail.com
>
> <u>With a copy to</u>:
> Nave & Cortell, LLP
> Attention: Scott Nave, Esq.
> 4580 east Thousand Oaks Blvd., Suite 300
> Westlake Village, CA 91362
> Email: snave@navecortell.com

37

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
808081584.4

All notices sent by personal delivery shall be effective and deemed served upon receipt thereof. All notices sent by mail shall be effective and deemed served three (3) calendar days after being deposited in the United States mail. All notices sent by overnight delivery service shall be effective and deemed served when delivered by such overnight delivery service. All notices sent by electronic transmission system shall be effective and deemed served on the day of transmission, if on a business day and during business hours (9am until 5pm, PT) or otherwise on the next business day thereafter.

(g)     Survival of Representations. All of the representations, and warranties, and those covenants and agreements contained in this Agreement which are stated to survive termination or expiration of this Agreement, shall survive the expiration or the termination, for any reason, of this Agreement. No performance or execution of this Agreement, in whole or in part, by any party hereto, no course of dealing between the parties hereto or any delay or failure on the party of any party in exercising any rights hereunder or at Law or in equity, and no investigation by any party hereto, shall operate as a waiver of rights of such party, except to the extent expressly waived in writing by such party.

(h)     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Signatures transmitted by facsimile or e-mail or other digital means shall be accepted as original signatures.

(i)     Severability.

(i)     Each and every provision of this Agreement is severable, and the invalidity of one or more of such provisions shall not, in any way, affect the validity of this Agreement or any other provisions hereof. If any clause or provision of this Agreement is illegal, invalid or unenforceable, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and it is also the intention of the parties to this Agreement that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Agreement a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

(ii)     The parties hereby have made all reasonable efforts to ensure this Agreement represents and memorializes the complete and final agreement between the parties hereto, and that it complies with all applicable Law. In the event there is a change in Law, or the interpretations thereof, whether by statute, regulation, agency or judicial decision, or otherwise, that has any material effect on any term of this Agreement, or in the event that a party's reputable counsel (being legal counsel with at least ten (10) years' experience in Hospital Law) determines that any term of this Agreement poses a material risk of violating any Law, then the applicable term(s) of this Agreement shall be subject to renegotiation and either party may request renegotiation of the affected term or terms of this Agreement, upon written notice to the other party, to remedy such condition. In the interim, the parties shall perform their obligations hereunder in full

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
808081584.4

compliance with applicable Law. The parties expressly recognize that upon request for renegotiation, each party has a duty and obligation to the other only to renegotiate the affected term(s) in good faith and, further, the parties expressly agree that their consent to proposals submitted by the other party during renegotiation efforts shall not be unreasonably withheld or delayed. The parties further expressly recognize that in any such renegotiation, the relative economics to each of the parties shall be preserved. Should the parties be unable to renegotiate the term or terms so affected so as to bring it/them into compliance with Law or the interpretation thereof within sixty (60) days of the date on which written notice of a desired renegotiation is given, then either party shall be entitled, after the expiration of said sixty (60) day period, to terminate this Agreement upon sixty (60) days' written notice to the other party, provided that such party has received an opinion of reputable legal counsel, which legal counsel and opinion are reasonably acceptable to the other party, that it is more likely than not that this Agreement violates applicable Law.

(j)    Cumulative Rights and Remedies. Any right, power or remedy provided under this Agreement or any party hereto shall be cumulative and in addition to any other right, power or remedy provided under this Agreement or existing in Law or in equity, including, without limitation, the remedies of injunctive relief and specific performance.

(k)    Modification and Waiver.

(i)    This Agreement may only be amended by a writing signed by both parties.

(ii)   No failure by any party to insist upon strict compliance with any term of this Agreement, to exercise any option, enforce any right, or seek any remedy upon any default of any other party shall affect, or constitute a waiver of, the first party's right to insist upon such strict compliance, exercise that option, enforce that right, or seek that remedy with respect to that default or any prior, contemporaneous, or subsequent default; nor shall any custom or practice of the parties at variance with any provision of this Agreement affect or constitute a waiver of, any party's right to demand strict compliance with all provisions of this Agreement.

(l)    Attorneys' Fees. If any action at law or in equity (or any arbitration proceeding required hereunder) is brought to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs in addition to any other relief, as determined by the applicable court or arbitrator. The foregoing includes reasonable attorney's fees in connection with any bankruptcy proceeding (including relief from stay litigation), and in connection with any appeals.

(m)    Independent Contractor Status. Notwithstanding any provision contained herein to the contrary, Manager and the District each understand and agree that the parties hereto intend to act and perform as independent contractors. Therefore, the District is not an employee or partner of Manager. Nothing in this Agreement shall be construed as placing the District in a

39

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

relationship of employer-employee or partners with Manager. The parties shall not have the right to make any promises, warranties or representations, or to assume or create any obligations, on behalf of the other party except as otherwise expressly provided herein or as otherwise agreed. The District and Manager agree to be solely and entirely responsible for their respective acts and for the acts of any of their respective employees and agents, except as otherwise expressly provided herein.

(n)     Ambiguities and Uncertainties. This Agreement and any ambiguities or uncertainties herein, or the documents referenced herein, shall be equally and fairly interpreted and construed without reference to the identity of the party or parties preparing this Agreement or any of the documents referred to herein, on the express understanding and agreement that the parties participated equally in the negotiation of the Agreement and the documents referred to herein, or have had equal opportunity to do so. Accordingly, the parties hereby waive the benefit of California Civil Code Section 1654 and any successor or amended statute providing that in cases of uncertainty, language or a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

(o)     Consents, Approvals and Discretion. Except as herein expressly provided to the contrary, whenever this Agreement requires any consent or approval to be given by any party or any party must or may exercise discretion, the parties agree that such consent or approval shall not be unreasonably withheld, conditioned or delayed and such discretion shall be reasonably exercised, except as otherwise provided herein. If no response to a consent or request from Manager to the District for approval is provided to Manager within ten (10) days from the receipt by the District of the request, then the consent or approval of the District shall be deemed to have been given.

(p)     Expiration of Time Periods. In the event that any date specified herein is, or that any period specified herein expires on, a Saturday, a Sunday, or a State or federal holiday, then such date or the expiration date of such period, as the case may be, will be extended to the next succeeding business day. A business day is a day on which banks are required to be open for business in Los Angeles, California. All references in this Agreement to "days" are to calendar days, unless business days are so indicated.

(q)     Force Majeure. Except with respect to payment obligations, neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service deemed resulting, directly or indirectly, from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, machinery or supplies, vandalism, strikes or other work interruptions beyond the reasonable control of either party. However, both parties shall make good faith efforts to perform under this Agreement in the event of any such circumstances.

(r)     No Third-Party Beneficiaries. The rights, privileges, benefits, and obligations arising under or created by this Agreement are intended to apply to and shall only apply to the parties and to no other Persons, except as otherwise set forth herein.

(s)     Consequential Damages. Except as expressly provided herein to the contrary, neither party shall be liable under this Agreement for consequential damages, incidental damages, indirect damages, or special damages or for loss of profit, loss of business opportunity or loss of income. Notwithstanding anything to the contrary contained in this Agreement, the parties hereto acknowledge and agree that the terms and provisions of this Section 11(s) shall not

40

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

limit, alter, modify, impair, or otherwise affect any of the remedies of Manager set forth in this Agreement.

(t)      Limitation of Liability. Notwithstanding any provision in this Agreement to the contrary, under no circumstances shall Manager or any Manager Party have any personal liability for any failure to perform any obligations arising out of or in connection with this Agreement or for any breach of the terms or conditions of this Agreement (whether written or implied). No personal judgment shall lie against Manager or any Manager Party and any judgments so rendered shall not give rise to any right of execution or levy against any of their assets. Any judgments rendered against Manager shall be satisfied solely out of the assets of Manager. The foregoing provisions are not intended to relieve Manager from the performance of any of Manager's obligations under this Agreement, but only to limit the personal liability of Manager and Manager Parties in case of recovery of a judgment against any of them.

(u)      Additional Assurances. The provisions of this Agreement shall be self-operative and shall not require further agreement by the parties except as may be herein specifically provided to the contrary; provided, however, at the request of a party, the other party or parties shall execute such additional instruments and take such additional actions as the requesting party may deem necessary to effectuate this Agreement.

[Signatures on next page]

41

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
608081584.4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

HEALTHCARE CONGLOMERATE ASSOCIATES, LLC

By_____
Name: Yorai (Benny) Benzeevi, M.D.
Title: Manager

SOUTHERN INYO HEALTHCARE DISTRICT

By: _____
Name: Richard P. Fedchenko
Title: Chairman of Board of Directors

By: _____
Name: Jaque Hickman
Title: Member of Board of Directors

By: _____
Name: Mark Lacey
Title: Member of Board of Directors

CONFIDENTIAL AND PROPRIETARY
© HealthCare Conglomerate Associates
808081584.4

**EXHIBIT A**

LIST OF FACILITIES

Acute care hospital (with 4 beds), a rural healthcare clinic, and a skilled nursing facility (with 33 beds) located at 501 East Locust Street, Lone Pine, CA 93545.

Exhibit A

608081584.4

**EXHIBIT B**

**Limited Power of Attorney**

**KNOW ALL MEN BY THESE PRESENTS**, that in accordance with the terms of that certain Management Services Agreement, dated of even date herewith, (the "**Agreement**"), by and among **HealthCare Conglomerate Associates, LLC** ("**Manager**") and **Southern Inyo Healthcare District** (the "**District**"), the District hereby makes, constitutes and appoints Manager as the District's true and lawful attorney-in-fact (the "**Attorney-In-Fact**") and in the District's name, place and stead to act in connection with any and all matters relating to any of the following and with all requisite authority and power and as legally permissible:

1.      To bill, collect, or cause to be collected, all amounts related to the operation of the Hospital and the Other Facilities, including, but not limited to, the accounts receivable, in the District's name, and, when deemed appropriate by the Attorney-In-Fact, settle and compromise claims, and assign such other items to a collection agency, bring a legal action or take such other appropriate action against an obligee;

2.      To receive, take possession of, endorse in the name of the District, and deposit into the Depository Account, the Master Account or other account, as deemed appropriate by Manager, in accordance with the terms of the Agreement, any notes, checks, money orders, payments, insurance payments, and any other instruments received in payment of services provided at the Hospital and the Other Facilities.

3.      To deposit all amounts collected into the Depository Account, Master Account or other account, as deemed appropriate by Manager, in accordance with the terms of the Agreement.

4.      To sign checks, drafts, bank notes or other instruments on behalf of the District, and to make withdrawals from the Depository Account, Master Account or other applicable account for payments specified in this Agreement.

5.      To execute any instruments or documents or take such other or further action necessary or appropriate in connection with any of the above.

This Power of Attorney is coupled with an interest, and shall give the Attorney-In-Fact the power and authority to act in the District's name as fully as the District could do if present. The District hereby ratifies and confirms and agrees to ratify and confirm whatsoever the Attorney-In-Fact shall do or purport to do by reason of these presents.

Capitalized terms not defined herein shall have the meaning ascribed to them by the Agreement. Any provision hereof which may prove unenforceable under any Law shall not affect the validity of any other provisions hereof.

Any photocopy of this Power of Attorney shall have the same force and effect as the original.

Exhibit B

608081584.4

IN WITNESS WHEREOF, I have hereunto set my hand and seal effective as of the_____day of
_____, 20    .

WITNESS:                                        **Southern Inyo Healthcare District**

Signature:_____
Print Name:_____                By:_____
                                                Richard P. Fedchenko
Signature:_____                       Chairman of the Board of Directors
Print Name:_____

Exhibit B

608081584.4

## EXHIBIT C

### Business Associate Agreement

This Business Associate Agreement ("Agreement) is entered into on_____, 2016 by and between, Southern Inyo Healthcare District ("Covered Entity") and HealthCare Conglomerate Associates, LLC ("Business Associate").

### 1. Definitions

#### A. Catch-all definition:

The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information, Required by Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

#### B. Specific definitions:

(i) Business Associate. "Business Associate" shall generally have the same meaning as the term "business associate" at 45 CFR 160.103, and in reference to the party to this Agreement, shall mean HealthCare Conglomerate Associates, LLC a California limited liability company.

(ii) Covered Entity. "Covered Entity" shall generally have the same meaning as the term "covered entity" at 45 CFR 160.103, and in reference to the party to this Agreement, shall mean Southern Inyo Healthcare District.

(iii) HIPAA Rules. "HIPAA Rules" shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and Part 164.

### 2. Obligations and Activities of Business Associate

A.      Business Associate agrees to:

(i) Not use or disclose Protected Health Information other than as permitted or required by the Agreement or as required by law;

(ii) Use appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to electronic Protected Health Information, to prevent use or disclosure of Protected Health Information other than as provided for by the Agreement;

(iii) Report to Covered Entity any use or disclosure of Protected Health Information not provided for by the Agreement of which it becomes aware, including breaches of unsecured Protected Health Information as required at 45 CFR 164.410, and any security incident of which it becomes aware;

(iv) In accordance with 45 CFR 164.502(e)(1)(ii) and 164.308(b)(2), if applicable, ensure that any subcontractors that create, receive, maintain, or transmit Protected Health Information

608081584.4                              Exhibit C

on behalf of the Business Associate agree to the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such information;

(v) Make available Protected Health Information in a designated record set to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.524;

(vi) Make any amendment(s) to Protected Health Information in a designated record set as directed or agreed to by the Covered Entity pursuant to 45 CFR 164.526, or take other measures as necessary to satisfy Covered Entity's obligations under 45 CFR 164.526;

(vii) Maintain and make available the information required to provide an accounting of disclosures to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 CFR 164.528;

(viii) To the extent the Business Associate is to carry out one or more of Covered Entity's obligation(s) under Subpart E of 45 CFR Part 164, comply with the requirements of Subpart E that apply to the Covered Entity in the performance of such obligation(s); and

(ix) Make its internal practices, books, and records available to the Secretary for purposes of determining compliance with the HIPAA Rules.

## 3. Permitted Uses and Disclosures by Business Associate

(i) Business Associate may only use or disclose Protected Health Information as necessary to perform the services set forth in its billing agreement with the Covered Entity.

(ii) Business Associate may use or disclose Protected Health Information as required by law.

(iii) Business Associate agrees to make uses and disclosures and requests for Protected Health Information consistent with Covered Entity's minimum necessary policies and procedures.

(iv) Business Associate may not use or disclose Protected Health Information in a manner that would violate Subpart E of 45 CFR Part 164 if done by Covered Entity.

## 4. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under Subpart E of 45 CFR Part 164 if done by Covered Entity.

## 5. Term and Termination

(i) Term. The Term of this Agreement shall be effective as of the date first above written, and shall terminate when all of the Protected Health Information provided by the Covered Entity to the Business Associate, or created or received by the Business Associate on behalf of the Covered Entity, is destroyed or returned to the Covered Entity.

608081584.4                              Exhibit C

(ii) <u>Termination for Cause</u>. Business Associate authorizes termination of this Agreement by Covered Entity, if Covered Entity determines business associate has violated a material term of the Agreement.

(iii) <u>Obligations of Business Associate Upon Termination</u>.

Upon termination of this Agreement for any reason, Business Associate shall return to covered entity or, if agreed to by Covered Entity, destroy all Protected Health Information received from Covered Entity, or created, maintained, or received by Business Associate on behalf of Covered Entity, that the Business Associate still maintains in any form.  Business Associate shall retain no copies of the Protected Health Information.

(iv) <u>Survival</u>.  The obligations of Business Associate under this Section shall survive the termination of this Agreement.

6.  **Miscellaneous**

(i) <u>Regulatory References</u>. A reference in this Agreement to a section in the HIPAA Rules means the section as in effect or as amended.

(ii) <u>Amendment</u>. The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for compliance with the requirements of the HIPAA Rules and any other applicable law.

(iii) <u>Interpretation</u>. Any ambiguity in this Agreement shall be interpreted to permit compliance with the HIPAA Rules.

The parties hereby execute this Agreement as authorized representatives of their respective entities.

COVERED ENTITY                    BUSINESS ASSOCIATE

_____        _____

Southern Inyo Healthcare District       HealthCare Conglomerate Associates, LLC

By: _____     By: _____
　　　Richard P. Fedchenko                    　　Yorai (Benny) Benzeevi, M.D.
Its:　 Chairman of the Board of Directors   Its:　 Manager

608081584.4                           Exhibit C