SAMUEL R. MAIZEL (Bar. No. 189301)
samuel.maizel@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Telephone:     (213) 623 9300
Facsimile:     (213) 623 9924

GARY W. MARSH
gary.marsh@dentons.com
DENTONS US LLP
303 Peachtree St., NE, Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

Special Counsel to the Debtor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>    Debtor. | Case No.: 2016-10015<br><br>Chapter 9<br><br>Doc No. BH-19<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF EMERGENCY MOTION [BH-19] (1) FOR AUTHORITY TO IMMEDIATELY TERMINATE HCCA MANAGEMENT AGREEMENT OR, IN THE ALTERNATIVE, FOR AUTHORITY TO MODIFY THE TERMS OF THE HCCA MANAGEMENT AGREEMENT IN ORDER TO DESIGNATE THE BOARD AS THE SOLE SIGNATORY ON ALL DISTRICT BANK ACCOUNTS AND (2) TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT AND ASSOCIATED FILING DEADLINES [DOCKET NO. 325]**<br><br>Hearing:<br>Date:   November 29, 2017<br>Time:   1:30 p.m.<br>Place:  Dept. A, Courtroom 11<br>           U.S. Bankruptcy Court<br>           2500 Tulare Street<br>           Fresno, CA 93721 |

105684962\V-4

## **TABLE OF CONTENTS**
**Page**

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF FACTS ..............................................................................................1

III. ARGUMENT ...................................................................................................................4

    A. The Management Agreement is an Executory Contract within the Meaning of Section 365 of the Bankruptcy Code. .................................................................. 4

    B. The District May Reject the Management Agreement because Such Rejection Is Based on the District's Sound Business Judgment. ............................................... 7

IV. CONCLUSION ................................................................................................................9

105684962\V-4

## I. INTRODUCTION

Southern Inyo Healthcare District, debtor in the above-captioned bankruptcy case ("Debtor" or the "District"), hereby respectfully submits this Supplemental Brief (this "Brief") in support of the District's *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* [Docket No. 325] (the "Motion"). In support of the Motion, the District respectfully states as follows:

## II. STATEMENT OF FACTS

The District owns and operates an acute care hospital, a clinic, and a skilled nursing facility (collectively, the "Facilities"). On January 4, 2016 (the "Petition Date"), the District filed a voluntary petition for relief under Chapter 9 of the Bankruptcy Code. On January 2, 2016, two days prior to the Petition Date, the District and HealthCare Conglomerate Associates, LLC ("HCCA") entered into that certain Management Services Agreement (the "Management Agreement"), whereby the District retained HCCA to provide day-to-day management services for the Facilities for an initial term of five (5) years (the "Operating Period"). Management Agreement, at § 2(a). The Management Agreement is attached as Exhibit A to the *Declaration of Jaque Hickman in Support of the Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* [Docket No. 327] ("Declaration of Jaque Hickman"). Pursuant to the Management Agreement, the District retains control and authority over all medical and professional matters relating to the care and treatment of patients that require medical judgment. *Id.* at 3(e).

Throughout the Operating Period of the Management Agreement, the District must pay HCCA Sixty Five Thousand Dollars ($65,000) every month (increased yearly for inflation) for

HCCA's management services. *Id.* at § 6(a). The District must also reimburse HCCA for expenses made reimbursable under the Management Agreement and other commercially reasonable expenses made by HCCA on behalf of the District. *Id.* at § 6(c). In addition to making payments and reimbursements to HCCA throughout the Operating Period, the District must maintain one or more bank accounts for the purpose of depositing funds received by or on behalf of the District in connection with the operation of the Facilities. *Id.* at § 4(g).

Section 3 of the Management Agreement provides the general obligations of the District and HHCA throughout the Operating Period. The District's obligations include, but are not limited to: (i) providing HCCA with sufficient funds to timely pay the expenses relating to the operations of the Facilities; (ii) providing HCCA with the necessary equipment, information, and other resources to enable HCCA to perform its services; (iii) cooperating fully and in good faith with HCCA; and (iv) assuring the District's funds are used to support the Facilities and are not diverted to other uses. *Id.* at § 3. HCCA's obligations include, but are not limited to: (i) financial and operating system management; (ii) preparation of proposed annual budgets; (iii) purchasing; (iv) contracting support and relationship management; (v) expansion of the Facilities; (vi) preparation and implementation of staffing plans; (vii) recruitment of personnel; and (viii) supervision of the day-to-day operations of the Facilities. *Id.* at § 3(a).

Section 3 of the Management Agreement is a material provision and any breach of § 3 constitutes a material breach of the Management Agreement. *Id.* at § 3(d)(iv). Accordingly, the obligations of the District and HCCA provided in § 3 are material and a breach of any such obligation would be a material breach under the terms of the Management Agreement. *See id.* at § 3(d)(iv).

Throughout the District's bankruptcy case, HCCA has failed to fully cooperate with the terms of the Management Agreement. For example, HCCA failed to cooperate with the District's many requests for financial information. [Docket No. 327, at ¶ 6]. The District requested certain financial records and reports from HCCA to aid the District in its restructuring efforts, but HCCA did not produce the needed financial records and reports, and the District had to expend additional resources to obtain the financial information from a different source. *Id.* As a result of HCCA's

failure to cooperate, the District has lost confidence in HCCA as the manager of its Facilities. *Id.* On October 11, 2017, the District held a special board meeting where it discussed, *inter alia*, the findings from the evaluation of certain bank records and whether to remove HCCA through the rejection and/or termination of the Management Agreement. *Id.* at ¶ 9. The District board concluded that HCCA had engaged in a series of improper actions. *Id.* At the meeting, the District's board voted to terminate and reject the Management Agreement. *Id.* The District's board determined that replacing HCCA would best protect the interests of the District and its creditors, as well as the health, safety, and welfare of the community served by the District. *Id.* The District has already taken substantial steps to transition the management of the Facilities and believes it will be able to quickly retain new management and replace HCCA. *Id.* at ¶ 10.

On October 17, 2017, the District filed the Motion, seeking to reject the Management Agreement. After a hearing on the Motion, the Court entered the *Order Granting in Part Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* [Docket No. 335] (the "Order") on October 23, 2017, authorizing and directing the Debtor to remove HCCA as a signatory from any and all bank accounts containing District funds. The Order further directed the District to file a supplemental brief addressing, among other issues, whether the Management Agreement constitutes an executory contract within the meaning of § 365 of Title 11 of the United States Code (the "Bankruptcy Code").

Pursuant to the Court's Order, this Brief first discusses whether the Management Agreement is an executory contract within the meaning of § 365 of the Bankruptcy Code. After determining that the Management Agreement is an executory contract, this Brief then discusses why the decision of the District's board to reject the Management Agreement is based on sound business judgment.

105684962\V-4

### III. ARGUMENT

The Management Agreement is an executory contract within the meaning of § 365 of the Bankruptcy Code because both the District and HCCA have continuing material obligations to perform under the agreement. HCCA must continue providing management services for the Facilities throughout the Operating Period, and the District must, among other obligations, continue to pay and reimburse HCCA for its services throughout the Operating Period. Because the Management Agreement is an executory contract within the meaning of § 365, the District may reject the Management Agreement as long as such rejection is based on the District's sound business judgment. The District believes that rejecting the Management Agreement is in the best interests of the District and its creditors. The District further believes that rejecting the Management Agreement best protects the health, safety, and welfare of the community served by the District. Accordingly, pursuant to § 365 of the Bankruptcy Code, the Court should grant the District's Motion to reject the Management Agreement, effective immediately, and pursuant to § 105(a), the Court should direct HCCA to fully cooperate as the District transitions the Facilities to new management.

### A. The Management Agreement is an Executory Contract within the Meaning of Section 365 of the Bankruptcy Code.

Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may . . . reject any executory contract." 11 U.S.C. § 365(a); *see In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702 (9th Cir. 1998) (*en banc*). Section 365 applies in cases filed under Chapter 9 of the Bankruptcy Code. 11 U.S.C. § 901(a). Whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law. *In re Qintex Entm't, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991); *In re Wegner*, 839 F.2d 533, 536 (9th Cir. 1988). Although the Code does not specifically define the term "executory contract," the Supreme Court has defined it as a contract "on which performance remains due to some extent on both sides." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984).

The Ninth Circuit has adopted the "Countryman test" to determine whether a contract is executory for bankruptcy purposes. *In re Sjoquist*, 484 B.R. 207, 213 (Bankr. C.D. Cal. 2012).

1  Under the Countryman test, a contract is executory if "the obligations of both parties are so
2  unperformed that the failure of either party to complete performance would constitute a material
3  breach and thus excuse the performance of the other." *Unsecured Creditors' Committee v.*
4  *Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.)*, 139 F.3d 702, 705 (9th Cir. 1998)
5  (quoting *In re Wegner*, 839 F.2d at 536). Thus, courts in the Ninth Circuit "will only consider a
6  contract executory if material unperformed obligations remain for *both* parties." *In re Qintex*
7  *Entm't, Inc.*, 950 F.2d at 1495.

8  A court must first "evaluate the obligations of both parties and determine whether they are
9  material obligations." *In re Texscan Corp.*, 976 F.2d 1269, 1272 (9th Cir. 1992); *In re Wegner*,
10 839 F.2d at 536. "Courts have defined 'material performance' as the essence of what the other
11 party sought and expected when he entered into the [a]greement, and without it, the party will
12 lose the benefit of the bargain that he thought he had struck." *In re Sjoquist*, 484 B.R. at 213
13 (internal quotation marks omitted).

14 Next, the court must "determine whether, on the date the petition was filed, either party's
15 failure to perform its remaining obligations would give rise to a material breach and excuse
16 performance." *In re Texscan Corp.*, 976 F.2d at 1272; *In re Wegner*, 839 F.2d at 536. The
17 materiality of a remaining obligation and whether the failure to perform a remaining obligation is
18 a material breach of the contract is an issue of state law. *In re Texscan Corp.*, 976 F.2d at 1272
19 (9th Cir. 1992); *In re Wegner*, 839 F.2d at 536.

20 A party's obligation to make payments pursuant to a contract is a material obligation. *See*
21 *Wegner*, 839 F.2d at 537 (finding that the debtor had undisputed "remaining obligations to pay
22 monies due under the contract," rendering the debtor's side of the contract executory); *In re*
23 *Alexander*, 670 F.2d 885, 887 (9th Cir. 1982) (finding a contract executory where "plaintiff still
24 had to pay the remainder of the purchase price, and defendant had to give up possession and
25 convey title"); *In re Select-A-Seat Corp.*, 625 F.2d 290, 292 (9th Cir. 1980) (finding a contract
26 executory where one party was obligated to pay five percent of its annual net return from use of
27 certain software and the other party was under a continuing obligation not to sell its software
28 packages to other parties); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr. E.D.

- 5 -

105684962\V-4

Pa. 2010) ("Failure to pay per contract terms is a material performance making a contract executory."). Thus, where one party to a contract has the duty to make payments and the other party also has material obligations pursuant to the contract, such contract is executory under § 365 of the Bankruptcy Code. *See In re Select-A-Seat Corp.*, 625 F.2d at 292.

Here, the Management Agreement is an executory contract within the meaning of § 365 of the Bankruptcy Code because both HCCA and the District have continuing material obligations throughout the Operating Period of the Management Agreement.

HCCA has continuing material obligations under the Management Agreement that render HCCA's side of the agreement executory. Throughout the Operating period, HCCA must provide day-to-day management services for the Facilities. Such services include, but are not limited to: (i) financial and operating system management; (ii) preparation of proposed annual budgets; (iii) purchasing; (iv) contracting support and relationship management; (v) expansion of the Facilities; (vi) preparation and implementation of staffing plans; (vii) recruitment of personnel; and (viii) supervision of the day-to-day operations of the Facilities. Management Agreement, at § 3(a). Pursuant to § 3(d)(iv) of the Management Agreement, each of these obligations is material, the breach of which constitutes a material breach of the Management Agreement. *See id.* at § 3(d)(iv). Moreover, HCCA's remaining obligations are the essence of what the District sought when it entered into the Management Agreement. *See In re Sjoquist*, 484 B.R. at 213. Failure to perform these obligations would give rise to a material breach of the Management Agreement; thus, HCCA's side of the agreement is executory.

The District has continuing material obligations that render its side of the agreement executory. Throughout the Operating Period, the District must: (i) pay HCCA Sixty Five Thousand Dollars ($65,000) every month for HCCA's management services, Management Agreement at § 6(a); (ii) reimburse HCCA for expenses made reimbursable under the Management Agreement and other commercially reasonable expenses made by HCCA on behalf of the District, *id.* at § 6(c); and (iii) maintain one or more bank accounts for the purpose of depositing funds received by or on behalf of the District in connection with the operation of the Facilities, *id.* at § 4(g). The District's payment obligations are the essence of what HCCA sought

when it entered into the Management Agreement. *See In re Sjoquist*, 484 B.R. at 213. Because the obligation to make payments pursuant to a contract is a material obligation, *see Wegner*, 839 F.2d at 537, failure to perform these obligations would give rise to a material breach of the Management Agreement.

In addition to its payment obligations, the District must: (i) provide HCCA with sufficient funds to timely pay the expenses relating to the operations of the Facilities; (ii) provide HCCA with the necessary equipment, information, and other resources to enable HCCA to perform its services; (iii) cooperate fully and in good faith with HCCA; and (iv) assure the District's funds are used to support the Facilities and are not diverted to other uses. Management Agreement, at § 3. Each of these obligations is material, the breach of which constitutes a material breach of the Management Agreement. *See id.* at § 3(d)(iv). Thus, the District's side of the agreement is also executory.

Because both HCCA and the District have remaining material obligations under the Management Agreement, the Management Agreement is executory within the meaning of § 365 of the Bankruptcy Code.

### B. The District May Reject the Management Agreement because Such Rejection Is Based on the District's Sound Business Judgment.

In evaluating a debtor-in-possession's decision to reject a contract pursuant to § 365 of the Bankruptcy Code, "a bankruptcy court need engage only in a cursory review of a debtor-in-possession's decision to reject the contract." *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (citations omitted). "Specifically, a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision." *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)).

The Ninth Circuit has adopted the corporate business judgment rule for bankruptcy proceedings. *See In re Pomona Valley Med. Grp., Inc.*, 476 F.3d at 670 (noting that "courts are no more equipped to make subjective business decisions for insolvent businesses [sic] than they are for solvent businesses"). "[I]n evaluating the rejection decision, the bankruptcy court should

1  presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in
2  the honest belief that the action taken was in the best interests of the bankruptcy estate." *Id. See*
3  *also Navellier v. Sletten,* 262 F.3d 923, 946 n.12 (9th Cir. 2001); *FDIC v. Castetter,* 184 F.3d
4  1040, 1043 (9th Cir. 1999); *In re Chi-Feng Huang,* 23 B.R. at 801 ("The primary issue is whether
5  rejection would benefit the general unsecured creditors."). Thus, a bankruptcy court "should
6  approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-
7  possession's conclusion that rejection would be 'advantageous is so manifestly unreasonable that
8  it could not be based on sound business judgment, but only on bad faith, or whim or caprice.'" *In*
9  *re Pomona Valley Med. Grp., Inc.*, 476 F.3d at 670 (*quoting Lubrizol Enter. v. Richmond Metal*
10 *Finishers*, 756 F.2d 1043, 1047 (4th Cir.1985)).

11       Here, the Court should authorize the District to reject the Management Agreement
12 because such rejection is based on the District's sound business judgment. Throughout the
13 District's bankruptcy case, HCCA has failed to fully cooperate with the District's requests for
14 financial reports and records. [Docket No. 327, at ¶ 6]. HCCA's unwillingness to perform its
15 responsibilities has caused serious detriment to the District's restructuring efforts and the District's
16 relationship with HCCA. *Id.* On October 11, 2017, the District held a special board meeting
17 where it discussed, *inter alia*, the findings from the evaluation of certain bank records and
18 whether to remove HCCA through the rejection and/or termination of the Management
19 Agreement. *Id.* at ¶ 9. At the meeting, the District Board concluded that HCCA had engaged in
20 misconduct. *Id.* As a result of this discovery and the District's eroding confidence in HCCA, the
21 District board determined that it had no choice but to reject and terminate the Management
22 Agreement and remove HCCA from the operations of the Facilities to protect the interests of the
23 District and its creditors, as well as the health, safety, and welfare of the community served by the
24 District. *Id.* The District has already taken substantial steps to transition the management of the
25 Facilities from HCCA back to the District and believes it will be able to quickly retain new
26 management and replace HCCA. *Id.* at ¶ 10.

27
28

105684962\V-4

1    Accordingly, pursuant to §§ 365, 901, and 105 of the Bankruptcy Code, the Court should grant the District's Motion to terminate the Management Agreement, effective immediately, and direct HCCA to fully cooperate as the District transitions the Facilities to new management.

### IV.    CONCLUSION

For the reasons set forth herein, the District submits that the Management Agreement is an executory contract within the meaning of the Bankruptcy Code and respectfully requests that this Court grant the Motion authorizing the District to reject the Management Agreement, effective immediately, and direct HCCA to fully cooperate in transitioning the Facilities to new management.

Dated: November 15, 2017          DENTONS US LLP


                                  By: /s/ Samuel R. Maizel
                                      SAMUEL R. MAIZEL

                                  Special Counsel to the Debtor

105684962\V-4