1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
3  Los Angeles, CA 90025-0509
   Telephone:    310.820.8800
4  Facsimile:     310.820.8859
   Email:          amcdow@bakerlaw.com
5                  mdelaney@bakerlaw.com

6  Attorneys for Debtor,
   SOUTHERN INYO HEALTHCARE DISTRICT

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10                **FRESNO DIVISION**

11
   In re                   |   Case No.: 2016-10015 FEC
12
   SOUTHERN INYO HEALTHCARE    |   Chapter 9
13 DISTRICT,
                           |   Doc. No. BH-~~19~~20
14        Debtor.
                           |   ~~**FIRST**~~**SECOND** AMENDED PLAN FOR
15                         |   **THE ADJUSTMENT OF DEBTS OF**
                           |   **SOUTHERN INYO HEALTHCARE**
16                         |   **DISTRICT**

17                         |   <u>Confirmation Hearing:</u>
                           |   Date:      TBD
18                         |   Time:      TBD
                           |   Place:     Dept A, Ctrm 11
19                         |            U.S. Bankruptcy Court
                           |            2500 Tulare Street
20                         |            Fresno, CA 93721

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

**CAVEAT**: **The Bankruptcy Court has not yet approved a disclosure statement with respect to the plan of adjustment of debts for Southern Inyo Healthcare District. The filing and distribution of this proposed plan is not intended and should not be construed as a solicitation of acceptance or rejection of the plan of adjustment of debts.**

[This caveat shall be removed prior to solicitation]

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

FIRST AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

611073535.1
611923771.1

1

TABLE OF CONTENTS

I.   DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ................2~~1~~

     A.   Definition ........................................................................2~~1~~

     B.   Rules of Construction ..........................................................8~~7~~

II.  TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE
     CLAIMS AND PROFESSIONAL CLAIMS ......................................9~~8~~

     A.   Treatment of Administrative Claims ........................................9~~8~~

     B.   Treatment of Professional Claims ...........................................9~~8~~

     C.   Priority Claims in Chapter 9 ................................................10~~9~~

     D.   Deadline for the Filing and Assertion of Postpetition Claims, Administrative
          Claims ~~(Other Than Ordinary Course Administrative Claims)~~, and Professional
          Claims ........................................................................11~~9~~

III. DESIGNATION OF CLASSES OF CLAIMS ...................................~~11~~10

IV.  TREATMENT OF CLAIMS .....................................................~~12~~10

     A.   Class 1 – Secured Claims .....................................................~~12~~10

          1.   Class 1A – Action Capital Corporation .............................~~12~~10

               a.   Impairment and Voting ......................................~~12~~10

               b.   Treatment ....................................................~~12~~11

          2.   Class 1B – Bank of the West/Thermo Fisher Financial Services, Inc...~~12~~11

               a.   Impairment and Voting ......................................~~13~~11

               b.   Treatment ....................................................~~13~~11

          3.   Class 1C – Canon Financial Services, Inc. ..........................~~13~~12

               a.   Impairment and Voting ......................................~~13~~12

               b.   Treatment ....................................................~~13~~12

          4.   Class 1D – Cardinal Health 110, LLC..............................~~14~~12

               a.   Impairment and Voting ......................................~~14~~12

               b.   Treatment ....................................................~~14~~12

          5.   Class 1E – Healthcare Resource Group .............................~~14~~13

               a.   Impairment and Voting ......................................~~14~~13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

b.        Treatment ................................................................ ~~14~~13

6.        Class 1F – Optum Bank, Inc. ................................ ~~15~~14

a.        Impairment and Voting .......................... ~~15~~14

b.        Treatment ................................................................ ~~15~~14

7.        Class 1G – Vi Healthcare Finance, Inc. ................................15

a.        Impairment and Voting .......................... ~~16~~15

b.        Treatment ................................................................ ~~16~~15

B.        Class 2 – Post-Petition Claims ................................ ~~16~~15

1.        Impairment and Voting .......................... ~~16~~15

2.        Treatment ................................................................16

C.        Class 3 – General Unsecured Claims ................................16

1.        Impairment and Voting ................................16

2.        Treatment ................................................................ ~~17~~16

3.        Class 4 Election ................................................ ~~17~~16

D.        Class 4 – Convenience Claims ................................17

1.        Impairment and Voting ................................17

2.        Treatment ................................................................17

V.        ACCEPTANCE OR REJECTION; CRAMDOWN ................................17

A.        Voting of Claims ................................................................17

VI.        TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... ~~18~~17

A.        Assumption of Executory Contracts and Unexpired Leases ................ ~~18~~17

B.        Cure Payments ................................................................ ~~18~~17

C.        Rejection of Executory Contracts and Unexpired Leases ................ ~~19~~18

D.        Claims Arising from Rejection ................................20

VII.        IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN .. ~~21~~20

VIII.        RESERVATION OF RIGHTS OF ACTION ................................22

IX.        DISTRIBUTIONS ................................................................ ~~23~~22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

| A. | Disbursing Agent | ~~23~~22 |
| B. | Delivery of Distributions | ~~23~~22 |
| C. | Undeliverable Distributions | 23 |
| | 1. Holding of Undeliverable Distributions | 23 |
| | 2. Notification and Forfeiture of Unclaimed Property | 23 |
| D. | Distribution of Cash | ~~24~~23 |
| E. | Timeliness of Payments | ~~24~~23 |
| F. | Default and Cure | 24 |
| G. | Compliance with Tax Requirements | ~~25~~24 |
| H. | Time Bar to Cash Payments | 25 |
| I. | No De Minimis Distributions | 25 |
| J. | No Distributions on Account of Disputed Claims or Disallowed Claims | 25 |
| K. | No Post-Petition Date Accrual | 26 |

X.    DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS ........................... 26

| A. | Claim Objection Deadline; Prosecution of Objections | 26 |
| B. | Reserves, Payments and Distributions with Respect to Disputed Claims | 26 |

XI.    EFFECT OF CONFIRMATION ........................... 27

| A. | Discharge of the District | 27 |
| B. | Injunction | 27 |
| C. | Term of Existing Injunctions or Stays | ~~27~~28 |
| D. | Exculpation | 28 |
| E. | Good Faith Compromise | ~~28~~29 |

XII.    RETENTION OF AND CONSENT TO JURISDICTION ........................... 29

XIII.    CONDITIONS PRECEDENT ........................... ~~30~~31

| A. | Condition Precedent to Confirmation | ~~30~~31 |
| B. | Conditions Precedent to Effective Date | ~~30~~31 |
| C. | ~~Condition to Effective Date Payments~~ | ~~31~~ |

611073535.1
611923771.1

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

D.     Waiver of Conditions Precedent to Effective Date ................................. 31

ED.     Effect of Failure of Conditions ......................................................... 3132

FE.     No Admission of Liability ................................................................ 32

XIV.   MISCELLANEOUS PROVISIONS ....................................................... 32

A.     Dissolution of the Committee ......................................................... 32

B.     Severability ................................................................................... 32

C.     Governing Law .............................................................................. 33

D.     Effectuating Documents and Further Transactions ......................... 33

E.     Acceleration of Payments .............................................................. 33

F.     Delivery of Notices ....................................................................... 33

G.     Notice of Effective Date ................................................................ 34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRSTSECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

611073535.1
611923771.1

Southern Inyo Healthcare District (the "<u>District</u>"), a California local healthcare district and debtor under chapter 9 of the Bankruptcy Code, hereby proposes the following ~~First~~<u>Second</u> Amended Plan for the Adjustment of Debts (the "<u>Plan</u>") pursuant to section 941 of the Bankruptcy Code.[1]

Please refer to the accompanying Disclosure Statement for a discussion of the District's history, operations, and financial condition, and for a summary and analysis of this Plan and other important information. The District encourages you to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials other than the Disclosure Statement and the associated Exhibits and Schedules have been approved for use in soliciting acceptance or rejections of this Plan.

## I. DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

### A. Definition

1. **<u>Administrative Claim</u>** means the costs or expenses of administration of the Chapter 9 Case not already paid by the District, allowed under section 503(b) and entitled to priority under section 507(a)(2) to the extent made applicable in Chapter 9: (i) which the District agrees is an Allowed administrative expense; or (ii) which the Bankruptcy Court determines is an Allowed administrative expense. The District's consent to the Bankruptcy Court adjudicating Administrative Claim status is given without the District in any way consenting or agreeing that Claims for postpetition obligations of the District are or would be entitled to status as Administrative Claims as "the actual necessary costs and expenses of preserving the estate" under section 503(b).

2. **<u>Allowed</u>** means a Claim that:

a. Is asserted in a proof of Claim filed in compliance with section 501 of the Bankruptcy Code and any applicable order of the Bankruptcy Court and as to which (i) no objection has been filed within the deadline established pursuant to Section X.A., (ii) the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but

---

[1] The definitions of capitalized terms used throughout this Plan are set forth in Section I.A.

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

611073535.1<br>611923771.1

only to the extent allowed), or (iii) the Bankruptcy Court has entered a Final Order under section 502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of allowance;

        b.     Is subject to a stipulation between the District and the holder of such Claim providing for the allowance of such Claim; or

        c.     Is a Professional Claim as to which the Bankruptcy Court has entered an order deeming such Claim as reasonable in whole or in part (but only to the extent deemed reasonable).

        3.     **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court in the Plan Solicitation Order accompanying the Disclosure Statement and provided to each holder of a Claim entitled to vote to accept or reject this Plan.

        4.     **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 9 Case.  Unless otherwise indicated, references in this Plan to "section ____ " are to the specifically identified section of the Bankruptcy Code.

        5.     **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Fresno Division, or such other court that lawfully exercises jurisdiction over the Chapter 9 Case.

        6.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 9 Case, together with the local rules of the Bankruptcy Court applicable to the Chapter 9 Case.  Unless otherwise indicated, references to "Bankruptcy Rules ____ " are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

        7.     **Bar Date** means the applicable date by which a particular proof of claim must be filed, as established by this Plan or the Bankruptcy Court.

        8.     ~~**Bond Measure** means the bond initiative proposed by the District relating to the issuance of $5,000,000 in general obligations prior to the Effective Date.~~

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

- 2 -

**8.** ~~9.~~ **Business Day** means a day other than a Saturday, a Sunday, or any other day on which banking institutions in Los Angeles, California, are required or authorized to close by law or executive order.

**9.** ~~10.~~ **Cash** means cash and cash equivalents, including, without limitation, withdrawable bank deposits, wire transfers, checks, and other similar items.

**10.** ~~11.~~ **Chapter 9 Case** means the case under chapter 9 of the Bankruptcy Code commenced by the District and styled as *In re Southern Inyo Healthcare District*, Case No. 2016-10015 FEC, currently pending in the Bankruptcy Court.

**11.** ~~12.~~ **Claim** has the meaning set forth in section 101(5).

**12.** ~~13.~~ **Class** means any group of Claims classified herein pursuant to section 1123(a).

**13.** ~~14.~~ **Collateral** means any property or interest in property of the District subject to a lien or security interest that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable federal and/or state law.

**14.** ~~15.~~ **Committee** means the Official Committee of Unsecured Creditors of Southern Inyo Healthcare District, appointed in the Chapter 9 Case by the Office of the United States Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code.

**15.** ~~16.~~ **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order.

**16.** ~~17.~~ **Confirmation Hearing** means the hearing to be conducted by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned, reconvened or continued from time to time.

**17.** ~~18.~~ **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 943 of the Bankruptcy Code.

**18.** ~~19.~~ **Convenience Class Claim** means any Allowed Claim that is greater than \$0.00 in Allowed amount and less than or equal to \$250 in Allowed amount.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

19. ~~20.~~ **Disallowed** means a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) has been listed by the District in its list of creditors, as it may be amended from time to time, in the amount of $0.00 or an unknown amount, or as contingent, disputed, or unliquidated, and as to which no proof of claim has been filed by the applicable deadline or deemed timely filed pursuant to any Final Order of the Bankruptcy Court; (iii) as to which the holder thereof has agreed to be equal to $0.00 or to be withdrawn, disallowed or expunged; or (iv) has not been listed in the list of creditors and as to which no proof of claim has been filed by the applicable deadline or deemed timely filed pursuant to a Final Order of the Bankruptcy Court.

20. ~~21.~~ **Disclosure Statement** means the disclosure statement, and all exhibits and schedules incorporated therein, that relates to this Plan and that is approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

21. ~~22.~~ **Disputed Claim** means any Claim or portion thereof that has not become Allowed and that is not Disallowed. In the event that any part of a Claim is disputed, except as otherwise provided in this Plan, such Claim shall be deemed disputed in its entirety for purposes of distribution under and voting on this Plan unless the District in its sole discretion agrees otherwise. Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be disputed.

22. ~~23.~~ **District** means the Southern Inyo Healthcare District, a California local healthcare district and debtor in the Chapter 9 Case.

23. ~~24.~~ **District Assets** means any and all property, whether real or personal, tangible or intangible, in which the District holds an interest.

24. ~~25.~~ **Effective Date** means the first Business Day after the Confirmation Date on which the conditions specified in Section XIII.B. of the Plan have been satisfied or waived.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

~~611073535.1~~
611923771.1

25. 26. **Eligibility Contest** means, collectively, the trial on the District's eligibility to be a debtor under Chapter 9 of the Bankruptcy Code and all ancillary and related pleadings, discovery, hearings, and actions.

26. 27. **Exculpated Party** means the District as well as its predecessors, successors, assigns and present and former affiliates and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any individual or entity claiming by or through any of them*; provided, however,* HCCA as well as its predecessors, successors, assigns and present and former affiliates and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members), partners, and agents shall not constitute an Exculpated Party.

27. 28. **Final Order** means an order to which (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered.  A notice of appeal shall be deemed timely if filed within the time allotted under Bankruptcy Rule 8002.

28. 29. **General Unsecured Claim** means any unsecured Claim *that is not* (i) an Administrative Claim, (ii) a Professional Claim, (iii) a Secured Claim, or (iv) a Post-Petition Claim.

29. 30. **HCCA** means Healthcare Conglomerates Associates, the company previously employed by the District to manage and restructure the operations of the District's facilities and services.

31. **HCCA Loan** means the series of loan from HCCA to the District evidenced by the secured promissory note executed by the District and effective on or about January 4, 2016.32. **HCCA Management Agreement** means the Management Services Agreement entered into January 2, 2016 between the District and HCCA.

30. 33. **Health & Safety Code** means the California Health and Safety Code (Cal. Health & Safety Code §§ 135, *et seq.*).

Baker & Hostetler llp
Attorneys at Law
Los Angeles

- 5 -

31. 34. **Impaired** means a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

32. 35. **Notice of Effective Date** shall have the meaning ascribed to such phrase in Section XIV.G. of the Plan.

33. 36. **Optum** means Optum Bank, Inc. as well as its predecessors, successors, assigns and present and former affiliates and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any individual or entity claiming by or through any of them.

34. 37. **Optum Adversary** means the adversary proceeding commenced by the District against Optum in the Bankruptcy Court, through which the District seeks to invalidate the Optum Loan, set aside the associated security interest, and disallow the Optum Claim.

35. 38. **Optum Claim** means the proof of claim filed by Optum against the District in the Chapter 9 Case—namely, proof of claim number 25—and any amendments thereto.

36. 39. **Optum Loan** means the loan given to the District by Optum pursuant to the Business Loan Agreement dated February 20, 2015 and as reflected in the Promissory Note dated February 20, 2015, the Commercial Security Agreement dated February 20, 2015, and other associated documents, and set to mature on February 20, 2025.

40. **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred in the ordinary course of business of the District (as determined by the District in its sole discretion).

37. 41. **Petition Date** means January 4, 2016.

38. 42. **Plan** means this FirstSecond Amended Plan for the Adjustment of Debts, together with all Exhibits hereto, each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

39. 43. **Plan Exhibits** means the pleading titled Exhibits to Second Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District and Disclosure Statement Relating Thereto. Unless otherwise stated, any reference contained herein to an "Exhibit" refers to an exhibit appended to the Plan Exhibits.

40. 44. **Plan Solicitation Order** means the order by which the Bankruptcy Court approved the Disclosure Statement as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan and established certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting of this Plan.

41. 45. **Post-Petition Claim** means any Claim asserted against the District relating to a debt incurred by the District after the Petition Date.

42. 46. **Pre-Confirmation Date Claim** means a Claim against the District that arose prior to the Confirmation Date.

43. 47. **Professional** means each or any of the law firm of Baker & Hostetler, LLP, general insolvency counsel for the District, Nave Cortell LLP, general counsel for the District, HCCA, and Province, and may include any special counsel employed by the District.

44. 48. **Professional Claim** means a Claim asserted by a Professional.

45. 49. **Province** means Province, Inc., the former financial advisor for the District in the course of the Chapter 9 Case.

46. 50. **Rights of Action** means any rights, claims, or causes of action owned by, accruing to, or assigned to the District pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, including, without limitation, any rights to, claims, or cause of action for recovery under any policies of insurance issued to or on behalf of the District.

47. 51. **Secured Claim** means a Claim that is secured, in whole or in part, (a) by a lien that is not void or otherwise subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or (b) as a result of rights of setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

section 506(a) of the Bankruptcy Code, of the holder's interest in the District's interest in property or to the extent of the amount subject to such setoff, as the case may be.

48. 52. **SNF** means the skilled nursing facility owned and operated by the District.

49. 53. **Unimpaired** means a Claim that is not Impaired.

### B. Rules of Construction

The following rules of construction apply to this Plan: (a) unless otherwise specified, all references in this Plan to "Sections" and "Exhibits" are to the respective Sections in or Exhibits to this Plan, as the same may be amended or modified from time to time; (b) the headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions of this Plan; (c) words denoting the singular number include the plural number and vice versa; (d) the rules of construction set forth in section 102 of the Bankruptcy Code apply; (e) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) apply; and (f) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan.

## II. TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS

### A. Treatment of Administrative Claims

Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, the District or its agent shall pay to each holder of an Allowed Administrative Claim, in full satisfaction, release, and discharge of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Under the Plan, the Allowed Administrative Claims consist of the following: SourceMedia, Inc. ($34,321.00); and Up-to-Date ($0.00).[2]

---

[2] The amounts listed herein are estimates of amount owing on account of the Allowed Administrative Claims on the Effective Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.      Treatment of Professional Claims**

Pursuant to section 943(b)(3), all amounts paid or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed to the Bankruptcy Court and must be reasonable.  There shall be paid to each holder of a Professional Claim, in full satisfaction, release and discharge of the Professional Claims existing on the Effective Date, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court deems reasonable.[3]

The portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to attorneys' fees shall be paid in equal monthly payments over a term of thirty-six (36) months following the Effective Date.  The District estimates that the attorneys' fees incurred by Baker & Hostetler LLP for services rendered to the District prior to the Effective Date shall total approximately $~~800,000~~850,000 as of the Effective Date .  The Allowed Professional Claims of Nave Cortell LLP, ~~HCCA,~~ and Province as well as the portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to costs incurred in the course of the Chapter 9 Case shall be paid in full upon, or as soon as reasonably practicable following, the Effective Date.  The District estimates that Nave Cortell LLP, ~~HCCA,~~ and Province shall have Professional Claims in the amount of approximately $~~30,593.00, $1,439,117.00,~~24,149.22, and $20,761.75, respectively, as of the Effective Date.  The District estimates that the portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to costs incurred in the course of the Chapter 9 Case shall total approximately $~~150,000~~200,000 as of the Effective Date.[4]

The District does not consent to the Bankruptcy Court adjudicating whether any other individual or entity constitutes a Professional or may assert a Professional Claim.  The District solely consents to the Bankruptcy Court adjudicating the reasonableness of the services rendered and costs incurred by the Professionals for which compensation and/or reimbursement is sought.

---

[3] The treatment of Professional Claims provided herein shall not in any way limit the rights of any professional employed by the District seeking compensation for services provided following the Effective Date.  The amounts listed in this Section are estimates of the Professional Claims and shall not in any way be interpreted as a limitation on the amount of the Professional Claims.

[4] This figure includes projected costs for Force 10 Partners, the financial advisory firm retained by Baker & Hostetler LLP to assist with the preparation of the Plan and associated documents.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The District, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for professional services rendered and costs incurred following the Effective Date.

**C.　Priority Claims in Chapter 9**

The only priority claims incorporated into chapter 9 through section 901 are those allowed under section 503(b) and entitled to priority under section 507(a)(2). The treatment of all such Administrative Claims is set forth immediately above in Sections II.A. and II.B. No other kinds of priority claims set forth in section 507 are recognized in chapter 9 cases.

**D.　Deadline for the Filing and Assertion of Postpetition Claims, Administrative Claims (Other Than Ordinary Course Administrative Claims), and Professional Claims**

**All proofs of claim for Claims arising on or after the Petition Date, and requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid, released, or otherwise settled, and all requests a determination regarding the reasonableness of Professional Claims, must be filed with the Bankruptcy Court and served upon the District no later than thirty (30) days <u>before</u> the date set for the Confirmation Hearing.** Any proof of claim for Claims arising on or after the Petition Date, or request for payment of an Administrative Claim or a Professional Claim that is not timely filed will be forever barred and holders of such Claims shall be barred from asserting such Claims in any manner against the District.

**III.　DESIGNATION OF CLASSES OF CLAIMS**

Pursuant to sections 1122 and 1123(a)(1), all Claims other than Administrative Claims and Professional Claims are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

<u>Class 1</u> – Secured Claims

<u>Class 1A</u> – Action Capital Corporation

<u>Class 1B</u> – Bank of the West

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

Class 1C – Canon Financial Services, Inc.

Class 1D – Cardinal Health 110, LLC

Class 1E – Healthcare Resource Group

Class 1F – Optum Bank, Inc.[5]

Class 1G – Vi Healthcare Finance, Inc.

Class 2 – Post-Petition Claims

Class 3 – General Unsecured Claims

Class 4 – Convenience Class Claims

## IV.    TREATMENT OF CLAIMS

### A.    Class 1 – Secured Claims[65]

#### 1.    Class 1A – Action Capital Corporation

Class 1A consists of the Claim asserted by Action Capital Corporation (also known as Coast to Coast Healthcare) in the amount of $185,600.35, which is purportedly secured by all accounts receivable of the District arising on or before January 31, 2015.

#### a.    Impairment and Voting

Class 1A is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Action Capital Corporation.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### b.    Treatment

Action Capital Corporation's Class 1A Claim is purportedly secured solely by accounts receivable generated on or before January 31, 2015, which the District estimates to be worth $0.00.

---

[5] Optum has asserted a secured claim against the District—i.e., the Optum Claim.  For the reasons set forth in Section V.A.3 of the Disclosure Statement and in the Optum Adversary, the District disputes the validity of the Optum Claim.  The District commenced the Optum Adversary in order to disallow the Optum Claim, and invalidate the Optum Loan and the purported security interested related thereto.  The treatment provided in the Plan for the Optum Claim is contingent on the allowance of such claim and shall not in any way constitute an admission of any factual or legal issue, including, without limitation, the validity or enforceability of the Optum Claim, the Optum Loan, and/or any associated security interest(s) or lien(s).

[65] In Schedule D, the District scheduled as Secured Claims certain Claims asserted by General Electric Capital Corporation, Leasing Associates of Barrington, Inc. (also known as LAB), HCCA, Marlin Leasing Corporation, Siemens Healthcare Diagnostics, Inc. (also known as Siemens Financial Services, Inc.), and U.S. Foods, Inc.  The foregoing claimants are not treated as Secured creditors under the Plan for the reasons set forth in Section V.A.5 of the Disclosure Statement.

- 11 -

Accordingly, in full satisfaction, release and discharge of the Class 1A Claim, Action Capital Corporation shall receive an allowed General Unsecured Claim in the amount of $185,600.35, which shall be included in and treated in accordance with the treatment provided for Class 3 Claims.

### 2. Class 1B – Bank of the West/Thermo Fisher Financial Services, Inc.

Class 1B consists of the Claims asserted by Bank of the West in the amount of $7,189.61 and Thermo Fisher Financial Services, Inc. in the amount of $12,443.46,[76] which are purportedly secured by an Abbott iSTAT 1 Upgrade from 200 Series and the related equipment and documentation.

#### a. Impairment and Voting

Class 1B is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Bank of the West and/or Thermo Fisher Financial Services, Inc. Accordingly, this Class is entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

#### b. Treatment

In full satisfaction, release and discharge of the Class 1B Claims, the District shall surrender to Bank of the West or Thermo Fisher Financial Services, Inc. the collateral for the underlying agreements—namely, one Abbott iSTAT 1 Upgrade from 200 Series and the related equipment and documentation. The District shall surrender the subject equipment and documentation on or as soon as practicable following the Effective Date.

### 3. Class 1C – Canon Financial Services, Inc.

Class 1C consists of the Claim asserted by Canon Financial Services, Inc. in the amount of $84,275.90, which is purportedly secured by certain office equipment subject to the agreements by and between the District and Canon Financial Services, Inc. or its affiliates.

---

[76] Bank of the West and Thermo Fisher Financial Services, Inc. each filed proofs of claim asserting secured claims in the subject collateral. Per the documentation provided in support of the proofs of claim, it appears that Thermo Fisher Financial Services, Inc. assigned its rights under the agreement with the District to Bank of the West in or about June 2013. Accordingly, under this Plan, the Claims asserted by Bank of the West and Thermo Fisher Financial Services, Inc. are treated as one and the same.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **a.    Impairment and Voting**

2    Class 1C is Impaired by this Plan since the treatment of this Class will affect the legal,

3    equitable, or contractual rights of Canon Financial Services, Inc.  Accordingly, this Class is entitled

4    to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

5    **b.    Treatment**

6    In full satisfaction, release and discharge of the Class 1C Claim, the District shall surrender

7    to Canon Financial Services, Inc. the collateral for the underlying agreement.  The District shall

8    surrender the subject equipment and documentation on or as soon as practicable following the

9    Effective Date.

10    **4.    Class 1D – Cardinal Health 110, LLC**

11    Class 1D consists of the Claim asserted by Cardinal Health 110, LLC in the amount of

12    $838.28, which is purportedly secured by certain funds presently held by Cardinal Health 110,

13    LLC.

14    **a.    Impairment and Voting**

15    Class 1D is Unimpaired by this Plan since the treatment of this Class will not affect the

16    legal, equitable, or contractual rights of Cardinal Health 110, LLC.  Accordingly, this Class is **not**

17    entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.[87]

18    **b.    Treatment**

19    In full satisfaction, release and discharge of the Class 1D Claim, Cardinal Health 110, LLC

20    shall be entitled to retain the funds presently in its possession, which total $838.28.  The remainder

21    of the Claim asserted by Cardinal Health 110, LLC shall be allowed as a General Unsecured Claim

22    in Class 3 in accordance with the proof of Claim filed by Cardinal Health 110, LLC with the

23    Bankruptcy Court.

24    **5.    Class 1E – Healthcare Resource Group**

25

26

27    [87] The Unimpaired status of the Class 1D Claim held by Cardinal Health 110, LLC shall not affect the right of Cardinal
Health 110, LLC, if any, to cast a vote for or against the Plan on account of the portion of its Claim categorized as a
General Unsecured Claim in Class 3.

28

- 13 -

FIRSTSECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

611073535.1
611923771.1

Class 1E ~~is comprised~~consists of the Disputed Claim asserted by Healthcare Resource Group (~~also known as~~ **"HRG"**) in the amount of $151,562.73, which is purportedly secured by ~~the District's~~various personal property and general intangible assets of the District or in which the District has an ownership interest.  Based on its books and records, HRG received preferential and/or fraudulent transfers avoidable under the Bankruptcy Code and/or California law and, as such, the HRG Claim is unenforceable under section 502(d).

### a.     Impairment and Voting

Class 1E is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Healthcare Resource Group~~.  Accordingly~~; however, as comprised of a Disputed Claim, this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

### b.     Treatment

~~In full satisfaction, release and discharge of the Class 1E Claim~~As a Disputed Claim, the HRG Claim shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the HRG Claim or HRG returns any and all avoidable transfers.  If the HRG Claim is adjudged valid, enforceable and secured in whole or in part and/or HRG returns any and all avoidable transfers, the District shall make periodic payments to ~~Healthcare Resource Group~~HRG until the Class 1E Claim is paid in full with interest.  Under the Plan, the payments on account of the Class 1E Claim shall ~~be made monthly and~~begin in the first full month following the allowance of the HRG Claim and/or the return of any and all avoidable transfers. If deemed an Allowed Claim, HRG shall receive monthly payments in the approximate amount of $~~1,481.00~~2,020.00 per month over the life of the Plan, which ~~accounts for~~equates to the full amount of the Claim plus interest at a rate of 3.25% *per annum*.

**6.     Class 1F – Optum Bank, Inc.**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Class 1F is comprised of the Disputed Claim asserted by Optum in the amount of $1,717,320.24, which is purportedly secured by the District's real property as well as personal property and general intangible assets. The validity and enforceability of the Optum Claim is the subject of the Optum Adversary.

### a. Impairment and Voting

Class 1F is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Optum. However, asAs Class 1F is comprised solely of the Disputed Claim of Optum, Class 1F is not entitled to vote on the Plan unless the Optum Claim is estimated for voting purposes pursuant to Bankruptcy Rule 3018(a); however, the District and Optum entered into a stipulation permitting Optum to vote in Class 1F. As such, Class 1F is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

### b. Treatment

As a Disputed Claim, the Optum Claim shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid, enforceable and secured in whole or in part, the District shall pay Optum Cash in an amount equal to the portion of the Optum Claim allowed as a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, no later than one hundred and twenty (120) days following the entry of a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid and enforceable but not wholly secured, the portion of the Optum Claim adjudged to be a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, shall be treated pursuant to the preceding sentence and any order(s) entered in the Optum Adversary and the remaining Allowed Claim shall be treated as a General Unsecured Claim in Class 3. If the Optum Claim is adjudged invalid and unenforceable, Class 1F shall not receive any distributions under the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 7.     Class 1G – Vi Healthcare Finance, Inc.

Class 1G is comprised of any and all funds advanced to the District by Vi Healthcare Finance Inc. ("**ViHF**") pursuant to the $2,000,000 line of credit extended by ViHF (the "**ViHF LOC**") that are not repaid prior to the Effective Date.  The anticipated balance of the ViHF LOC on the Effective Date is $~~1,447,106, which shall be~~1,314,922.  The Class 1G Claim is purportedly secured in accordance with the terms of the ViHF LOC ~~and~~ to the extent permitted under California law.  The Class 1G Claim constitutes a Disputed Claim under the Plan.

#### a.     Impairment and Voting

Class 1G is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of ViHF.  ~~Accordingly~~; however, as comprised of a Disputed Claim, this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### b.     Treatment

The ~~District shall pay any balance owing under the ViHF LOC as of the Effective Date in full on or as soon as practicable following the Effective Date.~~treatment of Class 1G shall depend on the outcome of the ViHF Adversary.  If the District succeeds in disallowing the ViHF Claim in its entirety, Class 1G shall not receive any distributions under the Plan.  If the Bankruptcy Court allows the ViHF Claim as a subordinated claim and transfers any security interest(s) associated therewith to the District, the ViHF Claim shall be treated in a separate class of subordinated Claims—Class 5.  Class 5 shall receive a distribution equal to three percent (3%) of the total claims in the Class, which shall be paid in a lump sum within one hundred and twenty (120) days after entry of an order subordinating the ViHF Claim.  If the Bankruptcy Court allows the ViHF Claim as a Class 1G Claim, the District shall pay the Allowed Secured Claim of ViHF in full within one hundred and twenty (120) days after entry of an order allowing the Class 1G Claim.

### B.     Class 2 – Post-Petition Claims

Class 2 is comprised of the Claims listed in Exhibit 6.

#### 1.     Impairment and Voting

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Class 2 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 2 Claims.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

**2.      Treatment**

In full satisfaction, release and discharge of the Class 2 Claims, holders of Class 2 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the amount listed for each respective claimant in Exhibit 6.

**C.      Class 3 – General Unsecured Claims**

Class 3 is comprised of the Claims listed in Exhibit 7.[98]

**1.      Impairment and Voting**

Class 3 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 3 Claims.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

**2.      Treatment**

In full satisfaction, release and discharge of the Class 3 Claims, holders of Class 3 Claims shall receive a *pro rata* portion of $100,000.00, which shall be paid as follows: (a) $~~50,000.00 on the Effective Date~~25,000.00 on December 31, 2019, or as soon thereafter as practicable; ~~and (b) $50,000.00 on the last Business Day of 2018.~~(b) $25,000.00 on April 30, 2020; (c) $25,000 on December 31, 2020, or as soon thereafter as practicable; and (d) $25,000 on April 30, 2021, or as soon thereafter as practicable.  In addition to the foregoing distributions, holders of Class 3 Claims shall receive a *pro rata* portion of 25% of any recovery, net of fees, costs, and other administrative expenses associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof.

**3.      Class 4 Election**

---

[98] Exhibit 7 does not include any estimate(s) on account of the potential General Unsecured Claim of Optum, if any.  If the Bankruptcy Court rules that Optum is entitled to an allowed General Unsecured Claim, such Claim shall be entitled to a *pro rata* portion of any distributions to Class 3.

- 17 -

611073535.1
611923771.1

BAKER & HOSTETLER LLP
ATTORNEYS AT  LAW
LOS ANGELES

Holders of General Unsecured Claims in Class 3 may elect to have their Claim(s) treated as Class 4 Claim(s) by so noting on the Ballot. Any Class 3 Claim electing treatment under Class 4 shall irrevocably forfeit its status as a Class 3 General Unsecured Claim and the holder of such Claim shall be deemed to have accepted payment as a Class 4 Claim in full satisfaction, release and discharge of their Claim.

### D.    Class 4 – Convenience Claims

Class 4 is comprised of the Claims in an amount of $250.00 or less. A list of all Class 4 Claims is set forth in Exhibit 8.

#### 1.    Impairment and Voting

Class 4 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 4 Claims. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### 2.    Treatment

In full satisfaction, release and discharge of the Class 4 Claims, holders of Class 4 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the lesser of (a) the amount of their Allowed Class 4 Claims or (b) $100.00.

## V.    ACCEPTANCE OR REJECTION; CRAMDOWN

### A.    Voting of Claims

Each holder of an Allowed Claim classified into Classes 1A, 1B, 1C, 1E~~F~~, 2, 3, and 4 shall be entitled to vote each such Claim to accept or reject this Plan.[10]

With respect to any Class of Impaired Claims that fails to accept this Plan, the District intends to request that the Bankruptcy Court nonetheless confirm this Plan pursuant to the so-called "cramdown" powers set forth in section 1129(b).

---

[10] ~~As the Optum Claim is a Disputed Claim by virtue of the Optum Adversary, Class 1F is not entitled to vote on the Plan. If the Optum Claim is estimated pursuant to Bankruptcy Rule 3018(a) for voting purposes, Class 1F shall be entitled to vote on the Plan and shall be deemed included within the definition of "Voting Classes" for purposes of the Disclosure Statement and Plan.~~

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

611073535.1
611923771.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**VI.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    **A.     Assumption of Executory Contracts and Unexpired Leases**

Without the need to file any further motions, the District intends to assume and will assume as of the Effective Date all executory contracts and unexpired leases to which it is a party and which was entered into prior to the Petition Date, except (i) for those unexpired leases and executory contracts specifically identified in subsection C. below or (ii) as otherwise provided in this Plan.

    **B.     Cure Payments**

To cure any purported default or arrears under the executory contracts and unexpired leases the District plans to assume through the Plan, the District shall make the cure payments listed on Exhibit 9. ~~11~~9 The Bankruptcy Court shall resolve all disputes regarding: (i) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (ii) the ability of the District to provide "adequate assurance of future performance" within the meaning of section 365 under the contract or lease to be assumed; and (iii) any other matter pertaining to such assumption and assignment.  If any party to an executory contract or unexpired lease that is to be assumed by the District asserts that the proposed cure payment is insufficient or some other performance is required to assume the subject contract or lease, such party shall file with the Bankruptcy Court and serve upon the District a written statement and accompanying declaration in support thereof specifying the basis for its position and accounting for the purported amount owing under the subject contract or lease not later than thirty (30) days ~~after~~**before** the Confirmation ~~Date~~Hearing.  The failure to timely file and serve such a statement shall be deemed to be a waiver of any and all objections to the proposed assumption, including, without limitation, any objection pertaining to the adequacy of the proposed cure payment.

---

~~11~~9 If an executory contract or unexpired lease is not identified on Exhibit 9, the District shall not make any cure payment to any party or parties to such agreement as the District does not have any record of any outstanding amount owing under the subject agreement.  The omission of the subject contract or lease, however, shall not in any way affect the assumption of the subject agreement by and through the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C.      Rejection of Executory Contracts and Unexpired Leases[10]

Without the need to file any further motions, the District elects to reject and shall be deemed to have rejected as of the Effective Date the following executory contracts and unexpired leases:[~~12~~11]

- Master Lease Agreement dated as of November 13, 2012 between the District, as lessee, and General Electric Capital Corporation, as lessor, and all other leases based thereon, pertaining to, among other things, a Proteus X Ray XR/a 65W Radiographic System;

- Lease dated March 7, 2013 between the District, as lessee, and Thermo Fisher Financial Services, Inc., as lessor, and/or Bank of the West, as assignee of Thermo Fisher Financial Services, Inc., pertaining to an Abbott iSTAT 1 Upgrade from 200 Series and related equipment and documentation;

- Agreement dated October 9, 2014, between the District and Thermo Fisher Financial Services, Inc., pertaining to a VITROS 350 Chemistry System;

- Lease between the District, as lessee, and Healthland, Inc., as lessor, pertaining to certain medical billing hardware and software;

- Lease No. x005 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4453);

- Lease No. x006 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner Advance 6255 (serial number x1950);

- Lease No. x007 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4451);

- Lease No. x008 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to IRA 4235 (serial number x1785), IRA 1025iF (serial number

---

[10] The Management Services Agreement ("**MSA**") by and between the District and HCCA was rejected via stipulation prior to the preparation and submission of the Plan. *See* D.E. 377. As such, the MSA is not listed in this section. The exclusion of the MSA shall not in any way alter the prior rejection of the MSA or the agreement(s) of the District and HCCA relation to such rejection.

[~~12~~11] Any reference contained herein to an agreement as a "lease" shall not constitute an admission regarding whether the subject agreement constitutes "true lease" under applicable law.

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

x5469), IRA 400iF (serial number x2533), IRA 400iF (serial number x1857), IRA

400iF (serial number x1862), and IR 1730iF (service only) (serial number x5155);

- Agreement between the District and Celleration Inc.;

- Employment Agreement between the District, as employer, and Dr. Kenneth L. Saeger, as employee;

- Employment Agreement between the District, as employer, and Dr. Milton R. Jones, as employee;

- Employment Agreement between the District, as employer, and Dr. Steve Chong Luo, as employee;

- Service Agreement between the District and Laboratory Specialists International, as service provider;

- Lease between the District, as lessee, and Marlin Leasing Corporation, as lessor, pertaining to certain medical equipment, including a Horiba Medial Pentra 60 C+, two Unimac Natural Gas Dryers, and one Ultrascan table;

- Agreement between the District and T System, Inc.; and

- Agreement between the District and Tosoh Bioscience, Inc.

**D.**      **Claims Arising from Rejection**

~~Proofs~~<u>Unless otherwise agreed by the District and the counterparty or counterparties to the subject contract or lease, proofs</u> of Claim arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the District no later than thirty (30) days after the Effective Date. The failure to properly and timely assert a rejection damages Claim pursuant to this Section VI.D. shall result in such Claim being forever barred and rendered unenforceable against the District or its assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be classified into Class 3 (General Unsecured Claims) and treated accordingly.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

## VII. IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN

Under the Plan, the District shall be required to make Cash disbursements over a term of years totaling approximately $~~6,732,730~~[13]1,333,071 while paying the costs and expenses associated with maintaining the operations of the District's facilities and services, including, without limitation, costs associated with staffing, supplies and equipment, and capital expenditures for the acquisition of new equipment and maintenance of the District's facilities, which total approximately $~~10,534,350~~9,476,530 per year.

As discussed in greater detail in the Disclosure Statement, the Plan will be funded utilizing the following sources:

- <u>Cash on Hand</u>. The District estimates that it will have approximately $~~2,817,400~~311,131 in cash on hand on the Effective Date.

- <u>Operations</u>. The District estimates that it will generate approximately $~~8,930,410~~9,754,532 per year from the operations.[~~14~~12]

- ~~Bond Revenues. The District shall receive approximately $4,500,000 from the issuance of $5,000,000 in general obligation bonds. The issuance of such bonds and receipt of the revenues therefrom shall occur on or before the Effective Date, which is projected to occur in or about March 2018.~~

- <u>Tax Revenues</u>. The District shall receive approximately $900,000 per year on account on approved tax assessments.

- <u>Parcel Tax Revenues</u>. Prior to the Effective Date, the District shall seek approval of an additional parcel tax assessment. The District shall seek approval of the parcel tax initiative as part of the general election in ~~November 2017.~~April 2018. The parcel tax initiative shall result in additional revenues of $~~350,000~~602,000 per year, which shall be receive bi-annually in April and December of each calendar year, beginning in ~~April~~December 2018.

---

[13] ~~This figure assumes payment of the Optum Claim in full. If the Optum Claim is disallowed, the distributions under the Plan will total approximately $2,731,000.~~

[~~14~~12] The estimated operational revenues includes the estimated revenues from the facility for ~~psychiatric holds pursuant to California Welfare & Institutions Code § 5150 and~~ medical infusion services.

~~FIRST~~SECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

611073535.1
611923771.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- Transient Occupancy Tax.  Prior to the Effective Date, the District shall seek approval of an ~~increase~~allocation of one percent (1%) of the Transient Occupancy Tax (TOT) ~~of 1% in 2018 (increasing the TOT from 12% to 13%) and 2% in 2021 (increasing the TOT to 14%) and allocation of the additional TOT revenues to District operations and debt servicing~~to the District.  Based on historical TOT revenues, the District estimates that the ~~increased~~ TOT allocation will result in additional revenues of $~~268,000~~34,600 per year ~~for 2018 through 2020 and $536,000 per year for 2021 through 2025.~~.  The District shall receive the TOT revenues in December of each calendar year.

- Inyo County Treasury Loan.  In accordance with its prior practices, the District intends to borrow funds from Inyo County to the extent necessary to cover any cash shortage during the term of the Plan.  The District would repay any such loan(s) with interest upon receipt of funds from the Intergovernmental Transfer program (described in Exhibit 5 as "Supplemental Funds") or upon the availability of funds.  Interest on such loans accrues at the rate of the current Local Agency Investment Fund at the time of financing plus 100 basis points.

- ~~ViHF LOC.  In addition to its revenue sources, the District also has access to a $2,000,000 line of credit with ViHF.~~Litigation Proceeds.  As discussed *supra*, the District intends to commence litigation against certain individuals and entities.  If successfully, the District may obtain damages in excess of $6,000,000 and avoid certain fraudulent and/or preferential payments to creditors.  Such funds will be available for the payment of Claims under the Plan and the maintenance of the District's operations.

In sum, pursuant to the Plan, the District shall have approximately $~~7,317,400 in readily available funds ($2,817,400from~~311,131 in cash on hand and ~~$4,500,000 from the bond issuance) and~~ approximately $~~10,678,000~~10,391,150 in revenues per year.  As a result, and as the projections reflect, the District shall be able to maintain operations so that it can continue providing desperately

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611073535.1
611923771.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

needed medical treatment to the community at large and make all payments required under the Plan.

## VIII.   RESERVATION OF RIGHTS OF ACTION

All of the District's claims, causes of action, rights of recovery, rights of offset, rights of recoupment, rights to refunds, and similar rights shall be retained by the District.  The failure to list in the Disclosure Statement any potential or existing Right of Action retained by the District is not intended to and shall not limit the rights of the District to pursue any such action.  Unless a Right of Action is expressly waived, relinquished, released, compromised, or settled (in this Plan or otherwise), the District expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Rights of Action upon or after the confirmation or consummation of this Plan or the Effective Date.  In addition, the District expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the District is a defendant or an interested party.

## IX.   DISTRIBUTIONS

### A.   Disbursing Agent

On and after the Effective Date, the District shall serve as disbursing agent for payments to be made under this Plan in accordance with section 944.  Notwithstanding, the District may retain one or more agents to perform or assist it in making distributions pursuant to this Plan, which agents may serve without bond.  The District may provide reasonable compensation to any such agent(s) without further notice or Bankruptcy Court approval.

### B.   Delivery of Distributions

All distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the District or its agents unless (i) the holder has designated an alternate address for payment in a proof of Claim filed with Bankruptcy Court or (ii) specifies an alternate address on its Ballot.  Any and all notifications of address changes and all address confirmations should be mailed to: ~~Sonia Gaeta~~Karla Hernandez at Baker & Hostetler LLP,

11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90024, or

~~sgaeta~~khernandez@bakerlaw.com.

### C.    Undeliverable Distributions

#### 1.    Holding of Undeliverable Distributions

If any distribution to a holder of an Allowed Claim is returned to the District or its agent as undeliverable, no further distributions shall be made to such holder unless and until the District is notified in writing of such holder's then-current address.  Unless and until the District is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be set aside and held in a segregated account to be administered pursuant to Section IX.C.

#### 2.    Notification and Forfeiture of Unclaimed Property

On the first anniversary of the Effective Date, the District will file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identified the name and last-known address of the individuals and entities entitled to the Unclaimed Property.  The District shall not be otherwise required to attempt to locate any such individual or entity.  On the second anniversary of the Effective Date, all remaining Unclaimed Property and accrued interest or dividends earned thereon will be remitted to and vest in the District.  Additionally, such individuals and entities shall be deemed to have waived and forfeited their right to any future payments under the Plan and such funds shall be retained by the District.  Notwithstanding the non-payment of any forfeited Claims, such Claims shall be deemed satisfied and discharged as if paid pursuant to the terms of the Plan.

### D.    Distribution of Cash

Any payment of Cash to be made by the District or its agent pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the District.

### E.    Timeliness of Payments

Any payments or distributions to be made pursuant to this Plan shall be deemed to be timely made if made within fourteen (14) Business Days after the date(s) specified in this Plan.  Whenever any distribution to be made under this Plan is due on a day that is not a Business Day, such

BAKER & HOSTETLER LLP
ATTORNEYS AT  LAW
LOS ANGELES

distribution instead shall be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

### F.     Default and Cure

In the event the District fails to make any payment required under this Plan in a timely manner, the affected creditors shall serve the District with a notice of default not later than thirty (30) days after the purported default along with any documentation supporting the allegation of an alleged default.  Not later than sixty (60) days after receipt of the notice of default, the District shall either (i) cure the default or (ii) serve the affected creditor(s) with a statement and supporting documentation contesting the allegation of default.  In the event the District contests an alleged default, not later than five (5) Business Days after serving a response to a purported default, the District shall file a motion with the Bankruptcy Court requesting a resolution of the dispute relating to the alleged default and set the motion for hearing on the first available hearing date not sooner than fourteen (14) days after filing the motion.  If the Bankruptcy Court rules that the non-payment constitutes an event of default under the Plan, the District shall cure the purported default not later than five (5) Business Days following the entry of a Final Order of the Bankruptcy Court adopting the finding with respect to the purported default.

### G.     Compliance with Tax Requirements

Any and all distributions pursuant to the Plan shall be subject to any applicable tax withholding and reporting requirements imposed on it by any governmental unit.  In connection with each distribution which requires the filing of an information return (such as Internal Revenue Service Form 1099 or 1042) or withholding, the District shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information is required by law to avoid withholding has not been received by the District at the time the district is to be made, the District, at its sole

Baker & Hostetler llp
Attorneys at Law
Los Angeles

option, may withhold the amount required and distribute the balance to such entity or the District

may decline to make such distribution(s) until the information is received.

### H.    Time Bar to Cash Payments

Checks issued by the District on account of Allowed Claims will be null and void if not

negotiated with ninety (90) days from and after the date of issuance thereof.  Requests for

reissuance of any check shall be submitted in writing to: ~~Sonia Gaeta~~Karla Hernandez, Baker &

Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California ~~90024.~~90024 or via

email addressed to khernandez@bakerlaw.com.  Any request for reissuance of an expired check

must be not later than 180 calendar days following the initial issuance of the subject check.  After

such date, the amounts stated in the voided check(s) shall be deemed forfeited and the District shall

retain such funds.  Any amounts forfeited pursuant to the preceding sentence shall be deemed paid

to and received by the subject claimant for purposes of calculating the amounts owing to such

creditor under the Plan.

### I.    No *De Minimis* Distributions

With the exception of Class 4 Claims (Convenience Class Claims), no payment of less than

ten dollars (US$10.00) will be made by the District on account of any Allowed Claim.

### J.    No Distributions on Account of Disputed Claims or Disallowed Claims

Notwithstanding anything to the contrary in this Plan, no distributions shall be made on

account of any part of any Disputed Claim or Disallowed Claim unless and until such Claim

becomes an Allowed Claim and only to the extent such Claim constitutes an Allowed Claim.

Distributions made after the Effective Date with respect to Claims that were not Allowed Claims as

of the Effective Date, but are later determined to be Allowed Claims, shall be deemed to have been

made on time and in accordance with the terms of the Plan.

If any distributions are made prior to the resolution of a dispute pertaining to a Claim, the

portion that would be payable on account of such Claim if such Claim was an Allowed Claim, shall

be held in a segregated bank account.  If the Claim is subsequently adjudicated to be an Allowed

Claim, the segregated funds shall be distributed to the holder of such Claim. Any interest accrued on account of the segregated funds shall be paid to and retained by the District.

### K. No Post-Petition Date Accrual

Unless otherwise specifically provided in the Plan, specifically agreed to by the District in writing, or allowed by order of the Bankruptcy Court, the District will not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

## X. DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS

### A. Claim Objection Deadline; Prosecution of Objections

The District shall have the right to object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. Unless otherwise ordered by the Bankruptcy Court, the District shall file and serve any such objections to Claims (whether by motion or commencement of an adversary proceeding) by not later than one hundred and eighty (180) days after the Effective Date (or, in the case of Claims properly filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims).

### B. Reserves, Payments and Distributions with Respect to Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the District or its agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in the manner set forth in the Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, but in no event more than sixty (60) days thereafter, unless otherwise provided in the Plan, order of the Bankruptcy Court, or agreement between the District and the subject Claim holder. Unless otherwise specifically provided in the Plan or allowed by order of the Bankruptcy Court, no interest will be paid on Disputed Claims that later become Allowed Claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## XI.  EFFECT OF CONFIRMATION

### A.  Discharge of the District

Pursuant to section 944, upon ~~completion of all payments required under~~the substantial consummation of this Plan, the District shall be discharged from all debts (as defined in the Bankruptcy Code) of the District and Claims against the District other than (i) any debt specifically and expressly excepted from discharge by this Plan or the Confirmation Order and (ii) any debt owed to an entity that, before the confirmation of this Plan, had neither notice nor actual knowledge of the Chapter 9 Case.  Substantial consummation, as defined in 11 U.S.C. §1101(2), shall mean: (1) a transfer of all or substantially all of the property proposed by the Plan to be transferred; (2) assumption by the District or by any successor to the District under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (3) commencement of Distributions under the Plan.  Upon substantial consummation of the Plan, the District shall file with the Court and serve upon all interested parties a notice of substantial consummation of the Plan.

The rights afforded in this Plan and the treatment of all holders of Claims, whether Impaired or Unimpaired, shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the District or any of its properties, assets or interests in property.  Except as otherwise provided herein, upon the Effective Date, all Claims against the District shall be deemed satisfied, discharged, and released in full, whether Impaired or Unimpaired.

### B.  Injunction

~~Except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold Pre-Confirmation Date Claims shall be permanently enjoined from and after the Confirmation Date from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Pre-Confirmation Date Claims against the District or its property; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award,~~

- 29 -

611073535.1
611923771.1

1  decree or order against the District or its property with respect to such Pre-Confirmation Date

2  Claims; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against the

3  District or its property; and (iv) asserting any right of setoff, subrogation or recoupment of any kind

4  against any obligation due to the District with respect to any such Pre-Confirmation Date Claims.

5  **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, ALL**

6  **ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD PRE-CONFIRMATION DATE**

7  **CLAIMS SHALL BE PERMANENTLY ENJOINED FROM AND AFTER THE**

8  **CONFIRMATION DATE FROM: (I) COMMENCING OR CONTINUING IN ANY**

9  **MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT**

10  **TO ANY SUCH PRE-CONFIRMATION DATE CLAIMS AGAINST THE DISTRICT OR**

11  **ITS PROPERTY; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING**

12  **BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER**

13  **AGAINST THE DISTRICT OR ITS PROPERTY WITH RESPECT TO SUCH**

14  **PRE-CONFIRMATION DATE CLAIMS; (III) CREATING, PERFECTING, OR**

15  **ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST THE**

16  **DISTRICT OR ITS PROPERTY; AND (IV) ASSERTING ANY RIGHT OF SETOFF,**

17  **SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION**

18  **DUE TO THE DISTRICT WITH RESPECT TO ANY SUCH PRE-CONFIRMATION**

19  **DATE CLAIMS.**

20  **C.     Term of Existing Injunctions or Stays**

21  Unless otherwise provided, all injunctions or stays provided for in the Chapter 9 Case

22  pursuant to sections 105, 362, or 922, or otherwise, and in existence on the Confirmation Date, shall

23  remain in full force and effect unless and until the District receives a discharge in accordance with

24  Section XI.A.

25  **D.     Exculpation**

26  Except with respect to obligations specifically arising pursuant to or preserved in this Plan,

27  no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

28

- 30 -

exculpated from, any claim, obligation, cause of action or liability for any claim in connection with or arising prior to or on the Effective Date for any act taken in connection with, or related to, (i) the administration of the Chapter 9 Case, (ii) the negotiations, pursuit, confirmation, solicitation of votes for, consummation or implementation of the Plan, (iii) the administration of the Plan or property to be distributed under the Plan, (iv) the Cal. Gov't Code § 53760 process or compliance therewith, (v) any document, release, contract, or other instrument entered into in connection with, or related to, the Plan, and/or (vi) any other transaction contemplated by or entered into in connection with the Plan or entered into during the administration of the Chapter 9 Case; *provided*, *however*, that nothing in this Section XI.D. shall be deemed to release or exculpate any Exculpated Party for its willful misconduct or gross negligence.  In all respects, each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.

### E.     Good Faith Compromise

In consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan, including, without limitation, the exculpation provision contained in Section XI.D. of this Plan, constitute a good faith compromise and settlement of all Claims, causes of action and/or controversies relating to the rights that a holder of a Claim may have with respect to the District, any distributions to be made pursuant to the Plan on account of any such Claim, and any and all Claims and causes of action of any party.  The entry of the Confirmation Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims and/or controversies and the Bankruptcy Court's finding that all such compromises or settlements are in the best interests of the District and the holders of Claims, and are fair, equitable, and reasonable.

## XII.   RETENTION OF AND CONSENT TO JURISDICTION

Following the Effective Date, and in accordance with section 945, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

relating to the District and/or arising in or related to the Chapter 9 Case or this Plan or the documents filed in support thereof, including, but not limited to:

    1.     The assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the District is a party or with respect to which the District may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

    2.     The entry or orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all other contracts, settlement agreements, instruments, releases, exculpations, and other agreements or documents related to this Plan;

    3.     Any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the District after the Effective Date or that are instituted by any holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Chapter 9 Case, whether or not such action is initially filed in the Bankruptcy Court or any other court, including, without limitation, the Optum Adversary;

    4.     Distributions to holders of Allowed Claims pursuant to this Plan;

    5.     Any objections to Claims or to proofs of Claim filed, both before and after the Effective Date, including any objections to the classification of any Claim, and motions to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

    6.     The entry of orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

    7.     The entry of orders in aid of execution of this Plan, to the extent authorized by section 1142(b);

    8.     Modifications to this Plan, the cure of any defect or omission, or the reconciliation any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

    9.     Disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

Confirmation Order or the extent of any entity's obligations incurred in connection with, released, enjoined, or exculpated under this Plan or the Confirmation Order;

10.     The issuance of injunctions, entry and implementation of other orders, or such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

11.     Any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document related to this Plan or the Disclosure Statement;

12.     Any other matter for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

13.     Any and all disputes or controversies arising in connection with or relating to the terms or enforcement of any relevant agreements.

## XIII.    CONDITIONS PRECEDENT

### A.    Condition Precedent to Confirmation

The Plan shall not be confirmed unless and until the following conditions precedent have been satisfied or waived: (1) the Plan satisfies the requirements of section 943(b) of the Bankruptcy Code, as applicable; (2) the District has received any and all authorizations, consents, regulatory approvals, rulings, no-action letters, opinions, and documents that are necessary to implement the Plan and that are required by law, regulation or order, including, but not limited to, those required under section 943(b)(6) of the Bankruptcy Code; and (3) the Bankruptcy Court enters a Confirmation Order in a form and substance satisfactory to the District.

### B.    Conditions Precedent to Effective Date

The Effective Date shall not occur and this Plan shall be of no force and effect unless or until following conditions precedent have been satisfied or waived:

1.     **Confirmation Order.**  The Confirmation Order shall have been entered, shall be in full force and effect, and shall be a Final Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRSTSECOND AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS

2.       **Plan Documents.**  All agreements and instruments contemplated by, or to be entered into pursuant to, this Plan shall be in form and substance acceptable to the District and shall have been duly and validly executed and delivered, or deemed executed by the parties thereto, and all conditions to their effectiveness shall have been satisfied or waived.

3.       **Approval of ~~Bond and~~ Tax Measures**.  The District shall have received approval of the ~~Bond Measure as well as the~~ parcel tax and transient occupancy tax initiatives~~, and shall have received the funds derived from the Bond Measure~~.

4.       **Timing.**  The Effective Date shall occur on the first Business Day after which the conditions set forth in Section XIII.B. are satisfied or waived.

~~C.       **Condition to Effective Date Payments**~~

~~As a condition precedent to the payment of any Claim for which payment is due under the Plan, the District shall have paid any and all Post-Petition Claims incurred or arising between July 14, 2017 and the date immediately preceding the Effective Date.~~

**C.**       ~~**D.**~~ **Waiver of Conditions Precedent to Effective Date**

The District may waive in whole or in part any condition to the Effective Date of this Plan or the payment of any Claim on or as soon as practicable after the Effective Date.  Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**D.**       ~~**E.**~~ **Effect of Failure of Conditions**

In the event that the conditions to the Effective Date of this Plan have not been timely satisfied or waived, and upon notification submitted by the District to the Bankruptcy Court, (i) the Confirmation Order shall be vacated, (ii) no distributions under this Plan shall be made, (iii) the District and all holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all of the District's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

against the District or any other entity or to prejudice in any manner the rights, remedies, or claims of the District or any entity in any further proceeding involving the District.

### E. ~~F.~~ No Admission of Liability

The Plan constitutes a settlement and compromise between and among the District and various parties.  The Plan shall not be deemed an admission or concession with respect to any factual or legal contention, right, defense, or position taken by the District.

## XIV.  MISCELLANEOUS PROVISIONS

### A.  Dissolution of the Committee

On the Effective Date, the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 9 Case and the Committee shall be deemed dissolved and its appointment terminated.  Any professionals retained by the Committee and/or the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred.

### B.  Severability

If any term or provision of this Plan is held by the Bankruptcy Court or any other court of competent jurisdiction to be invalid, void, or unenforceable, the Bankruptcy Court, in each such case at the election of and with the consent of the District, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**C.**      **Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to principles of conflicts of laws.

**D.**      **Effectuating Documents and Further Transactions**

Each of the officials and employees of the District is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of this Plan.

**E.**      **Acceleration of Payments**

The District in its sole and absolute discretion may accelerate the payment(s) of any or all of the payments required under the Plan without the need for further order of the Bankruptcy Court, *so long as* the acceleration of payment(s) does not render the District unable to pay operational expenses on a going forward basis or meet its obligations under the Plan. The accelerated payment of any Claim pursuant to this provision shall not result in any pre-payment penalty or premium or any additional liability for the District.

**F.**      **Delivery of Notices**

Unless otherwise provided herein, any and all notices required under this Plan shall be delivered to counsel for the District via email addressed to amcdow@bakerlaw.com and ~~sgaeta~~khernandez@bakerlaw.com **and** by U.S. Mail, postage prepaid, addressed to:

> Southern Inyo Healthcare District
> c/o Ashley M. McDow, Esq.
> Baker & Hostetler LLP
> 11601 Wilshire Blvd., Ste. 1400
> Los Angeles, CA 90025

The District may change the address for service of notices under the Plan at any time by filing a notice of change of address with the Bankruptcy Court and serving the same on all creditors and

611073535.1
611923771.1

interested parties.  Any notice that is not delivered in accordance with this paragraph or as directed

in any change of address notification for the District shall be deemed ineffective.

### G.    Notice of Effective Date

On or before fourteen (14) days after occurrence of the Effective Date, the District or its

agent shall mail or cause to be mailed to all holders of Allowed Claims a notice that informs such

holders of: (i) entry of the Confirmation Order; (ii) the occurrence of the Effective Date; (iii) the

deadline for the filing of Claims arising from such rejection of any executory contract or unexpired

lease; (iv) the deadline established under this Plan for the filing of Administrative Claims and/or

Professional Claims; (v) the procedures for changing an address of record pursuant to Section

IX.B.; and (vi) such other matters as the District deems to be appropriate.


Dated:      ~~July 19, 2017~~January 17, 2018          SOUTHERN INYO HEALTHCARE DISTRICT


                                                          /s/ ~~Jaque Hickman~~Mark Lacey [signature to follow]
                                                      By: _____
                                                          ~~Jaque~~Mark ~~Hickman~~Lacey

                                                      ~~Secretary~~Vice President of the Board of Directors for
                                                      Southern Inyo Healthcare District

Submitted by:


**BAKER & HOSTETLER LLP**


By:      /s/ Michael T. Delaney
         _____
         Ashley M. McDow
         Michael T. Delaney

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

Document comparison by Workshare 9 on Wednesday, January 17, 2018 9:22:46 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\NRPortbl\BHDOCS\MDELANEY\611073535_1.docx |
| Description | 611073535_1 |
| Document 2 ID | interwovenSite://BHDMS/BHDOCS/611923771/1 |
| Description | #611923771v1<BHDOCS> - In re SIHD - Second Amended Plan for the Adjustment of Debts (Final clean) |
| Rendering set | BH Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 199 |
| Deletions | 206 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 405 |