**#15**
SAMUEL R. MAIZEL (Bar. No. 189301)
samuel.maizel@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017-5704
Telephone: (213) 623 9300
Facsimile: (213) 623 9924

GARY W. MARSH
gary.marsh@dentons.com
DENTONS US LLP
303 Peachtree St., NE, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

Special Counsel to the Debtor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No.: 2016-10015<br><br>Chapter 9<br><br>DC No.: KDG-1<br><br>**DEBTOR'S OPPOSITION TO REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF HEALTHCARE CONGLOMERATE ASSOCIATES, LLC ARISING OUT OF REJECTION OF EXECUTORY CONTRACT (11 U.S.C. §§ 503(b) AND 507(a)(2))**<br><br>Hearing:<br>Date: TBD<br>Time: TBD<br>Place: TBD |

106403403\V-5

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF FACTS ..............................................................................................1

III. ARGUMENT ...................................................................................................................3

    A. HCCA's Claim Should Not Be Allowed as an Administrative Expense Because Administrative Priority under § 503(b) Is Not Allowed for Post-Petition Operating Expenses in Chapter 9 Cases. ..................................................... 5

    B. Even if Operating Expenses Were Allowed under § 503(b) in a Chapter 9 Case, HCCA's Claim Is Not Entitled to Administrative Priority and Should Be Classified as a General Unsecured Claim. ............................................................. 7

        1. HCCA's Claim is Not Entitled to an Administrative Priority Because HCCA's Services Did Not Benefit the District................................................. 7

        2. HCCA Is Only Entitled to the Reasonable Value of the Services That Actually Benefited the District. ..................................................................... 9

    C. The Termination Fee Should Not Be Allowed as an Administrative Expense Claim or a General Unsecured Claim Because HCCA Is Not Entitled to the Termination Fee under the Terms of the Management Agreement. ...................... 11

IV. CONCLUSION ..............................................................................................................13

106403403\V-5

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Am. Suzuki Motor Corp.*,
  494 B.R. 466 (Bankr. C.D. Cal. 2013) ................................................................. 12, 13

*In re Bernard Techs., Inc.*,
  342 B.R. 174 (Bankr. D. Del. 2006) ................................................................................ 8

*In re City of San Bernardino, Cal.*,
  530 B.R. 489 (C.D. Cal. 2015) ....................................................................................... 12

*In re City of Vallejo*,
  2009 WL 9085533 (Bankr. E.D. Cal. Mar. 2, 2009) ....................................................... 12

*In re City of Vallejo*,
  403 B.R. 72 (Bankr. E.D. Cal. 2009) ............................................................................... 6

*In re Cook Inlet Energy, LLC*,
  577 B.R. 313 (Bankr. D. Alaska 2017) ...................................................................... 9, 10

*In re County of Orange*,
  179 B.R. 195 (Bankr. C.D. Cal. 1995) ............................................................................. 5

*In re Dailey*,
  167 B.R. 932 (Bankr. D. Mont. 1994) ........................................................................... 13

*In re DAK Indus., Inc.*,
  66 F.3d 1091 (9th Cir. 1995) ........................................................................................... 8

*In re Dant & Russell, Inc.*,
  853 F.2d 700 (9th Cir. 1988) ........................................................................................... 8

*In re Globe Metallurgical, Inc.*,
  312 B.R. 34 (Bankr. S.D.N.Y. 2004) ............................................................................... 8

*N.L.R.B. v. Bildisco & Bildisco*,
  465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ............................................ 9, 13

*In re New York City Off-Track Betting Corp.*,
  434 B.R. 131 (Bankr. S.D.N.Y. 2010) ..................................................................... 5, 6, 7

*Otte v. United States*,
  419 U.S. 43, 95 S. Ct. 247, 42 L. Ed. 2d 212 (1974) ....................................................... 8

*Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*,
  872 F.2d 36 (3d Cir. 1989) .......................................................................................... 8, 10

- ii -

106403403\V-5

*In re Valley Health Sys.*,
   429 B.R. 692 (Bankr. C.D. Cal. 2010).................................................................................5, 6

**Statutes**

11 U.S.C.
   § 101 *et seq.* ...............................................................................................................1, 3, 5, 6
   § 365 ...............................................................................................................................................12
   § 365(g) .............................................................................................................................1, 4, 12, 13
   § 365(g)(1) ........................................................................................................................1, 4, 12
   § 502 ..............................................................................................................................................12
   § 502(g) ..........................................................................................................................1, 4, 12, 13
   § 502(g)(1) .....................................................................................................................1, 4, 12
   § 503 ..........................................................................................................................................5, 6, 8
   § 503(b) ..................................................................................................................................*passim*
   § 503(b)(1) ..................................................................................................................................6
   § 503(b)(1)(A) .......................................................................................................................5, 6, 7
   § 507 ..........................................................................................................................................8, 13
   § 507(a) ...........................................................................................................................................7
   § 507(a)(2) ..................................................................................................................................1, 3
   § 541 ............................................................................................................................................5, 6
   § 901(a) ......................................................................................................................................5, 12
   § 904 ..........................................................................................................................................1, 4, 5

Bankruptcy Code Chapter 9 ........................................................................................... *passim*

**Other Authorities**

Tenth Amendment ...............................................................................................................5

## I. INTRODUCTION

Southern Inyo Healthcare District, debtor in the above-captioned bankruptcy case ("Debtor" or the "District"), hereby respectfully submits this Opposition (the "Opposition") to *Request for Payment of Administrative Expense Claim of Healthcare Conglomerate Associates, LLC Arising out of Rejection of Executory Contract (11 U.S.C. §§ 503(b) and 507(a)(2))* [Docket No. 406] (the "Motion"). The Motion arises out of the failed business relationship and rejected contract between the Debtor and HCCA. HCCA now asserts that its claim arising out of the rejection of its management contract (the "Claim") is entitled to priority as an administrative expense. However, HCCA's Claim should not be allowed as an administrative expense because post-petition operating expenses cannot be granted administrative priority in a case under chapter 9 of the Bankruptcy Code.[1] In a chapter 9 case, there is no "estate" to preserve and therefore the requirements of § 503(b) cannot be met. Further, HCCA cannot satisfy the heavy burden of proving that its services were beneficial to the estate as required by § 503(b). Finally, HCCA's Claim with respect to the Termination Fee should not be allowed as an administrative expense claim or a general unsecured claim because HCCA is not entitled to the Termination Fee under the terms of the Management Agreement. Even if HCCA were entitled to the Termination Fee, the Termination Fee should be classified as a general unsecured claim pursuant to §§ 365(g) and 502(g) of the Bankruptcy Code because it arises out of the rejection and termination of the Management Agreement.

Accordingly, pursuant to §§ 365(g)(1), 502(g)(1), 503(b), and 904 of the Bankruptcy Code, the Court should classify HCCA's Claim as a general unsecured claim subject to the right of the District to object to such claim.

## II. STATEMENT OF FACTS

The District owns and operates an acute care hospital, an emergency room, an outpatient clinic, and a skilled nursing facility (collectively, the "Facilities"). On January 4, 2016 (the "Petition Date"), the District filed a voluntary petition for relief under chapter 9 of the

---

[1] All references to "section" or "§" herein are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, as amended (the "Bankruptcy Code").

106403403\V-5

1　Bankruptcy Code. On January 2, 2016, two days prior to the Petition Date, the District and
2　HealthCare Conglomerate Associates, LLC ("HCCA") entered into that certain Management
3　Services Agreement (the "Management Agreement"), whereby the District retained HCCA to
4　provide day-to-day management services for the Facilities for an initial term of five (5) years (the
5　"Operating Period"). (Management Agreement, at § 2(a)). A true and correct copy of the
6　Management Agreement is attached to the Motion as Exhibit A [Doc. No. 407] and incorporated
7　herein by reference.

8　　Pursuant to the Management Agreement, HCCA's contractual duties included, but were
9　not limited to: (1) financial and operating system management; (2) preparation of proposed
10　annual budgets; (3) purchasing; (4) contracting support and relationship management; (5)
11　recruitment of personnel; and (6) supervision of the day-to-day operations of the Facilities. *Id.* at
12　§ 3(a). The specific duties of HCCA are outlined in § 4 of the Management Agreement.

13　　As set forth in the Declaration of Jaque Hickman (the "Hickman Declaration") filed
14　contemporaneously herewith and incorporated herein by reference, HCCA failed to adequately
15　perform its duties under the Management Agreement. HCCA failed to perform its duties under
16　the Management Agreement by: (1) providing grossly deficient on-site management; (2) failing to
17　manage and collect the accounts receivable; (3) entering into non-beneficial contracts on behalf of
18　the District; (4) hiring improper personnel for various employee vacancies; and (5) causing non-
19　compliance with a number of state regulatory requirements. (Hickman Declaration, at ¶ 5). The
20　details of HCCA's mismanagement are set forth more fully in the Hickman Declaration. *Id.* at
21　¶¶ 5–23. The District believes that HCCA's mismanagement has caused damages to the District
22　that exceed the amount claimed by HCCA in the Motion. *Id.* at ¶ 23.

23　　As a result of HCCA's mismanagement, on October 11, 2017, the District held a special
24　board meeting where it discussed, *inter alia*, whether to remove HCCA through the rejection
25　and/or termination of the Management Agreement. *Id.* at ¶ 6. The District Board found that
26　HCCA's services were not beneficial to the District and voted to terminate and reject the
27　Management Agreement. *Id.* The District Board determined that replacing HCCA would best
28

106403403\V-5

1  protect the interests of the District and its creditors, as well as the health, safety, and welfare of
2  the community served by the District. *Id.*

3  On October 17, 2017, the District filed a motion seeking to reject the Management
4  Agreement. After a hearing on the motion, the Court entered the *Order Granting in Part*
5  *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement*
6  *or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in*
7  *order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to*
8  *Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines*
9  [Docket No. 335] on October 23, 2017, authorizing and directing the Debtor to remove HCCA as
10 a signatory from any and all bank accounts containing District funds. And on December 2, 2017,
11 the Court entered its *Order Approving Stipulation Re Rejection of HCCA Management Agreement*
12 [Docket No. 382] (the "Rejection Order"), approving that certain *Stipulation Re Rejection of*
13 *HCCA Management Agreement* [Doc. No. 377].

14 On January 30, 2018, HCCA filed the Motion asserting the Claim in the amount of
15 $2,524,054.00, claiming certain fees and expenses that arose out of the rejection and termination
16 of the Management Agreement, including : (1) $1,184,730.00 for management fees based on the
17 monthly payment to be paid by the District to HCCA for the performance of the required
18 management services under the Management Agreement (the "Management Fees"); (2)
19 $137,850.00 for travel expenses that reflect the cost of HCCA management travelling to and from
20 the Facilities in a private jet (the "Travel Expenses"); and (3) $1,201,474.00 for a termination fee
21 based on a liquidated damages provision of the Management Agreement (the "Termination Fee").
22 HCCA further asserts that the entire Claim should be allowed as an administrative expense under
23 §§ 503(b) and 507(a)(2) of the Bankruptcy Code).

24 ### III.   ARGUMENT

25 Rejecting the Management Agreement was in the best interests of the community served
26 by the District and the District's creditors because HCCA's services were not beneficial to the
27 District. Under the Bankruptcy Code, HCCA's Claim should not be allowed as an administrative
28 expense; instead, HCCA's Claim should be classified as a general unsecured claim (subject to the

- 3 -

106403403\V-5

right of the District to object to such claim) on the following grounds.

First, HCCA's Claim should not be allowed as an administrative expense because post-petition operating expenses cannot be granted administrative priority in a case under chapter 9 of the Bankruptcy Code. Section 503(b) does not entitle a creditor to an administrative expense claim in a chapter 9 case because there is no estate to preserve and a bankruptcy court has limited power to interfere with a chapter 9 debtor's property.

Second, even if post-petition operating expenses were allowed under § 503(b) in a case under chapter 9, HCCA has the heavy burden of proving that its services meet the narrowly interpreted requirements of § 503(b)—which HCCA cannot do because the post-petition services provided by HCCA were not beneficial to the District. In the event the Court finds that some part of HCCA's Claim should be allowed as an administrative expense, HCCA's Claim should only be allowed to the extent HCCA can prove that its services actually benefited the District and that the cost of such services is reasonable. Because HCCA's services did not benefit the District and HCCA's mismanagement caused damages that exceed the amount of HCCA's Claim, the Court should not allow any of HCCA's Claim as an administrative expense claim.

Third, HCCA's Claim with respect to the Termination Fee should not be allowed as an administrative expense claim or a general unsecured claim because HCCA is not entitled to the Termination Fee under the terms of the Management Agreement. Even if HCCA were entitled to the Termination Fee, the Termination Fee should be classified as a general unsecured claim pursuant to §§ 365(g) and 502(g) of the Bankruptcy Code. The asserted damages encompassed by the Termination Fee arise solely out of the rejection and termination of the Management Agreement. Under §§ 365(g)(1) and 502(g)(1), such damages are treated as a pre-petition breach of the executory contract and classified as a general unsecured claim.

Accordingly, pursuant to §§ 365(g)(1), 502(g)(1), 503(b), and 904 of the Bankruptcy Code, the Court should classify HCCA's Claim as a general unsecured claim subject to the right of the District to object to such claim.

### A. HCCA's Claim Should Not Be Allowed as an Administrative Expense Because Administrative Priority under § 503(b) Is Not Allowed for Post-Petition Operating Expenses in Chapter 9 Cases.

The Bankruptcy Code limits a bankruptcy court's power to interfere with a chapter 9 debtor's property and compel certain action from a chapter 9 debtor. *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 140 (Bankr. S.D.N.Y. 2010). Section 904 of the Bankruptcy Code provides:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with 1) Any of the political or governmental powers of the debtor; 2) Any of the property or revenues of the debtor; or 3) The debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. Accordingly, "[s]ection 904's command is clear. A bankruptcy court may not interfere with a chapter 9 debtor's political or governmental powers, or the use of the debtor's property, without the debtor's consent." *In re New York City Off-Track Betting Corp.*, 434 B.R. at 140. "In practice, this section prohibits bankruptcy courts from mandating that a chapter 9 debtor make specific payments in violation of the Tenth Amendment." *Id*; *see also In re County of Orange*, 179 B.R. 195, 199–200 (Bankr. C.D. Cal. 1995) (holding that "Chapter 9 does not empower [the court] to order the County to make interim payments to professionals without the County's consent").

Section 503(b) provides for the creation of administrative expenses for "the actual, necessary costs and expenses of preserving the *estate*" of the debtor. 11 U.S.C. § 503(b)(1)(A) (emphasis added). Chapter 9 incorporates § 503 of the Bankruptcy Code. *See* 11 U.S.C. § 901(a). However, importantly, chapter 9 does not incorporate section 541 of the Bankruptcy Code, which provides for the creation of a bankruptcy "estate." *See* 11 U.S.C. § 901(a); *In re Valley Health Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010) ("Section 541, which defines 'property of the

estate,' is not incorporated into chapter 9."). Courts within the Ninth Circuit have clearly established that there is no "estate" property in chapter 9 cases. *See, e.g.*, *In re City of Vallejo*, 403 B.R. 72, 78 n.2 (Bankr. E.D. Cal. 2009) ("In a chapter 9 case there is no estate."); *In re Valley Health Sys.*, 429 B.R. at 714.

"Because a chapter 9 debtor's property remains its own and does not inure into a bankruptcy estate as provided by section 541 of the Bankruptcy Code, there can be no administrative expenses for the actual and necessary costs of preserving the estate as contemplated by section 503(b)(1)(A) of the Bankruptcy Code." *In re New York City Off-Track Betting Corp.*, 434 B.R. at 142 (internal quotation marks omitted); *accord* 6 COLLIER ON BANKRUPTCY, ¶ 901.04[13][a] (2017) (observing that because there is no estate in a chapter 9 case, administrative expense claims under § 503 must be limited to "expenses incurred in connection with the chapter 9 case itself" and not operating expenses)). In *In re New York City Off-Track betting Corp.*, the creditors of a chapter 9 debtor argued that they were entitled to administrative expense status for certain post-petition statutory distributions mandated under New York law. *Id.* at 134. In analyzing § 503 in connection with chapter 9 of the Bankruptcy Code, the Bankruptcy Court for the Southern District of New York distinguished between operating expenses of the debtor and expenses incurred in connection with the chapter 9 case. *Id.* at 142. The court ultimately found that the creditor's claim could not be allowed as an administrative expense because "no bankruptcy estate exists in a chapter 9 case and therefore no operating administrative expenses may be awarded pursuant to section 503(b)(1) in a chapter 9 case." *Id.*

Here, HCCA is not entitled to administrative expense priority for its post-petition claims because the District is a chapter 9 debtor and the plain language of the Bankruptcy Code does not allow administrative expense status for post-petition operating expenses. Under the Management Agreement, HCCA was required to provide day-to-day management services to the District. Such

106403403\V-5

services were not in connection with the District's chapter 9 case and, similar to the statutory payments in *In re New York City Off-Track Betting Corp.*, were simply post-petition operating expenses of the District. Because the District is a chapter 9 debtor, § 503(b) does not grant administrative priority for post-petition operating expenses. Thus, HCCA's Claim is not entitled to administrative expense priority and must be classified as a pre-petition unsecured claim subject to the right of the District to object to such claim.

### B. Even if Operating Expenses Were Allowed under § 503(b) in a Chapter 9 Case, HCCA's Claim Is Not Entitled to Administrative Priority and Should Be Classified as a General Unsecured Claim.

Even if post-petition operating expenses were allowed under § 503(b) in a case under chapter 9, HCCA has the heavy burden of proving that its services meet the narrowly interpreted requirements of § 503(b)—a burden which HCCA cannot meet because the post-petition services provided by HCCA did not benefit the District. In the event the Court finds that some part of HCCA's Claim should be allowed as an administrative expense, HCCA's Claim should only be allowed to the extent HCCA can prove that its services actually benefited the District and that the costs of such services are reasonable. Because HCCA's services did not benefit the District and HCCA's mismanagement caused damages that exceed the amount of HCCA's Claim, the Court should not allow any of HCCA's Claim as an administrative expense claim.

#### 1. HCCA's Claim is Not Entitled to an Administrative Priority Because HCCA's Services Did Not Benefit the District.

HCCA's Claim is not entitled to administrative priority status under § 503(b) because HCCA's post-petition services were not beneficial to the District. Section 503(b)(1)(A) of the Bankruptcy Code provides a priority for "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commission for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). "Section 507(a) grants administrative expenses under

- 7 -

106403403\V-5

§ 503(b) the highest priority in distribution, and thus administrative expenses will be paid first from the proceeds of the estate." *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 41 (3d Cir. 1989).

Although §§ 503 and 507 grant this priority, "[t]he terms 'actual' and 'necessary' are construed narrowly so as to keep fees and administrative costs at a minimum." *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988); *see also Otte v. United States*, 419 U.S. 43, 53, 95 S. Ct. 247, 254, 42 L. Ed. 2d 212 (1974) ("There is, of course, an overriding concern in the [Bankruptcy] Act with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors."). In the Ninth Circuit, "bankruptcy courts have broad discretion in determining whether to award administrative expense priority." *In re Dant & Russell, Inc.*, 853 F.2d at 707.

Section 503(b) is clear: "[a]ny claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors." *Id.* at 706. In considering the allowance of a priority, a bankruptcy court's primary concern "is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss." *In re Globe Metallurgical, Inc.*, 312 B.R. 34, 40 (Bankr. S.D.N.Y. 2004). For this reason, "a court looks to the actual benefit to the estate and not the loss sustained by a creditor." *Id.* The benefit to the debtor's estate must be direct and substantial. *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995).

A creditor seeking compensation under section 503(b) carries "a heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *In re Bernard Techs., Inc.*, 342 B.R. 174, 178 (Bankr. D. Del. 2006) (internal quotation marks omitted); *In re Globe Metallurgical, Inc.*, 312 B.R. at 40 (internal quotation marks omitted) ("The burden is upon the claimant to establish an entitlement to an administrative priority.").

Here, HCCA has the "heavy burden" of proving that its post-petition services provided an actual benefit to the District and that such services were necessary to preserve the value of the District's property—a burden that HCCA cannot meet. The District contends that HCCA's post-petition services were neither necessary to preserve the value of the District's property nor beneficial to the District. (*See* Hickman Declaration, at ¶¶ 5–23). HCCA's failures to perform under the Management Agreement are numerous and are more fully set forth in the Hickman Declaration. *Id.* In general, HCCA: (1) provided grossly deficient on-site management; (2) failed to manage and collect the accounts receivable; (3) entered into non-beneficial contracts on behalf of the District; (4) hired improper personnel for various employee vacancies; and (5) caused non-compliance with a number of state regulatory requirements. *Id.* at ¶ 5. Because HCCA's services provided no benefit to the District, the District has not been unjustly enriched by HCCA's services, and HCCA's Claim should not be granted administrative priority under § 503(b) of the Bankruptcy Code. HCCA's Claim should instead be classified as a pre-petition unsecured claim subject to the right of the District to object to such claim.

### 2. HCCA Is Only Entitled to the Reasonable Value of the Services That Actually Benefited the District.

Should the Court determine that some portion of HCCA's Claim is entitled to administrative priority, HCCA would only be entitled to the reasonable value of the services that actually benefited the District. Where a debtor receives post-petition benefits pending a decision to reject or assume an executory contract, the debtor is responsible "for the reasonable value of those services." *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984) (citations omitted). Determination of the reasonable value of a creditor's post-petition services to the estate is a question of fact, requiring "a comprehensive evaluation of the post-petition services provided by the claimant within the context of establishing a reasonable value for the services actually performed." *In re Cook Inlet Energy, LLC*, 577 B.R. 313, 325 (Bankr. D. Alaska 2017).

106403403\V-5

The Court is not confined to the contract price when making this determination. *See, e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 43 (3d Cir. 1989) (finding that a debtor was required to compensate a claimant for natural gas at the market rate as opposed to the contract rate); *In re Cook Inlet Energy, LLC*, 577 B.R. at 326. In *In re Cook Inlet Energy, LLC*, a creditor asserted an administrative expense priority of $252,657.53 in contractual post-petition salary payments. 577 B.R. at 326. The Bankruptcy Court for the District of Alaska found that the creditor had provided ineffective services that were not the equivalent of $252,657.53 in reasonable value to the estate. *Id.* The bankruptcy court ultimately reduced the creditor's administrative expense claim to $15,000.00, representing the reasonable value of the creditor's post-petition services that actually benefited the debtor's estate. *Id.* at 327.

Here, HCCA is only entitled to the reasonable value of the services that actually benefited the District. HCCA has the burden of proving that its services actually benefited the debtor and that its Claim reflects the reasonable value of those services. The allowed amount of HCCA's Claim should be reduced to reflect the reasonable value of the services that actually benefited the District. Similar to the creditor in *In re Cook Inlet Energy, LLC*, HCCA provided ineffective post-petition services that do not warrant allowing its Claim at the contract rate. *See* 577 B.R. at 327.

Examples of HCCA's ineffective services include, but are not limited to, the following: (1) HCCA entered into multiple non-beneficial contracts that created significant costs for the District with no benefit (*e.g.*, the contracts with Medsphere and HealthTalent Solutions); (2) HCCA brought over personnel from HCCA headquarters that were almost never on site and whose services were sporadic and ineffective; (3) HCCA personnel often failed to take or return calls to vendors, leading to the actual disruption of hospital services; (4) HCCA failed to make necessary payments to vendors and servicers; (5) HCCA incurred unreasonable travelling expenses through the use of an expensive, private jet; (6) HCCA never completed accounts receivable statements, financial statements, cost reports, audits, or budgets; and (7) HCCA failed to manage and collect the accounts receivable. (*See* Hickman Declaration, at ¶¶ 7–22).

As a result of HCCA's mismanagement, the District was forced to hire a CFO to replace the CRO hired by HCCA. *Id.* at 21. The current CFO is still struggling to figure out accurate the

financial condition of District. *Id.* The CFO had to go back to the beginning of the Management Agreement term to validate financial information, create financial statements to meet state, federal, cost report, and other requirements. *Id.* HCCA's mismanagement of revenue cycle operations led to missing approximately $1.5 million in net revenue for FYE 2017. *Id.* Overall, the District believes that the damages caused by HCCA's mismanagement exceed the amount that HCCA claims as an administrative expense claim. *Id.* at 23. Because HCCA's services were so deficient, the contract rate under the Management Agreement is unreasonable and not reflective of the lack of benefit provided to the District or the damages caused by HCCA's mismanagement.

Even if post-petition operating expenses were allowed as administrative expenses under § 503(b) of the Bankruptcy Code in chapter 9 cases, HCCA's Claim should not be allowed as an administrative expense. If any amount is allowed as an administrative expense, such amount must reflect the reasonable value of the services that actually benefited the District. However, the District contends that HCCA's services did not provide an actual benefit to the District nor did HCCA's services preserve the value of the District's property for the benefit of its creditors. In fact, the District believes that the damages caused by HCCA's mismanagement exceed the amount of HCCA's Claim. Accordingly, HCCA's Claim does not warrant administrative priority, and the Claim should be classified as a general unsecured claim subject to the right of the District to object to such claim.

### C. **The Termination Fee Should Not Be Allowed as an Administrative Expense Claim or a General Unsecured Claim Because HCCA Is Not Entitled to the Termination Fee under the Terms of the Management Agreement.**

Pursuant to § 10(b) of the Management Agreement, HCCA is not entitled to the Termination Fee. HCCA contends that it is entitled to the Termination Fee as liquidated damages under the Management Agreement and that such fee is entitled to administrative priority. However, HCCA is not entitled to the Termination Fee under the terms of the Management Agreement because the District, not HCCA, terminated the Agreement. (Hickman Declaration, at ¶¶ 5–6). Pursuant to the Management Agreement, HCCA would only be entitled to liquidated damages in the event the Management Agreement is terminated as a result of a default by the

1　District, which is not the case here. (Management Agreement, at § 10(b)). The District terminated
2　the Management Agreement due to HCCA's deficient management and failure to perform
3　numerous required duties as provided more fully in the Hickman Declaration. (Hickman
4　Declaration, at ¶¶ 5–23). Accordingly, HCCA's Claim with respect to the Termination Fee should
5　not be allowed as an administrative expense claim or a general unsecured claim.

6　　　Even if HCCA were entitled to the Termination Fee, the Termination Fee arises out of the
7　rejection and termination of the Management Agreement and cannot be classified as an
8　administrative expense claim. Instead, the Termination Fee must be classified as a general
9　unsecured claim pursuant to §§ 365(g) and 502(g), regardless of how the Management Fees and
10　Travel Expenses are classified.

11　　　Sections 365(g) and 502(g) of the Bankruptcy Code provide that "a post-petition rejection
12　of an executory contract relates back to the petition date and is treated as if the breach occurred
13　pre-petition." *In re City of San Bernardino, Cal.*, 530 B.R. 489, 499 (C.D. Cal. 2015); 11 U.S.C.
14　§§ 365(g)(1), 502(g)(1). Sections 365 and 502 of the Bankruptcy Code apply in chapter 9 cases.
15　*See* 11 U.S.C. § 901(a). Section 365(g)(1) provides that "the rejection of an executory contract or
16　unexpired lease of the debtor constitutes a breach of such contract or lease . . . immediately before
17　the date of the filing of the petition[.]" 11 U.S.C. § 365(g)(1). Section 502(g) provides that "[a]
18　claim arising from the rejection, under section 365 of this title . . . , of an executory contract or
19　unexpired lease of the debtor shall be determined . . . the same as if such claim had arisen before
20　the date of the filing of the petition." 11 U.S.C. § 502(g)(1).

21　　　Under §§ 365(g) and 502(g) of the Bankruptcy Code, a claim that arises under a
22　contractual liquidated damages provision of a rejected contract is a general unsecured claim. *See,*
23　*e.g.*, *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 493–94 (Bankr. C.D. Cal. 2013) (granting a
24　creditor's contractual liquidated damages as an unsecured claim upon rejection). Any claim based
25　on a pre-petition agreement "including one created by a post-petition breach, is a claim arising
26　prior to the filing of chapter 9 petition." *In re City of Vallejo*, 2009 WL 9085533, at *2, (Bankr.
27　E.D. Cal. Mar. 2, 2009). "Damages on the contract that result from the rejection of an executory
28　contract . . . must be administered through bankruptcy and receive the priority provided general

- 12 -

106403403\V-5

1　unsecured creditors." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 1199,

2　79 L. Ed. 2d 482 (1984) (citing 11 U.S.C. §§ 502(g) and 507.). Thus, any claim that arises under a

3　contractual liquidated damage provision of a rejected contract must be classified as a general

4　unsecured claim. *See, e.g.*, *In re Am. Suzuki Motor Corp.*, 494 B.R. at 493–94; *In re Dailey*, 167

5　B.R. 932, 936 (Bankr. D. Mont. 1994).

6　　　Here, even if HCCA were entitled to the Termination Fee, the Termination Fee must be

7　classified as a general unsecured claim pursuant to §§ 365(g) and 502(g) of the Bankruptcy Code.

8　The Termination Fee, by its own definition, arises out of the rejection and termination of the

9　Management Agreement. Accordingly, the Termination Fee and should be classified as a general

10　unsecured claim and not an administrative expense claim. *See In re Am. Suzuki Motor Corp.*, 494

11　B.R. at 493–94.

12　　　Thus, HCCA's Claim with respect to the Termination Fee should not be allowed as an

13　administrative expense claim or a general unsecured claim because HCCA is not entitled to the

14　Termination Fee under the terms of the Management Agreement. Even if HCCA were entitled to

15　the Termination Fee, the Termination Fee should be classified as a general unsecured claim

16　pursuant to §§ 365(g) and 502(g) of the Bankruptcy Code subject to the right of the District to

17　object to such claim.

## IV.　CONCLUSION

19　　　For the reasons set forth herein, the District respectfully submits that HCCA's Claim is

20　not entitled to administrative priority and to the extent HCCA's Claim is allowed, HCCA's Claim

21　should be classified as a general unsecured claim subject to the right of the District to object to

22　such claim.

Dated: February 23, 2018　　　　　　　　　　DENTONS US LLP

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Samuel R. Maizel*
　　　　　　　　　　　　　　　　　　　　　　　　　SAMUEL R. MAIZEL

　　　　　　　　　　　　　　　　　　　　　　Special Counsel to the Debtor

- 13 -

106403403\V-5