**28**

1   Hagop T. Bedoyan, CSB No. 131285
    **Klein, DeNatale, Goldner,**
2       **Cooper, Rosenlieb & Kimball llp**
    5260 N. Palm Avenue, Suite 205
3   Fresno, California 93704
    Telephone: (559) 438-4374
4   Facsimile: (661) 326-0418
    E-mail: hbedoyan@kleinlaw.com

5
    Brandon N. Krueger, Esq. (SBN 221432)(Admission Pending)
6   *bkrueger@sallspencer.com*
    Lara A.S. Callas, Esq. (SBN 174260)(Admission Pending)
7   *lcallas@sallspencer.com*
    SALL SPENCER CALLAS & KRUEGER
8   A Law Corporation
    32351 Coast Highway
9   Laguna Beach, CA 92651
    Telephone: (949) 499-2942
10  Facsimile: (949) 499-7403

11
    Attorneys for HealthCare Conglomerate Associates, LLC.
12  and Vi Healthcare Finance, Inc.

13

14              **UNITED STATES BANKRUPTCY COURT**

15        **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

16  | In re: | Case No. 16-10015-A-9 |
    |---|---|
17  | | Chapter   9 |
18  | SOUTHERN INYO HEALTHCARE DISTRICT, | DC NO.:  KDG-4 |
19  | Debtor. | Date:  November 14, 2018 |
20  | | Time:  1:30 p.m. |
    | | Place:  United States Bankruptcy Court |
21  | | 2500 Tulare Street, Fifth Floor |
    | | Department A, Courtroom 11 |
22  | | Fresno, California |
    | | Judge:  Honorable Fredrick E. Clement |
23

24

25  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO**
    **DISQUALIFY FOLEY & LARDNER AND ASHLEY MCDOW**
26              **AS COUNSEL FOR DEBTOR**

27

28

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. 3

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................ 5

   **I.**      **INTRODUCTION** ........................................................................ 5

   **II.**    **FACTUAL SUMMARY** ................................................................ 7

        A.    Baker's Extensive Representation of the Benzeevi Group. ...................... 7

        B.    Ms. McDow, First with Baker, then with Foley, Represents Inyo Adverse to Her Former Clients. ...................................................................... 7

        C.    Disqualification of Ms. McDow and Foley will Not Prejudice Inyo or the Resolution of the Bankruptcy. ................................................................ 13

  **III.**   **LEGAL ARGUMENT** .................................................................. 14

        A.    Standards Applicable to Disqualification Based on Conflicts of Interest 14

        B.    The Continuing Duties of Loyalty and Confidentiality Require Disqualification of McDow and Foley ...................................................... 15

        C.    Ms. McDow's Prior and Continuing Violation of the Duty of Loyalty Requires Disqualification ........................................................................ 17

        D.    Ms. McDow's Prior and Continuing Duty of Preserve the Benzeevi Group's Confidential Information Also Requires Disqualification ........ 19

        E.    Baker's and McDow's Conflict of Interest Must be Imputed to Foley & Lardner .............................................................................................. 22

        F.    Baker's Conflict Waiver is Unenforceable and Insufficient to Waive the Present Conflict ...................................................................................... 25

        G.    The Benzeevi Group Has Not Otherwise Waived the Conflict ............... 26

  **IV.**   **CONCLUSION** .......................................................................... 28

(KDG-4) MEMORANDUM OF P's and A's MOTION TO DISQUALIFY

# TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.* (C.D. Cal. 2012)
913 F.Supp.2d 900 .................................................................................................. 23

*Arias v. FCA US LLC* (E. D. Cal. July 12, 2018)
2018 WL 3419709 ............................................................................................ 15, 20

*Beltran v. Avon Products, Inc.* (C.D. Cal. 2012)
867 F. Supp. 2d 1068 ......................................................................................... 19, 23

*Davis v. EMI Group Ltd.* (N.D. Cal., Jan. 4, 2013, No. 12-CV-1602 YGR)
2013 WL 75781 ....................................................................................................... 21

*In re County of Los Angeles* (9th Cir. 2000)
223 F. 3d 990 .......................................................................................................... 14

*In re Jaeger* (Bankr. C.D. Cal. 1997)
213 B.R. 578 .............................................................................................. 17, 22, 26

*In re McIntosh* (9th Cir. 2017)
697 Fed. Appx. 569 ................................................................................................. 16

*In re McIntosh* (Bankr. N.D. Cal. Jan. 16, 2015)
No. 13-11774 AJ, 2015 WL 241130 ................................................................ 18, 19

*Lennar Mare Island, LLC v. Steadfast Ins. Co.* (E. D. Cal. 2015)
105 F. Supp. 3d 1100 ................................................................................... 14, 17, 19

*Matter of Howrey LLP* (9th Cir. 2017)
698 Fed. Appx. 881 ................................................................................................. 17

*McGrane v. Howrey, LLP* (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD)
2015 WL 6126792 ................................................................................................... 18

*National Grange of Order of Patrons of Husbandry v. California Guild* (E.D. Cal., May 12, 2017)
2017 WL 2021731 ................................................................................................... 23

*Trone v. Smith* (9th Cir. 1980)
621 F.2d 994 ........................................................................................................... 21

*Western Sugar Coop. v. Archer-Daniels-Midland Co.* (C.D. Cal. 2015)
98 F.Supp.3d 1074 .................................................................................................. 20

**California Cases**

*City and County of San Francisco v. Cobra Solutions, Inc.* (2006)
38 Cal.4th 839 ................................................................................................... 20, 22

*Gilbert v. National Corp. for Housing Partnerships* (1999)
71 Cal.App.4th 1240 ............................................................................................... 25

3

*In re Complex Asbestos Litigation* (1991)
   232 Cal.App.3d 572 .............................................................................24, 27

*Kirk v. First American Title Ins. Co.* (2010)
   183 Cal.App.4th 776 ...........................................................................23, 24

*Oasis West Realty, LLC v. Goldman* (2011)
   51 Cal. 4th 811 ..........................................................................................16

*Ontiveros v. Constable* (2016)
   245 Cal. App. 4th 686 ...............................................................................27

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.* (1999)
   20 Cal. 4th 1135............................................................................15, 19, 22

*Pound v. DeMera DeMera Cameron* (2005)
   135 Cal. App. 4th 70 .................................................................................23

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Company, Inc.* (2018)
   6 Cal.5th 59 ...............................................................................................25

*Styles v. Mumbert* (2008)
   164 Cal. App. 4th 1163 .............................................................................16

*Western Continental Operating Co. v. Natural Gas Corp. of Calif.* (1989)
   212 Cal. App. 3d 752 .................................................................................27

*Wutchumna Water Co. v. Bailey* (1932)
   216 Cal. 564 ..............................................................................................16

**Statutes**

Bankruptcy Code § 2004 ..................................................................................12

**Rules**

California Rules of Professional Conduct, Rule 3-310 .......................................6, 15, 25

Local Bankruptcy Rule 1001-1...............................................................7, 14

4

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    ## I.    INTRODUCTION

3        The egregious conflict of interest presented here between the interests of the Debtor, the

4    current client of Foley & Lardner ("Foley") and Ashley McDow, and the interests of Ms.

5    McDow's former clients, Healthcare Conglomerate Associates, LLC ("HCCA") and Vi

6    Healthcare Finance ("Vi") requires the disqualification of Foley and Ms. McDow under the Rules

7    of Professional Conduct and the fundamental principles of ethics and fairness in our judicial

8    process.  It is difficult to conceive of a more direct and unacceptable conflict than that presented

9    here.  As the declaration of respected ethics expert Robert L. Kehr in support of this motion

10   states, the conduct in this case amounts "to an unusually clear example of a violation of the

11   lawyer's duties of undivided loyalty and confidentiality . . ." [Kehr Decl., ¶ 5].  The law is clear:

12   because Ms. McDow previously represented her former clients with respect to the very subject

13   matter in which she is now adverse to them, disqualification of McDow and Foley is mandatory.

14       Here, Baker and McDow represented HCCA in negotiating and drafting the Management

15   Services Agreement (the "Inyo MSA") with Southern Inyo Healthcare District ("Inyo"),

16   including specific provisions relating to this Chapter 9 case, advised HCCA concerning these

17   proceedings, and obtained material confidential information of HCCA relating to the Inyo MSA.

18   Under the Inyo MSA,  HCCA undertook all management responsibilities of Inyo and initial

19   supervision of these very bankruptcy proceedings.  Then, in direct violation of Baker's express

20   representations to HCCA and Dr. Benzeevi that Baker would continue to represent the Benzeevi

21   Group if a dispute arose between Inyo and HCCA with respect to the Inyo MSA, Baker and Ms.

22   McDow did exactly what they promised not to do: when that dispute arose, Baker dropped HCCA

23   like a hot potato, and then filed an Emergency Motion supported by a personal declaration of Ms.

24   McDow seeking termination of the Inyo MSA, the very contract they drafted and negotiated for

25   HCCA.   These actions were directly adverse to HCCA in the identical subject matter of Baker

26   and Ms. McDow's previous representation of HCCA.

27       Ms. McDow subsequently left Baker and joined Foley, but continues as lead insolvency

28   counsel representing Inyo adverse to her former clients, HCCA and Vi, who are creditors and

defendants in an adversary action in this proceeding. Inyo opposes the creditor claims of HCCA under the Inyo MSA and of Vi, which claims are based on the very documents and transactions which Baker prepared for HCCA and Vi. Ms. McDow has made and continues to make grave accusations against her former clients, and to advocate against her former clients' interests with respect to the MSA. Critically, Ms. McDow seeks ultimately to fund Inyo's plan out of a desired litigation recovery against her former clients. Advocating in this proceeding for Inyo as the Debtor requires Ms. McDow to violate her continuing fiduciary duties to her former clients. Furthermore, the emerging claims of legal malpractice against Ms. McDow and Baker by HCCA, Vi and Dr. Benzeevi (the "Benzeevi Group") also place Ms. McDow's personal interests in conflict with both her current client Inyo and her former clients, HCCA and Vi.

All of Ms. McDow's conflicts and continuing duties are imputed to Foley because Ms. McDow, as well as former Baker attorney Fahim Farivar, continue to be directly and actively involved in these proceedings. Ms. McDow and Mr. Farivar have not been screened – to the contrary, their active involvement and side-switching against their own former clients have been embraced by Foley. The contemplated global mediation for which Ms. McDow has advocated is doomed to failure unless independent counsel without these disqualifying conflicts of interest replaces Foley and Ms. McDow as Debtor's counsel.

HCCA and Vi have not waived their rights to disqualify Ms. McDow or Foley through any valid or enforceable conflict waiver or otherwise. As explained by expert Robert L. Kehr, the purported advance waivers concerning potential conflicts that Baker provided to the Benzeevi Group did not operate to obtain the Benzeevi Group's "informed written consent" as defined in Rule of Professional Conduct 3-310 (A)[1] to the actual and direct conflict that emerged between Debtor and the Benzeevi Group. Moreover, there has been no extreme delay by the Benzeevi Group in seeking disqualification nor will any extreme prejudice to be suffered by Inyo if this relief is granted. Thus, there has been no implied waiver of the moving parties' rights to seek disqualification.

---

[1] The California Supreme Court has adopted new Rules of Professional Conduct taking effect on November 1, 2018. Rule 1.7, which replaces Rule 3-310, is even more restrictive, and is addressed at pp.21-23 infra.

1    The Rules of Professional Conduct and the applicable California case law, which this

2  Court is required to apply to attorneys practicing in this Court under Local Bankruptcy Rule

3  1001-1(c), mandate that Foley and Ms. McDow be disqualified from further representation of

4  Debtor in these proceedings.

5                              **II.     FACTUAL SUMMARY**

6       **A.     Baker's Extensive Representation of the Benzeevi Group**.

7       Baker began representing Dr. Benzeevi in or around 2009 in connection with forming a

8  professional corporation. [Benzeevi Decl., ¶ 5]. By 2017, Baker's representation had expanded

9  to include multiple matters for Dr. Benzeevi and his related entities, Healthcare Conglomerate

10  Associates, LLC ("HCCA"), Vi Healthcare Finance, Inc. ("Vi"), Medflow, PC, and Tulare Asset

11  Management (collectively, "the Benzeevi Group"). Baker performed services on myriad issues

12  for the Benzeevi Group, in effect serving as general counsel from 2009 through September 2017.

13  [Benzeevi Decl., ¶ 5]. Baker drafted the formation documents for HCCA, Vi, Medflow, PC and

14  Tulare Asset Management. [Benzeevi Decl., ¶ 5]. Ashley McDow performed significant work

15  for HCCA, including working on both the Management Services Agreement between HCCA and

16  Tulare Local Healthcare District dba Tulare Regional Medical Center ("Tulare MSA") and the

17  Inyo MSA. [Benzeevi Decl., ¶ 5]. The particular focus of Ms. McDow's work on the Inyo MSA

18  was how Inyo's contemplated Chapter 9 Bankruptcy would affect HCCA's rights under that

19  agreement. [Benzeevi Decl., ¶ 6]. Dr. Benzeevi communicated extensively with Ms. McDow,

20  and her partner Bruce Greene, and shared substantial amounts of the Benzeevi Group's

21  confidential information with them, specifically with reference to the Inyo MSA, but also in

22  general regarding all of the Benzeevi Group's business activities. [Benzeevi Decl., ¶ 6]. The

23  Benzeevi Group paid hundreds of thousands of dollars to Baker for its legal services. [Benzeevi

24  Decl., ¶ 5]. Baker purported to commence termination of its representation of the Benzeevi

25  Group by letter dated September 29, 2017. [Benzeevi Decl., ¶ 11, Ex. E].

26       **B.     Ms. McDow, First with Baker, then with Foley, Represents Inyo Adverse to**

27              **Her Former Clients**.

28       Ms. McDow was a partner at Baker until she joined the firm of Foley & Lardner by May

---

7

1    of 2018. [Request for Judicial Notice ("RJN"), Ex. EE, Docket No. 436]. Foley & Lardner

2    substituted in as general insolvency counsel for Inyo in this case on June 12, 2018, which

3    substitution was approved by the Court on June 26, 2018. [RJN, Ex. GG, Docket No. 450; RJN,

4    Ex. HH, Docket No. 452]. Ms. McDow signed the substitution for the firm and has regularly

5    appeared at hearings for Inyo. [Docket No. 450; Bedoyan Decl., Exs. G and H (10/17/17 and

6    08/29/18 Transcripts]. It should also be noted that Mr. Farivar, another Foley attorney

7    representing Inyo in these proceedings, was also formerly associated with Baker and worked on

8    matters for HCCA. [Benzeevi Decl., ¶ 5].

9        First with Baker, and now with Foley, Ms. McDow continues improperly to represent

10    Inyo adverse to her former clients, the Benzeevi Group, including with respect to the very subject

11    matter of her previous representation of them. The facts demonstrating the irreconcilable conflict

12    of interest that requires Foley's disqualification are as follows. In December 2015, HCCA began

13    negotiations with Inyo regarding the Inyo MSA. [Benzeevi Decl., ¶ 6]. It was anticipated that

14    Inyo would enter into an MSA with HCCA, as well as commence a Chapter 9 Bankruptcy.

15    [Benzeevi Decl., ¶ 6]. Ms. McDow performed significant work in relation to the Inyo MSA for

16    HCCA, including appearing as HCCA's attorney at the January 2016 Inyo Board meeting where

17    the Board approved the Inyo MSA, the retention of Baker by Inyo for the Chapter 9 proceedings

18    and the purported waiver letter, discussed below. [Benzeevi Decl., ¶ 6, Exs. B and C]. Inyo was

19    represented by separate counsel Scott Nave in the negotiations regarding the Inyo MSA.

20    [Benzeevi Decl., ¶ 6]. The Inyo MSA provided that it would be part of HCCA's duties as

21    manager to arrange and supervise the bankruptcy proceedings through a Chief Restructuring

22    Officer that HCCA would appoint. [Benzeevi Decl., Ex. A (Inyo MSA, ¶ 3(bb)]. The Inyo MSA

23    also provided that HCCA could retain counsel to assist it in its duties and responsibilities as

24    manager and that those expenses would be paid by Inyo. [Benzeevi Decl., Ex. A (Inyo MSA, ¶

25    4(b)(vi)]. The Inyo MSA was executed by Inyo and HCCA sometime in early January 2016.

26    [Benzeevi Decl., ¶ 7]. Inyo filed the Chapter 9 Petition commencing these proceedings on

27    January 4, 2016. [RJN, Ex. Q, Docket No. 1, Case No. 16-10015]. Baker became Inyo's

28    bankruptcy counsel in the Chapter 9 proceedings and its primary client contacts were Dr.

1  Benzeevi and Alan Germany at HCCA.  [Benzeevi Decl., ¶ 8].

2          Dr. Benzeevi understood that after Baker became counsel to Inyo in the Chapter 9

3  proceedings, Baker would continue to advise HCCA with respect to the Inyo MSA and the

4  Chapter 9 proceedings.  [Benzeevi Decl., ¶ 8].  Until September 29, 2017, Baker continued to

5  advise HCCA as to its duties and responsibilities under the Inyo MSA, as well as regarding other

6  matters Baker was handling for the Benzeevi Group.  [Benzeevi Decl., ¶¶ 8, 9, 11].

7          Baker provided Inyo and HCCA a purported conflict waiver letter in January of 2016,

8  signed by Bruce Greene of Baker on January 2, 2016, a draft of which was posted at the Inyo

9  hospital as well as on-line (HCCA has been unable to locate a version of this letter counter-signed

10  by HCCA and Inyo).  [Benzeevi Decl., ¶ 7, Ex. B].  The purported conflict waiver letter

11  acknowledged that Baker "presently represents and expects to continue to represent, the Benzeevi

12  Group in connection with various matters unrelated to the business of the District, and also in

13  connection with the management service agreement between the District and HCCA."  [Benzeevi

14  Decl., Ex. B, p. 2, ¶ A].  In that letter Baker expressly acknowledges its receipt of the Benzeevi

15  Group's confidential information stating: "*In connection with its representation of the Benzeevi*

16  *Group, the Firm has had access to confidential information of the Benzeevi Group.*"

17  [Benzeevi Declaration, Ex. B, p. 2, ¶ C] (emphasis added).  The letter represented that the

18  interests of Inyo and HCCA were "presently aligned with respect to the Chapter 9 filing" but that

19  conflicts could develop in the future.  [Benzeevi Decl., Ex. B, p. 1].  If such conflicts developed,

20  Baker agreed not to disclose any material confidential information of HCCA to Inyo or to use any

21  such information to the benefit of Inyo, and Inyo consented to Baker continuing to represent

22  HCCA and the Benzeevi Group including as to the MSA.  [Benzeevi Decl., Ex. B, p. 3, ¶ 2].

23  Critically, however, the converse was not true, nowhere did HCCA consent to allow Baker (or

24  any of its then attorneys) to continue to represent Inyo if a conflict developed.   [Benzeevi Decl.,

25  Ex. B].  To the contrary, the waiver letter expressly states that the expectation is that Baker will

26  continue to represent the Benzeevi Group.  [Benzeevi Decl., Ex. B, p. 2, ¶ A].

27          In the summer of 2017, Baker took on an additional matter for the Benzeevi Group, the

28  formation of Vi Healthcare Finance, Inc. ("Vi"), an entity formed to provide financing to Inyo to

pay its expenses. Baker not only prepared the formation documents but also prepared the

transaction documents representing Vi, and advised Dr. Benzeevi about this transaction, whereby

Vi provided Inyo a line of credit. [Benzeevi Decl., ¶ 9]. The Vi transaction has been a target for

allegations of misconduct in the adversary action against HCCA and Vi in these proceedings.

[RJN, Ex. L, Docket No. 1 in Case No 18-01031].

In connection with Baker's representation of Vi, HCCA, Vi Healthcare and Inyo executed

a purported waiver of conflict letter. [Benzeevi Decl., Ex. D]. This letter reiterated the

disclosures of the unsigned January 2, 2016 letter, including that "the Firm presently represents,

and *expects to continue to represent*, the Benzeevi Group . . in connection with the Management

Service Agreement between the District and HCCA, and also potentially in connection with the

Loan between VI and the District." [Benzeevi Decl, Ex. D, p. 2] (emphasis added). However,

Baker never provided nor did the Benzeevi Group execute any waiver of conflict that disclosed

that an actual conflict had developed between the Benzeevi Group and Inyo nor was any consent

given to representation of Inyo if a conflict developed. [Benzeevi Decl., ¶ 11].

In the summer of 2017 a dispute developed concerning HCCA's management of Inyo.

[Benzeevi Decl., ¶ 10]. Following the eruption of this dispute, on September 29, 2017, Baker

abruptly commenced termination of its representation of the Benzeevi Group. [Benzeevi Decl., ¶

11, Ex. E]. The termination letter made no disclosure of any conflict or any other reason for the

termination, nor did it disclose that Baker would continue to represent Inyo. [Benzeevi Decl., Ex.

E]. Approximately two weeks later, on October 17, 2017, Ms. McDow and Baker filed on behalf

of Inyo in this proceeding, an Emergency Motion to immediately terminate the Inyo MSA (the

"Emergency Motion") which was highly prejudicial to the Benzeevi Group. [Benzeevi Decl., ¶

12]. In the Emergency Motion, Ms. McDow and Baker on behalf of Inyo, claimed that HCCA

was engaging in wrongful conduct as follows: improperly withholding information from the

District; mismanaging the financial situation of Inyo; concealing wrongful conduct by presenting

incomplete or inaccurate financial reports; and making misrepresentations and misstatements in

financial reports. [RJN, Ex. R, Docket No. 325]. In support of the Emergency Motion, Ms.

McDow submitted a declaration where she explained that she had reviewed the bank statements

and transactional records for Inyo's bank accounts and "noted several inconsistencies with certain reports and representations previously provided by HCCA." [RJN, Ex. S, Docket No. 326, ¶ 3]. Ms. McDow characterized transactions by HCCA as "suspect" and inconsistent with financial reports and information that HCCA had provided to Inyo. [RJN, Ex. S, Docket No. 326, ¶ 6].

Neither Baker nor Ms. McDow provided any advance notice of their intent to file this motion or the declaration. [Benzeevi Decl., ¶ 12]. Instead, HCCA was sent e-mail notice just hours before the hearing occurred that the Emergency Motion had been filed and that Inyo would be seeking immediate termination of the Inyo MSA. [RJN, Ex. R, Docket No. 325 (Emergency Mtn); RJN, Ex. U, Docket No. 329 (Delaney Decl)]. No one appeared on behalf of HCCA at the hearing on the Emergency Motion because Baker did not give HCCA notice until right before the hearing. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 6:8-16)].

Ms. McDow appeared at the hearing on the Emergency Motion representing the Debtor. Ms. McDow did not disclose that she and Baker had previously represented HCCA, as recently as three weeks prior, on the very contract that was the subject of the Emergency Motion. [Bedoyan Decl., Ex. G (10/17/17 Transcript)]. Instead, Ms. McDow requested immediate termination of the Inyo MSA, and discussed with the Court the bases for that termination or rejection of the contract, including allegations of improper financial transactions, harm to the public, and potential fraud by HCCA. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 9:19-11:22, 14:17- 15:6, 16:23-17:8, 17:21-24, 22:4-17, 25:4-26:16)]. Ms. McDow also represented that Inyo would be filing an adversary action against HCCA and that Inyo had allegedly suffered "irreparable damage" due to HCCA's conduct. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 25:4-16)]. Ms. McDow also revealed confidential information of HCCA, including falsely claiming that HCCA representative Alan Germany had sole control of the Inyo bank accounts. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 16:18-17:8)]. Ms. McDow made statements about efforts to get a manager for Inyo to replace HCCA. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 11:23-12:8)].

Just hours after HCCA received notice, the court granted the Emergency Motion in part by authorizing removal of HCCA as a signatory on bank accounts containing Inyo funds. [RJN, Ex. T, Docket No. 328]. HCCA and Inyo ultimately reached a partial settlement concerning the relief

1   requested in the Emergency Motion, submitted for court approval on November 22, 2017,

2   whereby they stipulated to rejection of the Inyo MSA and Inyo agreed to withdraw the McDow

3   Declaration, as well as an additional declaration submitted by Baker. [RJN, Ex. Y, Docket No.

4   377]. This Court approved the stipulation on December 2, 2017. [RJN, Ex. Z, Docket No. 382].

5           Meanwhile, a dispute had also developed at the Tulare Local Healthcare District

6   ("TLHD") regarding HCCA's management of TLHD after a new Board was elected in November

7   2016. [Benzeevi Decl., ¶ 13].   Baker had been counsel to TLHD, as well as counsel for HCCA,

8   in relation to the Tulare MSA.   However, the new TLHD Board hired other counsel to replace

9   Baker in the summer of 2017. [Benzeevi Decl., ¶ 13].   Baker disputed the TLHD Board's

10  authority to retain new counsel. [Benzeevi Decl., ¶ 13, Ex. F].   On September 30, 2017, TLHD

11  filed a Chapter 9 Petition. [Bedoyan Decl., ¶ 4].    Counsel for TLHD seized upon the McDow

12  Declaration to support its own efforts to reject the Tulare MSA and requested that the Bankruptcy

13  Judge in the TLHD case take judicial notice of the McDow Declaration to support Tulare's

14  motion to terminate the Tulare MSA. [RJN, Ex. M, Docket No. 103, Case No. 17-13797].[2]

15          HCCA is a creditor in this proceeding. [RJN, Ex. DD, Docket No. 406].  Vi Healthcare

16  Finance is also a creditor. [RJN, Ex. FF, Docket No. 447].  TLHD is a creditor in Inyo's

17  bankruptcy proceedings with an unsecured claim of $2.5 million and Inyo is a creditor in Tulare's

18  bankruptcy proceedings with a claim of an unidentified amount. [RJN, Ex. W, Docket No. 355;

19  RJN, Ex. X, Claim No. 48-1; RJN, Ex. P, Claim No. 238 (Case No. 17-13797)].  TLHD has

20  obtained Bankruptcy Code § 2004 orders allowing them to request documents from Inyo, in the

21  Inyo Bankruptcy Case, and Baker, in the TLHD Bankruptcy Case. [RJN, Ex. AA, Docket No.

22  388; RJN, Ex. BB, Docket No. 392; RJN, Ex. N, Docket No. 255 (17-13797); RJN, Ex. O,

23  Docket No. 256 (17-13797)]. Thus, Inyo, represented by Foley and Ms. McDow, is also taking

24  positions adverse to TLHD, Baker's former client, in the bankruptcy proceedings, in addition to

25  those positions taken adverse to the Benzeevi Group.

26  ///

27  _____

28  [2] The Request for Judicial Notice in Case No. 17-13797, Docket No. 103, requested that the
    Court take judicial notice of Docket No. 326 in Case No. 16-10015, which is the McDow
    Declaration in support of the Emergency Motion.

**C.     Disqualification of Ms. McDow and Foley will Not Prejudice Inyo or the Resolution of the Bankruptcy.**

Ms. McDow has represented and continues to represent Inyo in the Chapter 9 proceedings. [Docket No. 1; Bedoyan Decl., Ex. H]. However, as this Court has recognized, the Debtor, under Ms. McDow's guidance, has not progressed far in terms of confirmation of a plan of adjustment. [Bedoyan Decl., Ex. H (8/29/18 Transcript 10:9-20, 13:22-15:2)]. Ms. McDow has presented three proposed plans on behalf of Debtor, one of which she withdrew. As of yet, Ms. McDow has been unsuccessful as Debtor's counsel in bringing Inyo anywhere close to emerging from bankruptcy. [Bedoyan Decl., ¶ 5].

While Inyo has retained additional attorneys such as Mr. Shinbrot for certain aspects of the Inyo Bankruptcy proceedings,[3] Ms. McDow and Foley continue to be actively involved in the proceedings. Indeed, just recently, Ms. McDow appeared at an August 29, 2018 Status Conference on behalf of Inyo where she asserted positions adverse to the Benzeevi Group, including falsely accusing HCCA of acting in bad faith with regard to discussing mediation and again raising the allegations about HCCA's wrongdoing that she stated in her initial declaration in support of the Emergency Motion and which were repeated in Inyo's Complaint in the Adversary proceeding against HCCA and Vi. [Bedoyan Decl., Ex. H (8/29/18) Transcript 20:9-22:19); RJN, Ex. S, Docket No. 326, ¶¶ 3-9; RJN, Ex. L, Docket No. 1 (Case No. 18-01031), ¶¶ 33, 37-42].

Currently, the parties are discussing a global mediation. If mediation were to proceed with Foley and Ms. McDow representing Inyo, the situation will be fraught with irreconcilable conflicts of interest. Inyo, as the Debtor, is a party seeking to maximize recovery for itself and its creditors, which could include demanding from Baker a refund of fees paid to the firm and waiver of unpaid fees while Baker was tainted with a conflict of interest. [Bedoyan Decl., ¶7]. Baker – Ms. McDow's former firm - will be a party seeking to minimize its exposure for legal malpractice and the amount of any contribution to any settlement. [Bedoyan Decl., ¶ 7]. Ms. McDow will have to be a party also seeking to minimize her own exposure and any contribution. [Bedoyan

---

[3] See footnote 1 to Bedoyan Decl.

1   Decl., ¶ 7]. TLHD will be a party seeking to maximize recovery of its claim, based on the

2   transactions between Tulare and Inyo allegedly initiated by HCCA while all of them were

3   represented by Baker and Ms. McDow. [Bedoyan Decl., ¶ 7]. HCCA and Vi will be parties

4   seeking contribution from Baker and Ms. McDow as well as recovery of the amount of its two

5   claims, while resisting exposure and liability based on the allegations in the adversary action

6   initiated against it by Inyo. [Bedoyan Decl., ¶ 7]. Finally, in any mediation or litigation

7   addressing the plethora of issues in these matters, Ms. McDow and Mr. Greene will be critical

8   witnesses for each of the parties. [Bedoyan Decl., ¶ 7]. This proposed mediation highlights the

9   direct conflicts Ms. McDow and Foley continue to have not only with the Benzeevi Group but

10  also with Inyo, as well as TLHD.   While global mediation may hold the best hope for resolution

11  of this proceeding, Ms. McDow and Foley's continued representation of Inyo would likely doom

12  such a conflicted mediation to failure.

13         On September 17, 2018, counsel for the Benzeevi Group sent a letter to Foley requesting

14  that they voluntarily withdraw from representing Inyo in this case and demanding a response to

15  this request by September 29, 2018.  [Bedoyan Decl., ¶ 8, Ex. I].  Despite promising a response,

16  as of the filing date of this motion, Foley has not substantively responded.  [Bedoyan Decl., ¶ 8].

17                          **III.    LEGAL ARGUMENT**

18  **A.    Standards Applicable to Disqualification Based on Conflicts of Interest**

19         The multiple conflicts of interests arising from Ms. McDow's former representation of the

20  Benzeevi Group and TLHD require her disqualification and that of her current firm Foley, as

21  counsel for Inyo in this proceeding.

22         In the Ninth Circuit, the Courts apply California state law in matters of disqualification.

23  *In re County of Los Angeles* (9th Cir. 2000) 223 F. 3d 990, 995.   The Eastern District has adopted

24  the Rules of Professional Conduct of California State Bar as well as the applicable state court

25  case law as the applicable standards of professional conduct. *Lennar Mare Island, LLC v.*

26  *Steadfast Ins. Co.*  (E. D. Cal. 2015) 105 F. Supp. 3d 1100, 1107; Local Bankruptcy Rule

27  ("LBR") 1001-1(c) (incorporating Rule 180 of the Local Rules of Practice for the United States

28  District Court for the Eastern District of California); E.D. Cal. L. R. 180(e).

> "A trial court's authority to disqualify an attorney derives from the power inherent in every court 'to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'"

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.* (1999) 20 Cal. 4th 1135, 1145, (internal quotations omitted).

A motion for disqualification presents a conflict between the clients' right to counsel of their choice against the need to uphold ethical standards of professional responsibility. However, "[t]he *paramount concern* must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice *must yield* to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (emphasis added); *Arias v. FCA US LLC* (E. D. Cal. July 12, 2018) 2018 WL 3419709, *3.

Here, these ethical principles and the paramount concern with public trust in the administration of justice, especially in this case that has received so much public attention, require that Foley and Ms. McDow be disqualified.

**B.      The Continuing Duties of Loyalty and Confidentiality Require Disqualification of McDow and Foley**

As explained by exert Robert L. Kehr "It long has been the rule" that an attorney cannot do anything to injur a former client in a matter in which he formerly represented the client or use any confidential information obtained in the prior relationship against the former client. [Kehr Decl., ¶ 3]. Rule of Professional Conduct 3-310 (E) codifies this prohibition:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Cal. Rule Prof. Cond 3-310(E).

As recognized in Rule 3-310(E), the duty of confidentiality survives termination of the attorney-client relationship. The new Rules of Professional Conduct, which take effect on November 1, 2018, address Ms. McDow's conduct even more plainly. Comment [1] to Rule 1.9

15

1 could have been written to describe the impropriety of Ms. McDow's actions after she first

2 represented the Benzeevi Group with respect to the drafting of the Inyo MSA: "*For example (i) a*

3 *lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf*

4 *of a former client. . .*" (emphasis added).

5       Numerous cases also recognize that an attorney's fiduciary duties to a former client of

6 both confidentiality and loyalty continue after termination of employment. *Oasis West Realty,*

7 *LLC v. Goldman* (2011) 51 Cal. 4th 811, 821 ("'an attorney is forbidden to do either of two things

8 after severing [the] relationship with a former client. [The attorney] may not do anything which

9 will injuriously affect [the] former client in any matter in which [the attorney] formerly

10 represented [the client] nor may [the attorney] at any time use against [the] former client

11 knowledge or information acquired by virtue of the previous relationship.'") (citing *Wutchumna*

12 *Water Co. v. Bailey* (1932) 216 Cal. 564, 573-74); *Styles v. Mumbert* (2008) 164 Cal. App. 4th

13 1163, 1167 ("So fundamental is this precept that an attorney continues to owe a former client a

14 fiduciary duty even after the termination of the relationship. For example, an attorney is forever

15 forbidden from using, against the former client, any information acquired during such

16 relationship, or from acting in a way which will injure the former client in matters involving such

17 former representation."); *In re McIntosh* (9th Cir. 2017) 697 Fed. Appx. 569, 571–572 ("Under

18 California law, the duty of loyalty survives the end of the attorney—client relationship; 'after

19 severing his relationship with a former client an attorney 'may not do anything which will

20 injuriously affect his former client in any manner in which he formerly represented him.'").

21       As is discussed more fully in Section E, herein, Baker and Ms. McDow's conflicts and

22 duties are imputed to Foley as a matter of law. Thus, Baker and Ms. McDow, and by imputation

23 Foley, owe continuing duties of loyalty and confidentiality to Baker's former clients, the

24 Benzeevi Group. They cannot avoid their fiduciary duties of loyalty and confidentiality by their

25 abandonment of the Benzeevi Group. Baker and Ms. McDow not only violated their duty of

26 loyalty to the Benzeevi Group by representing Inyo in seeking to terminate the very contract they

27 drafted and negotiated for HCCA and resisting payment to Vi due under the documents that

28 Baker drafted on its behalf, they have expressly acknowledged their receipt of confidential

information from the Benzeevi Group, and are also presumed to have confidential information since the former representation is substantially related to the current representation of Inyo. Thus, based on their conflict of interest as to their loyalty as well as their actual and presumed possession of confidential information of the Benzeevi Group, disqualification of Foley and Ms. McDow is mandatory.

### C.    Ms. McDow's Prior and Continuing Violation of the Duty of Loyalty Requires Disqualification

The duty of loyalty to a former client "prohibits an attorney from engaging in any act that will injure the former client in matters involving the former representation." *In re Jaeger* (Bankr. C.D. Cal. 1997) 213 B.R. 578, 589. The duty of loyalty and confidentiality apply in both conflicted representation of current and successive clients. *Lennar Mare Island, LLC v. Steadfast Ins. Co. supra*, 105 F. Supp. 3d 1100, 1108.

> "This duty of loyalty continues after the client has discharged the lawyer, and the action injurious or adverse to the former client does not need to involve the use or disclosure of confidential information. A distinct and separate breach of ethical duty arises when the attorney discloses the former client's confidential information adversely to the former client."

*McGrane v. Howrey, LLP* (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD) 2015 WL 6126792, at *4, *aff'd sub nom. Matter of Howrey LLP* (9th Cir. 2017) 698 Fed. Appx. 881 (citations omitted).

In a recent bankruptcy decision, later affirmed by the Ninth Circuit, a bankruptcy court denied an attorney's request for fees and requiring the attorney to refund all fees previously collected due to the attorney's "flagrant" breach of loyalty to the former client, debtor in the bankruptcy proceeding. *In re McIntosh* (Bankr. N.D. Cal. Jan. 16, 2015) No. 13-11774 AJ, 2015 WL 241130 at *5-*6, aff'd (B.A.P. 9th Cir., Nov. 3, 2015, No. 13-11774) 2015 WL 6736740, <u>aff'd</u> (9th Cir. 2017) 697 Fed. Appx. 569. In so holding, the Court explained:

> "Chandler's breach of duty arises from the fact that he is taking a position adverse to his former client on an issue on which he previously represented the client and that is separate from the fees he is seeking to collect. With respect to that separate issue, it does not matter whether the court has decided the issue, or whether the position Chandler is currently taking is legally correct. An attorney who advocates a position on behalf of a client cannot switch sides simply because the issue has not yet been decided and/or he now believes the position he previously asserted on behalf of the client is wrong."

1  *In re McIntosh, supra,* 2015 WL 241130, at *5.

2     Baker and Ms. McDow's conduct in this case implicates both the duty of loyalty and

3  confidentiality. Just like in *McIntosh*, Ms. McDow's violation of her duty is flagrant because she

4  took a position directly adverse to her former clients on the issue in which she previously

5  represented them. Ms. McDow's breach of loyalty is especially egregious because she personally

6  filed a declaration in these Chapter 9 Proceedings and argued at an emergency hearing, which she

7  concealed until the very last minute from her former client, to terminate the very Inyo MSA that

8  she helped draft and negotiate on behalf of HCCA. [RJN, Ex. S, Docket 326; Bedoyan Decl., Ex.

9  G]. It is difficult to imagine a more direct breach of the duty of loyalty by an attorney to a former

10 client. [Kehr Decl., ¶ 5]. Mr. Kehr emphasizes:

11 "Because the *Wutchumna* rule imposes a continuing duty of loyalty as well as
   confidentiality on McDow and her law firms, she and they cannot now be adverse to the
   Moving Parties regarding either the Inyo MSA, this Chapter 9 proceeding, or the Vi
12 Transaction."

13 [Kehr Decl., ¶ 3].

14    What makes the conduct even worse is that when Baker terminated the Benzeevi Group as

15 a client, just two weeks before filing the Emergency Motion, it gave no notice that an actual

16 conflict had developed, nor of its intent to seek to terminate the Inyo MSA with a declaration

17 from Ms. McDow. [Benzeevi Decl., ¶¶ 11-12, Ex. E]. Instead, Baker sand-bagged the Benzeevi

18 Group with the Emergency Motion which prevented any type of coordinated or well-prepared

19 response to termination of a multi-million-dollar contract.

20    As Mr. Kehr concludes:

21 "Baker and McDow have had, and Foley and McDow now have a conflict of interest in
   representing the District adverse to the moving Parties. The conflict is between their duty
   to competently represent the District and their continuing obligations of loyalty and
22 confidentiality to the Moving Parties. . . .when either of these events occurred – the
   District requested advice about its right or duties vis a vis the Moving Parties or the
23 lawyers recognized that it needed that advice – *the lawyer's only proper course was
   immediately to cease their representation of the District until they had worked out with
24 the involvement of all affected clients how to deal with its conflict. Instead of doing
   that, they continued to represent and advise the District and by doing so violated and
25 continue to violate their duties of undivided loyalty and confidentiality to the Moving
   Parties.*"

26 [Kehr Decl., ¶ 4.1) (emphasis added).

27    Ms. McDow continues to act adversely to the Benzeevi Group even now because Inyo's

28 interests as a debtor are adverse to HCCA's and Vi's interests as creditors. Now with Foley, Ms.

18

1  McDow continues as lead insolvency counsel in these proceedings in which the Debtor is

2  prosecuting an adversary action against HCCA and Vi seeking damages for transactions

3  conducted in connection with the Inyo MSA that Baker and McDow drafted, negotiated and on

4  which it continued to advise Dr. Benzeevi after the Inyo MSA was executed.  The fact that

5  another attorney may also be representing the Debtor in that adversary action is irrelevant,

6  because there is no evidence that Ms. McDow has ever been screened to prevent her from

7  collaboration or otherwise shielded from communications with that attorney or from involvement

8  in the litigation.  Indeed, many of the allegations of the complaint in the adversary action echo the

9  allegations of the McDow Declaration submitted in support of the Emergency Motion to reject

10  the Inyo MSA.  [RJN, Ex. S, Docket 326; RJN, Ex. L, Docket 1 – Case 18-01031].  These are and

11  remain *her* allegations, regardless of whether they are now technically being prosecuted by

12  special counsel.

13        Moreover, Ms. McDow's conflicts are highlighted by the contemplated mediation which

14  she has pushed for, where her personal interests in resisting malpractice liability conflict not only

15  with the Benzeevi Group, but also with the interests of Inyo and TLHD.  In addition, Inyo's

16  interests, as Ms. McDow and Foley's client, conflict also with those of her former clients, the

17  Benzeevi Group and TLHD. If McDow and Foley withdraw or are disqualified, mediation might

18  bear fruit. But if they were to remain as counsel, their continued representation of Inyo would

19  make a farce of such a mediation, dooming it to failure to everyone's detriment.

20        On the bases of these myriad conflicts, Ms. McDow and Foley should be disqualified.

21  **D.    Ms. McDow's Prior and Continuing Duty of Preserve the Benzeevi Group's**

22  **Confidential Information Also Requires Disqualification**

23        Disqualification does not depend on showing a breach of loyalty, it is also warranted

24  where the former client can establish that the attorney received confidential information or the

25  acquisition of confidential information is presumed because the former and present engagements

26  are substantially related. *Beltran v. Avon Products, Inc.* (C.D. Cal. 2012) 867 F. Supp. 2d 1068,

27  1077; *SpeeDee Oil*, *supra*, 20 Cal. 4th 1135, 1146; *Lennar Mare*, 105 F. Supp. 3d at 1109.  Here,

28  Baker previously confirmed in writing that it possessed the Benzeevi Group's confidential

1   information, and Dr. Benzeevi's declaration establishes that he shared substantial confidential

2   information with Baker and Ms. McDow, including financial information and strategies and goals

3   with regard to the Inyo MSA. [Benzeevi Decl., ¶¶ 5-6]. Rule 3-310 (E) bars representation of a

4   client adverse to a former client where confidential information was provided to the attorney.

5   Baker and Ms. McDow's receipt of the Benzeevi Group's confidential information which is

6   directly relevant and material to issues in this Chapter 9 proceeding provides an independent basis

7   for disqualification.

8        "Whether the two representations are substantially related depends on the factual

9   situation, legal questions, and the attorney's involvement in the two cases. *Lennar Mare*, *supra*,

10   at 1109. Where the attorney had a direct relationship with the former client "in which the

11   attorney personally provided legal advice and services on a legal issue that is closely related to

12   the legal issue" in the matter in which the former client seeks disqualification, a substantial

13   relationship will be deemed to exist. *Arias v. FCA US LLC* (E.D. Cal., July 12, 2018, No. 2:18-

14   CV-00392-JAM-AC) 2018 WL 3419709, at *2; *City and County of San Francisco v. Cobra*

15   *Solutions, Inc.* (2006) 38 Cal.4th 839, 847. Evidence that "information material to the evaluation,

16   prosecution, settlement or accomplishment of the former representation given its factual and legal

17   issues is material to the evaluation, prosecution, settlement or accomplishment of the current

18   representation given its factual and legal issues" satisfies the substantial relationship test.

19   *Western Sugar Coop. v. Archer-Daniels-Midland Co.* (C.D. Cal. 2015) 98 F.Supp.3d 1074, 1081.

20   Where the relationship between the attorney and former client was direct, proof of actual

21   possession of confidential information is not required. "Instead, the attorney is presumed to

22   possess confidential information if the subject of the prior representation put the attorney in a

23   position in which confidences material to the current representation would normally have been

24   imparted to counsel." *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38

25   Cal.4th 839, 847.

26        The client is not required to disclose the actual confidential information communicated by

27   the attorney. As explained by the Ninth Circuit,

28        "[T]he underlying concern is the possibility, or appearance of the possibility, that
            the attorney may have received confidential information during the prior representation

that would be relevant to the subsequent matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification."

*Trone v. Smith* (9th Cir. 1980) 621 F.2d 994, 999.

The *Davis* case is analogous to the situation here. In *Davis*, a former client sought to disqualify its former attorneys from representing defendants in an action which arose out of the contracts the firm had negotiated on behalf of the former client and the defendants. The court granted disqualification, stating:

"Here, MSK seeks to represent Defendants in a case arising out of contracts it negotiated on behalf of Davis *with Defendants*. The Court finds that there is a clear and substantial relationship between the royalty agreements at issue in this case and MSK's prior representation of Davis in negotiating those same agreements. That relationship is sufficient to create the presumption that MSK has confidential information material to the current matter and that this information is shared by all attorneys in the firm. That presumption requires the disqualification of MSK and all of its attorneys."

*Davis v. EMI Group Ltd.* (N.D. Cal., Jan. 4, 2013, No. 12-CV-1602 YGR) 2013 WL 75781, at *3 (emphasis in original).

The Bankruptcy Court has also recognized that, "Where a dispute arises between parties in a matter where they are jointly represented by the same attorney, there is inherently a substantial relationship between the new dispute and the joint representation. *In re Jaeger, supra,* 213 B.R. 578, 589.

Here, even if the actual receipt of confidential information which Baker admitted in its letters to the Benzeevi Group and Inyo [Benzeevi Decl., Exs. B and C] could somehow be disputed, the receipt of confidential information is presumed because the issues implicated in these Chapter 9 proceedings are not only unquestionably substantially related to Baker's prior representation of the Benzeevi Group, to some extent they are the same matter. As Dr. Benzeevi stated, after the Inyo MSA took effect, Baker continued to advise HCCA concerning the Chapter 9 proceedings. [Benzeevi Decl., ¶ 8]. There also can be no doubt of a substantial relationship between this proceeding and Ms. McDow's direct involvement with HCCA in drafting, negotiating and advising HCCA regarding the Inyo MSA, and also to Baker's representation of

1　Vi in its formation and in preparing loan documents and offering transactional advice whereby Vi

2　extended credit to Inyo in attempts to bolster its financial position.  Under the Inyo MSA,  HCCA

3　took over all aspects of managing Inyo in an attempt to save it from the brink of financial disaster

4　and make it a financially viable entity.  This proceeding places Inyo's financial situation

5　following HCCA's management tenure directly in issue and the Inyo MSA is the central focus of

6　an adversary proceeding and the basis of HCCA's creditor claim.  The same goes for Vi, in that

7　the loan documents that Baker drafted are the basis of Vi's creditor claim and also targeted in the

8　adversary proceeding.  In this situation, Baker has admitted the receipt of confidential information

9　and also such receipt is presumed because of the relationship between the prior and current

10　matters.

11　　　　Due to the clear conflicts between Baker and Ms. McDow's continuing duties of loyalty

12　and confidentiality and the *"**paramount concern**"*  being to preserve "public trust in the

13　scrupulous administration of justice and the integrity of the bar" the disqualification of Foley and

14　Ms. McDow is mandated here.  *SpeeDee*, *supra*, 20 Cal.4th 1135, 1145 (emphasis added).

15　　　　E.　　　**Baker's and McDow's Conflict of Interest Must be Imputed to Foley &**

16　　　　　　　　**Lardner**

17　　　　Just as Baker and Ms. McDow could not escape their ethical duties by terminating their

18　relationship with the Benzeevi Group, Ms. McDow cannot escape the same duties by switching

19　firms.  Ms. McDow's duties to the Benzeevi Group followed her to Foley, and Foley now also

20　must be disqualified.

21　　　　An attorney cannot escape the continuing duty of loyalty and confidentiality by switching

22　firms.  When the attorney switches firms, that duty is then imputed to the firm as a whole.  *City*

23　*and County of San Francisco v. Cobra Solutions, Inc., supra,* 38 Cal.4th 839, 847–848 ("an

24　attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working

25　together and practicing law in a professional association, share each other's, and their clients',

26　confidential information.'");  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change*

27　*Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 ("a presumption that an attorney has access to

28　privileged and confidential matters relevant to a subsequent representation extends the attorney's

disqualification vicariously to the attorney's entire firm."); *Beltran v. Avon Products, Inc.*, *supra*, 867 F.Supp.2d 1068, 1083 (quoting *Cobra Solutions* and *SpeeDee*).

Expert Kehr explains:

"While her departure from Baker ended [McDow's] imputed duties to Baker clients as to which she possessed no material confidential client information and owed no duty of loyalty based on her own work, she took with her all the duties she had to all Baker clients about which she had material confidential information and for which she provided legal services. This includes both of the Moving Parties."

[Kehr Decl., ¶ 3.1]

Mr. Kehr observes that imputation of McDow's conflict to Foley is also supported by Rule 1.10(a) taking effect on November 1, 2018 which states "(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 1.7 or 1.9 . . ." [Kehr Decl., ¶ 3.2]. This rule reflects the holdings of *Cobra Solutions* and *Speedee*.

Even in cases where an attorney was only involved in far more minimal contacts with a former client than Ms. McDow had with the Benzeevi Group, as long as confidential information was presumptively communicated, the new firm that attorney joined will be vicariously disqualified from an action adverse to the former client. *Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.* (C.D. Cal. 2012) 913 F.Supp.2d 900, 909 ("de minimis level of involvement with a prior case is sufficient for presuming that an attorney acquired confidential information about that prior case."); *Pound v. DeMera DeMera Cameron* (2005) 135 Cal. App. 4th 70, 74 (one hour phone call about a case three years prior was sufficient to presume that an attorney acquired confidential information and warranted disqualification).

The question of whether vicarious disqualification is automatic or is subject to a rebuttable presumption resolved on a case by case basis is unsettled. *National Grange of Order of Patrons of Husbandry v. California Guild* (E.D. Cal., May 12, 2017) 2017 WL 2021731, at *2. However, even cases employing a case by case analysis require that to overcome the presumption, an ethical wall must be erected which satisfies "the trial court that the [tainted attorney] has not had and will not have any involvement with the litigation, or any communication with attorneys or

coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed." *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 810. In the absence of a sufficient ethical wall the presumption of shared confidential information cannot be overcome. *Kirk, supra*, 183 Cal.App.4th 776, 810. It is obvious that Foley cannot overcome the presumption of imputation because it has not only failed to screen Ms. McDow, she continues to be directly involved as lead counsel for the Debtor, assisted by former Baker attorney Mr. Farivar. [See e.g., Doc Nos. 450; Bedoyan Decl., Exs. G and H].[4] An ethical screen is an impossibility because Ms. McDow is lead counsel on the case. She cannot be screened from herself.

Here, Ms. McDow's involvement with the Benzeevi Group, and HCCA and the Inyo MSA in particular, was far more than de minimis. She actually drafted the language and advised the Benzeevi Group regarding the bankruptcy implications pertaining to the very Inyo MSA she now challenges. [Benzeevi Decl., ¶ 6]. In fact, Ms. McDow was the attorney who appeared on behalf of HCCA at the January 2, 2016 Board meeting where the Board approved the Inyo MSA, the retention of Baker by Inyo for the Chapter 9 proceedings and the purported Waiver of Conflict letter. [Benzeevi Decl., ¶ 6]. After execution of the Inyo MSA, Ms. McDow and Baker continued to advise Dr. Benzeevi and HCCA representatives concerning the Chapter 9 proceedings and HCCA's duties and responsibilities under the Inyo MSA. [Benzeevi Decl., ¶ 8]. Furthermore, she was part of the group of Baker attorneys that were handling substantially all of the Benzeevi Group's legal needs arising from its business activities over a seven-year period. [Benzeevi Decl., ¶¶ 5, 8]. The knowledge of that team, even beyond the matters she was directly involved in, is imputed to her. When she left Baker, she carried the consequences of her previous representation of the Benzeevi Group with her. In these circumstances, Ms. McDow's and Baker's conflict is imputed to Foley and the entire firm of Foley must be disqualified.

---

[4] Even a cursory review of Inyo's now withdrawn Second Amended Disclosure Statement with Respect to the Plan for the Adjustment of Debts of Southern Inyo Healthcare District indicates that McDow, for feasibility purposes, is relying heavily on the disallowance of the HCCA and Vi claims as well as the affirmative recovery of no less than $6,000,000 from HCCA. [RJN, Ex. CC, [Dkt. No. 397], pg. 25, lns. 17-25 and pg. 30, lns. 9-22].

**F. Baker's Conflict Waiver is Unenforceable and Insufficient to Waive the Present Conflict**

Foley likely will attempt to rely on the purported waiver of conflict letters that Baker executed to assert that the Benzeevi Group waived Baker's conflict with Inyo. These purported waivers are wholly insufficient to obtain the Benzeevi Group's informed written consent to represent Inyo adverse to the Benzeevi Group. In fact, the letters, one of which may never even have been signed by the Benzeevi Group, actually state that if a conflict develops, Baker would continue to represent HCCA with respect to the Inyo MSA adverse to Inyo. [Benzeevi Decl.,, Exs. B, C]. These letters cannot possibly be interpreted to obtain "informed written consent" under Rule of Professional Conduct 3-310(A) to representation of Inyo if a conflict developed. Thus, the Baker conflict waiver letters do not allow Foley or Ms. McDow to escape disqualification.

Rule of Professional Conduct 3-310(A) sets forth the foundational requirements for informed written consent. Rule 3-310(A) defines "Informed written consent" as a "written agreement to the representation following written disclose and "disclosure" as "informing the client . . . of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client." Rule Prof. Conduct 3-310(A)(1) and (2). Informed written consent requires that the client be fully informed of all the facts and circumstances relating to the conflict. *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Company, Inc.* (2018) 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 442, 425 P.3d 1, 16]; *Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1253.

As the Supreme Court recently explained:

> "Because rule 3-310(C)(3) embodies a core aspect of the duty of loyalty, the disclosure required for informed consent to dual representation must also be measured by a standard of loyalty. To be informed, the client's consent to dual representation must be based on disclosure of all material facts the attorney knows and can reveal."

*Sheppard, Mullin, supra*, 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 442, 425 P.3d 1, 16]. In *Sheppard Mullin*, the Supreme Court held that a conflict waiver that failed to comply with Rule 3-310 by omitting disclosure of an existing conflict was not effective to waive the conflict. *Sheppard,*

*Mullin, supra,* 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 444, 425 P.3d 1, 17-18]. Furthermore, even if a disclosure of potential conflicts was made, a second disclosure must be made when the potential conflict ripens into an actual conflict. *In re Jaeger, supra,* 213 B.R. 578, 585.

> Mr. Kehr further explains that Rule 3-310(A) requires the following:
> "In order for a lawyer to obtain client consent to a conflicting representation, it is necessary for the lawyer to disclose all of the facts, and to provide all of the information, the client would need to make an informed decision on whether to grant consent."

[Kehr Decl., ¶ 4.3].

At this point, it is uncertain whether the Benzeevi Group and Inyo executed the January 2, 2016 letter, and thus this letter should be disregarded. However, neither the January 2, 2016 letter nor the July 19, 2017 letter complied with Rule 3-310 or satisfied Baker's duty of disclosure to its existing clients, the Benzeevi Group. The letters fail to disclose reasonably foreseeable adverse consequences such as the possibility that Baker would choose to represent Inyo if a conflict developed. The letters actually say the opposite, that Baker "expects to continue to represent the Benzeevi Group." [Benzeevi Decl., Exs. B and C, p. 2, ¶ A]. Further, there was no discussion of what parts of the client file each client would receive at termination of the engagement and the possibility that Baker would withhold parts of the file where it was advising HCCA as Inyo's manager claiming such materials were Inyo's client file. Moreover, critically, after the actual conflict developed between HCCA, Vi and Inyo in the summer of 2017, no further conflict disclosure was given to the Benzeevi Group. As Mr. Kehr observes: "These conflict letters do not attempt to obtain consent to Baker or McDow later representing the District against Dr. Benzeevi or the Moving Parties." [Kehr Decl., ¶ 4].

Thus, the purported conflict waiver letters did not provide the information necessary to waive the conflict of interest between Baker's duties to the Benzeevi Group and Inyo and do not preclude disqualification of Foley.

### G.     The Benzeevi Group Has Not Otherwise Waived the Conflict

The Benzeevi Group has not waived its rights to disqualify Foley and Ms. McDow by any unreasonable delay either.

Delay alone does not waive grounds for disqualification. Both the delay and the resulting

1    prejudice must be shown to be extreme and unjustified to find a waiver of the right to disqualify.

2    *Western Continental Operating Co. v. Natural Gas Corp. of Calif.* (1989) 212 Cal.App.3d 752,

3    763-764. The fact that Debtor will lose counsel of its choice and will need to retain new counsel

4    does not constitute the type of extreme prejudice warranted to override the factors supporting

5    disqualification here. *See In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d 572, 599-

6    600 (Extreme prejudice beyond loss of knowledgeable counsel of choice necessary to deny

7    disqualification.). For example, in *In re Complex Asbestos Litigation,* even a motion made on the

8    eve of trial was found not prejudicial. *In re Complex Asbestos Litig.*, *supra*, 232 Cal. App. 3d

9    572, 599-600. Also, in *Ontiveros v. Constable*, the court found that a 16-month delay and

10   prejudice was not extreme where discovery was ongoing and no trial date was set. *Ontiveros v.*

11   *Constable* (2016) 245 Cal. App. 4th 686, 701-702. The court of appeal explained: "... the proper

12   focus is on the stage of the litigation." *Ontiveros, supra*, at 701-02.

13        Here, the delay has been only four months and before Ms. McDow even joined Foley she

14   was put on notice that the Benzeevi Parties were asserting that she and Baker had a disqualifying

15   conflict. [RJN, Ex. V, Docket No. 339]. As noted by the Court, Ms. McDow has been wholly

16   unsuccessful in getting approval for a plan of adjustment. [Bedoyan Declaration, ¶ 5, Ex. H

17   (8/29/18 Transcript 10:9-20, 13:22-15:2)]. Further, little has happened in the case since Foley

18   substituted into the case in June of 2018. The only developments have been status conferences

19   and the initiation of a few avoidance actions. [Bedoyan Decl., ¶ 6]. The involvement of new

20   counsel will not meaningfully delay the progress of the case. Foley will not be able to show the

21   type of extreme delay or prejudice necessary to operate to waive this egregious and flagrant

22   conflict. Indeed, the contrary is likely true: disqualification will permit the possibility of a fruitful

23   mediation, which may be the only realistic process for resolving this bankruptcy, short of

24   dismissal.

25   //

26   //

27   //

28   //

### IV.    CONCLUSION

Based on the foregoing, HCCA and Vi respectfully request that Foley and Ms. McDow be disqualified from further representation of Inyo in these proceedings.

Dated: October ___15___, 2018

KLEIN, DENATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL LLP

By: */s/ Hagop T. Bedoyan*
HAGOP T. BEDOYAN,
Attorneys for HealthCare Conglomerate Associates, LLC and Vi Healthcare Finance, Inc.

28