HAGOP T. BEDOYAN, CSB NO. 131285
**KLEIN, DENATALE, GOLDNER,**
**COOPER, ROSENLIEB & KIMBALL, LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile:  (661) 326-0418
Email: hbedoyan"kleinlaw.com;

Brandon N. Krueger, Esq. (SBN 221432)(Admission Pending)
*bkrueger"sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)(Admission Pending)
*lcallas"sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for Healthcare Conglomerate Associates, LLC and
Vi Healthcare Finance, Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>              Debtor. | Case No.: 16-10015-A-9<br><br>Chapter   9<br><br>DC No.:   KDG-4<br><br>Date:       November 14, 2018<br>Time:       1:30 p.m.<br>Place:      United States Bankruptcy Court<br>              2500 Tulare Street, Fifth Floor<br>              Department A, Courtroom 11<br>              Fresno, California<br>Judge:     Honorable Fredrick E. Clement |

**DECLARATION OF ROBERT L. KEHR IN SUPPORT OF MOTION TO**
**DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS ATTORNEYS**
**FOR DEBTOR**

I, Robert L. Kehr, hereby declare as follows:

1.      I have been requested by Sall Spencer Callas & Krueger, a law corporation, counsel for Healthcare Conglomerate Associates, LLC ("HCCA"), Vi Healthcare Finance, Inc. ("Vi Healthcare", and with HCCA the "Moving Parties") to provide in this Declaration my expert opinion in support of the Moving Parties' motion (the "Pending Motion") to disqualify Foley & Lardner LLP ("Foley") and Ashley M. McDow ("McDow"). I have been asked to provide this Declaration because of my long-standing involvement with the professional responsibility of lawyers, which includes chairing the Professional Responsibility and Ethics Committee of the L.A. County Bar Assn., chairing the Standing Committee on Professional and Conduct of the State Bar of California, serving as a member of the State Bar Commission that wrote California's new Rules of Professional Conduct, providing continuing education for lawyers, and serving as an adjunct professor at Loyola Law School on topics that include the professional responsibilities of lawyers. The details of my professional background and expertise are described in the Exhibit "J". Exhibit "K" identifies the materials that I have reviewed in preparing this Declaration. Based on these materials, and except for any assumptions that I have been asked to make and that are explicitly identified below, I have personal knowledge of the facts and opinions stated in this Declaration, and if called as a witness could testify competently thereto.

2.      Assumed facts: I have been asked to assume that: [1] (a) HCCA was the Manager of Southern Inyo Healthcare District (the "District") under the

---

[1] Although I treat each of these facts as assumed, I have seen materials that support much of this. For example, the third paragraph of Baker's conflict disclosure letter to the Moving Parties dated January 2, 2016 acknowledges that Baker has "represented HCCA in connection with the negotiation and drafting of a management services agreement with the District." I am not otherwise citing

3NO8358             2                DECLARATION

1   Management Services Agreement dated January 2, 2016 (the "Inyo MSA"); (b)

2   Vi Healthcare and HCCA are owned by Yorai Benzeevi, M.D. ("Dr. Benzeevi");

3   (c) Baker Hostetler LLP ("Baker") represented Dr. Benzeevi and his related

4   entities beginning in 2009, approximately seven years before the filing of the

5   current Ch. 9 proceeding, and Baker and its partner, Ashley M. McDow

6   ("McDow") thereafter represented Dr. Benzeevi and his related entities, including

7   the Moving Parties; (d) these representations by Baker, and by McDow,

8   personally, included, among a number of other matters, negotiating and drafting

9   the Inyo MSA on behalf of HCCA, providing advice to HCCA about the possible

10  consequences for it if the District were to file a Ch. 9 proceeding, and

11  representing Vi Healthcare in the negotiation and drafting of its loan to the

12  District (the "Vi Transaction"); (e) the Vi Transaction is the subject of Vi

13  Healthcare's creditor's claim in the current Ch. 9 proceedings; (f) Baker and

14  McDow did not represent the District regarding the Inyo MSA or these Ch. 9

15  proceeding until on or about January 2, 2016, when the District retained Baker

16  solely with respect to the current Ch. 9 proceeding, and they did not represent the

17  District in the negotiation or drafting of the Vi Transaction; (g) after first

18  beginning to represent the District regarding these Ch. 9 proceedings, Baker and

19  McDow continued to represent the Moving Parties without any limitation until

20  Baker, about 1-3/4 years later, sent them a letter dated September 29, 2017 that

21  commenced termination of their lawyer-client relationship; (h) neither of the

22  Moving Parties ever consented to Baker or McDow representing the District with

23  respect to the Inyo MSA or the Vi Transaction; (i) McDow withdrew from Baker

24  in or about May of 2018 and moved her practice to Foley, and Foley then became

25

26  _____

27  those sources so as to avoid encumbering this Declaration with redundant
    information that I expect will be provided to the Court by the Moving Parties.

1   the District's attorneys of record in the current Ch. 9 proceeding;[2] and (j) Foley,

2   and McDow, personally, are representing the District. It will be most convenient

3   for me to identify additional assumptions below in explaining my opinions.

4   3.      Lawyers are prohibited from being directly adverse to a former client. It

5   long has been the rule that "an attorney is forbidden to do either of two things

6   after severing his relationship with a former client. He may not do anything

7   which will injuriously affect his former client in any manner in which he formerly

8   represented him nor may he at any time use against his former client knowledge

9   or information acquired by virtue of the previous relationship." *Wutchumna*

10  *Water Co. v. Bailey*.[3] Our Supreme Court has enforced this standard repeatedly,[4]

11  and *Wutchumna* has been relied on many times by Ninth Circuit courts, by

12  California Courts of Appeal, and by California disciplinary courts.[5] Our

13  Supreme Court emphasized in *People ex rel. Deukmejian v. Brown*,[6] as should be

14  apparent from the plain language of the *Wutchumna* opinion, that "the prohibition

15  is in the disjunctive: an attorney may not use information or 'do anything which

---

19  [2] Although I refer only to McDow, I have been asked to assume that a second
20  Baker lawyer, Fahim Farivar, worked on HCCA matters at Baker, moved with
     McDow to Foley, and at Foley has represented the District in the current matter.
21  My analysis of McDow's duties applies equally to both.
22  [3] 216 Cal. 564, 573-74 (1932).
     [4] *See, e.g., Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) and
23  *People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 155-56 (1981).
     [5] *See, e.g., In re McIntosh*, 2015 WL 6736740, at *8 (B.A.P. 9th Cir. 2015), aff'd,
24  697 F. App'x 569 (9th Cir. 2017); *McGrane v. Howrey, LLP*, 2015 WL 6126792,
25  at *3-5 (N.D. Cal. 2015), *aff'd sub nom. Matter of Howrey LLP*, 698 F. App'x 881
     (9th Cir. 2017); *Costello v. Buckley*, 245 Cal. App. 4th 748, 753-54 (2016); and
26  *Matter of Shafer*, 2018 WL 2459570, at *14 (Cal. Bar Ct. 2018).
27  [6] 29 Cal. 3d 150, supra at 155 (italics added by the Deukmejian court).

28  3NO8358                              4                              DECLARATION

1    will injuriously affect his former client.'"[7]  This means that it is not necessary to

2    become entangled in the question of whether Baker and McDow are obligated to

3    treat particular items of information regarding the Ch. 9 proceedings, the Inyo

4    MSA, or the Vi Transaction as confidential from the District.  Given that Dr.

5    Benzeevi owned both of the Moving Parties and that HCCA managed the District,

6    HCCA's management responsibilities to the District under the Inyo MSA would

7    have given it and Dr. Benzeevi full access to all of the District's confidential

8    information regarding the Ch. 9 proceedings and the Inyo MSA.  However, it is

9    not clear that the District would have had access to any confidential information

10   of HCCA or Dr. Benzeevi.  Because the Wutchumna rule imposes a continuing

11   duty of loyalty as well as confidentiality on McDow and her law firms, she and

12   they cannot now be adverse to the Moving Parties regarding either the Inyo MSA,

13   these Ch. 9 proceeding, or the Vi Transaction.

14        3.1    This analysis does not change as a result of McDow's move from

15   Baker to Foley.  While her departure from Baker ended her imputed duties to

16   Baker clients as to which she possessed no material confidential client

17   information and owed no duty of loyalty based on her own work, she took with

18   her all the duties she had to all Baker clients about which she had material

19   confidential information and for which she had provided legal services.  This

20   includes both of the Moving Parties.  This is most easily seen from California's

21   new Rule 1.9: A(a) A lawyer who has formerly represented a client in a matter

22   shall not thereafter represent another person in the same or a substantially related

23   matter in which that person's interests are materially adverse to the interests of

24

25

26   ───────────────
     [7] *See also Med-Trans Corp., Inc. v City of California City*, 156 Cal. App.4th 655,

27   664 (2007) and *Knight v. Ferguson*, 149 Cal. App.4th 1207, 1215-16 (2007).

28   3NO8358                              5                              DECLARATION

1    the former client unless the former client gives informed written consent." This

2    standard in my opinion is consistent with prior California authority.[8]

3         3.2    The application to the entire Foley firm can be seen most easily in

4    new Rule 1.10, which begins: "(a) While lawyers are associated in a firm, none of

5    them shall knowingly represent a client when any one of them practicing alone

6    would be prohibited from doing so by Rules 1.7 or 1.9, unless ...." As with Rule

7    1.9(a), Rule 1.10(a) does not change California law but only places the lawyer's

8    duty in an easily accessible Rule of Professional Conduct. The Commission's

9    submission to the Supreme Court correctly stated that this standard is found in

10   case law and that "there is abundant case law that recognizes that when one

11   lawyer in a law firm is disqualified, that disqualification is extended to every

12   other lawyer in the firm, i.e., the other lawyers are vicariously disqualified.

13   (citations omitted)." [9]

14        3.3    Here, Baker and McDow filed the "Emergency Motion (1) for

15   Authority to Immediately Terminate [the Inyo MSA], etc.", and McDow in her

16   Declaration filed in this matter on October 17, 2017, and her oral presentation to

17   this Court on the same date attacked HCCA in a variety of ways in order to obtain

18   for the District the relief sought in the Emergency Motion - and this was despite

19   _____

20   [8] The Rules Revision Commission's explanation of new Rule 1.9(a) in its
     submission of proposed Rules to the Supreme Court is that it will provide clarity

21   and "incorporates the limited duty of loyalty owed to former clients, which
     prohibits an attorney from attacking the very work he or she provided to a former

22   client, as has been recognized by the California Supreme Court. (see, *Wutchumna*

23   *Water Co. v. Bailey* (1932) 216 Cal. 564; *Oasis West Realty v. Goldman* (2011)
     51 Cal.4th 811)." The Commission's report can be found at

24   http://www.calbar.ca.gov/portals/0/documents/rules/rrc2014/final_rules/rrc2

25   1.9_[3 310(e)] all.pdf

26   [9] The Rules Revision Commission's report can be found at
     http://www.calbar.ca.gov/portals/0/documents/rules/rrc2014/final_rules/rrc2 1.10

27   all.pdf

28   3NO8358           6           DECLARATION

1  the fact that, as confirmed by Baker's 2016 and 2017 conflict letters, Baker

2  "represented HCCA in connection with the negotiation and drafting of the [Inyo

3  MSA]."[10]　At the risk of belaboring the obvious, it is my opinion that Foley and

4  McDow are adverse to the Moving Parties within the meaning of the *Wutchumna*

5  line of cases.　That opinion, more fully quoted above at paragraph 3, prohibits a

6  lawyer doing "anything which will injuriously affect his former client in any

7  manner in which he formerly represented him nor may he at any time use against

8  his former client knowledge or information acquired by virtue of the previous

9  relationship."　Based on my assumption that Baker and McDow advised the

10  Moving Parties about these Ch. 9 proceedings, I reach the same conclusion about

11  any action by Foley or McDow in these proceedings that is adverse to the

12  interests of the Moving Parties even if that action does not affect the Inyo MSA or

13  the Vi Healthcare Transaction.

14  4.　　Baker's conflict letters. It is possible in some circumstances for a firm to

15  obtain advance consent to being adverse to a client in the future.　An example of

16  this is found in the frequently cited opinion in *Zador Corp. v. Kwan*.[11]　Thus,

17  when Baker and McDow first added the District as a client in January of 2016,

18  they could have obtained consent from Dr. Benzeevi and his related entities to

19  continuing to represent the District adverse to them following a termination of the

20  lawyer-client relationship with the Moving Parties.　This possibility requires an

21  examination of Baker's conflict letter to the District and Dr. Benzeevi and HCCA

22  dated January 2, 2016, and Baker's conflict letter dated July 19, 2017 to the

---

[10] I have quoted from the first paragraph on p. 2 of the 2017 conflict letter.　The
same point is found in the third paragraph on p. 1 of the 2016 conflict letter.
[11] 31 Cal. App. 4th 1285 (1995).　I don't intend to suggest that the law firm's
disclosure to its client that was approved in that opinion would be found adequate
today, only that it is possible to obtain consent in advance.

28

District, and to Dr. Benzeevi and the Moving Parties (I understand that Vi Healthcare had not been formed at the time of the prior conflict letter, so the second conflict letter was needed to add it because, as I have been asked to assume, Baker represented Vi Healthcare and not the District in the Vi Transaction).  I assume for purposes of my analysis that the 2016 conflict letter was put into effect although the draft of Dr. Benzeevi's supporting declaration shows that it is possible that neither the District nor HCCA signed it, and if not there would have been no written consent as is required.  Those conflict letters do not attempt to obtain consent to Baker or McDow later representing the District against Dr. Benzeevi or the Moving Parties.  To the contrary, both attempt to obtain the District's consent to Baker and McDow later representing the Moving Parties adverse to the District.  This can be seen from the first paragraph on p. 2 of the 2016 letter and from the fourth and fifth paragraphs on p. 2 of the 2017 letter.[12]  I therefore conclude that Baker and McDow did not obtain, or even attempt to obtain, the authority to be adverse to the Moving Parties.[13]  To obtain an effective consent, the conflict letters would have had to disclose all the foreseeable consequences to the Moving Parties of giving their consent, which would have included, among other things, that Baker could be adverse to the Moving Parties in the Ch. 9 proceeding and to use and disclose adverse to the Moving Parties information obtained in representing them; the conflict letters do not meet this standard.[14]

---

[12]  I am not offering the opinion that these attempts to obtain the District's consent would have been successful.  The two conflict letters suffer from several problems, but they are not relevant to the Pending Motion.

[13]  I recognize but will ignore as irrelevant the separate question of whether, if Baker had obtained that consent, it would benefit Foley.

[14]  *See* the discussion of this issue, and the approved disclosure, in *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1107-08 (N.D. Cal. 2003).

4.1    The fact that Baker's two conflict letters do not attempt to obtain the Moving Parties' consent to a later representation adverse to them means that Baker and McDow have had, and Foley and McDow now have, a conflict of interest in representing the District adverse to the Moving Parties. The conflict is between their duty to competently represent the District and their continuing obligations of loyalty and confidentiality to the Moving Parties. "The existence of a conflict of interest does not depend on a finding that the attorney's judgment or conduct actually was affected by the circumstances. 'Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities' to the attorney's other interests. (citation omitted)  It is the threat that the attorney's conduct might be affected by the conflicting interests that gives rise to an actual conflict."[15]   That conflict of interest arose when the District first requested advice from Baker and McDow regarding its rights against or duties to HCCA under the Inyo MSA to Vi Healthcare under the Vi Transaction, or the District's ability to take action in the current Ch. 9 proceedings adverse to the interests of the Moving Parties. Even if the District did not ask for this advice, the conflict of interest existed the moment that Baker or McDow recognized that the District might need advice on any of these three topics in order to protect or advance its own interests. The reason for this is their duty of competence to the District then would have obligated them to volunteer advice to the District even if not requested.[16]   When either of these

---

[15] *Harris v. Superior Court*, 225 Cal. App. 4th 1129, 1140 (2014). *See also, e.g., Frye v. Warden, San Quentin State Prison*, 2012 WL 2886001, at *2 (E.D. Cal. 2012) and *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1043 (2002).

[16] *See Nichols v. Keller*, 15 Cal. App.4th 1672, 1683-84 (1993) ("One of an attorney's basic functions is to advise ... Not only should an attorney furnish advice when requested, but he or she should also volunteer opinions when

1   events occurred - the District requested advice about its rights or duties vis a vis

2   the Moving Parties or the lawyers recognized that it needed that advice - the

3   lawyers' only proper course was immediately to cease their representation of the

4   District until they had worked out with the involvement of all affected clients how

5   to deal with its conflict.  Instead of doing that, they continued to represent and

6   advise the District and by doing so violated and continue to violate their duties of

7   undivided loyalty and confidentiality to the Moving Parties.[17]

8        4.2    Both conflict letters say that Baker will continue to represent HCCA

9   regarding the Inyo MSA (not that it will represent the District on that subject),[18]

10  that Baker will represent Vi Healthcare regarding the Vi Transaction,[19] and that

11  Baker will not disclose the Moving Parties' confidential information to the

12  District.[20]  This means that, while for a considerable time HCCA had access to

13  the District's confidential information as its manager, and Dr. Benzeevi and Vi

14  Healthcare had access to that information because of Dr. Benzeevi's ownership of

15  the Moving Parties, the District never has had the right to obtain the Moving

16  Parties' confidential information.  One can conclude that the actions against the

17  Moving Parties, taken initially by Baker and now by Foley, both firms acting with

18

---

19  necessary to further the client's objectives.  The attorney need not advise and
    caution of every possible alternative, but only of those that may result in adverse
20  consequences if not considered.") and *Janik v. Rudy, Exelrod & Zieff*, 119 Cal.
21  App. 4th 930, 940-41 (2004) (relying on *Nichols v. Keller*).

22  [17] I want to underscore that the lawyers' violations did not begin when they filed
    the Motion and Declaration, or when McDow argued in court, all on October 17,
23  2017, but on some earlier date on which the District first asked for advice, or the
    lawyer first recognized the District needed advice, that was adverse to the Moving
24  Parties' interests.

25  [18] This is at paragraph A on p. 2 of each conflict letter.

26  [19] This is in the fifth paragraph on p.2 of the 2017 conflict letter.
    [20] This is at the first paragraph on p. 3 of the 2016 letter and the second complete
27  paragraph on p. 3 of the 2017 letter.

28  3NO8358                              10                         DECLARATION

1　McDow's direct involvement, are based on the Moving Parties' confidential

2　information. The reason is that it is presumed that confidential information was

3　disclosed during a lawyer-client relationship,[21] and as explained in our Supreme

4　Court's opinion in Oasis West, this permits the conclusion that Baker, Foley, and

5　McDow Arelied on confidential information" in advising the District and relied

6　on confidential information in formulating and expressing the District's positions

7　with respect to the Inyo HSA and the Moving Parties and violated the

8　Wutchumna standard by Ataking [the Moving Parties' confidential information'

9　significantly into account in framing a course of action ...."[22]

10　　　　4.3　The two Baker conflict letters attempt to obtain consent from Dr.

11　Benzeevi to represent the District in these Ch. 9 proceedings. In order for a

12　lawyer to obtain client consent to a conflicting representation, it is necessary for

13　the lawyer to disclose all of the facts, and to provide all of the information, the

14　client would need to make an informed decision on whether to grant that consent.

15　This requirement is stated for disciplinary purposes in Rule 3-310(A) of

16　California's Rules of Professional Conduct,[23] and has been discussed in countless

17　reported appellate opinions.[24] This means that, to obtain informed consent, A

18　lawyer must do more than merely dispassionately disclose the relevant facts and

19　explain in abstract terms where the conflict might lie. A lawyer must also

20　evaluate and analyze the risks involved, and give concrete advice about the

21　wisdom of consenting. In providing this evaluation, the law firm must be

22　forthcoming and objective, because otherwise it would be compounding the

23

---

24　[21] *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th, *supra* at 821.

25　[22] *Id.* at 821-23.

26　[23] Rule 1.0.1(e) and (e-1) of California's new Rules.

27　[24] *See, e.g., Sharp v. Next Entertainment Inc.*, 163 Cal. App. 4th 410, 429-31 (2008).

28　3NO8358　　　　　　　　　11　　　　　　　　　DECLARATION

conflict of interest by obtaining consents that are the opposite of 'informed.' This counseling requirement often leads law firms to recommend (or at times even require) that the client obtain an independent evaluation, as a matter of additional protection for the client and prudent self-protection for the law firm against later recriminations. Several of the Model Rules governing lawyer-client conflicts of interest similarly require that such a recommendation be made. It perhaps goes without saying that the lawyer must give the client adequate time to consider the information, and to consult with other counsel about that information if desired." [25]

5.    Summary. For the reasons state above, it is my opinion that the conduct of Foley and McDow amount to an unusually clear example of the violation of a lawyer's duties of undivided loyalty and confidentiality as described in *Wutchumna Water Co. v. Bailey* and as carried forward most recently in *Oasis W. Realty, LLC v. Goldman*. Any action adverse to a former client with respect to the subject of the former representation is prohibited. This is true whether or not the lawyer used any of the former client's confidential information, although it can be concluded from the circumstances that Baker, Foley, and McDow are doing so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed at Los Angeles, CA on October 15, 2018.

Robert L. Kehr

---

[25] Hazard, Hodes & Jarvis, Law of Lawyering '11.08 (4th Ed., 2018-1 Supp. 2014).