6

HAGOP T. BEDOYAN, CSB NO. 131285
**KLEIN, DENATALE, GOLDNER,**
  **COOPER, ROSENLIEB & KIMBALL, LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (661) 326-0418
Email: hbedoyan@kleinlaw.com;

Brandon N. Krueger, Esq. (SBN 221432)(Admission Pending)
*bkrueger@sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)(Admission Pending)
*lcallas@sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for Healthcare Conglomerate Associates, LLC and
Vi Healthcare Finance, Inc.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No.: 16-10015-A-9<br><br>Chapter 9<br><br>DC No.: KDG-4<br><br>Date: November 14, 2018<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>        2500 Tulare Street, Fifth Floor<br>        Department A, Courtroom 11<br>        Fresno, California<br>Judge: Honorable Fredrick E. Clement |

**DECLARATION OF YORAI BENZEEVI, M.D. IN SUPPORT OF MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS ATTORNEYS FOR DEBTOR**

3NO8358          1          DECLARATION

I, YORAI (BENNY) BENZEEVI, M.D., declare as follows:

1. I am an adult over the age of 18.

2. I make this declaration based on my own personal knowledge. If called upon to do so, I could and would testify competently to the matters stated in this declaration.

3. I make this declaration in support of the Motion of Healthcare Conglomerate Associates, LLC ("HCCA") and Vi Healthcare Finance, Inc. ("Vi") to disqualify the law firm of Foley & Lardner and Ashley McDow from representation of Debtor in the above entitled Chapter 9 case.

4. I am the Managing Member of HCCA. HCCA is a California Limited Liability Company with its principal place of business in Los Angeles and was the Manager of debtor Southern Inyo Healthcare District ("Inyo" or "Debtor"). I have overall responsibility for the management of HCCA. I am also the President of Vi, a finance company which extended a line of credit to Debtor in July 2017. I received my medical degree at the University of California, Davis and I am board certified by the American Board of Emergency Medicine and I hold the status of Fellow of the American College of Emergency Medicine. Based on the foregoing positions, I have extensive knowledge of HCCA's contracts and the performance thereunder, the relationship between HCCA, and its affiliate entities, and the law firm of Baker Hostetler, the relationship between Inyo and HCCA, and the relationship between Inyo and Vi.

5. In 2009, I retained the firm of Baker Hostetler ("Baker") to advise and assist me in the formation of a professional corporation. Between 2009 and 2017, Baker's engagement expanded far beyond the initial engagement to the formation of, and legal services to several other health-care related entities, including HCCA, Medflow, PC, Vi, and Tulare Asset Management (collectively, the "Benzeevi Group"). In 2013 and 2014, Baker advised HCCA concerning the drafting and negotiation of a Management Services Agreement ("Tulare MSA") with Tulare Local Healthcare District ("TLHD") and then continued to advise HCCA concerning the management of TLHD while it also undertook to advise TLHD. In 2013, Baker assisted and advised me in forming Medflow, PC. Baker also provided legal services relating

1 to trademark and personnel issues, including drafting numerous employment and independent
2 contractor agreements for physicians and other professionals affiliated with my businesses.
3 Baker essentially functioned as outside general counsel for all of the businesses I was forming
4 and operating between 2009 and 2017, and I communicated with them frequently, and at
5 certain times, multiple times per day. Bruce Greene was my primary contact at Baker, but
6 Ashley McDow and Fahim Farivar also worked on HCCA matters. I communicated significant
7 amounts of confidential information to Baker concerning all aspects of the business of the
8 Benzeevi Group, including financial information and business strategies and goals.
9 Throughout Baker's representation, the Benzeevi Group paid Baker at least hundreds of
10 thousands of dollars for its legal services.

11      6.      In December 2015 and January 2016, Baker advised HCCA in negotiating and
12 drafting a Management Services Agreement with Inyo (the "Inyo MSA"). A true and correct
13 copy of the Inyo MSA is attached hereto as **Exhibit A**. Ashley McDow, a partner at Baker,
14 was heavily involved, along with Mr. Greene, in these negotiations and drafting, with particular
15 emphasis on advising HCCA concerning how the contemplated Chapter 9 proceedings, to be
16 initiated by Inyo, would affect HCCA's rights under the Inyo MSA. I spoke multiple times per
17 day during this period with both Mr. Greene and Ms. McDow concerning the Inyo MSA and
18 shared substantial confidential information with them concerning HCCA's strategies and goals
19 with respect to the Inyo MSA. Ms. McDow was the attorney representing HCCA who
20 appeared on behalf of HCCA at the January 2, 2016 meeting of the Inyo Board where the Inyo
21 MSA, the January 2, 2016 purported "Waiver of Conflict" and the retainer agreement between
22 Baker and Inyo letter (**Exhibits B and C**, discussed in paragraph 7) were all approved. The
23 Inyo Board was represented by separate counsel Scott Nave in negotiating the Inyo MSA.

24      7.      Following execution of the Inyo MSA by Inyo and myself, on behalf of HCCA,
25 Baker began representing Inyo in commencing this Chapter 9 proceeding. In connection with
26 this dual representation, Baker presented to HCCA and Inyo a purported "Waiver of Conflict"
27 letter dated January 2, 2016. A true and correct copy of this January 2, 2016 letter signed by
28 Bruce Greene, but not Inyo or HCCA, is attached hereto as **Exhibit B**. I have been unable to

1  locate a copy of the January 2, 2016 "Waiver of Conflict" letter counter-signed by Inyo and
2  HCCA in the files in my possession. Baker also provided to Inyo an "Engagement of
3  Counsel" letter to Inyo also dated January 2, 2016. A true and correct copy of the January 2,
4  2016 "Engagement of Counsel Letter" is attached hereto as **Exhibit C**. As part of the Board
5  approval process for the Inyo MSA, the "Waiver of Conflict Letter" and the "Engagement of
6  Counsel" Letter were posted at the Inyo facilities, as well as uploaded along with the Agenda
7  for the January 2, 2016 Board meeting where the Inyo Board considered approval of the MSA,
8  the retention of Baker by Inyo, and the purported "Waiver of Conflict." The Inyo MSA was
9  executed by Inyo and HCCA sometime in early January 2016.

10      8. The Inyo MSA required that HCCA provide a Chief Restructuring Officer to
11  manage the hospital. HCCA appointed HCCA representative Alan Germany to serve as Chief
12  Restructuring Officer. Between January 2016 and September 2017, Ms. McDow
13  communicated with Mr. Germany and myself concerning Chapter 9 issues for Inyo. I
14  understood that after Baker began representing Inyo in the Chapter 9 proceedings, Baker would
15  continue to advise HCCA concerning the Chapter 9 proceedings and with regard to the Inyo
16  MSA, and in fact Baker did exactly that. Baker and Ms. McDow continued to advise HCCA
17  with regard to its duties and responsibilities as the manager of Inyo and in relation to the
18  Chapter 9 proceedings, Baker also continued to perform legal services on other matters it
19  continued to handle for HCCA and the Benzeevi Group. At no time was I told that if the
20  interests of HCCA and Inyo became in conflict, that Baker could continue to represent Inyo
21  adverse to any member of the Benzeevi Group. To the contrary, it was my understanding that
22  if an actual conflict developed, Baker would terminate its representation of Inyo and continue
23  representing the Benzeevi Group, including as to the Inyo MSA.

24      9. In the summer of 2017, Baker undertook another project related to Inyo, the
25  formation of Vi Healthcare Finance, Inc. ("Vi"). Baker drafted the formation documents for
26  Vi and the transaction documents whereby Vi extended a line of credit to Inyo, and Baker
27  advised me concerning this entity. I am the President of Vi. In connection with Vi, Baker
28  provided another purported "Waiver of Conflict" Letter dated July 19, 2017. A true and correct

1 copy of this letter, signed by Bruce Greene of Baker, as well as myself on behalf of HCCA and
2 Vi, and Inyo Board member Richard Fedchenko, for Inyo, is attached hereto as **Exhibit D**.

3     10. In the summer of 2017, a dispute erupted between HCCA and the Inyo Board
4 concerning the financial situation of Inyo and HCCA's management of Inyo.

5     11. On September 29, 2017, I received a letter from Mr. Greene at Baker stating that
6 Baker was commencing termination of its representation of all entities of the Benzeevi Group.
7 A true and correct copy of Baker's September 29, 2017 letter is attached hereto as **Exhibit E**.
8 Neither orally, nor in this September 29, 2017 letter, did Baker disclose to me that an actual
9 conflict had developed. Baker also did not seek a waiver of an actual conflict between any
10 entity of the Benzeevi Group and Inyo. Baker did not seek my consent to continue representing
11 Inyo and had it requested such consent I would have declined to grant such consent. Baker's
12 conduct was directly contrary to my expectation and understanding that Baker would continue
13 to represent the Benzeevi Group if a conflict developed with Inyo.

14     12. Then, approximately two and a half weeks later, on October 17, 2017, Ms.
15 McDow filed on behalf of Inyo in the Chapter 9 proceedings an Emergency Motion seeking
16 rejection of the Inyo MSA which was highly prejudicial to the Benzeevi Group. I received no
17 advance notice that Baker intended to file this motion, that Ms. McDow would support the
18 motion with her own declaration, or that Ms. McDow would appear at the hearing on this
19 Emergency Motion and make statements adverse to the interest of the Benzeevi Group. Instead,
20 I received an e-mail the same day the motion was filed that a hearing would occur on the
21 Emergency Motion that same day.

22     13. Prior to the problem arising with Inyo, a dispute had arisen between TLHD and
23 HCCA. This dispute arose after a new Board was elected for TLHD in November 2016. Baker
24 had represented HCCA with regard to the Tulare MSA both before and after execution of the
25 Tulare MSA and also represented TLHD. However, in the summer of 2017 the TLHD claimed
26 to have retained new counsel, the McCormick Barstow firm, to replace Baker. Mr. Greene of
27 Baker disputed the TLHD Board's authority to hire new counsel. One example of this position
28 is reflected in an e-mail from Mr. Greene to several members of the TLHD Board dated August

1  8, 2017 wherein he stated "any law firm that the three of you may have selected will not be
2  considered to lawfully represent the District." A true and correct copy of Mr. Greene's August
3  8, 2017 e-mail is attached hereto as **Exhibit F.**

4    14.    When Ms. McDow left Baker and joined the firm of Foley & Lardner, she did
5  not seek my consent to have Foley & Lardner or herself, represent Inyo in these proceedings.
6  Had my consent been sought, I would not have granted consent for Foley or Ms. McDow to
7  represent Inyo.

8    I declare under penalty of perjury that the foregoing statements are true and correct and
9  that if called as a witness herein I could and would competently testify thereto, and that this
10 declaration was executed on October 14, 2018 at Los Angeles, California.

YORAI BENZEEVI, M.D.