1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  **BAKER & HOSTETLER LLP**
   11601 Wilshire Boulevard, Suite 1400
3  Los Angeles, CA  90025-0509
   Telephone:    310.820.8800
4  Facsimile:    310.820.8859
   Email:        amcdow@bakerlaw.com
5                mdelaney@bakerlaw.com

6  Attorneys for Debtor
   SOUTHERN INYO HEALTHCARE DISTRICT

7

8              UNITED STATES BANKRUPTCY COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                    FRESNO DIVISION

11
   In re                          | Case No.: 2016-10015
12
   SOUTHERN INYO HEALTHCARE        | Chapter 9
13 DISTRICT,
                                   | Doc. No.:  BH-19
14         Debtor.
                                   | **DECLARATION OF ASHLEY M.**
15                                 | **MCDOW IN SUPPORT OF THE**
                                   | **EMERGENCY MOTION (1) FOR**
16                                 | **AUTHORITY TO IMMEDIATELY**
                                   | **TERMINATE HCCA MANAGEMENT**
17                                 | **AGREEMENT OR, IN THE**
                                   | **ALTERNATIVE, FOR AUTHORITY TO**
18                                 | **MODIFY THE TERMS OF THE HCCA**
                                   | **MANAGEMENT AGREEMENT IN**
19                                 | **ORDER TO DESIGNATE THE BOARD**
                                   | **AS THE SOLE SIGNATORY ON ALL**
20                                 | **DISTRICT BANK ACCOUNTS AND (2)**
                                   | **TO CONTINUE HEARING ON SECOND**
21                                 | **AMENDED DISCLOSURE STATEMENT**
                                   | **AND ASSOCIATED FILING**
22                                 | **DEADLINES**

23                                 | Proposed Hearing:
                                   | Date:    October 17, 2017
24                                 | Time:    2:00 p.m.
                                   | Place:   Dept. A, Ctrm. 11
25                                 |          U.S. Bankruptcy Court
                                   |          2500 Tulare Street
26                                 |          Fresno, CA 93721

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDOW DECLARATION ISO MOTION TO TERMINATE HCCA MANAGEMENT AGREEMENT OR RESTRICT BANK ACCOUNT ACCESS AND TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT

EXHIBIT S
611517936.2
248

I, Ashley M. McDow, hereby declare:

1.     I am an attorney duly admitted to practice before this court.  I am a partner with the law firm of Baker & Hostetler LLP, general insolvency counsel for the Southern Inyo Healthcare District in the above-captioned bankruptcy case.  I submit this declaration in support of the contemporaneously filed *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "Motion").  Unless otherwise defined herein, all capitalized terms and phrases shall have the same meaning ascribed to them in the Motion.

2.     Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if call as a witness, could and would competently testify to the same.

3.     On or about Thursday, October 5, 2017, I obtained copies of the bank statements and transactional records for the District's bank accounts.  Upon analyzing the Bank Records, I noted several inconsistencies with certain reports and representations previously provided by HCCA and numerous transactions not authorized by the District Board.

4.     With respect to the latter, I noted numerous transfers by and between the District and Tulare, which is another California local healthcare district managed by HCCA.  More precisely, following the Petition Date, it appears that HCCA caused the District to transfers funds totaling more than $3,000,000.00 to Tulare.  The Bank Records lack any indication of the reason(s) for the transfers.  I also noted a significant transfer from the District to Tulare in late 2016 of approximately $700,000.00 allegedly on behalf of HCCA (according to the check register prepared by HCCA and presented to the District board.  I am not aware of any board approval for these transactions.  Indeed, until reviewing the Bank Records, I was unaware of most, if not all, of the suspect transactions.

5.     Depending on how the transfers between the District and Tulare are categorized (namely, whether Tulare somehow acted as the conduit for funds loaned by HCCA to the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT S
611517936.2
249

District), the Bank Records indicated that Tulare may owe the District more than $418,000.00. It appears that the amounts owing to the District remained unpaid as of the commencement of the Tulare Bankruptcy.

6.    In addition to the transfers involving Tulare, I also noted that the Bank Records contradicted information that was inconsistent with the financial reports and information that have been provided to the District board by HCCA. More precisely, in late 2016, it appears that HCCA caused the District to transfer approximately $700,000.00 to Tulare on behalf of HCCA, and represented to the board that this payment was in satisfaction of certain amounts owing under the line of credit extended by HCCA to the District. The Bank Records, however, demonstrate that the line of credit had a zero dollar ($0.00) balance as of the date of the $700,000.00 transfer. Accordingly, it appears that these funds were transferred to Tulare on behalf of HCCA for the purpose of satisfying a portion of the then outstanding management fee of HCCA rather than paying down the line of credit with HCCA.

7.    A portion of the funding for the District's operations is derived from state and federal programs, including, without limitation, Medicare and Medicaid. As I understand it, in order to receive the maximum amount of governmental funding, the District is required to provide an intergovernmental transfer ("IGT") of funds to the State of California, which are then matched, two-to-one, by the federal government and returned to the District. The Bank Records indicate that HCCA failed to make an IGT payment on behalf of the District in or about September, 2017.

8.    A true and correct copy of the motion filed by Tulare in the Tulare Bankruptcy seeking authority to terminate and reject its management agreement with HCCA is attached hereto as **Exhibit B**.

9.    On or about October 11, 2017, the District held a special board meeting to discuss, among other things, the findings from the evaluation of the Bank Records and whether to remove HCCA through the rejection and/or termination of the Management Agreement. Based on the available information and documentation, the District board concluded that HCCA had engaged in a series of improper actions, including, without limitation, (a) misusing and misappropriating

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

regarding the financial dealings of the District, (c) concealing material information regarding the financial dealings of the District, and (d) failing to comply with the terms of the Management Agreement by, among other things, failing to provide complete and accurate financial reports, failing to perform a myriad of administrative duties (including pursuing the bond), and failing to facilitate the preparation of audited financial statements.

10.     The removal of HCCA has several implications under the forthcoming Second Amended Plan and Second Amended Disclosure Statement. At present, the Second Amended Plan and Second Amended Disclosure Statement provide that HCCA will serve as the post-confirmation management for the Facilities and that the claims of HCCA shall be treated as professional and/or administrative claims. Accordingly, the removal of HCCA will require the District to revise significant portions of the Second Amended Plan, Second Amended Disclosure Statement, and supporting financial projections. More precisely, the removal of HCCA necessitates the inclusion of additional disclosures in the Second Amended Disclosure Statement regarding, among other things, alternate management, the costs associated with alternate management, the treatment of HCCA, potential damages associated with the rejection of the Management Agreement, and potential claims against HCCA related to what appears to be blatant mismanagement of the District in violation of the Management Agreement and applicable law. The removal of HCCA also requires modifications to the financial projections to account for the altered treatment of HCCA on the cash flow analysis and the proposed distributions to creditors under the Second Amended Plan, including the percentage distribution payable to general unsecured creditors.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of October, 2017, at Calabasas, California.

/s/ Ashley M. McDow
Ashley M. McDow

- 4 -

MCDOW DECLARATION ISO MOTION TO TERMINATE HCCA MANAGEMENT AGREEMENT OR RESTRICT BANK ACCOUNT ACCESS AND TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT

611517936.2
EXHIBIT S                                   251

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT B

5

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:       rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:   (559) 433-1300
Facsimile:    (559) 433-2300
E-mail:       mandy.jeffcoach@mccormickbarstow.com

District Counsel

## IN THE UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>       Debtor.<br><br>Tax ID #:   94-6002897<br>Address:   869 N. Cherry Street<br>          Tulare, CA 93274 | CASE NO.   17-13797<br><br>DC No.: WW-1<br><br>Chapter 9<br><br>Date:    October 12, 2017<br>Time:    10:30 a.m.<br>Place:    2500 Tulare Street<br>       Fresno, CA 93721<br>       Courtroom 13<br>Judge:    Honorable René Lastreto II |

## MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)

TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY

JUDGE:

MOTION FOR AUTHORIZATION TO REJECT EXECUTORY
CONTRACT (HCCA)
EXHIBIT S
36894-00000 4742395.1
-1-
253
00158885-gaa-10.10.2017

Tulare Local Healthcare District, dba Tulare Regional Medical Center, a California Health Care District, the Debtor ("Debtor" or "District"), hereby moves this Court pursuant to 11 U.S.C. §§ 365 and 901, and Bankruptcy Rules 6006 and 9014, for an Order Rejecting Executory Contract as described below. In support of its Motion, the Debtor represents as follows:

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding to 28 U.S.C. §157(b)(2). The statutory predicates for the relief sought in this Motion are §§ 365, 901 and 105 of title 11 of the United States Code (the "Bankruptcy Code"), as complemented by Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

2.     This case was filed as a Chapter 9 case on September 30, 2017 ("Petition Date").

3.     The Debtor is a California healthcare district located in Southern Western Tulare County.

4.     The Debtor is in the business of owning a hospital and other healthcare facilities which are all currently under the domination and control of Healthcare Conglomerate Associates, LLC ("HCCA").

5.     The Debtor entered into an integrated Contract involving four sub agreements consisting of Management Services Agreement, Interim Joint Operating Agreement, Joint Operating Agreement and Option ("Contract") on May 29, 2014, with HealthCare Conglomerate Associates, LLC ("HCCA"). The Contract is attached to the Declaration of Kevin B. Northcraft as Exhibits A1, A2, A3 and A4.

6.     The Contract is comprised of a several part agreement by which a prior board of directors for the District agreed to turnover and relinquish all control over the District's operations and management, including operation of its hospital and healthcare facilities to HCCA on the basis of a one sided, oppressive, overly expensive, unconscionable and unlawful agreement.

///

7.     The Debtor has analyzed the Contract and determined in its sound business judgment, and as declared by Kevin B. Northcraft, the Debtor's Chairman of the Board, that the pricing and terms contained in the Contract are grossly unfavorable to the District.  Also, the Debtor has determined that it does not need this Contract to achieve a successful reorganization because, *inter alia*, the Debtor has other viable alternatives at more competitive prices and much more favorable terms.

8.     Since execution of the Contract, the relationship between the Debtor and HCCA has been broken beyond repair and each accuses the other of breach of the Contract and wrongdoing.  On October 6 and 9, 2017, and prior dates, HCCA declared its intention to cease paying its employees which would devastate the ability of the hospital to continue to operate.  HCCA's failure to timely fund payroll and its threats to engage in conduct which would ensure closure of the hospital cause uncertainty amongst the staff and the public, and further destabilize the hospital and its operations. The Contract must be rejected so the Debtor can engage a different operator and manager.

9.     On or about October 9, 2017, the Board directed that the District terminate all of business relationships with HCCA and that the District reject the subject Contract pursuant to Section 365 as incorporated by Section 901.

10.     The Debtor has determined that the Contract is unfavorable to the District and not needed in its restructured operations and seeks authorization to reject the Contract pursuant to Section 365.  The Contract, for instance, contains a number of unfavorable conditions, including but not limited to: Debtor irrevocably waiving any right to terminate the Contract, Debtor not having access to the hospital, clinic or other facilities unless express permission is given by HCCA, not having access to its bank accounts or financial information, not having access to its data systems utilized in connection with the operations of the hospital unless HCCA authorizes the same, Debtor being unable to criticize the services being provided by HCCA, Debtor maintaining the responsibility for the care of patients but not having any rights in the hiring and firing of hospital staff, paying HCCA 130% of the amount of leased employee

compensation, an irrevocable appointment of HCCA as Debtor's attorney in fact, an agreement not to reject the Contract in a Chapter 9 proceeding, a monthly payment of $225,000 (which increases every year) to HCCA for services, and a waiver of all liability in favor of HCCA. See Exhibit "A" which is a summary of the unfavorable contract provisions. The rejection will allow the District to regain control over its assets and operations and permit it to engage with a qualified successor operator of the hospital. See the Declaration of Kevin B. Northcraft in support of the Motion. The Debtor asserts that the rejection is in the best interest of the Debtor, is supported by sound business judgment and consistent with the District's powers to exercise control over its own assets and operations as a governmental entity.

11. By this Motion, the Debtor seeks entry of an order pursuant to §§ 901, 365 and 105(a) of the Bankruptcy Code authorizing and approving the rejection of the Contract. The Debtor requests that rejection be made effective as of September 30, 2017, the Petition Date.

12. In order to facilitate the transition of the operation of the hospital and health care facilities, the Debtor requests that the Court enter an order rejecting the Contract effective as of September 30, 2017, with the understanding that the Debtor is willing to enter into an arrangement acceptable to the Debtor where HCCA would cooperate in an orderly and peaceful transition to a new operator for a transitional period of 30 days post rejection (the "Transition period")[1].

13. Section 365(a) of the Bankruptcy Code provides that a Chapter 9 debtor, "subject to the court's approval, may assume or reject any executory contract... of the debtor." 11 U.S.C. § 365(a).

14. It is well-settled that the business judgment rule applies to a debtor's decision to reject an executory contract or unexpired lease; absent a showing of gross abuse or bad faith, the Debtor's decision must stand. This is especially true as here

---

[1] The Debtor has made arrangements with Wipfli LLP/HFS Consultants to step in and assume control over the operations of the hospital and healthcare facilities upon rejection of the Contract and has arranged needed emergency financing.

where the Debtor is a governmental entity and the Court does not have jurisdiction or powers over the District's property or assets.

15.     Upon review and analysis of the Debtor's obligations under the Contract, the Debtor has concluded that the relief requested in this Motion is in the best interests of the Debtor, its estate, its creditors, patients and citizens. The Contract is simply unconscionable, in violation of public policy, unfavorable, burdensome, overly expensive and contrary to the duties of elected officials to manage the affairs of the District is a prudent and fiduciary sound manner. It is more economic for the Debtor to cover operations through alternative arrangements at current market prices which are substantially lower than the Contract prices and terms. The Contract imposes excessive cost and expense to the Debtor without corresponding benefits. Thus, the Contract is neither needed nor desirable for the Debtor's continued operations.

16.     In short, the Debtor has determined, in the reasonable exercise of its sound business judgment, as a governmental entity operating in Chapter 9 that the Contract is burdensome and provides no economic value to the Debtor. Accordingly, the Debtor requests authority to reject the Contract effective as of September 30, 2017.

WHEREFORE, the Debtor respectfully requests entry of an Order (a) authorizing the Debtor to reject the Contract as of September 30, 2017 and (b) granting Debtor such other and further relief as this Court may deem just and proper.

Dated: October _10_, 2017          WALTER WILHELM LAW GROUP,
                                   a Professional Corporation

                          By:     _____
                                   Riley C. Walter, Attorneys for Debtor,
                                   Tulare Local Healthcare District

                                   and

                                   McCormick BARSTOW, LLP, District Counsel

12

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:        rileywalter@w2lg.com

Chapter 9 Counsel

MCCORMICK BARSTOW, LLP
Timothy L. Thompson #133537
Mandy L. Jeffcoach #232313
Niki E. Cunningham #277976
7647 N. Fresno Street
Fresno, CA 93720
Telephone:   (559) 433-1300
Facsimile:    (559) 433-2300
E-mail:        mandy.jeffcoach@mccormickbarstow.com

District Counsel

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #:  94-6002897<br>Address:   869 N. Cherry Street<br>          Tulare, CA 93274 | CASE NO.  17-13797<br><br>DC No.: WW-1<br><br>Chapter 9<br><br>Date:   October 12, 2017<br>Time:   10:30 a.m.<br>Place:   2500 Tulare Street<br>        Fresno, CA 93721<br>        Courtroom 13<br>Judge:  Honorable René Lastreto II |

**DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT OF MOTION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACT (HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

I, Kevin B. Northcraft, hereby declare and represent as follows:

1.      I am the elected chairman of the board of directors of Tulare Local

Healthcare District ("District"), a California healthcare district covering a large part of Southwestern Tulare County. The District serves over 90,000 people. It is the only hospital in the District.

2.    The District has been embroiled in political and financial controversies for many years and this has impeded the ability of the District to move forward in providing quality healthcare to the citizens of the District.

3.    I am informed and believe that the controversies began in approximately 1994 when Dr. Pramood Kumar was appointed to the board to fill a vacancy. From and after that time, there have been significant controversies among the citizens and voters as to the proper management and control of the hospital. There have been deep divides within the community.

4.    For many years the board was controlled by Dr. Kumar. During that time the District embarked upon an ill-fated decision to borrow money to construct a hospital tower.

5.    The District borrowed $85 million in general obligation bonds and additional revenue bonds for the tower construction project but it was soon consumed by construction cost overruns, litigation and disputes over the proper use of bond proceeds. During this time, many citizens in the District began to express concern and dismay as to the management of the District's operations by the Kumar board.

6.    A historical overview and timeline prepared by me, based on information which has been provided to me, of the various controversies, missteps and confrontations is as follows:

**Tulare Local Healthcare District, dba Tulare Regional Medical Center**

**History/Timeline of Events Leading to Financial Crisis**

I am informed and believe that the District is a public agency, formed in 1945 under the State of California Local Healthcare District Law. The geographic area covered by the District encompasses a very large area in the Southwestern part of Tulare County and includes the City of Tulare. The permanent resident population of the District is estimated to be approximately 90,000 persons. The District provides healthcare services primarily to individuals who reside on the local area. The District's hospital is the only hospital in the District.

The voters of the District elect the Board of Directors by districts.

The District is governed by a five-member Board of Directors. The current members of the Board are Kevin B. Northcraft, Mike Jamaica, Senovia Gutierrez, and Xavier Avila. There is one vacant seat. On October 4, 2017, the Board approved the hiring of HFS to act as the Board's advisor and head the District's crisis management team, which is headed by Sanford Haskins and Rick Gianello of HFS. The fact that the Board is elected by the public causes both problems and opportunities that are generally associated with local government entities. Its governing body and senior staff undergo much closer public scrutiny and must devote more time to public affairs than would be the case if it were a private entity. On the other hand, as a local public entity, local residents tend to be supportive of the District.

As of the signing of this Declaration, day-to-day operations of the hospital were under the control of HCCA under various agreements. There have been and continue to be major disputes between TRMC and HCCA, briefly discussed below.

I am informed and believe that like most rural hospitals in California, the District faces immense financial pressures.

There has also been intense community involvement and disagreement over a 15 year management contract with HCCA a prior Board entered into on May 29, 2014, discussed below.

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT   36894-00000 4742360 1
OF MOTION FOR AUTHORIZATION TO REJECT     -3-
EXECUTORY CONTRACT (HEALTHCARE     260     00158917-gaa-10.10.2017
CONGLOMERATE ASSOCIATES, LLC)

The District's residents desire and require nearby emergency, urgent and acute care services. To provide these services, I am informed and believe that the District must actively participate in developing and maintaining a panel of primary care and specialty physicians within the District and maintain and upgrade its medical, obstetrics/gynecology, imaging, laboratory equipment, physical plants, and rural health clinics.

Under California law, hospitals are required to treat any person who presents at the emergency room without regard to the patient's ability to pay for services. The District accepts all patients regardless of their ability to pay. The District absorbs the costs of medical care for uninsured patients who account for a very large percentage of its volume.

A patient is classified as a charity patient by reference to certain established policies of the political district. Essentially, these policies define charity services as those services for which no payment is anticipated.

The District has been contending with significant disruptions in its governance over several years. Based on my information and belief, a chronology that explains this political unrest and which lead to management turnover is as follows:

- 1994 - Parmood Kumar is appointed to the board of directors of Tulare Local Healthcare District, dba Tulare Regional Medical Center ("TRMC").

- November 2005 - Tulare voters pass a bond measure to build a tower expansion at TRMC.

- 2005 – 2010 - TRMC tower planning expands and the cost of the project exceeds original projections while hospital revenue declines.

- May 2010 – TRMC tower construction finally breaks ground and Shawn Bolouki, CEO at the time, tries to speed up the construction project.

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT
OF MOTION FOR AUTHORIZATION TO REJECT
EXECUTORY CONTRACT (HEALTHCARE
CONGLOMERATE ASSOCIATES, LLC)

36894-00000 4742360.1

-4-
261

00158917-gaa-10.10.2017

- January 2014 - TRMC board of directors, Parmod Kumar and Sherrie Bell, vote to hire Healthcare Conglomerate Associates ("HCCA") to run the hospital and Bolouki leaves as CEO. HCCA promises to finish tower expansion and get hospital on stable financial ground. In May 2014 the TRMC board signs a 15-year management agreement with HCCA.

- November 2015 - Due to low revenue vendor invoices continue to rack up including Cardinal Health, a large drug supplier, to whom the hospital incurred a debt of about $830,000 from Nov. 2015 to May 2016. TRMC later took out a loan to repay the company.

- Between 2014 and 2016 various vendors, suppliers and contractors file lawsuits claiming unpaid bills and services.

- March 2016 – HCCA extends a $200,000 line of credit from TRMC to the Southern Inyo Healthcare District which HCCA also manages. The line of credit was extended without TRMC board approval. In July 2016 this line of credit was extended to a $500,000 limit.

- 2016 - The State of California issues citations to HCCA and TRMC in patient deaths and surgical errors.

- September 1, 2016 – TRMC board approves taking out a $800,000 line of credit with no specific purpose at the time. Any use of these funds were to require further board approval. It was later revealed these funds were to be used to repay Cardinal Health.

- August 2016 - Voters vote down bond measure to secure financing to complete tower construction project and the hospital is forced to make significant layoffs.

- October 2016 – Dr. Benny Benzeevi of HCCA presents to the board that the hospital had reached 30 months of consecutive profits and states that the hospital has the ability to complete the tower expansion project but only two months later, in December 2016, the hospital's operating expenses become past due.

- November 2016 - Kevin Northcraft and Mike Jamaica are elected to TRMC board of directors.

- March 2017 – TRMC board votes to allow HCCA to seek and obtain a $79 million loan to complete the tower expansion.

- March 2017 – July 2017 certain vendors and suppliers continue to file suits for unpaid invoices.

- May 18, 2017 - HCCA donates $10,000 to a group working to prevent the recall of HCCA supporter and board member Dr. Parmod Kumar. Dr. Parmod Kumar was recalled by voters in July 2017. Senovia Gutierrez is voted in to replace Kumar on the board of directors.

- June 2017 – Board of directors vote to allow HCCA to again seek and obtain a $22 million loan to refinance certain debt and fund operations.

- July 2017 – Employee paychecks begin to bounce and some physicians claim to have gone without pay for months.

- July 27, 2017 – The majority of the Board vote to rescind any authority given to HCCA to seek any loans on behalf of TRMC. HCCA claims this vote is invalid and asserts Gutierrez is not recognized as a board member, despite her election.

- September 27, 2017 – Senovia Gutierrez is officially seated and recognized by TRMC board of directors.

- September 2017 - TRMC board issues and disputes with HCCA cause credit rating to downgrade.

- September 8, 2017 -  HCCA issues a letter to TRMC claiming TRMC owes it $8 million including expenses and charges incurred in connection with "leased" employees. HCCA also claims TRMC is $526,066.86 past due in management fees.

- September 28, 2017 – HCCA is unable to make payroll and considers shutting down all operations due to mounting significant financial issues and lack of available funds.

- September 29, 2017 – TRMC board of directors unanimously vote to seek Chapter 9 bankruptcy protection.

1

2 • September 30, 2017 – Petition for relief under Chapter 9 is filed.

3

4 • October 5 and 9, 2017: HCCA informs TRMC it will lay off or suspend its employees working at the hospital as it is unable to pay them.

5

6 • October 9, 2017: TRMC authorizes counsel to file the necessary paperwork with the bankruptcy court to reject the HCCA contract.

7

8    Providing quality health services to District residents is the primary goal of the

9 District and necessary to the community, in part, because of the relative rural location of

10 the District.    The residents need emergency room, inpatient, obstetric and other

11 ancillary services.  The critical nature of the need for health care services requires the

12 Board to place a high priority on the continued financial viability of the District.

13

14                          **District's Financial Problems**

15    At the time the District's Board of Directors considered filing a Chapter 9 petition,

16 the District was facing a liquidity crisis that threatened its continued operations and was

17 concerned that preferential transfers were being made.  The Board concluded that filing

18 a Chapter 9 was the only available remedy to avoid continued litigation with and

19

20 collection action by creditors, while, at the same time, allowing the District to protect its

21 assets, preserve its business operations and continue providing uninterrupted

22 healthcare services to its patients while it developed a comprehensive business plan.

23 The task of restructuring the District is particularly complicated and time consuming

24 because of the multitude of financial and contractual relationships inherent in the

25 hospital enterprise. The decision to file Chapter 9 came only after the District attempted

26 alternatives that would have avoided such a filing as the District was told by HCCA it

27

28 was nearly out of cash and unable to meet payroll or purchase vital medical supplies.

---

I am informed and believe that in about May 2014 these various controversies reached a fevered pitch when the Kumar dominated board entered into a entered into a very unfavorable contract ("Contract") with Healthcare Conglomerate Associates, LLC ("HCCA"). A copy of these four integrated agreements are attached as Exhibits A1, A2, A3 and A4. By these contracts the Kumar dominated board sold out the District and gave all control over the District's operations and finances to HCCA. As a small example, members of the board were not even allowed to enter on the District's property without the consent of HCCA. The board was denied meaningful financial information. The Contract requires the District to pay HCCA a management fee of about $8 million per year. All of the District's money was turned over to HCCA. [I believe the District has an account but is swept every night by HCCA through the sweeping function, but we do not know where these accounts are and HCCA will not tell us.] After HCCA took control of the District's operations and finances, it insisted on pressing forward in a plan to obtain new borrowing to complete the hospital tower. The 2016 vote was overwhelmingly against the new bond issuance and the campaign pitted parts of the community against one another deepening the divide.

7.    Shortly thereafter Dr. Kumar was recalled by the voters by a large margin and shortly thereafter Senovia Gutierrez was elected on June 27, 2017. Gutierrez was aligned with myself and Director Mike Jamaica in seeking to regain control over the District's finances and governance. However the election did not end the controversy or interference by HCCA in the District's governance. Upon her election Gutierrez (and the rest of the board) was told by HCCA and then District Counsel who reported only to HCCA and not to the board) that she had not been "properly seated" and during this time HCCA sought to borrow money against the District's assets based on a consent

previously given by the Kumar board, but knowing that if Gutierrez were to be seated the consent would be withdrawn and demands for accountability would be given to HCCA.

8.     HCCA and its hand-picked counsel (paid from District funds but reporting only to HCCA)  continued to thwart and deny Gutierrez her seat on the board until September 15, 2017 when the District Attorney of Tulare County filed a Petition for Alternative Writ of Mandate which thereafter forced HCCA to cease opposing election her and she was officially seated on September 27, 2017, after an unconscionable delay of sixty days.  I am informed and believe that the delay in seating Ms. Gutierrez as a board member was because HCCA had the ulterior motive of attempting to find financing to pay themselves for services claimed to have been rendered.  I understand that HCCA paid itself and its lawyers a substantial amount of money instead of using that money to keep the hospital operational.

9.     Upon having a now functioning board of directors, the District turned its attention, again, to the one sided agreement that the Kumar board had entered into with HCCA on May 29, 2014.   It should be noted that even before Director Gutierrez was seated on September 27, 2017, Director Jamaica and I had been insisting upon receiving current, meaningful financial information from HCCA. Among the things that we requested were: 1. Tell us where our District's money is deposited? 2. Where are the District's money swept to and who has signatory power? 3.Who do we owe, how much and what is the aging of these accounts payable? 4. What do we owe HCCA and what makes up those charges? 5. What is owed to the District on account of on account of our accounts receivable and what is the status of collections? 6. What is our cash position and what are our short-term needs?

10.     Amazingly, to this day HCCA has refused to supply any of this vitally needed information to the elected representatives of the District. This has thwarted us in the administration and governance of the District and imperiled it financial survival.

11.     At the present time the board of directors is completely in the dark in terms of what is going on in the hospital, including revenues, debts, patient counts, etc. No material financial information has been provided to us about the condition of the Hospital. In fact, it appears as if the Board has been deceived about the financial condition of the hospital as prior to the Board Meeting on September 27, 2017, HCCA was reporting the hospital's profits were increasing.  However, at a public meeting held on September 27, 2017, which I attended, the CFO of HCCA publically stated and told the assembled crowd that the patient census had dropped to an ultra-low level, there was "no cash", accounts payable were at least $26 million and there was at least $25 million in uncollected charges.

12.     In recent days, we have also learned through third parties that the District may owe its utility company $139,000 and is being threatened with a power shut off.  I am also informed and believe that the District owes an important billing service no less than $2,000,000.   It owes its preferred provider of supplies and equipment about $400,000.  Physicians and medical groups have not been paid. The list goes on and on, but we do not know because HCCA will not tell us what we owe.

13.     At the public board meeting held on September 27, 2017 the CEO of HCCA, Benny  Benzeevi, M.D., publicly stated that the situation was so dire that the hospital had "only two options". Either accept a loan that HCCA had negotiated or close. However, Dr. Benzeevi did not inform us of the amount of the loan, the lender, the term of the loan, the collateral, or any other vitally needed details as to the supposed loan. He did not provide any terms or conditions as to the loan whatsoever.

14.    I have over 30 years' experience in municipal governance including 10 years as City Manager of the City of Tulare from 1995 to 2005. It is my professional opinion, and based on long professional experience, that the Contract between HCCA and the District is very unconscionable, unfavorable, void as to public policy, burdensome, over expensive and improperly interferes with the legally required governance of the District.  The District does not need nor want this Contract.  It has alternatives that are much more favorable.

15.    On September 28, 2017 the board was informed that only a few of the of the essential HCCA employees who operate the hospital were paid for their services, leaving a great number of nurses and other healthcare personnel unpaid.  The lifeblood of a hospital are the dedicated healthcare professionals who give care and comfort to the patients.  Nonpayment of employees threatened the survival of the hospital.

16.    I am informed and believe that on September 29, 2017 HCCA's CFO assembled groups of employees and told them that if the District did not accept the loan HCCA had negotiated and described to the board, the hospital would be shut down. This CFO was personally present at the meeting held the night before and he knew Dr. Benzeevi had NOT made such a disclosure to the board. He lied and told the employees that HCCA had presented the loan details and that the board had refused to consider it when, in actuality, the board did not receive any information about the so-called loan.

17.    From and after September 29, 2017  the District and HCCA reached out to each other, through counsel, and attempted to avoid a crisis. Proposals were exchanged and none were found to be mutually agreeable.

18.    Finally, on October 6 at 6:12 PM, the District was informed that unless agreement was reached by 8 AM on October 7, 2017, HCCA would proceed to

1  terminate or suspend its employees.

2      19.    Having been unable to reach an acceptable agreement for a turnover of

3  District governance and operations, on October 9, 2017 the board met and discussed at

4  length its available courses of action and reviewed, again, the Contract. The board (the

5  undersigned, Avila and Jamaica) voted to instruct its counsel to seek rejection and

6

7  termination of the Contract so the District can recover control over the District's assets,

8  finances and operations and so the Board can fulfil its fiduciary and statutory duties.

9  Ms. Gutierrez was not present as she was out of the country.

10      20.    On October 4, 2017 the District made arrangements with its Crisis

11  Manager, HFS, to assume control over hospital operations if HCCA is terminated/

12  rejected and HFS made arrangements with a healthcare provider of significant size,

13  located in Fresno, to provide emergency interim management of the District's

14  healthcare facilities and provide emergency funding to keep the hospital open for an

15

16  interim period of time. The terms are still being negotiated.

17      21.    The District respectfully requests that the Court authorize the District to

18  reject the HCCA contract.

19      I am over the age of 18 and if I were called as a witness in connection with this

20  proceeding I would and could testify as is set out in this declaration. I so declare under

21  penalty of perjury this blank day of October 10th, 2017 at Tulare, California.

22

23

24  Kevin B. Northcraft

25

26

27

28

DECLARATION OF KEVIN B. NORTHCRAFT IN SUPPORT 36894-00000 4747360 1
OF MOTION FOR AUTHORIZATION TO REJECT    -12-
EXECUTORY CONTRACT (HEALTHCARE                         00158913-gaa-10 10.2017
CONGLOMERATE ASSOCIATES, LLC)

4

WALTER WILHELM LAW GROUP
A Professional Corporation
Riley C. Walter #91839
Matthew P. Bunting #306034
Danielle J. Bethel #315945
205 East River Park Circle, Ste. 410
Fresno, CA 93720
Telephone: (559) 435-9800
Facsimile: (559) 435-9868
E-mail: rileywalter@w2lg.com

Attorneys for Chapter 9 Counsel

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Timothy L. Thompson, #133537
 *tim.thompson@mccormickbarstow.com*
Mandy L. Jeffcoach, #232313
 *mandy.jeffcoach@mccormickbarstow.com*
Nikole E. Cunningham, #277976
 *niki.cunningham@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:   (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for District Counsel

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 17-13797 |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER , | DC No.:  WW-1 |
| | Chapter 9 |
| Debtor. | Date:    October 12, 2017 |
| | Time:    10:30 a.m. |
| Tax ID # 94-6002897 | Place:   2500 Tulare Street |
| Address:    869 N. Cherry Street | Fresno, CA 93721 |
| Tulare, CA 93274 | Courtroom 13 |
| | Judge:   Honorable Rene Lastreto II |

**DECLARATION OF RICHARD GIANELLO IN SUPPORT OF MOTION FOR
AUTHORIZATION TO REJECT EXECUTORY CONTRACT
(HEALTHCARE CONGLOMERATE ASSOCIATES, LLC)**

I, Richard A Gianello, declare:

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

EXHIBIT S     270

1         1.    I am a Partner at Wipfli LLP/HFS Consultants ("HFS"), who has been hired as an

2     advisor and crisis manager for Debtor TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE

3     REGIONAL MEDICAL CENTER ("Debtor"). I have personal knowledge of the events and facts

4     described in this Declaration, and if called upon to testify about the same, could and would

5     competently do so.

6         2.    I am submitting this Declaration in Support of Debtor's Motion for Authorization to

7     Reject Executory Contract (Healthcare Conglomerate Associates, LLC ("HCCA").

8         3.    The Board retained HFS during a Special Board Meeting on October 4, 2017. HFS has

9     a long history of assisting hospitals and hospital districts who are in financial crisis. The purpose of

10    our retention was for HFS to serve an interim role and have no intentions as serving as the long term

11    manager for the Debtor, and specifically its Board. To delivery transparency, the Board indicated a

12    desire to have an objective set of eyes to evaluate the Debtor's operations, provide meaningful

13    analysis and report on the current financial position so that the Debtor and its Board can understand all

14    of the issues it is facing and make informed decisions and recommendations. HFS was also intended

15    to act an intermediary to communicate with and evaluate the information being provided by current

16    management

17        4.    As part of our scope of work, we have evaluated the applicable to which Debtor has

18    bond indebtedness. General Obligation Bonds, Election of 2005, Series A (2007); interest at 4.0% to

19    4.65% due semi-annually; principal due in annual amounts ranging from $15,000.00 on August 1,

20    2012 to $2 million due on August 1, 2037; collateralized by ad valorem tax revenues.  General

21    Obligation Bonds, Election of 2005, Series B (2009); interest at 6.45% to 8.0% due semi-annually;

22    principal due in annual amounts ranging from $100,000.00 on August 1, 2014 to $17,240,000.00 due

23    on August 1, 2039; collateralized by and valorem tax revenues.  Series 2007 Refunding Revenue

24    Bonds:  Interest at 3.75% to 5.2% due semi-annually; principal due in annual amounts ranging from

25    $405,000.00 due on November 1, 2008 to $1,210,000.00 due on November 1, 2032; collateralized by

26    District revenues.

27        5.    Based on my review of the documents available to me, all bonds were current as of the

28    date of this Declaration.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

EXHIBIT S

271

2

6.    The current Fitch rating for the Debtor is CC which was revised downward on or about September 7, 2017.

7.    In connection with my work with hospital, I understand that under California law, hospitals are required to treat any person who presents at the emergency room without regard to the patient's ability to pay for services. The District accepts all patients regardless of their ability to pay. The District absorbs the costs of medical care for uninsured patients who account for a very large percentage of its volume. It is my understanding that a patient is classified as a charity patient by reference to certain established policies of the political district. Essentially, these policies define charity services as those services for which no payment is anticipated.

8.    I am informed and believe that the Debtor has agreements with third party payors that provide for payments to TRMC at amounts different from its established rates. A summary of payment arrangements with major third party payors follows:

a.    MediCare: Payments for inpatient acute care services rendered to MediCare program beneficiaries are based on prospectively determined rates, which vary according to the patient diagnostic classification systems. Outpatient services are generally paid under an outpatient classification system subject to certain limitations. The Debtor is subject to cost reimbursable services in rural healthcare services. As I understand it, filed cost reports are subject to final settlements determined after submission of the annual cost reports and audits thereof by the MediCare fiscal intermediary.

b.    Medi-Cal: Payments for inpatient acute care services rendered to MediCal program beneficiaries are based on prospectively determined rates, which vary according to the patient diagnostic classification systems. Outpatient services are generally paid through an outpatient published fee schedule.

c.    Other: Payments for services rendered to other than MediCare and Medi-Cal patients are based on established rates or on agreements with certain commercial insurance companies, health maintenance organizations and preferred provider organizations which provide for various discounts from established rates.

///

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

EXHIBIT S    272    3

1        d.     Medi-Cal and Medicare programs, which represents, as I understand it, a

2  considerable amount of gross patient revenues, are highly regulated and controlled, are subject to

3  frequent changes in reimbursement levels based upon actions of the California Department of Health

4  Care Services, the U.S. Department of Health and Human Services (CMS) and Congress.  In addition,

5  many private insurers base their payment schedules on a percentage of Medicare rates.  Payment

6  reductions by Medi-Cal and Medicare negatively affect the Debtor's revenue.

7        9.     As of the date of this Declaration, HFS has not been able to obtain any meaningful

8  financial information would enable HFS to evaluate the current operations of the hospital, including

9  what payments have been received from any of the above referenced programs.

10       I declare under the penalty of perjury and the laws of the state of California that the foregoing

11  is true and correct.  This declaration was executed by the undersigned on this __10__ day of October,

12  2017, in Oakland, California.

13

14                            Richard Gianello

15

16

17

18

19

20

21

22

23

24

25

26

27  00158909-gaa-10.10.2017

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: amcdow@bakerlaw.com
mdelaney@bakerlaw.com

Attorneys for Debtor
SOUTHERN INYO HEALTHCARE DISTRICT

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re

SOUTHERN INYO HEALTHCARE DISTRICT,

Debtor.

Case No.: 2016-10015

Chapter 9

Doc. No.: BH-19

**ORDER GRANTING APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE RE EMERGENCY MOTION (1) FOR AUTHORITY TO IMMEDIATELY TERMINATE HCCA MANAGEMENT AGREEMENT OR, IN THE ALTERNATIVE, FOR AUTHORITY TO MODIFY THE TERMS OF THE HCCA MANAGEMENT AGREEMENT IN ORDER TO DESIGNATE THE BOARD AS THE SOLE SIGNATORY ON ALL DISTRICT BANK ACCOUNTS AND (2) TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT AND ASSOCIATED FILING DEADLINES**

Hearing:
Date: October 17, 2017
Time: 2:00 p.m.
Place: Dept. A, Ctrm. 11
U.S. Bankruptcy Court
2500 Tulare Street
Fresno, CA 93721

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

RECEIVED
October 17, 2017
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006149343

Having reviewed and considered the application (the "Application") to set on shortened notice a hearing on the *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "Motion") filed by Southern Inyo Healthcare District (the "District" or "Debtor"), the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"), on or about October 17, 2017, having reviewed and considered the Motion and the declarations and documentation filed in support thereof, and finding good and adequate cause therefor,

**IT IS HEREBY ORDERED** that the Application is APPROVED;

**IT IS FURTHER ORDERED** that the Court shall hold a hearing on the Motion on October 17, 2017, at 2:00 p.m., in the courtroom specified above;

**IT IS FURTHER ORDERED** that the Debtors shall provide notice of the hearing via telephone or electronic mail to the Office of the United States Trustee, all secured creditors, all parties on the NEF service list, and all parties requesting special notice in the Bankruptcy Case on or before October 17, 2017, at 12:00 p.m.;

**IT IS FURTHER ORDERED** that ~~[the Debtors need not provide notice of the hearing on the Motion to Healthcare Conglomerates Associates, LLC] or~~ [the Debtors shall provide notice of the hearing on the Motion to Healthcare Conglomerates Associates, LLC ("HCCA") via telephone or electronic mail on or before October 17, 2017, at 12:00 p.m., provided, however, that the Debtors are authorized and directed to remove HCCA as a signatory from any and all bank accounts contained the District's funds prior to providing such notice]. Said notice to HCCA shall include (but is not limited to) Marc Levinson, 916-329-4910 and Hagop Bedoyan, 559-438-4374.

**IT IS FURTHER ORDERED** that any and all oppositions or objections to the Motion may be submitted orally during the hearing on the Motion;

**IT IS FURTHER ORDERED** that any and all replies in support of the Motion may be submitted orally during the hearing on the Motion; and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER APPROVING APPLICATION TO SET HEARING ON SHORTENED NOTICE

Exhibit 1

611522809.1

275

1    **IT IS FURTHER ORDERED** that any and all interested parties may appear for the

2    hearing on the Motion telephonically and any prior orders or rules of this Court limiting or

3    affecting any party's right to appear telephonically is hereby waived for purposes of the hearing

4    on the Motion.

5    **IT IS SO ORDERED.**

6

7    Dated:    Oct 17, 2017

8

9                                    Fredrick E. Clement
                                     United States Bankruptcy Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -
ORDER APPROVING APPLICATION TO SET HEARING ON SHORTENED NOTICE

276    Exhibit 1

611522809.1

Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:        amcdow@bakerlaw.com
              mdelaney@bakerlaw.com

Attorneys for Debtor
SOUTHERN INYO HEATHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re | Case No.: 2016-10015 FEC |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| Debtor. | Doc. No.:  BH-19 |
| | **DECLARATION RE PROVISION OF NOTICE OF HEARING ON EMERGENCY MOTION** |

I, Michael T. Delaney, hereby declare:

1.      I am an attorney duly admitted to practice before the above-referenced court.  I am an associate with the law firm of Baker Hostetler LLP, general insolvency counsel for the Southern Inyo Healthcare District, the debtor in the above-captioned bankruptcy case.

2.      Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to the same.

3.      On October 17, 2017, I provided telephonic notice of the hearing on the *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in Order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(the "Motion") [Docket Entry ("D.E.") 325] to Robin Tubesing of the Office of the United States Trustee and Marc Levinson of Orrick LLP, counsel for Healthcare Conglomerates Associates, LLC ("HCCA") in the bankruptcy case of the Tulare Local Healthcare District (aka Tulare Regional Hospital) ("Tulare"). I attempted to contract Hagop Bedoyan, co-counsel for HCCA in the Tulare bankruptcy case, via telephone at the number listed on the Order Granting Application for *Order Setting Hearing on Shortened Notice re Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in Order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "OST") [D.E. 328]; however, I was unable to reach Mr. Bedoyan.

4.    On October 17, 2017, I also served a copy of the OST to the known email addresses for the parties identified on the OST and/or their counsel of record. More precisely, I emailed a copy of the OST along with instructions for appearing telephonically to the following email addresses: ustpregion17.fr.ecf@usdoj.gov; jerrys@psdslaw.com; bonniec@psdslaw.com kjm@troygould.com; lisa.peters@kutakrock.com; marybeth.brukner@kutakrock.com; tpincock@lukins.com; stracht@lukins.com; stracht@lukins.com; dsheldon@ssnlaw.com; kterrazone@ssnlaw.com; ncastro@ssnlaw.com; inyomono@stanfordalumni.org; mdecoster3@gmail.com; ppascuzzi@ffwplaw.com; lnlasley@ffwplaw.com; kwidder@ffwplaw.com; rwrlaw4335@aol.com; rreynolds@ch-law.com; sjohnson@ch-law.com; robin.tubesing@usdoj.gov; malevinson@orrick.com; hbedoyan@kleinlaw.com; agermany@teamhcca.com; and bbenzeev@teamhcca.com.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of October 2017, at Los Angeles, California.

/s/ Michael T. Delaney
Michael T. Delaney

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  Fahim Farivar (252153)
   **BAKER & HOSTETLER LLP**
3  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA  90025-0509
4  Telephone:    310.820.8800
   Facsimile:    310.820.8859
5  Email:        amcdow@bakerlaw.com
                 mdelaney@bakerlaw.com
6                ffarivar@bakerlaw.com

7  Attorneys for Debtor
   SOUTHERN INYO HEALTHCARE DISTRICT
8

9               UNITED STATES BANKRUPTCY COURT

10              EASTERN DISTRICT OF CALIFORNIA

11                   FRESNO DIVISION

12 In re                            | Case No.: 2016-10015

13 SOUTHERN INYO HEALTHCARE         | Chapter 9
   DISTRICT,
14                                  | Doc. No.:  BH-20

15             Debtor.              | **DECLARATION OF ASHLEY M.**
16                                  | **MCDOW IN SUPPORT OF THE**
                                    | **EMERGENCY MOTION TO CONTINUE**
17                                  | **HEARING ON THE STATUS**
                                    | **CONFERENCE AND THE ASSOCIATED**
18                                  | **FILING DEADLINES**

19                                  | Proposed Hearing:
                                    | Date:     November 1, 2017
20                                  | Time:     1:30 p.m.
                                    | Place:    Dept. A, Ctrm. 11
21                                  |           U.S. Bankruptcy Court
                                    |           2500 Tulare Street
22                                  |           Fresno, CA 93721

23

24      I, Ashley M. McDow, hereby declare:

25      1.      I am an attorney duly admitted to practice before this court.  I am a partner with

26 the law firm of Baker & Hostetler LLP ("Baker"), general insolvency counsel for the Southern

27 Inyo Healthcare District in the above-captioned bankruptcy case (the "Debtor" or the "District").

28 I submit this declaration in support of the contemporaneously filed *Emergency Motion to*

Baker & Hostetler llp
Attorneys at Law
Los Angeles

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

1  *Continue Hearing on the Status Conference and the Associated Deadlines* (the "Emergency

2  Motion").[1]

3      2.    On or about October 18, 2017, Marshall B. Grossman of Orrick ("Orrick") sent a

4  correspondence to Baker, on behalf of Healthcare Conglomerates Associates, LLC ("HCCA"),

5  advising Baker of a potential conflict of interest that HCCA believes to have arisen as a result of

6  the filing of the Termination Motion due to Baker's prior representation of HCCA in the

7  Bankruptcy Case.  Baker does not believe that there is any actual or potential conflict of interest,

8  particularly given the nature and scope of the conflict waivers executed by both HCCA and the

9  District, but in an abundance of caution, and in order to ensure that the interests of the District are

10  protected to the fullest extent, Baker believes that the continuance requested in the Emergency

11  Motion will enable the District and HCCA to reach a voluntary agreement regarding rejection

12  and/or termination or enable the district to retain special counsel to prosecute the issues arising

13  from and relating to the Termination Motion.

14

15      I declare under penalty of perjury that the foregoing is true and correct.  Executed this

16  25th day of October, 2017, at Calabasas, California.

17

18  /s/ Ashley M. McDow
    Ashley M. McDow

19

20

21

22

23

24

25

26

27

28  ---
[1] Capitalized not defined herein have the same meaning given to them as in the underlying Emergency Motion.

- 2 -

DECLARATION OF ASHLEY M. MCDOW

EXHIBIT V
611580509.1
280

**PROOF OF SERVICE**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. I am an employee of Baker Hostetler LLP. My business address is: **Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

On or about October 25, 2017, I served a true and correct copy of the foregoing documents entitled: **DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF THE EMERGENCY MOTION TO CONTINUE HEARING ON THE STATUS CONFERENCE AND THE ASSOCIATED FILING DEADLINES** will be served or was served and in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On or about, <u>October 18, 2017</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Office of the U.S. Trustee
ustpregion17.fr.ecf@usdoj.gov

Gerald N. Sims on behalf of Creditor  BETA Risk Management Authority
jerrys@psdslaw.com; bonniec@psdslaw.com

Kenneth J. MacArthur on behalf of Creditor  EverBank Commercial Finance, Inc.
kjm@troygould.com

Lisa M. Peters on behalf of Creditor  GE HFS, LLC
lisa.peters@kutakrock.com; marybeth.brukner@kutakrock.com

Trevor R. Pincock on behalf of Creditor  Healthcare Resource Group
tpincock@lukins.com; stracht@lukins.com; stracht@lukins.com

Daniel G. Sheldon on behalf of Creditor  J.M.H., II, a minor, by and through his guardian ad litem, Mayra Huerta
dsheldon@ssnlaw.com; kterrazone@ssnlaw.com; ncastro@ssnlaw.com

Peter E. Tracy on behalf of Creditor Milton R. Jones, M.D.
inyomono@stanfordalumni.org; mdecoster3@gmail.com

Paul J. Pascuzzi on behalf of Creditor  Optum Bank, Inc.
ppascuzzi@ffwplaw.com; lnlasley@ffwplaw.com; kwidder@ffwplaw.com

Russell W. Reynolds on behalf of Creditor  Southern Mono Healthcare District
rwrlaw4335@aol.com; rreynolds@ch-law.com; sjohnson@ch-law.com

Riley C. Walter on behalf of Interested Party  Tulare Local Healthcare District
ECF@w2blaw.com

Riley C. Walter on behalf of Interested Party  Tulare Local Healthcare District
ECF@w2blaw.com

Robin S. Tubesing on behalf of U.S. Trustee Tracy Hope Davis
robin.tubesing@usdoj.gov; ustpregion17.fr.ecf@ust.doj.gov

- 3 -

**2. SERVED BY UNITED STATES MAIL**:  On October 25, 2017, I caused to be served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge and/or other parties named constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION, PHONE OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 25, 2017, I caused to be served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge and/or other parties constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Fredrick E. Clement
United States Bankruptcy Judge
510 19th Street
Second Floor
Bakersfield, California 93301

Honorable Fredrick E. Clement
United States Bankruptcy Judge
2500 Tulare Street
5th Floor, Courtroom 11
Fresno, CA 93721

Healthcare Conglomerates Associates, LLC
c/o Paracorp Incorporated
10940 Wilshire Blvd., Ste. 1600
Los Angeles, CA 90024

Healthcare Conglomerates Associates, LLC
c/o Marshall Grossman
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855

Healthcare Conglomerates Associates, LLC
c/o Marshall Grossman
631 Wilshire Boulevard
Suite 210
Santa Monica, CA 90401

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 25, 2017 | Karla Hernandez | /s/ Karla Hernandez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

- 4 -

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Southern Inyo Healthcare District |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of California |
| Case number | 16-10015 |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Tulare Local Healthcare District<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor **Tulare Regional Medical Center** |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Walter Wilhelm Law Group<br>Name<br>205 E. River Park Circle, Ste. 410<br>Number          Street<br>Fresno                    CA          93720<br>City                    State          ZIP Code<br><br>Contact phone (559) 435-9800<br><br>Contact email rileywalter@w2lg.com | **Where should payments to the creditor be sent?** (if different)<br><br>Tulare Local Healthcare District<br>Name<br>869 N. Cherry St.<br>Number          Street<br>Tulare                    CA          93274<br>City                    State          ZIP Code<br><br>Contact phone (503) 539-4565<br><br>Contact email shaskins@wipfli.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on ___/___/____<br>                                                                                        MM   DD   YYYY |
|---|---|
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**     $_____2,500,000.00. **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Recent disclosures of improper transfers by Healthcare Conglomerate Associates of Tulare Local Healthcare District assets and money to Southern Inyo Healthcare District.

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**     $_____

**Amount of the claim that is secured:**     $_____

**Amount of the claim that is unsecured:**     $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**     $_____

**Annual Interest Rate (when case was filed)_____%**

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No unknown

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | | |
| | ☐ Yes. *Check one:* | | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11 / 6 / 2017
                    MM / DD / YYYY

*Riley C. Walter*
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Riley | C. | Walter |
| | First name | Middle name | Last name |

Title    Attorney for Claimant

Company    Walter Wilhelm Law Group
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    205 E. River Park Circle, Ste. 410
            Number    Street

Fresno    CA    93720
City    State    ZIP Code

Contact phone    (559) 435-9800    Email    rileywalter@w2lg.com

1   SAMUEL R. MAIZEL (Bar No. 189301)
    samuel.maizel@dentons.com
2   DENTONS US LLP
    601 South Figueroa Street, Suite 2500
3   Los Angeles, California 90017-5704
    Telephone:     (213) 623-9300
4   Facsimile:     (213) 623-9924

5   GARY W. MARSH
    gary.marsh@dentons.com
6   DENTONS US LLP
    303 Peachtree Street Northeast, Suite 5300
7   Atlanta, Georgia 30308-3265
    Telephone:     (404) 527-4000
8   Facsimile:     (404) 527-4198

9   Special Counsel to Debtor

10

11            **UNITED STATES BANKRUPTCY COURT**

12            **EASTERN DISTRICT OF CALIFORNIA**

13            **FRESNO DIVISION**

14

15   In re:                  Case No. 16-10015

16   SOUTHERN INYO HEALTHCARE        Chapter 9
    DISTRICT,
17               Debtor.     **NOTICE OF SETTLEMENT RE:**
18                                        **EMERGENCY MOTION (1) FOR**
                                             **AUTHORITY TO IMMEDIATELY**
19                                        **TERMINATE HCCA MANAGEMENT**
                                       **AGREEMENT OR, IN THE ALTERNATIVE,**
20                                        **FOR AUTHORITY TO MODIFY THE**
                                       **TERMS OF THE HCCA MANAGEMENT**
21                                        **AGREEMENT IN ORDER TO DESIGNATE**
                                       **THE BOARD AS THE SOLE SIGNATORY**
22                                        **ON ALL DISTRICT BANK ACCOUNTS;**
                                       **AND (2) TO CONTINUE HEARING ON**
23                                        **SECOND AMENDED DISCLOSURE**
                                       **STATEMENT AND ASSOCIATED FILING**
24                                        **DEADLINES [DOCKET NO. 325]**

25                                        <u>Hearing</u>:
                                       Date:      November 29, 2017
26                                        Time:      1:30 p.m.
                                       Place:     Dept. A, Courtroom 11
27                                               U.S. Bankruptcy Court
                                              2500 Tulare Street
28                                               Fresno, California 93721

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# I.

## **INTRODUCTION**

The Debtor, Southern Inyo Healthcare District ("Debtor"), through its special counsel, Dentons US LLP, by Samuel R. Maizel, hereby gives notice that it has reached a settlement related to the Debtor's *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* [Docket No. 325] (the "Motion").  Generally, the settlement reached provides for HealthCare Conglomerate Associates, LLC ("HCCA") to stipulate to the rejection of its management agreement with the Debtor pursuant to § 365 of the Bankruptcy Code, and for the Debtor to withdraw two declarations filed in support of the Motion.  The terms of the agreement (the "Stipulation") between the Debtor and HCCA are set forth in a Stipulation attached hereto as Exhibit A.

# II.

## **PROCEDURAL HISTORY**

The District owns and operates an acute care hospital, a clinic, and a skilled nursing facility (collectively, the "Facilities"). On January 4, 2016 (the "Petition Date"), the District filed a voluntary petition for relief under Chapter 9 of the Bankruptcy Code.

The District and HCCA have a Management Services Agreement (the "Management Agreement"), which the Debtor sought to terminate by filing an *Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* (the "Motion") [Docket No. 325]. It was supported by two declarations: (i) Declaration of Jaque Hickman, and (ii) Declaration of Ashley McDow (collectively, the "Declarations").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

After a hearing on the Motion, the Court entered the *Order Granting in Part Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on all District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* [Docket No. 335] (the "Order") on October 23, 2017, authorizing and directing the Debtor to remove HCCA as a signatory from any and all bank accounts containing District funds. The Order further directed the District to file a supplemental brief addressing, among other issues, whether the Management Agreement constitutes an executory contract within the meaning of § 365 of the Bankruptcy Code.

Pursuant to the Court's Order, the Debtor filed its *Supplemental Brief In Support of the Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify the Terms of the HCCA Management Agreement in order to Designate the Board as the Sole Signatory on All District Bank Accounts and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines* on November 15, 2017 [Docket No. 371], arguing that the Management Agreement is an executory contract within the meaning of § 365 of the Bankruptcy Code and that the decision of the District's board to reject the Management Agreement is based on sound business judgment.

The Court has scheduled a further hearing on the Motion for November 29, 2017, at 1:30 p.m.

### III.

### **SETTLEMENT**

Subsequent to the hearing on the Motion, special counsel for the Debtor and counsel for HCCA engaged in negotiations to resolve the dispute over the Management Agreement. The District and HCCA want to avoid the cost and delay of litigation over whether the Court should approve rejection of the MSA, and thus, subject to the terms of the agreement portion of the Stipulation attached hereto as Exhibit A, HCCA agrees to the rejection of the MSA, and the Debtor agrees to withdraw the Declarations.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.

**CONCLUSION**

The Debtor and HCCA request that the attached Stipulation reflecting the agreement reached between the Debtor and HCCA be approved by the Court.

Dated:  November 22, 2017

DENTONS US LLP
SAMUEL R. MAIZEL

By____/s/ Samuel R. Maizel_____
SAMUEL R. MAIZEL

Special Counsel to Debtor

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

4

# Exhibit A

**4**

1  MARC A. LEVINSON, CSB NO. 57613
2  CYNTHIA J. LARSEN, CSB NO. 123994
   **ORRICK, HERRINGTON & SUTCLIFFE LLP**
3  400 Capitol Mall, Suite 3000
   Sacramento, California 95814-4497
4  Telephone: (916) 329-4910
   Email: malevinson@orrick.com
5           clarsen@orrick.com

6  HAGOP T. BEDOYAN, CSB NO. 131285
7  LISA HOLDER, CSB NO. 217752
   **Klein, DeNatale, Goldner,**
8  **    Cooper, Rosenlieb & Kimball LLP**
   5260 N. Palm Avenue, Suite 201
9  Fresno, California 93704
   Telephone: (559) 438-4374
10 Facsimile: (661) 326-0418
   E-mail: hbedoyan@kleinlaw.com
11         lholder@kleinlaw.com

12
   Attorneys for Healthcare Conglomerate Associates, LLC
13

14          **UNITED STATES BANKRUPTCY COURT**

15      **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

16

17 In re:                              Case No.: 16-10015-A-9

18 SOUTHERN INYO HEALTHCARE            Chapter 9
   DISTRICT,
19                                     Doc. No. BH-19
            Debtor.
20                                     **STIPULATION RE REJECTION OF HCCA**
21                                     **MANAGEMENT AGREEMENT**

22                                     Date:  November 29, 2017
23                                     Time:  1:30 p.m.
                                       Place: Dept. A, Courtroom 11
24                                            U.S. Bankruptcy Court
                                              2500 Tulare St.
25                                            Fresno, CA 93721
26

27

28

                                       STIPULATION RE REJECTION OF HCCA
                                       MANAGEMENT AGREEMENT

1      Southern Inyo Heathcare District, the debtor in this chapter 9 case ("Debtor" or the

2  "District") and Healthcare Conglomerate Associates, LLC ("HCCA") agree to enter into the

3  following agreement based upon the following recitals:

4                                 **RECITALS**

5

6      1.     In January 2016, the District and HCCA entered into that certain Management

7  Services Agreement (the "MSA").

8      2.     On October 17, 2017, the District filed its Emergency Motion (1) for Authority to

9  Immediately Terminate HCCA Management Agreement, etc. [Dkt. No. 325] ("Emergency

10  Motion"), the Declaration of Ashley M. McDow, etc. [Dkt. No. 326] ("McDow Declaration") and

11  the Declaration of Jaque Hickman [Dkt. No. 327] (together with the McDow Declaration, the

12  "Declarations").

13      3.     On November 4, 2017, the Court entered its order [Dkt. No. 353] ("Scheduling

14  Order"), in which it set out the briefing deadlines and scheduled a hearing on the Emergency

15  Motion for November 29, 2017.

16      4.     Pursuant to the Scheduling Order, on November 15, 2017, the Debtor timely filed

17  its Supplemental Brief in Support of Emergency Motion, etc. [Dkt. No. 371] ("Supplemental

18  Brief"). The Supplemental Brief treated the Emergency Motion as a motion to reject the MSA

19  pursuant to Bankruptcy Code § 365(a) rather than as a motion to terminate the MSA.

20      5.     While HCCA disputes virtually all of the factual allegations in the Emergency

21  Motion, the Declarations and the Supplemental Brief, HCCA agrees that the MSA is an executory

22  contract subject to rejection. And while HCCA believes that the MSA is a postpetition executory

23  contract, it agrees that § 365(a) applies whether the MSA is found to be a prepetition executory

24  contract or a postpetition executory contract.

25      6.     The District and HCCA want to avoid the cost and delay of litigation over whether

26  the Court should approve rejection of the MSA, and thus, subject to the terms of the following

27  agreement portion of this Stipulation, HCCA agrees to the rejection of the MSA.

28

<div align="center">- 2 -</div>

<div align="right">STIPULATION RE REJECTION OF HCCA<br>MANAGEMENT AGREEMENT</div>

<div align="right">EXHIBIT Y</div>

**AGREEMENT**

Based on the foregoing Recitals, and subject to an order of this Court approving this Stipulation, the District and HCCA agree as follows:

A.      The District withdraws the Declarations.

B.      Other than finding that the MSA may be rejected as an exercise of the District's business judgment, the Court makes no findings with respect to the allegations in the Emergency Motion, the Declarations or the Supplemental Memorandum (collectively, the "Allegations").

C.      HCCA reserves the right to contest the Allegations, including, but not limited to the allegation in the Supplemental Brief that the MSA is a prepetition contract.

D.      The MSA is rejected effective 14 days after the entry of the order approving this Stipulation.

E.      Pursuant to Rule 3002(c)(4) of the Federal Rules of Bankruptcy Procedure, the deadline for HCCA to file a proof of claim or proofs of claim (including but not limited to a proof of claim seeking administrative priority) is January 31, 2018.  The District reserves its right to object to any HCCA proof or proofs of claim on any ground.

- 3 -

STIPULATION RE REJECTION OF HCCA
MANAGEMENT AGREEMENT

1   Dated: November 22, 2017          DENTONS USA LLP

2

3                                     By: _____

4                                     Special Counsel   SAMUEL R. MAIZEL
                                          Attorneys for Southern Inyo Healthcare
5                                              District

6   Dated: November 22, 2017          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      and KLEIN, DENATALE, GOLDNER,
7                                     COOPER, ROSENLIEB & KIMBALL LLP

8

9                                     By: _____

10                                         MARC A. LEVINSON
                                      Attorneys for Healthcare Conglomerate
11                                         Associates, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHSUSA:767723021.2                        - 4 -          STIPULATION RE REJECTION OF HCCA
                                                              MANAGEMENT AGREEMENT

# PROOF OF SERVICE OF DOCUMENT

In re Southern Inyo Healthcare District
USBC/EDCA Case No. 16-10015

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF SETTLEMENT RE: EMERGENCY MOTION (1) FOR AUTHORITY TO IMMEDIATELY TERMINATE HCCA MANAGEMENT AGREEMENT OR, IN THE ALTERNATIVE, FOR AUTHORITY TO MODIFY THE TERMS OF THE HCCA MANAGEMENT AGREEMENT IN ORDER TO DESIGNATE THE BOARD AS THE SOLE SIGNATORY ON ALL DISTRICT BANK ACCOUNTS; AND (2) TO CONTINUE HEARING ON SECOND AMENDED DISCLOSURE STATEMENT AND ASSOCIATED FILING DEADLINES [DOCKET NO. 325]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below.

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 22, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Heather S. Candy - #205900
Adventist Health
2100 Douglas Boulevard
Roseville, CA 95661

Counsel for Adventist Health System/West
T: 916 746 5629
E: candyhs@ah.org

Gerald N. Sims - #099133
Pyle Sims Duncan & Stevenson
401 B Street, Suite 1500
San Diego, CA 92101

Counsel for BETA Risk Management Authority
T: 619 687 5200 / F: 619 687 5210
E: jerrys@psdslaw.com

Craig D. Rust - #273774
Office of the Attorney General
1300 I Street
P.O. Box 944255
Sacramento, CA 94244

Counsel for California Department of Public Health
T: 916 210 7359
E:

Robin S. Tubesing
U.S. Trustee
2500 Tulare Street, Suite 1401
Fresno, CA 93721

Counsel for Tracy Hope Davis, U.S. Trustee
T: 559 487 5002
E:

Kenneth J. MacArthur - #175906
TroyGould PC
1801 Century Park East 16th Floor
Los Angeles, CA 90067

Counsel for EverBank Commercial Finance, Inc.
T: 310 553 4441 / F: 310 201 4746
E: kmacarthur@troygould.com

Lisa M. Peters
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2186

Counsel for GE HFS, LLC
T: 402 346 6000 / F: 402 346 1148
E: lisa.peters@kutakrock.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
105760636\V-1

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT Y

Hagop T. Bedoyan - #131285
Klein DeNatale Goldner
5260 North Palm Avenue, Suite 201
Fresno, CA 93704

Counsel for HealthCare Conglomerate Associates, LLC
T: 559 438 4374 / F: 559 432 1847
E: hbedoyan@kleinlaw.com

Lisa A. Holder - #217752
Klein DeNatale Goldner
4550 California Avenue, 2nd Floor [93309]
PO Box 11172
Bakersfield, CA 93389

Counsel for HealthCare Conglomerate Associates, LLC
T: 661 395 1000 / F: 661 326 0418
E: lholder@kleinlaw.com

Marc A. Levinson - #057613
Orrick Herrington & Sutcliffe LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497

Counsel for HealthCare Conglomerate Associates, LLC
T: 916 447 9200 / F: 661 326 0418
E: malevinson@orrick.com

Trevor R. Pincock
Lukins & Annis, PS
717 West Sprague Avenue, Suite 1600
Spokane, WA 99201-0466

Counsel for Healthcare Resource Group
T: 509 455 9555 / F: 509 363 2504
E: tpincock@lukins.com

Daniel G. Sheldon - #166793
Scolinos Sheldon & Nevell
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101-5118

Counsel for J.M.H., II, a minor, by and through his guardian
ad litem, Mayra Huerta
T: 626 793 3900 / F: 626 568 0930
E: _____@ssnlaw.com

Peter E. Tracy - #78185
Law Office of Peter E. Tracy
106 South Main Street, Suite 200
PO Box 485
Bishop, CA 93515-0485

Counsel for Milton R. Jones, M.D.
T: 760 872 1101 / F: 760 872 2781
E: inyomono@stanfordalumni.org

Eric S. Goldstein
Latonia C. Williams
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919

Counsel for Optum Bank, Inc.
T: 860 251 5000 / F: 860 251 5099
E: egoldstein/lwilliams@goodwin.com

Paul J. Pascuzzi - #148810
Felderstein Fitzgerald Willoughby & Pascuzzi LLP
400 Capitol Mall, Suite 1750
Sacramento, CA 95814

Counsel for Optum Bank, Inc.
T: 916 329 7400 / F: 916 329 7435
E: ppascuzzi@ffwplaw.com

Ashley M. McDow - #245114
Michael T. Delaney - #261714
Baker & Hostetler LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509

Counsel for Southern Inyo Healthcare District
T: 310 820 8800 / F: 310 820 8859
E: amcdow/mdelaney@bakerlaw.com

Russell W. Reynolds - #138075
Coleman & Horowitt, LLP
499 West Shaw Avenue, Suite 116
Fresno, CA 93704

Counsel for Southern Mono Healthcare District
T: 559 248 4820 / F: 559 248 4830
E: rreynolds@ch-law.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
105760636\V-1

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT Y

Riley C. Walter - #091839
Walter Wilhelm Law Group
205 East River Park Circle, Suite 410
Fresno, CA 93720

Counsel for Tulare Local Healthcare District
T: 559 435 9800 / F: 559 435 9868
E: rileywalter@W2LG.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date* ) November 22, 2017, I will serve the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno, CA  93721-1326

U.S. Trustee

LeRoy Kritz
PO Box 784
Lone Pine, CA  93545-0784

Creditor Committee

Onestaff Medical, LLC
Attn: Todd Livingston
11819 Miracle Hills Drive, Suite 101
Omaha, NE  68154-4428

Creditor Committee

Joseph Rodrigues
1300 National Drive, Suite 200
Sacramento, CA 95834-1992

Health Care Ombudsman

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 22, 2017, I will serve the following persons and/or entities by personal delivery, next business day service or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Judge Fredrick E. Clement
U.S. Bankruptcy Court for the Eastern District of California
2500 Tulare Street, Suite 2501
Fresno, CA  93721-1328

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 22, 2017 | Frederick Kalve | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
105760636\V-1

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT Y

3

1  Samuel R. Maizel (SBN 189301)
   DENTONS US LLP
2  601 South Figueroa Street, Suite 2500
   Los Angeles, California 90017-5704
3  Telephone: (213) 623-9300
   Facsimile: (213) 623-9924
4  Email: samuel.maizel@dentons.com

5
   Special Counsel to Debtor,
6  SOUTHERN INYO HEALTHCARE DISTRICT

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10                    **FRESNO DIVISION**

11

12 In re:                              Case No. 2016-10015

13 SOUTHERN INYO HEALTHCARE            Chapter 9
   DISTRICT,
14                                     DC NO. BH-19
                 Debtor.
15                                     ORDER APPROVING STIPULATION RE
                                       REJECTION OF HCCA MANAGEMENT
16                                     AGREEMENT

17                                     Hearing:

18                                     Date:      November 29, 2017
                                       Time:      1:30 p.m.
19                                     Location:  U.S. Bankruptcy Court
                                                  Courtroom 11, Dept. A
20                                                2500 Tulare Street
                                                  Fresno, California 93721
21

22         At the above referenced date, time and location, the Court held a continued hearing on the

23 *Debtor's Emergency Motion (1) For Authority To Immediately Terminate HCCA Management*

24 *Agreement, Or, In The Alternative, For Authority To Modify The Terms Of The HCCA*

25 *Management Agreement In Order To Designate The Board As The Sole Signatory On All District*

26 *Bank Accounts; And (2) To Continue Hearing On Second Amended Disclosure Statement And*

27 *Associated Filing Deadlines* (the "Motion") [Docket No. 325].

28

RECEIVED
December 01, 2017
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006178040

EXHIBIT Z 301

ORDER APPROVING STIPULATION RE
REJECTION OF HCCA MANAGEMENT
AGREEMENT

1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   The Debtor appeared through Samuel R. Maizel, Dentons US LLP, Special Counsel.

2   HealthCare Conglomerate Associates, LLC ("HCCA") appeared through Marc A. Levinson,

3   Orrick, Herrington & Sutcliffe LLP. All other appearances are as noted on the record.

4   Having reviewed and considered the Motion, the *Debtor's Supplemental Brief* in support

5   of the Motion [Docket No. 371], and the *Debtor's Notice Of Settlement* vis-vis the issues raised in

6   the Motion [Docket No. 377], which included as Exhibit A, a document entitled *Stipulation Re*

7   *Rejection Of HCCA Management Agreement*, between the Debtor and HCCA,  and finding good

8   cause, and for the reasons stated on the record:

9   **IT IS HEREBY ORDERED** that

10      A.      The *Stipulation Re Rejection Of HCCA Management Agreement* [Exhibit A to

11  *Debtor's Notice Of Settlement* (Docket No. 377)] is APPROVED;

12      B.      The Declaration of Jaque Hickman (the "Hickman Declaration") [Docket No. 327],

13  and the Declaration of Ashley McDow [Docket No. 326] are deemed withdrawn by the Debtor;

14      C.      The Management Services Agreement between HealthCare Conglomerate

15  Associates, LLC and Southern Inyo Healthcare District, attached as Exhibit A to the Hickman

16  Declaration, is rejected pursuant to 11 U.S.C. § 365, and such rejection is effective 14 days after

17  the entry of this Order; and

18

19

20

21

22

23

24

25

26

27

28

*DENTONS US LLP*
*601 SOUTH FIGUEROA STREET, SUITE 2500*
*LOS ANGELES, CALIFORNIA 90017-5704*
*(213) 623-9300*

105832137\V-1

ORDER APPROVING STIPULATION RE
REJECTION OF HCCA MANAGEMENT
AGREEMENT

2

D.   Pursuant to Rule 3002(c)(4) of the Federal Rules of Bankruptcy Procedure, HCCA shall file any claim arising from this rejection, including, but not limited to any claim or demand seeking administrative expense payments, no later than **January 31, 2018**.

**IT IS SO ORDERED**.

Dated:   Dec 02, 2017

_Fredrick E. Clement_
Fredrick E. Clement
United States Bankruptcy Judge

APPROVED AS TO FORM:

_Marc A. Levinson_

MARC A. LEVINSON
ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Healthcare Conglomerate Associates, LLP

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

3

ORDER APPROVING STIPULATION RE
REJECTION OF HCCA MANAGEMENT
AGREEMENT

105832137\V-1

EXHIBIT Z  303

3

1  WALTER WILHELM LAW GROUP
2  A Professional Corporation
   Riley C. Walter #91839
   Matthew P. Bunting #306034
3  Danielle J. Bethel #315945
   205 East River Park Circle, Ste. 410
4  Fresno, CA 93720
   Telephone: (559) 435-9800
5  Facsimile: (559) 435-9868
   E-mail:    rileywalter@w2lg.com
6
7  Counsel for Tulare Local Healthcare District

8  MCCORMICK BARSTOW, LLP
   Timothy L. Thompson #133537
9  Mandy L. Jeffcoach #232313
   Nikole E. Cunningham #277976
10 7647 N. Fresno Street
   Fresno, CA 93720
11 Telephone: (559) 433-1300
   Facsimile: (559) 433-2300
12 E-mail:    mandy.jeffcoach@mccormickbarstow.com

13 District Counsel for Tulare Local Healthcare District

14          IN THE UNITED STATES BANKRUPTCY COURT

15             EASTERN DISTRICT OF CALIFORNIA

16                  FRESNO DIVISION

17 In re                                  CASE NO. 16-10015-A-9

18 SOUTHERN INYO HEALTHCARE            Chapter 9
   DISTRICT,
19                                      DC NO.: WW-1
           Debtor.
20                                      Date:  N/A
                                        Time:  N/A
21                                      Place: 2500 Tulare Street
                                               Fresno, CA 93721
22                                             Courtroom 11
                                        Judge: Honorable Fredrick E. Clement
23

24 APPLICATION FOR EX PARTE ORDER AUTHORIZING FRBP 2004 EXAMINATION
                      AND PRODUCTION OF DOCUMENTS
25               (SOUTHERN INYO HEALTHCARE DISTRICT)

26

27 TO THE HONORABLE RENÉ LASTRETO II, UNITED STATES BANKRUPTCY

28 JUDGE:

---

Application for Ex Parte Order Authorizing   EXHIBIT AA   304     M:\S-U\TRMC\Southern Inyo\WW-1 2004 Exam of
FRBP 2004 Exam and Production of                      Southern Inyo\Application.120517.gaa.docx
Documents [Southern Inyo Healthcare
District]

1    TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL

2    CENTER ("TRMC" or "Applicant"), Interested Party in the above captioned Chapter 9

3    bankruptcy proceeding, hereby files this Application for Ex Parte Order compelling

4    Southern Inyo Healthcare District, to produce certain documents for inspection and

5    copying and, if requested, to appear for a FRBP 2004 Examination.

6

7    **Southern Inyo Healthcare District**
     **501 E. Locust St.**
     **Lone Pine, CA  93545**

8

9    Applicant represents as follows:

10    1.    TRMC filed a voluntary Chapter 9 petition on September 30, 2017 as

11    case number 17-13797.

12    2.    TRMC has reason to believe that Southern Inyo Healthcare District, is in

13    possession of information needed by TRMC which affects the rights of TRMC as well

14    as the administration of this bankruptcy estate.

15    3.    TRMC believes that the information needed bears upon the acts,

16    conduct, or assets and liabilities of TRMC.

17    4.    The examination will also relate to the operation of the TRMC's business

18    and the desirability of its continuance, the source of any money or property acquired or

19    to be acquired by TRMC for purposes of consummating a plan and the consideration

20    given or offered therefore, and any other matter relevant to the case or to the formation

21    of a plan.

22    5.    Conducting such examination will assist TRMC in protecting its interests

23    in evaluating any plan that may be advanced and in furthering the administration of this

24    Chapter 9 proceeding.

25    6.    By this Application TRMC requests that it be permitted to compel the

26    production of documentary evidence in the manner provided in FRBP 9016 followed by

27    an examination, if requested, of Southern Inyo Healthcare District.

28    7.    By the requested Order Applicant will proceed to have issued a

---

Application for Ex Parte Order Authorizing
FRBP 2004 Exam and Production of
Documents [Southern Inyo Healthcare
District]    EXHIBIT AA  325    M:\S-U\TRMC\Southern Inyo\WW-1  2004 Exam of
Southern Inyo\Application.120517.gaa.docx

1  Subpoena for Rule 2004 Examination with Production of Documents to be followed by

2  the examination of the witness, if documents are requested, no earlier than 10 days

3  after the date of issuance of the examination order or subpoena, whichever is later.

4        WHEREFORE, Applicant prays as follows:

5        A.  The Court enter Order pursuant to FRBP 2004 authorizing the examination

6  of Southern Inyo Healthcare District;

7        B.  The Court enter an Order pursuant to FRBP 2004 authorizing the issuance

8  of a Subpoena for Rule 2004 Examination with Production of Documents; and

9        C.  For such other and further relief as is just and proper.

10  Dated: December 8 , 2017          WALTER WILHELM LAW GROUP,
                                        a Professional Corporation
11

12

13                                    By: _____
                                        Riley C. Walter, Attorneys for
14                                        Tulare Local Healthcare District, dba
                                        Tulare Regional Medical Center
15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1   WALTER WILHELM LAW GROUP
    A Professional Corporation
2   Riley C. Walter #91839
    Matthew P. Bunting #306034
3   Danielle J. Bethel #315945
    205 East River Park Circle, Ste. 410
4   Fresno, CA 93720
    Telephone:   (559) 435-9800
5   Facsimile:   (559) 435-9868
    E-mail:      rileywalter@w2lg.com
6
7   Counsel for Tulare Local Healthcare District

8   MCCORMICK BARSTOW, LLP
    Timothy L. Thompson #133537
9   Mandy L. Jeffcoach #232313
    Nikole E. Cunningham #277976
10  7647 N. Fresno Street
    Fresno, CA 93720
11  Telephone:   (559) 433-1300
    Facsimile:   (559) 433-2300
12  E-mail:      mandy.jeffcoach@mccormickbarstow.com

13  District Counsel for Tulare Local Healthcare District

14                 IN THE UNITED STATES BANKRUPTCY COURT

15                      EASTERN DISTRICT OF CALIFORNIA

16                              FRESNO DIVISION

17  In re                             CASE NO.  16-10015-A-9

18  SOUTHERN INYO HEALTHCARE          Chapter 9
    DISTRICT,
19                                    DC NO.:  WW-1
        Debtor.
20                                    Date:    N/A
                                      Time:    N/A
21                                    Place:   2500 Tulare Street
                                               Fresno, CA 93721
22                                             Courtroom 11
                                      Judge:   Honorable Fredrick E. Clement
23

24  _____

    ORDER GRANTING APPLICATION FOR ORDER AUTHORIZING FRBP 2004
25       EXAMINATION AND PRODUCTION OF DOCUMENTS
            (SOUTHERN INYO HEALTHCARE DISTRICT)
26
        After reviewing the Application for Ex Parte Order Authorizing FRBP 2004
27
    Examination and Production of Documents and good cause appearing,
28
    ///

RECEIVED
December 08, 2017
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006182124

nting Application for Order
FRBP 2004 Exam and
of Documents [Southern Inyo
District]                    EXHIBIT BB   367    M:\S-U\TRMC\Southern Inyo\WW-1  2004 Exam of
                                                 Southern Inyo\Order.120517.gaa.docx

1    **IT IS ORDERED:**

2      1.    That Applicant is authorized to examine Southern Inyo Healthcare District

3 pursuant to FRBP 2004(a) on the subjects specified in FRBP 2004(b);

4      2.    That pursuant to FRBP 2004(c), attendance for examination and

5 production of documentary evidence may be compelled in the manner provided in FRBP

6 9016 for the attendance of witnesses at a hearing or trial; and

7      3.    That the examination of the witness shall not be scheduled earlier than 10

8 days after service of this Order or Subpoena for 2004 Examination with Production of

9 Documents, whichever is later, under FRBP 9016.

10

11 Presented by:

12

13 _____
Riley C. Walter, Attorneys for

14 Tulare Local Healthcare District, dba
Tulare Regional Medical Center

15

16

17

18

19

20

21

22

23

24

25 IT IS SO ORDERED.

26 **Dated:**   Dec 12, 2017

27 _____

28 Fredrick E. Clement
United States Bankruptcy Judge

Order Granting Application for Order
Authorizing  FRBP 2004 Exam and
Production of Documents [Southern Inyo
Healthcare District]     EXHIBIT BB  328     M:\S-U\TRMC\Southern Inyo\WW-1  2004 Exam of
Southern Inyo\Order.120517.gaa.docx

Ashley M. McDow (245114)
Michael T. Delaney (261714)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
    mdelaney@bakerlaw.com

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>           Debtor. | Case No.: 2016-10015 FEC<br><br>Chapter 9<br><br>Doc. No. BH-20<br><br>**SECOND AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE PLAN FOR THE ADJUSTMENT OF DEBTS OF SOUTHERN INYO HEALTHCARE DISTRICT**<br><br><u>Hearing:</u><br>Date:    February 28, 2018<br>Time:    1:30 p.m.<br>Place:    Dept A, Ctrm 11<br>    U.S. Bankruptcy Court<br>    2500 Tulare Street<br>    Fresno, CA 93721 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6

**CAVEAT: The Bankruptcy Court has not yet approved the within disclosure statement pursuant to section 1125(b) of the Bankruptcy Code for use in the solicitation of vote with respect to the plan of adjustment of debts for Southern Inyo Healthcare District described herein.  Accordingly, the filing and distribution of the within disclosure statement is not intended and should not be construed as a solicitation of acceptance or rejection of the plan of adjustment of debts described herein.**

7

[This caveat shall be removed prior to solicitation]

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  310
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

**Page**

I.   SUMMARY ........................................................................................... 1

II.  INTRODUCTION ................................................................................ 7

A.   Purpose of the Disclosure Statement ............................................. 7

B.   Summary of Entities Entitled to Vote to Accept or Reject the Plan and Certain Prerequisites to Confirming the Plan .................................................. 8

C.   Summary of Voting Procedures, Balloting Deadline, Confirmation Hearing, and Other Dates, Deadlines, and Procedures ........................................ 9

1.   Voting Procedures and Deadlines ........................................ 9

2.   Date of Confirmation Hearing and Deadline for Objecting to Confirmation of the Plan ...................................................... 9

D.   General Notices and Disclaimers ................................................... 10

E.   Additional Information ................................................................... 11

III. BACKGROUND INFORMATION ..................................................... 11

A.   The District ................................................................................... 11

B.   Events Precipitating Bankruptcy ................................................... 12

1.   Historical Financial Issues ................................................... 12

2.   Breakdown of Operations Due to Cash Shortage .................. 13

3.   Appointment and Actions of New Board of Directors ............ 14

IV.  COMMENCEMENT AND ADMINISTRATION OF CHAPTER 9 CASE ................. 16

A.   Commencement of the Chapter 9 Case ........................................... 16

B.   Immediate Actions to Stabilize Operations and Revenue Deficits ....................... 16

C.   Eligibility Litigation ...................................................................... 17

D.   Appointment of Patient Care Ombudsman ..................................... 17

E.   Disputes Pertaining to Claims Against the District ........................ 18

F.   Pending Litigation ......................................................................... 19

G.   Post-Petition Financing ................................................................. 20

V.   THE DISTRICT'S LIABILITIES AND ASSETS ............................... 21

A.   Liabilities ....................................................................................... 21

1.   Summary of Scheduled Claims ............................................. 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

|  |  |  |  |  |
|---|---|---|---|---|
| | 2. | | Proofs of Claim | 21 |
| | 3. | | Alterations to Liability under the Plan | 22 |
| | | a. | Alteration of Claims | 22 |
| | | b. | Disputed Claims | 23 |
| | 4. | | Summary of Current Liabilities | 26 |
| | 5. | | Statement Regarding Liabilities | 26 |
| B. | | | Assets | 27 |
| | 1. | | Additional Medical Services and Treatment | 27 |
| | 2. | | Parcel Tax Increase | 28 |
| | 3. | | Transient Occupancy Tax | 29 |
| | 4. | | Claims and Causes of Action Against Third Parties | 29 |
| | | a. | Potential Claims and Causes of Action | 30 |
| VI. | | | SUMMARY OF THE PLAN OF ADJUSTMENT | 31 |
| A. | | | Classification and Treatment of Claims | 32 |
| | 1. | | Unclassified Claims | 32 |
| | | a. | Administrative Expense Claims | 32 |
| | | b. | Professional Claims | 32 |
| | | c. | Deadline for the Filing and Assertion of Postpetition Claims, Administrative Claims, and Professional Claims | 33 |
| | 2. | | Class 1 – Secured Claims | 34 |
| | | a. | Class 1A – Action Capital Corporation | 34 |
| | | b. | Class 1B – Bank of the West/Thermo Fisher Financial Services, Inc. | 34 |
| | | c. | Class 1C – Canon Financial Services, Inc. | 35 |
| | | d. | Class 1D – Cardinal Health 110, LLC | 35 |
| | | e. | Class 1E – Healthcare Resource Group | 36 |
| | | f. | Class 1F – Optum Bank, Inc. | 37 |
| | | g. | Class 1G – Vi Healthcare Finance, Inc. | 38 |
| | 3. | | Class 2 – Post-Petition Claims | 38 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  312
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

**TABLE OF CONTENTS CONTINUED**

|  | a. | Impairment and Voting | 38 |
|  | b. | Treatment | 39 |
| 4. | Class 3 – General Unsecured Claims | | 39 |
|  | a. | Impairment and Voting | 39 |
|  | b. | Treatment | 39 |
|  | c. | Class 4 Election | 39 |
| 5. | Class 4 – Convenience Claims | | 40 |
|  | a. | Impairment and Voting | 40 |
|  | b. | Treatment | 40 |

B. Treatment of Executory Contracts and Unexpired Leases ............................. 40

    1. Generally .................................................................................................. 40

    2. Assumption of Executory Contracts and Unexpired Leases ................... 40

        a. Cure Payments ............................................................................. 41

        b. Adequate Assurance of Prompt Cure and Future Performance .... 41

    3. Rejection of Executory Contracts and Unexpired Leases ....................... 42

        a. Claims Arising from Rejection .................................................... 43

C. Means for Execution and Implementation of Plan ......................................... 44

D. Distributions .................................................................................................. 45

    1. Disbursing Agent ..................................................................................... 45

    2. Delivery of Distributions ......................................................................... 45

    3. Undeliverable Distributions ..................................................................... 46

    4. Distribution of Cash ................................................................................. 46

    5. Timeliness of Payments ........................................................................... 46

    6. Default and Cure ...................................................................................... 46

    7. Compliance with Tax Requirements ........................................................ 47

    8. Time Bar to Cash Payments ..................................................................... 47

    9. No De Minimis Distributions ................................................................... 48

    10. No Distributions on Account of Disputed Claims ................................... 48

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

EXHIBIT CC  313
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | 11. | No Post-Petition Date Accrual | 48 |
|  | E. | | Disputed Claims; Objections to Claims; Prosecution of Objections to Disputed Claims | 49 |
|  |  | 1. | Claim Objection Deadline; Prosecution of Objections | 49 |
|  |  | 2. | Reserves, Payments, and Distributions with Respect to Disputed Claims | 49 |
|  | F. | | Continuing Jurisdiction of the Bankruptcy Court | 49 |
| VII. | | | CONFIRMATION AND EFFECTIVE DATE OF THE PLAN | 49 |
|  | A. | | Voting and Right to be Heard at Confirmation | 50 |
|  |  | 1. | Who May Support or Object to Confirmation of the Plan? | 50 |
|  |  | 2. | Who May Vote to Accept or Reject the Plan? | 50 |
|  |  | 3. | Votes Required to Confirm Plan | 51 |
|  | B. | | The "Best Interests" Test | 51 |
|  | C. | | Feasibility | 52 |
|  | D. | | "Cramdown" | 53 |
|  | E. | | Conditions Precedent | 53 |
|  |  | 1. | Condition Precedent to Confirmation | 53 |
|  |  | 2. | Conditions Precedent to Effective Date | 53 |
|  |  | 3. | Non-Occurrence of Effective Date | 54 |
|  |  | 4. | Waiver of Conditions Precedent to Effective Date | 54 |
|  | F. | | Effect of Confirmation | 54 |
|  |  | 1. | Dissolution of the Committee | 54 |
|  |  | 2. | Discharge of the District | 55 |
|  |  | 3. | Injunction | 55 |
|  |  | 4. | Term of Existing Injunctions and Stays | 55 |
|  |  | 5. | Exculpation | 56 |
|  |  | 6. | Good Faith Compromise | 56 |
| VIII. | | | RESERVATION OF RIGHTS OF ACTION | 57 |
| IX. | | | RISK FACTORS | 57 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

EXHIBIT CC  314
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

**TABLE OF CONTENTS CONTINUED**

| | | Page |
|---|---|---|
| X. | FEDERAL INCOME TAX CONSEQUENCES | 59 |
| XI. | RECOMMENDATION AND CONCLUSION | 60 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  315
611923772.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**I.  SUMMARY**

The following section summarizes certain important aspects of the Second Amended Plan for the Adjustment of Debts for Southern Inyo Healthcare District (the "<u>Plan</u>").  These matters are discussed further elsewhere in the within Second Amended Disclosure Statement with Respect to the Plan for the Adjustment of Debts for Southern Inyo Healthcare District (the "<u>Disclosure Statement</u>").  Capitalized terms are defined in the text of this Disclosure Statement as well as the Plan, and any capitalized term used but not defined in the Disclosure Statement shall have the meaning ascribed to such term in the Plan.  Unless otherwise noted, all references to "section ____ " refer to the specified section of the Bankruptcy Code.

<u>Please be aware</u> that the Disclosure Statement contains information that may be important to certain creditors or classes of creditors that is not set forth in this Summary and that such information may influence your decision regarding whether to accept or reject the Plan.  Accordingly, please review the Disclosure Statement and Plan as well as the supporting documents in their entirety.

\* \* \* \*

The Southern Inyo Healthcare District is a California Healthcare District.  The District operates a hospital, skilled nursing facility, and medical clinic in Inyo County, California.  The District filed a petition for relief under chapter 9 of the Bankruptcy Code on January 4, 2016, which was designated Case Number 2016-10015.  The United States Bankruptcy Court for the Eastern District of California, Fresno Division, the Honorable Fredrick E. Clement presiding, entered an order for relief in the Chapter 9 Case on July 12, 2016, as docket entry 195.  The Chapter 9 Case currently is pending before the Bankruptcy Court.

The *Second Amended Plan for the Adjustment of Debts for Southern Inyo Healthcare District* proposed by the District involves the adjustment of the District's operations and the repayment of its obligations under the Plan with operational revenues as well as additional revenues derived from expanded operations, potential litigation recoveries, and increases to parcel

1  and transient occupancy taxes. With the additional funds and revenues, the District will be able

2  to maintain operations and repay its obligations pursuant to the Plan by December 2025. While

3  approval of the tax measure is required, and the District has yet to obtain such approval, the

4  District has commenced the process for obtaining the necessary approvals and believes these

5  measures will be approved prior to the Effective Date. The District anticipates that measures will

6  be voted upon in April 2018, which will result in an Effective Date for the Plan in or about

7  January 2019.

8        In the event the District is unable to adjust its debts pursuant to the Plan, or any amended

9  or revised version thereof, the District will likely be unable to maintain operations and, as a result,

10  will be forced to close the hospital, medical clinic, and skilled nursing facility, which would not

11  only render the District unable to pay its obligations, it would leave the community without

12  necessary medical services.

13        The following chart summarizes key information, including the proposed treatment of the

14  various classes of claims:

| | |
|---|---|
| **Debtor** | Southern Inyo Healthcare District, a California Local Health Care District |
| **Bankruptcy Court** | United States Bankruptcy Court for the Eastern District of California, Fresno Division |
| | The Honorable Fredrick E. Clement presiding |
| **Plan** | Second Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District |
| **Purpose of Disclosure Statement** | To provide information of a kind, and in sufficient detail, that would enable a typical holder of Claims in a class Impaired under the Plan to make an informed judgment with respect to voting on the Plan. |
| **Balloting Information** | Ballots have been provided with this Disclosure Statement to creditors known to have Claims that are Impaired under the Plan. *See* Exhibit 1.[1] |
| | Ballots must be <u>received by</u> the Ballot Tabulator no later than _____ a.m./p.m., Pacific Time, on _____ , |

[1] All exhibits referenced herein are attached to the contemporaneously-filed Exhibits to Second Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District, Disclosure Statement Relating Thereto, and the Declaration of Brian Weiss in Support Thereof (the "**Plan Exhibits**"). Unless otherwise stated, "Exhibit __ " refers to the specified exhibit appended to the Plan Exhibits.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

EXHIBIT CC  317
611923772.1

2018.[2]

| | |
|---|---|
| **Ballot Tabulator** | Karla Hernandez, Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, California 90025 (facsimile 310.820.8859; email khernandez@bakerlaw.com) |
| **Confirmation Hearing** | The Court shall hold a hearing regarding the confirmation of the Plan on _____ , 2018, commencing at ____ a.m./p.m. Pacific Time. |
| **Confirmation Objections** | Any objections to confirmation of the Plan must be set forth in writing and filed and served no later than _____ , 2018. |
| **Treatment of Claims** | If the Court confirms the Plan and the Plan becomes effective, Claims will be treated as follows: |
| Administrative Claims | Administrative Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to their approved Administrative Claim. |
| Professional Claims | Holders of Professional Claims shall be treated as follows: (i) Baker & Hostetler LLP shall receive payment on account of the portion of its Allowed Professional Claim relating to attorneys' fees in monthly installments over a term of 36 months commencing on the Effective Date; and (ii) Nave Cortell LLP and Province as well as the portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to costs incurred in the course of the Chapter 9 Case shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to their respective Allowed Professional Claims. |
| | Payment of Professional Claims is subject to a finding of the Bankruptcy Court that the amounts of the Professional Claims are reasonable. |
| Class 1 Secured Claims | Claims in Class 1 are separated in to subclasses, which, in each instance, are treated as separate classes under the Plan. |
| Class 1A Action Capital Corporation | **Impaired.**  Action Capital Corporation shall receive an allowed General Unsecured Claim in the amount of $185,600.35. |
| Class 1B Bank of the West/Thermo Fisher Financial Services, Inc. | **Impaired.**  The District shall surrender to Bank of the West or Thermo Fisher Financial Services, Inc. the collateral for the underlying agreement. |

[2] The District shall fill-in all missing information and incorporate all bracketed language contained herein prior to circulation of the final disclosure statement for solicitation.

- 3 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| Class 1C<br>Canon Financial Services,<br>Inc. | **Impaired.** The District shall surrender to Canon Financial Services, Inc. the collateral for the underlying agreement. |
| Class 1D<br>Cardinal Health 110, LLC | **Unimpaired.** Cardinal Health 110, LLC shall be entitled to retain the funds presently in its possession, which total $838.28. The remainder of this Claim shall be allowed as a General Unsecured Claim. |
| Class 1E<br>Healthcare Resource<br>Group | **Impaired.** Class 1E is comprised of the Disputed Claim of HRG. Class 1E shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the HRG Claim or HRG returns any and all avoidable transfers. If the HRG Claim is adjudged valid, enforceable and secured in whole or in part and/or HRG returns any and all avoidable transfers, the District shall make periodic payments to HRG until the Class 1E Claim is paid in full with interest. Under the Plan, the payments on account of the Class 1E Claim shall begin in the first full month following the allowance of the HRG Claim and/or the return of any and all avoidable transfers. If deemed an Allowed Claim, HRG shall receive monthly payments in the approximate amount of $2,020.00 per month over the life of the Plan, which equates to the full amount of the Claim plus interest at a rate of 3.25% *per annum*. |
| Class 1F<br>Optum Bank, Inc. | **Impaired.** Class 1F is comprised of the Disputed Claim of Optum. Class 1F shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid, enforceable and secured in whole or in part, the District shall pay Optum Cash in an amount equal to the portion of the Optum Claim allowed as a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, no later than one hundred and twenty (120) days following the entry of a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid and enforceable but not wholly secured, the portion of the Optum Claim adjudged to be a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, shall be treated pursuant to the preceding sentence and any order(s) entered in the Optum Adversary and the remaining Allowed Claim shall be treated as a General Unsecured Claim in Class 3. If the Optum Claim is adjudged invalid and unenforceable, Class 1F shall not receive any distributions under the Plan. |

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

- 4 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| Class 1G<br>Vi Healthcare Finance Inc. | **Impaired.**  The treatment of Class 1G shall depend on the outcome of the ViHF Adversary.  If the District succeeds in disallowing the ViHF Claim in its entirety, Class 1G shall not receive any distributions under the Plan.  If the Bankruptcy Court allows the ViHF Claim as a subordinated claim and transfers any security interest(s) associated therewith to the District, the ViHF Claim shall be treated in a separate class of subordinated Claims—Class 5.  Class 5 shall receive a distribution equal to three percent (3%) of the total claims in the Class, which shall be paid in a lump sum within one hundred and twenty (120) days after entry of an order subordinating the ViHF Claim.  If the Bankruptcy Court allows the ViHF Claim as a Class 1G Claim, the District shall pay the Allowed Secured Claim of ViHF in full within one hundred and twenty (120) days after entry of an order allowing the Class 1G Claim |
| Class 2<br>Post-Petition Claims | **Impaired.**  Holders of Class 2 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the amount listed for each respective claimant in Exhibit 6. |
| Class 3<br>General Unsecured Claims | **Impaired.**  Holders of Class 3 Claims shall receive a *pro rata* portion of $100,000.00, which shall be paid as follows: (a) $25,000.00 on December 31, 2019, or as soon thereafter as practicable; (b) $25,000.00 on April 30, 2020; (c) $25,000 on December 31, 2020, or as soon thereafter as practicable; and (d) $25,000 on April 30, 2021, or as soon thereafter as practicable.  In addition to the foregoing distributions, holders of Class 3 Claims shall receive a *pro rata* portion of 25% of any recovery, net of fees, costs, and other administrative expenses associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof. |
| | Holders of Class 3 Claims shall have the ability to waive their entitlement to Class 3 treatment and, instead, elect to have their Claims treated as Class 4 Claims.  *See* Section VI.A.5.c. |
| Class 4<br>Convenience Class Claims | **Impaired.**  Holders of Class 4 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the lesser of (a) the amount of their Allowed Class 4 Claims or (b) $100.00. |
| **Background Information** | See pages 16 to 25 |
| **Questions** | Please contact the District's counsel, Ashley M. McDow, Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, California 90025<br>(telephone 310.820.8800; facsimile 310.820.8859) |

- 5 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**PLEASE NOTE**: To the extent there is any inconsistency between the Plan (including the Exhibits and any supplements to the Plan) and the description of the Plan in the Disclosure Statement, the terms of the Plan (including the Exhibits and any supplements to the Plan) will govern.

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

EXHIBIT CC  321
611923772.1

**II.    INTRODUCTION**

The District filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California—thereby commencing the above-captioned bankruptcy case.  On or about July 12, 2016, the Court entered an Order for Relief under chapter 9 of the Bankruptcy Code.

The District is the proponent of the Plan. During a hearing held on _____ , 2018, the Court found that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the District to transmit the Disclosure Statement and Plan to holders of Impaired claims in connection with the solicitation of votes on the Plan.

As discussed below, the District believes that adjusting its obligations pursuant to the Plan provides the best result for creditors and that any alternative would result in delay and/or reduced distributions to creditors, if any at all.  Accordingly, the District encourages creditors to vote to accept the Plan.

**A.    Purpose of the Disclosure Statement**

The Bankruptcy Code generally requires that the proponent of a plan of adjustment prepare and file with the Bankruptcy Court a "disclosure statement" that provides information of a kind and in sufficient detail that would enable a typical holder of claims in a Class Impaired under the proposed plan to make an informed decision regarding whether to accept or reject the plan.  In accordance with this requirement, the within Disclosure Statement provides information regarding the Plan and the treatment of Claims thereunder. ***Parties in interest should read the Plan and Disclosure Statement as well as all associated documents carefully and in their entirety in order to (a) determine how the Plan will affect their Claims against the District, (b) understand their rights (if any) as they pertain to voting on the Plan, (c) understand their rights (if any) as they pertain to objecting to confirmation of the Plan, and (d) determine how and when creditors may vote to accept or reject the Plan.***

The Disclosure Statement cannot and, therefore, does not provide creditors with advice or inform creditors regarding all aspects of their rights.  Holders of any Claims against the District

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

are advised to consult with independent counsel and/or a financial advisor to obtain advice regarding how the Plan will affect them and their Claims against the District and the best course of action to take with respect to the Plan.

This Disclosure Statement has been prepared in good faith and in compliance with applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Based upon currently available information, the District believes that the information contained in this Disclosure Statement is true and correct as of the date of its filing.  The Disclosure Statement cannot and does not reflect events that may occur after January 17, 2018.

**B.     Summary of Entities Entitled to Vote to Accept or Reject the Plan and Certain Prerequisites to Confirming the Plan**

Each holder of an Allowed Claim classified into Classes 1A, 1B, 1C, 1F, 2, 3, and 4 of the Plan (collectively, the "**Voting Classes**") shall be entitled to vote each such Claim to accept or reject the Plan.[3]

The Bankruptcy Court may only confirm the Plan if at least one Class of Impaired Claims has voted to accept the Plan (without counting the votes of any Insiders[4] whose Claims are classified within that Class) and if certain statutory requirements are met as to both non-consenting members within a consenting Class and as to any dissenting Classes.  A Class of Claims shall be deemed to have accepted the Plan if at least one-half in number and at least two-thirds in amount of the Allowed Claims actually voting in that Class vote in favor of the Plan.

In the event of a rejection of the Plan by any of the Voting Classes, the District will request that the Bankruptcy Court confirm the Plan in accordance with those portions of section 1129(b) applicable to cases filed under chapter 9 of the Bankruptcy Code, which provisions permit confirmation of the Plan notwithstanding the rejection thereof by an Impaired Class through a process commonly known as "cramdown".  In order to confirm the Plan through

---

[3] While Class 1F is comprised of the Disputed Optum Claim and, as such, Class 1F would not be entitled to vote on the Plan ordinarily, the District and Optum entered into a stipulation to permit Optum to vote its Class 1F Claim notwithstanding the pending dispute and without affecting the parties' respective rights.  *See* D.E. 316.

[4] As used in this Disclosure Statement, "**Insider**" shall have the meaning ascribed to such term in section 101(31)(D), as applicable to municipalities.

EXHIBIT CC  323
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"cramdown", the Court must find, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each rejecting Class.

### C.    Summary of Voting Procedures, Balloting Deadline, Confirmation Hearing, and Other Dates, Deadlines, and Procedures

#### 1.    Voting Procedures and Deadlines

The District has provided copies of this Disclosure Statement, the Plan, and the Ballot to all known holders of Impaired Claims in the Voting Classes.  Holders of an Allowed Claim in one or more of the Voting Classes may vote to accept or reject the Plan by completing, executing, and returning the Ballot by the Balloting Deadline (defined below) to the Ballot Tabulator—Karla Hernandez, Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, California 90025 (facsimile 310.820.8859; email sgaeta@bakerlaw.com).

*All Ballots, including Ballots transmitted by facsimile or email, must be completed, signed, returned to, and __actually received__ by the Ballot Tabulator by not later than _____ , ____, at 4:00 p.m. Pacific Time (the "__Balloting Deadline__").  Unless expressly waived by the District in its sole and absolute discretion, Ballots received after the Balloting Deadline, Ballots submitted directly to the Bankruptcy Court, and incomplete or illegible Ballots shall not be counted in connection with the confirmation of the Plan.*

#### 2.    Date of Confirmation Hearing and Deadline for Objecting to Confirmation of the Plan

The Bankruptcy Court shall hold a hearing to determine whether to confirm the Plan on _____ , ____, at __:__ a.m./p.m. Pacific Time, in Department A, Courtroom 11 of the United States Bankruptcy Court located at 2500 Tulare Street, Fresno, CA 93721, the Honorable Fredrick E. Clement presiding.  The Confirmation Hearing may be continued from time to time by pronouncement or order of the Bankruptcy Court with or without further notice.

Any objections to confirmation of the Plan along with copies of any and all supporting documents must be filed with the Bankruptcy Court and served on the following entities or their counsel of record no later than _____ , ____: (a) the Bankruptcy Court, 2500 Tulare Street, Suite 2501, Fresno, California 93721; (b) the Office of the United States Trustee, 2500

EXHIBIT CC  324
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Tulare Street, Suite 1401, Fresno, California 93721; and (c) Baker & Hostetler LLP, 11601

Wilshire Boulevard, Suite 1400, Los Angeles, California 90025, Attention: Ashley M. McDow,

Esq.  Please be aware that the Bankruptcy Court may not consider any objections that are not

timely filed and served.

### D.    General Notices and Disclaimers

The historical financial data relied upon in preparing the Plan and this Disclosure

Statement is based upon the District's books and records.  Although certain professional advisors

of the District assisted in the preparation of this Disclosure Statement and the documents filed in

support thereof, in doing so such professionals relied upon factual information and assumptions

regarding financial, business, and accounting data provided by the District and third parties, much

of which has not been audited.  The District's most recent audited financial statements, which

cover the fiscal years ending June 30, 2013, June 30, 2014, and June 30, 2015, are included in the

Plan Exhibits as Exhibits 2, 3, and 4, respectively, and incorporated herein by reference.

***The District's professional advisors have not independently verified all financial
information provided in this Disclosure Statement, and, accordingly, make no representations
or warranties as to its accuracy.***  Moreover, although reasonable efforts have been made to

provide accurate information, the District does not warrant or represent that the information in

this Disclosure Statement, including any and all financial information and projections, is without

inaccuracy or omissions, or that actual values or distributions will comport with the estimates and

projections contained herein or submitted in support of the Plan and Disclosure Statement.

***No individual or entity may rely upon the Plan or Disclosure Statement or any of the
supporting documentation for any purpose other than to determine whether to vote to accept or
reject the Plan***.  Nothing contained in such documents constitutes an admission of any fact or

liability by any party, nor shall such information or documentation be admissible in any

proceeding involving the District or any other party, nor will this Disclosure Statement be deemed

evidence of the tax or other legal effects of the Plan on holders of Claims in the Chapter 9 Case.

This Disclosure Statement is not intended to be a disclosure communication to the public capital

markets and should not be relied upon by investors.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

Certain information included in this Disclosure Statement and its exhibits contains forward-looking statements. The words "believe," "expect," "anticipate," and similar expressions identify such forward-looking statements. The forward-looking statements were based upon information and documentation available when such statements were made and are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in the statements. A number of those risks and uncertainties are described below. Therefore, readers are cautioned not to place undue reliance on the forward-looking statements in this Disclosure Statement. The District undertakes no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events, or otherwise.

No regulatory agency has approved or disapproved this Disclosure Statement, nor has any such agency determined whether this Disclosure Statement is accurate, truthful, or complete.

### E.    Additional Information

If you have any questions about the procedures for voting on the Plan, desire an additional copy of the Ballot, or seek further information about the dates and deadlines applicable to the confirmation of the Plan, please contact counsel for the District via email at the following addresses: Ashley M. McDow at amcdow@bakerlaw.com, Michael T. Delaney at mdelaney@bakerlaw.com, and Karla Hernandez at khernandez@bakerlaw.com. Any party represented by counsel is directed to submit any questions through counsel. Counsel for the District cannot and will not communicate directly with any individual or entity represented by counsel in relation to the Chapter 9 Case. Please note that counsel for the District cannot and will not provide creditors with any legal advice, including, without limitation, advice regarding how to vote on the Plan or the effect that confirmation of the Plan will have upon any Claims that may exist against the District.

### III.    BACKGROUND INFORMATION

### A.    The District

The District is a special district formed under the California Local Healthcare District Law, Cal. Health and Safety Code § 32000, *et seq*., located in Lone Pine, California. As of the commencement of the Chapter 9 Case, the District owned and operated three facilities—namely,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

an emergency and acute care facility with four (4) beds (the "**Hospital**"), a skilled nursing facility with thirty-three (33) beds (the "**SNF**"), and an out-patient medical clinic (the "**Clinic**").

### B.    Events Precipitating Bankruptcy

#### 1.    Historical Financial Issues

As a rural healthcare district, the District has historically operated on a narrow margin; however, beginning in 2008, the District started experiencing substantial financial difficulties as patient demands and revenues declined while operational expenses remained high due to the cost of new hospital equipment and increasing salaries resulting from the limited availability of qualified doctors and medical personnel.  Indeed, between 2008 and 2015, the District only earned net revenues in two years—namely, 2013 and 2014.

In or about 2012, the financial condition of the District began to worsen.  The cause of the financial downturn is attributable to numerous sources, including a decrease in patient volume. More precisely, in or about 2012, the patient services and hospital occupancy rates began to rapidly decline—falling from an occupancy rate of 87.08% in 2012 to 67.20% in 2015.  In addition to unforeseen decreases in patient volume, increases in the discounts applied by governmental healthcare programs, such as Medicare and Medi-Cal, and insurance providers further diminished revenues.  As a result of the increased discounts, the District received less in reimbursements from these providers—exacerbating the effects caused by the reduction in patient volume and patient revenues.

Unfortunately, the declining financial condition of the District was further exacerbated by the failure of its former management to respond to the reduction in patient demands with corresponding decreases in staffing and other related overhead expenses.  Indeed, between 2013 and 2015, full time equivalents ("**FTEs**")[5] for staff members increased from 85.48 in 2013 to 103.23 in 2015—an increase of more than 20% at a time when occupancy was sharply declining.

---

[5] A full time equivalent is a unit of measurement essentially equal to a single full time employee.  The use of FTEs ensures consistency in financial reporting by providing a basis for calculating working hours or labor expenses of a business regardless of the number of employees providing the services—such as in the case of a business that employs full time and part time employees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Essentially, the District was employing more staff to serve fewer patients.  As a result, operating

2  expenses increased from $8,376,655 in 2012 to $9,075,609 in 2015.

3       The District experienced its greatest financial decline during fiscal year 2015.  As with

4  2013 and 2014, occupancy rates in 2015 continued to decline to 67.20%, which was the lowest

5  point in the preceding decade.  As a result, operating income dropped to $6,105,816—a decrease

6  of approximately $1,800,000 from the 2014 fiscal year operating income.  Notwithstanding the

7  reduced demand for services, the District continued to increase staffing, which resulted in an

8  increase in total operating expenses.  As a result of the increased expenditures and decreased

9  revenues, the District experienced net losses in 2015 totaling $2,242,722.  The substantial losses

10  in 2015 also resulted in a year-end cash balance of negative $626,583.

11       **2.**     **Breakdown of Operations Due to Cash Shortage**

12       The District continued to experience losses during the 2016 fiscal year, which resulted in

13  an inability to pay ordinary operating expenses, including payroll and vendor obligations.  Indeed,

14  by October 2015, the District was unable to continue paying for employee health insurance—

15  ultimately resulting in the termination of this benefit—and, by November 2015, the District was

16  three to five weeks behind in its payroll obligations despite applying nearly all revenues to payroll

17  in an effort to keep the hospital running.  Due to the inability to consistently meet its payroll

18  obligations, employees started to resign, which further reduced services at the hospital.

19       In an effort to keep the hospital and its related facilities open, the District was forced to

20  turn to the community for donations and loans to pay for essential items, including insurance,

21  licensing fees and payroll.  While the District was able to obtain approximately $75,000 in

22  donations and an $80,000 loan from members of the community, the funds were quickly depleted

23  and, by the end of November 2015, the District lacked sufficient funds to pay payroll as well as

24  the amounts owing under the contracts with the emergency room doctors.  As a result, the board

25  was forced to decide between paying hospital staff and paying the doctors.  Ultimately, the board

26  voted to pay staff payroll—a decision that resulted in the District defaulting under the

27  employment agreements with the emergency room doctors and the loss of their services.

28

Baker & Hostetler llp
Attorneys at Law
Los Angeles

- 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In addition to the inability to continue paying hospital staff, the severe economic conditions prevented the District from paying obligations owing to its vendors.  As a result, the District's accounts payable continued to grow—ultimately reaching a balance of approximately $2,550,000 in December 2016.  Despite large arrears and the District's inability to pay, vendors continued to work with the District in an effort to preserve the hospital for the community.

Regrettably, the concerted efforts of the community and the District ultimately proved too little as the staggering budget deficit and inability to generate sufficient operational revenues to meet its obligations stifled the District.  With the loss of the doctors, the District was forced to begin winding down operations.  Accordingly, on or about November 30, 2015, the board voted to issue 60- and 90-day notices that the District intended to terminate services at the Hospital and SNF.  Thereafter, the District closed the Hospital and emergency room and began making arrangements to transfer SNF patients to surrounding medical facilities.  Without patients, the District was unable to generate new revenues and earnings completely stagnated.  Thereafter, on or about December 14, 2015, Lee Barron, the former Chief Executive Officer and Chief Financial Officer for the District, tendered her resignation.  Three days later, the former board members resigned.  As a result, the District was left without any management or governing body, and, thus, was unable to effectively operate or redress any of the financial issues facing the Hospital and its associated operations.

### 3.    Appointment and Actions of New Board of Directors

The community, however, took efforts to save the District and prevent the closure of its facilities, which are vital to the remote area they serve.  More precisely, following the resignation of the prior board of directors, on or about December 29, 2015, the Inyo County Board of Supervisors appointed three new board members for the District.  Immediately following its appointment, the new board of directors started making strides toward reopening the facility and restructuring its obligations.

On or about December 30, 2015, the board held a meeting to evaluate the financial condition of the District and other issues affecting operations.  The principal issue facing the District was insufficient cash to continue to finance operations; indeed, by the end of December

2015, the District had virtually no cash on hand to fund operations. Additionally, the board learned that by the end of December 2015, the District's debt had grown to approximately $4,500,000, which was comprised in part of more than $2,550,000 in debt obligations to vendors and service providers previously utilized by the District in the course of its operations. The District, however, had few (if any) sources to generate new revenues due to the closure of the Hospital, the SNF, and the Clinic and only approximately $1,600,000 in accounts receivable, which included bad debt carried on the District's books. Furthermore, as the District lacked the ability to pay staff, the District was unable to effectively collect any accounts receivable presently owing.

Due to the dire financial condition of the District, the board immediately consulted with Healthcare Conglomerate Associates (HCCA), a restructuring and advisory firm focused on the reorganization and operation of medical practices and hospitals, and insolvency counsel to explore and evaluate potential reorganizational strategies to preserve District's operations, including bankruptcy and potential partnerships with nearby hospitals or hospital associations. After evaluating potential partnership options, the board concluded that the options were no longer viable as Northern Inyo Hospital and Ridgecrest Hospital withdrew from discussions after learning of the District's financial condition. The board also concluded that obtaining a loan as a means of consolidating and adjusting its current obligations was not a viable option as the District had insufficient funds to cover its existing obligations, let alone service new debt. As the District could not debt finance its operations or enter into a partnership to help defray operating expenses, the board determined that bankruptcy provided the best option for the District, its patients and creditors, and the community at large.

Following a December 30, 2015 meeting of the District's board, the board noticed a public meeting for January 2, 2016, to elicit comments on the financial state of the District and potential options for the readjustment of its obligations as well as the retention of HCCA as chief restructuring officer. Approximately 80 members of the community attended the meeting, including individuals that had donated and loaned money to the District in an effort to support the Hospital's operations in late 2015. During the meeting, the board discussed the proposed

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  330
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

1    employment of HCCA as chief restructuring officer and the commencement of a voluntary

2    chapter 9 bankruptcy case as a means to restructure the operations and adjust the District's

3    present obligations.  The majority of the community members in attendance supported the

4    employment of HCCA and the commencement of the bankruptcy case.

5         With the support of the community, the board voted to approve the employment of

6    HCCA, to declare a fiscal emergency, and to authorize the commencement of the Chapter 9 Case.

7    The board of directors declared a fiscal emergency for numerous reasons, including, primarily,

8    the District's inability to operate due to the lack of sufficient funds, generate any revenues due to

9    the closing of the Hospital and related facilities, and pay the obligations then due and owing.  The

10   board also found that the inability to operate the Hospital and, thereby, provide medical services

11   to the community constituted a threat to the health and welfare of the residents of Southern Inyo

12   County.  On or about January 3, 2016, the board adopted Resolution No. 16-01, which effected

13   the board's prior decision.

14   **IV.    COMMENCEMENT AND ADMINISTRATION OF CHAPTER 9 CASE**

15        **A.    Commencement of the Chapter 9 Case**

16        Due to the District's dire financial condition and the inability to remedy the same outside

17   of bankruptcy, the District proceeded with filing a voluntary petition for relief under chapter 9 of

18   the Bankruptcy Code on January 4, 2016.

19        **B.    Immediate Actions to Stabilize Operations and Revenue Deficits**

20        Following the Petition Date, the District and HCCA took action to establish a foundation

21   for the Plan.  The primary concerns immediately following the commencement of the Chapter 9

22   Case were the preservation of the Hospital, the SNF, and the Clinic operations and the

23   implementation of practices designed to decrease expenditures and, thereby, increase revenues.

24   For example, the District immediately began reevaluating the billing practices in an effort to

25   reduce the number of insurer discounts, thereby increasing net revenues.  The District also began

26   utilizing governmental programs that provide revenues to hospital and nursing facilities that

27   maintain high levels of service, including the California Quality Assurance Fee program.  In

28   additional to taking advantage of available programs and streamlining the overall operations, the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  District also began exploring opportunities for additional governmental subsidies to increase non-

2  operational revenues and permit the District to repay its obligations more quickly without

3  affecting its operational capabilities.

4      **C.**    **Eligibility Litigation**

5      On or about March 31, 2016, the District filed its brief regarding the District's

6  qualification as a debtor under chapter 9 of the Bankruptcy Code (the "**Eligibility Motion**").  The

7  Eligibility Motion came on for hearing on or about June 29, 2016.  On or about June 29, 2016, the

8  Bankruptcy Court issued a minute order finding that the District qualified as a debtor under

9  chapter 9 of the Bankruptcy Code.  Thereafter, on or about July 12, 2016, the Bankruptcy Court

10  entered an order for relief in the Chapter 9 Case.

11      **D.**    **Appointment of Patient Care Ombudsman**

12      On or about January 6, 2016, the Court issued the *Order to Appear and Show Cause Why*

13  *a Patient Care Ombudsman Should Not Be Appointed*.  On or about January 25, 2016, the District

14  filed the *Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman*.  On or about

15  February 3, 2016, the Debtor filed the *Declaration of Colleen Wilson, Chief Nursing Officer, in*

16  *Support of the Motion to Excuse the Appointment of a Patient Care Ombudsman*.  A hearing to

17  consider the appointment of a patient care ombudsman was held on February 10, 2016.  On or

18  about February 16, 2016, the Court entered an order denying the *Debtor's Motion to Excuse the*

19  *Appointment of a Patient Care Ombudsman* and, on or about February 17, 2016, entered an order

20  directing the appointment of a patient care ombudsman.  On or about March 4, 2016, the Office

21  of the United States Trustee filed a notice regarding the appointment of Joseph Rodrigues (the

22  "**Ombudsman**") as patient care ombudsman.

23      Since his appointment, the Ombudsman has filed numerous reports pertaining to the

24  operation of the District's facilities.  The reports are not attached hereto; however, copies of the

25  reports are available on the Chapter 9 Case docket or may be obtained from the District by

26  submitting a written request via email addressed to mdelaney@bakerlaw.com <u>and</u>

27  sgaeta@bakerlaw.com.  Since his appointment, the Ombudsman's reports have noted a few minor

28  issues; however, in each instance, these issues were promptly resolved to the Ombudsman's

Baker & Hostetler LLP<br>Attorneys at Law<br>Los Angeles

EXHIBIT CC  332<br>611923772.1

satisfaction.  In his reports, the Ombudsman also noted that the District's facilities are clean and fully operational, and the District's patients are well cared-for by the staff.  In short, the Ombudsman reports demonstrate that the District has corrected the operational issues it faced in the past.

### E.    Disputes Pertaining to Claims Against the District

Following the Petition Date, the District continued evaluating its existing obligations and the Claims asserted against the District.  Notwithstanding the ongoing nature of this inquiry, the District identified several disputed and/or objectionable Claims (whether in whole or in part)— namely, the Claims asserted by the following claimants: (i) Action Capital Corporation (also known as Coast to Coast Healthcare); (ii) Covidien; (iii) Dean Vander Wall; (iv) the California Employment Development Department; (v) GE HFS LLC; (vi) Lee Barron; and (vii) MJL & Associates.

Accordingly, on or about January 26, 2017, the District filed two omnibus objections to proofs of Claim.  The first omnibus objection sought to characterize Claims asserted by the California Employment Development Department, Lee Barron, and MJL & Associates, each of which asserted an entitlement to priority treatment of all or part of their respective Claims under the Bankruptcy Code, as General Unsecured Claims (the "**Priority Claim Objection**").  The second omnibus objection sought to disallow Claims asserted by Action Capital Corporation, Covidien, Dean Vander Wall, and GE HFS LLC based on the claimants' failure to adequately substantiate the Claim through the submission of competent evidence (the "**Adequacy Claim Objection**").

Prior to the hearing on the Adequacy Claim Objection, the District resolved the Adequacy Claim Objection as it pertained to Dean Vander Wall and GE HFS LLC and, at the hearing, withdrew the objection as it pertained to Covidien.  During the hearing on the Adequacy Claim Objection, the Court denied without prejudice the objection as it pertained to Action Capital Corporation.  On or about March 30, 2017, the Court entered an order adopting its rulings during the hearing on the Adequacy Claim Objection.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  333
611923772.1

During the hearing on the Priority Claim Objection, the Bankruptcy Court sustained the objection and ordered that the affected Claims be reclassified as General Unsecured Claims. Accordingly, under the Plan, these Claims are treated as General Unsecured Claims in Class 3.

**F.    Pending Litigation**

As of the commencement of the Chapter 9 Case, the District was party to certain pending lawsuits, including the following: *Perez v. Kibler, et al.*, case no. SICV CV 1457395, pending in the California Superior Court for the County of Inyo (the "**Perez Litigation**"); *Anderson v. Southern Inyo Healthcare District*, case no. 30-2015-00817277-CL-CL-CJC (the "**Anderson Litigation**"); *Craneware, Inc. v. Southern Inyo Healthcare District*, 15CV04309, pending in the District Court of Johnson County, Kansas (the "**Craneware Litigation**"); and *J.MH, IL et al. v. Marilyn S Devries, MD., et al.*, Case Number: SI- CV-1659008; Superior Court of the State of California, County of Inyo (the "**Huerta Litigation**").

On or about February 1, 2016, the Anderson Litigation was dismissed.

On or about March 30, 2016, the District removed the Craneware Litigation to this Court and, on or about August 29, 2016, the Court dismissed the Craneware Litigation for failure to prosecute. On or about January 27, 2017, the underlying state court action was dismissed without prejudice.

On or about April 15, 2016, the Bankruptcy Court approved a stipulation by and between the District and the plaintiff in the Huerta Litigation. Pursuant to the stipulation, the District agreed to allow the plaintiff to prosecute the Huerta Litigation; *provided, however,* that he only seek to recover from any applicable insurance policies. The Huerta Litigation is currently pending.

Based on the nature of the Perez Litigation, the District did not remove the action.

In addition to the actions pending on the Petition Date, on or about January 13, 2016, the District filed a complaint against the California Department of Public Health ("**CDPH**")—thereby commencing the adversary proceeding styled *Southern Inyo Healthcare District v. California Department of Public Health, et al.*, adv. no. 2016-01008 (the "**CDPH Adversary**"). By and through the CDPH Adversary, the District sought a determination that the suspension or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  revocation of the District's hospital licensure violated the automatic stay. Following the

2  reinstatement of the District's licenses, the District and the defendants in the CDPH Adversary

3  reached an agreement to dismiss the CDPH Adversary without prejudice. On or about March 9,

4  2016, the District filed a stipulation to dismiss the CDPH Adversary without prejudice, which the

5  Court approved by order entered on or about March 10, 2016.

6  **G.     Post-Petition Financing**

7  During the pendency of the Chapter 9 Case, the District utilized a line of credit extended

8  by HCCA (the HCCA Loan) to cover temporary cash shortfalls arising in the course of

9  operations. HCCA was no longer willing and/or able to extend a line of credit to the District. As

10  the District required funding to continue to operate pending both confirmation of the Plan and the

11  Effective Date, and finance certain pre-confirmation activities, the District explored various

12  financing options. Unable to procure financing from an institutional lender, on or about July 19,

13  2017, the District entered into an agreement with Vi Healthcare Finance Inc. ("**ViHF**") for the

14  provision of a line of credit in the amount of Two Million Dollars ($2,000,000) (the "**ViHF**

15  **LOC**"), which is secured by the District's current tax revenues, to the extent permitted under

16  California law. The District has drawn funds on the ViHF LOC to repay the outstanding balance

17  of the HCCA Loan (the "**HCCA Draw**").

18  Under the ViHF LOC, the HCCA Draw shall accrue interest at a rate of ten percent (10%)

19  until repaid. Any additional draws on the ViHF LOC shall accrue simple interest at a rate of

20  twenty percent (20%) until the amount is repaid in full. To ensure payment of the ViHF LOC, the

21  District agreed to assign certain tax revenues permitted to be pledged under applicable law to

22  ViHF. The assigned tax revenues shall be applied to the balance owing under the ViHF LOC

23  until paid in full. Any tax revenues received by ViHF that are not necessary to pay any

24  outstanding balance under the ViHF LOC shall be returned to the District within one (1) business

25  day of receipt.[6]

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[6] The District intends to file an action to disallow and/or subordinate the ViHF Claim and transfer any security interest related thereto to the District pursuant to section 510(c). If the ViHF Claim is disallowed or the related security interest transferred to the District, ViHF will no long be entitled to any tax revenues payable to the District.

EXHIBIT CC  335
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## V.    THE DISTRICT'S LIABILITIES AND ASSETS

The schedules filed in the Chapter 9 Case, as amended (collectively, the "**Schedules**"), provide a detailed list of the assets and liabilities of the District as of the Petition Date.[7]  The audited financial statements provide detailed information regarding the performance of the District in the three (3) fiscal years immediately preceding the Petition Date.  *See* Exhibits 2, 3, 4.  The following is a summary of the liabilities and assets that are relevant to the Plan.

### A.    Liabilities

#### 1.    Summary of Scheduled Claims

The District filed its Schedules on or about January 19, 2016.  In sum, the Schedules identified the following obligations: (a) 11 Secured Claims totaling $1,998,535.65; and (b) 254 General Unsecured Claims totaling $2,503,239.60.  With the exception of the Administrative Claims and Professional Claims, the District does not have any unsecured Claims entitled to priority treatment under the Bankruptcy Code.  Accordingly, the District did not list any creditors in Schedule E.

#### 2.    Proofs of Claim

The Bankruptcy Court established September 30, 2016, as the deadline for the filing of non-administrative proofs of Claim against the District.  Forty-eight (48) proofs of Claim were filed against the District prior to the Claims Bar Date.  These Claims represent a total debt of $6,371,984.78.  Of this amount, approximately eight (8) Claims, totaling $2,339,011.21, asserted security interests in certain assets of the District.  The majority of the proofs of Claim filed overlap with the Claims scheduled by the District.  Unless otherwise provided in the Plan, if a purported creditor filed a proof of Claim relating to a Claim listed in the Schedules, the Claim shall be Allowed in the amount stated in the proof of Claim and the amount listed for the Claim in the Schedules shall be disregarded for the purposes of calculating the total indebtedness provided for under the Plan or determining the treatment of the related creditor under the Plan.

---

[7] Copies of the Schedules are available on the Chapter 9 Case docket or may be obtained from the District by submitting a written request via email addressed to mdelaney@bakerlaw.com and sgaeta@bakerlaw.com.

EXHIBIT CC  336
611923772.1

As previously noted, the District filed objections to eight (8) proofs of Claim. The Bankruptcy Court sustained the objections to the proofs of Claim filed by Employment Development Department, Lee Barron, and MJL & Associates. The District resolved or withdrew the objections to the proofs of Claim filed by Covidien, Dean Vander Wall, and GE HFS, LLC. The Bankruptcy Court overruled the objection to the proof of Claim filed by Action Capital Corporation. In total, the objections to the proofs of Claim resulted in the reclassification of $224,151.22 in purported priority unsecured Claims as General Unsecured Claims.

### 3. Alterations to Liability under the Plan

#### a. Alteration of Claims

Under the Plan, the District intends to alter the treatment or classification set forth in the Schedules for the following Claims:

- General Electric Capital Corporation ("**GE**"). In the Schedules, the District listed GE as holding two Secured Claims totaling $65,129.11. Following the Petition Date, GE filed three (3) proofs of Claim (nos. 5, 29, and 33) asserting three unsecured Claims relating to the same obligations. Accordingly, under the Plan, GE shall be treated as holding three (3) General Unsecured Claims in the amounts stated in the GE proofs of Claim.

- HCCA. In the Schedules, the District listed HCCA as holding a Secured Claim in an unknown amount relating to the HCCA Loan. As the HCCA Loan will be paid on the Effective Date, the Plan does not provide any treatment for the HCCA Loan in Class 1. Any other amounts owing to HCCA shall be treated as a General Unsecured Claim in Class 3.

- Leasing Associates of Barrington, Inc. ("**LAB**"). In the Schedules, the District listed LAB as holding a Secured Claim in an unknown amount. LAB did not file a proof of Claim in the Chapter 9 Case. Accordingly, under the Plan, the Claim listed in the Schedules for LAB shall be treated as a Disallowed Claim.

- Marlin Leasing Corporation ("**MLC**"). In the Schedules, the District listed MLC as holding a Secured Claim the in the amount of $0.00. MLC did not file a proof

- 22 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of Claim in the Chapter 9 Case. Accordingly, under the Plan, the Claim listed in
the Schedules for MLC shall be treated as a Disallowed Claim.

- Siemens Healthcare Diagnostic, Inc. (aka Siemens Financial Services, Inc.)
 (“**Siemens**”). In the Schedules, the District listed two Secured Claims held by
 Siemens—one in the amount of $0.00 and the other in an unknown amount.
 Following the Petition Date, Siemens filed a proof of Claim (no. 36) asserting a
 General Unsecured Claim against the District relating to the same obligation.
 Accordingly, under the Plan, Siemens shall be treated as holding a General
 Unsecured Claim in the amount stated in proof of Claim no. 36.

- U.S. Foods (“**US Foods**”). In the Schedules, the District listed a purported
 Secured Claim held by US Foods in the amount of $35,539.19. Following the
 Petition Date, US Foods filed a proof of Claim (no. 44) asserting a General
 Unsecured Claim against the District relating to the same obligation(s).
 Accordingly, under the Plan, US Foods shall be treated as holding a General
 Unsecured Claim in the amount stated in proof of Claim no. 44.

In addition to the foregoing, pursuant to the terms of the Plan, any Claim qualifying as a
Disallowed Claim shall not receive any distributions under the Plan, regardless of whether and in
what manner the District listed such Claim in the Schedules.

### b. Disputed Claims

The District disputes the validity and/or enforceability of several claims, including,
without limitation, the Claims discussed below. The omission of any Claim from the discussion
in this section shall not constitute a waiver or otherwise affect the rights of the District to object
or otherwise exercise any and all with respect to any Claim against the District.

### i. Optum Claim

By and through proof of Claim no. 25 (the Optum Claim), Optum Bank has asserted a
Secured Claim in the amount of $1,717,320.24 relating to a loan extended to the District in or
about February 2015, which it contends is secured by the real property in which the SNF and the
Hospital are located (the “**Property**”), as well as various personal property assets in which the

- 23 -

District has an ownership interest. The District disputes the enforceability of the Secured Claim asserted by Optum Bank, especially with respect to the Property, and the validity of the underlying loan (i.e., the Optum Loan).

As a California healthcare district, the District's ability to borrow funds is strictly regulated. One of the many restrictions placed on the District's ability to borrow funding is set forth at Cal. Health & Safety Code § 32130, which provides:

> A district may borrow money and incur indebtedness in an amount not to exceed 85 percent of all estimated income and revenue for the current fiscal year, including, but not limited to, tax revenues, operating income, and any other miscellaneous income received by the district, from whatever source derived. *The money borrowed and indebtedness incurred under this section shall be repaid within the same fiscal year.*

(emphasis added). Additionally, Cal. Health & Safety Code § 32130.2(b) limits the issuance of negotiable promissory notes to finance a "capital outlay"—in other words, the initial acquisition of property, equipment and supplies utilized by a healthcare district—and to a term of no more than ten (10) years. "Restrictions on the borrowing of public entities are common in California and other states. ... They are intended to prohibit the accumulation of public debt without the consent of the taxpayers, and require governmental agencies to carry on their operations on a cash basis." *In re S. Humboldt Cmty. Healthcare Dist.*, 254 B.R. 758, 760 (Bankr. N.D. Cal. 2000). Claims made on account of loans extended in violation of such limitations are unenforceable. *Ibid*.

Based on its review of the salient documents and applicable law, the District believes that the Optum Loan violates, among other provisions, Cal. Health & Safety Code §§ 32130 and 32130.2. More precisely, the Optum Loan does not require repayment within the same fiscal year nor was such repayment possible at the time the Optum Loan was extended.[8] Additionally, the Optum Loan provided for a repayment term in excess of ten (10) years and was not related to a "capital outlay;" rather, the Optum Loan related to the refinancing of an existing debt. Accordingly, the Optum Loan violates the restrictions on lending to healthcare districts under Cal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[8] It also appears that the Optum Loan violates Cal. Health & Safety Code § 32130.2 by virtue of the fact that it matures more than ten (10) years after its issuance.

Health & Safety Code §§ 32130 and 32130.2 and, thus, the Optum Claim is unenforceable.  As such, the District is left with no choice but to treat the Optum Claim as a Disputed Claim under the Plan.  *See In re S. Humboldt Cmty. Healthcare Dist.*, 254 B.R. at 760-761.

Furthermore, under California law, creditors are not able to encumber or assert security interests in municipal property unless expressly authorized by statute.  *See Mayrhofer v. Board of Education of the City of San Diego, et al.*, 89 Cal. 110 (Cal. 1891).  As relevant here, the Cal. Health & Safety Code contains no authorization for creditors to encumber the real property assets of a California health care district, such as the District.  As Optum was not authorized to encumber the Property, the security interest asserted by Optum in the Property is void and unenforceable.

Based on the foregoing, the District has commenced the Optum Adversary, though which the District seeks to invalidate the Optum Loan and associated security interest, in whole or in part, and disallow the Optum Claim.  Thus, under the Plan, the Optum Claim is treated as a Disputed Claim and shall not receive any distributions unless and until a court of competent jurisdiction enters a Final Order allowing the Optum Claim, and then, only to the extent allowed.

### ii.    ViHF Claim

ViHF asserts an entitlement to a Secured Claim in an amount equal to any draw on the ViHF LOC.  The District contends that the ViHF Claim is not enforceable and/or may be subordinated to all other Claims under section 510(c) and/or the Bankruptcy Court's general equitable authority due to certain misconduct and improper actions taken by ViHF and/or its affiliates.  The District intends to retain special litigation counsel to commence an adversary proceeding against ViHF ("**ViHF Adversary**") prior to the Confirmation Hearing.  By and through the ViHF Adversary, the District intends to seek an order disallowing or subordinating the ViHF Claim and transferring any securing interest associated with the ViHF LOC to the District.[9]

---

[9] Due to allegations of conflicts of interest between HCCA and its affiliates, including ViHF, and general insolvency counsel for the District, the District shall provide further detail regarding the bases for the ViHF Adversary by and through the forthcoming complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC 340
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

**4.    Summary of Current Liabilities**

On the Effective Date, the District estimates that it will have the following liabilities:

- Administrative Claims totaling approximately $34,321.00;

- Professional Claims totaling approximately $1,094,910.97;

- Secured Claims totaling approximately $3,281,362.61;[10]

- Priority Unsecured Claims totaling $0.00;

- Post-Petition Unsecured Claims totaling $460,880.00; and

- General Unsecured Claims totaling approximately $7,153,051.98.[11]

**5.    Statement Regarding Liabilities**

As previously noted, the District disputes a number of Claims that have been asserted against it, and the District's review and analysis of Claims is ongoing.  Given that fact, as well as the inherent uncertainties in any litigation regarding Claims, no assurances can be given regarding the successful outcome of any litigation that has or may be initiated in objecting to such Claims or regarding the ultimate amount of Claims that will be Allowed against the District.

As described below, the Plan enables the District to file objections to Claims at any time within one hundred and eighty (180) days after the Effective Date.  The Plan also provides for the District to retain any and all defenses, offset and recoupment rights, and counterclaims that may exist with respect to any Disputed Claim, whether under section 502, 552, or 558 of the Bankruptcy Code or other applicable law.  The District reserves all rights with respect to the allowance and disallowance of any and all Claims.  **In voting on the Plan, creditors may not rely on the absence of a reference in this Disclosure Statement or the Plan or the absence of an objection to their proofs of Claim as any indication that the District ultimately will not object to the amount, priority, nature, or allowance of their Claim(s).**

---

[10] This amount does not account for Secured Claims satisfied under the Plan through the surrender of collateral.  This amount includes the Disputed Claims of Optum and ViHF.

[11] This amount is comprised of all General Unsecured Claims, including those classified in Class 4 under the Plan, the Unsecured portion of the Secured Claim asserted by Action Capital Corporation, and the projected cure payments due and owing in relation to the assumption of executory contracts and unexpired leases.  The inclusion of any Claim in this calculation shall not alter the proposed treatment of such Claim under the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.     Assets**

The District's assets include, among other things, the real property on which the Hospital and the SFN are located, medical equipment and supplies, accounts receivables, healthcare receivables, potential claims and causes of action, and other various personal property assets. The District's assets are more fully described in the Schedules and associated statement of financial affairs. Under the Plan, the District estimates that it will supplement its current revenue through offering additional medical services and treatments, potential proceeds from litigation, and an increase in parcel and transient occupancy taxes. Each potential revenue source is discussed below:

**1.     Additional Medical Services and Treatment**

The District intends to partially fund the Plan with anticipated revenues to be generated from expanding certain services. More precisely, the District intends to expand its services by offering medical infusion services.

The District has designated a room in its hospital facility for conversion into a treatment center for individuals requiring regular infusions of intravenous medications, including, without limitation, medications for the treatment of cancer, arthritis, and other chronic and severe illnesses and conditions. The designated space is sufficient to house four (4) infusion chairs and related equipment—thereby permitting the District to treat up to four (4) patients at any one time. Establishing the treatment facility will cost approximately $6,350.00, which expense shall be a one-time cost. The District estimates that the annual operating cost would be approximately $240,000 or $60,000 per chair, including the additional staffing required to operate the facility and to administer the treatments. The District estimates that the infusion services will result in additional net revenues of approximately $200,000 in 2018. The District anticipates that demand for this service will increase between 2018 and 2025—thereby increasing revenues derived from this service. The District believes it will be able to establish and begin providing infusion services prior to the Effective Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## 2.    Parcel Tax Increase

The District intends to fund the Plan (in part) with revenues from an increased parcel tax. A parcel tax is a tax assessed against the owner of real property.  At present, the parcel tax in Southern Inyo is approximately $150.00 per parcel, which generates an average of $350,000 per year in revenues for the District.  The District proposes increasing the parcel tax from $150.00 to $365.00 per parcel, per year, which will increase receipts from the parcel tax from approximately $350,000 to $950,000 per year.

The District has taken certain actions to gauge whether the community is likely to support an increase to parcel taxes in order to preserve the Hospital, the SNF, and the Clinic.  Based thereon, the District believes that voters will support the increase in parcel taxes in order to ensure the continued operations of the District and availability of the essential services the District provides to the community.

Voter Approval Required. Increasing the parcel tax will require approval by two-thirds of the voters in Inyo County, California, who vote on the tax measure.

Timing for Approval.  The District intends to seek approval of the parcel tax initiative as part of the general election in April 2018.  If the requisite number of votes is received, the election results will thereafter be certified.  If approved, the District anticipates that its will begin receiving the additional revenues on account of the parcel tax increase in December 2018.  The parcel tax revenues will be paid bi-annually—with the first payment in April of each year and the second payment in December of each year.

Certificates of Participation.  In the event the District is required to make any lump-sum payments to Optum or ViHF, or otherwise remedy a cash shortfall, the District may issue certificates of participation ("**COP**") in association with the increased parcel tax revenues (to extent necessary to fund such payment(s)).  The COP issuance will essentially securitize all or a portion of the future revenues from the increased parcel taxes and result in a lump-sum payment to the District.  Thereafter, the District shall utilize the revenues from the parcel tax initiative to repay the COP obligations.  Based on the District's calculations, the COP repayment obligations will be less than the revenues from the increased parcel taxes and, as the COP revenues will repay

- 28 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1 a substantial portion of the District's obligations, will not affect the District's ability to perform

2 under the Plan.

3 **3.    Transient Occupancy Tax**

4 The District intends to partially fund the Plan with additional tax revenues from the

5 Transient Occupancy Tax (the "**TOT**") for the County of Inyo, California. The TOT is a tax

6 levied against consumers of tourist related goods and services, principally through taxes on hotel

7 and motel rooms. The District intends to propose an allocation of one percent (1%) of the TOT to

8 the District. The District has conferred with authorities from the County of Inyo and obtained

9 historical collection data relating to the TOT. Based on its discussions with county officials and

10 historical data, the District estimates that the allocation of additional revenues generated by the

11 one percent (1%) allocation would result in approximately $34,600 per year in additional

12 revenues for the District. The District would receive the TOT revenues as a single payment at the

13 end of each calendar year.

14 Voter Approval **Not** Required. Voter approval of the TOT increase is not required; rather,

15 any increase to the TOT requires approval from the County Board of Supervisors, which

16 ordinarily makes its decision in concert with the merchants affected by the assessment. The

17 District believes that the TOT increase will be approved and allocated to the District.

18 Timing for Approval. As voter approval is not required, the timeline for approval is

19 slightly more flexible. Regardless, the District expects the TOT increase to be approved before

20 the projected Effective Date.

21 **4.    Claims and Causes of Action Against Third Parties**

22 The District may have claims and causes of action against certain individuals or entities,

23 and is continuing its investigation of any and all potential claims and causes of action that may

24 exist. By and through the Plan, the District retains the right to commence and prosecute any

25 action(s) based upon any claim or cause of action possessed by the District prior to the Effective

26 Date. Any recovery by the District arising from a claim or cause of action commenced on or after

27 the Effective Date shall be treated as additional revenues and used by the District to fund

28 operations and/or plan payments. **Parties in interest may not rely on the absence of a**

1  reference in this Disclosure Statement or the Plan as any indication that the District

2  ultimately will not pursue any and all available claims and causes of action against them.

a.    Potential Claims and Causes of Action

4  The District is presently aware of the claims and causes of action discussed *infra*.  The

5  following discussion of claims and causes of action does not in any way limit or affect the

6  reservation of rights set forth in the preceding paragraph, nor the District's right to assert any and

7  all claims and causes of action following the Effective Date.

i.    HCCA Claim

9  The principal claim(s) of which the District is aware pertain to HCCA.  More precisely,

10  HCCA was retained as chief restructuring officers for the District.  In this role, HCCA was

11  responsible for, among other things, the management of the District's operations.  Among other

12  things, HCCA failed to collect approximately $4,000,000 in accounts receivable.  To ameliorate

13  this cash shortage (to the extent possible), the District was required to expend additional funds,

14  including, without limitation, incurring additional debt from an HCCA affiliate at an interest rate

15  of 20% and retaining additional professionals and service providers to fulfill HCCA's

16  responsibilities.  In sum, the District estimates that HCCA's failure to carry-out its duties resulted

17  in more than $6,000,000 in damages to the District.  The District intends to file an adversary

18  proceeding against HCCA to recover damages arising from or relating to the foregoing.

ii.    ViHF Adversary

20  As discussed *supra*, the District intends to commence an adversary proceeding

21  challenging the validity and enforceability and/or seeking to subordinate the Claim asserted by

22  ViHF and transferring any security interest associated with the ViHF Claim to the District.[12]

iii.    Avoidance Actions

24  The District also intends to pursue claims to recover fraudulent and/or preferential

25  transfers to or for the benefit of certain creditors, including, without limitation, HRG, under the

_____

[12] Due to allegations of conflicts of interest between HCCA and its affiliates, including ViHF, and general insolvency counsel for the District, the District shall provide further detail regarding the bases for the ViHF Adversary by and through the forthcoming complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  345
611923772.1

Bankruptcy Code and applicable California law. The District intends to commence these avoidance actions prior to the Effective Date of the Plan, but in no event later than July 11, 2018.

## VI.    SUMMARY OF THE PLAN OF ADJUSTMENT

**The discussion of the Plan set forth herein is qualified in its entirety by reference to the more detailed provisions set forth in the Plan and its exhibits, the terms of which are controlling. Holders of Claims and other interested parties are urged to read the Plan and its exhibits, copies of which are served herewith, in their entirety so that they may make an informed decision regarding the Plan.**

The Plan proposes paying the Allowed Claims against the District over a term of several years. The Allowed Claims are separated into four (4) Classes—namely, Secured Claims (Class 1), Post-Petition Claims (Class 2), General Unsecured Claims (Class 3), and Convenience Class Claims (Class 4).

As set forth in the financial projections (Exhibit 5 to the Plan Exhibits), the Allowed Claims will be paid over a term of years depending on their specific classification and treatment relating thereto. Administrative Claims and Professional Claims are not classified and shall receive payment in full on the Effective Date, unless the holders of such claims agree to alternate treatment. Secured Claims are separately categorized into subclasses (Classes 1A-1G) based upon the collateral purportedly securing each of the Claims. Post-Petition Claims (Class 2) consist of certain general unsecured Claims held by creditors that provide goods or services to the District essential to the operation of the District and its facilities. General Unsecured Claims (Class 3) consist of general unsecured Claims in excess of $250.00 held by claimants not classified as Post-Petition Claims. Convenience Class Claims (Class 4) consist of general unsecured Claims in an amount less than or equal to $250.00 held by claimants not classified as Post-Petition Claims, which are separately classified from General Unsecured Claims in order to avoid the administrative burden and expense associated with remitting payments on account of Claims of this size over a term of years, and Claims classified in Class 3 that opt to be treated as Class 4 Claims. The District shall make the payments provided for in the Plan over a term of approximately seven (7) years (the Effective Date through and including December 2025).

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

- 31 -

**A.**     **Classification and Treatment of Claims**

**1.**     **Unclassified Claims**

Section II of the Plan governs the treatment of certain Claims that are not classified into Classes under the Plan.

**a.**     **Administrative Expense Claims**

Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, the District or its agent shall pay to each holder of an Allowed Administrative Claim, in full satisfaction, release, and discharge of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. Under the Plan, the Allowed Administrative Claims consist of the following: SourceMedia, Inc. ($34,321.00) and Up-to-Date ($0.00).[13]

**b.**     **Professional Claims**

Pursuant to section 943(b)(3), all amounts paid or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to the Plan must be disclosed to the Bankruptcy Court and must be reasonable. There shall be paid to each holder of a Professional Claim, in full satisfaction, release and discharge of the Professional Claims existing on the Effective Date, Cash in an amount equal to that portion of such Claim that the District consents to pay and the Bankruptcy Court deems reasonable.[14]

The portion of the Allowed Professional Claim of Baker & Hostetler LLP ("**Baker**") relating to attorneys' fees shall be paid in equal monthly payments over a term of thirty-six (36) months following the Effective Date. The District estimates that the attorneys' fees incurred by Baker for services rendered to the District prior to the Effective Date shall total approximately $850,000. The Allowed Professional Claims of Nave Cortell LLP and Province as well as the

---

[13] The amounts listed herein are estimates of amount owing on account of the Allowed Administrative Claims as of the anticipated Effective Date.

[14] The treatment of Professional Claims provided herein shall not in any way limit the rights of any professional employed by the District seeking compensation for services provided following the Effective Date. The amounts listed in this Section are estimates of the Professional Claims and shall not in any way be interpreted as a limitation on the amount of the Professional Claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to costs incurred in the course of the Chapter 9 Case shall be paid in full upon, or as soon as reasonably practicable following, the Effective Date.  The District estimates that Nave Cortell LLP and Province shall have Professional Claims in the amount of approximately $24,149.22 and $20,761.75, respectively, as of the Effective Date.  The District estimates that the portion of the Allowed Professional Claim of Baker & Hostetler LLP relating to costs incurred in the course of the Chapter 9 Case shall total approximately $200,000 as of the Effective Date.[15]

The District does not consent to the Bankruptcy Court adjudicating whether any other individual or entity constitutes a Professional or may assert a Professional Claim.  The District solely consents to the Bankruptcy Court adjudicating the reasonableness of the services rendered and costs incurred by the Professionals for which compensation and/or reimbursement is sought.

The District, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for professional services rendered and costs incurred following the Effective Date.

<div align="center">

**c.**    **Deadline for the Filing and Assertion of Postpetition Claims, Administrative Claims, and Professional Claims**

</div>

**All proofs of Claim for Claims arising on or after the Petition Date, and requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid, released, or otherwise settled, and all requests for a determination regarding the reasonableness of Professional Claims, must be filed with the Bankruptcy Court and served upon the District no later than thirty (30) days <u>before</u> the date set for the Confirmation Hearing.**  Any proof of Claim for Claims arising on or after the Petition Date, or request for payment of an Administrative Claim or a Professional Claim that is not timely filed will be forever barred and holders of such Claims shall be barred from asserting such Claims in any manner against the District.

---

[15] This figure includes projected costs for Force 10 Partners, the financial advisory firm retained by Baker & Hostetler LLP to assist with the preparation of the Plan and associated documents.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **2.    Class 1 – Secured Claims**

2    **a.    Class 1A – Action Capital Corporation**

3    Class 1A consists of the Claim asserted by Action Capital Corporation (also known as

4    Coast to Coast Healthcare) ("**ACC**") in the amount of $185,600.35, which is purportedly secured

5    by all accounts receivable of the District arising on or before January 31, 2015.

6    **i.    Impairment and Voting**

7    Class 1A is Impaired by the Plan since the treatment of this Class will affect the legal,

8    equitable, or contractual rights of ACC.  Accordingly, this Class is entitled to vote to accept or

9    reject the Plan in accordance with the Plan Solicitation Order.

10    **ii.    Treatment**

11    ACC's Class 1A Claim is purportedly secured solely by accounts receivable generated on

12    or before January 31, 2015, which the District estimates to be worth $0.00.  Accordingly, in full

13    satisfaction, release and discharge of the Class 1A Claim, ACC shall receive an allowed General

14    Unsecured Claim in the amount of $185,600.35, which shall be included in and treated in

15    accordance with the treatment provided for Class 3 Claims.

16    **b.    Class 1B – Bank of the West/Thermo Fisher Financial Services,**

17    **Inc.**

18    Class 1B consists of the Claims asserted by Bank of the West ("**BOW**") in the amount of

19    $7,189.61 and Thermo Fisher Financial Services, Inc. ("**Thermo**") in the amount of $12,443.46,[16]

20    which are purportedly secured by an Abbott iSTAT 1 Upgrade from 200 Series and the related

21    equipment and documentation.

22    **i.    Impairment and Voting**

23    Class 1B is Impaired by the Plan since the treatment of this Class will affect the legal,

24    equitable, or contractual rights of BOW and/or Thermo.  Accordingly, this Class is entitled to

25    vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

26    _____

27    [16] Bank of the West and Thermo Fisher Financial Services, Inc. each filed proofs of Claim asserting Secured Claims in the subject collateral.  Per the documentation provided in support of the proofs of Claim, it appears that Thermo Fisher Financial Services, Inc. assigned its rights under the agreement with the District to Bank of the West in or

28    about June 2013.  Accordingly, under the Plan, the Claims asserted by Bank of the West and Thermo Fisher Financial Services, Inc. are treated as the same Claim.

#### ii.     Treatment

In full satisfaction, release and discharge of the Class 1B Claims, the District shall surrender to BOW or Thermo the collateral for the underlying agreements—namely, one Abbott iSTAT 1 Upgrade from 200 Series and the related equipment and documentation.  The District shall surrender the subject equipment and documentation on or as soon as practicable following the Effective Date.

#### c.     Class 1C – Canon Financial Services, Inc.

Class 1C consists of the Claim asserted by Canon Financial Services, Inc. ("**Canon**") in the amount of $84,275.90, which is purportedly secured by certain office equipment subject to the agreements by and between the District and Canon or its affiliates.

#### i.     Impairment and Voting

Class 1C is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Canon.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### ii.     Treatment

In full satisfaction, release and discharge of the Class 1C Claim, the District shall surrender to Canon the collateral for the underlying agreement.  The District shall surrender the subject equipment and documentation on or as soon as practicable following the Effective Date.

#### d.     Class 1D – Cardinal Health 110, LLC

Class 1D consists of the Claim asserted by Cardinal Health 110, LLC ("**Cardinal**") in the amount of $838.28, which is purportedly secured by certain funds presently held by Cardinal.

#### i.     Impairment and Voting

Class 1D is Unimpaired by the Plan since the treatment of this Class will not affect the legal, equitable, or contractual rights of Cardinal.  Accordingly, this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.[17]

#### ii.     Treatment

---

[17] The Unimpaired status of the Class 1D Claim held by Cardinal shall not affect the right of Cardinal, if any, to cast a vote for or against the Plan on account of the portion of its Claim categorized as a General Unsecured Claim in Class 3.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    In full satisfaction, release and discharge of the Class 1D Claim, Cardinal shall be entitled

2    to retain the funds presently in its possession, which total $838.28.  The remainder of the Claim

3    asserted by Cardinal shall be allowed as a General Unsecured Claim in Class 3 in accordance

4    with the proof of Claim filed by Cardinal.

5          **e.**      **Class 1E – Healthcare Resource Group**

6    Class 1E consists of the Disputed Claim asserted by Healthcare Resource Group ("**HRG**")

7    in the amount of $151,562.73, which is purportedly secured by various personal property and

8    general intangible assets of the District or in which the District has an ownership interest.  Based

9    on the District's books and records, HRG received preferential and/or fraudulent transfers

10    avoidable under the Bankruptcy Code and/or California law and, as such, the HRG Claim is

11    unenforceable under section 502(d).

12          **i.**      **Impairment and Voting**

13    Class 1E is Impaired by the Plan since the treatment of this Class will affect the legal,

14    equitable, or contractual rights of HRG; however, as comprised of a Disputed Claim, this Class is

15    **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

16          **ii.**      **Treatment**

17    As a Disputed Claim, the HRG Claim shall not receive any distributions under the Plan

18    unless and until a court of competent jurisdiction enters a Final Order allowing the HRG Claim or

19    HRG returns any and all avoidable transfers.  If the HRG Claim is adjudged valid, enforceable

20    and secured in whole or in part and/or HRG returns any and all avoidable transfers, the District

21    shall make periodic payments to HRG until the Class 1E Claim is paid in full with interest.

22    Under the Plan, the payments on account of the Class 1E Claim shall begin in the first full month

23    following the allowance of the HRG Claim and/or the return of any and all avoidable transfers. If

24    deemed an Allowed Claim, HRG shall receive monthly payments in the approximate amount of

25    $2,020.00 per month over the life of the Plan, which equates to the full amount of the Claim plus

26    interest at a rate of 3.25% *per annum*.

27

28

EXHIBIT CC  351
611923772.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

#### f.    Class 1F – Optum Bank, Inc.

Class 1F is comprised of the Disputed Claim asserted by Optum in the amount of $1,717,320.24, which is purportedly secured by the District's real property as well as personal property and general intangible assets.  The validity and enforceability of the Optum Claim is the subject of the Optum Adversary.

#### i.    Impairment and Voting

Class 1F is Impaired by this Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Optum.  As Class 1F is comprised solely of the Disputed Claim of Optum, Class 1F is not entitled to vote on the Plan; however, the District and Optum entered into a stipulation permitting Optum to vote in Class 1F.  As such, Class 1F is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### ii.    Treatment

As a Disputed Claim, the Optum Claim shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the Optum Claim.  If the Optum Claim is adjudged valid, enforceable and secured in whole or in part, the District shall pay Optum Cash in an amount equal to the portion of the Optum Claim allowed as a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, no later than one hundred and twenty (120) days following the entry of a Final Order allowing the Optum Claim.  If the Optum Claim is adjudged valid and enforceable but not wholly secured, the portion of the Optum Claim adjudged to be a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, shall be treated pursuant to the preceding sentence and any order(s) entered in the Optum Adversary and the remaining Allowed Claim shall be treated as a General Unsecured Claim in Class 3.  If the Optum Claim is adjudged invalid and unenforceable, Class 1F shall not receive any distributions under the Plan.

### g.     Class 1G – Vi Healthcare Finance, Inc.

Class 1G is comprised of any and all funds advanced to the District by ViHF pursuant to the ViHF LOC.  The anticipated balance of the ViHF LOC on the Effective Date is $1,314,922.  The Class 1G Claim is purportedly secured in accordance with the terms of the ViHF LOC to the extent permitted under California law.  The Class 1G Claim constitutes a Disputed Claim under the Plan.

#### i.     Impairment and Voting

Class 1G is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of ViHF; however, as comprised of a Disputed Claim, this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### ii.     Treatment

The treatment of Class 1G shall depend on the outcome of the ViHF Adversary.  If the District succeeds in disallowing the ViHF Claim in its entirety, Class 1G shall not receive any distributions under the Plan.  If the Bankruptcy Court allows the ViHF Claim as a subordinated claim and transfers any security interest(s) associated therewith to the District, the ViHF Claim shall be treated in a separate class of subordinated Claims—Class 5.  Class 5 shall receive a distribution equal to three percent (3%) of the total claims in the Class, which shall be paid in a lump sum within one hundred and twenty (120) days after entry of an order subordinating the ViHF Claim.  If the Bankruptcy Court allows the ViHF Claim as a Class 1G Claim, the District shall pay the Allowed Secured Claim of ViHF in full within one hundred and twenty (120) days after entry of an order allowing the Class 1G Claim.

### 3.     Class 2 – Post-Petition Claims

Class 2 consists of the Claims listed in Exhibit 6 of the Plan Exhibits.

#### a.     Impairment and Voting

Class 2 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 2 Claims.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 38 -

**b.    Treatment**

In full satisfaction, release and discharge of the Class 2 Claims, holders of Class 2 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the amount listed for each respective claimant in Exhibit 6 of the Plan Exhibits.

**4.    Class 3 – General Unsecured Claims**

Class 3 consists of the Claims listed in Exhibit 7 of the Plan Exhibits.[18]

**a.    Impairment and Voting**

Class 3 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 3 Claims.  Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

**b.    Treatment**

In full satisfaction, release and discharge of the Class 3 Claims, holders of Class 3 Claims shall receive a *pro rata* portion of $100,000.00, which shall be paid as follows: (a) $25,000.00 on December 31, 2019, or as soon thereafter as practicable; (b) $25,000.00 on April 30, 2020; (c) $25,000 on December 31, 2020, or as soon thereafter as practicable; and (d) $25,000 on April 30, 2021, or as soon thereafter as practicable.  In addition to the foregoing distributions, holders of Class 3 Claims shall receive a *pro rata* portion of 25% of any recovery, net of fees, costs, and other administrative expenses associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof.

**c.    Class 4 Election**

Holders of General Unsecured Claims in Class 3 may elect to have their Claim(s) treated as Class 4 Claim(s) by so noting on the Ballot.  Any Class 3 Claim electing treatment under Class 4 shall irrevocably forfeit its status as a Class 3 General Unsecured Claim and the holder of such Claim shall be deemed to have accepted payment as a holder of a Claim in Class 4 in full satisfaction, release and discharge of their Claim.

---

[18] Exhibit 7 does not include any estimate(s) on account of the potential General Unsecured Claim of Optum, if any. If the Bankruptcy Court rules that Optum is entitled to an allowed General Unsecured Claim, such Claim shall be entitled to a *pro rata* portion of any distributions to Class 3.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1     **5.     Class 4 – Convenience Claims**

2         Class 4 consists of the Claims in an amount of $250.00 or less.  A list of all Class 4

3     Claims is set forth in Exhibit 8 of the Plan Exhibits.

4     **a.     Impairment and Voting**

5         Class 4 is Impaired by the Plan since the treatment of this Class will affect the legal,

6     equitable, or contractual rights of the holders of Class 4 Claims.  Accordingly, this Class is

7     entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

8     **b.     Treatment**

9         In full satisfaction, release and discharge of the Class 4 Claims, holders of Class 4 Claims

10    shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal

11    to the lesser of (a) the amount of their Allowed Class 4 Claims or (b) $100.00.

12    **B.     Treatment of Executory Contracts and Unexpired Leases**

13    **1.     Generally**

14        The Bankruptcy Code grants debtors, subject to court approval, the power to assume or

15    reject executory contracts and unexpired leases.  An "executory contract" generally means a

16    contract under which the obligations of both the District and the other party thereto are so far

17    unperformed that the failure of either party to complete performance would constitute a material

18    breach of the subject agreement, thereby excusing the performance of the other party.

19        If a debtor rejects an executory contract or unexpired lease, the rejection operates as a

20    prepetition breach of the subject agreement.  If an executory contract or unexpired lease is

21    assumed by the debtor, the assumption obligates the debtor to perform under the agreement, and

22    damages arising from any subsequent breach of the agreement are treated as administrative

23    expenses.

24    **2.     Assumption of Executory Contracts and Unexpired Leases**

25        Without the need to file any further motions, the District intends to assume and will

26    assume as of the Effective Date all executory contracts and unexpired leases to which it is a party

27    and which was entered into prior to the Petition Date, except (i) for those unexpired leases and

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 40 -

executory contracts specifically identified in subsection 3 below or (ii) as otherwise provided in the Plan.

### a.     Cure Payments

To cure any purported default or arrears under the executory contracts and unexpired leases the District plans to assume through the Plan, the District shall make the cure payments identified on Exhibit 9 to the Plan Exhibits.[19]  The Bankruptcy Court shall resolve all disputes regarding: (i) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (ii) the ability of the District to provide "adequate assurance of future performance" within the meaning of section 365 under the contract or lease to be assumed; and (iii) any other matter pertaining to such assumption and assignment.  If any party to an executory contract or unexpired lease that is to be assumed by the District asserts that the proposed cure payment is insufficient or some other performance is required to assume the subject contract or lease, such party shall file with the Bankruptcy Court and serve upon the District a written statement and accompanying declaration in support thereof specifying the basis for its position and accounting for the purported amount owing under the subject contract or lease not later than thirty (30) days **before** the Confirmation Hearing.  The failure to timely file and serve such a statement shall be deemed to be a waiver of any and all objections to the proposed assumption, including, without limitation, any objection pertaining to the adequacy of the proposed cure payment or the adequate of the assurance of prompt cure and/or of future performance.

### b.     Adequate Assurance of Prompt Cure and Future Performance

What constitutes "adequate assurance" is a factual question to be determined on a case-by-case basis with due regard to the nature and identify of the parties, their past dealings, and present commercial realities.  The District need only show that performance is likely (i.e. more probable than not) in order to assume an executory contract or unexpired lease pursuant to section 365.  As reflected in Section VI.C. herein, the District submits that the means for implementation of the

---

[19] If an executory contract or unexpired lease is not identified on Exhibit 9, the District shall not make any cure payment to any party or parties to such agreement as the District does not have any record of any outstanding amount owing under the subject agreement.  The omission of the subject contract or lease, however, shall not in any way affect the assumption of the subject agreement by and through the Plan.

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  356
611923772.1

Plan constitute adequate assurance of both its ability to "promptly" cure the payments set forth in Exhibit 9, and for future performance. Moreover, as the total amount of the cure payments is only $99,899.18, which the District intends to pay over a period of eighteen (18) months following the Effective Date, even if one or more of the anticipated sources that will be used to fund the Plan does not materialize, the District will be able to meet the cure obligations set forth in Exhibit 9.

**3.      Rejection of Executory Contracts and Unexpired Leases[20]**

Without the need to file any further motions, the District elects to reject and shall be deemed to have rejected as of the Effective Date the following executory contracts and unexpired leases:[21]

- Master Lease Agreement dated as of November 13, 2012 between the District, as lessee, and General Electric Capital Corporation, as lessor, and all other leases based thereon, pertaining to, among other things, a Proteus X Ray XR/a 65W Radiographic System;

- Lease dated March 7, 2013 between the District, as lessee, and Thermo Fisher Financial Services, Inc., as lessor, and/or Bank of the West, as assignee of Thermo Fisher Financial Services, Inc., pertaining to an Abbott iSTAT 1 Upgrade from 200 Series and related equipment and documentation;

- Agreement dated October 9, 2014, between the District and Thermo Fisher Financial Services, Inc., pertaining to a VITROS 350 Chemistry System;

- Lease between the District, as lessee, and Healthland, Inc., as lessor, pertaining to certain medical billing hardware and software;

- Lease No. x005 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4453);

---

[20] The Management Services Agreement ("**MSA**") by and between the District and HCCA was rejected via stipulation prior to the preparation and submission of the Plan. *See* D.E. 377. As such, the MSA is not listed in this section. The exclusion of the MSA shall not in any way alter the prior rejection of the MSA or the agreement(s) of the District and HCCA relation to such rejection.

[21] Any reference contained herein to an agreement as a "lease" shall not constitute an admission regarding whether the subject agreement constitutes "true lease" under applicable law.

- 42 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- Lease No. x006 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner Advance 6255 (serial number x1950);

- Lease No. x007 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4451);

- Lease No. x008 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to IRA 4235 (serial number x1785), IRA 1025iF (serial number x5469), IRA 400iF (serial number x2533), IRA 400iF (serial number x1857), IRA 400iF (serial number x1862), and IR 1730iF (service only) (serial number x5155);

- Agreement between the District and Celleration Inc.;

- Employment Agreement between the District, as employer, and Dr. Kenneth L. Saeger, as employee;

- Employment Agreement between the District, as employer, and Dr. Milton R. Jones, as employee;

- Employment Agreement between the District, as employer, and Dr. Steve Chong Luo, as employee;

- Service Agreement between the District and Laboratory Specialists International, as service provider;

- Lease between the District, as lessee, and Marlin Leasing Corporation, as lessor, pertaining to certain medical equipment, including a Horiba Medial Pentra 60 C+, two Unimac Natural Gas Dryers, and one Ultrascan table;

- Agreement between the District and T System, Inc.; and

- Agreement between the District and Tosoh Bioscience, Inc.

### a. Claims Arising from Rejection

Unless otherwise agreed by the District and the counterparty or counterparties to the subject contract or lease, proofs of Claim arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the District no later than thirty (30) days after the Effective Date. The failure to properly and timely assert a rejection damages Claim shall result in such Claim being forever barred and rendered unenforceable

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

against the District or its assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be classified into Class 3 (General Unsecured Claims) and treated accordingly.

**C.      Means for Execution and Implementation of Plan**

Under the Plan, the District shall be required to make Cash disbursements totaling approximately $1,33,071 to the holders of Allowed Claims over a term of approximately seven (7) years while paying an estimated $9,476,530 per year for the costs and expenses associated with maintaining the operations of the District's facilities and services, including, without limitation, costs associated with staffing, supplies and equipment, and capital expenditures for the acquisition of new property and maintenance of current property, which total.

The Plan will be funded utilizing primarily the following sources:

- <u>Cash on Hand</u>. The District estimates that it will have approximately $311,131 in cash on hand on the Effective Date.

- <u>Operations</u>. The District estimates that it will generate approximately $9,754,532 per year from the operations.[22]

- <u>Tax Revenues</u>. The District anticipates receiving approximately $900,000 per year on account on approved tax assessments.

- <u>Parcel Tax Revenues</u>. As set forth in greater detail, *supra*, at Section V.B.2., the District anticipates receiving additional parcel tax revenues of $602,000 per year beginning in December 2018.

- <u>Transient Occupancy Tax</u>. As set forth in greater detail, *supra*, at Section V.B.2., the District anticipates receiving revenues from the Transient Occupancy Tax (TOT) of $34,600 per year.

- <u>Inyo County Treasury Loan</u>. In accordance with its prior practices, the District intends to borrow funds from Inyo County to the extent necessary to cover any cash shortage during the term of the Plan. The District would repay any such loan(s) with interest upon receipt of funds from the Intergovernmental Transfer

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[22] The estimated operational revenues includes the estimated revenues from the facility for medical infusion services.

EXHIBIT CC  359
611923772.1

program (described in Exhibit 5 as "Supplemental Funds") or upon the availability

of funds.  Interest on such loans accrues at the rate of the current Local Agency

Investment Fund at the time of financing plus 100 basis points.

- <u>Litigation Proceeds</u>.  As discussed *supra*, the District intends to commence

litigation against certain individuals and entities.  If successfully, the District may

obtain damages in excess of $6,000,000 and avoid certain fraudulent and/or

preferential payments to creditors.  Such funds will be available for the payment of

Claims under the Plan and the maintenance of the District's operations.

In sum, the District anticipates having approximately $311,131 in cash on hand on the

Effective Date and approximately $10,391,150 in revenues per year.  As a result, and as the

financial projections (Exhibit 5) reflect, the District is confident it will be able to maintain its

operations so that it can continue providing desperately needed medical treatment to the

community at large while making the payments required under the Plan.

**D.    Distributions**

**1.    Disbursing Agent**

On and after the Effective Date, the District shall serve as disbursing agent for payments

to be made under the Plan and in accordance with section 944.  However, the District may elect to

retain one or more agents to perform or assist it in making distributions pursuant to the Plan and

may provide reasonable compensation to any such agent(s) without further notice or Bankruptcy

Court approval.

**2.    Delivery of Distributions**

All distributions to any holder of an Allowed Claim shall be made at the address of such

holder as set forth in the books and records of the District or its agents unless (i) the holder has

designated an alternate address for payment in a proof of Claim filed with the Bankruptcy Court

or (ii) specifies an alternate address on its Ballot.  Any and all notifications of address changes

should be addressed to Karla Hernandez at Baker & Hostetler LLP, 11601 Wilshire Boulevard,

Suite 1400, Los Angeles, California 90024, or khernandez@bakerlaw.com.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 45 -

3.      **Undeliverable Distributions**

***Holding of Undeliverable Distributions.***  If any distribution to a holder of an Allowed Claim is returned to the District or its agent as undeliverable, no further distributions shall be made to such holder unless and until the District is notified in writing of such holder's correct address.  Unless and until the District is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be set aside and held in a segregated account.

***Notification and Forfeiture of Unclaimed Property.***  On the first anniversary of the Effective Date, the District will file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and last-known address of the individuals and entities entitled to the Unclaimed Property.  The District shall not otherwise be required to attempt to locate any such individual or entity.  On the second anniversary of the Effective Date, all remaining Unclaimed Property and accrued interest or dividends earned thereon will be remitted to and vest in the District.  Additionally, such individuals and entities shall be deemed to have waived and forfeited their right to any future payments under the Plan and such funds shall be retained by the District.  Notwithstanding the non-payment of any forfeited Claims, such Claims shall be deemed satisfied and discharged as if paid pursuant to the terms of the Plan.

4.      **Distribution of Cash**

Any payment of Cash to be made by the District or its agent pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the District.

5.      **Timeliness of Payments**

Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within fourteen (14) Business Days after the date(s) specified in the Plan.  Whenever any distribution to be made under the Plan is due on a day that is not a Business Day, such distribution instead shall be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

6.      **Default and Cure**

In the event the District fails to make any payment required under the Plan in a timely manner, the affected creditor(s) shall serve the District with a notice of default not later than thirty

- 46 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(30) days after the purported default along with any documentation supporting the alleged default. Not later than sixty (60) days after receipt of the notice of the purported default, the District shall either (i) cure the default or (ii) serve the affected creditor(s) with a statement and supporting documentation contesting the allegation of default. In the event the District contests an alleged default, not later than five (5) Business Days after serving a response to a purported default, the District shall file a motion with the Bankruptcy Court requesting a resolution of the dispute relating to the alleged default and set the motion for hearing on the first available hearing date not sooner than fourteen (14) days after filing the motion. If the Bankruptcy Court rules that the non-payment constitutes an event of default under the Plan, the District shall cure the purported default not later than five (5) Business Days following the entry of a Final Order of the Bankruptcy Court adopting the finding with respect to the purported default.

### 7.    Compliance with Tax Requirements

Any and all distributions pursuant to the Plan shall be subject to any applicable tax withholding and reporting requirements imposed on it by any governmental unit. In connection with each distribution which requires the filing of an information return (such as Internal Revenue Service Form 1099 or 1042) or withholding, the District shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information is required by law to avoid withholding has not been received by the District at the time the district is to be made, the District, at its sole option, may withhold the amount required and distribute the balance to such entity or the District may decline to make such distribution(s) until the information is received.

### 8.    Time Bar to Cash Payments

Checks issued by the District on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be submitted in writing to Karla Hernandez via first-class mail addressed to Karla Hernandez, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Los Angeles, California 90024, or via email addressed to khernandez@bakerlaw.com.  Any request for reissuance of an expired check must be not later than 180 calendar days following the initial issuance of the subject check.  After such date, the amounts stated in the voided check(s) shall be deemed forfeited and the District shall retain such funds.  Any amounts forfeited pursuant to the preceding sentence shall be deemed paid to and received by the subject claimant for purposes of calculating the amounts owing to such creditor under the Plan.

**9.      No *De Minimis* Distributions**

With the exception of Class 4 Claims (Convenience Class Claims), no payment of less than ten dollars (US$10.00) will be made by the District on account of any Allowed Claim.

**10.      No Distributions on Account of Disputed Claims**

Notwithstanding anything to the contrary in the Plan, no distributions shall be made on account of any part of any Disputed Claim or Disallowed Claim unless and until such Claim becomes an Allowed Claim and only to the extent such Claim constitutes an Allowed Claim. Distributions made after the Effective Date with respect to Claims that were not Allowed Claims as of the Effective Date, but are later determined to be Allowed Claims, shall be deemed to have been made on time and in accordance with the terms of the Plan.

If any distributions are made prior to the resolution of a dispute pertaining to a Claim, the portion that would be payable on account of such Claim if such Claim was an Allowed Claim, shall be held in a segregated bank account.  If the Claim is subsequently adjudicated to be an Allowed Claim, the segregated funds shall be distributed to the holder of such Claim.  Any interest accrued on account of the segregated funds shall be paid to and retained by the District.

**11.      No Post-Petition Date Accrual**

Unless otherwise specifically provided in the Plan, specifically agreed to by the District in writing, or allowed by Final Order of the Bankruptcy Court, the District will not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  363
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

**E.    Disputed Claims; Objections to Claims; Prosecution of Objections to Disputed Claims**

**1.    Claim Objection Deadline; Prosecution of Objections**

The District shall have the right to object to the allowance of Claims with respect to which liability or allowance is disputed in whole or in part.  Unless otherwise ordered by the Bankruptcy Court, the District shall file and serve any such objections to Claims (whether by motion or commencement of an adversary proceeding) by not later than one hundred and eighty (180) days after the Effective Date or, in the case of Claims properly filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims.

**2.    Reserves, Payments, and Distributions with Respect to Disputed Claims**

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the District or its agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in the manner set forth in the Plan.  Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, but in no event more than sixty (60) days thereafter, unless otherwise provided in the Plan, order of the Bankruptcy Court, or agreement between the District and the subject Claim holder.  Unless otherwise specifically provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest will be paid on Disputed Claims that later become Allowed Claims.

**F.    Continuing Jurisdiction of the Bankruptcy Court**

The Plan provides for the Bankruptcy Court to retain jurisdiction over various matters relating to the Chapter 9 Case, the Plan, and other related items.  Readers are encouraged to review the Plan carefully to ascertain the nature of the Bankruptcy Court's continuing jurisdiction following the Effective Date.

**VII.    CONFIRMATION AND EFFECTIVE DATE OF THE PLAN**

**Because the law with respect to confirmation of a plan of adjustment is complex, creditors concerned with issues regarding confirmation of the Plan should consult with**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**independent counsel and/or a financial advisor.** The following discussion is intended solely for the purpose of providing basic information concerning certain confirmation issues. The District cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements discussed in this Disclosure Statement include acceptance of the Plan by the requisite number of creditors and whether the Plan is in the "best interests" of creditors. These requirements, however, are not the only requirements for confirmation and the Bankruptcy Court will not confirm the Plan unless and until it determines that the Plan satisfies all applicable requirements, including requirements which may not be discussed or referenced in this Disclosure Statement

### A. Voting and Right to be Heard at Confirmation

#### 1. Who May Support or Object to Confirmation of the Plan?

Any party in interest may support or object to the confirmation of the Plan. Even parties in interest that may not have a right to vote on the Plan (e.g., individuals and entities in Unimpaired Classes) may still have a right to support or object to confirmation of the Plan by filing pleadings supporting or objecting to confirmation of the Plan.

#### 2. Who May Vote to Accept or Reject the Plan?

A creditor generally has the right to vote for or against the Plan if its Claim is both (i) an Allowed Claim for purposes of voting and (ii) classified in an Impaired Class. Generally, a Claim is deemed allowed if a proof of Claim was timely filed or the Claim is scheduled as undisputed, non-contingent and liquidated; *provided, however*, that if an objection to the Claim has been filed or raised in the Plan or otherwise, or a Claim is otherwise disputed or contested, the claimant cannot vote unless and until the Bankruptcy Court, after notice and a hearing, either overrules the objection or allows the Claim for voting purposes.

The holders of the following types of Claims <u>are not</u> entitled to vote on the Plan: (a) Disallowed Claims; (b) Claims that are subject to a pending objection (whether by way of the Plan or independent motion or adversary proceeding) and that have not been allowed for voting

- 50 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

purposes; (c) Claims that are not Impaired under the Plan; (d) Administrative Claims, since such Claims are not placed in Classes and are required to receive specific treatment; and (e) Professional Claims, since such Claims are not placed in Classes.

Each holder of an Allowed Claim classified into one or more of the Voting Classes shall be entitled to vote each such Claim to accept or reject the Plan.

### 3. Votes Required to Confirm Plan

The Bankruptcy Court cannot confirm the Plan unless, among other things, (a) at least one Impaired Class has accepted the Plan without counting the votes of any Insiders within that Class and (b) either all Impaired Classes have voted to accept the Plan, or the Plan can be "crammed-down" with respect to each and every dissenting Impaired Class.

A Class of Claims is considered to have accepted the Plan when more than one-half in number **and** at least two-thirds in dollar amount of the Claims that actually voted in that Class have voted in favor of the Plan.

### B. The "Best Interests" Test

The Bankruptcy Court also must determine pursuant to section 943(b)(7) that the Plan is in the "best interests of creditors", which in the chapter 9 context means that the treatment of Claims under the Plan must be better than the only meaningful alternative available, which is dismissal of the Chapter 9 Case. The District submits that the Plan is in the best interests of all creditors because significant payments will be made to all Impaired Classes, and holders of Allowed Claims in all Impaired Classes will receive greater distributions under the Plan than those creditors would receive were the Chapter 9 Case dismissed. *See* Exhibit 5 to Plan Exhibits.

In contrast, in the absence of the Plan, the District's creditors would be left to "fend for themselves." Individual creditor collection actions would likely aggregate, through suits and attachments, to make continued operation of the District's facilities untenable (if not impossible), thus eliminating the ability to pay the obligations of the District. More precisely, but for the adjustment to its obligations proposed through the Plan, the District will not be unable to alter the treatment of certain Claims, including General Unsecured Claims. The District will also lose the benefits afforded to debtors under the Bankruptcy Code, which, in essence, would result in

- 51 -

substantial interference in the operations of the Hospital, the SNF, and/or the Clinic as creditors sought to recover collateral and levy against the District's assets to satisfy their Claims, which would prevent the District from utilizing those assets to maintain operations and pay its obligations in an orderly and equitable fashion over a term of years. Furthermore, the District would likely be unable to resolve disputes regarding certain purported Claims (including, without limitation, the Claim asserted by Optum Bank) without the need for costly and protracted litigation—expenses that would further diminish, if not decimate, operational capabilities. As a result of the foregoing, the proposed ballot initiatives underpinning the Plan would likely fail as the District would be unable to maintain its operations or establish a long-term work-out plan for the payment of its obligations in the face of operational difficulties causes by the debt collection efforts of its creditors and the costs of litigation. In short, the District cannot afford to pay its creditors absent the debt relief afforded by the Plan, and dismissal of the Chapter 9 Case would likely result in chaos, the closure of the District's facilities and cessation of its services, and, thus, an inability to not only pay most (if not all) of its creditors, but an inability to continue providing essential services to the community at large.

## C. Feasibility

To satisfy the requirement set forth in section 943(b)(7) that the Plan be feasible, the District must demonstrate the ability to make the payments required under the Plan while maintaining its operations at the level necessary to the continued viability of the health care district. Based on the District's analysis of operational revenues, anticipated bond revenues, and supplemental tax revenues, as well as the projected Plan distributions, the District is confident it possesses the financial ability to maintain its current operations, which is necessary to continue providing services to the community, while simultaneously meeting its obligations under the Plan. Indeed, based on the financial projections (*see* Exhibit 5), the District will be able to maintain a positive cash position while servicing operational and Plan debts and simultaneously maintaining a reserve for future expenditures, including capital expenditures. Accordingly, the District submits that the Plan is feasible.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### D.     "Cramdown"

The Bankruptcy Code provides that the Bankruptcy Court may confirm a plan of adjustment that is not accepted by all Impaired Classes if at least one Impaired Class of Claims accepts the Plan and the so-called "cramdown" provisions set forth in sections 1129(b)(1), (b)(2)(A) and (b)(2)(B) are satisfied.  The Plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of section 943(b), it (a) is "fair and equitable," and (b) does not discriminate unfairly with respect to each Class of Claims that is Impaired under and has not accepted the Plan.  The District believes that the Plan satisfies the foregoing requirements and, as such, may be confirmed over the objection of any dissenting Class of Claims.

**As noted above, the District has reserved the right to request that the Bankruptcy Court confirm the Plan by "cramdown" in accordance with sections 1129(b)(1), (b)(2)(A) and (b)(2)(B).**

### E.     Conditions Precedent

#### 1.     Condition Precedent to Confirmation

The Plan shall not be confirmed unless and until the following conditions precedent have been satisfied or waived: (1) the Plan satisfies the requirements of section 943(b) of the Bankruptcy Code, as applicable; (2) the District has received any and all authorizations, consents, regulatory approvals, rulings, no-action letters, opinions, and documents that are necessary to implement the Plan and that are required by law, regulation or order, including, but not limited to, those required under section 943(b)(6) of the Bankruptcy Code; and (3) the Bankruptcy Court enters a Confirmation Order in a form and substance satisfactory to the District.

#### 2.     Conditions Precedent to Effective Date

The Plan will not become effective and operative unless and until the Effective Date occurs.  Section XIII of the Plan sets forth certain conditions to the occurrence of the Effective Date.  The Effective Date will occur on the first Business Day after which the conditions set forth in Section XIII.B. of the Plan are satisfied or waived.  Based on currently available information, the District anticipates that the Effective Date will occur in or about March 2018.

Baker & Hostetler llp
Attorneys at Law
Los Angeles

EXHIBIT CC  368
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**3.**     **Non-Occurrence of Effective Date**

The Plan provides that, if the Bankruptcy Court confirms the Plan but the conditions precedent to the Effective Date thereof are not satisfied, upon notification submitted by the District to the Bankruptcy Court: (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the District and all holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all of the District's obligations with respect to the Claims shall remain unchanged and nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the District or any other entity or to prejudice in any manner the rights, remedies, or claims of the District or any entity in any further proceeding involving the District.

**4.**     **Waiver of Conditions Precedent to Effective Date**

Under the Plan, the District may waive in whole or in part any condition to the Effective Date of the Plan or the payment of any Effective Date Payments. Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**F.**     **Effect of Confirmation**

Confirmation of the Plan and the occurrence of the Effective Date will have a number of important and binding effects, some of which are summarized below. Readers are encouraged to review Section XI of the Plan carefully and in its entirety to assess the various consequences of confirmation of the Plan.

**1.**     **Dissolution of the Committee**

On the Effective Date, the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 9 Case and the Committee shall be deemed dissolved and its appointment terminated. Any professionals retained by the Committee and/or the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred.

### 2. Discharge of the District

Pursuant to section 944, upon completion of all payments required under the Plan, the District shall be discharged from all debts (as defined in the Bankruptcy Code) of the District and Claims against the District other than (i) any debt specifically and expressly excepted from discharge by the Plan or the Confirmation Order and (ii) any debt owed to an entity that, before the confirmation of the Plan, had neither notice nor actual knowledge of the Chapter 9 Case.

The rights afforded in the Plan and the treatment of all holders of Claims, whether Impaired or Unimpaired, shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the District or any of its properties, assets or interests in property.

### 3. Injunction

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Pre-Confirmation Date Claims shall be permanently enjoined from and after the Confirmation Date from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Pre-Confirmation Date Claims against the District or its property; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the District or its property with respect to such Pre-Confirmation Date Claims; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against the District or its property; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the District with respect to any such Pre-Confirmation Date Claims.

### 4. Term of Existing Injunctions and Stays

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 9 Case pursuant to sections 105, 362, or 922, or otherwise, and in existence immediately prior to the Confirmation Date, shall remain in full force and effect unless and until the District receives a discharge in accordance with Section XI.A. of the Plan.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  370
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## 5.    Exculpation

Except with respect to obligations specifically arising pursuant to or preserved in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, obligation, cause of action or liability for any Claim in connection with or arising prior to or on the Effective Date for any act taken in connection with, or related to, (i) the administration of the Chapter 9 Case, (ii) the negotiations, pursuit, confirmation, solicitation of votes for, consummation or implementation of the Plan, (iii) the administration of the Plan or property to be distributed under the Plan, (iv) the Cal. Gov't Code § 53760 process or compliance therewith, (v) any document, release, contract, or other instrument entered into in connection with, or related to, the Plan, and/or (vi) any other transaction contemplated by or entered into in connection with the Plan or entered into during the administration of the Chapter 9 Case; *provided*, *however*, that nothing shall be deemed to release or exculpate any Exculpated Party for its willful misconduct or gross negligence. In all respects, each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.

## 6.    Good Faith Compromise

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including, without limitation, the exculpation provisions, constitute a good faith compromise and settlement of all Claims, causes of action and/or controversies relating to any and all rights that a holder of a Claim may have against the District, any distributions to be made pursuant to the Plan on account of any such Claim, and any and all Claims and causes of action of any party. The entry of the Confirmation Order constitutes the Bankruptcy Court's approval, effective as of the Effective Date, of the compromise or settlement of all such Claims and/or controversies and the Bankruptcy Court's finding that all such compromises or settlements are in the best interests of the District and the holders of Claims, and are fair, equitable, and reasonable.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## VIII.    RESERVATION OF RIGHTS OF ACTION

Any and all claims, causes of action, rights of recovery, rights of offset, rights of recoupment, rights to refunds, and similar rights held by the District shall be retained by the District, including, without limitation, the claims and causes of action alleged in the Optum Adversary.  The failure to identify any potential or existing Right of Action retained by the District is not intended to and shall not limit the rights of the District to pursue any such action(s).  Unless a Right of Action is expressly waived, relinquished, released, compromised, or settled (in the Plan or otherwise), the District expressly reserves all Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Rights of Action upon or after the Confirmation Date.  In addition, the District expressly reserves the right to pursue or adopt against any other entity any claims alleged in any lawsuit in which the District is a defendant or an interested party.

## IX.    RISK FACTORS

Holders of Claims against the District should read and consider carefully the factors set forth below, as well as the other information set forth in this Disclosure Statement and the documents delivered with this Disclosure Statement and/or incorporated by reference, prior to voting to accept or reject the Plan.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

As discussed herein, the Plan is premised on revenues from four principal sources— namely, (i) operational revenues, (ii) revenues derived from the increased parcel tax, and (iii) revenues derived from the TOT.

1.    With respect to the provision of medical infusion treatments, the District has yet to establish the facility or provide the services; accordingly, there is a risk that the costs of acquiring the necessary equipment and establishing the treatment facility may exceed the cost estimates, that the facility may take longer than nine (9) months to establish, that the operational expenses may exceed the estimated costs,

- 57 -

1   and/or that the demand for such services may be less than the projected demand—

2   thereby reducing the anticipated revenues.

3   2.   With respect to the parcel tax revenues, the District requires voter approval for the

4   parcel tax initiative; accordingly, there is a risk that voters will not approve the

5   parcel tax increase.  Notwithstanding, as the Effective Date is expressly

6   conditioned upon the approval of the parcel tax initiative, such approval is not a

7   risk factor in considering the District's ability to perform under the Plan; however,

8   the approval of the parcel tax initiative is a risk factor in considering whether the

9   Effective Date will occur.

10  3.   With respect to the TOT revenues, the District requires approval from the Inyo

11  County Board of Supervisors to receive a portion of the TOT; accordingly, there is

12  a risk that Board will not approve the TOT increase.  Notwithstanding, as the

13  Effective Date is expressly conditioned upon the approval of the TOT initiative,

14  such approval is not a risk factor in considering the District's ability to perform

15  under the Plan; however, the approval of the TOT initiative is a risk factor in

16  considering whether the Effective Date will occur.

17  4.   With respect to potential litigation revenues, the District may not prevail in the

18  potential litigation described herein.  If the District is unsuccessful, the District

19  may not receive the potential damages awards or may be required to pay certain

20  sums to creditors, including, without limitation, Optum and ViHF.  The District,

21  however, does not require the potential damages awards to perform under the Plan

22  and, moreover, has provided for the contingency that the Claims of Optum and/or

23  ViHF are adjudged to be Allowed Secured Claims.

24  5.   The Plan also relies upon operational revenues from the Hospital, the SNF, and the

25  Clinic to fund operations and pay Allowed Claims under the Plan.  As such, there

26  are several risks related to the District's operations that may affect the Plan,

27  including the following:

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a. The demand for medical services in Inyo County may decline and, thus, decrease revenues;

b. Reimbursement from insurance companies and governmental programs (e.g., Medicare and MediCal) may decrease and, thus, decrease revenues; and

c. Costs associated with operating the business (e.g., payroll, medicine, equipment, medical supplies, utilities, etc.) may increase and, thereby, decrease net revenues.

There is also a risk that the amount of the Allowed Claims may be greater than currently estimated, in which case distributions to creditors may be reduced.

## X.    FEDERAL INCOME TAX CONSEQUENCES

The implementation of the Plan may have federal, state, local and foreign tax consequences to the District and its creditors.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan.  This Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or tax advice to any person, and the summary contained herein is provided for informational purposes only.  However, because the District is a municipality and, thus, is treated as a political subdivision of the State of California for federal income tax purposes, the District believes that it will not be subject to any federal income tax liability from the implementation of the Plan.

As individual circumstances may differ, and the income tax consequences of a chapter 9 case are complex and uncertain, this summary does not address the federal income tax consequences that may be relevant to the creditors of the District as a result of the Plan. Accordingly, creditors should consult with their own tax advisors regarding the potential income tax consequences of the Plan as it pertains to them.

**To ensure compliance with requirements imposed by the Internal Revenue Service, you are hereby notified that any discussion of tax matters contained herein (including any attachments) is not intended or written to be used by any taxpayer, and cannot be used by any taxpayer, for the purpose of avoiding tax-related penalties that otherwise may be**

- 59 -

imposed under the Internal Revenue Code on the taxpayer.  Such discussion of tax matters was written in connection with the solicitation of votes in favor of the Plan.  The District and its creditors should seek tax advice regarding the tax consequences to them of the Plan based on their particular circumstances from an independent tax advisor.

## XI.    RECOMMENDATION AND CONCLUSION

The District believes that confirmation and implementation of the Plan represents the best option for the District and its creditors.  Accordingly, **the District urges holders of Impaired Claims to vote to accept the Plan by so indicating on their Ballots and returning them as specified in this Disclosure Statement and on their Ballots.**

Dated:    January 17, 2018           SOUTHERN INYO HEALTHCARE DISTRICT

By:    /s/ Mark Lacey [signature to follow]
         Mark Lacey

Vice President of the Board of Directors for Southern Inyo Healthcare District

Submitted by:

**BAKER & HOSTETLER LLP**

By:    /s/ Michael T. Delaney
         Ashley M. McDow
         Michael T. Delaney

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT CC  375
611923772.1

SECOND AMENDED DISCLOSURE STATEMENT FOR PLAN OF ADJUSTMENT OF DEBTS