**61**

1  HAGOP T. BEDOYAN, CSB NO. 131285
2  **KLEIN, DENATALE, GOLDNER,**
   **COOPER, ROSENLIEB & KIMBALL, LLP**
3  5260 N. Palm Avenue, Suite 205
   Fresno, California  93704
4  Telephone: (559) 438-4374
   Facsimile:  (661) 326-0418
5  Email: hbedoyan@kleinlaw.com

6  Brandon N. Krueger, Esq. (SBN 221432)
7  *bkrueger@sallspencer.com*
   Lara A.S. Callas, Esq. (SBN 174260)
8  *lcallas@sallspencer.com*
   SALL SPENCER CALLAS & KRUEGER
9  A Law Corporation
   32351 Coast Highway
10 Laguna Beach, CA 92651
   Telephone: (949) 499-2942
11 Facsimile: (949) 499-7403

12
   Attorneys for Healthcare Conglomerate Associates, LLC,
13 Vi Healthcare Finance, Inc., Medflow P.C., and Tulare Asset Management, LLC

14

15                **UNITED STATES BANKRUPTCY COURT**

16          **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

17 In re:                          │  Case No.: 16-10015-A-9

18 SOUTHERN INYO HEALTHCARE        │  Chapter    9
   DISTRICT,
19                                 │  DC No.:    KDG-5

20          Debtor.                │  Date:    November 29, 2018
21                                 │  Time:    1:30 p.m.
                                   │  Place:   United States Bankruptcy Court
22                                 │           2500 Tulare Street, Fifth Floor
23                                 │           Department A, Courtroom 11
                                   │           Fresno, California
24                                 │  Judge:   Honorable Fredrick E. Clement

25

26      **EXHIBITS IN SUPPORT OF DECLARATION OF HAGOP T. BEDOYAN IN**
   **SUPPORT OF MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING**
27              **SUBPOENA TO BAKER HOSTETLER LLP**

28

3PI5529                          1                              EXHIBITS

| | | | |
|---|---|---|---|
| 1 | A | Memorandum of Points and Authorities in Support of the DQ Motion [Doc No. 486] | 3 – 30 |
| 2<br>3 | B | Declaration of Yorai Benzeevi, M.D. in support of the DQ Motion [Doc No. 488] | 31 – 36 |
| 4 | C | Letter from Hagop T. Bedoyan to Matthew Price of Foley & Lardner dated September 17, 2018 | 37 – 42 |
| 5 | D | E-mail from Fahim Farivar to Hagop T. Bedoyan dated October 26, 2018 | 43 |
| 6 | E | Amended Notice of Subpoena | 44 – 56 |
| 7 | F | Letter from Lara Callas to Elizabeth Green and John Parker dated October 29, 2018 | 57 |
| 8<br>9 | G | Letter from John Parker to Lara Callas dated October 29, 2018 | 58 |
| 10 | H | E-mails exchanged with Ashley McDow dated October 29, 2018 | 59 – 61 |

11

12   Dated: November 6, 2018

KLEIN, DENATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL LLP

13

14

By: /s/ Hagop T. Bedoyan

15         HAGOP T. BEDOYAN,
Attorneys for HealthCare Conglomerate
16         Associates, LLC, Vi Healthcare Finance,
Inc., Medflow P.C., and Tulare Asset
17         Management, LLC

18

19

20

21

22

23

24

25

26

27

28

**28**

1   HAGOP T. BEDOYAN, CSB NO. 131285
    **KLEIN, DENATALE, GOLDNER,**
2     **COOPER, ROSENLIEB & KIMBALL LLP**
    5260 N. Palm Avenue, Suite 205
3   Fresno, California 93704
    Telephone: (559) 438-4374
4   Facsimile: (661) 326-0418
    E-mail: hbedoyan@kleinlaw.com
5
    Brandon N. Krueger, Esq. (SBN 221432)(Admission Pending)
6   *bkrueger@sallspencer.com*
    Lara A.S. Callas, Esq. (SBN 174260)(Admission Pending)
7   *lcallas@sallspencer.com*
    SALL SPENCER CALLAS & KRUEGER
8   A Law Corporation
    32351 Coast Highway
9   Laguna Beach, CA 92651
    Telephone: (949) 499-2942
10  Facsimile: (949) 499-7403

11  Attorneys for HealthCare Conglomerate Associates, LLC.
12  and Vi Healthcare Finance, Inc.

13

14              **UNITED STATES BANKRUPTCY COURT**

15      **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

16  In re:                          Case No. 16-10015-A-9

17                                  Chapter  9
    SOUTHERN INYO
18  HEALTHCARE DISTRICT,            DC NO.: KDG-4

19              Debtor.             Date:    November 14, 2018
                                    Time:    1:30 p.m.
20                                  Place    United States Bankruptcy Court
                                             2500 Tulare Street, Fifth Floor
21                                           Department A, Courtroom 11
                                             Fresno, California
22                                  Judge:   Honorable Fredrick E. Clement

23

24

25  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO**
    **DISQUALIFY FOLEY & LARDNER AND ASHLEY MCDOW**
26  **<u>AS COUNSEL FOR DEBTOR</u>**

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 5

I.      INTRODUCTION ......................................................................... 5

II.     FACTUAL SUMMARY ................................................................ 7

     A.    Baker's Extensive Representation of the Benzeevi Group........................ 7

     B.    Ms. McDow, First with Baker, then with Foley, Represents Inyo Adverse to Her Former Clients. ..................................................................... 7

     C.    Disqualification of Ms. McDow and Foley will Not Prejudice Inyo or the Resolution of the Bankruptcy. .................................................. 13

III.    LEGAL ARGUMENT ................................................................ 14

     A.    Standards Applicable to Disqualification Based on Conflicts of Interest 14

     B.    The Continuing Duties of Loyalty and Confidentiality Require Disqualification of McDow and Foley ..................................................... 15

     C.    Ms. McDow's Prior and Continuing Violation of the Duty of Loyalty Requires Disqualification ........................................................ 17

     D.    Ms. McDow's Prior and Continuing Duty of Preserve the Benzeevi Group's Confidential Information Also Requires Disqualification......... 19

     E.    Baker's and McDow's Conflict of Interest Must be Imputed to Foley & Lardner ................................................................................. 22

     F.    Baker's Conflict Waiver is Unenforceable and Insufficient to Waive the Present Conflict ..................................................................... 25

     G.    The Benzeevi Group Has Not Otherwise Waived the Conflict.............. 26

IV.    CONCLUSION ......................................................................... 28

# TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.* (C.D. Cal. 2012)
913 F.Supp.2d 900 ................................................................................................................... 23

*Arias v. FCA US LLC* (E. D. Cal. July 12, 2018)
2018 WL 3419709 .............................................................................................................. 15, 20

*Beltran v. Avon Products, Inc.* (C.D. Cal. 2012)
867 F. Supp. 2d 1068 ......................................................................................................... 19, 23

*Davis v. EMI Group Ltd.* (N.D. Cal., Jan. 4, 2013, No. 12-CV-1602 YGR)
2013 WL 75781 ....................................................................................................................... 21

*In re County of Los Angeles* (9th Cir. 2000)
223 F. 3d 990 ........................................................................................................................... 14

*In re Jaeger* (Bankr. C.D. Cal. 1997)
213 B.R. 578 ................................................................................................................ 17, 22, 26

*In re McIntosh* (9th Cir. 2017)
697 Fed. Appx. 569 .................................................................................................................. 16

*In re McIntosh* (Bankr. N.D. Cal. Jan. 16, 2015)
No. 13-11774 AJ, 2015 WL 241130 .................................................................................. 18, 19

*Lennar Mare Island, LLC v. Steadfast Ins. Co.* (E. D. Cal. 2015)
105 F. Supp. 3d 1100 .................................................................................................. 14, 17, 19

*Matter of Howrey LLP* (9th Cir. 2017)
698 Fed. Appx. 881 .................................................................................................................. 17

*McGrane v. Howrey, LLP* (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD)
2015 WL 6126792 .................................................................................................................... 18

*National Grange of Order of Patrons of Husbandry v. California Guild* (E.D. Cal., May 12, 2017)
2017 WL 2021731 .................................................................................................................... 23

*Trone v. Smith* (9th Cir. 1980)
621 F.2d 994 ............................................................................................................................ 21

*Western Sugar Coop. v. Archer-Daniels-Midland Co.* (C.D. Cal. 2015)
98 F.Supp.3d 1074.................................................................................................................... 20

**California Cases**

*City and County of San Francisco v. Cobra Solutions, Inc.* (2006)
38 Cal.4th 839.................................................................................................................... 20, 22

*Gilbert v. National Corp. for Housing Partnerships* (1999)
71 Cal.App.4th 1240................................................................................................................ 25

3

(KDG-4) MEMORANDUM OF P's and A's MOTION TO DISQUALIFY

*In re Complex Asbestos Litigation* (1991)
    232 Cal.App.3d 572 ......................................................................................24, 27

*Kirk v. First American Title Ins. Co.* (2010)
    183 Cal.App.4th 776 ......................................................................................23, 24

*Oasis West Realty, LLC v. Goldman* (2011)
    51 Cal. 4th 811 ...................................................................................................16

*Ontiveros v. Constable* (2016)
    245 Cal. App. 4th 686 .........................................................................................27

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.* (1999)
    20 Cal. 4th 1135................................................................................15, 19, 22

*Pound v. DeMera DeMera Cameron* (2005)
    135 Cal. App. 4th 70 ...........................................................................................23

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Company, Inc.* (2018)
    6 Cal.5th 59 .........................................................................................................25

*Styles v. Mumbert* (2008)
    164 Cal. App. 4th 1163 ........................................................................................16

*Western Continental Operating Co. v. Natural Gas Corp. of Calif.* (1989)
    212 Cal. App. 3d 752 ...........................................................................................27

*Wutchumna Water Co. v. Bailey* (1932)
    216 Cal. 564 .........................................................................................................16

**Statutes**

Bankruptcy Code § 2004 .........................................................................................12

**Rules**

California Rules of Professional Conduct, Rule 3-310 ......................................6, 15, 25

Local Bankruptcy Rule 1001-1................................................................................7, 14

(KDG-4) MEMORANDUM OF P's and A's MOTION TO DISQUALIFY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The egregious conflict of interest presented here between the interests of the Debtor, the current client of Foley & Lardner ("Foley") and Ashley McDow, and the interests of Ms. McDow's former clients, Healthcare Conglomerate Associates, LLC ("HCCA") and Vi Healthcare Finance ("Vi") requires the disqualification of Foley and Ms. McDow under the Rules of Professional Conduct and the fundamental principles of ethics and fairness in our judicial process. It is difficult to conceive of a more direct and unacceptable conflict than that presented here. As the declaration of respected ethics expert Robert L. Kehr in support of this motion states, the conduct in this case amounts "to an unusually clear example of a violation of the lawyer's duties of undivided loyalty and confidentiality . . ." [Kehr Decl., ¶ 5]. The law is clear: because Ms. McDow previously represented her former clients with respect to the very subject matter in which she is now adverse to them, disqualification of McDow and Foley is mandatory.

Here, Baker and McDow represented HCCA in negotiating and drafting the Management Services Agreement (the "Inyo MSA") with Southern Inyo Healthcare District ("Inyo"), including specific provisions relating to this Chapter 9 case, advised HCCA concerning these proceedings, and obtained material confidential information of HCCA relating to the Inyo MSA. Under the Inyo MSA, HCCA undertook all management responsibilities of Inyo and initial supervision of these very bankruptcy proceedings. Then, in direct violation of Baker's express representations to HCCA and Dr. Benzeevi that Baker would continue to represent the Benzeevi Group if a dispute arose between Inyo and HCCA with respect to the Inyo MSA, Baker and Ms. McDow did exactly what they promised not to do: when that dispute arose, Baker dropped HCCA like a hot potato, and then filed an Emergency Motion supported by a personal declaration of Ms. McDow seeking termination of the Inyo MSA, the very contract they drafted and negotiated for HCCA. These actions were directly adverse to HCCA in the identical subject matter of Baker and Ms. McDow's previous representation of HCCA.

Ms. McDow subsequently left Baker and joined Foley, but continues as lead insolvency counsel representing Inyo adverse to her former clients, HCCA and Vi, who are creditors and

(KDG-4) MEMORANDUM OF P's and A's MOTION TO DISQUALIFY

defendants in an adversary action in this proceeding. Inyo opposes the creditor claims of HCCA under the Inyo MSA and of Vi, which claims are based on the very documents and transactions which Baker prepared for HCCA and Vi. Ms. McDow has made and continues to make grave accusations against her former clients, and to advocate against her former clients' interests with respect to the MSA. Critically, Ms. McDow seeks ultimately to fund Inyo's plan out of a desired litigation recovery against her former clients. Advocating in this proceeding for Inyo as the Debtor requires Ms. McDow to violate her continuing fiduciary duties to her former clients. Furthermore, the emerging claims of legal malpractice against Ms. McDow and Baker by HCCA, Vi and Dr. Benzeevi (the "Benzeevi Group") also place Ms. McDow's personal interests in conflict with both her current client Inyo and her former clients, HCCA and Vi.

All of Ms. McDow's conflicts and continuing duties are imputed to Foley because Ms. McDow, as well as former Baker attorney Fahim Farivar, continue to be directly and actively involved in these proceedings. Ms. McDow and Mr. Farivar have not been screened – to the contrary, their active involvement and side-switching against their own former clients have been embraced by Foley. The contemplated global mediation for which Ms. McDow has advocated is doomed to failure unless independent counsel without these disqualifying conflicts of interest replaces Foley and Ms. McDow as Debtor's counsel.

HCCA and Vi have not waived their rights to disqualify Ms. McDow or Foley through any valid or enforceable conflict waiver or otherwise. As explained by expert Robert L. Kehr, the purported advance waivers concerning potential conflicts that Baker provided to the Benzeevi Group did not operate to obtain the Benzeevi Group's "informed written consent" as defined in Rule of Professional Conduct 3-310 (A)[1] to the actual and direct conflict that emerged between Debtor and the Benzeevi Group. Moreover, there has been no extreme delay by the Benzeevi Group in seeking disqualification nor will any extreme prejudice to be suffered by Inyo if this relief is granted. Thus, there has been no implied waiver of the moving parties' rights to seek disqualification.

---

[1] The California Supreme Court has adopted new Rules of Professional Conduct taking effect on November 1, 2018. Rule 1.7, which replaces Rule 3-310, is even more restrictive, and is addressed at pp.21-23 infra.

6

The Rules of Professional Conduct and the applicable California case law, which this Court is required to apply to attorneys practicing in this Court under Local Bankruptcy Rule 1001-1(c), mandate that Foley and Ms. McDow be disqualified from further representation of Debtor in these proceedings.

## II.     FACTUAL SUMMARY

### A.     Baker's Extensive Representation of the Benzeevi Group.

Baker began representing Dr. Benzeevi in or around 2009 in connection with forming a professional corporation. [Benzeevi Decl., ¶ 5]. By 2017, Baker's representation had expanded to include multiple matters for Dr. Benzeevi and his related entities, Healthcare Conglomerate Associates, LLC ("HCCA"), Vi Healthcare Finance, Inc. ("Vi"), Medflow, PC, and Tulare Asset Management (collectively, "the Benzeevi Group"). Baker performed services on myriad issues for the Benzeevi Group, in effect serving as general counsel from 2009 through September 2017. [Benzeevi Decl., ¶ 5]. Baker drafted the formation documents for HCCA, Vi, Medflow, PC and Tulare Asset Management. [Benzeevi Decl., ¶ 5]. Ashley McDow performed significant work for HCCA, including working on both the Management Services Agreement between HCCA and Tulare Local Healthcare District dba Tulare Regional Medical Center ("Tulare MSA") and the Inyo MSA. [Benzeevi Decl., ¶ 5]. The particular focus of Ms. McDow's work on the Inyo MSA was how Inyo's contemplated Chapter 9 Bankruptcy would affect HCCA's rights under that agreement. [Benzeevi Decl., ¶ 6]. Dr. Benzeevi communicated extensively with Ms. McDow, and her partner Bruce Greene, and shared substantial amounts of the Benzeevi Group's confidential information with them, specifically with reference to the Inyo MSA, but also in general regarding all of the Benzeevi Group's business activities. [Benzeevi Decl., ¶ 6]. The Benzeevi Group paid hundreds of thousands of dollars to Baker for its legal services. [Benzeevi Decl., ¶ 5]. Baker purported to commence termination of its representation of the Benzeevi Group by letter dated September 29, 2017. [Benzeevi Decl., ¶ 11, Ex. E].

### B.     Ms. McDow, First with Baker, then with Foley, Represents Inyo Adverse to Her Former Clients.

Ms. McDow was a partner at Baker until she joined the firm of Foley & Lardner by May

7

1  of 2018. [Request for Judicial Notice ("RJN"), Ex. EE, Docket No. 436]. Foley & Lardner

2  substituted in as general insolvency counsel for Inyo in this case on June 12, 2018, which

3  substitution was approved by the Court on June 26, 2018. [RJN, Ex. GG, Docket No. 450; RJN,

4  Ex. HH, Docket No. 452]. Ms. McDow signed the substitution for the firm and has regularly

5  appeared at hearings for Inyo. [Docket No. 450; Bedoyan Decl., Exs. G and H (10/17/17 and

6  08/29/18 Transcripts]. It should also be noted that Mr. Farivar, another Foley attorney

7  representing Inyo in these proceedings, was also formerly associated with Baker and worked on

8  matters for HCCA. [Benzeevi Decl., ¶ 5].

9        First with Baker, and now with Foley, Ms. McDow continues improperly to represent

10  Inyo adverse to her former clients, the Benzeevi Group, including with respect to the very subject

11  matter of her previous representation of them. The facts demonstrating the irreconcilable conflict

12  of interest that requires Foley's disqualification are as follows. In December 2015, HCCA began

13  negotiations with Inyo regarding the Inyo MSA. [Benzeevi Decl., ¶ 6]. It was anticipated that

14  Inyo would enter into an MSA with HCCA, as well as commence a Chapter 9 Bankruptcy.

15  [Benzeevi Decl., ¶ 6]. Ms. McDow performed significant work in relation to the Inyo MSA for

16  HCCA, including appearing as HCCA's attorney at the January 2016 Inyo Board meeting where

17  the Board approved the Inyo MSA, the retention of Baker by Inyo for the Chapter 9 proceedings

18  and the purported waiver letter, discussed below. [Benzeevi Decl., ¶ 6, Exs. B and C]. Inyo was

19  represented by separate counsel Scott Nave in the negotiations regarding the Inyo MSA.

20  [Benzeevi Decl., ¶ 6]. The Inyo MSA provided that it would be part of HCCA's duties as

21  manager to arrange and supervise the bankruptcy proceedings through a Chief Restructuring

22  Officer that HCCA would appoint. [Benzeevi Decl., Ex. A (Inyo MSA, ¶ 3(bb)]. The Inyo MSA

23  also provided that HCCA could retain counsel to assist it in its duties and responsibilities as

24  manager and that those expenses would be paid by Inyo. [Benzeevi Decl., Ex. A (Inyo MSA, ¶

25  4(b)(vi)]. The Inyo MSA was executed by Inyo and HCCA sometime in early January 2016.

26  [Benzeevi Decl., ¶ 7]. Inyo filed the Chapter 9 Petition commencing these proceedings on

27  January 4, 2016. [RJN, Ex. Q, Docket No. 1, Case No. 16-10015]. Baker became Inyo's

28  bankruptcy counsel in the Chapter 9 proceedings and its primary client contacts were Dr.

1   Benzeevi and Alan Germany at HCCA.  [Benzeevi Decl., ¶ 8].

2       Dr. Benzeevi understood that after Baker became counsel to Inyo in the Chapter 9

3   proceedings, Baker would continue to advise HCCA with respect to the Inyo MSA and the

4   Chapter 9 proceedings.  [Benzeevi Decl., ¶ 8].  Until September 29, 2017, Baker continued to

5   advise HCCA as to its duties and responsibilities under the Inyo MSA, as well as regarding other

6   matters Baker was handling for the Benzeevi Group.  [Benzeevi Decl., ¶¶ 8, 9, 11].

7       Baker provided Inyo and HCCA a purported conflict waiver letter in January of 2016,

8   signed by Bruce Greene of Baker on January 2, 2016, a draft of which was posted at the Inyo

9   hospital as well as on-line (HCCA has been unable to locate a version of this letter counter-signed

10  by HCCA and Inyo).  [Benzeevi Decl., ¶ 7, Ex. B].  The purported conflict waiver letter

11  acknowledged that Baker "presently represents and expects to continue to represent, the Benzeevi

12  Group in connection with various matters unrelated to the business of the District, and also in

13  connection with the management service agreement between the District and HCCA."  [Benzeevi

14  Decl., Ex. B, p. 2, ¶ A].  In that letter Baker expressly acknowledges its receipt of the Benzeevi

15  Group's confidential information stating: "*In connection with its representation of the Benzeevi*

16  *Group, the Firm has had access to confidential information of the Benzeevi Group.*"

17  [Benzeevi Declaration, Ex. B, p. 2, ¶ C] (emphasis added).  The letter represented that the

18  interests of Inyo and HCCA were "presently aligned with respect to the Chapter 9 filing" but that

19  conflicts could develop in the future.  [Benzeevi Decl., Ex. B, p. 1].  If such conflicts developed,

20  Baker agreed not to disclose any material confidential information of HCCA to Inyo or to use any

21  such information to the benefit of Inyo, and Inyo consented to Baker continuing to represent

22  HCCA and the Benzeevi Group including as to the MSA.  [Benzeevi Decl., Ex. B, p. 3, ¶ 2].

23  Critically, however, the converse was not true, nowhere did HCCA consent to allow Baker (or

24  any of its then attorneys) to continue to represent Inyo if a conflict developed.   [Benzeevi Decl.,

25  Ex. B].  To the contrary, the waiver letter expressly states that the expectation is that Baker will

26  continue to represent the Benzeevi Group.  [Benzeevi Decl., Ex. B, p. 2, ¶ A].

27       In the summer of 2017, Baker took on an additional matter for the Benzeevi Group, the

28  formation of Vi Healthcare Finance, Inc. ("Vi"), an entity formed to provide financing to Inyo to

1 | pay its expenses. Baker not only prepared the formation documents but also prepared the

2 | transaction documents representing Vi, and advised Dr. Benzeevi about this transaction, whereby

3 | Vi provided Inyo a line of credit. [Benzeevi Decl., ¶ 9]. The Vi transaction has been a target for

4 | allegations of misconduct in the adversary action against HCCA and Vi in these proceedings.

5 | [RJN, Ex. L, Docket No. 1 in Case No 18-01031].

6 |    In connection with Baker's representation of Vi, HCCA, Vi Healthcare and Inyo executed

7 | a purported waiver of conflict letter. [Benzeevi Decl., Ex. D]. This letter reiterated the

8 | disclosures of the unsigned January 2, 2016 letter, including that "the Firm presently represents,

9 | and *expects to continue to represent*, the Benzeevi Group . . in connection with the Management

10 | Service Agreement between the District and HCCA, and also potentially in connection with the

11 | Loan between VI and the District." [Benzeevi Decl, Ex. D, p. 2] (emphasis added). However,

12 | Baker never provided nor did the Benzeevi Group execute any waiver of conflict that disclosed

13 | that an actual conflict had developed between the Benzeevi Group and Inyo nor was any consent

14 | given to representation of Inyo if a conflict developed. [Benzeevi Decl., ¶ 11].

15 |    In the summer of 2017 a dispute developed concerning HCCA's management of Inyo.

16 | [Benzeevi Decl., ¶ 10]. Following the eruption of this dispute, on September 29, 2017, Baker

17 | abruptly commenced termination of its representation of the Benzeevi Group. [Benzeevi Decl., ¶

18 | 11, Ex. E]. The termination letter made no disclosure of any conflict or any other reason for the

19 | termination, nor did it disclose that Baker would continue to represent Inyo. [Benzeevi Decl., Ex.

20 | E]. Approximately two weeks later, on October 17, 2017, Ms. McDow and Baker filed on behalf

21 | of Inyo in this proceeding, an Emergency Motion to immediately terminate the Inyo MSA (the

22 | "Emergency Motion") which was highly prejudicial to the Benzeevi Group. [Benzeevi Decl., ¶

23 | 12]. In the Emergency Motion, Ms. McDow and Baker on behalf of Inyo, claimed that HCCA

24 | was engaging in wrongful conduct as follows: improperly withholding information from the

25 | District; mismanaging the financial situation of Inyo; concealing wrongful conduct by presenting

26 | incomplete or inaccurate financial reports; and making misrepresentations and misstatements in

27 | financial reports. [RJN, Ex. R, Docket No. 325]. In support of the Emergency Motion, Ms.

28 | McDow submitted a declaration where she explained that she had reviewed the bank statements

10

(KDG-4) MEMORANDUM OF P's and A's MOTION TO DISQUALIFY

1　and transactional records for Inyo's bank accounts and "noted several inconsistencies with certain

2　reports and representations previously provided by HCCA." [RJN, Ex. S, Docket No. 326, ¶ 3].

3　Ms. McDow characterized transactions by HCCA as "suspect" and inconsistent with financial

4　reports and information that HCCA had provided to Inyo. [RJN, Ex. S, Docket No. 326, ¶ 6].

5　　　　Neither Baker nor Ms. McDow provided any advance notice of their intent to file this

6　motion or the declaration. [Benzeevi Decl., ¶ 12]. Instead, HCCA was sent e-mail notice just

7　hours before the hearing occurred that the Emergency Motion had been filed and that Inyo would

8　be seeking immediate termination of the Inyo MSA. [RJN, Ex. R, Docket No. 325 (Emergency

9　Mtn); RJN, Ex. U, Docket No. 329 (Delaney Decl)]. No one appeared on behalf of HCCA at the

10　hearing on the Emergency Motion because Baker did not give HCCA notice until right before the

11　hearing. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 6:8-16)].

12　　　　Ms. McDow appeared at the hearing on the Emergency Motion representing the Debtor.

13　Ms. McDow did not disclose that she and Baker had previously represented HCCA, as recently as

14　three weeks prior, on the very contract that was the subject of the Emergency Motion. [Bedoyan

15　Decl., Ex. G (10/17/17 Transcript)]. Instead, Ms. McDow requested immediate termination of the

16　Inyo MSA, and discussed with the Court the bases for that termination or rejection of the

17　contract, including allegations of improper financial transactions, harm to the public, and

18　potential fraud by HCCA. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 9:19-11:22, 14:17- 15:6,

19　16:23-17:8, 17:21-24, 22:4-17, 25:4-26:16)]. Ms. McDow also represented that Inyo would be

20　filing an adversary action against HCCA and that Inyo had allegedly suffered "irreparable

21　damage" due to HCCA's conduct. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 25:4-16)]. Ms.

22　McDow also revealed confidential information of HCCA, including falsely claiming that HCCA

23　representative Alan Germany had sole control of the Inyo bank accounts. [Bedoyan Decl., Ex. G

24　(10/17/17 Transcript, 16:18-17:8)]. Ms. McDow made statements about efforts to get a manager

25　for Inyo to replace HCCA. [Bedoyan Decl., Ex. G (10/17/17 Transcript, 11:23-12:8)].

26　　　　Just hours after HCCA received notice, the court granted the Emergency Motion in part by

27　authorizing removal of HCCA as a signatory on bank accounts containing Inyo funds. [RJN, Ex.

28　T, Docket No. 328]. HCCA and Inyo ultimately reached a partial settlement concerning the relief

1  requested in the Emergency Motion, submitted for court approval on November 22, 2017,

2  whereby they stipulated to rejection of the Inyo MSA and Inyo agreed to withdraw the McDow

3  Declaration, as well as an additional declaration submitted by Baker. [RJN, Ex. Y, Docket No.

4  377]. This Court approved the stipulation on December 2, 2017. [RJN, Ex. Z, Docket No. 382].

5          Meanwhile, a dispute had also developed at the Tulare Local Healthcare District

6  ("TLHD") regarding HCCA's management of TLHD after a new Board was elected in November

7  2016. [Benzeevi Decl., ¶ 13].   Baker had been counsel to TLHD, as well as counsel for HCCA,

8  in relation to the Tulare MSA.   However, the new TLHD Board hired other counsel to replace

9  Baker in the summer of 2017. [Benzeevi Decl., ¶ 13]. Baker disputed the TLHD Board's

10 authority to retain new counsel. [Benzeevi Decl., ¶ 13, Ex. F]. On September 30, 2017, TLHD

11 filed a Chapter 9 Petition. [Bedoyan Decl., ¶ 4].    Counsel for TLHD seized upon the McDow

12 Declaration to support its own efforts to reject the Tulare MSA and requested that the Bankruptcy

13 Judge in the TLHD case take judicial notice of the McDow Declaration to support Tulare's

14 motion to terminate the Tulare MSA. [RJN, Ex. M, Docket No. 103, Case No. 17-13797]. [2]

15          HCCA is a creditor in this proceeding. [RJN, Ex. DD, Docket No. 406]. Vi Healthcare

16 Finance is also a creditor. [RJN, Ex. FF, Docket No. 447]. TLHD is a creditor in Inyo's

17 bankruptcy proceedings with an unsecured claim of $2.5 million and Inyo is a creditor in Tulare's

18 bankruptcy proceedings with a claim of an unidentified amount. [RJN, Ex. W, Docket No. 355;

19 RJN, Ex. X, Claim No. 48-1; RJN, Ex. P, Claim No. 238 (Case No. 17-13797)]. TLHD has

20 obtained Bankruptcy Code § 2004 orders allowing them to request documents from Inyo, in the

21 Inyo Bankruptcy Case, and Baker, in the TLHD Bankruptcy Case. [RJN, Ex. AA, Docket No.

22 388; RJN, Ex. BB, Docket No. 392; RJN, Ex. N, Docket No. 255 (17-13797); RJN, Ex. O,

23 Docket No. 256 (17-13797)]. Thus, Inyo, represented by Foley and Ms. McDow, is also taking

24 positions adverse to TLHD, Baker's former client, in the bankruptcy proceedings, in addition to

25 those positions taken adverse to the Benzeevi Group.

26 / / /

27

28
[2] The Request for Judicial Notice in Case No. 17-13797, Docket No. 103, requested that the
Court take judicial notice of Docket No. 326 in Case No. 16-10015, which is the McDow
Declaration in support of the Emergency Motion.

12

**C.    Disqualification of Ms. McDow and Foley will Not Prejudice Inyo or the Resolution of the Bankruptcy.**

Ms. McDow has represented and continues to represent Inyo in the Chapter 9 proceedings. [Docket No. 1; Bedoyan Decl., Ex. H]. However, as this Court has recognized, the Debtor, under Ms. McDow's guidance, has not progressed far in terms of confirmation of a plan of adjustment. [Bedoyan Decl., Ex. H (8/29/18 Transcript 10:9-20, 13:22-15:2)]. Ms. McDow has presented three proposed plans on behalf of Debtor, one of which she withdrew. As of yet, Ms. McDow has been unsuccessful as Debtor's counsel in bringing Inyo anywhere close to emerging from bankruptcy. [Bedoyan Decl., ¶ 5].

While Inyo has retained additional attorneys such as Mr. Shinbrot for certain aspects of the Inyo Bankruptcy proceedings,[3] Ms. McDow and Foley continue to be actively involved in the proceedings. Indeed, just recently, Ms. McDow appeared at an August 29, 2018 Status Conference on behalf of Inyo where she asserted positions adverse to the Benzeevi Group, including falsely accusing HCCA of acting in bad faith with regard to discussing mediation and again raising the allegations about HCCA's wrongdoing that she stated in her initial declaration in support of the Emergency Motion and which were repeated in Inyo's Complaint in the Adversary proceeding against HCCA and Vi. [Bedoyan Decl., Ex. H (8/29/18) Transcript 20:9-22:19); RJN, Ex. S, Docket No. 326, ¶¶ 3-9; RJN, Ex. L, Docket No. 1 (Case No. 18-01031), ¶¶ 33, 37-42].

Currently, the parties are discussing a global mediation. If mediation were to proceed with Foley and Ms. McDow representing Inyo, the situation will be fraught with irreconcilable conflicts of interest. Inyo, as the Debtor, is a party seeking to maximize recovery for itself and its creditors, which could include demanding from Baker a refund of fees paid to the firm and waiver of unpaid fees while Baker was tainted with a conflict of interest. [Bedoyan Decl., ¶7]. Baker – Ms. McDow's former firm - will be a party seeking to minimize its exposure for legal malpractice and the amount of any contribution to any settlement. [Bedoyan Decl., ¶ 7]. Ms. McDow will have to be a party also seeking to minimize her own exposure and any contribution. [Bedoyan

---

[3] See footnote 1 to Bedoyan Decl.

13

Decl., ¶ 7]. TLHD will be a party seeking to maximize recovery of its claim, based on the transactions between Tulare and Inyo allegedly initiated by HCCA while all of them were represented by Baker and Ms. McDow.  [Bedoyan Decl., ¶ 7].  HCCA and Vi will be parties seeking contribution from Baker and Ms. McDow as well as recovery of the amount of its two claims, while resisting exposure and liability based on the allegations in the adversary action initiated against it by Inyo.  [Bedoyan Decl., ¶ 7]. Finally, in any mediation or litigation addressing the plethora of issues in these matters, Ms. McDow and Mr. Greene will be critical witnesses for each of the parties. [Bedoyan Decl., ¶ 7]. This proposed mediation highlights the direct conflicts Ms. McDow and Foley continue to have not only with the Benzeevi Group but also with Inyo, as well as TLHD.   While global mediation may hold the best hope for resolution of this proceeding, Ms. McDow and Foley's continued representation of Inyo would likely doom such a conflicted mediation to failure.

On September 17, 2018, counsel for the Benzeevi Group sent a letter to Foley requesting that they voluntarily withdraw from representing Inyo in this case and demanding a response to this request by September 29, 2018.  [Bedoyan Decl., ¶ 8, Ex. I].  Despite promising a response, as of the filing date of this motion, Foley has not substantively responded.  [Bedoyan Decl., ¶ 8].

### III.    LEGAL ARGUMENT

#### A.    Standards Applicable to Disqualification Based on Conflicts of Interest

The multiple conflicts of interests arising from Ms. McDow's former representation of the Benzeevi Group and TLHD require her disqualification and that of her current firm Foley, as counsel for Inyo in this proceeding.

In the Ninth Circuit, the Courts apply California state law in matters of disqualification. *In re County of Los Angeles* (9th Cir. 2000) 223 F. 3d 990, 995.   The Eastern District has adopted the Rules of Professional Conduct of California State Bar as well as the applicable state court case law as the applicable standards of professional conduct. *Lennar Mare Island, LLC v. Steadfast Ins. Co.* (E. D. Cal. 2015) 105 F. Supp. 3d 1100, 1107; Local Bankruptcy Rule ("LBR") 1001-1(c) (incorporating Rule 180 of the Local Rules of Practice for the United States District Court for the Eastern District of California); E.D. Cal. L. R. 180(e).

> "A trial court's authority to disqualify an attorney derives from the power inherent in every court 'to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'"

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.* (1999) 20 Cal. 4th 1135, 1145, (internal quotations omitted).

A motion for disqualification presents a conflict between the clients' right to counsel of their choice against the need to uphold ethical standards of professional responsibility. However, "[t]he *paramount concern* must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice *must yield* to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (emphasis added); *Arias v. FCA US LLC* (E. D. Cal. July 12, 2018) 2018 WL 3419709, *3.

Here, these ethical principles and the paramount concern with public trust in the administration of justice, especially in this case that has received so much public attention, require that Foley and Ms. McDow be disqualified.

## B.     The Continuing Duties of Loyalty and Confidentiality Require Disqualification of McDow and Foley

As explained by exert Robert L. Kehr "It long has been the rule" that an attorney cannot do anything to injur a former client in a matter in which he formerly represented the client or use any confidential information obtained in the prior relationship against the former client. [Kehr Decl., ¶ 3]. Rule of Professional Conduct 3-310 (E) codifies this prohibition:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Cal. Rule Prof. Cond 3-310(E).

As recognized in Rule 3-310(E), the duty of confidentiality survives termination of the attorney-client relationship. The new Rules of Professional Conduct, which take effect on November 1, 2018, address Ms. McDow's conduct even more plainly. Comment [1] to Rule 1.9

15

1   could have been written to describe the impropriety of Ms. McDow's actions after she first

2   represented the Benzeevi Group with respect to the drafting of the Inyo MSA: "*For example (i) a*

3   *lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf*

4   *of a former client. . .*" (emphasis added).

5       Numerous cases also recognize that an attorney's fiduciary duties to a former client of

6   both confidentiality and loyalty continue after termination of employment. *Oasis West Realty,*

7   *LLC v. Goldman* (2011) 51 Cal. 4th 811, 821 ("'an attorney is forbidden to do either of two things

8   after severing [the] relationship with a former client. [The attorney] may not do anything which

9   will injuriously affect [the] former client in any matter in which [the attorney] formerly

10   represented [the client] nor may [the attorney] at any time use against [the] former client

11   knowledge or information acquired by virtue of the previous relationship.'") (citing *Wutchumna*

12   *Water Co. v. Bailey* (1932) 216 Cal. 564, 573-74); *Styles v. Mumbert* (2008) 164 Cal. App. 4th

13   1163, 1167 ("So fundamental is this precept that an attorney continues to owe a former client a

14   fiduciary duty even after the termination of the relationship. For example, an attorney is forever

15   forbidden from using, against the former client, any information acquired during such

16   relationship, or from acting in a way which will injure the former client in matters involving such

17   former representation."); *In re McIntosh* (9th Cir. 2017) 697 Fed. Appx. 569, 571–572 ("Under

18   California law, the duty of loyalty survives the end of the attorney—client relationship; 'after

19   severing his relationship with a former client an attorney 'may not do anything which will

20   injuriously affect his former client in any manner in which he formerly represented him.'").

21       As is discussed more fully in Section E, herein, Baker and Ms. McDow's conflicts and

22   duties are imputed to Foley as a matter of law. Thus, Baker and Ms. McDow, and by imputation

23   Foley, owe continuing duties of loyalty and confidentiality to Baker's former clients, the

24   Benzeevi Group. They cannot avoid their fiduciary duties of loyalty and confidentiality by their

25   abandonment of the Benzeevi Group. Baker and Ms. McDow not only violated their duty of

26   loyalty to the Benzeevi Group by representing Inyo in seeking to terminate the very contract they

27   drafted and negotiated for HCCA and resisting payment to Vi due under the documents that

28   Baker drafted on its behalf, they have expressly acknowledged their receipt of confidential

16

1  information from the Benzeevi Group, and are also presumed to have confidential information

2  since the former representation is substantially related to the current representation of Inyo.  Thus,

3  based on their conflict of interest as to their loyalty as well as their actual and presumed

4  possession of confidential information of the Benzeevi Group, disqualification of Foley and Ms.

5  McDow is mandatory.

6       **C.       Ms. McDow's Prior and Continuing Violation of the Duty of Loyalty Requires**

7             **Disqualification**

8       The duty of loyalty to a former client "prohibits an attorney from engaging in any act that

9  will injure the former client in matters involving the former representation."  *In re Jaeger* (Bankr.

10 C.D. Cal. 1997) 213 B.R. 578, 589.  The duty of loyalty and confidentiality apply in both

11 conflicted representation of current and successive clients.  *Lennar Mare Island, LLC v. Steadfast*

12 *Ins. Co. supra*, 105 F. Supp. 3d 1100, 1108.

13       "This duty of loyalty continues after the client has discharged the lawyer, and the action
         injurious or adverse to the former client does not need to involve the use or disclosure of
14       confidential information.  A distinct and separate breach of ethical duty arises when the
         attorney discloses the former client's confidential information adversely to the former
15       client."

16 *McGrane v. Howrey, LLP* (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD) 2015 WL 6126792,

17 at *4, *aff'd sub nom. Matter of Howrey LLP* (9th Cir. 2017) 698 Fed. Appx. 881 (citations

18 omitted).

19       In a recent bankruptcy decision, later affirmed by the Ninth Circuit, a bankruptcy court

20 denied an attorney's request for fees and requiring the attorney to refund all fees previously

21 collected due to the attorney's "flagrant" breach of loyalty to the former client, debtor in the

22 bankruptcy proceeding.  *In re McIntosh* (Bankr. N.D. Cal. Jan. 16, 2015) No. 13-11774 AJ, 2015

23 WL 241130 at *5-*6, aff'd (B.A.P. 9th Cir., Nov. 3, 2015, No. 13-11774) 2015 WL

24 6736740, <u>aff'd</u> (9th Cir. 2017) 697 Fed. Appx. 569.  In so holding, the Court explained:

25       "Chandler's breach of duty arises from the fact that he is taking a position adverse to his
         former client on an issue on which he previously represented the client and that is separate
26       from the fees he is seeking to collect. With respect to that separate issue, it does not matter
         whether the court has decided the issue, or whether the position Chandler is currently
27       taking is legally correct. An attorney who advocates a position on behalf of a client cannot
         switch sides simply because the issue has not yet been decided and/or he now believes the
28       position he previously asserted on behalf of the client is wrong."

---

17

1   *In re McIntosh, supra,* 2015 WL 241130, at *5.

2          Baker and Ms. McDow's conduct in this case implicates both the duty of loyalty and

3   confidentiality.  Just like in *McIntosh*, Ms. McDow's violation of her duty is flagrant because she

4   took a position directly adverse to her former clients on the issue in which she previously

5   represented them.  Ms. McDow's breach of loyalty is especially egregious because she personally

6   filed a declaration in these Chapter 9 Proceedings and argued at an emergency hearing, which she

7   concealed until the very last minute from her former client, to terminate the very Inyo MSA that

8   she helped draft and negotiate on behalf of HCCA.  [RJN, Ex. S, Docket 326; Bedoyan Decl., Ex.

9   G].  It is difficult to imagine a more direct breach of the duty of loyalty by an attorney to a former

10  client. [Kehr Decl., ¶ 5].  Mr. Kehr emphasizes:

11          "Because the *Wutchumna* rule imposes a continuing duty of loyalty as well as
            confidentiality on McDow and her law firms, she and they cannot now be adverse to the
12          Moving Parties regarding either the Inyo MSA, this Chapter 9 proceeding, or the Vi
            Transaction."

13  [Kehr Decl., ¶ 3].

14          What makes the conduct even worse is that when Baker terminated the Benzeevi Group as

15  a client, just two weeks before filing the Emergency Motion, it gave no notice that an actual

16  conflict had developed, nor of its intent to seek to terminate the Inyo MSA with a declaration

17  from Ms. McDow. [Benzeevi Decl., ¶¶ 11-12, Ex. E].  Instead, Baker sand-bagged the Benzeevi

18  Group with the Emergency Motion which prevented any type of coordinated or well-prepared

19  response to termination of a multi-million-dollar contract.

20          As Mr. Kehr concludes:

21          "Baker and McDow have had, and Foley and McDow now have a conflict of interest in
            representing the District adverse to the moving Parties.  The conflict is between their duty
22          to competently represent the District and their continuing obligations of loyalty and
            confidentiality to the Moving Parties. . . .when either of these events occurred – the
23          District requested advice about its right or duties vis a vis the Moving Parties or the
            lawyers recognized that it needed that advice – *the lawyer's only proper course was*
24          *immediately to cease their representation of the District until they had worked out with*
            *the involvement of all affected clients how to deal with its conflict.  Instead of doing*
25          *that, they continued to represent and advise the District and by doing so violated and*
            *continue to violate their duties of undivided loyalty and confidentiality to the Moving*
26          *Parties*."

27  [Kehr Decl., ¶ 4.1] (emphasis added).

28          Ms. McDow continues to act adversely to the Benzeevi Group even now because Inyo's

    interests as a debtor are adverse to HCCA's and Vi's interests as creditors.  Now with Foley, Ms.

                                                     18

1   McDow continues as lead insolvency counsel in these proceedings in which the Debtor is
2   prosecuting an adversary action against HCCA and Vi seeking damages for transactions
3   conducted in connection with the Inyo MSA that Baker and McDow drafted, negotiated and on
4   which it continued to advise Dr. Benzeevi after the Inyo MSA was executed. The fact that
5   another attorney may also be representing the Debtor in that adversary action is irrelevant,
6   because there is no evidence that Ms. McDow has ever been screened to prevent her from
7   collaboration or otherwise shielded from communications with that attorney or from involvement
8   in the litigation. Indeed, many of the allegations of the complaint in the adversary action echo the
9   allegations of the McDow Declaration submitted in support of the Emergency Motion to reject
10  the Inyo MSA. [RJN, Ex. S, Docket 326; RJN, Ex. L, Docket 1 – Case 18-01031]. These are and
11  remain *her* allegations, regardless of whether they are now technically being prosecuted by
12  special counsel.

13      Moreover, Ms. McDow's conflicts are highlighted by the contemplated mediation which
14  she has pushed for, where her personal interests in resisting malpractice liability conflict not only
15  with the Benzeevi Group, but also with the interests of Inyo and TLHD. In addition, Inyo's
16  interests, as Ms. McDow and Foley's client, conflict also with those of her former clients, the
17  Benzeevi Group and TLHD. If McDow and Foley withdraw or are disqualified, mediation might
18  bear fruit. But if they were to remain as counsel, their continued representation of Inyo would
19  make a farce of such a mediation, dooming it to failure to everyone's detriment.

20      On the bases of these myriad conflicts, Ms. McDow and Foley should be disqualified.

21      **D.    Ms. McDow's Prior and Continuing Duty of Preserve the Benzeevi Group's**
22          **Confidential Information Also Requires Disqualification**

23      Disqualification does not depend on showing a breach of loyalty, it is also warranted
24  where the former client can establish that the attorney received confidential information or the
25  acquisition of confidential information is presumed because the former and present engagements
26  are substantially related. *Beltran v. Avon Products, Inc.* (C.D. Cal. 2012) 867 F. Supp. 2d 1068,
27  1077; *SpeeDee Oil, supra*, 20 Cal. 4th 1135, 1146; *Lennar Mare*, 105 F. Supp. 3d at 1109. Here,
28  Baker previously confirmed in writing that it possessed the Benzeevi Group's confidential

1  information, and Dr. Benzeevi's declaration establishes that he shared substantial confidential

2  information with Baker and Ms. McDow, including financial information and strategies and goals

3  with regard to the Inyo MSA. [Benzeevi Decl., ¶¶ 5-6]. Rule 3-310 (E) bars representation of a

4  client adverse to a former client where confidential information was provided to the attorney.

5  Baker and Ms. McDow's receipt of the Benzeevi Group's confidential information which is

6  directly relevant and material to issues in this Chapter 9 proceeding provides an independent basis

7  for disqualification.

8      "Whether the two representations are substantially related depends on the factual

9  situation, legal questions, and the attorney's involvement in the two cases. *Lennar Mare*, *supra*,

10  at 1109. Where the attorney had a direct relationship with the former client "in which the

11  attorney personally provided legal advice and services on a legal issue that is closely related to

12  the legal issue" in the matter in which the former client seeks disqualification, a substantial

13  relationship will be deemed to exist. *Arias v. FCA US LLC* (E.D. Cal., July 12, 2018, No. 2:18-

14  CV-00392-JAM-AC) 2018 WL 3419709, at *2; *City and County of San Francisco v. Cobra*

15  *Solutions, Inc.* (2006) 38 Cal.4th 839, 847. Evidence that "information material to the evaluation,

16  prosecution, settlement or accomplishment of the former representation given its factual and legal

17  issues is material to the evaluation, prosecution, settlement or accomplishment of the current

18  representation given its factual and legal issues" satisfies the substantial relationship test.

19  *Western Sugar Coop. v. Archer-Daniels-Midland Co.* (C.D. Cal. 2015) 98 F.Supp.3d 1074, 1081.

20  Where the relationship between the attorney and former client was direct, proof of actual

21  possession of confidential information is not required. "Instead, the attorney is presumed to

22  possess confidential information if the subject of the prior representation put the attorney in a

23  position in which confidences material to the current representation would normally have been

24  imparted to counsel." *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38

25  Cal.4th 839, 847.

26      The client is not required to disclose the actual confidential information communicated by

27  the attorney. As explained by the Ninth Circuit,

28          "[T]he underlying concern is the possibility, or appearance of the possibility, that
          the attorney may have received confidential information during the prior representation

20

that would be relevant to the subsequent matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification."

*Trone v. Smith* (9th Cir. 1980) 621 F.2d 994, 999.

The *Davis* case is analogous to the situation here.  In *Davis*, a former client sought to disqualify its former attorneys from representing defendants in an action which arose out of the contracts the firm had negotiated on behalf of the former client and the defendants.  The court granted disqualification, stating:

"Here, MSK seeks to represent Defendants in a case arising out of contracts it negotiated on behalf of Davis *with Defendants*. The Court finds that there is a clear and substantial relationship between the royalty agreements at issue in this case and MSK's prior representation of Davis in negotiating those same agreements. That relationship is sufficient to create the presumption that MSK has confidential information material to the current matter and that this information is shared by all attorneys in the firm. That presumption requires the disqualification of MSK and all of its attorneys."

*Davis v. EMI Group Ltd.* (N.D. Cal., Jan. 4, 2013, No. 12-CV-1602 YGR) 2013 WL 75781, at *3 (emphasis in original).

The Bankruptcy Court has also recognized that, "Where a dispute arises between parties in a matter where they are jointly represented by the same attorney, there is inherently a substantial relationship between the new dispute and the joint representation. *In re Jaeger, supra,* 213 B.R. 578, 589.

Here, even if the actual receipt of confidential information which Baker admitted in its letters to the Benzeevi Group and Inyo [Benzeevi Decl., Exs. B and C] could somehow be disputed, the receipt of confidential information is presumed because the issues implicated in these Chapter 9 proceedings are not only unquestionably substantially related to Baker's prior representation of the Benzeevi Group, to some extent they are the same matter.  As Dr. Benzeevi stated, after the Inyo MSA took effect, Baker continued to advise HCCA concerning the Chapter 9 proceedings.  [Benzeevi Decl., ¶ 8]. There also can be no doubt of a substantial relationship between this proceeding and Ms. McDow's direct involvement with HCCA in drafting, negotiating and advising HCCA regarding the Inyo MSA, and also to Baker's representation of

1  Vi in its formation and in preparing loan documents and offering transactional advice whereby Vi

2  extended credit to Inyo in attempts to bolster its financial position. Under the Inyo MSA, HCCA

3  took over all aspects of managing Inyo in an attempt to save it from the brink of financial disaster

4  and make it a financially viable entity. This proceeding places Inyo's financial situation

5  following HCCA's management tenure directly in issue and the Inyo MSA is the central focus of

6  an adversary proceeding and the basis of HCCA's creditor claim. The same goes for Vi, in that

7  the loan documents that Baker drafted are the basis of Vi's creditor claim and also targeted in the

8  adversary proceeding. In this situation, Baker has admitted the receipt of confidential information

9  and also such receipt is presumed because of the relationship between the prior and current

10  matters.

11       Due to the clear conflicts between Baker and Ms. McDow's continuing duties of loyalty

12  and confidentiality and the ***"paramount concern"*** being to preserve "public trust in the

13  scrupulous administration of justice and the integrity of the bar" the disqualification of Foley and

14  Ms. McDow is mandated here. *SpeeDee*, *supra*, 20 Cal.4th 1135, 1145 (emphasis added).

15       **E.      Baker's and McDow's Conflict of Interest Must be Imputed to Foley &**

16            **Lardner**

17       Just as Baker and Ms. McDow could not escape their ethical duties by terminating their

18  relationship with the Benzeevi Group, Ms. McDow cannot escape the same duties by switching

19  firms. Ms. McDow's duties to the Benzeevi Group followed her to Foley, and Foley now also

20  must be disqualified.

21       An attorney cannot escape the continuing duty of loyalty and confidentiality by switching

22  firms. When the attorney switches firms, that duty is then imputed to the firm as a whole. *City*

23  *and County of San Francisco v. Cobra Solutions, Inc., supra,* 38 Cal.4th 839, 847–848 ("an

24  attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working

25  together and practicing law in a professional association, share each other's, and their clients',

26  confidential information.'"); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change*

27  *Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 ("a presumption that an attorney has access to

28  privileged and confidential matters relevant to a subsequent representation extends the attorney's

22

disqualification vicariously to the attorney's entire firm."); *Beltran v. Avon Products, Inc., supra,* 867 F.Supp.2d 1068, 1083 (quoting *Cobra Solutions* and *SpeeDee*).

Expert Kehr explains:

> "While her departure from Baker ended [McDow's] imputed duties to Baker clients as to which she possessed no material confidential client information and owed no duty of loyalty based on her own work, she took with her all the duties she had to all Baker clients about which she had material confidential information and for which she provided legal services. This includes both of the Moving Parties."

[Kehr Decl., ¶ 3.1]

Mr. Kehr observes that imputation of McDow's conflict to Foley is also supported by Rule 1.10(a) taking effect on November 1, 2018 which states "(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 1.7 or 1.9 . . ." [Kehr Decl., ¶ 3.2]. This rule reflects the holdings of *Cobra Solutions* and *Speedee.*

Even in cases where an attorney was only involved in far more minimal contacts with a former client than Ms. McDow had with the Benzeevi Group, as long as confidential information was presumptively communicated, the new firm that attorney joined will be vicariously disqualified from an action adverse to the former client. *Advanced Messaging Technologies, Inc. v. EasyLink Services Intern. Corp.* (C.D. Cal. 2012) 913 F.Supp.2d 900, 909 ("de minimis level of involvement with a prior case is sufficient for presuming that an attorney acquired confidential information about that prior case."); *Pound v. DeMera DeMera Cameron* (2005) 135 Cal. App. 4th 70, 74 (one hour phone call about a case three years prior was sufficient to presume that an attorney acquired confidential information and warranted disqualification).

The question of whether vicarious disqualification is automatic or is subject to a rebuttable presumption resolved on a case by case basis is unsettled. *National Grange of Order of Patrons of Husbandry v. California Guild* (E.D. Cal., May 12, 2017) 2017 WL 2021731, at *2. However, even cases employing a case by case analysis require that to overcome the presumption, an ethical wall must be erected which satisfies "the trial court that the [tainted attorney] has not had and will not have any involvement with the litigation, or any communication with attorneys or

1   coemployees concerning the litigation, that would support a reasonable inference that the

2   information has been used or disclosed." *In re Complex Asbestos Litigation* (1991) 232

3   Cal.App.3d 572, 596; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 810.  In

4   the absence of a sufficient ethical wall the presumption of shared confidential information cannot

5   be overcome. *Kirk, supra*, 183 Cal.App.4th 776, 810.  It is obvious that Foley cannot overcome

6   the presumption of imputation because it has not only failed to screen Ms. McDow, she continues

7   to be directly involved as lead counsel for the Debtor, assisted by former Baker attorney Mr.

8   Farivar.  [See e.g., Doc Nos. 450; Bedoyan Decl., Exs. G and H].[4] An ethical screen is an

9   impossibility because Ms. McDow is lead counsel on the case. She cannot be screened from

10   herself.

11        Here, Ms. McDow's involvement with the Benzeevi Group, and HCCA and the Inyo

12   MSA in particular, was far more than de minimis.  She actually drafted the language and advised

13   the Benzeevi Group regarding the bankruptcy implications pertaining to the very Inyo MSA she

14   now challenges. [Benzeevi Decl., ¶ 6].  In fact, Ms. McDow was the attorney who appeared on

15   behalf of HCCA at the January 2, 2016 Board meeting where the Board approved the Inyo MSA,

16   the retention of Baker by Inyo for the Chapter 9 proceedings and the purported Waiver of

17   Conflict letter.  [Benzeevi Decl., ¶ 6].  After execution of the Inyo MSA, Ms. McDow and Baker

18   continued to advise Dr. Benzeevi and HCCA representatives concerning the Chapter 9

19   proceedings and HCCA's duties and responsibilities under the Inyo MSA.  [Benzeevi Decl., ¶ 8].

20   Furthermore, she was part of the group of Baker attorneys that were handling substantially all of

21   the Benzeevi Group's legal needs arising from its business activities over a seven-year period.

22   [Benzeevi Decl., ¶¶ 5, 8].  The knowledge of that team, even beyond the matters she was directly

23   involved in, is imputed to her.   When she left Baker, she carried the consequences of her

24   previous representation of the Benzeevi Group with her.  In these circumstances, Ms. McDow's

25   and Baker's conflict is imputed to Foley and the entire firm of Foley must be disqualified.

26

27   [4] Even a cursory review of Inyo's now withdrawn Second Amended Disclosure Statement with
    Respect to the Plan for the Adjustment of Debts of Southern Inyo Healthcare District indicates

28   that McDow, for feasibility purposes, is relying heavily on the disallowance of the HCCA and Vi
    claims as well as the affirmative recovery of no less than $6,000,000 from HCCA. [RJN, Ex. CC,
    [Dkt. No. 397], pg. 25, lns. 17-25 and pg. 30, lns. 9-22].

**F.    Baker's Conflict Waiver is Unenforceable and Insufficient to Waive the Present Conflict**

Foley likely will attempt to rely on the purported waiver of conflict letters that Baker executed to assert that the Benzeevi Group waived Baker's conflict with Inyo. These purported waivers are wholly insufficient to obtain the Benzeevi Group's informed written consent to represent Inyo adverse to the Benzeevi Group. In fact, the letters, one of which may never even have been signed by the Benzeevi Group, actually state that if a conflict develops, Baker would continue to represent HCCA with respect to the Inyo MSA adverse to Inyo. [Benzeevi Decl.,, Exs. B, C]. These letters cannot possibly be interpreted to obtain "informed written consent" under Rule of Professional Conduct 3-310(A) to representation of Inyo if a conflict developed. Thus, the Baker conflict waiver letters do not allow Foley or Ms. McDow to escape disqualification.

Rule of Professional Conduct 3-310(A) sets forth the foundational requirements for informed written consent. Rule 3-310(A) defines "Informed written consent" as a "written agreement to the representation following written disclose and "disclosure" as "informing the client . . . of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client." Rule Prof. Conduct 3-310(A)(1) and (2). Informed written consent requires that the client be fully informed of all the facts and circumstances relating to the conflict. *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Company, Inc.* (2018) 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 442, 425 P.3d 1, 16]; *Gilbert v. National Corp. for Housing Partnerships* (1999) 71 Cal.App.4th 1240, 1253.

As the Supreme Court recently explained:

> "Because rule 3-310(C)(3) embodies a core aspect of the duty of loyalty, the disclosure required for informed consent to dual representation must also be measured by a standard of loyalty. To be informed, the client's consent to dual representation must be based on disclosure of all material facts the attorney knows and can reveal."

*Sheppard, Mullin, supra*, 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 442, 425 P.3d 1, 16]. In *Sheppard Mullin*, the Supreme Court held that a conflict waiver that failed to comply with Rule 3-310 by omitting disclosure of an existing conflict was not effective to waive the conflict. *Sheppard,*

1    *Mullin, supra,* 6 Cal.5th 59 [237 Cal.Rptr.3d 424, 444, 425 P.3d 1, 17-18]. Furthermore, even if a

2    disclosure of potential conflicts was made, a second disclosure must be made when the potential

3    conflict ripens into an actual conflict. *In re Jaeger*, *supra*, 213 B.R. 578, 585.

4          Mr. Kehr further explains that Rule 3-310(A) requires the following:
5          "In order for a lawyer to obtain client consent to a conflicting representation, it is
           necessary for the lawyer to disclose all of the facts, and to provide all of the information,
           the client would need to make an informed decision on whether to grant consent."
6

7    [Kehr Decl., ¶ 4.3].

8          At this point, it is uncertain whether the Benzeevi Group and Inyo executed the January 2,

9    2016 letter, and thus this letter should be disregarded. However, neither the January 2, 2016 letter

10   nor the July 19, 2017 letter complied with Rule 3-310 or satisfied Baker's duty of disclosure to its

11   existing clients, the Benzeevi Group. The letters fail to disclose reasonably foreseeable adverse

12   consequences such as the possibility that Baker would choose to represent Inyo if a conflict

13   developed. The letters actually say the opposite, that Baker "expects to continue to represent the

14   Benzeevi Group." [Benzeevi Decl., Exs. B and C, p. 2, ¶ A]. Further, there was no discussion of

15   what parts of the client file each client would receive at termination of the engagement and the

16   possibility that Baker would withhold parts of the file where it was advising HCCA as Inyo's

17   manager claiming such materials were Inyo's client file. Moreover, critically, after the actual

18   conflict developed between HCCA, Vi and Inyo in the summer of 2017, no further conflict

19   disclosure was given to the Benzeevi Group. As Mr. Kehr observes: "These conflict letters do

20   not attempt to obtain consent to Baker or McDow later representing the District against Dr.

21   Benzeevi or the Moving Parties." [Kehr Decl., ¶ 4].

22         Thus, the purported conflict waiver letters did not provide the information necessary to

23   waive the conflict of interest between Baker's duties to the Benzeevi Group and Inyo and do not

24   preclude disqualification of Foley.

25   **G.    The Benzeevi Group Has Not Otherwise Waived the Conflict**

26         The Benzeevi Group has not waived its rights to disqualify Foley and Ms. McDow by any

27   unreasonable delay either.

28         Delay alone does not waive grounds for disqualification. Both the delay and the resulting

1  prejudice must be shown to be extreme and unjustified to find a waiver of the right to disqualify.

2  *Western Continental Operating Co. v. Natural Gas Corp. of Calif.* (1989) 212 Cal.App.3d 752,

3  763-764. The fact that Debtor will lose counsel of its choice and will need to retain new counsel

4  does not constitute the type of extreme prejudice warranted to override the factors supporting

5  disqualification here. *See In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d 572, 599-

6  600 (Extreme prejudice beyond loss of knowledgeable counsel of choice necessary to deny

7  disqualification.). For example, in *In re Complex Asbestos Litigation,* even a motion made on the

8  eve of trial was found not prejudicial. *In re Complex Asbestos Litig.*, *supra*, 232 Cal. App. 3d

9  572, 599-600. Also, in *Ontiveros v. Constable*, the court found that a 16-month delay and

10 prejudice was not extreme where discovery was ongoing and no trial date was set. *Ontiveros v.*

11 *Constable* (2016) 245 Cal. App. 4th 686, 701-702. The court of appeal explained: "... the proper

12 focus is on the stage of the litigation." *Ontiveros, supra*, at 701-02.

13        Here, the delay has been only four months and before Ms. McDow even joined Foley she

14 was put on notice that the Benzeevi Parties were asserting that she and Baker had a disqualifying

15 conflict. [RJN, Ex. V, Docket No. 339]. As noted by the Court, Ms. McDow has been wholly

16 unsuccessful in getting approval for a plan of adjustment. [Bedoyan Declaration, ¶ 5, Ex. H

17 (8/29/18 Transcript 10:9-20, 13:22-15:2)]. Further, little has happened in the case since Foley

18 substituted into the case in June of 2018. The only developments have been status conferences

19 and the initiation of a few avoidance actions. [Bedoyan Decl., ¶ 6]. The involvement of new

20 counsel will not meaningfully delay the progress of the case. Foley will not be able to show the

21 type of extreme delay or prejudice necessary to operate to waive this egregious and flagrant

22 conflict. Indeed, the contrary is likely true: disqualification will permit the possibility of a fruitful

23 mediation, which may be the only realistic process for resolving this bankruptcy, short of

24 dismissal.

25 //

26 //

27 //

28 //

1

### IV.    CONCLUSION

2    Based on the foregoing, HCCA and Vi respectfully request that Foley and Ms. McDow be

3   disqualified from further representation of Inyo in these proceedings.

4

5   Dated: October ___15___, 2018                KLEIN, DENATALE, GOLDNER, COOPER,
                                                 ROSENLIEB & KIMBALL LLP

6

7

8                                                By: /s/ Hagop T. Bedoyan
                                                     HAGOP T. BEDOYAN,
9                                                    Attorneys for HealthCare Conglomerate
                                                     Associates, LLC and Vi Healthcare Finance,
10                                                   Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

HAGOP T. BEDOYAN, CSB NO. 131285
**KLEIN, DENATALE, GOLDNER,**
  **COOPER, ROSENLIEB & KIMBALL, LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (661) 326-0418
Email: hbedoyan@kleinlaw.com;

Brandon N. Krueger, Esq. (SBN 221432)(Admission Pending)
*bkrueger@sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)(Admission Pending)
*lcallas@sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for Healthcare Conglomerate Associates, LLC and
Vi Healthcare Finance, Inc.

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re: | Case No.: 16-10015-A-9 |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| | DC No.: KDG-4 |
| Debtor. | Date: November 14, 2018 |
| | Time: 1:30 p.m. |
| | Place: United States Bankruptcy Court |
| | 2500 Tulare Street, Fifth Floor |
| | Department A, Courtroom 11 |
| | Fresno, California |
| | Judge: Honorable Fredrick E. Clement |

**DECLARATION OF YORAI BENZEEVI, M.D. IN SUPPORT OF MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS ATTORNEYS FOR DEBTOR**

3NO8358                          1                          DECLARATION

I, YORAI (BENNY) BENZEEVI, M.D., declare as follows:

1.      I am an adult over the age of 18.

2.      I make this declaration based on my own personal knowledge. If called upon to do so, I could and would testify competently to the matters stated in this declaration.

3.      I make this declaration in support of the Motion of Healthcare Conglomerate Associates, LLC ("HCCA") and Vi Healthcare Finance, Inc. ("Vi") to disqualify the law firm of Foley & Lardner and Ashley McDow from representation of Debtor in the above entitled Chapter 9 case.

4.      I am the Managing Member of HCCA. HCCA is a California Limited Liability Company with its principal place of business in Los Angeles and was the Manager of debtor Southern Inyo Healthcare District ("Inyo" or "Debtor"). I have overall responsibility for the management of HCCA. I am also the President of Vi, a finance company which extended a line of credit to Debtor in July 2017. I received my medical degree at the University of California, Davis and I am board certified by the American Board of Emergency Medicine and I hold the status of Fellow of the American College of Emergency Medicine. Based on the foregoing positions, I have extensive knowledge of HCCA's contracts and the performance thereunder, the relationship between HCCA, and its affiliate entities, and the law firm of Baker Hostetler, the relationship between Inyo and HCCA, and the relationship between Inyo and Vi.

5.      In 2009, I retained the firm of Baker Hostetler ("Baker") to advise and assist me in the formation of a professional corporation. Between 2009 and 2017, Baker's engagement expanded far beyond the initial engagement to the formation of, and legal services to several other health-care related entities, including HCCA, Medflow, PC, Vi, and Tulare Asset Management (collectively, the "Benzeevi Group"). In 2013 and 2014, Baker advised HCCA concerning the drafting and negotiation of a Management Services Agreement ("Tulare MSA") with Tulare Local Healthcare District ("TLHD") and then continued to advise HCCA concerning the management of TLHD while it also undertook to advise TLHD. In 2013, Baker assisted and advised me in forming Medflow, PC. Baker also provided legal services relating

3NO8358               2               DECLARATION

1   to trademark and personnel issues, including drafting numerous employment and independent

2   contractor agreements for physicians and other professionals affiliated with my businesses.

3   Baker essentially functioned as outside general counsel for all of the businesses I was forming

4   and operating between 2009 and 2017, and I communicated with them frequently, and at

5   certain times, multiple times per day.  Bruce Greene was my primary contact at Baker, but

6   Ashley McDow and Fahim Farivar also worked on HCCA matters.  I communicated significant

7   amounts of confidential information to Baker concerning all aspects of the business of the

8   Benzeevi Group, including financial information and business strategies and goals.

9   Throughout Baker's representation, the Benzeevi Group paid Baker at least hundreds of

10   thousands of dollars for its legal services.

11          6.       In December 2015 and January 2016, Baker advised HCCA in negotiating and

12   drafting a Management Services Agreement with Inyo (the "Inyo MSA").  A true and correct

13   copy of the Inyo MSA is attached hereto as **Exhibit A**.  Ashley McDow, a partner at Baker,

14   was heavily involved, along with Mr. Greene, in these negotiations and drafting, with particular

15   emphasis on advising HCCA concerning how the contemplated Chapter 9 proceedings, to be

16   initiated by Inyo, would affect HCCA's rights under the Inyo MSA.  I spoke multiple times per

17   day during this period with both Mr. Greene and Ms. McDow concerning the Inyo MSA and

18   shared substantial confidential information with them concerning HCCA's strategies and goals

19   with respect to the Inyo MSA.  Ms. McDow was the attorney representing HCCA who

20   appeared on behalf of HCCA at the January 2, 2016 meeting of the Inyo Board where the Inyo

21   MSA, the January 2, 2016 purported "Waiver of Conflict" and the retainer agreement between

22   Baker and Inyo letter (**Exhibits B and C**, discussed in paragraph 7)  were all approved.  The

23   Inyo Board was represented by separate counsel Scott Nave in negotiating the Inyo MSA.

24          7.       Following execution of the Inyo MSA by Inyo and myself, on behalf of HCCA,

25   Baker began representing Inyo in commencing this Chapter 9 proceeding.   In connection with

26   this dual representation, Baker presented to HCCA and Inyo a purported "Waiver of Conflict"

27   letter dated January 2, 2016.  A true and correct copy of this January 2, 2016 letter signed by

28   Bruce Greene, but not Inyo or HCCA, is attached hereto as **Exhibit B**.  I have been unable to

3NO8358                                  3                           DECLARATION

1   locate a copy of the January 2, 2016 "Waiver of Conflict" letter counter-signed by Inyo and

2   HCCA in the files in my possession.    Baker also provided to Inyo an "Engagement of

3   Counsel" letter to Inyo also dated January 2, 2016.  A true and correct copy of the January 2,

4   2016 "Engagement of Counsel Letter" is attached hereto as **Exhibit C**.  As part of the Board

5   approval process for the Inyo MSA, the "Waiver of Conflict Letter" and the "Engagement of

6   Counsel" Letter were posted at the Inyo facilities, as well as uploaded along with the Agenda

7   for the January 2, 2016 Board meeting where the Inyo Board considered approval of the MSA,

8   the retention of Baker by Inyo, and the purported "Waiver of Conflict."  The Inyo MSA was

9   executed by Inyo and HCCA sometime in early January 2016.

10          8.        The Inyo MSA required that HCCA provide a Chief Restructuring Officer to

11   manage the hospital.  HCCA appointed HCCA representative Alan Germany to serve as Chief

12   Restructuring Officer.   Between January 2016 and September 2017, Ms. McDow

13   communicated with Mr. Germany and myself concerning Chapter 9 issues for Inyo.  I

14   understood that after Baker began representing Inyo in the Chapter 9 proceedings, Baker would

15   continue to advise HCCA concerning the Chapter 9 proceedings and with regard to the Inyo

16   MSA, and in fact Baker did exactly that.   Baker and Ms. McDow continued to advise HCCA

17   with regard to its duties and responsibilities as the manager of Inyo and in relation to the

18   Chapter 9 proceedings, Baker also continued to perform legal services on other matters it

19   continued to handle for HCCA and the Benzeevi Group.  At no time was I told that if the

20   interests of HCCA and Inyo became in conflict, that Baker could continue to represent Inyo

21   adverse to any member of the Benzeevi Group.   To the contrary, it was my understanding that

22   if an actual conflict developed, Baker would terminate its representation of Inyo and continue

23   representing the Benzeevi Group, including as to the Inyo MSA.

24          9.        In the summer of 2017, Baker undertook another project related to Inyo, the

25   formation of Vi Healthcare Finance, Inc. ("Vi").  Baker drafted the formation documents for

26   Vi and the transaction documents whereby Vi extended a line of credit to Inyo, and Baker

27   advised me concerning this entity.  I am the President of Vi.   In connection with Vi, Baker

28   provided another purported "Waiver of Conflict" Letter dated July 19, 2017.  A true and correct

3NO8358                                    4                                    DECLARATION

1    copy of this letter, signed by Bruce Greene of Baker, as well as myself on behalf of HCCA and

2    Vi, and Inyo Board member Richard Fedchenko, for Inyo, is attached hereto as **Exhibit D**.

3        10.    In the summer of 2017, a dispute erupted between HCCA and the Inyo Board

4    concerning the financial situation of Inyo and HCCA's management of Inyo.

5        11.    On September 29, 2017, I received a letter from Mr. Greene at Baker stating that

6    Baker was commencing termination of its representation of all entities of the Benzeevi Group.

7    A true and correct copy of Baker's September 29, 2017 letter is attached hereto as **Exhibit E**.

8    Neither orally, nor in this September 29, 2017 letter, did Baker disclose to me that an actual

9    conflict had developed. Baker also did not seek a waiver of an actual conflict between any

10   entity of the Benzeevi Group and Inyo. Baker did not seek my consent to continue representing

11   Inyo and had it requested such consent I would have declined to grant such consent. Baker's

12   conduct was directly contrary to my expectation and understanding that Baker would continue

13   to represent the Benzeevi Group if a conflict developed with Inyo.

14       12.    Then, approximately two and a half weeks later, on October 17, 2017, Ms.

15   McDow filed on behalf of Inyo in the Chapter 9 proceedings an Emergency Motion seeking

16   rejection of the Inyo MSA which was highly prejudicial to the Benzeevi Group. I received no

17   advance notice that Baker intended to file this motion, that Ms. McDow would support the

18   motion with her own declaration, or that Ms. McDow would appear at the hearing on this

19   Emergency Motion and make statements adverse to the interest of the Benzeevi Group. Instead,

20   I received an e-mail the same day the motion was filed that a hearing would occur on the

21   Emergency Motion that same day.

22       13.    Prior to the problem arising with Inyo, a dispute had arisen between TLHD and

23   HCCA. This dispute arose after a new Board was elected for TLHD in November 2016. Baker

24   had represented HCCA with regard to the Tulare MSA both before and after execution of the

25   Tulare MSA and also represented TLHD. However, in the summer of 2017 the TLHD claimed

26   to have retained new counsel, the McCormick Barstow firm, to replace Baker. Mr. Greene of

27   Baker disputed the TLHD Board's authority to hire new counsel. One example of this position

28   is reflected in an e-mail from Mr. Greene to several members of the TLHD Board dated August

3NO8358                                    5                              DECLARATION

1   8, 2017 wherein he stated "any law firm that the three of you may have selected will not be

2   considered to lawfully represent the District." A true and correct copy of Mr. Greene's August

3   8, 2017 e-mail is attached hereto as **Exhibit F.**

4       14.    When Ms. McDow left Baker and joined the firm of Foley & Lardner, she did

5   not seek my consent to have Foley & Lardner or herself, represent Inyo in these proceedings.

6   Had my consent been sought, I would not have granted consent for Foley or Ms. McDow to

7   represent Inyo.

8       I declare under penalty of perjury that the foregoing statements are true and correct and

9   that if called as a witness herein I could and would competently testify thereto, and that this

10  declaration was executed on October 14, 2018 at Los Angeles, California.

11

12                                  YORAI BENZEEVI, M.D.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3NO8358                    6                    DECLARATION



Klein · DeNatale · Goldner
——— ATTORNEYS AT LAW ———

5260 N. Palm Ave., Suite 205, Fresno, CA 93704
p. 559-438-4374  f. 661-326-0418  **www.kleinlaw.com**

September 17, 2018

Via E-mail & U.S. Mail

Matthew J. Price, Esq.
Foley & Lardner, LLP,
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
mprice@foley.com

Jeffery R. Atkin, Esq., Managing Partner
Ashley M. McDow, Esq.
Foley & Lardner LLP
555 S. Flower St., Suite 3500,
Los Angeles, CA 90071
jatkin@foley.com
amcdow@foley.com

      Re:    Benzeevi / HCCA et al.

Dear Mr. Price, Mr. Atkin and Ms. McDow

This letter addresses a related but separate issue to the Tolling Agreement raised in recent correspondence from the Sall Spencer firm regarding the situation with the Benzeevi Parties (HCCA, Dr. Benzeevi, Vi Healthcare and Tulare Asset Management) and Southern Inyo Healthcare District ("Inyo"). Based on the facts as set forth below, the Benzeevi Parties hereby request that Foley & Lardner and Ms. McDow withdraw from representing Inyo in the matter entitled, In re Southern Inyo Healthcare District, U. S. Bktcy Ct., E.D. Cal., Fresno Div. Case No. 2016-10015. Absent a voluntary withdrawal, HCCA will be moving to disqualify your firm and Ms. McDow from any further participation in the case.

The facts regarding the conflicts of interest that prohibit Ms. McDow and Foley from continuing as attorneys for Inyo in this case are set forth below. Prior to joining Foley, Ms. McDow was a partner for Baker Hostetler and integrally involved with representing the Benzeevi Parties and ultimately Inyo. Baker's relationship with the Benzeevi Parties spanned several years and covered multiple matters, in no way was this a limited representation by Baker on a discrete matter. As direct counsel for the Benzeevi Parties, Ms. McDow is presumptively in possession of all of the collective knowledge of Baker attorneys concerning the Benzeevi Parties. Most importantly, Ms. McDow was involved in drafting and negotiating the Management Services Agreement (the "MSA") between HCCA and Inyo, and then going on to lead the bankruptcy team for Inyo, while she and her firm continued to represent the Benzeevi Parties.

Klein • DeNatale • Goldner

Matthew J. Price, Esq.
September 17, 2018
Page 2

The MSA has been one of the central topics of Inyo's bankruptcy proceedings. In the course of her representation of the Benzeevi Parties, Ms. McDow obtained substantial confidential client information from HCCA and the other Benzeevi Parties, in addition to any knowledge she is constructively in possession of due to her previous employment with Baker.

While Baker did obtain conflict waivers from certain of the Benzeevi Parties, these conflict waivers were not only deficient in failing to make the required Rule of Professional Conduct 3-310 disclosures, but actually recognized several key facts and make statements that further strengthens the case for disqualification. The letter from Baker to Inyo, HCCA and Dr. Benzeevi dated January 2, 2016 makes the following statements:

• "The Firm has represented HCCA in connection with the negotiation and drafting of a management service agreement with the District."

• "In connection with its representation of the Benzeevi Group, the Firm has had access to confidential information of the Benzeevi Group."

• "the Rules discourage the representation of a client where, by reason of the representation of the former client, the firm has obtained material confidential information."

• "However, the firm hereby advises you that unless otherwise required by law, it will not disclose any material confidential information of either party to the other, nor will the Firm use material confidential information of one party to the benefit of the other party."

• "a conflict of interest would exist if a dispute arose between the District and HCCA with respect to the Management Agreement Matters and if HCCA requests that the Firm represent its interests in connection with such dispute."

• "The District expressly acknowledges and agrees that the foregoing waiver will allow the Firm to continue to represent the interests of the Benzeevi Group in other matters, including but not limited to the Management Agreement Matters (including possible litigation or other forms of dispute resolution) and that the District will not seek to disqualify the Firm or any of its attorneys from representing the Benzeevi Group in any such matters (including the Management Agreement Matters) as a result of the Engagement of the Firm by the District in connection with the Chapter 9 Filing."

• "if the Firm determined that its continued representation of the District in the Chapter 9 Filing would require disclosure of material confidential information of the Benzeevi Group to the District, or vice versa, the Firm may elect to terminate its representation of the District in the Chapter 9 Filing."

EXHIBIT C
PAGE 38

These statements were substantially duplicated in a later conflict waiver letter dated July 19, 2017 concerning Baker's representation of Vi Healthcare (a Benzeevi entity) in a loan transaction with Inyo.

These letters fail to comply with Rule 3-310 in that, amongst other things, they misstate the applicable rules and law concerning conflicts of interest and fail to describe the reasonably foreseeable adverse consequences of a potential conflict such as, that if a conflict developed that Baker could decide to abandon the Benzeevi Parties who would then have to retain new independent counsel as would Inyo. Moreover, even if these letters were valid, Baker violated the stated terms of these agreements. The waivers stated that none of the Benzeevi Parties' confidential information would be used adverse to the Benzeevi Parties and also strongly implied that if a conflict arose, Baker would continue to represent the Benzeevi Parties and withdraw from its representation of Inyo. Instead, when a conflict arose, Ms. McDow and Baker, abandoned the Benzeevi Parties, used confidential information adverse to the Benzeevi Parties, and acted directly adverse to the Benzeevi Parties in assisting Inyo in attempts to terminate the MSA, going so far as to criticize the MSA that Baker drafted as one-sided in favor of HCCA. Then, when Ms. McDow left Baker and joined Foley, she continued her representation of Inyo as general insolvency counsel, now on behalf of Foley who substituted in to replace Baker, in the very bankruptcy proceedings that continued to challenge the Benzeevi Parties' actions and role regarding Inyo, and in which HCCA is a creditor. As recently as August 29, 2018, Ms. McDow appeared at a Bankruptcy Court status conference where she continued to entrench her position adverse to HCCA by making allegations and statements adverse to HCCA. In this hearing, while admitting that it was in HCCA's interest that the Bankruptcy be dismissed, she resisted dismissal because it is in Inyo's interest that the proceedings continue. She also accused HCCA of delaying mediation in bad faith and that the problems that Inyo has had with submitting a feasible, confirmable plan are the fault of HCCA. While it is my understanding that you have taken the position that the retention of independent counsel somehow cleanses Ms. McDow of the conflict, this is not so. As you admit, because Ms. McDow has a duty to keep the Court informed of the bankruptcy matters she must continue to communicate with independent counsel as general insolvency counsel. Thus, this retention of separate counsel for certain aspects of the bankruptcy does not in any way operate as an ethical shield.

Ms. McDow's conflict has thus now become Foley's conflict since her fiduciary duties to the Benzeevi Parties survived termination of that relationship and are imputed to Foley. Ms. McDow is advocating for a global mediation, which she contends could be a significant funding source for the debtor. In that same mediation, McDow will participate as general insolvency counsel for Inyo, while she and her former firm will be parties with potential liability to both Inyo and the Benzeevi Parties. If that's not enough, McDow is also a material witness to the events that led to the dispute between the Benzeevi Parties and Inyo. These facts reveal the depth of the conflict facing Foley and Ms. McDow. On the one hand, Ms. McDow will attempt to minimize her own liability and that of Baker in these negotiations adverse to the Benzeevi Parties, but then on the other hand, she must try to maximize Inyo's recovery in these

EXHIBIT C
PAGE 39

Matthew J. Price, Esq.
September 17, 2018
Page 4

negotiations. While not a concern for the Benzeevi Parties, how would Inyo know that Ms. McDow didn't settle with the Benzeevi Parties at Inyo's expense in order avoid or reduce her own professional liability and the liability of the Foley and Baker firms. This is a direct and irreconcilable conflict of interest which was never described to the Benzeevi Parties or waived. The fact that Mr. Shinbrot was brought in to represent Inyo in the adversary action does not change the fact that as bankruptcy counsel, Ms. McDow is still taking positions adverse to her former client in acting as the architect of Inyo's chapter 9 plan that relies heavily on extinguishing multi-million dollar claims asserted by HCCA and Vi Healthcare and recovering additional millions from those very same two entities, Mc Dow is presumptively if not actually using confidential information in advancing the objectives of Inyo.

Rule 3-310(E) of the CRPC (Avoiding the Representation of Adverse Interests) articulates the well-established ethical prohibition against accepting representation of parties with adverse interest when confidential information is in the possession of the attorney:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client, where by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Please also note that new Rule of Professional Conduct 1.9, which will become effective November 1, 2018, closely mirrors the model Rules of Professional Conduct, and prohibits representation adverse to a former client. The comments note that "a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client." New Rule 1.9. This new rule also incorporates the concept stated in New Rule 1.7 that certain conflicts are un-waivable, such as when an attorney represents a client asserting claims in direct adversity to a former client. See New Rule 1.7(d).

An attorney's fiduciary duties to a former client continues after termination of employment, at least to the extent that the attorney must maintain the confidentiality of all client information and must not act adversely to the former client in matters involving the former representation. *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821 ("'an attorney is forbidden to do either of two things after severing [the] relationship with a former client. [The attorney] may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.'"); *Styles v. Mumbert* (2008) 164 Cal. App. 4th 1163, 1167 ("So fundamental is this precept that an attorney continues to owe a former client a fiduciary duty even after the termination of the relationship. For example, an attorney is forever forbidden from using, against the former client, any information acquired during such relationship, or from acting in a way which will injure the former client in matters involving such former representation.")

EXHIBIT C
PAGE 40

An attorney cannot escape this continuing duty by switching firms. When the attorney switches firms, that duty is then imputed to the firm, as a whole. *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847–848 ("an attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.'"); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 ("a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm.") New Rule of Professional Conduct 1.10 incorporates this rule of imputation.

In cases of successive adverse representation, where a lawyer personally provided legal services to a former client, "the only question is whether there is a substantial relationship between the subject of the prior representation and the subject of the current representation." *Fiduciary Trust Int'l of Cal. v. Superior Court* (2013) 218 Cal.App.4th 465, 479. When there is a substantial relationship, "access to confidential information by the attorney, in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 (emphasis in original); *Jessen v. Hartford Cas. Ins. Co.* (2003) 111 Cal.App.4th 698, 706. Because here, the representation of the Benzeevi Parties, with regard to the MSA and the structuring of the loan transactions with Vi Healthcare and the bankruptcy proceedings, are substantially related, access to relevant confidential information by Foley is presumed.

While some cases (and New Rule 1.10) have recognized that imputation will not be presumed, and disqualification of a successive firm may not be warranted under certain circumstances, if the conflicted attorney was not substantially participating in a related matter and is screened from representation of an adverse client, here that potential exception does not apply. As to Inyo, Ms. McDow substantially participated in the MSA and the Vi Healthcare formation and its loan transactions with Inyo, and Foley not only did not establish ethical screening to shield Foley from Ms. McDow's conflict, it affirmatively supported Ms. McDow in continuing to represent Inyo in violation of her duties to the Benzeevi Parties. See, e.g., *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 801 "(we should presume knowledge is imputed to all members of a tainted attorney's law firm. However, we conclude that, in the proper circumstances, the presumption is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case.")

Under these facts and the applicable case law, Foley and Ms. McDow are prohibited from continuing to represent Inyo and must withdraw. While we anticipate that you may claim that the timing of this request six months after Foley substituted into this case operates as a waiver of the Benzeevi Parties' rights to disqualify Foley and Ms. McDow, absent both inexcusable and unjustifiable delay and extreme prejudice, a client is not barred by laches from seeking

EXHIBIT C
PAGE 41

Klein · DeNatale · Goldner

Matthew J. Price, Esq.
September 17, 2018
Page 6

disqualification. *Western Continental Operating Co. v. Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 763–764. Ms. McDow was put on notice almost immediately after she withdrew from representing the Benzeevi Parties that the Benzeevi Parties objected to her representation of Inyo. If you have any facts or cases supporting that a six-month delay, when the attorney was put on notice months earlier of the client's objections, is inexcusable and that Inyo would suffer extreme prejudice please provide that information.

The Benzeevi Parties hereby request that Foley & Lardner withdraw from representation of Inyo in the bankruptcy case as well as to any matter involving the relationship or transactions between the Benzeevi Parties and Inyo. If you agree to this withdrawal we can discuss a reasonable time for Inyo to retain another firm. Otherwise the Benzeevi Parties will promptly be moving to disqualify Foley and Ms. McDow. We will give you until September 29, 2018 to respond to this letter. Otherwise, we will assume we will need to proceed with the disqualification motion.

Sincerely,

Hagop T. Bedoyan

HTB:tb

cc: Jeffrey S. Shinbrot, Esq.
     Brandon N. Krueger, Esq.
     Lara Callas, Esq.

EXHIBIT C
PAGE 42

| From: | ffarivar@foley.com |
| Sent: | Friday, October 26, 2018 3:31 PM |
| To: | Hagop T. Bedoyan |
| Cc: | Brandon Krueger; Lara Callas |
| Subject: | In re Inyo - Motion to Disqualify Foley & Lardner LLP |

Mr. Bedoyan,

Pursuant to the above-referenced matter, we intend to immediately serve a subpoena (for production of documents) on Baker & Hostetler LLP for any and all invoices from January 1, 2009 through present for HCCA, Vi Healthcare Finance, Medflow, PC, and Tulare Asset Management.

With respect to the notice of the subpoena, would you kindly advise if you will accept service on behalf of Medflow, PC and Tulare Asset Management?

Your timely response is much appreciated. Thanks.

Fahim Farivar, Esq.
C.P.A., M.B.T., LL.M.
Foley & Lardner LLP
555 South Flower Street / Suite 3300
Los Angeles, CA 90071-2411

P 213.972.4500<tel:213.972.4500>
F 213.486.0065<tel:213.486.0065>
C 818.731.1322<tel:818.731.1322>

Visit Foley.com<http://www.foley.com/>
[cid:image001.jpg@01D3E200.B36192F0]

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

1  Ashley M. McDow (245114)
   Fahim Farivar (252153)
2  **FOLEY & LARDNER LLP**
   555 S. Flower St. #3300
3  Los Angeles, CA 90071
   Telephone:   213.972.4500
4  Facsimile:   213.486.0065
   Email:       amcdow@foley.com
5               ffarivar@foley.com

6  Attorneys for Debtor,
   SOUTHERN INYO HEALTHCARE DISTRICT
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10                    **FRESNO DIVISION**

11
   In re                                    Case No.: 2016-10015
12
   SOUTHERN INYO HEALTHCARE            Chapter 9
13 DISTRICT,
                                       FL-004
14              Debtor.
                                       **[AMENDED] NOTICE OF SUBPOENA**
15                                     **TO PRODUCE DOCUMENTS,**
                                       **INFORMATION, OR OBJECTS OR TO**
16                                     **PERMIT INSPECTION OF PREMISES**
                                       **IN A BANKRUPTCY CASE (OR**
17                                     **ADVERSARY PROCEEDING)**

                                       **Production Date:**
18
                                       Date:   November 10, 2018
19                                     Time:   10:00 A.M.
                                       Place:  Foley & Lardner LLP
20                                             555 S. Flower St. #3300
                                               Los Angeles, CA 90071
21

22
   TO THE HONORABLE FREDRICK E. CLEMENT, UNITED STATES BANKRUPTCY
23
   JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL INTERESTED
24
   PARTIES AND/OR THEIR COUNSEL OF RECORD:
25
26     **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 45, as made

27 applicable to this proceeding by and through Federal Rules of Bankruptcy Procedure 9016 and

28 9014, SOUTHERN INYO HEALTHCARE DISTRICT, the debtor in the above-captioned

                              - 1 -

                                                    NOTICE OF SUBPOENA

                              EXHIBIT E
                                 44

bankruptcy case, respectfully submits the within Subpoena to Produce Documents, Information,
or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)
(the "Subpoena"), to be issued for service on Baker & Hostetler LLP (the "Subpoenaed Party").
A true and correct copy of the Subpoena is attached hereto as **Exhibit 1.**

　　　　**PLEASE TAKE FURTHER NOTICE** that the Subpoena commands that the
Subpoenaed Party produce and permit inspection of documents and other information set forth in
Exhibit A to the Subpoena by November 10, 2018 at 10:00 a.m. at Foley & Lardner LLP, 555
South Flower Street, Suite 3300, Los Angeles, CA 90071-2411.

Dated:　　October 29, 2018　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　**FOLEY & LARDNER LLP**


　　　　　　　　　　　　　　　　　　　　　By:　　/s/ Ashley M. McDow
　　　　　　　　　　　　　　　　　　　　　　　　　Ashley M. McDow
　　　　　　　　　　　　　　　　　　　　　　　　　Fahim Farivar

　　　　　　　　　　　　　　　　　　　　　Attorneys for Debtor,
　　　　　　　　　　　　　　　　　　　　　SOUTHERN INYO HEALTHCARE DISTRICT

- 2 -

# Exhibit 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Eastern_____ District of _____California_____

In re  SOUTHERN INYO HEALTHCARE DISTRIC
_____
Debtor

_(Complete if issued in an adversary proceeding)_

_____
Plaintiff
v.
_____
Defendant

Case No. 2016-10015

Chapter 9

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  The Custodian of Records for Baker & Hostetler LLP
_____
_(Name of person to whom the subpoena is directed)_

☑ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| PLACE   FOLEY & LARDNER LLP | DATE AND TIME  November 10, 2018 |
|---|---|
| 555 S. Flower St. #3500, Los Angeles, CA  90071 | 10:00 a.m. |

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/29/2018

CLERK OF COURT

OR

_____          _Fahim Farivar_
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Southern Inyo Healthcare District, who issues or requests this subpoena, are:
Foley & Lardner LLP, c/o Ashley M. McDow, 555 S. Flower St. #3500 Los Angeles, CA  90071, Phone: 213.972.4500, Email: amcdow@foley.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

. . .

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



**EXHIBIT A**

**ATTACHMENT TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

- 1 -

ATTACHMENT TO SUBPOENA – BAKER & HOSTETLER LLP

## I.    DEFINITIONS

The following defined terms shall apply to the within document request (the "Document Requests"):

1.    "BH" shall mean and refer to, collectively and individually, the law firm of Baker & Hostetler LLP and any predecessors, successors, subsidiaries, parent company or companies, affiliates, members, shareholders, owners, investors, principals, officers, directors, partners, associates, agents, employees, independent contractors, representatives, attorneys, accountants, brokers, consultants, and/or any person or entity acting or purporting to act on its behalf.

2.    "DOCUMENT" and "DOCUMENTS" shall be interpreted in the broadest sense possible and mean and/or refer to any written, graphic or other recorded (whether visibly, electronically, magnetically or otherwise) matter of whatever kind or nature or any other means of preserving thought or expression and all tangible things from which information can be processed, transcribed or retrieved, whether originals, copies of drafts (including, without limitation, non-identical copies), however produced or reproduced.  This shall include, but not be limited to, all retrievable information in computer or other digital storage, metadata, photographs, videotapes, letters, telegrams, correspondence, contracts, agreements, invoices, teletype message, notes, reports, mechanical sound recordings or transcripts thereof, calendars and calendar entries, and memoranda or minutes of telephone or personal conversations or minutes of conferences.  A DOCUMENT with handwritten, typewritten or other recorded notes, annotation, comments, editing marks, etc., is not and shall not be deemed identical to a version of such DOCUMENT without the modifications, additions, annotations, comments, and/or deletions.  A draft or non-identical copy of a DOCUMENT is a separate artifact from other versions of such DOCUMENT for purposes of this definition and the Document Requests.  Any written COMMUNICATION shall constitute a DOCUMENT as well as a COMMUNICATION.

3.    "INVOICES" shall be mean a statement of account containing a detail of services provided by or on behalf of BH and/or amounts due and owing for those services and shall be interpreted in the broadest sense any and all invoices possible and mean and/or refer to any written, graphic or other recorded (whether visibly, electronically, magnetically or otherwise)

- 2 -

1  matter of whatever kind or nature or any other means of preserving thought or expression and all

2  tangible things from which information can be processed, transcribed or retrieved, whether

3  originals, copies of drafts (including, without limitation, non-identical copies), however produced

4  or reproduced.

5      4.      "HCCA" shall mean and refer to Healthcare Conglomerate Associates, LLC, a

6  California limited liability company.

7      5.      "ViHF" shall mean and refer to Vi Healthcare Finance.

8      6.      "Medflow" shall mean and refer to Medflow, PC.

9      7.      "TAM" shall mean and refer to Tulare Asset Management.

10     8.      "RELATE," and/or any derivation thereof, when used with reference to any

11  particular subject matter, shall mean to embody, pertain to, consist, constitute, contain, reflect,

12  identify, state, refer or relate to, deal with, comprise, discuss, summarize, describe, contravene, or

13  be in any way pertinent to the subject matter.

14  **II.    INSTRUCTIONS**

15     1.      DOCUMENTS from any single file should be produced in the same order as they

16  were found in such file. If copies of DOCUMENTS are produced in lieu of the originals, such

17  copies should be legible and bound or stapled in the same manner as the originals. Labels or

18  other file designations should be produced and copied.

19     2.      If, after conducting a reasonable investigation, a complete answer cannot be

20  provided for a request for production, state that such is the case, and answer to the fullest extent

21  possible, stating what responsive DOCUMENTS or information are available, what

22  DOCUMENTS or information cannot be provided, why the DOCUMENTS or information are

23  unavailable, what efforts were made to obtain the unavailable DOCUMENTS or information, and

24  the name and address of the last known custodian of the unavailable DOCUMENTS or

25  information.

26     3.      If any information, DOCUMENT, or other requested matter is withheld on the

27  grounds of privilege or immunity from discovery, produce all those DOCUMENTS called for that

28  are not subject to a claim of privilege and so much of each DOCUMENT subject to a claim of

- 3 -

1  privilege that does not contain privileged information. With respect to any DOCUMENT or any

2  portion of any DOCUMENT withheld because of privilege, state in writing the basis for your

3  privilege claim as follows:

4          a.      A general description of the DOCUMENT which is claimed to be

5  privileged, including the number of pages of which it consists and the date appearing on the

6  DOCUMENT, or if no date appears, the date on which the DOCUMENT was prepared;

7          b.      The particular privilege which is claimed and the specific ground(s) on

8  which the claim of privilege is based;

9          c.      The name, business address, and job title of any persons who have read,

10  viewed, or listened to the information;

11          d.      The name, business address, and job title of the originator(s) or author(s) of

12  the DOCUMENT or thing which is claimed to be privileged;

13          e.      The name, business address, and job title of each designated recipient of

14  the DOCUMENT;

15          f.      The name(s) of the person(s) who has (have) custody of the

16  DOCUMENTS; and

17          g.      If work-product immunity is asserted, the proceeding for which the

18  privileged information was prepared.

19      4.      The relevant time period shall be between January 1, 2009 and the present.

20      5.      These are continuing requests.

   ///

21

   ///

22

   ///

23

24

25

26

27

28

- 4 -

ATTACHMENT TO SUBPOENA – BAKER & HOSTETLER LLP

III.    **DOCUMENT REQUESTS**

**REQUEST NO. 1:** Any and all INVOICES reflecting services rendered to HCCA and/or amounts due from HCCA.

**REQUEST NO. 2:** Any and all INVOICES reflecting services rendered to ViHF and/or amounts due from ViHF.

**REQUEST NO. 3:** Any and all INVOICES reflecting services rendered to Medflow and/or amounts due from Medflow.

**REQUEST NO. 4:** Any and all INVOICES reflecting services rendered to TAM and/or amounts due from TAM.

- 5 -

Ashley M. McDow (245114)
Fahim Farivar (252153)
**FOLEY & LARDNER LLP**
555 S. Flower St., Ste. 3300
Los Angeles, CA 90071
Telephone:   213.972.4500
Facsimile:   213.486.0065
Email:      amcdow@foley.com
            ffarivar@foley.com

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re | Case No.: 2016-10015 |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| Debtor. | Honorable Fredrick E. Clement |
| | FL-3 |
| | **CERTIFICATE OF SERVICE** |

I am over the age of eighteen years and not a party to the above referenced action. I am employed by Foley & Lardner LLP, at whose direction this service was made. My business address is 555 S Flower St. #3300, Los Angeles, CA 90071. On October 29, 2018, I served the following document(s): **[AMENDED] NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

  X   **EMAIL** I served the below listed persons and/or entities by email. Emailing will be completed no later than 24 hours after the document is filed.

- Robin Tubesing:  robin.tubesing@usdoj.gov
- Ming U:  TzeMing.U@cdph.ca.gov
- Gerald N. Simms: jerrys@psdsslaw.com; bonnieec@psdslaw.com
- Paul J. Pascuzzi: pascuzzi@ffwplaw.com; kwidder@ffwplaw.com

**X**  **FIRST CLASS MAIL.** I caused to be served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as listed below. Mailing will be completed no later than 24 hours after the document is filed.

Parties served:

Hagop T. Bedoyan, Esq.
KLEIN, DENATLE, GOLDNER, COOPER, ROSENLIEB & KIMBALL LLP
c/o Healthcare Conglomerate Associates, LLC and Vi Healthcare Finance, Inc.
Also, agreed to accept service on behalf of Medflow, PC and Tulare Asset Management
5260 N. Palm Ave., Ste. 205
Fresno, CA 93704

Brandon N. Krueger, Esq.
Lara A.S. Callas, Esq.
SALL SPENCER CALLAS & KRUGER
A Law Corporation
c/o Healthcare Conglomerate Associates, LLC and Vi Healthcare Finance, Inc.
32351 Coast Highway
Laguna Beach, CA 92651

Baker and Hostetler LLP
Attn: Custodian of Records
11601 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90025

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed at Los Angeles, California, on October 29, 2018.

By:    /s/ Karla P. Hernandez
        Karla P. Hernandez



SALL SPENCER
CALLAS & KRUEGER
A LAW CORPORATION

32351 Coast Highway
Laguna Beach, California 92651
Tel: 949-499-2942
Fax: 949-499-7403

**Lara Callas**
lcallas@sallspencer.com

October 29, 2018

*__Via E-mail & U.S. Mail__*

Elizabeth Greene, Esq.
Baker Hostetler LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
*egreene@bakerlaw.com*

John Parker
Baker Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
*jparker@bakerlaw.com*

> Re: *In re Southern Inyo Healthcare District*, Bankruptcy Court for the Eastern
> District of California Case No. 16-10015, Subpoena for Production of Documents

Dear Counsel:

This letter addresses the subpoena served this morning by Foley & Lardner on behalf of
debtor Southern Inyo Healthcare District ("SIHD") seeking production of invoices relating to
Baker & Hostetler's representation of Healthcare Conglomerate Associates, LLC ("HCCA"), Vi
Healthcare Finance, Inc. ("Vi"), Medflow, PC, and Tulare Asset Management, LLC ("TAM"),
(collectively, the "Benzeevi Group").

The Benzeevi Group, as former clients of Baker & Hostetler ("Baker"), hereby instruct
Baker to assert the attorney-client privilege and object to production on the basis of client
confidentiality as to these invoices and to withhold production of these invoices until the Court
rules on the issue on a motion to quash or otherwise, or the Benzeevi Group consents to
production.

If Baker were to produce the requested documents in violation of the Benzeevi Group's
instructions, this would be a breach of Baker's ethical duties to the Benzeevi Group. *See, e.g.,
Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821 ("'an attorney is forbidden to do
either of two things after severing [the] relationship with a former client. [The attorney] may not
do anything which will injuriously affect [the] former client in any matter in which [the attorney]
formerly represented [the client] nor may [the attorney] at any time use against [the] former
client knowledge or information acquired by virtue of the previous relationship.'") (citing
*Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-74); *Styles v. Mumbert* (2008) 164
Cal. App. 4th 1163, 1167 ("So fundamental is this precept that an attorney continues to owe a
former client a fiduciary duty even after the termination of the relationship. For example, an

Elizabeth Greene, Esq.
John Parker, Esq.
October 29, 2018
Page 2

attorney is forever forbidden from using, against the former client, any information acquired during such relationship, or from acting in a way which will injure the former client in matters involving such former representation."); *In re McIntosh* (9th Cir. 2017) 697 Fed. Appx. 569, 571–572 ("Under California law, the duty of loyalty survives the end of the attorney—client relationship; 'after severing his relationship with a former client an attorney 'may not do anything which will injuriously affect his former client in any manner in which he formerly represented him.'").

At this time, the Benzeevi Group objects to the subpoena in its entirety and will be requesting withdrawal or suspension of the subpoena, and if necessary will be moving to quash based on attorney-client privilege and confidentiality, and also because the subpoena violates Ashley McDow's, Fahim Farivar's and Foley & Lardner's continuing duties of loyalty to the Benzeevi Group, as articulated in the pending Motion for Disqualification, and is otherwise defective. I assume you have a copy of the pending disqualification motion, but in case you do not, a copy is attached for your reference.

Please confirm that Baker will follow the Benzeevi Group's instructions to assert attorney-client privilege and that will not produce the subpoenaed documents. If you have any intention of refusing to follow the Benzeevi Group's instructions, please let us know immediately so that the Benzeevi Group can employ the appropriate emergency procedures to protect their privileged and confidential material from disclosure pending a decision on a motion to quash.

Sincerely,

SALL SPENCER CALLAS & KRUEGER
A Law Corporation

*Lara Callas*

Lara A. S. Callas, of counsel

LAC/jvb
Enclosure

Cc:     Matthew J. Price, Esq. (via e-mail to mprice@foley.com)
        Ashley McDow, Esq (via e-mail to amcdow@foley.com)
        Brandon N. Krueger, Esq. (via e-mail to bkrueger@sallspencer.com)

**Baker&Hostetler** LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214

T  216.621.0200
F  216.696.0740
www.bakerlaw.com

October 29, 2018

**VIA EMAIL**

Lara Callas
Sall Spencer Callas & Krueger
32351 Coast Highway
Laguna Beach, CA  92651

Re:　　*In re Southern Inyo Healthcare District, Bankruptcy Court of the Eastern District of California No. 16-10015, Subpoena for Production of Documents*

Ms. Callas:

I am responding to your letter of October 29, 2018.

Based on your representation that you will be seeking to quash the subpoena issued to Baker & Hostetler LLP by Foley & Lardner, Baker & Hostetler intends to wait to respond to the subpoena until after the Court rules on your motion.  On that basis, Baker & Hostetler hereby objects to the subpoena under Fed. R. Civ. P. 45(d)(2)(B).

Very truly yours,

John D. Parker

cc:　　Matthew J. Price
　　　　Ashley McDow
　　　　Brandon N. Krueger
　　　　Elizabeth A. Green

| From: | amcdow@foley.com |
|---|---|
| Sent: | Monday, October 29, 2018 10:50 AM |
| To: | Hagop T. Bedoyan |
| Cc: | ffarivar@foley.com; egreen@bakerlaw.com; bkrueger@sallspencer.com; lcallas@sallspencer.com; Oliver W. Wanger (owanger@wjhattorneys.com); amcdow@foley.com; MHebbeln@foley.com |
| Subject: | Re: In re Inyo - Motion to Disqualify Foley & Lardner LLP - Notice of Subpoena |

Quite an incredulous position to take given your pending motion to disqualify that is premised almost entirely on your assertion that I did a significant amount of work for one or more of the entities that are the subject of the subpoena - yet you failed to append a single invoice evidencing this "significant amount of work."

In any event, is it safe to assume you will agree to continue the hearing on the motion while Judge Clement adjudicates these issues?

Sent from my iPhone

On Oct 29, 2018, at 11:37 AM, Hagop T. Bedoyan <HBedoyan@KleinLaw.com<mailto:HBedoyan@KleinLaw.com>> wrote:

Mr. Farivar,

I was out of the office Friday afternoon when I received your email at 3:31 p.m. asking if I would accept service of a subpoena for production of BH's billing invoices for Tulare Asset Management, LLC and for Medflow, PC. This morning I received Foley's subpoena on BH for production of billing invoices for TAM, Medflow, HCCA, Vi Healthcare. I guess 90 minutes of notice during business hours is how you operate in Los Angeles.

I have no objections to accepting service of the subpoena, but all of the referenced former BH clients will be asserting the attorney-client privilege, objecting to production and moving to quash the subpoena. The Sall Spencer firm will be communicating directly with the BH firm on these matters.

Hagop T. Bedoyan | Partner
Certified Specialist, Bankruptcy Law

5260 N. Palm Avenue, Suite 205 | Fresno, California 93704
Tel: 559.438.4374 | Fax: 661.326.0418
hbedoyan@kleinlaw.com<mailto:hbedoyan@kleinlaw.com> |
www.kleinlaw.com<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.kleinlaw.com&d=DwMFaQ&c=Rlm5WhGmPEr8srpDE4r86Q&r=QcLN0tAz07hwbK9IFRGuug&m=58MWxZL5KFrPr82Ugm262WDC8YmsSuQXkBoBPwiO2z4&s=TGo7NNet1gyXayg_p2UnEEjmh3ED0-zj3pF_qd_2xv4&e=>

The contents of this e-mail message, including any attachments, are intended solely for the use of the person or entity to which the e-mail was addressed. It contains information that may be protected by the attorney-client privilege, work-product doctrine, or other privileges and may be restricted from disclosure by applicable state and federal law. If you are not the intended recipient of this message, be advised that any dissemination, distribution, or use of the contents of this message is strictly prohibited. If you received this e-mail message in error, please e-mail kleinlaw@kleinlaw.com<mailto:kleinlaw@kleinlaw.com> and contact the sender by reply e-mail. Please also permanently delete all copies of the original e-mail and any documentation. Thank you.

-----Original Message-----
From: ffarivar@foley.com<mailto:ffarivar@foley.com> <ffarivar@foley.com<mailto:ffarivar@foley.com>>
Sent: Monday, October 29, 2018 8:40 AM
To: Hagop T. Bedoyan <HBedoyan@KleinLaw.com<mailto:HBedoyan@KleinLaw.com>>;
egreen@bakerlaw.com<mailto:egreen@bakerlaw.com>
Cc: bkrueger@sallspencer.com<mailto:bkrueger@sallspencer.com>;
lcallas@sallspencer.com<mailto:lcallas@sallspencer.com>; amcdow@foley.com<mailto:amcdow@foley.com>;
khernandez@foley.com<mailto:khernandez@foley.com>
Subject: Re: In re Inyo - Motion to Disqualify Foley & Lardner LLP - Notice of Subpoena

Enclosed please find the Notice of Subpoena regarding the above-referenced matter. Thank you.

Fahim Farivar, Esq.
C.P.A., M.B.T., LL.M.
Foley & Lardner LLP
555 South Flower Street / Suite 3300
Los Angeles, CA 90071-2411

P 213.972.4500<tel:213.972.4500>
F 213.486.0065<tel:213.486.0065>
C 818.731.1322<tel:818.731.1322>

Visit Foley.com<http://Foley.com><http://www.foley.com/>

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.


Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast Ltd, an innovator in Software as a Service (SaaS) for business. Providing a safer and more useful place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here<https://urldefense.proofpoint.com/v2/url?u=http-

3A__www.mimecast.com_products_&d=DwMFaQ&c=Rlm5WhGmPEr8srpDE4r86Q&r=QcLN0tAz07hwbK9lFRGuug&m=5
8MWxZL5KFrPr82Ugm262WDC8YmsSuQXkBoBPwiO2z4&s=mRghq7UD75Mgkxn6YY5uhDqlEncopZimY8IXvArAL_8&e=>.

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

EXHIBIT H
61