17

HAGOP T. BEDOYAN, CSB NO. 131285
KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL LLP
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (661) 326-0418
E-mail: hbedoyan@kleinlaw.com

Brandon N. Krueger, Esq. (SBN 221432)
*bkrueger@sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)
*lcallas@sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for HealthCare Conglomerate Associates, LLC, Vi Healthcare Finance, Inc., Medflow, PC, and Tulare Asset Management LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No. 16-10015-A-9<br><br>Chapter 9<br><br>DC NO.: KDG-5<br><br>Date: November 29, 2018<br>Time: 1:30 p.m.<br>Place United States Bankruptcy Court, 2500 Tulare Street, Fifth Floor, Department A, Courtroom 11, Fresno, California<br>Judge: Honorable Fredrick E. Clement |
|---|---|

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENA TO BAKER HOSTETLER LLP**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3

MEMORANDUM OF POINTS AND AUTHORITIES ..... 5

I. INTRODUCTION ..... 5

II. RELEVANT FACTS AND PROCEDURAL SUMMARY ..... 6

A. Summary Regarding Service and Response to Subpoena ..... 6

B. Summary Regarding Conflicts of Interest Relevant to this Subpoena ..... 7

III. LEGAL ARGUMENT ..... 8

A. Standards Applicable to Determination of the Issues Presented in this Motion to Quash ..... 8

B. The Subpoena Violates McDow's, Farivar's and Foley's Continuing Duties and the Rules of Professional Conduct ..... 9

C. The Motion to Quash Should be Granted Because the Documents Sought Contain Attorney-Client Privileged Information ..... 11

D. The Benzeevi Group Has not Waived Privilege by Seeking Disqualification ..... 14

E. In the Alternative, the Court Should Issue a Protective Order Narrowing the Subpoena and Employing Measures to Limit Access and Use in Connection with the Disqualification Motion ..... 16

IV. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

## Federal Cases


*Arias v. FCA US LLC*
2018 WL 3419709 (E. D. Cal. July 12, 2018) ........ 11

*Chaudhry v. Gallerizo,*
174 F. 3d 394 (4th Cir. 1999) ........ 14

*Clarke v. American Commerce National Bank,*
974 F. 2d 127 (9th Cir. 1992) ........ 14, 16

*Concat LP v. Unilever PLC,*
350 F. Supp. 2d 796 (N.D. Cal. 2004) ........ 11

*Crispin v. Christian Audigier, Inc.,*
717 F. Supp. 2d 965 (C.D. Cal. 2010) ........ 9

*In re County of Los Angeles,*
223 F. 3d 990 (9th Cir. 2000) ........ 9

*In re Jaeger,*
213 B.R. 578 (Bankr. C.D. Cal. 1997) ........ 10

*In re McIntosh,*
697 Fed. Appx. 569 (9th Cir. 2017) ........ 10

*In re Megan-Racine Associates, Inc.,*
189 B.R. 562 (Bankr. N.D.N.Y. 1995) ........ 9

*Lennar Mare Island, LLC v. Steadfast Ins. Co.,*
105 F. Supp. 3d 1100 (E. D. Cal. 2015) ........ 9

*Matter of Howrey LLP,*
698 Fed. Appx. 881(9th Cir. 2017) ........ 11

*McGrane v. Howrey, LLP,*
2015 WL 6126792 (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD) ........ 11

*SAS Institute Inc. v. Akin Gump Strauss Hauer & Feld, LLP,*
2011 WL 6370482 (E.D.N.C., Dec. 20, 2011, No. 5:10-CV-101-H) ........ 16

*Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California,*
7 F. 3d 856 (9th Cir. 1993) ........ 9

*Team Systems International, LLC v. Haozous,*
706 Fed. Appx. 463 (10th Cir. 2017) ........ 16


## California Cases


*City and County of San Francisco v. Cobra Solutions, Inc.,*
38 Cal. 4th 839 (2006) ........ 15

*Costello v. Buckley,*
245 Cal. App. 4th 748 (2016) ........ 10

*Fiduciary Trust Internat. of California v. Superior Court*, 218 Cal. App. 4th 465 (2013) .......... 15

*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445 (1991) .......... 15

*Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698 (2003) .......... 15

*Los Angeles County Bd. of Supervisors v. Superior Court*, 2 Cal. 5th 282 (2016) .......... 12

*Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011) .......... 10

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135 (1999) .......... 11

*Styles v. Mumbert*, 164 Cal. App. 4th 1163 (2008) .......... 10

*Wutchumna Water Co. v. Bailey*, 216 Cal. 564 (1932) .......... 10

**Statutes**

California Evidence Code, § 952 .......... 12

**Rules**

Federal Rules of Bankruptcy Procedure, Rule 9016 .......... 6, 8

Federal Rules of Civil Procedure, Rule 45 .......... 6, 8

Federal Rules of Evidence, Rule 501 .......... 9

Local Rules of Practice for the United States District Court for the Eastern District of California, Rule 1001-1 .......... 9

Local Rules of Practice for the United States District Court for the Eastern District of California, Rule 180 .......... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In a desperate attempt to delay their inevitable mandatory disqualification, Foley & Lardner ("Foley") and Ashley McDow, attorneys for Southern Inyo Healthcare District (Inyo" or "Debtor") have served a subpoena (the "Subpoena") on Ms. McDow's former law firm, Baker & Hostetler, LLP ("Baker"). The Subpoena seeks all of Baker's invoices relating to legal services performed for Baker's and Ms. McDow's former clients Healthcare Conglomerate Associates, LLP, Vi Healthcare Finance, Inc. Medflow PC, and Tulare Asset Management, LLC (the "Benzeevi Group") for an eight-year period.

Grasping for any shred of support in opposition to the pending disqualification motion (the "DQ Motion")[1], Ms. McDow (on behalf of her *current* client, Inyo, her current firm Foley and herself) now seeks to subpoena from her former firm (Baker) attorney-client documents related to her and her former firm's representation of the Benzeevi Group (i.e. her *former* clients). The law governing disqualification, however, does not allow a potentially disqualified attorney to force disclosure of her former clients' confidential or privileged information in an attempt to escape disqualification. The pursuit of these documents by Ms. McDow, Mr. Farivar (who also worked on matter for the Benzeevi Group) and Foley is another flagrant and direct violation of the continuing duties of loyalty and confidentiality owed to the Benzeevi Group by Ms. McDow and Mr. Farivar, and imputed to Foley. An attorney must not be allowed to violate its duties to former clients and the Rules of Professional Conduct in an attempt to oppose disqualification. Indeed, that is why the substantial relationship test was created and adopted: so that disqualification motions may be determined without intrusion into attorney-client privilege. Thus, not only is the Subpoena improper, but the documents it seeks are entirely unnecessary to determination of the pending DQ Motion.

The subpoenaed Baker invoices contain detailed information concerning the specific legal services provided by the entire Baker firm (not limited to work performed by Ms. McDow and

[1] Pursuant to stipulation, the parties have agreed to continue the DQ Motion hearing until December 19, 2018 while this motion is considered by the Court. As far as counsel is aware, the stipulation has not yet been approved by this Court [Bedoyan Decl., ¶ 8].

Mr. Farivar) to the Benzeevi Group over an eight-year period. Consequently, the Baker invoices receive categorical protection as attorney-client privileged information. In accordance with Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure ("FRCP"), as incorporated by Rule 9016 of the Federal Rules of Bankruptcy Procedure ("FRBP"), the Subpoena seeking this privileged information must, therefore, be quashed in its entirety.

In the alternative, if the Court is inclined to deny this motion, it must employ protective measures, such as redaction and sealing, and possibly *in camera* review to preclude improper disclosure and use of the information in the invoices outside the context of disqualification by Inyo or others.

## II. RELEVANT FACTS AND PROCEDURAL SUMMARY

### A. Summary Regarding Service and Response to Subpoena

The Benzeevi Group filed its Motion for Disqualification on October 15, 2018, seeking disqualification of Foley and Ms. McDow, based on Baker and Ms. McDow's former representation of the Benzeevi Group (the "DQ Motion") [Dkt. No. 484]. [Bedoyan Decl., ¶ 2, Ex. A]. Prior to filing the DQ Motion, on September 17, 2018, the Benzeevi Group requested in writing that Foley voluntarily withdraw. [Bedoyan Decl., ¶ 3, Ex. C]. The September 17, 2018 letter explained in detail the legal and factual basis for Foley's disqualification, including that Ms. McDow had personally performed services for HCCA in relation to the Management Services Agreement between HCCA and Inyo (the "Inyo MSA"). [Bedoyan Decl., Ex. C].

Late in the afternoon on Friday, October 26, 2018, more than a month after being put on notice of the basis for disqualification, and just days before its opposition was due, Foley notified Benzeevi Group's counsel that it intended to serve a subpoena seeking Baker's invoices in relation to the disqualification motion. [Bedoyan Decl., ¶ 4, Ex. D]. This October 26, 2018 e-mail was sent by Fahim Farivar who had previously worked at Baker on matters for HCCA. [Bedoyan Decl., Ex. D; Benzeevi Decl., ¶ 5].[2]

On October 29, 2018, Mr. Farivar sent by e-mail to the Benzeevi Group's counsel, a

[2] Dr. Benzeevi's declaration in support of the Motion for Disqualification is hereby incorporated by reference and is attached as Exhibit B to the Appendix for reference and the convenience of the Court.

Notice of Subpoena (the "Notice") seeking Baker's invoices for work performed for HCCA, Vi Healthcare, Medflow, PC, and Tulare Asset Management from 2009 through present. [Bedoyan Decl., ¶ 5, Ex. E]. The Notice was signed by Ms. McDow and the Subpoena was signed by Mr. Farivar, both of whom were former counsel to the Benzeevi Group and are now current counsel to the Debtor. [Bedoyan Decl., Ex. E; Benzeevi Decl., ¶ 5]. On that same day, the Benzeevi Group notified Baker, with a copy to Foley, that they would be asserting privilege concerning the requested documents and instructing Baker not to produce anything until a ruling on a motion to quash. [Bedoyan Decl., ¶ 6, Ex. F]. Baker responded by sending a written objection to Foley asserting attorney-client privilege and agreeing not to produce documents responsive to the Subpoena until a ruling on a motion to quash. [Bedoyan Decl., Ex. G]. Following these developments, on October 29, 2018, Ms. McDow requested that the Benzeevi Group consent to continue the DQ Motion then set for November 14, 2018, while the parties presented the issues in dispute regarding the Subpoena to this Court. [Bedoyan Decl., ¶ 8].

The parties exchanged several proposals, and ultimately stipulated to a schedule whereby this motion must be filed on November 6, 2018 with a hearing set before this Court on November 29, 2018, and the hearing on the DQ Motion is continued to December 19, 2018 (the "Stipulation"). [Bedoyan Decl., ¶ 8].[3]

**B. Summary Regarding Conflicts of Interest Relevant to this Subpoena**

The facts regarding the relationship between the Benzeevi Group and Baker, Ms. McDow and Mr. Farivar, and the imputation of their conflict to Foley, are set forth at length in the DQ Motion, but will be summarized here for reference. The evidence and argument regarding the conflicts of interest set forth in the DQ Motion are hereby incorporated by reference and the Benzeevi Declaration submitted in support of the disqualification are attached to the appendix for this motion for the court's convenience. [See, Bedoyan Decl., Ex. A (Memo of Points & Authorities in support of DQ Motion) and Ex. B (Benzeevi Decl. in support of DQ Motion)]

Baker was the firm representing the Benzeevi Group from 2009 onward – essentially serving as the Benzeevi Groups' general and all-purpose attorneys - until its abrupt abandonment

[3] As of the date of this motion, the Court has not entered an order approving the Stipulation.

of the Benzeevi Group in September 2017. [Benzeevi Decl., ¶ 5]. The representation began with the formation of a professional corporation for Dr. Benzeevi and ultimately expanded to include multiple matters and entities, including HCCA, Vi Healthcare Finance, Medflow PC and Tulare Asset Management. [Benzeevi Decl., ¶ 5].

Prior to Baker ever representing Inyo, Ms. McDow and Mr. Farivar, then at Baker, performed work for HCCA. [Benzeevi Decl., ¶ 5]. Ms. McDow, representing solely HCCA at the time, was heavily involved in the negotiation and drafting of the Management Services Agreement between HCCA and Inyo. [Benzeevi Decl., ¶ 6]. Only later did Ms. McDow and Baker undertake to simultaneously represent their "old" clients, the Benzeevi Group, and their "new" client, Inyo. [Benzeevi Decl., ¶ 7].

The Notice, signed by Ms. McDow along with the Subpoena signed by Mr. Farivar which are the subject of this motion, seek invoices which, in part, reflect services performed by Ms. McDow and Mr. Farivar for the Benzeevi Group. But the extremely broad Subpoena also seeks all the invoices for all of the services performed by Baker for all entities of the Benzeevi Group during the eight-year time frame. [Bedoyan Decl., Ex. E]. Ms. McDow seeks the invoices to oppose the pending DQ Motion which seeks to prohibit her and Foley from further representation of Inyo in these proceedings. [Bedoyan Decl., ¶ 9]. These facts show that the Subpoena was served for strategic purposes, representing yet another breach of Ms. McDow's and Mr. Farivar's continuing duties of loyalty and confidentiality to the Benzeevi Group, in an improper attempt to obtain privileged and confidential material which is not required to resolve the DQ Motion. This Subpoena should be quashed in its entirety.

## III. LEGAL ARGUMENT

### A. Standards Applicable to Determination of the Issues Presented in this Motion to Quash

Under FRCP 45, as incorporated by FRBP 9016, the court issuing a subpoena "must quash or modify a subpoena" that requires disclosure of privileged or other protected matter, if no exception or waiver applies. FRCP 45(d)(3)(A)(iii). A party has standing to seek to quash a subpoena issued to a non-party when the party claims a personal right or privilege with

respect to the documents sought in the subpoena. *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 974 (C.D. Cal. 2010). The Benzeevi Group thus has standing to move to quash the Subpoena, because each entity therein has a personal right in protecting their privileged and confidential information from disclosure, and also in preventing prejudice to HCCA's and Vi's rights as creditors and defendants in this proceeding.

The Court should apply California state law to the issues raised in this motion to quash, because the Subpoena directly relates to the DQ Motion which implicates state law. Federal Rule of Evidence 501 provides that when state law provides the rule of decision, as it does in the disqualification motion, "the privilege of a witness, ... shall be determined in accordance with State law." Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 7 F.3d 856, 859 (9th Cir. 1993); *In re Megan-Racine Associates, Inc.*, 189 B.R. 562, 569 (Bankr. N.D.N.Y. 1995) ("Courts have applied the state law of privileges when confronted with a proceeding arising within a bankruptcy case and that proceeding concerns state law.")

In the Ninth Circuit, the Courts apply California state law in matters of disqualification. *In re County of Los Angeles*, 223 F. 3d 990, 995 (9th Cir. 2000). The Eastern District of California has adopted the Rules of Professional Conduct of the California State Bar, as well as the applicable state court case law as the requisite standards of professional conduct. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1107 (E. D. Cal. 2015); Local Bankruptcy Rule ("LBR") 1001-1 (c) (incorporating Rule 180 of the Local Rules of Practice for the United States District Court for the Eastern District of California); E.D. Cal. L. R. 180(e).

Under California law, the Subpoena should be quashed and the DQ Motion determined without requiring invasion of the Benzeevi Group's privileged and confidential information.

**B. The Subpoena Violates McDow's, Farivar's and Foley's Continuing Duties and the Rules of Professional Conduct**

The Subpoena should be quashed in its entirety because Ms. McDow's and Mr. Farivar's direct participation in seeking their former client's documents from their former firm constitutes direct adverse action in violation of their continuing duties of loyalty and confidentiality to the Benzeevi Group.

An attorney may not act "for others in any matters where such secrets or confidences or knowledge acquired in the course of the earlier employment can be used to the former client's disadvantage. . . [A]n attorney may ***never*** use against his former client knowledge or information acquired by virtue of the previous relationship.'" *Costello v. Buckley*, 245 Cal. App. 4th, 748, 753 (2016) (quoting *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 571(1932)) (emphasis added). Numerous cases recognize that an attorney's fiduciary duties to a former client of both confidentiality and loyalty continue after termination of employment. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) ("'an attorney is forbidden to do either of two things after severing [the] relationship with a former client. [The attorney] may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.'") (citing *Wutchumna Water Co. v. Bailey, supra*, 216 Cal. 564, 573-74); *Styles v. Mumbert*, 164 Cal. App. 4th 1163, 1167 (2008) ("an attorney is ***forever*** forbidden from using, against the former client, any information acquired during such relationship, or from acting in a way which will injure the former client in matters involving such former representation.") (emphasis added).

Federal cases employing California law recognize this principle. *In re McIntosh*, 697 Fed. Appx. 569, 571–572 (9th Cir. 2017) ("Under California law, the duty of loyalty survives the end of the attorney—client relationship; 'after severing his relationship with a former client an attorney 'may not do anything which will injuriously affect his former client in any manner in which he formerly represented him.'"). The duty of loyalty to a former client "prohibits an attorney from engaging in any act that will injure the former client in matters involving the former representation." *In re Jaeger*, 213 B.R. 578, 589 (Bankr. C.D. Cal. 1997).

> "This duty of loyalty continues after the client has discharged the lawyer, and the action injurious or adverse to the former client does not need to involve the use or disclosure of confidential information. A distinct and separate breach of ethical duty arises when the attorney discloses the former client's confidential information adversely to the former client."

///

///

*McGrane v. Howrey, LLP*, 2015 WL 6126792, at *4 (N.D. Cal., Oct. 19, 2015, No. 14-CV-05111-JD), *aff'd sub nom. Matter of Howrey LLP*, 698 Fed. Appx. 881(9th Cir. 2017) (citations omitted).

Specifically, in *Concat LP v. Unilever PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004), the court recognized that "a conflict of loyalty exists in fact as well as in principle," when a former attorney offers a declaration in "direct opposition to the interests of his client" in opposition to a motion for disqualification based on an alleged breach of the duty of loyalty.

Here, Ms. McDow and Mr. Farivar seek documents from Baker, their former firm, containing privileged and confidential information of the Benzeevi Group, which they will then use to attempt to avoid disqualification, for the benefit of their current client, and themselves, adverse to the Benzeevi Group. They are personally involved in seeking to invade their former client's rights by subpoenaing Baker to produce the privileged and confidential information contained in the invoices, which reflect legal services performed for the Benzeevi Group by Baker (and presumably Ms. McDow's and Mr. Farivar's time entries as well), over an eight-year period. Ms. McDow and Mr. Farivar must not be allowed to fragrantly disregard their ethical duties and the Rules of Professional Conduct by their personal involvement in action directly adverse to the Benzeevi Group. Attorneys must not be allowed to oppose disqualification by engaging in further violation of their ethical and professional rules.

The substantial relationship test renders the subpoenaed documents wholly unnecessary to determination of the DQ Motion. Thus, the Subpoena stands only to cause significant prejudice to the Benzeevi Group, whether or not the pending DQ Motion is ultimately granted. Quashing the subpoena recognizes and honors the ***"paramount concern"*** to preserve public trust in the scrupulous administration of justice and the integrity of the bar. *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (1999) (emphasis added); *Arias v. FCA US LLC* 2018 WL 3419709, *3 (E. D. Cal. July 12, 2018). On this basis alone, the Subpoena should be quashed.

**C. The Motion to Quash Should be Granted Because the Documents Sought Contain Attorney-Client Privileged Information**

The Subpoena also should be quashed because it invades the attorney-client privilege of the Benzeevi Group with Baker. Baker's invoices for the Benzeevi Group contain entries detailing communications between Dr. Benzeevi, and his agents, with Baker attorneys, as well as specific entries concerning legal strategy and reflecting particular areas of research and legal analysis. [Bedoyan Decl., ¶ 10]. This information is strictly protected by the attorney-client privilege.

The recent *Los Angeles County* decision by the California Supreme Court evaluated the extent to which invoices are privileged and supports the conclusion that Baker's invoices should receive attorney-client privilege protection. The *County of Los Angeles* decision involved a Public Records Act request for invoices relating to legal services performed by law firms for the County relating to cases brought by prison inmates. *Los Angeles County Bd. of Supervisors v. Superior Court*, 2 Cal.5th 282 (2016). After the County produced redacted invoices from closed matters, the ACLU sought production of invoices in pending matters.

The California Supreme Court's discussion recognized the statutory basis for the attorney-client privilege:

> "Evidence Code section 954 confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.' A 'confidential communication,' moreover, is defined as 'information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.' (Evid. Code, § 952.)"

*Los Angeles County Bd. of Supervisors v. Superior Court, supra*, 2 Cal.5th at 292-93.

The California Supreme Court stated that the "heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." *Id.* at 294. Applying these principles, the California Supreme Court denied the ACLU's request for invoices in pending and active matters, holding:

> "invoices for work in pending and active legal matters are so closely related to attorney-client communications that they implicate the heartland of the privilege. The privilege therefore protects the confidentiality of invoices for work in pending and active legal matters."

*Id.* at 288.

The California Supreme Court also recognized that for closed matters, the contents of invoices are protected by the attorney-client privilege "only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose." *Id.* at 300

Here, the Baker invoices should be categorically protected from disclosure because they implicate the heartland of privilege, as there is an ongoing adversary proceeding in this Bankruptcy proceeding focused on the very subject matter of Baker's representation of HCCA and Vi, the Inyo MSA and the Vi loans. Even though Baker is no longer involved in representing the Benzeevi Group, because it abandoned the Benzeevi Group and took Inyo's side, this does not mean that the subject matter of their representation is not pending and active. Indeed, just last week, Inyo filed a motion to enjoin Vi from receiving the tax revenues it is entitled to receive from the County of Inyo under the Vi loan documents drafted by Baker. [Bedoyan Decl., ¶ 11]. Further, in the adversary proceeding against HCCA, Inyo is challenging actions that HCCA took as manager while being advised by Baker. [Bedoyan Decl., ¶ 11].

It is not only services for HCCA in relation to the Inyo MSA which are in issue, because Inyo also challenges actions taken by HCCA in relation to transfers between Inyo and Tulare Local Healthcare District ("TLHD"). Thus, the legal services provided by Baker relating to HCCA as manager for TLHD, as well as those relating to Tulare Asset Management, which Baker helped form and advise, also relate to active and pending matters. [Benzeevi Decl., ¶ 5]. This is also true because TLHD is currently litigating claims against HCCA and Tulare Asset Management in its own bankruptcy proceedings. [Bedoyan Decl., ¶ 11]. This is not a situation where the Benzeevi Group is seeking recovery of fees under a fee-shifting statute or as damages in a concluded matter. Here, the invoices are sought solely by Inyo (and Foley) in relation to the subject matter of pending and active litigation and are thus privileged.

Even if this Court were to apply federal law, which generally realizes less protection for legal invoices, federal courts recognize that certain information in invoices is protected by the

attorney-client privilege.[4] For example, in *Clarke v. American Commerce National Bank*, 974 F. 2d 127, 129 (9th Cir. 1992), the Ninth Circuit recognized that bills, statements or time records that reveal the "motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of the law, fall within the privilege." Also, in *Chaudhry v. Gallerizo*, 174 F. 3d 394, 402-03(4th Cir. 1999), the court held that specification of statutes researched which was reflected in invoices is "confidential information regarding legal advice" and should not be disclosed.

The invoices sought by Inyo contain far more than general information concerning fees, identity of timekeepers, and the general nature of Baker's services. [Bedoyan Decl., ¶ 10]. The invoices reflect the subject matter of attorney-client communications, specific matters researched by Baker attorneys, and substance and timing of legal strategy as well as business opportunities considered by the Benzeevi Group. [Bedoyan Decl., ¶ 10]. Thus, even under the more lenient standard of the federal courts, Baker's invoices are privileged, and the Subpoena should be quashed.

Here, since the subject matter of Baker's legal services is still the subject of active and ongoing litigation between the Benzeevi Group, Inyo and TLHD, Baker's invoices are categorically protected by the attorney-client privilege as held by the decision of the California Supreme Court in *County of Los Angeles*. These privileged materials must not be produced, and the Subpoena therefore should be quashed in its entirety.

**D. The Benzeevi Group Has Not Waived Privilege by Seeking Disqualification**

The information in the Baker invoices is not only privileged, its production must not be compelled as part of the disqualification procedure. The Benzeevi Group has not somehow waived attorney-client privilege by seeking to disqualify Foley and Ms. McDow. The law is clear that a client is not required to disclose privileged information to support a disqualification motion. To the contrary, the substantial relationship test is designed to avoid disclosure of privileged

---

[4] While federal law does not generally extend categorical attorney-client privilege protection to invoices reflecting the identity of the client, the amount of the fee and payment information, and the general purpose of the work performed, cases do recognize protection for other information in invoices as explained in this section. *Clarke v. American Commerce National Bank*, *supra*, 974 F. 2d 127, 129.

information in the context of disqualification motions.

In the case of a direct representation of a client, when lawyers (like Ms. McDow and Mr. Farivar) were personally involved in representing a former client in a substantially related matter, the substantial relationship test provides that the receipt of confidential information is presumed "***and there cannot be any delving into the specifics of the communications between the attorney and the former client*** in an effort to show that the attorney did or did not receive confidential information during the course of that relationship." *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 709 (2003) (emphasis added); *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847(2006). This approach "avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest." *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal.App.3d 1445, 1452-53 (1991). Where the substantial relationship test is met, disqualification is mandatory, without any inquiry into attorney-client privileged communications. *Fiduciary Trust Internat. of California v. Superior Court*, 218 Cal.App.4th 465, 479, 480-81 (2013).

Dr. Benzeevi has provided general information concerning the duration and scope of Baker's legal services, including Ms. McDow's integral involvement in the Inyo MSA. [Benzeevi Decl., ¶¶ 5-9]. The DQ Motion establishes that the subject matter of Baker's former representation of the Benzeevi Group, in relation to the Inyo MSA, as well as the Tulare MSA, is substantially related to Foley's representation of Inyo in this proceeding. [Bedoyan Decl., Ex. A (DQ Motion, § III.D)]. No privileged information is necessary to address this issue. Allowing Ms. McDow, Foley and Inyo to delve into the privileged information in Baker's invoices in an attempt to oppose the DQ Motion must not be allowed. The Subpoena should be quashed to preserve the fundamental principles recognized by the substantial relationship test, protection of the sanctity of the attorney-client relationship, including confidentiality and privilege, especially where there are allegations of a breach of an attorney's ethical duties. Quashing the Subpoena properly prioritizes the public's trust over Ms. McDow's, Mr. Farivar's, and Foley's own self-interest.

### E. In the Alternative, the Court Should Issue a Protective Order Narrowing the Subpoena and Employing Measures to Limit Access and Use in Connection with the Disqualification Motion

To the extent that this Court is not inclined to quash the Subpoena in its entirety, the Benzeevi Group requests that the Court issue a protective order to protect against, to the greatest extent possible, the public disclosure and improper and unauthorized use of the Benzeevi Group's privileged and confidential information, and prejudice to the Benzeevi Group. This could be accomplished by allowing the Benzeevi Group to redact any attorney-client privileged information such as specific content of communications with the client, specific legal services provided, particular research subjects, and legal strategy, as well as other potentially sensitive and confidential business information, and then to produce the redacted documents on an attorney's eye's only basis to Inyo. See, e.g., *SAS Institute Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 2011 WL 6370482, at *6 (E.D.N.C., Dec. 20, 2011, No. 5:10-CV-101-H) (recognizing that redaction of substantive information rather than simple mechanics of representation of requested legal bills was appropriate.)

Then, the Court should also order that any documents to be submitted in connection with the DQ Motion must be under seal. Finally, the Court should also order that any documents produced by Baker responsive to the Subpoena may be used only by HCCA, Vi, TAM, Medflow or Inyo in connection with the DQ Motion. Otherwise, the production will be unduly prejudicial to HCCA, Vi, TAM or Medflow and Vi, if any information in the invoices is used against them in the adversary proceedings or in the broader bankruptcy proceedings

Alternatively, the Benzeevi Group requests that the Court order that the invoices be produced by Baker to the Court directly for *in camera* review. "A district court may conduct an *in camera* inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. American Commerce Nat. Bank, supra*, 974 F.2d 127, 129. It is not an abuse of discretion for a federal court to conduct an *in camera* review of unredacted billing records as a mechanism to protect privilege. *Team Systems International, LLC v. Haozous*, 706 Fed.Appx. 463, 466 (10th Cir. 2017).

While the Benzeevi Group, as asserted above, believes that any production of the Baker invoices is wholly improper, at the very least, if the Subpoena is not quashed in its entirety, protective measures must be employed to protect the Benzeevi Group's rights, to the greatest extent possible.

## IV. CONCLUSION

Based on the foregoing, the Benzeevi Group respectfully requests that the Subpoena served on Baker be quashed in its entirety. Alternatively, HCCA and VI request that the motion be denied, only on the condition that the invoices are produced in redacted form on an attorney's eyes only basis, or for *in camera* review by this Court, for use only in these disqualification proceedings.

Dated: November 6, 2018

KLEIN, DENATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL LLP

By: */s/ Hagop T. Bedoyan*
HAGOP T. BEDOYAN,
Attorneys for HealthCare Conglomerate Associates, LLC, Tulare Asset Management, LLC, Medflow, PC and Vi Healthcare Finance, Inc.