**22**

HAGOP T. BEDOYAN, CSB No. 131285
**KLEIN, DeNATALE, GOLDNER,**
    **COOPER, ROSENLIEB & KIMBALL LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (661) 326-0418
E-mail: hbedoyan@kleinlaw.com

Brandon N. Krueger, Esq. (SBN 221432)
*bkrueger@sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)
*lcallas@sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for HealthCare Conglomerate Associates, LLC,
Vi Healthcare Finance, Inc., Medflow, PC, and Tulare Asset Management LLC

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 16-10015-A-9 |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| | DC NO.: KDG-5 |
| Debtor. | Date: December 19, 2018<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>2500 Tulare Street, Fifth Floor<br>Department A, Courtroom 11<br>Fresno, California<br>Judge: Honorable Fredrick E. Clement |

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH OR FOR PROTECTIVE ORDER REGARDING SUBPOENA TO BAKER HOSTETLER LLP

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 5

    I.      INTRODUCTION ......................................................................................... 5

    II.     RELEVANT PROCEDURAL SUMMARY ......................................... 7

    III.    LEGAL ARGUMENT .................................................................................. 8

          A.     Debtor's Objection to the Motion was Untimely and Service was Improper ....................................................................................... 8

              1.     The Objection Is Untimely and Should Be Stricken ..................... 8

              2.     The Objection was not Properly Served ........................................ 8

          B.     Inyo's Factual Summary Lacks any Evidentiary Support and is Blatantly Misleading and Inaccurate ......................................................... 9

          C.     The Invoices Are Protected by Attorney-Client Privilege Under the *Los Angeles County Bd. of Supervisors* Decision ........................................... 13

          D.     California Evidence Code § 958 Does Not Apply to Disqualification Motions .............................................................................................. 15

          E.     Overwhelming Authority Establishes a Continuing Duty of Loyalty to Former Clients ............................................................................ 19

          F.     If the Motion is Denied, the Court Should Limit the Subpoena to the Invoices Addressed by the Objection ....................................... 21

    IV.    CONCLUSION ............................................................................................. 21

(KDG-5) REPLY MEMORANDUM
OF P's and A's MOTION TO QUASH

# TABLE OF AUTHORITIES

**Federal Cases**

*Chevron Corp. v. Pennzoil Co.,*
  974 F.2d 1156 (9th Cir. 1992) ........................................................................ 17

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,*
  259 F.3d 1186 (9th Cir. 2001) ........................................................................ 17

*Gross Belsky Alonso LLP v. Henry Edelson,*
  2009 WL 1505284 (N.D. Cal., May 27, 2009) ............................................ 16, 19

*In re Dimas, LLC,*
  357 B.R. 563 (Bankr. N.D. Cal. 2006) ........................................................... 16

*In re Jaeger,*
  213 B.R. 578 (Bankr. C.D. Cal. 1997) .......................................................... 9, 18

*In re McIntosh,*
  697 Fed.Appx. 569 (9th Cir. 2017) ................................................................ 18

*In re Rindlisbacher,*
  225 B.R. 180 (B.A.P. 9th Cir. 1998) ............................................................. 17

*Trone v. Smith,*
  621 F.2d 994 (9th Cir. 1980) ......................................................................... 14

**California Cases**

*Anten v. Superior Court,*
  233 Cal.App.4th 1254 (2015) ......................................................................... 16

*Carlson, Collins, Gordon and Bold v. Banducci,*
  257 Cal.App.2d 212 (1967) ............................................................................ 17

*City and County of San Francisco v. Cobra Solutions, Inc.,*
  38 Cal.4th 839 (2006) ............................................................................... 12, 16

*Dietz v. Meisenheimer & Herron,*
  177 Cal.App.4th 771 (2009) ........................................................................... 17

*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.,*
  229 Cal.App.3d 1445 (1991) ............................................................................ 6

*Jessen v. Hartford Casualty Ins. Co.,*
  111 Cal.App.4th 698 (2003) ........................................................................... 16

*Los Angeles County Bd. of Supervisors v. Superior Court,*
  2 Cal.5th 282 (2016) ................................................................................. 13, 14

*Oasis West Realty, LLC v. Goldman,*
  51 Cal.4th 811 (2011) .................................................................................... 19

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*
  20 Cal.4th 1135 (1999) ............................................................................. 15, 20

3

*People ex rel. Herrera v. Stender,*
  212 Cal.App.4th 614 (2012) ...........................................................................................18

*Solin v. O'Melveny & Myers, LLP,*
  89 Cal.App.4th 451 (2001) .............................................................................................18

*Styles v. Mumbert,*
  164 Cal.App.4th 1163 (2008) ...................................................................................16, 19

*Wutchumna Water Co. v. Bailey,*
  216 Cal. 564 (1932) .......................................................................................................19

**California Statutes**

California Evidence Code § 958 .........................................................................................15

**Rules**

Federal Rules of Civil Procedure, Rule 5 ............................................................................8

Federal Rules of Civil Procedure, Rule 45 ........................................................................15

Local Rules of Practice for the United States Bankruptcy Court for the Eastern
  District of California, Rule 7005-1 ..................................................................................8

Local Rules of Practice for the United States Bankruptcy Court for the Eastern
  District of California, Rule 9014-1 ..................................................................................8

New Rules of Professional Conduct, Rule 1.7 ...................................................................10

New Rules of Professional Conduct, Rule 1.9 ...............................................................6, 19

**Other Authorities**

Vapnek, California Practice Guide: Professional Responsibility (Rutter Group
  2018) ..............................................................................................................................17

4

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    Debtor Southern Inyo Healthcare District's ("Debtor" or "Inyo") untimely filed, unserved

4    Objection to Motion to Quash or for Protective Order (the "Objection") is wholly unsupported by

5    any evidence, blatantly mischaracterizes the applicable case law and Rules of Professional

6    Conduct, and extensively misportrays the facts. As established in the moving papers, the

7    "substantial relationship" test, which the Objection failed to even mention, makes production and

8    of the Baker invoices unnecessary and improper for this Court's consideration of the

9    disqualification of Foley and Ms. McDow. The uncontradicted evidence shows, and the

10   Objection admits, that Ms. McDow worked on the Inyo MSA for HCCA. Thus, all that the Court

11   need consider is whether the Inyo MSA is substantially related to these proceedings, in which

12   case Ms. McDow, Mr. Farivar and Foley must be disqualified. The requested invoices add

13   nothing to this analysis.

14   The Objection provides no basis to deny the Benzeevi Group's Motion to Quash the

15   subpoena served on Baker Hostetler by Debtor (the "Motion to Quash").[1] The Objection's

16   mischaracterization of the controlling case law is extensive. Contrary to Debtor's argument, in

17   *County of Los Angeles Bd. Of Supervisors*, the California Supreme Court recognizes that the

18   invoices sought from Baker & Hostetler ("Baker") by Debtor, implicate the heartland of the

19   attorney-client privilege because the matters contained in the invoices, such as the Inyo

20   Management Services Agreement (the "Inyo MSA"), as well as the Vi Healthcare loans, are still

21   the subject of active and ongoing litigation, both in this proceeding and others. Similarly, the

22   filing of the Motion to Disqualify Ashley McDow and Foley & Lardner (the "DQ Motion") does

23   not waive the attorney-client privilege of Healthcare Conglomerate Associates ("HCCA"), Vi

24   Healthcare Finance ("Vi"), Medflow and Tulare Asset Management (collectively, the "Benzeevi

25

26   [1] As ordered by the Court at the November 14, 2018, concurrently with this brief, the Benzeevi
     Group is submitting a separate brief addressing (1) which old and new Rules of Professional
27   Conduct ("RPC") are applicable, (2) whether there are differences in the applicable old and new
     RPC, and (3) if there are differences, whether the new RPC apply retroactively. [Supp. Bedoyan
28   Decl., ¶ 2]. Debtor failed to submit this separate brief as requested and ordered, and only
     summarily addresses retroactivity in its Objection.

1    Group") as to communications and legal advice reflected in the Baker invoices.

2         Nowhere does the Objection mention, much less attempt to distinguish, the cases that
3    establish that to determine whether disqualification is warranted, the substantial relationship test
4    precludes inquiry into privileged materials, like invoices. Where, as the Objection admits, "Baker
5    represented HCCA with respect to its entry into the MSA" and Ms. McDow advised "HCCA on
6    the MSA in 2015 and early 2016," (Objection, p. 3:16-22), this direct involvement triggers the
7    substantial relationship test which simply requires the Court to determine if Foley and Ms.
8    McDow's representation of Debtor in this proceeding is substantially related to the Inyo MSA.
9    Cases employing the substantial relationship test recognize that the purpose of this test is to
10    protect clients seeking disqualification from having to disclose privileged materials to their
11    adversaries to establish a breach of duty by their former attorney.  See, e.g. *H. F. Ahmanson &*
12    *Co. v. Salomon Brothers, Inc.*, 229 Cal.App.3d 1445, 1452-53 (1991)( the substantial relationship
13    test "avoids the ironic result of disclosing the former client's confidences and secrets through an
14    inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's
15    intent to preserve the public's trust over its own self-interest.").

16         Debtor's attempt to use the exception to privilege provided in Evidence Code § 958 to
17    justify production of the Baker invoices ignores the cases applying the exception, as well as the
18    substantial relationship test.  The cases, even those cited by Debtor, recognize that the § 958
19    exception applies only in malpractice actions or fee disputes.  Not one case has applied the § 958
20    exception in the disqualification context.  To do so would place the former client in the "no win"
21    situation of either allowing its former attorney to breach its fiduciary duties, or waiving privilege
22    to seek disqualification.  The substantial relationship test was created to avoid such an absurd
23    result by establishing a presumption of possession of confidential information by a former
24    attorney, without inquiry into privileged materials, when a former representation is substantially
25    related to a current one.  Debtor's misguided attempt to apply Evidence Code § 958 in the
26    disqualification context would render the substantial relationship test a nullity, when it is no such
27    thing, as most recently confirmed in the New California Rules of Professional Conduct.  RPC 1.9
28    (a).

(KDG-5) REPLY MEMORANDUM
OF P's and A's MOTION TO QUASH

Finally, Debtor's blatantly inaccurate factual summary, lacks any supportive declaration or documentary evidence, is largely irrelevant to the issues in the Motion to Quash, and must be disregarded. This is especially true as to Debtor's contention that HCCA and Vi waived any possible conflict as to Baker's representation of the Debtor. A review of the actual purported conflict waiver letters (which Debtor apparently is attempting to avoid by not providing or properly referencing them for the Court) demonstrates exactly the opposite; Baker never disclosed, and the clients never consented to, any intent by Baker to continue to represent the Debtor if an actual conflict arose between the Debtor and HCCA or Vi. Instead, Baker disclosed only the opposite, that Baker would continue to represent HCCA and Vi, not the Debtor, if a conflict developed.

The Motion to Quash should be granted because, pursuant to the substantial relationship test a review of the Baker invoices is neither necessary, nor permitted, to allow the Court to rule on the DQ Motion.

## II.　　RELEVANT PROCEDURAL SUMMARY

At the Status Conference on November 14, 2018, when the Court set the briefing schedule and hearing for this motion, the Court clearly ordered that Inyo's opposition was due on December 5, 2018. [Supp. Bedoyan Decl., ¶ 2, Dkt No. 521]. On December 4, 2018, the Benzeevi Group sent a proposal to Inyo in an attempt to partially resolve the issues presented in this motion. [Callas Decl., ¶ 3, Ex. 2]. In this proposal, the Benzeevi Group offered to provide the Baker invoices reflecting the services Ms. McDow and Mr. Farivar provided to HCCA relating to the Inyo MSA on a redacted attorney's eye's only basis to be submitted under seal for purposes of the DQ Motion. [Callas Decl., ¶ 3, Ex. 2]. The proposal also attached the minutes from the January 2, 2016 Inyo Board meeting where the Inyo Board approved the Inyo MSA. [Callas Decl., ¶ 3, Ex. 2]. These minutes were attached to refresh Ms. McDow's recollection that she was the only attorney that appeared at the meeting on behalf of HCCA in relation to the Inyo MSA, that she explained terms of the Inyo MSA as HCCA's counsel, and that she modified terms of the Inyo MSA per the discussion with the Board and its counsel during the meeting. [Callas Decl., ¶ 3, Exs. 2, 3]. To date, Inyo has not responded to this proposal. [Callas Decl., ¶ 3].

7

1

2                   **III.**     **LEGAL ARGUMENT**

3    **A.**     **Debtor's Objection to the Motion was Untimely and Service was Improper**

4             1.     <u>The Objection Is Untimely and Should Be Stricken</u>

5       On November 16, 2018, the Court made its *Order* that any opposition to the motion "is

6 due no later than December 5, 2018." (the "Order") [Dkt. No. 523]. Despite the Order, the

7 *Debtor's Objection to Motion to Quash or Protective Order Regarding Subpoena to Baker &*

8 *Hostetler LLP* (the "Objection") was not filed by the Debtor until December 6, 2016 at 1:36

9 a.m. The Court docketed the Objection on December 6, 2018 at 11:22 a.m. [Dkt. No. 529 (Notice

10 of Electronic Filing dated December 6, 2018 2:17 p.m.)].

11       Rule 9014-1(f)(1)(B) of the Local Rules of Practice for the United States Bankruptcy

12 Court for the Eastern District of California ("Local Rules") provides, "Without good cause, no

13 party shall be heard in opposition to a motion at oral argument if written opposition to the motion

14 has not been timely filed. Failure of the responding party to timely file written opposition may be

15 deemed a waiver of any opposition to the granting of the motion or may result in the imposition

16 of sanctions." Under the circumstances, the Debtor's Objection was clearly untimely and should

17 be stricken.

18             2.     <u>The Objection was not Properly Served</u>

19       In addition to filing the Objection late, the Debtor did not effectuate timely service of the

20 Objection on the moving parties. In fact, to this day the Debtor has not properly served the

21 moving parties. A review of the *Certificate of Service* filed with the Court on December 6, 2018

22 [Dkt. No. 530] indicates that the Debtor attempted service of the Objection utilizing a procedure

23 which is not allowed by the Local Rules. Specifically, the *Certificate of Service* indicates that the

24 Objection was served or caused to be served by "**EMAIL**. The following individuals/entities will

25 be served electronically via ECF notification. Listing parties mean that they will be served no

26 later than 24 hours from the date of this service." This is not proper service in this

27 Court. According to Local Rule 7005-1(d), service upon those parties consenting to service by

28 electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E) shall be accomplished "by transmitting an

1   email which includes as a PDF attachment the document(s) served.'" Counsel for the moving

2   parties never received an email with a PDF attachment of the Objection as required by the Local

3   Rules. [Supp. Bedoyan Decl., ¶ 3].[2] This is another example of the Debtor's disregard for the

4   Court's orders and the Local Rules. Such behavior should not be condoned, especially since

5   counsel for the Debtor, Ms. McDow, has now been appearing on behalf of the Debtor before this

6   Court for almost the past three years. The Objection should be stricken as untimely and for not

7   having been served properly on the moving parties.

8          **B.**     **Inyo's Factual Summary Lacks any Evidentiary Support and is Blatantly**

9               **Misleading and Inaccurate**

10      Despite having nearly a month to prepare its untimely filed Objection, the Debtor

11   provided no evidentiary support whatsoever for the statements in its brief. The Debtor failed to

12   provide a declaration or any documents supporting any of the purported "Factual Background,"

13   and did not even bother to properly reference documents submitted by the Benzeevi Group in

14   their Evidentiary Appendix (so that the Court could efficiently read the referenced materials

15   itself). The most likely reason for this failure is clear: any declaration which purported to support

16   many of the statements in the Objection would be false, and any review of the documents vaguely

17   mentioned in the Objection would reveal the Debtor's material mischaracterization of the content

18   of those documents. The fictional "Factual Background" in the Objection must be disregarded in

19   its entirety.

20      In the first place, the Debtor completely mischaracterizes the actual content of the

21   purported conflict waivers which were clearly described in the DQ Motion (Dkt. No. 486, pp.

22   6:18-26, 9:7-26, 10:6-14, 25:1-26:24), addressed by the Expert Declaration of Robert Kehr (Dkt.

23   No.487, ¶ 4) and attached to the appendix of Exhibits as Exhibits B and D (Dkt. No. 490, pp. 54-

24

25

26

27   [2] While Fed. R. Civ, P, 5(b)(2)(E) was amended effective December 1, 2018, to allow for service

28   of a paper on a registered user by filing it with the court's electronic filing system or sending it by other electronic means that the person consented to in writing, the method of service prescribed by Local Rule 7005-1(d) remains the same.

67 65-69).[3]  A review of these letters establishes that neither HCCA nor Vi ever consented to allow Baker to represent the Debtor, and terminate its representation of the Benzeevi Group, if an actual conflict developed.[4]   The conflict waivers dated January 2, 2016 and July 2, 2017 instead state that Baker "presently represents and expects to continue to represent, the Benzeevi Group in connection with various matters unrelated to the business of the District, and also in connection with the management service agreement between the District and HCCA." [Dkt. Nos. 488 and 490, (Benzeevi Decl. ISO DQ Mtn), Exs. B, D p. 2, ¶ A].  Indeed, Dr. Benzeevi confirmed his understanding of these letters under oath: "it was my understanding that if an actual conflict developed, Baker would terminate its representation of Inyo and continue representing the Benzeevi Group, including as to the Inyo MSA." [Dkt. No. 488 (Benzeevi Decl. ISO DQ Mtn), ¶ 4:21-23].

Nowhere in these letters does Baker disclose that Baker could choose to abandon the Benzeevi Group and continue representing the Debtor if an actual conflict developed.  Given that Baker was in effect the Benzeevi Group's general counsel, Dr. Benzeevi would never have given advance consent to allow Baker to abandon the Benzeevi Group and represent the Debtor in direct adversity to HCCA and Vi if an actual conflict developed.  [Supp. Benzeevi Decl., ¶ 6]. Furthermore, when the actual conflict did develop, Baker failed to disclose this development and obtain an additional consent, as existing case law required, now further confirmed in the New RPC.  *In re Jaeger*, 213 B.R. 578 (Bankr. C.D. Cal. 1997); New RPC 1.7, Comment 2 ("If a lawyer initially represents multiple clients with the informed written consent* as required under paragraph (b), and circumstances later develop indicating that direct adversity exists between the clients, the lawyer must obtain further informed written consent* of the clients under paragraph (a).")  Had Baker disclosed the development of an actual conflict, Dr. Benzeevi also would never have given consent to allow Baker to continue representing the Debtor in direct adversity to

---

[3] Debtor and its counsel have had all of the pleadings and evidence relating to the DQ Motion since October 15, 2018 (see Dkt Nos. 484-498) and all of these materials were expressly incorporated by reference in the Motion to Quash. [Dkt. No. 516 (Mtn. to Quash), p. 7:19-25, Dkt. No. 515, Exs. A & B)].

[4] Since the Motion to Quash was filed Baker has produced a fully signed version of the January 2, 2016 conflict waiver.  [Callas Decl., ¶ 5]. This executed version is attached to the Benzeevi Decl. as Exhibit 1.

1   HCCA and Vi. [Dkt. No. 488 (Benzeevi Decl. ISO DQ Mtn), ¶ 11].

2       Thus, the statements made in the Objection that HCCA "waived any conflict that resulted

3   from Baker's dual representation" and HCCA and Vi "explicitly waived 'any potential or actual

4   conflict of interest,'" (Objection, p. 4:5, 4:10-11), is false and flies in the face of both the actual

5   language of the letters, Dr. Benzeevi's testimony under oath, and the law applicable to informed

6   consent and waiver of conflicts.

7       In addition, the Objection falsely minimizes the involvement of Ms. McDow in the Inyo

8   MSA, again without any testimonial or documentary support. However, it is notable that the

9   Objection plainly admits Ms. McDow's involvement in the Inyo MSA. Under the governing case

10  law cited in the DQ Motion, this admission alone is enough to mandate disqualification of Foley

11  and Ms. McDow (regardless of how she attempts to characterize her involvement). Importantly,

12  the actual evidence before the Court does not show that Ms. McDow's involvement in the Inyo

13  MSA was limited, as she claims.

14      Dr. Benzeevi's testimony, uncontradicted by any declaration from Ms. McDow, was that

15  Ms. McDow's role in the Inyo MSA was substantial. [Dkt. No. 488, (Benzeevi Decl. ISO DQ

16  Mtn.), ¶ 6]. This testimony is corroborated by the January 2, 2016 Board meeting minutes

17  showing that Ms. McDow was the only attorney representing HCCA at the meeting where HCCA

18  sought approval of the Inyo MSA by the Inyo Board and that Ms. McDow explained terms of the

19  Inyo MSA and drafted changes to the Inyo MSA at that very meeting. [Callas Decl., ¶ 4, Ex. 3].

20  Thus, Ms. McDow had material, not limited, involvement *on behalf of HCCA* regarding the Inyo

21  MSA. Ms. McDow's admitted involvement in the Inyo MSA renders any review of the Baker

22  invoices unnecessary and mandates disqualification, as well as granting the Motion to Quash.

23      Further, Debtor offers no evidence to support the statement that Ms. McDow did not have

24  access to HCCA's confidential information. [Objection, p. 3:33-25]. Not only did Ms. McDow

25  receive confidential information in working on the Inyo MSA (Dkt. N. 488, (Benzeevi Decl. ISO

26  DQ Mtn.), ¶ 6), but additionally, because Ms. McDow was working with Mr. Greene, the primary

27  Baker partner for the Benzeevi Group, the law *presumes* "'that attorneys, working together and

28  practicing law in a professional association, share each other's, and their clients', confidential

11

1   information.'" *City and County of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 847–

2   848 (2006). This is an irrebuttable presumption as a matter of law – therefore, again, no review

3   of the Baker invoices is necessary or warranted for the Court to analyze the basis for

4   disqualification. An irrebuttable presumption, per se, does not require further inquiry, much less

5   the invasive intrusion and disclosure of confidential and privileged information contained in the

6   Baker invoices.

7           Also, Ms. McDow's contention that the only adverse action that she took was the filing of

8   the Emergency Motion (Objection, p. 4:19-5:1) is demonstrably inaccurate and ignores all of the

9   evidence that the Benzeevi Group offered that Ms. McDow continues to act adversely to HCCA

10  and Vi to this day, including seeking the Benzeevi Group's privileged and confidential

11  information in the subpoena at issue in this motion, and now ***again*** repeating the adverse

12  accusations previously made in the Emergency Motion in the Objection. [See, Dkt. No. 486, pp.

13  12:18-14:12, 18:27-19:19 (describing continuing adversity in adversary action, statements made

14  at hearings and mediation positions), Objection, pp. 5:5-14 (repeating adverse statements)].

15  Tellingly, no evidence is offered that Ms. McDow has not and/or is not communicating with

16  counsel for the Debtor in the adversary action. Further, HCCA's and Vi's administrative claims

17  as creditors, are still pending. [Dkt. Nos. 406, 447 (Exs. DD and FF to the RJN in support of the

18  DQ Motion)]. These claims are based solely on the amounts owing under the Inyo MSA and Vi

19  loan documents. The Debtor's interest in resisting these claims is directly adverse to HCCA and

20  Vi, in the same subject matter which Ms. McDow represented HCCA, and adverse to Vi, in the

21  same subject matter that Baker represented Vi. There is no doubt that Ms. McDow and Foley will

22  continue to act adversely to HCCA and Vi to fulfill their duty as counsel for Debtor if they are

23  allowed to continue on as lead insolvency counsel.

24          Relatedly, the contention that the MSA has little or no relevance to this action (Objection,

25  p. 5:24-25) is ludicrous. As stated above, the adversary action focuses on the MSA. Further, as

26  Debtor's counsel, Foley and Ms. McDow are also at this point responsible for representing

27  Debtor in proposing a plan of adjustment that depends in no small part in objecting to HCCA's

28

1   administrative claim based solely on the MSA.[5] Also, in the contemplated global mediation the

2   rights and obligations of HCCA and Debtor under the Inyo MSA will be squarely in issue, not to

3   mention that the global mediation likely will involve discussion of the extent to which Baker

4   committed malpractice in relation to the MSA.

5      The inaccurate and misleading purported Factual Summary, which also lacks any

6   evidentiary support, should be disregarded in its entirety. The uncontradicted evidence submitted

7   by the Benzeevi Group (the evidence in support of the DQ Motion which was expressly

8   incorporated by reference in the Motion to Quash -see Dkt Nos. 486, 488-492, 515, 516) supports

9   granting this Motion to Quash as well as disqualifying Foley and Ms. McDow.

10      **C.**     **The Invoices Are Protected by Attorney-Client Privilege Under the *Los***

11          ***Angeles County Bd. of Supervisors* Decision**

12      The Debtor's contention that the holding of the *Los Angeles County Bd. of Supervisors*

13   decision does not acknowledge attorney-client privilege protection for the Baker invoices rests on

14   the demonstrably false premise that the Inyo MSA is not a pending and active matter. Further,

15   even as to closed matters, the Objection misrepresents the scope of the *Los Angeles County Bd. of*

16   *Supervisors* decision.

17      The *Los Angeles County Bd. of Supervisors* decision clearly recognized that, **"When a**

18   **legal matter remains pending and active, *the privilege encompasses everything in an invoice*,**

19   including the amount of aggregate fees" *Los Angeles County Bd. of Supervisors v. Superior*

20   *Court*, 2 Cal.5th 282, 297 (2016) (emphasis added). As explained above, the terms of the Inyo

21   MSA and what rights and obligations it created, including whether the transactions disputed in the

22   Emergency Motion were allowed under the agreement remains an active matter in the adversary

23   action as well as in the administrative expense claim and in the mediation. The same is true for

24   Vi, whose administrative claim relating to the loan to Inyo remains pending and is also being

25   addressed in the adversary action. [Dkt. No. 447, RJN, Ex. DD; Dkt. No. 491, RJN, Ex. L].

26   Moreover, as this Court and Foley are well aware, there is a pending investigation by the Tulare

27

28   [5] In fact, Debtor's plan depends heavily on not only objecting to the claims arising out of the MSA, but also objecting to the claim asserted by Vi and seeking affirmative relief against HCCA and Vi.

(KDG-5) REPLY MEMORANDUM
OF P's and A's MOTION TO QUASH

1  District Attorney which addresses the transactions involving Inyo, Tulare Local Healthcare

2  District, HCCA and Tulare Asset Management which implicate terms of the Inyo MSA. These

3  matters are thus pending and active in this respect as to the Benzeevi Group as well, and thus,

4  under *Los Angeles County Bd. of Supervisors*, attorney-client privilege remains intact as to the

5  Baker invoices. The fact that the Benzeevi Group was forced to retain other counsel to represent

6  its rights because Baker abruptly abandoned the Benzeevi Group does not operate to close the

7  matters on which Baker previously represented them, as the identified ongoing disputes amply

8  demonstrate. [6]

9        The Supreme Court's qualification that "fee totals in matters that concluded long ago"

10  may not be protected by privilege does not apply here. *Los Angeles County Bd. of Supervisors,* 2

11  Cal. 5th at 298. Even if the matters at issue were concluded in 2017, which as established above

12  they were not, 2017 is not "long ago." Moreover, the *Los Angeles County Bd. of Supervisors*

13  decision states broadly as to **all** invoices, "the content of an invoice are privileged only if they

14  either communicate information for the purpose of legal consultation or risk exposing information

15  that was communicated for such a purpose." *Id.* at 300. Indeed, the decision recognizes that it is

16  only the fee totals in invoices from matters closed long ago that may not be protected. [7]

17        The invoices targeted by the Subpoena contain far more than mere fee totals, but rather

---

[6] While it is true that Dr. Benzeevi's professional corporation was dissolved in 2016, all of the
other entities formed and represented by Baker, HCCA, Vi, Medflow and Tulare Asset
Management remain active. [Supp. Benzeevi Decl., ¶ 7].

[7]
   In contrast to information involving a pending case, a cumulative fee total for a long-
   completed matter does not always reveal the substance of legal consultation. The fact that
   the amounts in both cases were communicated in an invoice transmitted confidentially
   from lawyer to client does not automatically make this information privileged. Instead, the
   privilege turns on whether those amounts reveal anything about legal consultation. Asking
   an agency to disclose the cumulative amount it spent on long-concluded litigation—with
   no ongoing litigation to shed light on the context from which such records are arising—
   may communicate little or nothing about the substance of legal consultation. But when
   those same cumulative totals are communicated during ongoing litigation, this real-time
   disclosure of ongoing spending amounts can indirectly reveal clues about legal strategy,
   especially when multiple amounts over time are compared.

*Los Angeles County Bd. of Supervisors*, 2 Cal.5th at 298.

1    reveal detailed information about the services provided, legal strategy, the subject matters of

2    research and analysis, and the specific topic of communications between Baker and Dr. Benzeevi,

3    including but in no way limited to those relating to the Inyo MSA which is currently the subject

4    of much dispute. [Dkt. No. 514, (Bedoyan Decl. ISO Mtn to Quash), ¶ 10]. Thus, under *Los*

5    *Angeles County Bd. of Supervisors,* the Baker invoices are protected by the attorney-client

6    privilege. The Objection cites no other authority for the proposition that invoices are not

7    privileged and did not even bother to address the federal authority cited by the Benzeevi Group

8    providing that information contained in invoices is protected by the attorney-client privilege.

9    Accordingly, under FRCP 45(d)(3)(A)(iii),[8] the motion should be granted to quash the subpoena

10    in its entirety on the basis that it seeks privileged information.

11    **D.    California Evidence Code § 958 Does Not Apply to Disqualification Motions**

12    There is no authority for the proposition that California Evidence Code § 958 applies to

13    disqualification motions.  If this were so, every client seeking disqualification would forfeit

14    privilege, because every disqualification is based upon allegations that an attorney has breached a

15    duty of loyalty or confidentiality.  Applying Section 958 to create an exception to privilege in

16    disqualification motions flies in the face of long-standing and unassailable authority in both the

17    California state courts and in the federal courts establishing and applying the "substantial

18    relationship" test. *See, e.g., Trone v. Smith,* 621 F. 2d 994, 998 (9th Cir. 1980) ("The relevant test

19    for disqualification is whether the former representation is 'substantially related' to the current

20    representation. . . . The test does not require the former client to show that actual confidences

21    were disclosed.  That inquiry would be improper as requiring the very disclosure the rule is

22    intended to protect");  *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*

23    20 Cal.4th 1135, 1146 (1999) ("Where an attorney successively represents clients with adverse

24    interests, and where the subjects of the two representations are substantially related, the need to

25    protect the first client's confidential information requires that the attorney be disqualified from the

26

27    [8] There is no authority provided for the proposition Rule 45 somehow immunizes an attorney's
       violation of fiduciary duties and Rules of Professional Conduct in seeking discovery of a former
28    client's privileged information, just because such a ground is not explicitly listed in Rule 45.
       (Objection, p. 11:14-21).

(KDG-5) REPLY MEMORANDUM
OF P's and A's MOTION TO QUASH

second representation."). When the "substantial relationship" applies "there cannot be any
delving into the specifics of the communication between the attorney and the former client."
*Jessen v. Hartford Casualty Ins. Co.*, 111 Cal.App.4th 698, 709 (2003); *City and County of San
Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847 (2006).

The purpose of the "substantial relationship" test, to presume the possession of
confidential information and avoid inquiry into privileged communications between the attorney
and former client, would be directly contradicted if Section 958 applied in the disqualification
context. No doubt because Evidence Code § 958 and the substantial relationship test are so
undeniably irreconcilable, the Objection utterly fails to mention the "substantial relationship" test
discussed in the Motion to Quash. [See, Dkt. No. 516, (MMPA ISO Mtn to Quash), 14:20-
15:28].

Further, the application of Section 958 has been rejected outside the parameters of
malpractice actions and fee disputes. In *Styles v. Mumbert*, 164 Cal. App. 4th 1163, 1166 (2008),
an attorney obtained an assignment of a default judgment against his former client and sought to
step into the appeal of the default judgment as a party represented by his firm. The attorney
asserted that the duty of confidentiality to his former client did not bar his actions because "he
should be entitled to reveal confidences to 'defend himself.'" *Styles, v. Mumbert, supra,* 164 Cal.
App. 4th at 1168. Even though there was a separate malpractice case pending, the Court
recognized that Evidence Code § 958 did not provide an exception to allow the attorney to
substitute into the appeal and reveal privileged information, because the Section 958 exception
only applied in a malpractice action or in a fee dispute. *Id.* at 1168

Other cases considering Evidence Code § 958 confirm that it applies only in cases where
the client is asserting malpractice claims against an attorney, or the attorney and client are
engaged in a fee dispute.[9] See, e.g. *Anten v. Superior Court* 233 Cal.App.4th 1254, 1256 (2015)

---

[9] The Bar Association of San Francisco addressed the applicability of Section 958 in the context
of responding to negative online reviews in Ethics Opinion 2014-1. [Callas Decl., Ex. 4 (BASF
Opinion 2014-1)]. In that context, the Bar Association recognized that "California courts have
generally applied this exception to situation where a client or former client asserts a legal claim
against a lawyer, or the lawyer asserts a fee claim against the former client." [Callas Decl., Ex. 4
(BASF Opinion 2014-1), p. 5].

16

1  ("***In a lawsuit*** between an attorney and a client based on an alleged breach of a duty arising from

2  the attorney-client relationship, attorney-client communications relevant to the breach are not

3  protected by the attorney-client privilege.") (emphasis added); *Dietz v. Meisenheimer &*

4  *Herron* 177 Cal.App.4th 771, 786 (2009) ("An attorney 'can reveal confidences to defend against

5  a malpractice claim or in a fee dispute....'"); *Carlson, Collins, Gordon and Bold v. Banducci*, 257

6  Cal.App.2d 212, 228 (1967) ("when, ***in litigation between an attorney and his client***, an

7  attorney's integrity, good faith, authority, or performance of his duties is questioned, the attorney

8  is permitted to meet this issue with testimony as to communications between himself and his

9  client.") (emphasis added).  In such cases, Section 958 allows the attorney to use information in

10  its possession in the prosecution or defense of claims asserted in such actions.  As explained by a

11  respected practice treatise:

12  
13  > Ev.C. § 958 typically comes into play when a client sues his or her attorney for
> malpractice or breach of fiduciary duty, or when the attorney sues the client for
> nonpayment of fees. . . . **Rationale:** When a client or attorney claims the other breached a
14  > duty arising out of the professional relationship, it would be 'unjust' to allow the claimant
> to invoke the privilege so as to prevent the other from producing evidence in defense
15  > against the claim.

16  
17  Vapnek, Cal. Prac. Guide: Prof. Resp. Ch. 7-C, Attorney-Client Privilege, §§ 7:302-303

18  (Rutter Group 2018).

19  None of the cases cited in the Objection apply Section 958 to a disqualification motion.

20  Instead all the cases which allowed disclosure of confidential information under Section 958,

21  involved actions where the attorney was a party either seeking recovery of fees or defending a

22  malpractice claim. *In re Dimas* involved a fee application in a Chapter 11 proceeding and merely

23  recognizes that an attorney is allowed to disclose privileged communications in attempts to

24  collect its fees. *In re Dimas, LLC*, 357 B.R. 563, 588, (Bankr. N.D. Cal. 2006).  The *Gross*

25  *Belsky* decision also involved an attorney's attempt to recover fees, recognizing that in an "which

26  involves the former client's breach of its obligation to pay fees," Section 958 allows an attorney

27  to use confidential information.  *Gross Belsky Alonso LLP v. Henry Edelson,* 2009 WL 1505284,

28  at *3(N.D. Cal., May 27, 2009, No. C 08-4666 SBA). The *Solin* decision was a malpractice action

which held that a client can intervene to dismiss an action brought by a third party against the

17

1  attorney, if the attorney could only defend its actions by disclosure of confidential or privileged

2  information. *Solin v. O'Melveny & Myers, LLP*, 89 Cal. App. 4th 451 (2001).

3       The *Chevron* and *Columbia Pictures* decisions involved discussion of an implied waiver

4  based on the assertion of an advice of counsel defense, and did not even mention Section 958.

5  *Chevron Corp. v. Pennzoil Co.*, 974 F. 2d 1156, 1162 (9th Cir. 1992); *Columbia Pictures*

6  *Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.* (9th Cir. 2001) 259 F. 3d 1186,

7  1196. In the *Stender* case, where the attorney was being sued for unfair business practices, again

8  there was no discussion of Section 9 58 and the Court merely held that the case could proceed

9  because disclosure of privileged material was not necessary to the defense of the claim being

10  asserted against the attorney. *People ex rel. Herrera v. Stender*, 212 Cal.App.4th 614, 650

11  (2012), *as modified (Jan. 16, 2013)*.

12       *In re Rindlisbacher* involved an attorney, a creditor seeking payment of legal fees for

13  work on a dissolution action for the debtor, who filed an adversary complaint to oppose discharge

14  of the debtor. *In re Rindlisbacher*, 225 B.R. 180, (B.A.P. 9th Cir. 1998). The Court actually held

15  that Section 958 *did not* warrant disclosure of privileged information by the attorney in the

16  discharge action, even though the discharge would have affected the attorney's recovery of fees,

17  finding that the discharge proceeding was not related to the attorney's protection of its right to

18  collect fees. *In re Rindlisbacher*, 225 B.R. at 182-83

> an attorney may reveal confidences and secrets where it is necessary to do so to get paid. . . . The idea behind the exception to the confidences rule for collection of an attorney's fee is that the client has breached a duty by failing to pay, and the attorney must be able to defend himself against the client's charges of attorney misconduct.

21  *Id.* at 183.

22       Here, this disqualification motion does not assert a malpractice claim against Foley, nor is

23  it a dispute over fees. The Benzeevi Group makes this motion to prevent Debtor from using the

24  Benzeevi Group's former counsel; it is Debtor's rights, not Foley's or Ms. McDow's rights which

25  are at issue. The "substantial relationship" test and the case law applying Evidence Code § 958

26  mandate that there is no exception to the attorney-client privilege created by seeking

27  disqualification of an attorney. Further, the Benzeevi Group is not using privileged information

28  as a shield or a sword; there is no bar to Debtor offering non-privileged evidence from Ms.

1 McDow, Mr. Farivar or her former firm concerning the general nature of services performed to

2 determine that the services are substantially related to the issues in this proceeding in response to

3 the non-privileged information offered by Dr. Benzeevi in his declaration.   Neither Evidence

4 Code § 958, nor the doctrine of implied waiver provide any basis for denying this Motion to

5 Quash.

6       **E.**    **Overwhelming Authority Establishes a Continuing Duty of Loyalty to Former**

7             **Clients**

8         Debtor attempts to validate Ms. McDow's adverse actions (and escape the disqualifying

9 conflict of interest) by claiming that Baker had terminated its representation of the Benzeevi

10 Group prior to undertaking adverse action.  This position ignores the well-recognized principle

11 stated in myriad cases in both California and federal courts that the duty of loyalty survives

12 termination and precludes action which would "injure the client in a matter in which [the

13 attorney] formerly represented the client." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811,

14 821 (2011)  ("' [The attorney] may not do anything which will injuriously affect [the] former

15 client in any matter in which [the attorney] formerly represented [the client] . . . ) (citing

16 *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-74); *Styles v. Mumbert* 164 Cal. App.

17 4th  1163, 1167 (2008) ("an attorney is forever forbidden . . . from acting in a way which will

18 injure the former client in matters involving such former representation."); *In re McIntosh* 697

19 Fed. Appx. 569, 571–572 (9th Cir. 2017) ("Under California law, the duty of loyalty survives the

20 end of the attorney—client relationship; 'after severing his relationship with a former client an

21 attorney 'may not do anything which will injuriously affect his former client in any manner in

22 which he formerly represented him.'"); *In re Jaeger* (Bankr. C.D. Cal. 1997) 213 B.R. 578, 589.

23 [Dkt. No. (Kehr Decl.), ¶ 3].[10]

---

24 [10] As explained in the accompanying brief, New RPC 1.9(a) incorporates the continuing duty of

25 loyalty owed to a former client, recognized in *Wutchumna* and its extensive progeny.

26       **(a)** A lawyer who has formerly represented a client in a matter shall not thereafter
represent another person* in the same or a substantially related matter in which that

27 person's* interests are materially adverse to the interests of the former client unless the
former client gives informed written consent.

28 New RPC 1.9(a).

      Further, in relevant part, Comment 1 to New RPC 1.9 explicitly states: "After termination

19

1    In support of its novel proposition that the termination of Baker's attorney-client
2    relationship also terminated its duty of loyalty to the Benzeevi Group, Debtor cites the *SpeeDee*
3    *Oil* decision. (Objection, fn.2). However, the dicta of the *SpeeDee Oil* decision on which Debtor
4    relies merely recognized that the client ended the risk of divided loyalty when the individual
5    attorney terminated his relationship with the prospective client.   There was no meaningful
6    analysis of existence of a continuing duty of loyalty, because the client in that case established
7    that the attorney had received confidential information during preliminary consultations and the
8    continuing duty of confidentiality by itself warranted disqualification of both the attorney and his
9    whole firm by imputation. *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems,*
10   *Inc.* 20 Cal.4th 1135, 1155-56 (1999).[11]

11   There can be no doubt that Baker's and Ms. McDow's representation of Debtor in seeking
12   termination of the Inyo MSA, the very agreement Baker and Ms McDow drafted on behalf of
13   HCCA, just two weeks after it abruptly abandoned the Benzeevi Group, was a violation of the
14   continuing duty of loyalty Baker and Ms. McDow owed to HCCA as to the Inyo MSA.  Baker
15   and Ms. McDow took direct adverse action in the same subject matter of the previous
16   representation. Ms. McDow's adverse actions, taken in the past as to the Inyo MSA, continue to
17   this day as to the Inyo MSA and Vi.  These actions violate her enduring duty of loyalty which
18   justify her disqualification and that of Foley as well.  These admissions of adverse action in the
19   Objection provide further support for the conclusion that it is unnecessary and improper to force

20

21   of a lawyer-client relationship, the lawyer owes two duties to a former client. The lawyer may not
22   (i) do anything that will injuriously affect the former client in any matter in which the lawyer
     represented the former client . . ..

23

24   [11] Debtor also cites the *Gross Belsky* decision which relied on the same language in *SpeeDee Oil*.
     In that action, the defendant sought to disqualify a law firm from representing itself in a fee
25   dispute with the defendant who was a former client.  That case recognized that disqualification
     under those circumstances would preclude any attorney from representing itself in a fee dispute.
26   *Gross Belsky Alonso LLP v. Henry Edelson*, *supra*, 2009 WL 1505284, at *3.  Since the case held
     that a fee dispute is *not* substantially related to the prior representation for disqualification
27   purposes, *Gross Belsky* is inapplicable because the continuing duty of loyalty recognized by
     *Wutchumna*, *Oasis West* and the other authority cited above extends to matters that are related to
28   the former representation.

20

1   disclosure of the privileged Baker invoices.

2   **F.**      **If the Motion is Denied, the Court Should Limit the Subpoena to the Invoices**

3         **Addressed by the Objection**

4      The Objection focuses on the argument that Debtor and its counsel, Ms. McDow and Mr.

5   Farivar, must obtain the Baker invoices to address the level of involvement they had in the Inyo

6   MSA for HCCA. (See, Objection p.6:2-21). Accordingly, if this Court is inclined to deny this

7   Motion, it should limit the scope of the Subpoena to invoices related to the work on the Inyo

8   MSA. Production and redaction of seven years of invoices on the other myriad manners for

9   which Baker performed services for HCCA and the other entities, is overbroad, burdensome and

10   not even arguably necessary to resolution of the "substantial relationship" test. It would also be

11   highly likely to be prejudicial to the Benzeevi Group, in light of the ongoing disputes already

12   described herein.

13      Since the Debtor does not object to reasonable measures to protect the invoices from

14   public disclosure and use outside of this disqualification motion, the Benzeevi Group requests

15   that any production of invoices be subject to redaction by the Benzeevi Group and designation as

16   attorney's eye's only and submission under seal or for *in camera review.*

17                 **IV.**     **CONCLUSION**

18      Debtor's untimely and procedurally defective Objection should be stricken and this

19   Motion granted. However, even if considered, the Objection, offering no evidence of its own,

20   misstates the facts and misrepresents the law. The "substantial relationship" test, wholly ignored

21   in the Opposition, renders an examination of the Baker invoices to determine disqualification of

22   Foley and Ms. McDow unnecessary and improper. Because the uncontradicted evidence

23   establishes, and the Objection admits, that Ms. McDow worked on the Inyo MSA for HCCA, all

24   ///

25   ///

26   ///

27   ///

28

1   that is left is for the court to determine whether the Inyo MSA is substantially related to these

2   proceedings, in which case Ms. McDow, Mr. Farivar and Foley must be disqualified.  Based on

3   the foregoing, the Motion to Quash must be granted.

4

5   Dated: December _12_, 2018          KLEIN, DENATALE, GOLDNER, COOPER,
                                        ROSENLIEB & KIMBALL LLP

6

7

8                                       By: /s/ Hagop T. Bedoyan
                                            HAGOP T. BEDOYAN,
9                                           Attorneys for HealthCare Conglomerate
                                            Associates, LLC, Tulare Asset Management,
10                                          LLC, Medflow, PC and Vi Healthcare
                                            Finance, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22