**13**

HAGOP T. BEDOYAN, CSB No. 131285
**KLEIN, DENATALE, GOLDNER,
    COOPER, ROSENLIEB & KIMBALL LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (661) 326-0418
E-mail: hbedoyan@kleinlaw.com

Brandon N. Krueger, Esq. (SBN 221432)
*bkrueger@sallspencer.com*
Lara A.S. Callas, Esq. (SBN 174260)
*lcallas@sallspencer.com*
SALL SPENCER CALLAS & KRUEGER
A Law Corporation
32351 Coast Highway
Laguna Beach, CA 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403

Attorneys for HealthCare Conglomerate Associates, LLC,
Vi Healthcare Finance, Inc., Medflow, PC, and Tulare Asset Management LLC

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No. 16-10015-A-9<br><br>Chapter 9<br><br>DC NO.: KDG-5<br><br>Date: December 19, 2018<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>2500 Tulare Street, Fifth Floor<br>Department A, Courtroom 11<br>Fresno, California<br>Judge: Honorable Fredrick E. Clement |

**MEMORANDUM OF POINTS AND AUTHORITIES REGARDING APPLICATION OF NEW CALIFORNIA RULES OF PROFESSIONAL CONDUCT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 5

    I.    INTRODUCTION ................................................................................... 5

    II.    LEGAL ARGUMENT .............................................................................. 6

        A.    Former Rule of Professional 3-310 Supported the Disqualification Motion and the Motion to Quash and Was in Effect Until November 1, 2018 ................................................................................................. 6

        B.    As of November 1, 2018 New Rules of Professional Conduct 1.7, 1.9 and 1.10 Support Granting the Motion to Quash and the Disqualification Motion ................................................................................................. 8

        C.    The New RPC Apply on a Going Forward Basis to Ms. McDow's and Foley's Continuing Conflicted and Improper Conduct ........................... 12

    III.    CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*Arias v. FCA US LLC,*
  2018 WL 3419709 (E.D. Cal., July 12, 2018) .......................................................... 7

*Beltran v. Avon Products, Inc.,*
  867 F.Supp.2d 1068 (C.D.Cal. 2012) .................................................................... 7

*In re Jaeger,*
  213 B.R. 578 (Bankr. C.D. Cal. 1997) ................................................................... 9

*In re McIntosh,*
  697 Fed. Appx. 569 (9th Cir. 2017) ....................................................................... 7

*Lennar Mare Island, LLC v. Steadfast Ins. Co.,*
  105 F.Supp. 3d 1100 (E. D. Cal. 2015) .................................................................. 6

*Trone v. Smith,*
  621 F.2d 994 (9th Cir. 1980) ................................................................................ 7

**California Cases**

*City and County of San Francisco v. Cobra Solutions, Inc.,*
  38 Cal.4th 839 (2006) ........................................................................................... 7

*Costello v. Buckley,*
  245 Cal.App.4th 748 (2016) .................................................................................. 8

*Evangelatos v. Superior Court,*
  44 Cal.3d 1188 (1988) ........................................................................................ 12

*Kirk v. First American Title Ins. Co.,*
  183 Cal.App.4th 776 (2010) .................................................................................. 7

*Oasis West Realty, LLC v. Goldman,*
  51 Cal.4th 811 (2011) ....................................................................................... 7, 9

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*
  20 Cal.4th 1135 (1999) ......................................................................................... 7

*Wutchumna Water Co. v. Bailey,*
  216 Cal. 564 (1932) ...................................................................................... 7, 8, 9

**Rules**

Former Rules of Professional Conduct, Rule 3-310 ............................................... 6, 11

Local Rules of Practice for the United States District Court for the Eastern District
  of California, Rule 180 .......................................................................................... 6

Local Rules of Practice for the United States District Court for the Eastern District
  of California, Rule 1001-1 ..................................................................................... 6

New Rules of Professional Conduct, Rule 1.0.1 ....................................................... 11

3

(KDG-5) MEMORANDUM OF P's and A's NEW RPC

New Rules of Professional Conduct, Rule 1.10 ................................................................ 10

New Rules of Professional Conduct, Rule 1.7 .................................................................. 10

New Rules of Professional Conduct, Rule 1.9 ................................................................ 9, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This brief is provided upon the Court's request of November 14, 2018, to provide briefing (1) identifying both the former and new Rules of Professional Conduct applicable to the facts at hand; (2) to identify substantive differences between the former and new rules; and (3) to discuss the potential retroactivity of the new Rules of Professional Conduct to this matter.

Pursuant to Supreme Court Administrative Order 2018-05-09, filed on May 10, 2018, the California Supreme Court approved the new Rules of Professional Conduct (the "New RPC") which, pursuant to the order, became effective November 1, 2018, and replace the former Rules of Professional Conduct (the "Former RPC"). [RJN, Ex. A]. The conduct and matters at issue in the pending Motion to Quash the subpoena served on Baker & Hostetler and the Motion to Disqualify Foley & Lardner and Ashley McDow (respectively, the "Motion to Quash" and the "DQ Motion") primarily arose prior to November 1, 2018 and thus should be analyzed in the context of the former rules and case law. However, since the conflicted and improper course of conduct by Ms. McDow and her firm Foley & Lardner ("Foley") presently continues, the New RPC also come into play. The New RPC, and the explanatory comments thereto, combined with the still existing and applicable case law regarding conflicts and disqualification make the case for quashing the Baker subpoena and the mandatory of disqualification of Foley and Ms. McDow even more clearly than before.

New Rules 1.9 and 1.10 are most pertinent to the issues at stake in the pending motions. New Rule 1.9 effectively replaces prior Rule 3-310(E), and now expressly incorporates the "substantial relationship test" explained in the cases such as *City and County of San Francisco v. Cobra Solutions, Inc.* 38 Cal.4th 839, 847(2006), and also prohibits representation materially adverse to the former client where confidential information was obtained, as well as forbids adverse use or disclosure of confidential information, unless written consent was obtained from the former client. The comments to New Rule 1.9 also provide helpful guidance, such as examples of the breaches of the duty of loyalty the Rule intends to curb, and explanation of when matters will be considered substantially related. New Rule 1.10 provides that an attorney's conflict with a former client of a former firm will be imputed to all attorneys in the new firm,

unless certain conditions are met.

New Rules 1.9 and 1.10 make it abundantly clear that Ms. McDow has and had a disqualifying conflict of interest prohibiting her representation of Debtor Southern Inyo Healthcare District ("Inyo") while at Baker and that Ms. McDow's disqualifying conflict must be imputed to Foley, requiring disqualification of the entire firm, including Ms. McDow, and that no production or review of invoices is required or permitted in order to reach this result. Whether analyzed under the Former RPC or the New RPC, (governing case law is unchanged), disqualification is mandatory and the Baker subpoena should be quashed.

## II. LEGAL ARGUMENT

### A. Former Rule of Professional 3-310 Supported the Disqualification Motion and the Motion to Quash and Was in Effect Until November 1, 2018

At the time Healthcare Conglomerate Associates, LLC ("HCCA") and Vi Healthcare Finance ("Vi") filed the DQ Motion on October 15, 2018, when Baker represented the Benzeevi Group in 2009 through 2017, and when the disqualifying conflict and improper conduct arose by 2017, the Former RPC were in effect, but the only Former RPC that explicitly applied to the conflict addressed in the motion was Former RPC 3-310(E) which stated:

> **(E)** A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

RPC 3-310(E).[1]

Thus, Former RPC 3-310(E) focused on the possession of confidential information of the former client. There was no provision in the Former RPC that discussed the substantial relationship test or imputation of conflicts to firms. However, the case law significantly expanded Former Rule 3-310(E)'s narrowly expressed prohibition against adversity based only on

---

[1] Under Federal Law and Local Bankruptcy Rules, the Bankruptcy Courts apply California law and the California RPC to disqualification motions. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1107 (E. D. Cal. 2015); Local Bankruptcy Rule ("LBR") 1001-1(c) (incorporating Rule 180 of the Local Rules of Practice for the United States District Court for the Eastern District of California); E.D. Cal. L. R. 180(e).

the possession of confidential information.[2] The cases recognized the following important concepts described in the DQ Motion filed by HCCA and Vi and the Motion to Quash:

- The duty of loyalty survives termination of the attorney-client relationship and prohibits *any* action by the attorney which would injure the former client in the matters involved in the former representation. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 573-74 (1932); *In re McIntosh* 697 Fed. Appx. 569, 571–572 (9th Cir. 2017).

- An attorney may not represent, and must be disqualified from representing, a client in an action adverse to a former client, unless there has been informed written consent to the actual conflict, where the subject matters of the current and former representations are substantially related. In such cases, the attorney is presumed to possess confidential information. *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1146 (1999); *Arias v. FCA US LLC*, 2018 WL 3419709, at *2 (E.D. Cal., July 12, 2018, No. 2:18-CV-00392-JAM-AC); *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847 (2006).

- In determining whether matters are substantially related, and whether disqualification is warranted, **the former client must not be forced to disclose attorney-client privileged information**. *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th 839, 847; *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).

- An attorney's conflict with a former client is imputed to the tainted attorney's entire firm. *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th 839, 847–848, *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra* 20 Cal.4th 1135, 1146; *Beltran v. Avon Products, Inc.*, 867 F.Supp.2d 1068, 1083 (C.D.Cal. 2012)(quoting *Cobra Solutions* and *SpeeDee*).

---

[2] The *Kirk* decision explained that while the RPC do not create standards for disqualification, the rules do provide guidance for the courts in deciding disqualification motions. *Kirk v. First American Title Ins. Co.* 183 Cal.App.4th 776, 792, as modified (May 6, 2010), (2010).

7

- An attorney may not act "for others in any matters where such secrets or confidences or knowledge acquired in the course of the earlier employment can be used to the former client's disadvantage. . . [A]n attorney may *never* use against his former client knowledge or information acquired by virtue of the previous relationship.'" *Costello v. Buckley*, 245 Cal. App. 4th, 748, 753 (2016) (quoting *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 571(1932)) (emphasis added).

Under the former RPC as interpreted and expanded under the case law, the Motion to Quash and the DQ Motion should be granted.

### B. As of November 1, 2018 New Rules of Professional Conduct 1.9 and 1.10 Support Granting the Motion to Quash and the Disqualification Motion

The New RPC explicitly incorporates several of the important concepts summarized above to expand and clarify the coverage of conflicts. They also contain new provisions relating to imputation of conflicts from an attorney to a firm. Thus, these new Rules, which by their terms apply to Foley's and Ms. McDow's actions and continuing representation *on or after November 1, 2018*, provide additional support for granting both the motion to quash and the disqualification motion.

New RPC 1.9 entitled "Duties to Former Clients," replaces former Rule 3-310(E) discussed above, and codifies certain aspects of the controlling case law governing conflicts of interest and disqualification (which were not expressly referenced in the former Rule 3-310(E)), including most importantly for our purposes, the "substantial relationship" test.[3]

New RPC 1.9 states:
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.*[4]
(b) A lawyer shall not knowingly* represent a person* in the same or a substantially related matter in which a firm* with which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person;* and

---

[3] Although not expressly referenced in Former Rule 3-310(E), the substantial relationship test has long been the law. Now it is expressly incorporated in New RPC 1.9 and its comments.

[4] Asterisks in the New RPC reflect that the term preceding the asterisk is defined in New RPC 1.01, 'Terminology".

8

> (2) about whom the lawyer had acquired information protected by Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter;
> unless the former client gives informed written consent.*
> **(c)** A lawyer who has formerly represented a client in a matter or whose present or former firm* has formerly represented a client in a matter shall not thereafter:
> (1) use information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 acquired by virtue of the representation of the former client to the disadvantage of the former client except as these rules or the State Bar Act would permit with respect to a current client, or when the information has become generally known;* or
> (2) reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 acquired by virtue of the representation of the former client except as these rules or the State Bar Act permit with respect to a current client."

New RPC 1.9.

Comment 1 to New RPC 1.9, citing *Wutchumna* and *Oasis West Realty*[5] cited in the DQ Motion and Motion to Quash, confirms that the duty of loyalty to a former client recognized in the rule means that "a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client." New RPC, 1.9, Comment 1. This comment directly prohibits Ms. McDow's conduct in representing Inyo and submitting her own personal declaration in seeking to reject the Management Services Agreement between HCCA and Southern Inyo Healthcare District ("Inyo MSA") which she herself had previously helped draft and negotiate on behalf of HCCA. [Dkt. No. 492 (RJN ISO DQ Mtn.), Ex. R (Dkt. No. 325), S Ex. S (Dkt No. 326)].

In the contemplated global mediation, as lead insolvency counsel, Ms. McDow, and now Foley, would be taking that improper and conflicted course of action a step further by, amongst other things, advocating that the claims of Debtor Southern Inyo Healthcare District ("Inyo") against HCCA in the adversary proceeding based on the Inyo MSA warrant a settlement contribution from HCCA. This New Rule RPC 1.9 confirms and is consistent with the earlier case law directly forbidding Ms. McDow's and Baker's earlier and continuing improper conduct on behalf of Inyo in this proceeding. New RPC 1.9, Comment 1.

Comment 2 to New RPC 1.9 also confirms what had been recognized in cases such as *In re Jaeger*, 213 B.R. 578, 585 (Bankr. C.D. Cal. 1997), that after multiple clients have given

---

[5] *Wutchumna Water Co. v. Bailey* 216 Cal. 564, 573-74 (1932); *Oasis West Realty, LLC v. Goldman* 51 Cal. 4th 811, 821 (2011).

informed written consent to a potential conflict, if "circumstances later develop indicating that direct adversity exists between the clients, the lawyer must obtain further informed written consent* of the clients under paragraph (a). Baker did not seek a second waiver from the Benzeevi Group once an actual conflict developed and thus there was no informed written consent given to Baker's conflicted representation of Inyo, under the case law or the New RPC. [Dkt. No. 488 (Benzeevi Decl. ISO DQ Mtn), ¶ 11].

In addition, comment 3 to New RPC 1.9, explains that an example of matters which are the "same or substantially related" is "if the matters involve the same transaction or legal dispute or other work performed by the lawyer for the former client. . ." RPC 1.9, Comment 3. Here, amongst other things, this bankruptcy proceeding "involves" the "same transactions", i.e., the Inyo MSA (drafted and negotiated by Baker and Ms. McDow for HCCA), and what rights or liabilities it created for Inyo and HCCA, as well as the loan from Vi Healthcare to Inyo (Vi formed by Baker and loan documents drafted by Baker) which provides the basis for Vi's creditor status. [Benzeevi Decl., ¶¶ 6,9]. The Inyo MSA expressly contemplated these Chapter 9 proceedings and was the vehicle by which Baker engineered its role as counsel for Inyo. [Benzeevi Decl., Ex. A, App. pg. 29, ¶ 4(bb)]. Under New RPC 1.9 as explained in Comment 3, there can be no doubt that Baker's and Ms. McDow's previous representation of HCCA and Vi Healthcare is the "same or substantially related" to Ms. McDow's and Foley's representation of Inyo in this Chapter 9 proceeding.

New RPC 1.10 governs the imputation of conflicts of interest from an attorney to a firm, which had previously been addressed only in the case law. RPC 1.10(a) states that "While lawyers are associated in a firm, * none of them shall knowingly * represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9," subject to certain conditions. Rule 1.9 conflicts, which pertain to a former client, will be imputed to the new firm, **unless** the attorney "did not substantially participate in the same or a substantially related matter," there is timely screening of the attorney at the new firm **and** the former client is given prompt notice to allow it to ascertain compliance with screening procedures and an opportunity to object. RPC 1.10(a)(2). Ms. McDow substantially participated in the Inyo MSA [DKT. No. 488 (Benzeevi Decl. ISO DQ Mtn), ¶ 6], there was no screening at Foley (rather Ms. McDow

continued her conflicted role as Inyo's counsel adverse to the Benzeevi Parties), and certainly no notice was given to Dr. Benzeevi or his counsel to allow him to ensure proper screening or assert objections. Thus, Ms. McDow and Foley fail to meet three of the prerequisites to avoid imputation of Ms. McDow's conflict to Foley. Failure to satisfy any one of them would mandate imputation.

Thus, the fact that the New RPC explicitly permits ethical screening to overcome imputation, (which was questionable under existing case law and which may still be rejected by courts who are not bound by the RPC in matters of disqualification) cannot save Foley here. Under New RPC 1.10, Ms. McDow's conflict must be imputed to Foley and the entire firm disqualified.

Finally, nothing in the New RPC changes the analysis concerning the purported conflict waiver signed by Inyo and HCCA in January 2016[6] or the fact that this purported waiver did not operate to allow Baker to continue to represent Inyo after an actual conflict developed between Inyo and the Benzeevi Group. Like former RPC 3-310(E), New RPC 1.9 allows informed written consent to conflicted representation. New RPC 1.01 defines "informed written consent" as a writing reflecting "a person's* agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably* foreseeable adverse consequences of the proposed course of conduct." RPC 1.0.1 (e), (e-1). These provisions in effect repeat the provisions of Former RPC 3-310 (A) setting forth the requirements for an effective informed written consent.[7] Since Baker failed to

---

[6] Following the filing of the DQ Motion, Baker produced a signed copy of the January 2, 2016 conflict waiver letter, which is attached to the Supplemental Benzeevi Decl. ISO Mtn to Quash, as Exhibit 1, submitted concurrently.

[7] Former RPC 3-310(A) provided:

> "For purposes of this rule:
> (1) "Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;
> (2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure;
> (3) "Written" means any writing as defined in Evidence Code section 250."

CA ST RPC Rule 3-310

11

disclose to the Benzeevi Group that if a conflict developed that Baker could abandon the Benzeevi Group and continue to represent Inyo, there was no informed consent to Ms. McDow's, Baker's (and later Foley's) continuing representation of Inyo.

Accordingly, the New RPC only further bolsters the conclusion that (1) there is no need or right to invade the Benzeevi Group's privileged information in the Baker invoices to establish that Ms. McDow and Baker represented Inyo adverse to HCCA and VI in the "same or substantially related matters"; (2) that disqualification of Ms. McDow (and Mr. Farivar) is mandatory under the law; and (3) that Ms. McDow's disqualifying conflict is imputed to Foley and that she and Foley have never satisfied the requirements of existing case law or New RPC 1.10 to avoid such imputation. The New RPC provide more clarity and guidance to support a decision to grant both the Motion to Quash and the DQ Motion.

### C. The New RPC Apply on a Going Forward Basis to Ms. McDow's and Foley's Continuing Conflicted and Improper Conduct

As Debtor acknowledges, the New RPC operate only prospectively, given the fact that the Supreme Court stated that the New RPC would come into effect on November 1, 2018. Case law also supports prospective application.

In the similar context of legislative enactments, the California Supreme Court has unequivocally recognized that:

> "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application."

*Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1208–1209 (1988).

There is no indication here that the State Bar, who proposed the New RPC, or the California Supreme Court, who approved them, intended that the New RPC operate retroactively. To the contrary, the Administrative Order explicitly provided that the New RPC "are effective November 1, 2018." [RJN, Ex. A (S. Ct. Admin Order 2018-05-09), p. 6]. Further, it would be fundamentally inequitable to impose new rules applying to attorney conduct that occurred in the past which would subject attorneys to potential discipline. Attorneys must be allowed to conform their conduct to Rules as they exist, and cannot be expected to be bound by as of yet

| | |
|---|---|
| 1 | undefined rules. |
| 2 | Thus, the New RPC should apply only as to Ms. McDow's and Foley's conduct after |
| 3 | November 1, 2018. However, as explained above, no matter how analyzed, under the former or |
| 4 | new rules, whether or not retroactively applied, the RPC and governing case law require that the |
| 5 | subpoena to Baker be quashed and Foley and Ms. McDow be disqualified from further |
| 6 | representation of Inyo in this proceeding. |

### III. CONCLUSION

Based on the foregoing, the new guidance and clarification provided by the New RPC, whether applied prospectively or retroactively, further supports granting the Benzeevi Group's Motion to Quash, as well as granting the DQ Motion to preclude further conflicted and prohibited representation of Inyo adverse to HCCA and VI in these proceedings.

Dated: December 12, 2018

KLEIN, DENATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL LLP

By: /s/ Hagop T. Bedoyan
HAGOP T. BEDOYAN,
Attorneys for HealthCare Conglomerate Associates, LLC, Tulare Asset Management, LLC, Medflow, PC and Vi Healthcare Finance, Inc.

(KDG-5) MEMORANDUM OF P's and A's NEW RPC