Ashley M. McDow (245114)
**FOLEY & LARDNER LLP**
555 S. Flower St., Suite 3300
Los Angeles, CA 90071
Telephone: 213.972.4500
Facsimile: 213.486.0065
Email: amcdow@foley.com

Attorneys for Debtor,
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No.: 2016-10015<br><br>Chapter 9<br><br>FL-003<br><br>**DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR**<br><br>Date: March 21, 2019<br>Time: 1:30 p.m.<br>Place: Dept. A, Ctrm 11<br>      U.S. Bankruptcy Court<br>      2500 Tulare Street<br>      Fresno, CA 93721 |

DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITIONTION TO MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR

4840-5116-7624.3

I, Ashley M. McDow, do hereby declare:

1.  I am a partner with the law firm of Foley & Lardner LLP, counsel for Southern Inyo Healthcare District, the above-captioned Debtor. I am the attorney primarily responsible for the representation of the Debtor. I make this declaration in support of the Debtor's Opposition to the Motion to Disqualify Ashley M. McDow and Foley & Lardner as Counsel for Debtor (the "Opposition"). Unless otherwise defined herein, all capitalized terms shall have the same meaning as ascribed to them in the Opposition.

2.  Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if a called as a witness, could and would competently testify thereto.

3.  The Debtor filed a voluntary chapter 9 bankruptcy petition in this Court on or about January 4, 2016. On or about July 12, 2016, this Court entered an order for relief.

4.  On or about January 2, 2016, just prior to the filing of the chapter 9 petition, the Debtor retained HCCA pursuant to the MSA. Under the MSA, HCCA was, among other things, vested with the authority and the obligation to manage the operational and financial aspects of the District. At the time the MSA was executed, both the Debtor and HCCA were represented by Baker. As detailed further below, at all relevant times, the Movants were well aware of Baker's dual representation and expressly waived, in writing, any conflict arising from such dual representation.

5.  Baker represented the Movants until approximately September 29, 2017. Baker represented the Debtor until approximately May 1, 2018, following my departure from Baker on or about April 30, 2018. The Debtor subsequently retained Foley to represent it in the Bankruptcy Case.

6.  The majority of Baker's involvement with the MSA was handled by Bruce Greene, a partner at Baker (and the long standing relationship partner of the Movants), and not by me. Indeed, contrary to the allegations contained in the Motion, which portray the relationship between the Movants and me as an extensive one, my relationship with the Movants was extremely limited.

- 2 -
DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITIONTION TO MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR

4840-5116-7624.3

1　　　　7.　　My involvement with the Movants, as evidenced in the Baker Invoices, was limited to (i) 37.2 hours in December 2015 and January 2016 advising HCCA on the MSA and potential chapter 9 bankruptcy filing by the Debtor[1] and (ii) 11.6 hours in 2014 advising HCCA on various matters completely unrelated to the Debtor.[2]

　　　　8.　　However, beyond these limited categories, I had no relationship with HCCA and would not, in the normal course, have had access to HCCA's confidential information, including any strategies of HCCA in this chapter 9 case. I had no administrative or managerial duties with respect to Baker's relationship with HCCA or any of its affiliates. Furthermore, the Baker Invoices show that I *did not* communicate with Dr. Benzeevi "multiple times per day" during the December 2015- January 2016 time period in which the MSA was being negotiated, despite the contention of Dr. Benzeevi – under oath – to the contrary. In fact, the invoices reflect, at most, I had a total of four conversations with Dr. Benzeevi in the December 2015 – January 2016 timeframe.[3] In 2014, the invoices reflect at most two conversations or meetings between Dr. Benzeevi and me.[4]

　　　　9.　　Moreover, as demonstrated by the Baker Invoices, I did not render any services to either of the Movants once the Bankruptcy Case had been commenced. Further, it is clear from the Baker Invoices that I was hardly involved – let alone intimately - in the legal representation of HCCA while at Baker. In fact, in the Baker Invoices, between May 2013 and October 2017, the

---

[1] This time consisted of five time entries: (i) December 28, 2015 @ 5.8 hours; (ii) December 29, 2015 @ 5.7 hours; (iii) December 30, 2015 @ 15.3 hours (which included travel time to a board meeting of the Debtor); (iv) December 31, 2015 @ 5.6 hours; and (v) January 1, 2016 @ 4.8 hours. As the Movants noted in the SMPA, the December 28, 2015 and December 29, 2015 time entries also appear in another invoice and appear to be duplicative of the entries in that invoice. *See* SMPA, at p. 8, n.5. In addition, Mr. Farivar billed 1.4 hours to HCCA on December 30, 2015. Mr. Farivar is no longer associated with Foley.

[2] The Movants argue – without providing a scintilla of factual or legal support - that I spent 9.6 hours on services rendered to HCCA in matters pertaining to Tulare Regional Medical Center ("Tulare") and that, because that matter was purportedly similar to the services rendered to HCCA in matters pertaining to the Debtor, those 9.6 hours have more significance than they actually do. *See* SMPA, at p 8. However, the Current Representation is wholly unrelated to any services rendered by me on the Tulare matter, a fact which should be self-evident given, among other things, the period of time between the rendering of services for Tulare as opposed to the District.

[3] These are the time entries on (i) December 28, 2015; (ii) December 29, 2015; (iii) December 31, 2015; and (iv) January 1, 2016 (the January 1, 2016 time entry indicates that I participated on a conference call, but does not indicate with whom).

[4] These are the time entries on (i) May 30, 2014 and (ii) potentially April 24, 2014 (which time entry reflects a meeting with the "client").

- 3 -

DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITIONTION TO MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR

4840-5116-7624.3

hours billed by me to any matter related to HCCA were approximately 2.8% of the total hours billed by Baker to HCCA.

10. Notwithstanding the existence of the Waivers, the first and only action that either I or Baker took that was even arguably adverse to HCCA was the filing of the "Emergency Motion (1) for Authority to Immediately Terminate HCCA Management Agreement or, in the Alternative, for Authority to Modify Terms of the HCCA Management Agreement in Order to Designate the Board as the Sole Signatory on all District Accounts, and (2) to Continue Hearing on Second Amended Disclosure Statement and Associated Filing Deadlines" (the "Emergency Motion to Terminate").

11. The Emergency Motion to Terminate was filed on October 17, 2017. Importantly, more than two weeks before the filing of the Emergency Motion to Terminate, I understand that Baker terminated its representation of Dr. Benzeevi, HCCA and all HCCA affiliated entities. Thus, at the time of the filing of the Emergency Motion to Terminate, HCCA was not a client of Baker.

12. The Emergency Motion to Terminate was filed on an emergency basis because the Debtor believed that HCCA had mismanaged the Debtor and, worse, engaged in what appeared to be numerous unauthorized transactions involving funds of the Debtor.

13. On or about October 11, 2017, the board of the District convened and determined that HCCA's misconduct warranted the immediate termination and rejection of the MSA. Given the board's belief that HCCA was siphoning funds from the Debtor, it authorized the immediate filing of the Emergency Motion to Terminate in an effort to ensure that the operations of the District – namely the provision of healthcare services to the community-at-large - would not be adversely impacted. Moreover, given the emergency nature of the situation, the Debtors asked Baker to file the Emergency Motion to Terminate.

14. At the initial hearing on the Emergency Motion to Terminate on October 17, 2017, the Court granted limited relief to the Debtor. That relief consisted of removing HCCA as a signatory on the Debtor's bank accounts. After that, prosecution of the balance of the Emergency Motion to Terminate was handled by independent counsel at Dentons, and the matter was

- 4 -

DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITIONTION TO MOTION TO DISQUALIFY ASHLEY M. MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR

4840-5116-7624.3

1  eventually settled.  Other than the filing of the Emergency Motion to Terminate, which was
2  unavoidable given the exigencies presented, neither Baker nor I took any other actions which the
3  Movants have even alleged to be adverse to their interests, with respect to the Emergency Motion
4  to Terminate or otherwise.

5  　　　　15.　　The Court approved the rejection and termination of the MSA on December 2, 2017,
6  which was well before I joined Foley. As the MSA has been terminated, it has little to no remaining
7  relevance in the Bankruptcy Case, other than serving as a basis for the Adversary Proceeding (as
8  defined below) that is being prosecuted by independent counsel and any claim that HCCA believes
9  it may have against the Debtor, a contested matter that will also be handled by independent counsel
10 if and when it is properly before the Court.

11 　　　　16.　　The Debtor has retained independent counsel – Jeffrey S. Shinbrot, APLC – to
12 represent it in any matter adverse to one or both of the Movants.  In particular, Mr. Shinbrot of
13 Jeffrey S. Shinbrot, APLC is representing the Debtor in the adversary proceeding commenced by
14 the Debtor's filing of a complaint against the Movants (the "Adversary Complaint") on or about
15 May 30, 2018 (the "Adversary Proceeding"). The Adversary Complaint seeks to avoid
16 unauthorized post-petition transfers and alleges breach of contract, negligence, concealment,
17 breach of fiduciary duty and equitable subordination, among other things.

18 　　　　17.　　In addition to representing the Debtor in the Adversary Proceeding, Mr. Shinbrot,
19 along with Scott Nave of Nave & Cortell LLP, will represent the Debtor in any mediation that takes
20 place in this case, and neither I nor anybody else from Foley will not attend or participate in any
21 way in such mediation.

22 　　　　18.　　Thus, contrary to the baseless allegations contained in the Motion, neither I nor
23 Foley will be "hopelessly conflicted" in any such mediation. Further, contrary to the baseless and
24 unsubstantiated allegation in the SMPA, *see* SMPA at p. 17, n.8 ("there is no evidence that Ms.
25 McDow has no involvement in [the Adversary Complaint], and is not exercising supervisory
26 control of that action as lead insolvency counsel."), I have not and will not have any involvement

- 5 -

DECLARATION OF ASHLEY M. MCDOW IN SUPPORT OF DEBTOR'S OPPOSITIONTION TO MOTION TO DISQUALIFY ASHLEY M.
MCDOW AND FOLEY & LARDNER AS COUNSEL FOR DEBTOR

4840-5116-7624.3

1　in any portion of the Adversary Proceeding and I will not exercise supervisory authority with
2　respect to any portion of the Adversary Proceeding.

3　　19.　Disqualification of lead counsel to the Debtor, after more than three years into the
4　Bankruptcy Case, would substantially delay, if not completely impede, the ability of the Debtor to
5　successfully exit chapter 9 while continuing to provide vital healthcare services to the community-
6　at-large. Moreover, the Debtor does not likely have the funds available that would be required to
7　retain reputable replacement counsel and allow such counsel to get "up to speed" on the vast array
8　of issues that I (and Baker/Foley) have been handling since the beginning of 2016.  Unfortunately,
9　the Bankruptcy Case is not a simple case, and the Debtor cannot afford, and should not be forced,
10　to completely start over with counsel that is unfamiliar with the nuances of this case (assuming that
11　the Debtor would even be able to retain experienced chapter 9 counsel given their financial
12　situation).

14　　I declare under penalty of perjury that the foregoing is true and correct.  Executed on this
15　20th day of February, 2019, at Los Angeles, California.

　　　　　　　　　　　　　　　　/s/ Ashley M. McDow
　　　　　　　　　　　　　　　　Ashley M. McDow