**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Ryan W. Beall, State Bar No. 313774
rbeall@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile     714-966-1002

Attorneys for Debtor
SOUTHERN INYO HEALTHCARE DISTRICT

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 1:16-bk-10015-FEC |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| Debtor. | WGG-4 |
| | **CHAPTER 9 STATUS REPORT** |
| | Status Conference: |
| | Date:    July 24, 2019 |
| | Time:    1:30 p.m. |
| | Place:   Dept. A, Ctrm 11 |
| |         U.S. Bankruptcy Court |
| |         2500 Tulare Street |
| |         Fresno, CA 93721 |

**TO THE HONORABLE FREDRICK E. CLEMENT, UNITED STATE BANKRUPTCY JUDGE:**

Southern Inyo Healthcare District ("SIHD", the "District" or the "Debtor"), debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"), respectfully submits the following *Chapter 9 Status Report*.[1]

**I.    BACKGROUND CASE**

**A.    Petition and Schedules**

On January 4, 2016, SIHD commenced the instant Bankruptcy Case by filing a voluntary petition for relief (the "Petition") under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code").

On or about January 19, 2016, the Debtor filed its schedules and statement of financial affairs. On or about February 5, 2016, the Debtor filed an amended summary of schedules as well as amended versions of Schedule D, Schedule E and Schedule F. On or about February 9, 2016, the Debtor filed an amended version of Schedule G. On or about March 3, 2016, the Debtor filed a second amended version of Schedule G.

On or about July 12, 2016, the Court entered an Order for Relief under Chapter 9 in the Bankruptcy Case.

**B.    New Counsel**

On April 10, 2019, the Court issued an Order Granting Motion to Disqualify Ashley McDow and Foley and Lardner LLP [Dkt. 604], which was deemed effective as of the close of business on May 10, 2019. On May 10, 2019, the firm of Weiland Golden Goodrich LLP filed a Motion to Substitute Attorney to be the attorney of record for the District. On May 14, 2019, the Court entered an Order Granting the Motion to Substitute Attorney [Dkt. 617].

---

[1] New counsel inadvertently failed to calendar the status conference as a hearing separate and apart from the order to show cause re dismissal and, therefore, did not have the deadline by which to file the status report calendared. Counsel apologizes for this error.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1226734.1                              2                              STATUS REPORT

**C.**     **Appointment of Patient Care Ombudsman**

On or about January 6, 2016, the Court issued the Order to Appear and Show Cause Why a Patient Care Ombudsman Should Not Be Appointed. On or about January 25, 2016, SIHD filed the Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman. On or about February 3, 2016, the Debtor filed the Declaration of Colleen Wilson, Chief Nursing Officer, in Support of the Motion to Excuse the Appointment of a Patient Care Ombudsman. A hearing to consider the appointment of a patient care ombudsman was held on February 10, 2016, at 1:30 p.m. On or about February 16, 2016, the Court entered an order denying the Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman. On or about February 17, 2016, the Court entered an order directing the appointment of a patient care ombudsman. On or about March 4, 2016, the Office of the United States Trustee filed a notice regarding the appointment of Joseph Rodrigues as patient care ombudsman (the "Ombudsman").

On or about April 8, 2016, the Ombudsman filed the First Report of the Patient Care Ombudsman, which indicated, among other things, that no complaints had been made regarding the services provided by the Debtor. Accordingly, the Ombudsman had no recommendations for the Court.

On or about June 7, 2016, the Ombudsman filed the Second Report of the Patient Care Ombudsman, which indicated, among other things, that patients were comfortable and receiving adequate care. Accordingly, the Ombudsman had no recommendations for the Court.

On or about August 5, 2016, the Ombudsman filed the Third Report of the Patient Care Ombudsman, which indicated, among other things, that patients were comfortable and presented no complaints regarding the facility or the treatment they were receiving. Accordingly, the Ombudsman had no recommendations for the Court.

On or about October 4, 2016, the Ombudsman filed the Fourth Report of the Patient Care Ombudsman, which indicated, among other things, that patients were comfortable and presented no complaints regarding the facility or the treatment they were

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

receiving. Additionally, the Ombudsman did not note any issues with the operations of the facility and, thus, had no recommendations for the Court.

On or about December 2, 2016, the Ombudsman filed the Fifth Report of the Patient Care Ombudsman, which indicated, among other things, that the patients were comfortable and that SIHD expeditiously addressed the few minor issues that had arisen. Accordingly, the Ombudsman had no recommendations for the Court.

On or about January 31, 2017, the Ombudsman filed the Sixth Report of the Patient Care Ombudsman, which indicated, among other things, that the facility appeared to be clean, patients were comfortable and that SIHD had expeditiously addressed and/or was working to resolve the few minor issues that had arisen. Accordingly, the Ombudsman had no recommendations for the Court.

On or about March 28, 2017, the Ombudsman filed the Seventh Report of the Patient Care Ombudsman, which indicated, among other things, that the patients were comfortable and satisfied with the services, the facility staff assisted residents routinely with daily activities, and that SIHD had expeditiously addressed a minor complaint that had arisen. Accordingly, the Ombudsman had no recommendations for the Court.

On or about May 19, 2017, the Ombudsman filed the Eighth Report of the Patient Care Ombudsman, which indicated, among other things, that the facility appeared to be clean, patient were comfortable and that SIHD had expeditiously addressed and/or was working to resolve the minor issues that had arisen. Accordingly, the Ombudsman had no recommendations for the Court.

On or about July 12, 2017, the Ombudsman filed the Ninth Report of the Patient Care Ombudsman, which indicated, among other things, that the facility appeared to be clean, and patients were comfortable. The report also noted that SIHD had expeditiously addressed the minor issues that had arisen. Accordingly, the Ombudsman had no recommendations for the Court.

On or about September 8, 2017, the Ombudsman filed the Tenth Report of the Patient Care Ombudsman, which indicated, among other things, that the facility appeared

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1226734.1                                    4                            STATUS REPORT

to be clean, residents appeared clean and were appropriately dressed for the time of year and day, and menus were posted and residents reported being satisfied with their choices. The Ombudsman had no recommendations for the Court.

On or about November 3, 2017, the Ombudsman filed the Eleventh Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care. With respect to the one minor complaint that was received during the relevant period, the Ombudsman noted that the resident reported that the matter had been resolved when he met with him. The Ombudsman had no recommendations for the Court.

On or about January 2, 2018, the Ombudsman filed the Twelfth Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care and several of the residents had indicated that they were comfortable and had no complaints. The report also noted that the minor issues that had arisen during the relevant period had been addressed. Accordingly, the Ombudsman had no recommendations for the Court.

On or about March 2, 2018, the Ombudsman filed the Thirteenth Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care. The facility appeared to be clean, and patients were comfortable. The report also noted that SIHD had addressed the issues that had arisen, and with respect to the one matter that the Ombudsman had reported to the California Department of Public Health ("CDPH"), the CDPH notified the Ombudsman that the allegations were unsubstantiated. Accordingly, the Ombudsman had no recommendations for the Court.

On or about May 1, 2018, the Ombudsman filed the Fourteenth Report of the Patient Care Ombudsman, which indicated, among other things, that the local

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1　ombudsman program had not received any concerns involving vendors, utilities, or

2　external support factors that might impact resident care, and the Ombudsman noted that

3　the facility appeared to be clean, residents appeared clean and were appropriately

4　dressed for the time of year and day, and menus were posted and residents reported

5　being satisfied with their choices The report also noted that SIHD had addressed the two

6　issues that had arisen, and that the parent of one of the residents who had lodged a

7　complaint with SIHD advised that she was comfortable with the steps the facility had taken

8　to ensure the safety of her parent.

9　　　　On or about June 29, 2018, the Ombudsman filed the Fifteenth Report of the

10　Patient Care Ombudsman, which indicated, among other things, that the local

11　ombudsman program had not received any concerns involving vendors, utilities, or

12　external support factors that might impact resident care, and the Ombudsman noted that

13　the facility appeared to be clean, residents appeared clean and were appropriately

14　dressed for the time of year and day. The report also noted that SIHD had addressed the

15　one issue that had arisen regarding the posting menu in the facility, and the complaint of a

16　resident regarding personal funds was satisfactorily resolved.

17　　　　On or about August 28, 2018, the Ombudsman filed the Sixteenth Report of the

18　Patient Care Ombudsman, which indicated, among other things, that the local

19　ombudsman program had not received any concerns involving vendors, utilities, or

20　external support factors that might impact resident care, and the Ombudsman noted that

21　the facility appeared to be clean, residents appeared clean and were appropriately

22　dressed for the time of year and day. The report also noted that SIHD had addressed

23　through proper channels the three complaints that had arisen regarding the readmission

24　of a resident, alleged sexual abuse, and the discharge plan of a resident.

25　　　　On or about October 26, 2018, the Ombudsman filed the Seventeenth Report of

26　the Patient Care Ombudsman, which indicated, among other things, that the local

27　ombudsman program had not received any concerns involving vendors, utilities, or

28　external support factors that might impact resident care, and the Ombudsman noted that

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

during six visits during the reporting period, the facility appeared to be clean, residents appeared clean and were appropriately dressed for the time of year and day. The report also noted that SIHD had addressed through proper channels the resident complaint that had arisen regarding sexual abuse.

On or about December 21, 2018, the Ombudsman filed the Eighteenth Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care, and the Ombudsman noted that during three visits during the reporting period, the facility appeared to be clean, residents appeared clean and were appropriately dressed for the time of year and day. The report noted a roof leak. The report also noted that SIHD had addressed, through proper channels, one case and one complaint involving a resident's right to refuse treatment.

On February 19, 2019, the Ombudsman filed the Nineteenth Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care. The report noted that the District had engaged an architectural firm to repair the previously-noted roof leak. The report also noted that SIHD had addressed, through proper channels, two cases and four complaints involving inattention to a resident, lost or stolen property, staff shortage, and a resident's right to refuse care.

On April 19, 2019, the Ombudsman filed the Twentieth Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care. The report noted that the roofing contractor would start work shortly. The Ombudsman noted that during two visits during the reporting period, the facility appeared to be clean, residents appeared clean and comfortable. No complaints were received during the reporting period.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

On June 17, 2019, the Ombudsman filed the Twenty-First Report of the Patient Care Ombudsman, which indicated, among other things, that the local ombudsman program had not received any concerns involving vendors, utilities, or external support factors that might impact resident care. The report noted that the roof had been fixed and residents had moved back into their rooms. The temperature in the facility was comfortable for residents. Six cases and six complaints were received during the reporting period, including allegations relating to a fall, resident abuse, medication stolen by a third party unrelated to the District, the right to refuse care, and infection control. All matters which required the District to take specific actions were handled and handled appropriately.

**D.**    **Adequate Assurance Stipulations and Orders Thereon**

SIHD negotiated stipulations regarding the provision of adequate assurances pursuant to 11 U.S.C. §366 with the following utility providers: (a) the Los Angeles Department of Water and Power ("LADWP"); (b) Preferred Septic and Disposal; (c) Eastern Sierra Propane; (d) Thomas Petroleum; (e) California Broadband; (f) ATI Medical Waste Management; (g) the County of Inyo Town and Water Systems; and (h) Bishop Welding. The Court subsequently entered orders approving the foregoing stipulations.

**E.**    **Executory Contracts/Unexpired Leases**

**1.**    **BETA Risk Management Authority**

On or about March 17, 2016, SIHD and BETA Risk Management Authority ("BETA") entered into a stipulation to assume certain insurance agreements by and between SIHD and BETA. On or about March 22, 2016, the Court entered an order approving the stipulation between SIHD and BETA and the assumption of the subject agreements.

**2.**    **Everbank Commercial Finance, Inc.**

SIHD rejected an unexpired lease/executory contract with Everbank Commercial Finance, Inc. ("Everbank") for certain medical equipment (the "Everbank Agreement"). Following the rejection of the Everbank Agreement, SIHD agreed to purchase the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

equipment subject thereto. On or about March 7, 2017, SIHD filed a motion seeking approval of the settlement and mutual release agreement (the "Settlement Agreement") by and between SIHD and Everbank pursuant to Rule 9019 of Federal Rule of Bankruptcy Procedure, which the Court approved by entry of an order on or about March 22, 2017. In sum, SIHD agreed to pay Everbank the sum of One Hundred Fifty Thousand Dollars ($150,000.00) in exchange for the withdrawal of proof of claim no. 43-1 filed by Everbank in the Bankruptcy Case (the "Everbank POC"), and a release and/or transfer, as applicable, from Everbank to SIHD of any and all right(s), title and interest in various medical equipment that was the subject of the Everbank Agreement. The Settlement Agreement also provided for mutual and general releases by and between SIHD and Everbank. SIHD has paid the amounts due under the Settlement Agreement, and title to the medical equipment has been transferred to SIHD. In addition, on or about June 14, 2017, Everbank withdrew the Everbank POC.

### 3. Healthcare Conglomerate Associates, LLC

On or about January 2, 2016, SIHD entered into a management agreement with Healthcare Conglomerate Associates, LLC ("HCCA") (the "HCCA Management Agreement"). On or about October 17, 2017, SIHD filed an Emergency Motion (1) For Authority to Immediately Terminate the HCCA Management Agreement Or, In The Alternative, For Authority To Modify The Terms Of The HCCA Management Agreement In Order To Designate The Board As The Sole Signatory On All District Bank Accounts And (2) To Continue Hearing On Second Amended Disclosure Statement And Associated Filing Deadlines (the "HCCA Termination Motion"). On or about October 23, 2017, the Court entered an order granting the HCCA Termination Motion in part (the "HCCA Termination Order"). More specifically, the HCCA Termination Order authorized SIHD to remove HCCA as the signatory from any and all bank accounts containing SIHD funds, and instructed SIHD to file a supplemental brief addressing, among other issues, whether the HCCA Management Agreement constituted an executory contract within the meaning

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

of 11 U.S.C. §365. On or about November 15, 2017, SIHD filed[2] a supplemental brief in support of the HCCA Termination Motion. On or about November 22, 2017, SIHD filed a Notice of Settlement resolving the issues raised by and through the HCCA Termination Motion ("HCCA Termination Settlement"). Among other things, the HCCA Termination Settlement provided for the rejection of the HCCA Management Agreement, and set the deadline for HCCA to file a claim as January 31, 2018 (the "HCCA Bar Date").

**F.      Relief from Stay**

On or about March 29, 2016, J.M.H., II, a minor, moved for relief from stay to proceed with pending litigation relating to alleged medical malpractice and recover any judgment resulting from such litigation from any insurance coverage. Thereafter, SIHD entered into a stipulation to grant J.M.H., II, relief from the automatic stay to proceed with the pending litigation and seek to recover any judgment from any insurance coverage. The Court entered an order approving the stipulation on or about April 15, 2016.

On or about June 7, 2016, Everbank filed a motion for relief from the automatic stay in order to record a UCC-3 financing statement indicating the assignment of a security interest in certain medical equipment utilized by the hospital. The motion also requested that the Court set a deadline by which SIHD had to either assume or reject the Everbank Agreement. SIHD opposed the motion and, more specifically, the characterization of the agreement as an unexpired lease or executory contract. The Court ultimately granted in part and denied in part Everbank's motion and set a deadline for SIHD to assume or reject the Everbank Agreement. As noted above, the Debtor rejected the Everbank Agreement and, thereafter, Everbank and the Debtor entered into the Settlement Agreement.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

---

[2] In response to allegations of purported conflict of interest asserted by NCCA against Baker Hostetler, SIHJ retained Dentons LLP and The Shinbrot Firm as special counsel.

**G.    Case Administration**

      **1.    Licensure**

On or about March 1, 2016, the California Department of Public Health (the "CDPH") reinstated SIHD's license to operate the hospital. Following the reinstatement of the license, SIHD commenced operations at the hospital and the associated clinic and skilled nursing facility.

      **2.    Termination of HCCA/Imposition of New Management**

Immediately prior to the filing of the Petition, SIHD entered into the HCCA Management Agreement pursuant to which HCCA, among other things, was charged with managing the operations of the Debtor. Following the termination of the HCCA Management Agreement (as further detailed below), the Debtor hired Jerrel Tucker ("Mr. Tucker") as the new Chief Financial Officer ("CFO") and Brian Cotter ("Mr. Cotter") as the new Chief Executive Officer.  The Board has recently appointed a new interim CEO who will be working on expanding services in order to increase revenue and, in fact, revenue has already started to increase.

      **3.    Financial Advisory Firm**

The Debtor had previously engaged a financial advisory firm, Force10 Partners, LLC, which had assisted and may further assist with the analysis of the data and creation of financial projections in furtherance of the amended plan(s) and disclosure statement(s) which are to be filed.

The Debtor is also retaining Hahn Fife & Company LLP, an accounting firm, to develop the final financial projections for the plan.

**H.    Claims Administration**

Pursuant to the Order Granting Motion to Set Claims Bar Date Pursuant to Fed. R. Bankr. P. 3003(c)(3) entered by the Court on or about August 16, 2016, the Court set September 30, 2016 as the deadline by which to file claims.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

### 1. Tulare Regional Medical Center

On or about November 6, 2017, Tulare Regional Medical Center ("TRMC") filed an Administrative Expense Claim in which it asserted it was entitled to an administrative claim in which it asserted a claim in an amount exceeding $2,500,000 which was entitled to administrative priority (the "TRMC Claim" or the "TRMC Claim Request"). There have been protracted settlement discussions but no resolution of the TRMC Claim Request has yet been reached. On or about July 8, 2019, the Debtor filed an objection to the TRMC Claim Request which has been set for August 28, 2019. The parties will continue to engage in good faith settlement discussions prior to the hearing. As TRMC has already that the TRMC Claim shall be treated as a general unsecured claim, the primary issue remaining to be resolved is the determination of the amount of that claim.

### 2. Healthcare Conglomerate Associates, LLC

On or about January 30, 2018, HCCA filed a Request For Payment Of Administrative Expense Claim of Healthcare Conglomerate Associates, LLC Arising Out Of Rejection Of Executory Contract (11 U.S.C. §§503(b) and 507(a)(2)) (the "HCCA Administrative Claim Request"), in which HCCA asserted a claim with purported administrative priority in the amount of $2,524,054.00 for damages arising from the rejection of the HCCA Management Agreement (the "HCCA Claim"). On or about February 23, 2018, SIHD filed an opposition to the HCCA Administrative Claim Request. On or about February 26, 2018, the Court issued a memorandum informing HCCA that it would not take any action with respect to the HCCA Administrative Claim Request unless and until HCCA complied with the notice and hearing requirement set forth in 11 USC §503(b). To date, HCCA has not yet complied with 11 USC §503(b), and has made no effort otherwise to have the matter brought for hearing before the Court, and thus the matter remains unresolved. However, HCCA and Vi (defined below), on the one hand, and the District on the other hand, have agreed to a mediation date of August 15, 2019 (the "HCCA Mediation"), with Judge Newsome as the mediator at which these parties will seek to resolve issues relating to the HCCA Claim and issues related thereto as described

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  in detail below.  In the event that the mediation is unsuccessful, the District will file a

2  motion to estimate the HCCA Claim for voting and distribution purposes no later than

3  September 1, 2019, unless the HCCA Mediation has been continued to a date certain that

4  is beyond September 1, 2019.

5       **I.       Pending and Prior Litigation**

6            **1.       The Anderson, Craneware and Perez Litigation**

7            As of the commencement of the Bankruptcy Case, the Debtor was party to certain

8  lawsuits, including the following: Perez v. Kibler, et al., case no. SICV CV 1457395,

9  pending in the California Superior Court for the County of Inyo (the "Perez Litigation");

10  Anderson v. Southern Inyo Healthcare District, case no. 30-2015-00817277-CL-CL-CJC

11  (the "Anderson Litigation"); and Craneware, Inc. v. Southern Inyo Healthcare District,

12  15CV04309, pending in the District Court of Johnson County, Kansas (the "Craneware

13  Litigation").

14            On or about February 1, 2016, the Anderson Litigation was dismissed.

15            On or about March 30, 2016, the Debtor removed the Craneware Litigation to this

16  Court.  On or about August 29, 2016, the Court dismissed the Craneware Litigation for

17  failure to prosecute. On or about January 27, 2017, the underlying state court action was

18  dismissed without prejudice.

19            Based on the nature of the Perez Litigation, the Debtor did not remove that action.

20            **2.       The California Department of Public Health Litigation**

21            In addition to the actions pending on the petition date, on or about January 13,

22  2016, the Debtor filed a complaint against the CDPH and Karen Smith—thereby

23  commencing the adversary proceeding styled Southern Inyo Healthcare District v.

24  California Department of Public Health, et al., adv. no. 2016-01008 (the "CDPH

25  Adversary"). By and through the CDPH Adversary, the Debtor sought a determination that

26  the suspension or revocation of the Debtor's hospital licensure violated the automatic

27  stay. Following the reinstatement of SIHD's licenses, the Debtor and the defendants in the

28  CDPH Adversary reached an agreement to dismiss the CDPH Adversary without

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

prejudice. On or about March 9, 2016, SIHD filed a stipulation to dismiss the CDPH

Adversary without prejudice, which the Court approved by order entered on or about

March 10, 2016.

### 3.      The Optum Bank Litigation

On or about August 15, 2017, the Debtor filed a complaint seeking to disallow the

purported secured claim (the "Optum Claim") asserted by Optum Bank, Inc. ("Optum") and

invalidate any and all security interest(s) and set aside any and all liens associated

therewith (the "Optum Complaint"). The resulting adversary proceeding is styled Southern

Inyo Healthcare District v. Optum Bank, Inc., adv. no. 2017-01077 FEC (the "Optum

Adversary").

On or about October 27, 2017, Optum filed an answer and counterclaim to the

Optum Complaint (the "Counterclaim"). On or about March 20, 2018, the Debtor filed an

answer to the Counterclaim (the "Optum Answer"). On or about April 5, 2018, the Court

entered an order setting various dates and deadlines related to the Optum Adversary.

After completion of comprehensive discovery (both written and depositions) by both the

District and Optum, both the District and Optum filed competing motions for summary

judgment (the "Optum Summary Judgment Motions") which were heard on May 22, 2019,

following which the Court took the matters under submission.  Pending on the manner in

which the Court rules on the Optum Summary Judgment Motions, the District will either

continue to prepare for trial in the Optum Adversary and/or move for enforcement of any

judgment thereon.

### 4.      The HCCA/VI Healthcare Litigation

The District retained The Shinbrot Firm to prepare and file a complaint against

HCCA and related entities which was done on or about May 30, 2018, and commenced

the adversary proceeding styled Southern Inyo Healthcare District v. Healthcare

Conglomerate Associates, LLC, et. al. adv. no. 2018-01031 FEC (the "HCCA Complaint")

(the "HCCA Adversary"). The HCCA Complaint contained numerous claims for relief

against HCCA and a related entity, VI Healthcare Finance, Inc. ("Vi"), and asserted claims

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

including, but not limited to, claims relating to violations of California's False Claims Act, violation of California's Government Code, Breach of Fiduciary Duty and other business torts. On or about June 29, 2018, HCCA and Vi filed their answer to the HCCA Complaint.

The parties have from time to time sought to continue the status conference in the HCCA Adversary, and it is currently continued to October 16, 2019. The Court has indicated there will be no further continuances. Amongst other things, the stipulation ensured that the property tax payments have been segregated and shall not be remitted to HCCA pending the outcome.

As highlighted above, the parties are working diligently to prepare for the upcoming mediation which the parties are hopeful will resolve not only the issues related to the HCCA Adversary but those relating to the HCCA Claim.

All parties have stated that mediation of the HCCA Adversary is appropriate and have discussed potential dates for a multi-party mediation that will resolve a host of issues. The District and the defendants to said adversary have agreed to a mediation date of August 15, 2019 in front of the Honorable Randall J. Newsome as mediator.

### 5.    Avoidance Action Litigation

The result of the five preference actions is as follows. On July 12, 2018, the District filed an adversary proceeding against Healthcare Resource Group, Inc. for recovery of preference payments, commencing adv. no. 18-01043 ("Healthcare Resource Adversary"). On December 19, 2018, the District moved to dismiss the Healthcare Resource Adversary pursuant to a settlement which provided for the payment of $5,625.00 to the District.

On July 12, 2018, the District additionally filed an adversary proceeding against Coast to Coast Healthcare Services, Inc., for recovery of preference payments, commencing adv. no. 18-01044 ("Coast to Coast Adversary"). On October 1, 2018, the District filed a Notice of Withdrawal and dismissed the Cost to Coast Adversary.

On July 12, 2018, the District additionally filed an adversary proceeding against Healthland Inc., for recovery of preference payments, commencing adv. no. 18-01045

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   ("Healthland Adversary"). On December 19, 2018, the District moved to dismiss the

2   Healthland Adversary pursuant to a settlement which provided for the dismissal of the

3   Healthland Adversary on the one hand, and the claims asserted by Healthland Inc. shall

4   not be allowed. Although Healthland Inc. had not filed proofs of claim, Healthland's pre-

5   petition claim had been scheduled in the District's Schedule F.

6          On July 12, 2018, the District additionally filed an adversary proceeding against

7   Optum Bank, Inc., for recovery of preference payments, commencing adv. no. 18-01046

8   ("Optum Preference Adversary"). The Optum Preference Adversary is currently pending.

9          On July 12, 2018, the District additionally filed an adversary proceeding against

10  Premier Emergency Physicians of California Medial Group, for recovery of preference

11  payments, commencing adv. no. 18-01046 ("Premier Adversary"). On March 20, 2019, the

12  District filed a Motion to Dismiss the Premier Adversary pursuant to a settlement which

13  provided for the payment of approximately $55,000 to the District as well as cancellation

14  of a debt/withdrawal of a claim of approximately $500,000.

15          **6.    The District's Claim in the TRMC Bankruptcy Proceeding**

16          The District has also filed a proof of claim in the TRMC chapter 9 bankruptcy case.

17  Such claim has been objected to by TRMC.  The District has filed a response to TRMC's

18  objection to claim and has set the matter for hearing.

19  **II.    MEDIATION**

20          Except as identified above with respect to the HCCA Adversary and the HCCA

21  Claim, the Debtor is unaware of any matters to be mediated at this time.

22  **III.   SECTION 923 NOTICE**

23          On or about February 12, 2016, SIHD filed the Debtor's Motion for Entry of an

24  Order (1) Approving Form of Notice, and (2) Setting Deadline for Filing Objections to

25  Petition. On or about March 15, 2016, the Court entered an order approving the motion

26  and proposed manner in which to provide notice via publication in accordance with 11

27  U.S.C. §923. The Debtor timely completed all publications required under the order.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1226734.1                              16                              STATUS REPORT

## IV.    PLAN OF READJUSTMENT

On or about January 27, 2017, the Court entered the Order Granting Ex Parte Motion to Continue Deadline to File Plan of Adjustment. Through that order, the Court extended the deadline to file a plan for the adjustment of debts from January 31, 2017 through and including March 31, 2017.

On or about March 31, 2017, the Debtor filed the Plan for the Adjustment of Debts of Southern Inyo Healthcare District (the "Initial Plan"), the Disclosure Statement with Respect to the Plan for the Adjustment of Debts of Southern Inyo Healthcare District (the "Initial Disclosure Statement"), and other related and supporting documents.

Following the hearing on the adequacy of the Initial Disclosure Statement, the Court disapproved the Initial Disclosure Statement in order to enable the Debtor to make certain modifications thereto, including modifications relating to Optum and the Optum Claim. The Court also set the hearing on the adequacy of the amended disclosure statement for August 30, 2017, and directed the Debtor to file its amended plan and disclosure statement.

On or about July 20, 2017, the Debtor filed the First Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District (the "First Amended Plan"), the First Amended Disclosure Statement with Respect to the Plan for the Adjustment of Debts of Southern Inyo Healthcare District (the "First Amended Disclosure Statement"), and other related and supporting documents.

After filing the First Amended Plan and the First Amended Disclosure Statement, the Debtor engaged in discussions with several creditors, including Optum, regarding the First Amended Plan and the treatment of certain claims and contracts thereunder. As a result of these discussions, the Debtor was able to resolve certain disputes pertaining to the First Amended Plan and/or the First Amended Disclosure Statement. Among these, the Debtor and Optum reached an agreement in principle through which the Debtor agreed to allow Optum to vote on the Plan despite the disputed status of the Optum Claim.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

On or about January 17, 2018, the Debtor filed the Second Amended Plan (the "Second Amended Plan") and the Second Amended Disclosure Statement with Respect to the Plan for the Adjustment of Debts of Southern Inyo Healthcare District (the "Second Amended Disclosure Statement"), and other related and supporting documents. Similar to the previous iterations of the plan and disclosure statement, the Second Amended Plan and the Second Amended Disclosure Statement provided for the adjustment of the Debtor's operations and the repayment of its obligations with operational revenues. The Second Amended Disclosure Statement also included additional detail regarding the treatment of the Optum Claim in order to address the objections raised by Optum and comments expressed by the Court with respect to the previous versions of the plan and disclosure statement. On or about February 28, 2018, at the hearing to approve the adequacy of the Second Amended Disclosure Statement, the Debtor withdrew the Second Amended Disclosure Statement given, among other things, the significant change in circumstances that had occurred since the filing thereof.

On April 11, 2019, the Court issued the Order to Show Cause Regarding Dismissal ("OSC") [Dkt. 606] which is set for hearing on July 24, 2019.  The Debtor timely filed its response, amended response, and declaration of Jacque Hickman on June 10, 11 and 17, 2019, respectively (collectively, the "OSC Response").  No parties in interest have filed any pleadings in support of the OSC.  As set forth in the OSC Response, the Debtor expects to be in a position to file an amended Plan of Readjustment and Disclosure Statement (the "Amended Plan") in approximately 60 days.  New counsel for the District has only been involved in the case for approximately three months, and has been working with the District to finalize an Amended Plan that will not require either further amendment or resolicitation of any disclosure statement that is approved.  Such formulation includes but is not limited to securing additional sources of funding and resolving various litigation that will affect the assets available from the Amended Plan and the liabilities to be paid through the Plan.  Counsel has additionally been diligently working toward concluding the outstanding litigation that will affect a new Plan of Readjustment. With the conclusion of

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

litigation, and with the influx of additional sources of revenue, a confirmable Plan of Readjustment will be filed shortly.

**V.    POTENTIAL FUNDING SOURCES**

In response to a study conducted by Inyo County regarding health care services needed within the community, the District has identified a number of potential services to be provided which would also serve as additional revenue sources in order to help fund the Amended Plan including but not limited to infusion therapy.  The actual revenue likely to be generated on account of such services is currently being evaluated by Hahn Fife in anticipation of including same in the Amended Plan.

The District has recently contracted with an interim administrator and the District is confident that his focus on increasing revenue, cross-training employees in order to decrease overtime costs and payroll obligations, the provision of new services and a focus on a positive public relations message will provide renewed confidence in the view of both the creditors and the community.

The District proposed an increase in the parcel tax which was put on the ballot in 2018. Although the voting was 57% in favor and 43% against, the measure did not pass as it required two thirds (2/3) approval. Give the progress since then with respect to both the bankruptcy and operations, the District is confident that a similar measure is more likely to be approved and is currently evaluating whether to include a similar measure on the upcoming ballot.

The District continues to engage in discussions for potential funding from the Los Angeles Department of Water and Power ("LADWP") as LADWP is the largest employer in Southern Inyo.  LADWP has a vested interest in ensuring that its employees continue to have access to vital health care services and to this end is considering whether certain funds can be allocated for this purpose.

The District is evaluating whether to participate in a grant program, likely to be available in the fall of 2019, which is offered by the Great Basin Pollution Control District which will provide grants to entities that implement capital improvements aimed at

reducing pollution and improving air quality, such as new generator, roofing, HVAC systems, and patient transportation van. This grant program is expected to be available in the fall of 2019. Having these much needed facility improvements secured through grant funding allows increase revenues to be used for operations.

The District continues to evaluate all potential sources of revenue and the District CFO continues to work aggressively to ensure that expenses are minimized and revenues are maximized. Amongst other things, the CFO is investing in the Local Agency Investment Fund (LAIF), a fund which enables districts such as the District to invest using the expertise of the State Treasurer and at no additional expense to the taxpayer. In the last fiscal year approximately $370,000 was invested in the LAIF and the CFO projects that approximately $250,000 will be invested in the LAIF in the current fiscal year.

The District's participation with respect to supplemental funding opportunities and programs, including but not limited to, intergovernmental transfers and the PRIME program, continues to increase. As intergovernmental transfers ("IGT") require the District to advance public funds in order to receive a 2-1 return on those funds, the District has developed a positive relationship with the Inyo County Treasury Funds Committee which has advanced to the District funds on a short-term basis in order to enable the District to participate in these programs. In fact, to this end, at the Board meeting on June 18, 2019, the Board approved Amended Resolution 19-6 which allows the District to borrow up to $1 million, as needed, for funds to be utilized for IGT funding for the fiscal year of July 1, 2019 to June 30, 2020.

## VI.    CONCLUSION

The community-at-large (a number of which are creditors of the Debtor) continues to support the efforts of the Debtor to provide quality healthcare to the surrounding population. Not only is it the only hospital in a 135 mile stretch of Highway 395, it also provides exceptional skilled nursing care for as many as 33 residents. In addition to the invaluable health and safety benefits provided by the Debtor, the Debtor also employs over ninety (90) people who would be unemployed if SIHD was forced to close its doors.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

The significant impact that such a closure would have on the entire community would be devastating, as it would represent a loss of almost two million dollars ($2,000,000) in annual payroll, much of which is spent in the Eastern Sierra.

Given the significant improvement in the financial condition of the Debtor that has occurred since the termination of the HCCA Management Agreement, and the myriad options being diligently explored, the Debtor is confident that it will not only be able to satisfy its obligations under the Amended Plan to be filed, but that it will be able to continue to provide and improve the level of healthcare so desperately needed by Southern Inyo and the surrounding communities.

Respectfully submitted,

Dated:  July 22, 2019                    WEILAND GOLDEN GOODRICH LLP


By:     _/s/Jeffrey Golden_____
              Jeffrey I. Golden
         Attorneys for Debtor Southern Inyo
         Healthcare District

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1226734.1                              21                          STATUS REPORT