1  **WEILAND GOLDEN GOODRICH LLP**
   Jeffrey I. Golden, State Bar No. 133040
2  jgolden@wgllp.com
   Ryan W. Beall, State Bar No. 313774
3  rbeall@wgllp.com
   650 Town Center Drive, Suite 600
4  Costa Mesa, California 92626
   Telephone     714-966-1000
5  Facsimile     714-966-1002

6  Attorneys for Debtor
   SOUTHERN INYO HEALTHCARE DISTRICT
7

8                **UNITED STATES BANKRUPTCY COURT**

9                **EASTERN DISTRICT OF CALIFORNIA**

10                    **SACRAMENTO DIVISION**

11  In re                                    Case No. 1:16-bk-10015-FEC

12  SOUTHERN INYO HEALTHCARE           Chapter 9
    DISTRICT,
13
                                       WGG-6
            Debtor.
14

15                                     **THIRD AMENDED DISCLOSURE
                                       STATEMENT WITH RESPECT TO THE
16                                     PLAN FOR THE ADJUSTMENT OF
                                       DEBTS OF SOUTHERN INYO
17                                     HEALTHCARE DISTRICT**

18
                                       Hearing
19                                     Date:     January 7, 2020
                                       Time:     9:00 a.m.
20                                     Place:    501 I. Street
                                                 Sacramento, CA 95814
21                                               Courtroom 28

22

23

24

25

26

27

28

*Weiland Golden Goodrich LLP*
*650 Town Center Drive, Suite 600*
*Costa Mesa, California 92626*
*Tel 714-966-1000   Fax 714-966-1002*

1243409.1

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3
I.      SUMMARY ...................................................................................................3

4
II.     INTRODUCTION.........................................................................................11

5
        A.      Plan of Adjustment Under Chapter 9.........................................11

6
        B.      Purpose of the Disclosure Statement .......................................13

7
        C.      Summary of Entities Entitled to Vote to Accept or Reject the
                Plan and Certain Prerequisites to Confirming the Plan ...........14
8

9
        D.      Summary of Voting Procedures, balloting Deadline,
                Confirmation Hearing, and Other Dates, Deadlines, and
                Procedures ...............................................................................15
10

11
                1.      Voting Procedures and Deadlines ..................................15

12
                2.      Date of Confirmation hearing and Deadline for Objecting
                        to Confirmation of the Plan ...........................................15

13
        E.      General Notices and Disclaimers ..............................................16

14
        F.      Additional Information................................................................17

15
III.    BACKGROUND INFORMATION ...............................................................18

16
        A.      The District ...............................................................................18

17
        B.      Events Precipitating Bankruptcy ...............................................18

18
                1.      Historical Financial Issues .............................................18

19
                2.      Breakdown of Operations Due to Cash Shortage...........20

20
                3.      Appointment and Actions of New Board of Directors......21

21
IV.     COMMENCEMENT AND ADMINISTRATION OF CHAPTER 9 CASE.............24

22
        A.      Commencement of the Chapter 9 Case ....................................24

23
        B.      Immediate Actions to Stabilize Operations and Revenue
                Deficits.....................................................................................24
24

25
        C.      Eligibility Litigation ...................................................................24

        D.      Appointment of Patient Care Ombudsman ................................25
26

        E.      Disputes Pertaining to Claims Against the District.....................25
27

        F.      Pending Litigation.....................................................................28

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1243409.2                                i                        THIRD AMENDED DISCLOSURE
                                                                  STATEMENT

**TABLE OF CONTENTS (cont.)**

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Page

G. Post-Petition Financing ................................................................30

V. THE DISTRICT'S LIABILITIES AND ASSETS ....................................31

A. Liabilities.............................................................................32

1. Summary of Scheduled Claims .................................32

2. Proofs of Claim ........................................................32

3. Alterations to Liability under the Plan.......................34

a. Alteration of Claims......................................34

b. Disputed Claims ..........................................36

(1) Optum Claim ..................................36

(2) ViHF Claim ....................................37

4. Summary of Current Liabilities.................................38

5. Statement Regarding Liabilities ...............................39

B. Assets.................................................................................39

1. Additional Medical Services and Treatment.............40

a. Integration of New Services .........................40

b. Recapture of Services..................................41

c. Partnering with Other Providers and Hospitals ...................42

2. Revamping Existing Services ...................................42

a. The IP/IT Platform Upgrade .........................43

b. Physical Therapy .........................................44

c. New Productivity Models...............................44

3. Reducing Expenses..................................................45

4. Additional Sources of Revenue ................................45

a. Federal Funding...........................................45

b. Los Angeles Department of Water and Power ...................46

c. Great Basin Air Pollution Control District .............................46

**TABLE OF CONTENTS (cont.)**

**Page**

      d.   Toiyabe Project ................................................................... 47

   5.   Claims and Causes of Action Against Third Parties ........................ 47

      a.   Potential Claims and Causes of Action ................................. 47

         (1)   HCCA Claim ................................................................ 47

         (2)   ViHF Adversary ........................................................... 48

         (3)   Avoidance Actions ....................................................... 48

VI.   SUMMARY OF THE PLAN OF ADJUSTMENT ................................................ 49

   A.   Classification and Treatment of Claims ................................................. 50

      1.   Unclassified Claims ......................................................................... 51

        a.   Administrative Expense Claims............................................ 51

        b.   Professional Claims ............................................................ 51

        c.   Deadline for the Filing and Assertion of Postpetition Claims, Administrative Claims, and Professional Claims ............................................................ 53

      2.   Class 1 – Secured Claims ............................................................. 53

        a.   Class 1A – Action Capital Corporation ................................ 53

         (1)   Impairment and Voting ............................................... 53

         (2)   Treatment ................................................................... 53

        b.   Class 1B – Bank of the West/Thermo Fisher Financial Services, Inc ......................................................... 54

         (1)   Impairment and Voting ............................................... 54

         (2)   Treatment ................................................................... 54

        c.   Class 1C – Canon Financial Services, Inc ........................... 54

         (1)   Impairment and Voting ............................................... 55

         (2)   Treatment ................................................................... 55

        d.   Class 1D – Cardinal Health 110, LLC .................................. 55

         (1)   Impairment and Voting ............................................... 55

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

(2) Treatment ................................................................ 55

e. Class 1E – Optum Bank, Inc .................................. 55

(1) Impairment and Voting ............................... 56

(2) Treatment ............................................... 56

f. Class 1F – Vi Healthcare Finance, Inc .................... 57

(1) Impairment and Voting ............................... 57

(2) Treatment ............................................... 57

a. Class 1G – Leasing Associates of Barrington .......... 58

(1) Impairment and Voting ............................... 58

(2) Treatment ............................................... 58

b. Class 1H – General Electric Healthcare Financial Services ................................................................ 58

(1) Impairment and Voting ............................... 58

(2) Treatment ............................................... 58

3. Class 2 – Post-Petition Contracts Not Terminated ................. 58

a. Impairment and Voting .......................................... 58

b. Treatment ............................................................ 59

4. Class 3 – Terminated Post-Petition Contract Claims .............. 59

a. Impairment and Voting .......................................... 59

b. Treatment ............................................................ 59

c. Class 5 Election .................................................... 59

5. Class 4 – General Unsecured Claims ................................... 59

a. Impairment and Voting .......................................... 60

b. Treatment ............................................................ 60

c. Class 5 Election .................................................... 60

6. Class 5 – Convenience Claims ........................................... 60

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# **TABLE OF CONTENTS (cont.)**

Page

a.　Impairment and Voting ........................................................60

b.　Treatment...........................................................................60

B.　Treatment of Executory Contracts and Unexpired Leases ........................61

　　1.　Generally ...........................................................................61

　　2.　Assumption of Executory Contracts and Unexpired
　　　　Leases ..............................................................................61

　　　　a.　Cure Payments .............................................................61

　　　　b.　Adequate Assurance of Prompt Cure and Future
　　　　　　Performance ...........................................................62

　　3.　Rejection of Executory Contracts and Unexpired Leases..............63

　　　　a.　Claims Arising from Rejection ...............................65

C.　Means for Execution and Implementation of Plan .......................................65

D.　Distributions...............................................................................................67

　　1.　Disbursing Agent ...............................................................67

　　2.　Delivery of Distributions .....................................................67

　　3.　Undeliverable Distributions .................................................68

　　4.　Distribution of Cash ...........................................................68

　　5.　Timeliness of Payments......................................................68

　　6.　Default and Cure................................................................69

　　7.　Compliance with Tax Requirements ....................................69

　　8.　Time Bar to Cash Payments ...............................................70

　　9.　No De Minimis Distributions................................................70

　　10.　No Distributions on Account of Disputed Claims ...............70

　　11.　No Post-Petition Date Accrual ..........................................71

E.　Disputed Claims ........................................................................................71

　　1.　Claim Objection Deadline ...................................................71

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

**TABLE OF CONTENTS (cont.)**

Page

2. Reserves, Payments, and Distributions with Respect to Disputed Claims...............................................................................71

F. Continuing Jurisdiction of the Bankruptcy Court........................................72

VII. CONFIRMATION AND EFFECTIVE DATE OF THE PLAN ................72

A. Voting and Right to be Heard at Confirmation...........................................72

1. Who May Support or Object to Confirmation of the Plan? ...............................................................................................72

2. Who May Vote to Accept or Reject the Plan....................................73

3. Votes Required to Confirm Plan .......................................................73

B. The "Best Interests" Test.............................................................................73

C. Feasibility ....................................................................................................75

D. "Cramdown" .................................................................................................75

E. Conditions Precedent ..................................................................................76

1. Condition Precedent to Confirmation................................................76

2. Conditions Precedent to Effective Date ...........................................76

3. Non-Occurrence of Effective Date ....................................................76

4. Waiver of Conditions Precedent to Effective Date ...........................77

F. Effect of Confirmation..................................................................................77

1. Dissolution of the Committee.............................................................77

2. Discharge of the District....................................................................77

3. Injunction ..........................................................................................78

4. Term of Existing Injunctions and Stays.............................................78

5. Exculpation .......................................................................................78

6. Good Faith Compromise....................................................................79

VIII. RESERVATION OF RIGHTS OF ACTION ...........................................79

IX. RISK FACTORS....................................................................................80

X. FEDERAL INCOME TAX CONSEQUENCES........................................82

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**TABLE OF CONTENTS (cont.)**

2                                                                                            **Page**

3   XI.   RECOMMENDATION AND CONCLUSION ..........................................................83

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1243409.2

THIRD AMENDED DISCLOSURE
STATEMENT

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re City of Detroit, Mich.*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................................ 12

*In re City of Stockton, Cal.*,
   542 B.R. 261 (9th Cir. B.A.P. 2015) ..................................................................... 12

*In re City of Vallejo*,
   2009 WL 9085533 (Bankr. E.D. Cal. 2009) ......................................................... 12

*In re Financial Oversight and Management Board for Puerto Rico*,
   931 F.3d 111 (1st Cir. 2019) ................................................................................ 12

*In re Mount Carbon Metro. Dist.*,
   242 B.R. 18 (Bankr. D. Colo. 1999)...................................................................... 13

*In re S. Humboldt Cmty. Healthcare Dist.*,
   254 B.R. 758 (Bankr. N.D. Cal. 2000) ............................................................ 36, 37

*In re Stockton, California*,
   499 B.R. 802 (Bankr. E.D. Cal. 2013) .................................................................. 12

*Mayrhofer v. Board of Education of the City of San Diego, et al.*,
   89 Cal. 110 (Cal. 1891) ........................................................................................ 37

## Statutes

11 U.S.C. § 101(31)(D) ................................................................................................ 14

11 U.S.C. § 105 ........................................................................................................... 78

11 U.S.C. § 362 ........................................................................................................... 78

11 U.S.C. § 365 ........................................................................................................... 62

11 U.S.C. § 502 ........................................................................................................... 39

11 U.S.C. § 502(c) ....................................................................................................... 57

11 U.S.C. § 503(b) ....................................................................................................... 27

11 U.S.C. § 507(a)(2) ................................................................................................... 27

11 U.S.C. § 510(c) ....................................................................................................... 37

11 U.S.C. § 552 ........................................................................................................... 39

11 U.S.C. § 552(a) ....................................................................................................... 56

11 U.S.C. § 558 ........................................................................................................... 39

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

11 U.S.C. § 901(a) ................................................................................... 2

11 U.S.C. § 922 ...................................................................................... 78

11 U.S.C. § 943(b) ........................................................................... 75, 76

11 U.S.C. § 943(b)(3) .............................................................................. 51

11 U.S.C. § 943(b)(6) .............................................................................. 76

11 U.S.C. § 943(b)(7) ................................................................... 12, 73, 75

11 U.S.C. § 944 ............................................................................... 67, 77

11 U.S.C. § 1111(b) ................................................................................ 57

11 U.S.C. § 1125 .................................................................................... 11

11 U.S.C. § 1125(b) ................................................................................. 2

11 U.S.C. § 1129(a)(7) ............................................................................ 12

11 U.S.C. § 1129(b) ................................................................................ 14

11 U.S.C. § 1129(b)(1) ...................................................................... 75, 76

11 U.S.C. § 1129(b)(2)(A) ................................................................. 75, 76

11 U.S.C. § 1129(b)(2)(B) ................................................................. 75, 76

Cal. Gov't Code § 53760 ......................................................................... 79

Cal. Health & Safety Code § 32130.2 ................................................. 36, 37

**<u>Other Authorities</u>**

6 COLLIER ON BANKRUPTCY
    ¶ 943.03[7][a] (16th ed. 2017) ........................................................... 12

**CAVEAT**: The Bankruptcy Court has not yet approved the within disclosure statement pursuant to section 1125(b) of the Bankruptcy Code, as applicable pursuant to section 901(a) of the Bankruptcy Code, for use in the solicitation of vote with respect to the plan of adjustment of debts for Southern Inyo Healthcare District described herein. Accordingly, the filing and distribution of the within disclosure statement is not intended and should not be construed as a solicitation of acceptance or rejection of the plan of adjustment of debts described herein.

[This caveat shall be removed prior to solicitation]

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1243409.1

2

THIRD AMENDED DISCLOSURE STATEMENT

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

I.    **SUMMARY**

        The following section summarizes certain important aspects of the Third Amended Plan for the Adjustment of Debts for Southern Inyo Healthcare District (the "Plan"). These matters are discussed further elsewhere in the within Third Amended Disclosure Statement with Respect to the Plan for the Adjustment of Debts for Southern Inyo Healthcare District (the "Disclosure Statement"). Capitalized terms are defined in the text of this Disclosure Statement as well as the Plan, and any capitalized term used but not defined in the Disclosure Statement shall have the meaning ascribed to such term in the Plan. Unless otherwise noted, all references to "section _____" refer to the specified section of the Bankruptcy Code.

        **Please be aware** that the Disclosure Statement contains information that may be important to certain creditors or classes of creditors that is not set forth in this Summary and that such information may influence your decision regarding whether to accept or reject the Plan. Accordingly, please review the Disclosure Statement and Plan as well as the supporting documents in their entirety.

                                        * * * *

        Southern Inyo Healthcare District ("SIHD" or "Debtor" or "District") is a California Healthcare District. The District operates a hospital, skilled nursing facility, and medical clinic in Inyo County, California. The District was founded on July 5, 1949, and is a rural healthcare district that serves the community of Southern Inyo County, California.

        The District filed a petition for relief under chapter 9 of the Bankruptcy Code on January 4, 2016, which was designated Case Number 2016-10015. The United States Bankruptcy Court for the Eastern District of California, Fresno Division, the Honorable Fredrick E. Clement presiding, entered an order for relief in the Chapter 9 Case on July 12, 2016, as docket no. 195. The Chapter 9 Case currently is pending before the Bankruptcy Court.

The *Third Amended Plan for the Adjustment of Debts for Southern Inyo Healthcare District* proposed by the District involves the adjustment of the District's operations and the repayment of its obligations under the Plan with operational revenues, increased by the revamping of existing services, the adding of new services, and the reduction of expenses, as well as additional revenues derived from federal funding, grant funds, potential litigation recoveries, and additional funds as described herein. With the additional funds and revenues, the District will be able to maintain operations and repay its obligations pursuant to the Plan by December 2029. The Plan contemplates scenarios in which the District is successful on its litigation claims, and scenarios where the District is unsuccessful. While not all of the additional funding has yet been provided to the District, the District is in advanced negotiations with various entities, described herein, regarding additional sources of revenue, and is confident that such funds will begin to be provided to the District in short order. The District anticipates an effective date of the Plan in April 2020.

In the event the District is unable to adjust its debts pursuant to the Plan, or any amended or revised version thereof, the District will likely be unable to maintain operations and, as a result, will be forced to close the hospital, medical clinic, and skilled nursing facility, which would not only render the District unable to pay its obligations, it would leave the community without necessary medical services.

The following chart summarizes key information, including the proposed treatment of the various classes of claims:

| | |
|---|---|
| **Debtor** | Southern Inyo Healthcare District, a California Local Health Care District |
| **Bankruptcy Court** | United States Bankruptcy Court for the Eastern District of California, Sacramento Division The Honorable Fredrick E. Clement presiding |
| **Plan** | Third Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| | |
|---|---|
| **Purpose of Disclosure Statement** | To provide information of a kind, and in sufficient detail, that would enable a typical holder of Claims in a class Impaired under the Plan to make an informed judgment with respect to voting on the Plan. |
| **Balloting Information** | Ballots have been provided with this Disclosure Statement to creditors known to have Claims that are Impaired under the Plan. *See* Exhibit 1.[1] |
| | Ballots must be received by the Ballot Tabulator no later than ____ a.m./p.m., Pacific Time, on _____ , 2019[2] |
| **Ballot Tabulator** | Kelly Adele, Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California 92626; facsimile 714.966.1002; email kadele@wgllp.com) |
| **Confirmation Hearing** | The Court shall hold a hearing regarding the confirmation of the Plan on _____ , 2020, commencing at ____ a.m./p.m. Pacific Time. |
| **Confirmation Objections** | Any objections to confirmation of the Plan must be set forth in writing and filed and served no later than _____ , 2020. |
| **Treatment of Claims** | If the Court confirms the Plan and the Plan becomes effective, Claims will be treated as follows: |
| <u>Administrative Claims</u> | Administrative Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to their approved Administrative Claim. |
| <u>Professional Claims</u> | Holders of Professional Claims shall be treated as either Class 3 unsecured creditors with post petition contracts that have not been terminated or Class 4 General Unsecured Creditors unless the District in its sole authority determine a different treatment is appropriate. |

---

[1] All exhibits referenced herein are attached to the contemporaneously-filed Exhibits to Third Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare District, Disclosure Statement Relating Thereto, and the Declarations of Don Fife and Peter J. Spiers in Support Thereof (the "Plan Exhibits"). Unless otherwise stated, "Exhibit ____" refers to the specified exhibit appended to the Plan Exhibits.

[2] The District shall fill-in all missing information and incorporate all bracketed language contained herein prior to circulation of the final disclosure statement for solicitation.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1

5

THIRD AMENDED DISCLOSURE STATEMENT

| | |
|---|---|
| Class 1 Secured Claims | Claims in Class 1 are separated in to subclasses, which, in each instance, are treated as separate classes under the Plan. |
| Class 1A Action Capital Corporation | **Impaired**. Action Capital Corporation shall receive an allowed General Unsecured Claim in the amount of $185,600.35. |
| Class 1B Bank of the West/Thermo Fisher Financial Services, Inc. | **Impaired.** The District shall surrender to Bank of the West or Thermo Fisher Financial Services, Inc. the collateral for the underlying agreement. The remainder of the Class 1B claim shall be an unsecured claim entitled to distribution in Class 4. |
| Class 1C Canon Financial Services, Inc. | **Impaired.** The District shall surrender to Canon Financial Services, Inc. the collateral for the underlying agreement. The remainder of the Class 1C claim shall be an unsecured claim entitled to distribution in Class 4. |
| Class 1D Cardinal Health 110, LLC | **Unimpaired.** Cardinal Health 110, LLC shall be entitled to retain the funds presently in its possession, which total $838.28. The remainder of this Claim shall be allowed as a General Unsecured Claim. |
| Class 1E Optum Bank, Inc. | **Impaired**. Class 1E is comprised of the Disputed Claim of Optum. Class 1E shall not receive any distributions under the Plan unless and until a court of competent jurisdiction enters a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid, enforceable and secured in whole or in part, either in the personal property of the District or the real property of the District, or neither or both, the District shall pay Optum Cash in an amount equal to the portion of the Optum Claim allowed as a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, no |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE STATEMENT

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

later than one hundred and sixteen (116) months, with an interest rate of 3.25%, following the entry of a Final Order allowing the Optum Claim. If the Optum Claim is adjudged valid and enforceable but not wholly secured, the portion of the Optum Claim adjudged to be a Secured Claim, which may include interest and costs and expenses incurred by Optum in association with the underlying loan, to the extent permitted under the Optum loan agreement and allowed by the Court, shall be treated pursuant to the preceding sentence and any order(s) entered in the Optum Adversary and the remaining Allowed Claim shall be treated as an unsecured claim in Class 3. If the Optum Claim is adjudged invalid and unenforceable, Class 1E shall not receive any distributions under the Plan.

**Class 1F Vi Healthcare Finance Inc.**

**Impaired.** The treatment of Class 1F shall depend on the outcome of the ViHF Adversary and the Motion to Estimate Claims filed by the District. If the District succeeds in disallowing the ViHF Claim in its entirety, Class 1F shall not receive any distributions under the Plan. If the Bankruptcy Court allows the ViHF Claim as a subordinated claim and transfers any security interest(s) associated therewith to the District, the ViHF Claim shall be treated in a separate class of subordinated Claims—Class 6. Class 6 shall receive a distribution equal to three percent (3%) of the total claims in the Class, which shall be paid in a lump sum within one hundred and twenty (120) days after entry of an order subordinating the ViHF Claim. If the Bankruptcy Court allows the ViHF Claim as a Class 1F Claim, the District shall pay the Allowed Secured Claim of ViHF in full from the proceeds of the tax revenues on which ViHF's claim is secured with interest according to the contract provisions. If the Bankruptcy Court allows the ViHF Claim as an Administrative Claim, ViHF's Claim will

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| | | |
|---|---|---|
| | | be paid in its entirety within one hundred and twenty (120) days after entry of an order finding that ViHF's Claim is an Administrative Claim. |
| | Class 1G Leasing Associates of Barrington | **Impaired.** Class 1G is comprised of the Claim of LAB. Class 1G shall receive Cash in an amount equal to the secured claim of LAB, in the amount of $1,935.20, on the Effective Date or as soon thereafter as is practicable. |
| | Class 1H General Electric Healthcare Financial Services | **Impaired**. Class 1H is comprised of the claim of GE HFS. Class 1H shall receive monthly payments of Cash in a total amount equal to the secured claim of GE HFS, in the amount of $147,509.69, within eighty four (84) months following the Effective Date. |
| | Class 2 Post-Petition Contracts Not Terminated | **Impaired.** Holders of Class 2 Claims shall receive 12% of their allowed Class 2 Claims to be paid in equal monthly installments from the Effective Date through April 2027, according to each claimant's claim amount as specified in Exhibit 5. In addition to the foregoing distributions, holders of Class 2 Claims shall receive a pro rata portion of 25% of any recovery, net of fees, costs, and other administrative expenses associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof. Holders of Class 2 Claims shall have the ability to waive their entitlement to Class 2 treatment and, instead, elect to have their Claims treated as Class 5 Claims. See Section VI.A.5.c. |
| | Class 3 Post-Petition Contracts Terminated Prematurely | **Impaired**. Holders of Class 3 Claims shall receive 12% of their allowed Class 3 Claims to be paid in equal monthly installments from the Effective Date through April 2027, according to each claimant's claim amount as specified in Exhibit 6. In addition to the foregoing distributions, holders of Class 3 Claims shall receive a pro rata portion of 25% of any recovery, net of fees, costs, and other administrative expenses |

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof.

Holders of Class 3 Claims shall have the ability to waive their entitlement to Class 3 treatment and, instead, elect to have their Claims treated as Class 5 Claims. See Section VI.A.5.c.

| | |
|---|---|
| <u>Class 4 General Unsecured Claims</u> | **Impaired.** Holders of Class 4 Claims shall receive 12% of their allowed Class 4 Claims to be paid in equal monthly installments from the Effective Date through April 2027, according to each claimant's claim amount as specified in Exhibit 5. In addition to the foregoing distributions, holders of Class 4 Claims shall receive a pro rata portion of 25% of any recovery, net of fees, costs, and other administrative expenses associated therewith, from the proposed litigation against HCCA, which shall be paid no later than 120 calendar days following recovery thereof. Holders of Class 4 Claims shall have the ability to waive their entitlement to Class 4 treatment and, instead, elect to have their Claims treated as Class 5 Claims. See Section VI.A.5.c. |
| <u>Class 5 Convenience Class Claims</u> | **Impaired.** Holders of Class 5 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the lesser of (a) the amount of their Allowed Class 5 Claims or (b) $100.00. |
| **<u>Background Information</u>** | See pages 17 to 30. |
| **<u>Questions</u>** | Please contact the District's counsel, Jeffrey I. Golden, Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California, 92626 (telephone 714.966.1000; facsimile 714.966.1002), or Ryan W. Beall, Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California, 92626 (telephone 714.966.1000; facsimile 714.966.1002). |

1    **PLEASE NOTE**: **To the extent there is any inconsistency between the Plan**

2    **(including the Exhibits and any supplements to the Plan) and the description of the**

3    **Plan in the Disclosure Statement, the terms of the Plan (including the Exhibits and**

4    **any supplements to the Plan) will govern.**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE
STATEMENT

## II.     **INTRODUCTION**

The District filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California—thereby commencing the above-captioned bankruptcy case. On or about July 12, 2016, the Court entered an Order for Relief under chapter 9 of the Bankruptcy Code [Dkt. 195].

The District is the proponent of the Plan. During a hearing held on _____ , 2020, the Court found that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the District to transmit the Disclosure Statement and Plan to holders of Impaired claims in connection with the solicitation of votes on the Plan.

As discussed below, the District believes that adjusting its obligations pursuant to the Plan provides the best result for creditors. Without a Plan of Adjustment, there would be significant delay and/or reduced distributions to creditors, if any at all. Additionally, absent a Plan of Adjustment, Southern Inyo County will be left without access to the District for its needs. Therefore, the confirmation of a Plan of Adjustment is beneficial to both creditors, who will benefit from receiving payments from the operations of the District, and the community which needs the services provided by the District. Accordingly, the District encourages creditors to vote to accept the Plan.

### A.     **Plan of Adjustment Under Chapter 9**

Chapter 9 of the Bankruptcy Code deals exclusively with municipalities such as a healthcare district. A municipal debtor retains the authority to conduct its business and manage its affairs in the ordinary course on a day-to-day basis without Bankruptcy Court approval. Therefore, Chapter 9 offers an opportunity for a municipality such as the District to propose a plan for adjustment of its debts. Court approval in a Chapter 9 bankruptcy case is limited and required only for certain specific matters.

The filing of a Chapter 9 bankruptcy petition gives rise to an automatic stay which enjoins creditors from taking actions to collect or recover obligations owed by the municipal debtor prior to the commencement of the Chapter 9 case. In some cases, the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  automatic stay prohibits creditors from taking actions to collect or recover obligations

2  owed by the municipal debtor after the commencement of the Chapter 9 case, and prior to

3  confirmation of a Plan of Adjustment. *See In re Financial Oversight and Management*

4  *Board for Puerto Rico*, 931 F.3d 111 (1st Cir. 2019); *In re Stockton, California*, 499 B.R.

5  802 (Bankr. E.D. Cal. 2013); *In re City of Vallejo*, 2009 WL 9085533 (Bankr. E.D. Cal.

6  2009). The Bankruptcy Court can grant relief from the automatic stay under certain limited

7  conditions or for cause.

8         Chapter 9 bankruptcies differ significantly from Chapter 11 bankruptcies. Section

9  943(b)(7) requires that the proposed plan is "in the best interests of creditors and is

10  feasible." The "best interests of creditors" is not defined for purposes of Chapter 9. In

11  Chapter 11, the "best interests of creditors" requires that a Chapter 11 plan provides that

12  creditors will receive at least as much under the Chapter 11 plan as they would if the

13  debtor converted the case to Chapter 7 and had its estate liquidated.

14         However, in Chapter 9, courts refuse to apply the same definition of "best interests

15  of creditors" because § 1129(a)(7) is not incorporated into Chapter 9 and liquidation

16  cannot be compelled. *In re City of Stockton, Cal.*, 542 B.R. 261, 270 (9th Cir. B.A.P.

17  2015). Rather, the best interests of creditors test in a Chapter 9 plan requires that the

18  debtor pay creditors more than they would if the case were dismissed, and each creditor

19  attempted to assert its rights in a nonbankruptcy forum. 6 COLLIER ON BANKRUPTCY

20  ¶ 943.03[7][a] (16th ed. 2017); *In re City of Detroit, Mich.*, 524 B.R. 147, 213 (Bankr. E.D.

21  Mich. 2014) ("Courts generally agree that the best interests of creditors test in § 943(b)(7)

22  requires 'that a proposed plan provide a better alternative for creditors than what they

23  already have.'") (citations omitted); *In re Stockton*, 542 B.R. at 283 ("By its terms, the 'best

24  interests' test in Chapter 9 is collective rather than individualized, and that interpretation is

25  supported by the very context of Chapter 9.").

26         Additionally, for a Chapter 9 plan to be confirmable, § 943(b)(7) requires that the

27  plan be "feasible." Feasibility standards espoused in connection with Chapter 11 plans do

28  not apply to Chapter 9 plans. To determine feasibility, the court must determine whether

1　the revenue and expense projections submitted by the debtor are reasonable and whether

2　the debtor can make the payments proposed under the Plan while continuing to provide

3　its services to the community. *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 35 (Bankr. D.

4　Colo. 1999).

5　　　　　A Chapter 9 Plan divides creditors into classes and either leaves the rights of the

6　creditors unaltered (unimpaired) or changes the rights of the creditors, such as by paying

7　a reduced amount of the claim or paying over a longer period of time. Creditors whose

8　rights are changed (impaired) are entitled to vote to accept or reject the Plan. Upon

9　confirmation, the rights afforded under the plan and the treatment of claims under the plan

10　will be finding and in complete satisfaction, discharge, and release of all claims by

11　creditors against the Debtor.

12　　　　**B.**　　**Purpose of the Disclosure Statement**

13　　　　　The Bankruptcy Code generally requires that the proponent of a plan of adjustment

14　prepare and file with the Bankruptcy Court a "disclosure statement" that provides

15　information of a kind and in sufficient detail that would enable a typical holder of claims in

16　a Class Impaired under the proposed plan to make an informed decision regarding

17　whether to accept or reject the plan. In accordance with this requirement, the within

18　Disclosure Statement provides information regarding the Plan and the treatment of Claims

19　thereunder. Parties in interest should read the Plan and Disclosure Statement as well as

20　all associated documents carefully and in their entirety in order to (a) determine how the

21　Plan will affect their Claims against the District, (b) understand their rights (if any) as they

22　pertain to voting on the Plan, (c) understand their rights (if any) as they pertain to

23　objecting to confirmation of the Plan, and (d) determine how and when creditors may vote

24　to accept or reject the Plan.

25　　　　　The Disclosure Statement cannot and, therefore, does not provide creditors with

26　advice or inform creditors regarding all aspects of their rights. Holders of any Claims

27　against the District are advised to consult with independent counsel and/or a financial

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   advisor to obtain advice regarding how the Plan will affect them and their Claims against

2   the District and the best course of action to take with respect to the Plan.

3         This Disclosure Statement has been prepared in good faith and in compliance with

4   applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy

5   Procedure. Based upon currently available information, the District believes that the

6   information contained in this Disclosure Statement is true and correct as of the date of its

7   filing. The Disclosure Statement cannot and does not reflect events that may occur after

8   November 8, 2019.

9         **C.**     **Summary of Entities Entitled to Vote to Accept or Reject the Plan and**

10               **Certain Prerequisites to Confirming the Plan**

11        Each holder of an Allowed Claim classified into Classes 1A, 1B, 1C, 1E, 1F, 1G,

12  1H, 2, 3, 4, and 5 of the Plan (collectively, the "Voting Classes") shall be entitled to vote

13  each such Claim to accept or reject the Plan.[3]

14        The Bankruptcy Court may only confirm the Plan if at least one Class of Impaired

15  Claims has voted to accept the Plan (without counting the votes of any Insiders[4] whose

16  Claims are classified within that Class) and if certain statutory requirements are met as to

17  both non-consenting members within a consenting Class and as to any dissenting

18  Classes. A Class of Claims shall be deemed to have accepted the Plan if more than one-

19  half in number and at least two-thirds in amount of the Allowed Claims actually voting in

20  that Class vote in favor of the Plan.

21        In the event of a rejection of the Plan by any of the Voting Classes, the District will

22  request that the Bankruptcy Court confirm the Plan in accordance with those portions of

23  section 1129(b) applicable to cases filed under chapter 9 of the Bankruptcy Code, which

24

25        [3] While Class 1F is comprised of the Disputed Optum Claim and, as such, Class 1F would not be
26  entitled to vote on the Plan ordinarily, the District and Optum entered into a stipulation to permit Optum to
    vote its Class 1F claim notwithstanding the pending dispute and without affecting the parties' respective
27  rights. *See* Docket No. 316.

28        [4] As used in this Disclosure Statement, "**Insider**" shall have the meaning ascribed to such term in
    section 101(31)(D), as applicable to municipalities.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

provisions permit confirmation of the Plan notwithstanding the rejection thereof by an Impaired Class through a process commonly known as "cramdown." In order to confirm the Plan through "cramdown", the Court must find, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each rejecting Class.

**D.** **Summary of Voting Procedures, balloting Deadline, Confirmation Hearing, and Other Dates, Deadlines, and Procedures**

**1.** **Voting Procedures and Deadlines**

The District has provided copies of this Disclosure Statement, the Plan, and the Ballot to all known holders of Impaired Claims in the Voting Classes. Holders of an Allowed Claim in one or more of the Voting Classes may vote to accept or reject the Plan by completing, executing, and returning the Ballot by the Balloting Deadline (defined below) to the Ballot Tabulator—Kelly Adele, Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California 92626 (facsimile 714.966.1002; email kadele@wgllp.com).

*All Ballots, including Ballots transmitted by facsimile or email, must be completed, signed, returned to, and actually received by the Ballot Tabulator by not later than _____ , ____, at 4:00 p.m. Pacific Time (the "Balloting Deadline"). Unless expressly waived by the District in its sole and absolute discretion, Ballots received after the Balloting Deadline, Ballots submitted directly to the Bankruptcy Court, and incomplete or illegible Ballots shall not be counted in connection with the confirmation of the Plan.*

**2.** **Date of Confirmation hearing and Deadline for Objecting to Confirmation of the Plan**

The Bankruptcy Court shall hold a hearing to determine whether to confirm the Plan on _____ , ____, at __:__ a.m./p.m. Pacific Time, in Courtroom 28 of the United States Bankruptcy Court located at 501 I Street, Sacramento, California 95814, the Honorable Fredrick E. Clement presiding. The Confirmation Hearing may be

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  continued from time to time by pronouncement or order of the Bankruptcy Court with or

2  without further notice.

3        Any objections to confirmation of the Plan along with copies of any and all

4  supporting documents must be filed with the Bankruptcy Court and served on the

5  following entities or their counsel of record no later than _____ , ____: (a)

6  the Bankruptcy Court, 501 I Street, Suite 3-200, Sacramento, California 95814; (b) the

7  Office of the United States Trustee, 501 I Street, Suite 7-500, Sacramento, California

8  95814; and (c) Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa

9  Mesa, California, 92626, Attention: Jeffrey I. Golden. Please be aware that the Bankruptcy

10  Court may not consider any objections that are not timely filed and served.

11        **E.**      **General Notices and Disclaimers**

12        The historical financial data relied upon in preparing the Plan and this Disclosure

13  Statement is based upon the District's books and records. Although certain professional

14  advisors of the District assisted in the preparation of this Disclosure Statement and the

15  documents filed in support thereof, in doing so such professionals relied upon factual

16  information and assumptions regarding financial, business, and accounting data provided

17  by the District and third parties, much of which has not been audited. The District's most

18  recent audited financial statements, which cover the fiscal year ending June 30, 2018as

19  well as an unaudited financial statement, which covers the fiscal year ending in June 30,

20  2019, are included in the Plan Exhibits as Exhibits 2 and 3, respectively, and incorporated

21  herein by reference.

22        *The District's professional advisors have not independently verified all financial*

23  *information provided in this Disclosure Statement, and, accordingly, make no*

24  *representations or warranties as to its accuracy.* Moreover, although reasonable efforts

25  have been made to provide accurate information, the District does not warrant or

26  represent that the information in this Disclosure Statement, including any and all financial

27  information and projections, is without inaccuracy or omissions, or that actual values or

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

distributions will comport with the estimates and projections contained herein or submitted in support of the Plan and Disclosure Statement.

*No individual or entity may rely upon the Plan or Disclosure Statement or any of the supporting documentation for any purpose other than to determine whether to vote to accept or reject the Plan.* Nothing contained in such documents constitutes an admission of any fact or liability by any party, nor shall such information or documentation be admissible in any proceeding involving the District or any other party, nor will this Disclosure Statement be deemed evidence of the tax or other legal effects of the Plan on holders of Claims in the Chapter 9 Case. This Disclosure Statement is not intended to be a disclosure communication to the public capital markets and should not be relied upon by investors.

Certain information included in this Disclosure Statement and its exhibits contains forward-looking statements. The words "believe," "expect," "anticipate," and similar expressions identify such forward-looking statements. The forward-looking statements were based upon information and documentation available when such statements were made and are subject to risks and uncertainties that could cause actual results to differ materially from those expressed in the statements. A number of those risks and uncertainties are described below. Therefore, readers are cautioned not to place undue reliance on the forward-looking statements in this Disclosure Statement. The District undertakes no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events, or otherwise.

No regulatory agency has approved or disapproved this Disclosure Statement, nor has any such agency determined whether this Disclosure Statement is accurate, truthful, or complete.

### F.　　Additional Information

If you have any questions about the procedures for voting on the Plan, desire an additional copy of the Ballot, or seek further information about the dates and deadlines applicable to the confirmation of the Plan, please contact counsel for the District via email

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  at the following addresses: Jeffrey I. Golden at jgolden@wgllp.com Ryan W. Beall at

2  rbeall@wgllp.com, and Kelly Adele at kadele@wgllp.com. Any party represented by

3  counsel is directed to submit any questions through counsel. Counsel for the District

4  cannot and will not communicate directly with any individual or entity represented by

5  counsel in relation to the Chapter 9 Case. Please note that counsel for the District cannot

6  and will not provide creditors with any legal advice, including, without limitation, advice

7  regarding how to vote on the Plan or the effect that confirmation of the Plan will have upon

8  any Claims that may exist against the District.

9  **III.**    **BACKGROUND INFORMATION**

10      **A.**    **The District**

11      The District is a special district formed under the California Local Healthcare

12 District Law, Cal. Health and Safety Code § 32000, *et seq.*, located in Lone Pine,

13 California. As of the commencement of the Chapter 9 Case, the District owned and

14 operated three facilities—namely, an emergency and acute care facility with four (4) beds

15 (the "**Hospital**"), a skilled nursing facility with thirty-three (33) beds (the "**SNF**"), and an

16 out-patient medical clinic (the "**Clinic**"). As of the filing of this Disclosure Statement, the

17 District has implemented additional services including, but not limited to, a swing bed, a

18 wound care program, and physical therapy services.

19      **B.**    **Events Precipitating Bankruptcy**

20          **1.**    **Historical Financial Issues**

21      As a rural healthcare district, the District has historically operated on a narrow

22 margin; however, beginning in 2008, the District started experiencing substantial financial

23 difficulties as patient demands and revenues declined while operational expenses

24 remained high due to the cost of new hospital equipment and increasing salaries resulting

25 from the limited availability of qualified doctors and medical personnel. Indeed, between

26 2008 and 2015, the District only earned net revenues in two years—namely, 2013 and

27 2014.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

In or about 2012, the financial condition of the District began to worsen. The cause of the financial downturn is attributable to numerous sources, including a decrease in patient volume. More precisely, in or about 2012, the patient services and hospital occupancy rates began to rapidly decline—falling from an occupancy rate of 87.08% in 2012 to 67.20% in 2015. In addition to unforeseen decreases in patient volume, increases in the discounts applied by governmental healthcare programs, such as Medicare and Medi-Cal, and insurance providers further diminished revenues. As a result of the increased discounts, the District received less in reimbursements from these providers— exacerbating the effects caused by the reduction in patient volume and patient revenues.

Unfortunately, the declining financial condition of the District was further exacerbated by the failure of its former management to respond to the reduction in patient demands with corresponding decreases in staffing and other related overhead expenses. Indeed, between 2013 and 2015, full time equivalents ("**FTEs**")[5] for staff members increased from 85.48 in 2013 to 103.23 in 2015—an increase of more than 20% at a time when occupancy was sharply declining. Essentially, the District was employing more staff to serve fewer patients. As a result, operating expenses increased from $8,376,655 in 2012 to $9,075,609 in 2015.

The District experienced its greatest financial decline during fiscal year 2015. As with 2013 and 2014, occupancy rates in 2015 continued to decline to 67.20%, which was the lowest point in the preceding decade. As a result, operating income dropped to $6,105,816—a decrease of approximately $1,800,000 from the 2014 fiscal year operating income. Notwithstanding the reduced demand for services, the District continued to increase staffing, which resulted in an increase in total operating expenses. As a result of the increased expenditures and decreased revenues, the District experienced net losses

---

[5] A full time equivalent is a unit of measurement essentially equal to a single full time employee. The use of FTEs ensures consistency in financial reporting by providing a basis for calculating working hours or labor expenses of a business regardless of the number of employees providing the services—such as in the case of a business that employs full time and part time employees.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

in 2015 totaling $2,242,722. The substantial losses in 2015 also resulted in a year-end cash balance of negative $626,583.

### 2. Breakdown of Operations Due to Cash Shortage

The District continued to experience losses during the 2016 fiscal year, which resulted in an inability to pay ordinary operating expenses, including payroll and vendor obligations. Indeed, by October 2015, the District was unable to continue paying for employee health insurance—ultimately resulting in the termination of this benefit—and, by November 2015, the District was three to five weeks behind in its payroll obligations despite applying nearly all revenues to payroll in an effort to keep the hospital running. Due to the inability to consistently meet its payroll obligations, employees started to resign, which further reduced services at the hospital.

In an effort to keep the hospital and its related facilities open, the District was forced to turn to the community for donations and loans to pay for essential items, including insurance, licensing fees and payroll. While the District was able to obtain approximately $75,000 in donations and an $80,000 loan from members of the community, the funds were quickly depleted and, by the end of November 2015, the District lacked sufficient funds to pay payroll as well as the amounts owing under the contracts with the emergency room doctors. As a result, the board was forced to decide between paying hospital staff and paying the doctors. Ultimately, the board voted to pay staff payroll—a decision that resulted in the District defaulting under the agreements with the emergency room doctors and the loss of their services.

In addition to the inability to continue paying hospital staff, the severe economic conditions prevented the District from paying obligations owing to its vendors. As a result, the District's accounts payable continued to grow—ultimately reaching a balance of approximately $2,550,000 in December 2016. Despite large arrears and the District's inability to pay, vendors continued to work with the District in an effort to preserve the hospital for the community.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1      Regrettably, the concerted efforts of the community and the District ultimately

2 proved too little as the staggering budget deficit and inability to generate sufficient

3 operational revenues to meet its obligations stifled the District. With the loss of the

4 doctors, the District was forced to begin winding down operations. Accordingly, on or

5 about November 30, 2015, the board voted to issue 60- and 90-day notices that the

6 District intended to terminate services at the Hospital and SNF. Thereafter, the District

7 closed the Hospital and emergency room and began making arrangements to transfer

8 SNF patients to surrounding medical facilities. Without patients, the District was unable to

9 generate new revenues and earnings completely stagnated. Thereafter, on or about

10 December 14, 2015, Lee Barron, the former Chief Executive Officer and Chief Financial

11 Officer for the District, tendered her resignation. Three days later, the former board

12 members resigned. As a result, the District was left without any management or governing

13 body, and, thus, was unable to effectively operate or redress any of the financial issues

14 facing the Hospital and its associated operations.

15      **3.**      **Appointment and Actions of New Board of Directors**

16      The community, however, took efforts to save the District and prevent the closure

17 of its facilities, which are vital to the remote area they serve. More precisely, following the

18 resignation of the prior board of directors, on or about December 29, 2015, the Inyo

19 County Board of Supervisors appointed three new board members for the District.

20 Immediately following its appointment, the new board of directors started making strides

21 toward reopening the facility and restructuring its obligations.

22      On or about December 30, 2015, the board held a meeting to evaluate the financial

23 condition of the District and other issues affecting operations. The principal issue facing

24 the District was insufficient cash to continue to finance operations; indeed, by the end of

25 December 2015, the District had virtually no cash on hand to fund operations. Additionally,

26 the board learned that by the end of December 2015, the District's debt had grown to

27 approximately $4,500,000, which was comprised in part of more than $2,550,000 in debt

28 obligations to vendors and service providers previously utilized by the District in the

1  course of its operations. The District, however, had few (if any) sources to generate new

2  revenues due to the closure of the Hospital, the SNF, and the Clinic and only

3  approximately $1,600,000 in accounts receivable, which included bad debt carried on the

4  District's books. Furthermore, as the District lacked the ability to pay staff, the District was

5  unable to effectively collect any accounts receivable presently owing.

6         Due to the dire financial condition of the District, the board immediately consulted

7  with Healthcare Conglomerate Associates ("**HCCA**"), a restructuring and advisory firm

8  focused on the reorganization and operation of medical practices and hospitals, and

9  insolvency counsel to explore and evaluate potential reorganizational strategies to

10  preserve District's operations, including bankruptcy and potential partnerships with nearby

11  hospitals or hospital associations. After evaluating potential partnership options, the board

12  concluded that the options were no longer viable as Northern Inyo Hospital and

13  Ridgecrest Hospital withdrew from discussions after learning of the District's financial

14  condition. The board also concluded that obtaining a loan as a means of consolidating

15  and adjusting its current obligations was not a viable option as the District had insufficient

16  funds to cover its existing obligations, let alone service new debt. As the District could not

17  debt finance its operations or enter into a partnership to help defray operating expenses,

18  the board determined that bankruptcy provided the best option for the District, its patients

19  and creditors, and the community at large.

20         Following a December 30, 2015 meeting of the District's board, the board noticed a

21  public meeting for January 2, 2016, to elicit comments on the financial state of the District

22  and potential options for the readjustment of its obligations as well as the retention of

23  HCCA as chief restructuring officer. Approximately 80 members of the community

24  attended the meeting, including individuals that had donated and loaned money to the

25  District in an effort to support the Hospital's operations in late 2015. During the meeting,

26  the board discussed the proposed employment of HCCA as chief restructuring officer and

27  the commencement of a voluntary chapter 9 bankruptcy case as a means to restructure

28  the operations and adjust the District's present obligations. The majority of the community

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  members in attendance supported the employment of HCCA and the commencement of

2  the bankruptcy case.

3        With the support of the community, the board voted to approve the employment of

4  HCCA, to declare a fiscal emergency, and to authorize the commencement of the Chapter

5  9 Case. The board of directors declared a fiscal emergency for numerous reasons,

6  including, primarily, the District's inability to operate due to the lack of sufficient funds,

7  generate any revenues due to the closing of the Hospital and related facilities, and pay the

8  obligations then due and owing. The board also found that the inability to operate the

9  Hospital and, thereby, provide medical services to the community constituted a threat to

10 the health and welfare of the residents of Southern Inyo County. On or about January 3,

11 2016, the board adopted Resolution No. 16-01, which effected the board's prior decision.

12       The District and HCCA entered into a Management Services Agreement ("**MSA**").

13 Under the MSA, HCCA was to manage the District and had to perform various obligations.

14 However, HCCA did not perform according to the MSA and committed several breaches

15 under the MSA. Among the numerous breaches of the MSA, the most significant was the

16 complete failure of HCCA to collect accounts receivables. Due to the breaches, the

17 District has objected to HCCA's claim arising from the MSA and has entered into

18 protracted litigation regarding the same. The additional breaches have been outlined in

19 detail in the District's Motion to Estimate Claim of HCCA, but include HCCA's failure to

20 provide adequate on-site supervision of operations, failure to provide financial information

21 and perform audits timely, failure to pay critical vendors, failure to obtain board approval

22 on certain contracts entered into on behalf of the District, failure to exercise reasonable

23 care, breach of duties of due care, contract, and loyalty, and unauthorized commingling of

24 the District's funds. As a result of the numerous breaches, the District was unable to make

25 critical expenses including payroll.

26       In or around July 2017, the District, after being unable to make critical expenses

27 including payroll and other obligations due to HCCA's failure to perform under the MSA

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE
STATEMENT

including failing to collect accounts receivable, was forced into entering into a line of credit ("**LOC**") with Vi Healthcare Finance, Inc. ("**ViHF**") at a 20% interest rate.

## IV.     COMMENCEMENT AND ADMINISTRATION OF CHAPTER 9 CASE

### A.     Commencement of the Chapter 9 Case

Due to the District's dire financial condition and the inability to remedy the same outside of bankruptcy, the District proceeded with filing a voluntary petition for relief under chapter 9 of the Bankruptcy Code on January 4, 2016.

### B.     Immediate Actions to Stabilize Operations and Revenue Deficits

Following the Petition Date, the District and HCCA took action to establish a foundation for the Plan. The primary concerns immediately following the commencement of the Chapter 9 Case were the preservation of the Hospital, the SNF, and the Clinic operations and the implementation of practices designed to decrease expenditures and, thereby, increase revenues. For example, the District immediately began reevaluating the billing practices in an effort to reduce the number of insurer discounts, thereby increasing net revenues. The District also began utilizing governmental programs that provide revenues to hospital and nursing facilities that maintain high levels of service, including the California Quality Assurance Fee program. In additional to taking advantage of available programs and streamlining the overall operations, the District also began exploring opportunities for additional governmental subsidies to increase non-operational revenues and permit the District to repay its obligations more quickly without affecting its operational capabilities.

### C.     Eligibility Litigation

On or about March 31, 2016, the District filed its brief regarding the District's qualification as a debtor under chapter 9 of the Bankruptcy Code (the "**Eligibility Motion**"). The Eligibility Motion came on for hearing on or about June 29, 2016. On or about June 29, 2016, the Bankruptcy Court issued a minute order finding that the District qualified as a debtor under chapter 9 of the Bankruptcy Code. Thereafter, on or about July 12, 2016, the Bankruptcy Court entered an order for relief in the Chapter 9 Case.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**D.**    **Appointment of Patient Care Ombudsman**

On or about January 6, 2016, the Court issued the *Order to Appear and Show Cause Why a Patient Care Ombudsman Should Not Be Appointed*. On or about January 25, 2016, the District filed the *Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman*. On or about February 3, 2016, the Debtor filed the *Declaration of Colleen Wilson, Chief Nursing Officer, in Support of the Motion to Excuse the Appointment of a Patient Care Ombudsman*. A hearing to consider the appointment of a patient care ombudsman was held on February 10, 2016. On or about February 16, 2016, the Court entered an order denying the *Debtor's Motion to Excuse the Appointment of a Patient Care Ombudsman* and, on or about February 17, 2016, entered an order directing the appointment of a patient care ombudsman. On or about March 4, 2016, the Office of the United States Trustee filed a notice regarding the appointment of Joseph Rodrigues (the "**Ombudsman**") as patient care ombudsman.

Since his appointment, the Ombudsman has filed numerous reports pertaining to the operation of the District's facilities. The reports are not attached hereto; however, copies of the reports are available on the Chapter 9 Case docket or may be obtained from the District by submitting a written request via email addressed to jgolden@wgllp.com and rbeall@wgllp.com. Since his appointment, the Ombudsman's reports have noted a few minor issues; however, in each instance, these issues were promptly resolved to the Ombudsman's satisfaction. In his reports, the Ombudsman also noted that the District's facilities are clean and fully operational, and the District's patients are well cared-for by the staff. In short, the Ombudsman reports demonstrate that the District has corrected the operational issues it faced in the past.

**E.**    **Disputes Pertaining to Claims Against the District**

Following the Petition Date, the District continued evaluating its existing obligations and the Claims asserted against the District. Notwithstanding the ongoing nature of this inquiry, the District identified several disputed and/or objectionable Claims (whether in whole or in part)—namely, the Claims asserted by the following claimants: (i) Action

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Capital Corporation (also known as Coast to Coast Healthcare); (ii) Covidien; (iii) Dean

Vander Wall; (iv) the California Employment Development Department; (v) GE HFS LLC;

(vi) Lee Barron; and (vii) MJL & Associates. Additionally, the District objected to the claim,

or portions of the claims, of Tulare Local Healthcare District ("**Tulare**"), HCCA, and Vi.

Finally, Rapid Temp, Inc. ("**Rapid Temp**"), and Tijuana LLC dba Advance Medical Staffing

("**Advance Medical**") filed motions for relief from the automatic stay, or, in the alternative,

for allowance of administrative claims, and the District has opposed both such requests. A

hearing on the motions for relief from stay is set for November 12, 2019.

On or about January 26, 2017, the District filed two omnibus objections to proofs of

Claim. The first omnibus objection sought to characterize Claims asserted by the

California Employment Development Department, Lee Barron, and MJL & Associates,

each of which asserted an entitlement to priority treatment of all or part of their respective

Claims under the Bankruptcy Code, as General Unsecured Claims (the "**Priority Claim**

**Objection**"). The second omnibus objection sought to disallow Claims asserted by Action

Capital Corporation, Covidien, Dean Vander Wall, and GE HFS LLC based on the

claimants' failure to adequately substantiate the Claim through the submission of

competent evidence (the "**Adequacy Claim Objection**").

Prior to the hearing on the Adequacy Claim Objection, the District resolved the

Adequacy Claim Objection as it pertained to Dean Vander Wall and GE HFS LLC and, at

the hearing, withdrew the objection as it pertained to Covidien. During the hearing on the

Adequacy Claim Objection, the Court denied without prejudice the objection as it

pertained to Action Capital Corporation. On or about March 30, 2017, the Court entered

an order adopting its rulings during the hearing on the Adequacy Claim Objection.

During the hearing on the Priority Claim Objection, the Bankruptcy Court sustained

the objection and ordered that the affected Claims be reclassified as General Unsecured

Claims. Accordingly, under the Plan, these Claims are treated as General Unsecured

Claims in Class 4.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1　The District additionally filed a claim objection to the proof of claim filed by Tulare

2　Healthcare District ("**Tulare Claim Objection**") on the grounds that such claim was not

3　substantiated by any supporting documents and was not reflected in the District's books

4　and records. Additionally, Tulare Healthcare District had asserted that its claim was

5　entitled to administrative priority. Tulare and the District filed a stipulation with the Court,

6　setting for the Tulare Claim Objection for hearing on November 19, 2019 at 9:00 a.m. The

7　stipulation also memorialized Tulare and the District's agreement that the claim asserted

8　by Tulare is not an administrative claim. Tulare filed a Motion for Estimation of Disputed

9　Claim on October 30, 2019, setting the motion for hearing on December 18, 2019 at 1:30

10　p.m. in Fresno, California. On October 31, 2019, Tulare filed an amended notice of

11　hearing, setting the hearing on the Motion for Estimation for December 17, 2019 at 9:00

12　a.m. in Sacramento.

13　On January 30, 2018, HCCA filed a "Request for Payment of Administrative

14　Expense Claim of Healthcare Conglomerate Associates, LLC Arising Out of Rejection of

15　Executory Contract (11 U.S.C. §§ 503(b) and 507(a)(2))" [Dkt. 406]. HCCA's Claim Motion

16　asserted a $2,524,054.00 administrative claim ("**HCCA's Claim**").

17　On June 8, 2018, ViHF filed a "Request for Payment of Administrative Expense

18　Claim of Vi Healthcare Finance, Inc. (11 U.S.C. §§ 503(b) and 507(a)(2))" [Dkt. 447].

19　ViHF's Claim Motion asserted a $1,423,418.72 administrative claim ("**ViHF's Claim**").

20　In response to the Claims Motions, the District filed a Motion to Estimate Claims

21　which is set for hearing on November 19, 2019, at 9:00 a.m. The District, through its

22　Motion to Estimate Claims, requests that the Court find that neither HCCA's Claim nor

23　ViHF's Claim is entitled to administrative priority, and both claims should be estimated at

24　$0. On October 31, 2019, the Court continued the hearing on the Motion to Estimate

25　Claims to December 17, 2019 at 9:00 a.m.

26　On October 7, 2019, both Rapid Temp and Advance Medical filed Motions for

27　Relief from the Automatic Stay, or, in the Alternative, for an Order for Allowance and

28　Payment of Administrative Claim. On October 29, 2019, the District filed oppositions to

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  both motions, asserting that Rapid Temp and Advance Medical are not entitled to

2  administrative claims under applicable Chapter 9 bankruptcy law. The hearing on the

3  motions is set for November 12, 2019, at 1:30 p.m. in Fresno, and this date, time, and

4  location may be changed by the Court pursuant to its Order Regarding Retention of Case

5  entered on July 26, 2019.

6       **F.**      <u>**Pending Litigation**</u>

7        As of the commencement of the Chapter 9 Case, the District was party to certain

8  pending lawsuits, including the following: *Perez v. Kibler, et al.*, case no. SICV CV

9  1457395, pending in the California Superior Court for the County of Inyo (the "**Perez**

10  **Litigation**"); *Anderson v. Southern Inyo Healthcare District*, case no. 30-2015-00817277-

11  CL-CJC (the "**Anderson Litigation**"); *Craneware, Inc. v. Southern Inyo Healthcare*

12  *District*, 15CV04309, pending in the District Court of Johnson County, Kansas (the

13  "**Craneware Litigation**"); and *J.MH, IL et al. v. Marilyn S Devries, MD., et al.*, Case

14  Number: SI- CV-1659008; Superior Court of the State of California, County of Inyo (the

15  "**Huerta Litigation**").

16        On or about February 1, 2016, the Anderson Litigation was dismissed.

17        On or about March 30, 2016, the District removed the Craneware Litigation to this

18  Court and, on or about August 29, 2016, the Court dismissed the Craneware Litigation for

19  failure to prosecute. On or about January 27, 2017, the underlying state court action was

20  dismissed without prejudice.

21        On or about April 15, 2016, the Bankruptcy Court approved a stipulation by and

22  between the District and the plaintiff in the Huerta Litigation. Pursuant to the stipulation,

23  the District agreed to allow the plaintiff to prosecute the Huerta Litigation; *provided,*

24  *however,* that he only seek to recover from any applicable insurance policies. The District

25  was subsequently dismissed from the Huerta Litigation.

26        The District was additionally dismissed as a defendant from the Perez litigation.

27        In addition to the actions pending on the Petition Date the District is involved in

28  several adversary proceedings. On or about January 13, 2016, the District filed a

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1	complaint against the California Department of Public Health ("**CDPH**")—thereby

2	commencing the adversary proceeding styled *Southern Inyo Healthcare District v.*

3	*California Department of Public Health, et al.*, adv. no. 2016-01008 (the "**CDPH**

4	**Adversary**"). By and through the CDPH Adversary, the District sought a determination

5	that the suspension or revocation of the District's hospital licensure violated the automatic

6	stay. Following the reinstatement of the District's licenses, the District and the defendants

7	in the CDPH Adversary reached an agreement to dismiss the CDPH Adversary without

8	prejudice. On or about March 9, 2016, the District filed a stipulation to dismiss the CDPH

9	Adversary without prejudice, which the Court approved by order entered on or about

10	March 10, 2016.

11	On August 15, 2017, the District filed an adversary proceeding against Optum

12	Bank, Inc., initiating adv. no. 17-01077 ("**Optum Loan Adversary**"). By and through the

13	Optum Loan Adversary, the District sought a determination from the Court that the Optum

14	Loan was invalid, and therefore Optum's claim should be disallowed. The District and

15	Optum Bank, Inc. each filed Motions for Summary Judgment. On May 22, 2019, the Court

16	heard argument on the competing Motions for Summary Judgment and took the matter as

17	submitted. The matter is still currently under submission. The Court removed the pending

18	status conference in the Optum Loan Adversary.

19	On May 30, 2018, the District filed an adversary proceeding against HCAA and

20	ViHF for, *inter alia*, subordination of claim or interest, commencing adv. no. 18-01031

21	("**HCCA Adversary**"). The parties agreed to, and attended, a full-day mediation, however

22	no settlement or resolution was reached. While the District is still attempting to resolve the

23	dispute with HCCA and ViHF, the District has additionally filed a Motion for Order

24	Estimating Contingent or Unliquidated Claims of HCCA and ViHF, which was set for

25	hearing on November 19, 2019. The Court continued the hearing by order entered on

26	October 31, 2019, to December 17, 2019 at 9:00 a.m. The outcome of that hearing may

27	dispose of the issues in the adversary proceeding.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1						29						THIRD AMENDED DISCLOSURE
													STATEMENT

On July 12, 2018, the District filed an adversary proceeding against Healthcare Resource Group, Inc. for recovery of preference payments, commencing adv. no. 18-01043 ("**Healthcare Resource Adversary**"). On December 19, 2018, the District moved to dismiss the Healthcare Resource Adversary pursuant to a settlement which provided for the payment of $5,625.00 to the District and eliminated Healthcare Resource Group, Inc.'s claim.

On July 12, 2018, the District additionally filed an adversary proceeding against Coast to Coast Healthcare Services, Inc., for recovery of preference payments, commencing adv. no. 18-01044 ("**Coast to Coast Adversary**"). On October 1, 2018, the District filed a Notice of Withdrawal and dismissed the Cost to Coast Adversary.

On July 12, 2018, the District additionally filed an adversary proceeding against Healthland Inc., for recovery of preference payments, commencing adv. no. 18-01045 ("**Healthland Adversary**"). On December 19, 2018, the District moved to dismiss the Healthland Adversary pursuant to a settlement which provided for the dismissal of the Healthland Adversary on the one hand, and the claims asserted by Healthland Inc. shall not be allowed. Although Healthland Inc. had not filed proofs of claim, Healthland's pre-petition claim had been scheduled in the District's Schedule F.

On July 12, 2018, the District additionally filed an adversary proceeding against Optum Bank, Inc., for recovery of preference payments, commencing adv. no. 18-01046 ("**Optum Preference Adversary**"). The Optum Preference Adversary is currently pending.

On July 12, 2018, the District additionally filed an adversary proceeding against Premier Emergency Physicians of California Medial Group, for recovery of preference payments, commencing adv. no. 18-01046 ("**Premier Adversary**"). On March 20, 2019, the District filed a Motion to Dismiss the Premier Adversary pursuant to a settlement which provided for the payment of approximately $55,000 to the District, and eliminated any claim asserted by Premier.

**G.      Post-Petition Financing**

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

During the pendency of the Chapter 9 Case, the District utilized a line of credit extended by HCCA (the "**HCCA Loan**") to cover temporary cash shortfalls arising in the course of operations. HCCA was no longer willing and/or able to extend a line of credit to the District. As the District required funding to continue to operate pending both confirmation of the Plan and the Effective Date, and finance certain pre-confirmation activities, the District explored various financing options. Unable to procure financing from an institutional lender, on or about July 19, 2017, the District entered into an agreement with ViHF for the provision of a line of credit in the amount of Two Million Dollars ($2,000,000), which is secured by the District's current tax revenues, to the extent permitted under California law. The District has drawn funds on the ViHF LOC to repay the outstanding balance of the HCCA Loan (the "**HCCA Draw**").

Under the LOC, the HCCA Draw shall accrue interest at a rate of ten percent (10%) until repaid. Any additional draws on the LOC shall accrue simple interest at a rate of twenty percent (20%) until the amount is repaid in full. To ensure payment of the LOC, the District agreed to assign certain tax revenues permitted to be pledged under applicable law to ViHF. If the Court finds that ViHF is entitled to a secured claim, the assigned tax revenues shall be applied to the balance owing under the LOC until paid in full. Any tax revenues received by ViHF that are not necessary to pay any outstanding balance under the LOC shall be returned to the District within one (1) business day of receipt and will be used to fund the Plan. The District and ViHF and HCCA have been in discussions regarding the resolution of the dispute between them, and the release of the tax revenues. The parties have attended a full-day mediation, but were unable to reach a resolution. The District, asserting that ViHF and HCCA have no claim, filed a Motion for Order Estimating Contingent or Unliquidated Claims of HCCA and ViHF, which was set for hearing on November 19, 2019. The Court continued the hearing by order entered on October 31, 2019, to December 17, 2019 at 9:00 a.m.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

**V.      THE DISTRICT'S LIABILITIES AND ASSETS**

The schedules filed in the Chapter 9 Case, as amended (collectively, the "**Schedules**"), provide a detailed list of the assets and liabilities of the District as of the Petition Date.[6] The financial statements provide detailed information regarding the performance of the District in the previous two (2) fiscal years. *See* Exhibits 2 and 3. The following is a summary of the liabilities and assets that are relevant to the Plan.

**A.      Liabilities**

**1.      Summary of Scheduled Claims**

The District filed its Schedules on or about January 19, 2016. In sum, the Schedules identified the following obligations: (a) 11 Secured Claims totaling $1,998,535.65; and (b) 254 General Unsecured Claims totaling $2,503,239.60. With the exception of the Administrative Claims and Professional Claims, the District does not have any unsecured Claims entitled to priority treatment under the Bankruptcy Code. Accordingly, the District did not list any creditors in Schedule E.

**2.      Proofs of Claim**

The Bankruptcy Court established September 30, 2016, as the deadline for the filing of non-administrative proofs of Claim against the District. Forty-eight (48) proofs of Claim were filed against the District prior to the Claims Bar Date. These Claims represent a total debt of $6,371,984.78. Of this amount, approximately eight (8) Claims, totaling $2,339,011.21, asserted security interests in certain assets of the District. The majority of the proofs of Claim filed overlap with the Claims scheduled by the District. Unless otherwise provided in the Plan, if a purported creditor filed a proof of Claim relating to a Claim listed in the Schedules, the Claim shall be Allowed in the amount stated in the proof of Claim and the amount listed for the Claim in the Schedules shall be disregarded for the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

---

[6] Copies of the Schedules are available on the Chapter 9 Case docket or may be obtained from the District by submitting a written request via email addressed to jgolden@wgllp.com and rbeall@wgllp.com.

purposes of calculating the total indebtedness provided for under the Plan or determining the treatment of the related creditor under the Plan.

Additionally, six (6) proofs of Claim were filed after the Claims Bar Date. These six claims are:

> a. Claim 48-1 filed by Tulare Local Healthcare District asserting an administrative claim in the amount of $2,500,000.00 for improper transfers by HCCA from Tulare to the District.

> b. Claim 49-1 filed by the Employment Development Department asserting a priority claim in the amount of $6,689.83 for taxes from 01/01/2017 to 12/31/2017 along with penalty and interest fees.

> c. Claim 50-1 filed by Helmer, Inc. asserting an unsecured claim in the amount of $3,742.09 for the purchase of goods pursuant to an invoice dated April 17, 2015.

> d. Claim 51-1 filed by Triage LLC asserting an unsecured claim in the amount of $48,896.17 for services performed through October 22, 2018.

> e. Claim 52-1 filed by the Employment Development Department asserting a priority claim in the amount of $10,512.38 for taxes from 01/01/2018 to 3/31/2019 along with penalty and interest fees.

> f. Claim 53-1 filed by Advanced Medical Personnel Services, Inc. asserting a claim of $18,317.90 of which $13,650.00 is a priority claim. The District will object to this proof of claim.

As previously noted, the District filed objections to several proofs of Claim. The Bankruptcy Court sustained the objections to the proofs of Claim filed by Employment Development Department, Lee Barron, and MJL & Associates. The District resolved or withdrew the objections to the proofs of Claim filed by Covidien, Dean Vander Wall, and GE HFS, LLC. The Bankruptcy Court overruled the objection to the proof of Claim filed by Action Capital Corporation. Additionally, the District has objected to the Tulare claim and the claims of HCCA and ViHF. In total, the objections to the proofs of Claim has already

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

resulted in the reclassification of $224,151.22 in purported priority unsecured Claims as General Unsecured Claims. Furthermore, the District filed an objection to Tulare's claim, which, by stipulation, is to be heard on November 19, 2019 at 9:00 a.m. Pursuant to the stipulation, Tulare waived any administrative claim and agreed that any allowed claim would be as a general unsecured claim.

### 3. Alterations to Liability under the Plan

#### a. Alteration of Claims

Under the Plan, the District intends to alter the treatment or classification set forth in the Schedules for the following Claims:

- General Electric Capital Corporation ("**GE**"). In the Schedules, the District listed GE as holding two Secured Claims totaling $65,129.11. Following the Petition Date, GE filed three (3) proofs of Claim (nos. 5, 29, and 33) asserting three unsecured Claims relating to the same obligations. Accordingly, under the Plan, GE shall be treated as holding three (3) General Unsecured Claims in the amounts stated in the GE proofs of Claim. General Electric Healthcare Financial Services filed a proof of claim (no. 39) and will be treated as a secured creditor in Class 1H.

- HCCA. In the Schedules, the District listed HCCA as holding a Secured Claim in an unknown amount relating to the HCCA Loan. If HCCA is found to have an allowed secured claim, the portion of HCCA's claim that is deemed secured will be paid in full within one hundred and sixteen (116) months after the Effective Date. The Plan does not provide any treatment for the HCCA Loan in Class 1 until and unless HCCA is found to have an allowed secured claim. Any other amounts owing to HCCA shall be treated as an unsecured Claim in Class 2. HCCA's claim is disputed and is not entitled to administrative priority.

- Leasing Associates of Barrington, Inc. ("**LAB**"). In the Schedules, the District listed LAB as holding a Secured Claim in an unknown amount. LAB did not

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

file a proof of Claim in the Chapter 9 Case. Under the Plan, the Claim listed
in the Schedules for LAB shall be treated as a Secured Claim under Class
1H in the total amount of $1,935.20 paid in full in three monthly installment
payments following the Effective Date.

- Marlin Leasing Corporation ("**MLC**"). In the Schedules, the District listed
  MLC as holding a Secured Claim the in the amount of $0.00. MLC did not
  file a proof of Claim in the Chapter 9 Case. Accordingly, under the Plan, the
  Claim listed in the Schedules for MLC shall be treated as a Disallowed
  Claim.

- Siemens Healthcare Diagnostic, Inc. (aka Siemens Financial Services, Inc.)
  ("**Siemens**"). In the Schedules, the District listed two Secured Claims held
  by Siemens—one in the amount of $0.00 and the other in an unknown
  amount. Following the Petition Date, Siemens filed a proof of Claim (no. 36)
  asserting a General Unsecured Claim against the District relating to the
  same obligation. Accordingly, under the Plan, Siemens shall be treated as
  holding a General Unsecured Claim in the amount stated in proof of Claim
  no. 36.

- U.S. Foods ("**US Foods**"). In the Schedules, the District listed a purported
  Secured Claim held by US Foods in the amount of $35,539.19. Following
  the Petition Date, US Foods filed a proof of Claim (no. 44) asserting a
  General Unsecured Claim against the District relating to the same
  obligation(s). Accordingly, under the Plan, US Foods shall be treated as
  holding a General Unsecured Claim in the amount stated in proof of Claim
  no. 44.

In addition to the foregoing, pursuant to the terms of the Plan, any Claim qualifying
as a Disallowed Claim, or as a claim estimated at $0, shall not receive any distributions
under the Plan, regardless of whether and in what manner the District listed such Claim in
the Schedules.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

b. <u>Disputed Claims</u>

The District disputes the validity and/or enforceability of several claims, including, without limitation, the Claims discussed below. The omission of any Claim from the discussion in this section shall not constitute a waiver or otherwise affect the rights of the District to object or otherwise exercise any and all with respect to any Claim against the District.

(1) Optum Claim

By and through proof of Claim no. 25 (the "**Optum Claim**"), Optum Bank has asserted a Secured Claim in the amount of $1,717,320.24 relating to a loan extended to the District in or about February 2015, which it contends is secured by the real property in which the SNF and the Hospital are located (the "**Property**"), as well as various personal property assets in which the District has an ownership interest. The District disputes the enforceability of the Secured Claim asserted by Optum Bank, especially with respect to the Property, and the validity of the underlying loan (i.e., the Optum Loan).

As a California healthcare district, the District's ability to borrow funds is strictly regulated. One of the many restrictions placed on the District's ability to borrow funding is set forth at Cal. Health & Safety Code § 32130.2 which limits the issuance of negotiable promissory notes to finance a "capital outlay"—in other words, the initial acquisition of property, equipment and supplies utilized by a healthcare district—and to a term of no more than ten (10) years. "Restrictions on the borrowing of public entities are common in California and other states. ... They are intended to prohibit the accumulation of public debt without the consent of the taxpayers, and require governmental agencies to carry on their operations on a cash basis." *In re S. Humboldt Cmty. Healthcare Dist.*, 254 B.R. 758, 760 (Bankr. N.D. Cal. 2000). Claims made on account of loans extended in violation of such limitations are unenforceable. *Ibid*.

Based on its review of the salient documents and applicable law, the District believes that the Optum Loan violates, among other provisions, Cal. Health & Safety Code § 32130.2. The Optum Loan was not related to a "capital outlay;" rather, the Optum Loan

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1243409.1        36        THIRD AMENDED DISCLOSURE STATEMENT

1  related to the refinancing of an existing debt. Accordingly, the Optum Loan violates the

2  restrictions on lending to healthcare districts under Cal. Health & Safety Code § 32130.2

3  and, thus, the Optum Claim is unenforceable. As such, the District is left with no choice

4  but to treat the Optum Claim as a Disputed Claim under the Plan. *See In re S. Humboldt*

5  *Cmty. Healthcare Dist.*, 254 B.R. at 760-761.

6  Furthermore, under California law, creditors are not able to encumber or assert

7  security interests in municipal property unless expressly authorized by statute. *See*

8  *Mayrhofer v. Board of Education of the City of San Diego, et al.*, 89 Cal. 110 (Cal. 1891).

9  As relevant here, the Cal. Health & Safety Code contains no authorization for creditors to

10  encumber the real property assets of a California health care district, such as the District.

11  As Optum was not authorized to encumber the Property, the security interest asserted by

12  Optum in the Property is void and unenforceable.

13  Based on the foregoing, the District has commenced the Optum Adversary, though

14  which the District seeks to invalidate the Optum Loan and associated security interest, in

15  whole or in part, and disallow the Optum Claim. Thus, under the Plan, the Optum Claim is

16  treated as a Disputed Claim and shall not receive any distributions unless and until a court

17  of competent jurisdiction enters a Final Order allowing the Optum Claim, and then, only to

18  the extent allowed.

19  In the Optum Adversary, both the District and Optum filed Motions for Summary

20  Judgment. On May 22, 2019, the parties argued the competing Motions for Summary

21  Judgment and this Court took the matter as submitted. As of the date of the filing of this

22  Third Amended Disclosure Statement, there has been no order or judgment issued by the

23  Court in connection with the Optum Adversary.

(2)     ViHF Claim

25  ViHF asserts an entitlement to a Secured Claim in an amount equal to any draw on

26  the LOC. The District contends that the ViHF Claim is not enforceable and/or may be

27  subordinated to all other Claims under section 510(c) and/or the Bankruptcy Court's

28  general equitable authority due to certain misconduct and improper actions taken by ViHF

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  and/or its affiliates. The District retained The Shinbrot Firm and Jeffrey Shinbrot as special

2  litigation counsel to commence an adversary proceeding against ViHF ("**ViHF**

3  **Adversary**") prior to the Confirmation Hearing. *See* Adversary Case No. 18-01031. By

4  and through the ViHF Adversary, the District sought an order disallowing or subordinating

5  the ViHF Claim and transferring any securing interest associated with the LOC to the

6  District.

7         Additionally, the District filed a Motion to Estimate Claims which was set for hearing

8  on November 19, 2019, at 9:00 a.m. The Court continued the hearing by order entered on

9  October 31, 2019, to December 17, 2019 at 9:00 a.m. The District, through its Motion to

10  Estimate Claims, requests that the Court find that ViHF's Claim is not entitled to

11  administrative priority, and should be estimated at $0.

12         **4.**        **Summary of Current Liabilities**

13  On the Effective Date, the District estimates that it will have the following liabilities:

14  - Administrative Claims totaling approximately $6,625.50[7];

15  - Professional Claims totaling approximately $1,818,545.75[8];

16  - Secured Claims totaling approximately $4,130,175.16;[9]

17  - Priority Unsecured Claims totaling $0.00;

18  - Post-Petition Claims arising from contracts that have not been terminated

19         totaling $118,827.32;

20  - Post-Petition Claims arising from contracts that were terminated prematurely

21         totaling $1,418,170.26; and

22

23  _____

24       [7] The administrative claimants are Source Media, with a claim of $3,007.50, and Up-To-Date, with a

25  claim of $3,618.00.

     [8] Professional fees are treated either in Class 3 or Class 4 depending upon whether the professional

26  was retained pre or post-petition.

27       [9] This amount does not account for Secured Claims satisfied under the Plan through the surrender of

collateral. This amount includes the Disputed Claims of Optum and ViHF.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

- General Unsecured Claims totaling approximately $4,032,448.60.[10]

**5.      Statement Regarding Liabilities**

As previously noted, the District disputes a number of Claims that have been asserted against it, and the District's review and analysis of Claims is ongoing. Given that fact, as well as the inherent uncertainties in any litigation regarding Claims, no assurances can be given regarding the successful outcome of any litigation that has or may be initiated in objecting to such Claims or regarding the ultimate amount of Claims that will be Allowed against the District.

As described below, the Plan enables the District to file objections to Claims at any time within one hundred and eighty (180) days after the Effective Date. The Plan also provides for the District to retain any and all defenses, offset and recoupment rights, and counterclaims that may exist with respect to any Disputed Claim, whether under section 502, 552, or 558 of the Bankruptcy Code or other applicable law. The District reserves all rights with respect to the allowance and disallowance of any and all Claims. **In voting on the Plan, creditors may not rely on the absence of a reference in this Disclosure Statement or the Plan or the absence of an objection to their proofs of Claim as any indication that the District ultimately will not object to the amount, priority, nature, or allowance of their Claim(s).**

**B.      Assets**

The District's assets include, among other things, the real property on which the Hospital and the SNF are located, medical equipment and supplies, accounts receivables, healthcare receivables, potential claims and causes of action, and other various personal property assets. The District's assets are more fully described in the Schedules and associated statement of financial affairs. Under the Plan, the District estimates that it will

---

[10] This amount is comprised of all General Unsecured Claims, including those classified in Class 5 under the Plan, the Unsecured portion of the Secured Claim asserted by Action Capital Corporation, Class 4 Claims, and the projected cure payments due and owing in relation to the assumption of executory contracts and unexpired leases. The inclusion of any Claim in this calculation shall not alter the proposed treatment of such Claim under the Plan.

supplement its current revenue through offering additional medical services and treatments, potential proceeds from litigation, and an increase in parcel and transient occupancy taxes. Each potential revenue source is discussed below:

### 1. Additional Medical Services and Treatment

On August 1, 2019, SIHD hired a new Chief Executive Officer, Peter J. Spiers ("Spiers"), a senior hospital and health system executive with more than 35 years of hospital development experience including distressed hospital restructures. Spiers has spearheaded numerous changes in the District in order to increase revenue and reduce expenses of the District.

SIHD has focused on adding new services that have previously been ignored. Traditionally, SIHD has referred out many patients for services that it does not offer. However, through the integration of new services, the partnering with hospitals and other providers that offer services SIHD does not, and the recapture of as many preliminary services as possible, SIHD can significantly increase revenue.

#### a. Integration of New Services

Implementing brand new services is a difficult task compared with the other potential revenue increases from partnering with other hospitals and providers and recapturing lost revenue by performing services already offered by SIHD, however SIHD has identified several new services that can be fairly easily integrated.

First, SIHD has started to integrate "swing beds." Currently, SIHD has one swing bed in use, but is licensed for four. Essentially a swing bed is a bed where a patient is placed prior to needing to be sent out to a larger hospital that will perform a significant procedure on the patient. Any patient, on a swing bed, that is sent out to another hospital or provider, pays 50% of the fee to SIHD and 50% to the hospital or provider performing the procedure. Furthermore, any preliminary tests are also subject to the 50% fee, if the tests are not done by SIHD. Additionally, since the 50% fee goes to SIHD without SIHD actually performing the procedure or tests, there is relatively low cost and overhead.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1 Therefore, the swing beds bring in substantial revenue without requiring SIHD to

2 significantly overhaul its services.

3     Second, SIHD formerly had a wound care program that was a robust department

4 that disbanded. SIHD is looking to resurrect the wound care program under a new

5 program which will increase the amount SIHD is paid by Medicare. Since this new service

6 is one that has traditionally been performed by SIHD, reintegration will not be a substantial

7 cost, and with the new program that enables more payments to come from Medicare, it

8 will provide a significant and steady revenue stream.

9                    b.     Recapture of Services

10     SIHD is a small, rural, critical access hospital that does not offer the full panoply of

11 services that a larger hospital provides. For this reason, SIHD sends out many patients

12 every month to other hospitals. For reference, SIHD has sent out 552 patients over the

13 past 6 months to other hospitals and providers.

14     All of these patients could have had additional preliminary work done prior to being

15 sent out, however, it has long been the unwritten policy of SIHD to immediately send out

16 patients who will ultimately need a procedure or service not provided by SIHD. SIHD has

17 decided to start performing the services and procedures it can on patients up until the

18 point at which the patient needs to be transferred to a hospital or provider that can

19 perform the required procedure or service. For example, if a patient requires a massive

20 bypass surgery for their heart, rather than immediately transferring the patient to a far-

21 away hospital, SIHD will perform the preliminary tests that are offered by SIHD. Such a

22 policy will not only increase revenue for SIHD, but it will decrease on patient travel time by

23 providing as many services as possible at a more convenient location.

24     Additionally, many patients that are being transferred out of SIHD are in need of

25 services that will soon be offered by SIHD. There are three types of services that are not

26 offered by SIHD currently that result in most of the transfers of patients: (1) GI ultrasound

27 tests, (2) vascular ultrasounds, and (3) echocardiograms. All three of these are being

28 integrated in to SIHD, with echocardiograms starting in October. This will result in

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  approximately 260-300 patients per year remaining with SIHD rather than being

2  transferred to other providers. As a result, SIHD is recapturing significant amounts of

3  revenue that were previously simply being lost.

4			c.	Partnering with Other Providers and Hospitals

5		SIHD is also looking to partner with other providers and hospitals for those services

6  that it cannot offer itself and cannot implement. Such partnerships generally provide SIHD

7  with a percentage of the fee collected, while also allowing patients who live near SIHD to

8  enjoy the ease of access of SIHD in relation to receiving services.

9		Inyo County has one of the highest pollen counts in California. Many patients come

10  in to SIHD with allergy related issues, however, SIHD currently does not offer any allergy

11  care as of now. SIHD is planning on partnering with Allergan 360 whereby Allergan will

12  bring in all of their allergy services into SIHD and SIHD will get a 50% of the revenue from

13  services provided by Allergan. The revenue could eventually ramp up to an extremely

14  large source of additional revenue. Additionally, because this would be a service largely

15  offered by Allergan rather than SIHD, the costs for performing these services are low

16  compared to the revenue.

17		SIHD has, in recent years, had almost no real collaboration with Northern Inyo

18  Healthcare District ("**NIHD**"). SIHD is planning to work together with NIHD to help cover

19  services not previously offered by SIHD. SIHD will work with NIHD physicians to provide

20  physician services at SIHD for cardiology, GI, urology, dermatology, allergy, oncology,

21  and ophthalmology. SIHD will share in the technical fee for these services. Meanwhile,

22  NIHD will help SIHD set up some new services by putting machines in SIHD, that SIHD

23  will lease, that will be used for these new services.

24		Working with these entities that already provide services that are not offered by

25  SIHD is potentially very profitable to SIHD since SIHD will share in the revenue while

26  incurring relatively little costs.

27		**2.	Revamping Existing Services**

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1     As soon as he reviewed SIHD's practices and services, Spiers identified several

2     areas of inefficiency and dis-integration that was either reducing SIHD's revenue or

3     increasing SIHD's expenses. Updating these services has resulted in significant revenue

4     increases for SIHD with substantially optimistic projections of increased revenue.

5                a.     The IP/IT Platform Upgrade

6     First and foremost, the IP or IT platform that SIHD was using was outdated and

7     incredibly inefficient. The new IP platform (called "**Pointclick Care**") interfaces with

8     accounts receivable so that bills are generated by the various different centers (which

9     perform different services) and are now all online. This speeds up the recovery of

10    accounts receivable which leads to SIHD receiving money quicker from services and

11    actually collecting on more money for the same services. Not only does this decrease the

12    turnaround time from when a bill comes in to when the bill gets paid, but also, electronics

13    funds are used now rather than paper bills. This is important because insurance

14    companies no longer wish to work with paper bills, and instead request electronic bills.

15    This integration of accounts receivable into a centralized IT platform has increased

16    productivity and revenue a substantial amount.

17    One of the most serious inefficiencies at SIHD was the significant amount of

18    overtime. There were many reasons for this overtime, and one of those was the overtime

19    of employees in attempting to collect on accounts receivable. Therefore, because of the

20    ease of using the platform, there has been a substantial reduction in overtime for billing

21    purposes. The new IT platform has thus reduced expenses while also increasing

22    collections. Before the new IT platform, at least five separate centers generated bills that

23    went through the old IT platform, then got sent separately to the accounts receivable

24    department who then sent the bills through the IT platform again. With the new IT

25    platform, this process is substantially easier and does not require the same sorts of

26    inefficiencies.

27    Finally, the new IT platform allows for easier billing which will increase revenue.

28    Medical billing relies upon billing medical codes. These codes correspond with services

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  and are what is relied upon by insurance companies and Medicare. Due to the ease of

2  using the new IT platform, correct medical codes will be more often used for the billing of

3  services which will additionally increase revenue where revenue was previously being lost

4  for many years. SIHD projects that cash flow, only from the integration of the new IT

5  platform, will increase significantly on a monthly basis.

6                  b.    <u>Physical Therapy</u>

7        Physical therapy has traditionally been a huge business for SIHD. Physical therapy

8  is a high margin, low cost service at SIHD. However, in recent years, the physical therapy

9  department had almost shut down due to nonuse. Since August 1, 2019, the physical

10  therapy department is up in revenue 140%. Currently, physical therapy is providing

11  revenue in the approximate amount of $200,000-$250,000 per year, however, SIHD has

12  the capacity and ability to increase this to approximately $1,000,000 per year.

13        With the addition of needed physical therapy staff and scheduling of numerous

14  referrals that have been essentially abandoned, the goal is to increase the total volume

15  from approximately 7-10 patients per day to over 30 patients per day. Spiers has

16  integrated new production focused incentives, and one such incentive is currently to

17  increase physical therapy patients to 20 per day rather than the current 7-10. The number

18  of physical therapy patients per day has begun to rise, and with the changes noted above,

19  SIHD intends to reach its goal of 30 patients per day for physical therapy in the near

20  future.

21                  c.    <u>New Productivity Models</u>

22        As stated very briefly in the previous section, Spiers has instituted a new,

23  outcomes-driven operating model focused on integration and reducing waste. Among the

24  types of innovations being instituted are the productivity goals mentioned above in relation

25  to physical therapy patients. Another example of these productivity goals is with respect to

26  the skilled nursing department, which has increased from 23 patients per day already to

27  30 patients per day. These productivity goals and the new programs in place to increase

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  efficiency and bring the entire hospital online and on the same page has drastically

2  increased efficiency and reduced expenses, especially with respect to overtime.

3        **3.    Reducing Expenses**

4        SIHD has already drastically reduced expenses and intends to further reduce

5  expenses and costs by increasing inefficiencies at the hospital. As stated above, reducing

6  inefficiencies in the IT platform has resulted in increased revenue from worker production

7  and reduced expenses in the form of reducing overtime. Payroll and overtime were two

8  bloated expenses, and the reduction of overtime is a clear objective to reduce expenses.

9  Reduction of overtime has been achieved by increasing efficiency and productivity across

10  the board.

11       SIHD, through Spiers' implementation, has formed and deployed "operations and

12  patient volume improvement teams" which have improved process integration,

13  communication and coordination of patient and operational processes, information flow

14  and timeliness of work completion. Now, each department has identifiable key

15  performance measures to track outcomes and make process improvements in real time.

16  Each department now measures work production and staff productivity. The net effect of

17  this has been timelier, more cost effective hospital operations.

18       **4.    Additional Sources of Revenue**

19       SIHD is confident that the new implementations described above will be sufficient

20  to fund a Plan of Adjustment. However, in order to additionally fund operations and the

21  Plan of Adjustment, SIHD has explored several potential additional sources of revenue. In

22  the past, SIHD has proposed additional funding in the form of bonds and other sources

23  that require voter approval which has proven difficult because of (a) the reluctance of

24  voters to vote for additional taxes, (b) the requirement for a supermajority, and (c) the

25  amount of time between votes if a vote is unsuccessful. SIHD has therefore reviewed

26  potential funding from sources that do not require voter approval, and could result in more

27  simplistic funding.

28        a.    <u>Federal Funding</u>

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE
STATEMENT

1  As a small rural hospital, federal funding can be crucial. Many similar critical-

2  access hospitals receive funding. SIHD is partnering with Merchant McIntyre ("McIntyre")

3  which is a federal funding lobbying group. McIntyre prepares all the federal grants and

4  then lobbies congress to ensure the grants are approved. The last time that SIHD

5  received a federal grant was in 2008, which means for the last eleven years, SIHD has

6  received no federal grants. SIHD is confident that, through the partnership with McIntyre,

7  SIHD can expect to receive approximately $540,000 per year in federal grants. SIHD

8  expects to start receiving grants through this arrangement in 2020.

9  b.     Los Angeles Department of Water and Power

10  The Los Angeles Department of Water and Power ("LADWP") has been directed to

11  give funds for community benefit. LADWP has been working with SIHD for two purposes.

12  First, LADWP wants to have SIHD be the exclusive provider for LADWP which means that

13  SIHD will provide LADWP with local access for all physicals and on-going care for their

14  employees. Secondly, LADWP has indicated that they are interested in committing a

15  substantial sum of money over five years that will not only fund the services required to be

16  the provider for LADWP, but will also help with capital projects. SIHD and LADWP are in

17  the latter stages of their negotiations, and SIHD is confident that significant funds will

18  become available as a result of the deal with LADWP. SIHD expects to start receiving

19  funds from LADWP starting in 2020 in the approximate amount of $1,000,000 per year for

20  five years.

21  c.     Great Basin Air Pollution Control District

22  The Great Basin Air Pollution Control District ("GBAPCD") is tasked with improving

23  emissions in the area. In particular, GBAPCD has become interested in SIHD's boiler

24  which is quite old. GBAPCD are in the process of awarding a block grant to SIHD to

25  reduce emissions. In particular, SIHD will receive a new boiler, new roof, and a new

26  generator, all with the purpose of reduce emissions and carcinogens. The block grant is

27  estimated to be approximately $600,000. SIHD expects to receive grant money from

28  GBAPCD in 2020.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

d.    Toiyabe Project

The Toiyabe Project is the potential deal with the Toiyabe tribe which is a tribe of Shoshone that want to contract with SIHD as the provider of health services such as physical therapy for the tribe and establish a set of shared services to reduce duplication. This is a potentially lucrative deal for SIHD and SIHD is working diligently to finalize the potential terms.

**5.    Claims and Causes of Action Against Third Parties**

The District may have claims and causes of action against certain individuals or entities, and is continuing its investigation of any and all potential claims and causes of action that may exist. By and through the Plan, the District retains the right to commence and prosecute any action(s) based upon any claim or cause of action possessed by the District prior to the Effective Date. Any recovery by the District arising from a claim or cause of action commenced on or after the Effective Date shall be treated as additional revenues and used by the District to fund operations and/or plan payments. **Parties in interest may not rely on the absence of a reference in this Disclosure Statement or the Plan as any indication that the District ultimately will not pursue any and all available claims and causes of action against them.**

a.    Potential Claims and Causes of Action

The District is presently aware of the claims and causes of action discussed *infra*. The following discussion of claims and causes of action does not in any way limit or affect the reservation of rights set forth in the preceding paragraph, nor the District's right to assert any and all claims and causes of action following the Effective Date.

(1)    HCCA Claim

The principal claim(s) of which the District is aware pertain to HCCA. More precisely, HCCA was retained as chief restructuring officers for the District. In this role, HCCA was responsible for, among other things, the management of the District's operations. Among other things, HCCA failed to collect approximately $4,000,000 in accounts receivable. To ameliorate this cash shortage (to the extent possible), the District

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   was required to expend additional funds, including, without limitation, incurring additional

2   debt from an HCCA affiliate at an interest rate of 20% and retaining additional

3   professionals and service providers to fulfill HCCA's responsibilities. In sum, the District

4   estimates that HCCA's failure to carry-out its duties resulted in substantial damages to the

5   District. The District filed an adversary proceeding against HCCA on May 30, 2018,

6   initiating Adv. Case No. 18-01031. The parties agreed to, and attended, a full-day

7   mediation, however no settlement or resolution was reached. The District, as a result, filed

8   a Motion for Order Estimating Contingent or Unliquidated Claims of HCCA and ViHF,

9   which was set for hearing on November 19, 2019. The Court continued the hearing by

10   order entered on October 31, 2019, to December 17, 2019 at 9:00 a.m.

11                (2)     ViHF Adversary

12      As discussed *supra*, the District filed a Motion for Order Estimating Contingent or

13   Unliquidated Claims of HCCA and ViHF, which was set for hearing on November 19,

14   2019. The Court continued the hearing by order entered on October 31, 2019, to

15   December 17, 2019 at 9:00 a.m. The motion requests that the Court find that ViHF is not

16   entitled to an administrative claim under the applicable law in Chapter 9 and additionally

17   requests that the Court estimate ViHF's Claim at $0 based upon the fact that the LOC was

18   entered into in violation of California law.

19                (3)     Avoidance Actions

20      The District pursued claims to recover fraudulent and/or preferential transfers to or

21   for the benefit of certain creditors, including, without limitation, HRG, under the Bankruptcy

22   Code and applicable California law. The District commenced the following avoidance

23   actions: Adv. Case No. 18-1044 against Coast to Coast Healthcare Services, Inc., Adv.

24   Case No. 18-1047 against Premier Emergency Physicians of California Medical Group,

25   Adv. Case No. 18-1046 against Optum Bank, Inc., Adv. Case No. 18-1045 against

26   Healthland Inc., and Adv. Case No. 18-1043 against Healthcare Resource Group, Inc.

27      On July 12, 2018, the District additionally filed an adversary proceeding against

28   Coast to Coast Healthcare Services, Inc., for recovery of preference payments,

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

commencing adv. no. 18-01044 ("**Coast to Coast Adversary**"). On October 1, 2018, the District filed a Notice of Withdrawal and dismissed the Cost to Coast Adversary.

On July 12, 2018, the District additionally filed an adversary proceeding against Premier Emergency Physicians of California Medial Group, for recovery of preference payments, commencing adv. no. 18-01046 ("**Premier Adversary**"). On March 20, 2019, the District filed a Motion to Dismiss the Premier Adversary pursuant to a settlement which provided for the payment of approximately $55,000 to the District, and reduced accounts payable by approximately $497,000.

On July 12, 2018, the District additionally filed an adversary proceeding against Optum Bank, Inc., for recovery of preference payments, commencing adv. no. 18-01046 ("**Optum Preference Adversary**"). The Optum Preference Adversary is currently pending.

On July 12, 2018, the District additionally filed an adversary proceeding against Healthland Inc., for recovery of preference payments, commencing adv. no. 18-01045 ("**Healthland Adversary**"). On December 19, 2018, the District moved to dismiss the Healthland Adversary pursuant to a settlement which provided for the dismissal of the Healthland Adversary on the one hand, and the claims asserted by Healthland Inc. shall not be allowed. Although Healthland Inc. had not filed proofs of claim, Healthland's pre-petition claim had been scheduled in the District's Schedule F.

On July 12, 2018, the District filed an adversary proceeding against Healthcare Resource Group, Inc. for recovery of preference payments, commencing adv. no. 18-01043 ("**Healthcare Resource Adversary**"). On December 19, 2018, the District moved to dismiss the Healthcare Resource Adversary pursuant to a settlement which provided for the payment of $5,625.00 to the District and eliminated Healthcare Resource Group, Inc.'s claim.

## VI.    SUMMARY OF THE PLAN OF ADJUSTMENT

The discussion of the Plan set forth herein is qualified in its entirety by **reference to the more detailed provisions set forth in the Plan and its exhibits, the terms of which are controlling. Holders of Claims and other interested parties are**

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**urged to read the Plan and its exhibits, copies of which are served herewith, in their entirety so that they may make an informed decision regarding the Plan.**

The Plan proposes paying the Allowed Claims against the District over a term of several years. The Allowed Claims are separated into four (5) Classes—namely, Secured Claims (Class 1), Post-Petition Contracts not Terminated (Class 2), Post-Petition Contracts Terminated Prematurely (Class 3), General Unsecured Claims (Class 4), and Convenience Class Claims (Class 5).

As set forth in the financial projections (Exhibit 4 to the Plan Exhibits), the Allowed Claims will be paid over a term of years depending on their specific classification and treatment relating thereto. Administrative Claims are not classified and shall receive payment in full on the Effective Date, unless the holders of such claims agree to alternate treatment. Secured Claims are separately categorized into subclasses (Classes 1A-1H) based upon the collateral purportedly securing each of the Claims. Post-Petition Claims arising from contracts that have not been terminated (Class 2) consist of certain general unsecured Claims held by creditors that began business with the District post-petition, and still have an active contract with the District. Post-Petition Contracts Terminated Prematurely (Class 3) consists of creditors that began business with the District post-petition, but the contract was or will be prematurely terminated by the Effective Date. General Unsecured Claims (Class 4) consist of general unsecured Claims in excess of $250.00 held by claimants not classified under Class 2 or Class 3, i.e. creditors that began doing business with the District prior to the Petition Date. Convenience Class Claims (Class 5) consist of general unsecured Claims in an amount less than or equal to $250.00, which are separately classified from General Unsecured Claims in order to avoid the administrative burden and expense associated with remitting payments on account of Claims of this size over a term of years, and Claims classified in Classes 2, 3, or 4 that opt to be treated as Class 5 Claims. The District shall make the payments provided for in the Plan over a term of approximately ten (10) years (the Effective Date through and including December 2029).

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

The District has prepared three alternative projections (Exhibit 4). The first assumes that Optum's loan is secured only by the personal property of the District, valued at $225,000, with the remainder of Optum's Claim being entitled to distribution as an unsecured creditor. The second assumes that Optum's loan is secured in full up to the full amount of its claim and Optum will be paid in full throughout the life of the Plan. The third assumes that ViHF's Claim is allowed as an Administrative Claim and the District predicts that a determination on the character of ViHF's Claim will occur on or around April 2020 and will be paid in full in August 2020.

## A.    Classification and Treatment of Claims

### 1.    Unclassified Claims

Section II of the Plan governs the treatment of certain Claims that are not classified into Classes under the Plan.

#### a.    Administrative Expense Claims

Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment, the District or its agent shall pay to each holder of an Allowed Administrative Claim, in full satisfaction, release, and discharge of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable. The District has responded to motions by Advanced Medical Staffing and Rapid Temp, Inc. and asserts that these creditors do not have administrative claims. The Court will hold a hearing on such motions on November 12, 2019. The District has noted the proof of claim filed by Advanced Medical Personnel Services and will object to the proof of claim to the extent that it asserts an administrative claim. If the Court finds that these entities have administrative claims, they will be paid in the manner listed above. There are two allowed administrative claims: Source Media in the amount of $3,007.50, and Up-to-Date in the amount of $3,618.00 which will both be paid in full on the Effective Date.

#### b.    Professional Claims

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Pursuant to section 943(b)(3), all amounts paid or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to the Plan must be disclosed to the Bankruptcy Court and must be reasonable. Each Professional Claim is placed into either Class 3 or Class 4, depending upon the date of its retainer with the District, and will share in the distribution with unsecured creditors, unless otherwise agreed upon by the District in its sole authority.[11]

The District estimates that the attorneys' fees incurred by Baker & Hostetler LLP ("**Baker**") for services rendered to the District prior to the Effective Date shall total approximately $825,000. Baker will be placed in Class 3.

The District estimates that Nave Cortell LLP and Province shall have Professional Claims in the amount of approximately $70,000 and $20,761.75, respectively, as of the Effective Date and are each treated under Class 3.

The District estimates that Foley & Lardner LLP shall have Professional Claims in the amount of approximately $506,649 as of the Effective Date and will be treated under Class 4.

The District estimates that Weiland Golden Goodrich LLP shall have Professional Claims in the amount of approximately $200,000 as of the Effective Date and will be treated under Class 4.

The District estimates that Dentons, Bingham Greenebaum and Cohen & Grisby shall have Professional Claims in the amount of approximately $56,800 as of the Effective Date and will be treated under Class 4.

The District estimates that The Shinbrot Firm shall have Professional Claims in the amount of approximately $74,335 as of the Effective Date and will be treated under Class 4.

---

[11] The treatment of Professional Claims provided herein shall not in any way limit the rights of any professional employed by the District seeking compensation for services provided following the Effective Date. The amounts listed in this Section are estimates of the Professional Claims and shall not in any way be interpreted as a limitation on the amount of the Professional Claims.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1                                    52                    THIRD AMENDED DISCLOSURE STATEMENT

The District estimates that Hahn Fife shall have Professional Claims in the amount of approximately $65,000 as of the Effective Date and will be treated under Class 4.

The District does not consent to the Bankruptcy Court adjudicating whether any other individual or entity constitutes a Professional or may assert a Professional Claim. The District solely consents to the Bankruptcy Court adjudicating the reasonableness of the services rendered and costs incurred by the Professionals for which compensation and/or reimbursement is sought.

The District, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for professional services rendered and costs incurred following the Effective Date.

> c.    <u>Deadline for the Filing and Assertion of Postpetition Claims, Administrative Claims, and Professional Claims</u>

**All proofs of Claim for Claims arising on or after the Petition Date, and requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid, released, or otherwise settled, and all requests for a determination regarding the reasonableness of Professional Claims, must be filed with the Bankruptcy Court and served upon the District no later than thirty (30) days before the date set for the Confirmation Hearing.** Any proof of Claim for Claims arising on or after the Petition Date, or request for payment of an Administrative Claim or a Professional Claim that is not timely filed will be forever barred and holders of such Claims shall be barred from asserting such Claims in any manner against the District.

> 2.    **Class 1 – Secured Claims**

>> a.    <u>Class 1A – Action Capital Corporation</u>

Class 1A consists of the Claim asserted by Action Capital Corporation (also known as Coast to Coast Healthcare) ("**ACC**") in the amount of $185,600.35, which is purportedly secured by all accounts receivable of the District arising on or before January 31, 2015.

>> (1)    Impairment and Voting

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1　　　　Class 1A is Impaired by the Plan since the treatment of this Class will affect the

2　legal, equitable, or contractual rights of ACC. Accordingly, this Class is entitled to vote to

3　accept or reject the Plan in accordance with the Plan Solicitation Order.

4　　　　　　　　　　　　(2)　　　Treatment

5　　　　ACC's Class 1A Claim is purportedly secured solely by accounts receivable

6　generated on or before January 31, 2015, which the District estimates to be worth $0.00.

7　Accordingly, in full satisfaction, release and discharge of the Class 1A Claim, ACC shall

8　receive an allowed General Unsecured Claim in the amount of $185,600.35, which shall

9　be included in and treated in accordance with the treatment provided for Class 4 claims.

10　　　　　　　b.　　　Class 1B – Bank of the West/Thermo Fisher Financial

11　　　　　　　　　　　Services, Inc.

12　　　　Class 1B consists of the Claims asserted by Bank of the West ("**BOW**") in the

13　amount of $7,189.61 and Thermo Fisher Financial Services, Inc. ("**Thermo**") in the

14　amount of $12,443.46.16 which are purportedly secured by an Abbott iSTAT 1 Upgrade

15　from 200 Series and the related equipment and documentation.

16　　　　　　　　　　　　(1)　　　Impairment and Voting

17　　　　Class 1B is Impaired by the Plan since the treatment of this Class will affect the

18　legal, equitable, or contractual rights of BOW and/or Thermo. Accordingly, this Class is

19　entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

20　　　　　　　　　　　　(2)　　　Treatment

21　　　　In full satisfaction, release and discharge of the Class 1B Claims, the District shall

22　surrender to BOW or Thermo the collateral for the underlying agreements—namely, one

23　Abbott iSTAT 1 Upgrade from 200 Series and the related equipment and documentation.

24　The District shall surrender the subject equipment and documentation on or as soon as

25　practicable following the Effective Date. The remainder of the Claim asserted by BOW and

26　Thermo shall be allowed as a General Unsecured Claim in Class 4 in accordance with the

27　Proofs of Claim filed by BOW and Thermo.

28　　　　　　　c.　　　Class 1C – Canon Financial Services, Inc.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

Class 1C consists of the Claim asserted by Canon Financial Services, Inc. ("**Canon**") in the amount of $84,275.90, which is purportedly secured by certain office equipment subject to the agreements by and between the District and Canon or its affiliates.

(1)　　Impairment and Voting

Class 1C is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of Canon. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

(2)　　Treatment

In full satisfaction, release and discharge of the Class 1C Claim, the District shall surrender to Canon the collateral for the underlying agreement. The District shall surrender the subject equipment and documentation on or as soon as practicable following the Effective Date. The remainder of the Claim asserted by Canon shall be allowed as a General Unsecured Claim in Class 4 in accordance with the proof of Claim filed by Canon.

d.　　Class 1D – Cardinal Health 110, LLC

Class 1D consists of the Claim asserted by Cardinal Health 110, LLC ("**Cardinal**") in the amount of $838.28, which is purportedly secured by certain funds presently held by Cardinal.

(1)　　Impairment and Voting

Class 1D is Unimpaired by the Plan since the treatment of this Class will not affect the legal, equitable, or contractual rights of Cardinal. Accordingly, this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.[12]

(2)　　Treatment

---

[12] The Unimpaired status of the Class 1D Claim held by Cardinal shall not affect the right of Cardinal, if any, to cast a vote for or against the Plan on account of the portion of its Claim categorized as a General Unsecured Claim in Class 4.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

1    In full satisfaction, release and discharge of the Class 1D Claim, Cardinal shall be

2 entitled to retain the funds presently in its possession, which total $838.28. The remainder

3 of the Claim asserted by Cardinal shall be allowed as a General Unsecured Claim in

4 Class 4 in accordance with the proof of Claim filed by Cardinal.

5    e.    Class 1E – Optum Bank, Inc.

6    Class 1E is comprised of the Disputed Claim asserted by Optum in the amount of

7 $2,556,473.27, which is purportedly secured by the District's real property as well as

8 personal property and general intangible assets to the extent not limited by 11 U.S.C.

9 § 552(a). The validity and enforceability of the Optum Claim is the subject of the Optum

10 Adversary.

11    (1)    Impairment and Voting

12    Class 1E is Impaired by this Plan since the treatment of this Class will affect the

13 legal, equitable, or contractual rights of Optum. As Class 1E is comprised solely of the

14 Disputed Claim of Optum, Class 1E is not entitled to vote on the Plan; however, the

15 District and Optum entered into a stipulation permitting Optum to vote in Class 1E. As

16 such, Class 1E is entitled to vote to accept or reject the Plan in accordance with the Plan

17 Solicitation Order.

18    (2)    Treatment

19    As a Disputed Claim, the Optum Claim shall not receive any distributions under the

20 Plan unless and until a court of competent jurisdiction enters a Final Order allowing the

21 Optum Claim. If the Optum Claim is adjudged valid, enforceable and secured in whole or

22 in part, the District shall pay Optum Cash in an amount equal to the portion of the Optum

23 Claim allowed as a Secured Claim, which may include interest and costs and expenses

24 incurred by Optum in association with the underlying loan, to the extent permitted under

25 the Optum loan agreement and allowed by the Court, no later than one hundred and

26 sixteen (116) months following the entry of a Final Order allowing the Optum Claim. If the

27 Optum Claim is adjudged valid and enforceable but not wholly secured, the portion of the

28 Optum Claim adjudged to be a Secured Claim, which may include interest and costs and

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1243409.1    56    THIRD AMENDED DISCLOSURE STATEMENT

1  expenses incurred by Optum in association with the underlying loan, to the extent

2  permitted under the Optum loan agreement and allowed by the Court, shall be treated

3  pursuant to the preceding sentence and any order(s) entered in the Optum Adversary and

4  the remaining Allowed Claim shall be treated as an unsecured claim pursuant to Class 4.

5  If the Optum Claim is adjudged invalid and unenforceable, Class 1E shall not receive any

6  distributions under the Plan. Optum shall retain any and all valid liens granted under the

7  Optum Loan Documents until any such lien is invalidated or Optum's secured claim is paid

8  in full.  Among other things, Optum contends that it has a security interest in any and all

9  recoveries obtained on account of any breach of contract claim which may be asserted

10  against HCCA, a contention which the District disputes.  Optum shall have until five (5)

11  business days after the entry of a final judgment in the Optum Adversary to make an

12  election under 11 U.S.C. § 1111(b).

13            f.     <u>Class 1F – Vi Healthcare Finance, Inc.</u>

14       Class 1F is comprised of any and all funds advanced to the District by ViHF

15  pursuant to the ViHF LOC. The anticipated balance of the ViHF LOC on the Effective Date

16  is $1,423,418.72. The Class 1F Claim is purportedly secured in accordance with the terms

17  of the ViHF LOC to the extent permitted under California law. The Class 1F Claim

18  constitutes a Disputed Claim under the Plan.

19                (1)    Impairment and Voting

20       Class 1F is Impaired by the Plan since the treatment of this Class will affect the

21  legal, equitable, or contractual rights of ViHF; however, as comprised of a Disputed Claim,

22  this Class is **not** entitled to vote to accept or reject the Plan in accordance with the Plan

23  Solicitation Order.

24                (2)    Treatment

25       The treatment of Class 1F shall depend on the outcome of the ViHF Adversary and

26  the 502(c) motion to estimate claim. If the District succeeds in disallowing the ViHF Claim

27  in its entirety, Class 1F shall not receive any distributions under the Plan. If the

28  Bankruptcy Court allows the ViHF Claim as a subordinated claim and transfers any

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

security interest(s) associated therewith to the District, the ViHF Claim shall be treated in a separate class of subordinated Claims—Class 6. Class 6 shall receive a distribution equal to three percent (3%) of the total claims in the Class, which shall be paid in a lump sum within one hundred and twenty (120) days after entry of an order subordinating the ViHF Claim. If the Bankruptcy Court allows the ViHF Claim as a Class 1F Claim, the District shall pay the Allowed Secured Claim of ViHF in full from the proceeds of the tax revenues upon which ViHF's claim is allegedly secured. If the Bankruptcy Court allows the ViHF Claim as an Administrative Claim, ViHF's Claim will be paid in its entirety within one hundred and twenty (120) days after entry of an order finding that ViHF's Claim is an Administrative Claim.

### a. Class 1G – Leasing Associates of Barrington

Class 1G consists of the Claim asserted by Leasing Associates of Barrington ("**LAB**") in the amount of $1,935.20 which is purportedly secured by an ADVIA 560 Hematology System.

#### (1) Impairment and Voting

Class 1G is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of LAB. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

#### (2) Treatment

Class 1G shall be paid in full in Cash in equal monthly installments within three (3) months of the Effective Date.

### b. Class 1H – General Electric Healthcare Financial Services

Class 1H consists of the Claim asserted by General Electric Healthcare Financial Services ("**GE HFS**") in the amount of $147,509.69 which is purportedly secured by a GE Healthcare GE Optima CT660 System.

#### (1) Impairment and Voting

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Class 1H is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of GE HFS. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

(2)    Treatment

Class 1H shall be paid in full in Cash in equal monthly installments within eighty four (84) months of the Effective Date.

### 3.    Class 2 – Post-Petition Contracts Not Terminated

Class 2 consists of the Claims listed in Exhibit 5 of the Plan Exhibits.

a.    <u>Impairment and Voting</u>

Class 2 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 2 Claims. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

b.    <u>Treatment</u>

In full satisfaction, release and discharge of the Class 2 Claims, holders of Class 2 Claims shall receive distributions under the Plan equal to 12% of its claim, as listed in Exhibit 5, over eighty four (84) months.

### 4.    Class 3 – Terminated Post-Petition Contract Claims

Class 3 consists of the Claims listed in Exhibit 6 of the Plan Exhibits.

a.    <u>Impairment and Voting</u>

Class 3 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 3 Claims. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

b.    <u>Treatment</u>

In full satisfaction, release and discharge of the Class 3 Claims, holders of Class 3 Claims shall receive distributions under the Plan equal to 12% of its claim, as listed in Exhibit 6, over eighty four (84) months.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

c.      <u>Class 5 Election</u>

Holders of Terminated Post-Petition Contract Claims in Class 3 may elect to have their Claim(s) treated as Class 5 Claim(s) by so noting on the Ballot. Any Class 3 Claim electing treatment under Class 5 shall irrevocably forfeit its status as a Class 3 Terminated Post-Petition Contract Claim and the holder of such Claim shall be deemed to have accepted payment as a holder of a Claim in Class 5 in full satisfaction, release and discharge of their Claim.

**5.      Class 4 – General Unsecured Claims**

Class 4 consists of the Claims listed in Exhibit 7 of the Plan Exhibits.[13]

a.      <u>Impairment and Voting</u>

Class 4 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 4 Claims. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

b.      <u>Treatment</u>

In full satisfaction, release and discharge of the Class 4 Claims, holders of Class 4 Claims shall receive distributions under the Plan equal to 12% of its claim, as listed in Exhibit 7, over eighty four (84) months.

c.      <u>Class 5 Election</u>

Holders of General Unsecured Claims in Class 4 may elect to have their Claim(s) treated as Class 5 Claim(s) by so noting on the Ballot. Any Class 4 Claim electing treatment under Class 5 shall irrevocably forfeit its status as a Class 4 General Unsecured Claim and the holder of such Claim shall be deemed to have accepted payment as a holder of a Claim in Class 5 in full satisfaction, release and discharge of their Claim.

**6.      Class 5 – Convenience Claims**

---

[13] Exhibit 7 does not include any estimate(s) on account of the potential General Unsecured Claim of Optum, if any. If the Bankruptcy Court rules that Optum is entitled to an allowed General Unsecured Claim, such Claim shall be entitled to a *pro rata* portion of any distributions to Class 4.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Class 5 consists of the Claims in an amount of $250.00 or less. A list of all Class 5 Claims is set forth in Exhibit 8 of the Plan Exhibits.

### a.  Impairment and Voting

Class 5 is Impaired by the Plan since the treatment of this Class will affect the legal, equitable, or contractual rights of the holders of Class 5 Claims. Accordingly, this Class is entitled to vote to accept or reject the Plan in accordance with the Plan Solicitation Order.

### b.  Treatment

In full satisfaction, release and discharge of the Class 5 Claims, holders of Class 5 Claims shall receive Cash on the Effective Date, or as soon thereafter as practicable, in an amount equal to the lesser of (a) the amount of their Allowed Class 5 Claims or (b) $100.00.

### B.  Treatment of Executory Contracts and Unexpired Leases

#### 1.  Generally

The Bankruptcy Code grants debtors, subject to court approval, the power to assume or reject executory contracts and unexpired leases. An "executory contract" generally means a contract under which the obligations of both the District and the other party thereto are so far unperformed that the failure of either party to complete performance would constitute a material breach of the subject agreement, thereby excusing the performance of the other party.

If a debtor rejects an executory contract or unexpired lease, the rejection operates as a prepetition breach of the subject agreement. If an executory contract or unexpired lease is assumed by the debtor, the assumption obligates the debtor to perform under the agreement, and damages arising from any subsequent breach of the agreement are treated as administrative expenses.

#### 2.  Assumption of Executory Contracts and Unexpired Leases

Without the need to file any further motions, the District intends to assume and will assume as of the Effective Date all executory contracts and unexpired leases to which it is

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

a party and which was entered into prior to the Petition Date, except (i) for those unexpired leases and executory contracts specifically identified in subsection 3 below or (ii) as otherwise provided in the Plan.

### a.    Cure Payments

To cure any purported default or arrears under the executory contracts and unexpired leases the District plans to assume through the Plan, the District shall make the cure payments identified on Exhibit 9 to the Plan Exhibits.[14] The Bankruptcy Court shall resolve all disputes regarding: (i) the amount of any cure payment to be made in connection with the assumption of any contract or lease; (ii) the ability of the District to provide "adequate assurance of future performance" within the meaning of section 365 under the contract or lease to be assumed; and (iii) any other matter pertaining to such assumption and assignment. If any party to an executory contract or unexpired lease that is to be assumed by the District asserts that the proposed cure payment is insufficient or some other performance is required to assume the subject contract or lease, such party shall file with the Bankruptcy Court and serve upon the District a written statement and accompanying declaration in support thereof specifying the basis for its position and accounting for the purported amount owing under the subject contract or lease not later than thirty (30) days **before** the Confirmation Hearing. The failure to timely file and serve such a statement shall be deemed to be a waiver of any and all objections to the proposed assumption, including, without limitation, any objection pertaining to the adequacy of the proposed cure payment or the adequate of the assurance of prompt cure and/or of future performance.

### b.    Adequate Assurance of Prompt Cure and Future Performance

---

[14] If an executory contract or unexpired lease is not identified on Exhibit 9, the District shall not make any cure payment to any party or parties to such agreement as the District does not have any record of any outstanding amount owing under the subject agreement. The omission of the subject contract or lease, however, shall not in any way affect the assumption of the subject agreement by and through the Plan.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    What constitutes "adequate assurance" is a factual question to be determined on a

2  case-by-case basis with due regard to the nature and identify of the parties, their past

3  dealings, and present commercial realities. The District need only show that performance

4  is likely (i.e. more probable than not) in order to assume an executory contract or

5  unexpired lease pursuant to section 365. As reflected in Section VI.C. herein, the District

6  submits that the means for implementation of the Plan constitute adequate assurance of

7  both its ability to "promptly" cure the payments set forth in Exhibit 9, and for future

8  performance. Moreover, as the total amount of the cure payments is only $99,899.18,

9  which the District intends to pay in one payment in October 2020. Even if one or more of

10  the anticipated sources that will be used to fund the Plan does not materialize, the District

11  will be able to meet the cure obligations set forth in Exhibit 9.

12    **3.    Rejection of Executory Contracts and Unexpired Leases**[15]

13    Without the need to file any further motions, the District elects to reject and shall be

14  deemed to have rejected as of the Effective Date the following executory contracts and

15  unexpired leases:[16]

16    - Master Lease Agreement dated as of November 13, 2012 between the

17      District, as lessee, and General Electric Capital Corporation, as lessor, and

18      all other leases based thereon, pertaining to, among other things, a Proteus

19      X Ray XR/a 65W Radiographic System;

20    - Lease dated March 7, 2013 between the District, as lessee, and Thermo

21      Fisher Financial Services, Inc., as lessor, and/or Bank of the West, as

22      assignee of Thermo Fisher Financial Services, Inc., pertaining to an Abbott

23

24

---

25    [15] The MSA by and between the District and HCCA was rejected via stipulation prior to the preparation
26  and submission of the Plan. *See* Docket No. 377. As such, the MSA is not listed in this section. The
    exclusion of the MSA shall not in any way alter the prior rejection of the MSA or the agreement(s) of the
27  District and HCCA relation to such rejection.

      [16] Any reference contained herein to an agreement as a "lease" shall not constitute an admission
28  regarding whether the subject agreement constitutes "true lease" under applicable law.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

iSTAT 1 Upgrade from 200 Series and related equipment and documentation;

- Agreement dated October 9, 2014, between the District and Thermo Fisher Financial Services, Inc., pertaining to a VITROS 350 Chemistry System;

- Lease between the District, as lessee, and Healthland, Inc., as lessor, pertaining to certain medical billing hardware and software;

- Lease No. x005 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4453);

- Lease No. x006 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner Advance 6255 (serial number x1950);

- Lease No. x007 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to Canon ImageRunner 1730iF (serial number x4451);

- Lease No. x008 between the District, as lessee, and Canon Financial Services, as lessor, pertaining to IRA 4235 (serial number x1785), IRA 1025iF (serial number x5469), IRA 400iF (serial number x2533), IRA 400iF (serial number x1857), IRA 400iF (serial number x1862), and IR 1730iF (service only) (serial number x5155);

- Agreement between the District and Celleration Inc.;

- Agreement between the District, as employer, and Dr. Kenneth L. Saeger, as employee;

- Agreement between the District, as employer, and Dr. Milton R. Jones, as employee;

- Agreement between the District, as employer, and Dr. Steve Chong Luo, as employee;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE STATEMENT

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

- Service Agreement between the District and Laboratory Specialists International, as service provider;

- Lease between the District, as lessee, and Marlin Leasing Corporation, as lessor, pertaining to certain medical equipment, including a Horiba Medial Pentra 60 C+, two Unimac Natural Gas Dryers, and one Ultrascan table;

- Agreement between the District and T System, Inc.; and

- Agreement between the District and Tosoh Bioscience, Inc.

          a.    <u>Claims Arising from Rejection</u>

Unless otherwise agreed by the District and the counterparty or counterparties to the subject contract or lease, proofs of Claim arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court and served on the District no later than thirty (30) days after the Effective Date. The failure to properly and timely assert a rejection damages Claim shall result in such Claim being forever barred and rendered unenforceable against the District or its assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be classified into Class 4 (General Unsecured Claims) and treated accordingly.

**C.     <u>Means for Execution and Implementation of Plan</u>**

Under the Plan, the District shall be required to make Cash disbursements totaling approximately $6,019,604 to the holders of Allowed Claims over a term of approximately ten (10) years while paying an estimated $10,000,000 per year for the costs and expenses associated with maintaining the operations of the District's facilities and services, including, without limitation, costs associated with staffing, supplies and equipment, and capital expenditures for the acquisition of new property and maintenance of current property.

The Plan will be funded utilizing primarily the following sources:

- Cash on Hand. The District estimates that it will have approximately $574,100 in cash on hand on the Effective Date.

1243409.1          65          THIRD AMENDED DISCLOSURE STATEMENT

- Operations. The District estimates that it will generate approximately $10,500,000 in revenue per year as of the Effective Date from the operations, and ramping up to $15,000,000 per year by 2026.

- Federal Grants. The District estimates that it will receive approximately $540,000 per year in federal grants through its partnership with Merchant McIntyre, a federal funding lobbying group, and that funds will begin to arrive in 2020.

- Los Angeles Department of Water and Power ("**LADWP**"). The District estimates that it will receive funding from LADWP beginning in 2020 and lasting approximately five (5) years in the amount of approximately $1,000,000 per year.

- Great Basin Air Pollution Control District ("**GBAPCD**"). The District estimates that it will receive a block grant from GBAPCD in the approximate amount of $600,000 in 2020.

- Ad Valorem Tax. The District receives Ad Valorem taxes and other related taxes totaling approximately $540,000 per year. Additionally approximately $600,000 in Ad Valorem taxes have accumulated. These taxes are allegedly security for ViHF's claim and, if the Court finds that ViHF's claim is secured, will be used to pay down ViHF's claim, and any Ad Valorem taxes collected after ViHF's claim is paid in full will be used to fund the Plan. If the Court rules that ViHF does not have a secured claim, these Ad Valorem taxes will be used to fund the Plan.

- Parcel tax. The District receives parcel taxes in the approximate amount of $375,000 per year.

- Toiyabe Project. The District is working with the Toiyabe tribe in order to become the provider of health services for the tribe.

- Litigation Proceeds. As discussed supra, the District intends to commence litigation against certain individuals and entities. If successful, the District

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

may obtain damages. Such funds will be available for the payment of Claims under the Plan and the maintenance of the District's operations.

Furthermore, there are significant funds in the form of tax revenues that may be released to help fund the Plan in the event of a beneficial outcome for the District in the ViHF Adversary and/or Motion to Estimate Claims.

In sum, the District anticipates having approximately $574,100 in cash on hand on the Effective Date and $10,500,000 in revenue per year as of the Effective Date from the operations, and ramping up to $15,000,000 per year by 2026 in revenues per year[17]. As a result, and as the financial projections (Exhibit 4) reflect, the District is confident it will be able to maintain its operations so that it can continue providing desperately needed medical treatment to the community at large while making the payments required under the Plan.

**D. Distributions**

**1. Disbursing Agent**

On and after the Effective Date, the District shall serve as disbursing agent for payments to be made under the Plan and in accordance with section 944. However, the District may elect to retain one or more agents to perform or assist it in making distributions pursuant to the Plan and may provide reasonable compensation to any such agent(s) without further notice or Bankruptcy Court approval.

**2. Delivery of Distributions**

---

[17] The State of California set certain seismic standards hospitals are required to comply with by 2030, commonly known as SB 1953. SIHD's current construction does not comply with SB 1953, so it will have to either retrofit the current facility or construct a new one, though the extent is not clear as SB 1953 has been amended and the Legislature is currently considering another amendment that will change the requirements to apply only to emergency rooms, operating rooms, and post-op recovery rooms. The cost to comply with SB 1953 is currently unknown, but likely in the $10-20 million range, which SIHD intends to fund with general obligation bonds. GO bonds require 2/3 voter approval as it will impose a new tax on real property in the District. SIHD will begin the process for a GO bond election and levy in the 2021-2022 time frame. Under the current provisions of SB 1953, if the hospital is not certified as SB 1953-compliant by 2030, it will be shut down by the Office of Statewide Health Planning and Development (OSHPD).

All distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the District or its agents unless (i) the holder has designated an alternate address for payment in a proof of Claim filed with the Bankruptcy Court or (ii) specifies an alternate address on its Ballot. Any and all notifications of address changes should be addressed to Kelly Adele at Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California 92626, or kadele@wgllp.com, or to Jeffrey I. Golden at Weiland Golden Goodrich LLP, 650 Town Center Drive, Suite 600, Costa Mesa, California 92626, or jgolden@wgllp.com.

### 3. Undeliverable Distributions

***Holding of Undeliverable Distributions***. If any distribution to a holder of an Allowed Claim is returned to the District or its agent as undeliverable, no further distributions shall be made to such holder unless and until the District is notified in writing of such holder's correct address. Unless and until the District is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be set aside and held in a segregated account.

***Notification and Forfeiture of Unclaimed Property***. On the first anniversary of the Effective Date, the District will file with the Bankruptcy Court a list of Unclaimed Property, together with a schedule that identifies the name and last-known address of the individuals and entities entitled to the Unclaimed Property. The District shall not otherwise be required to attempt to locate any such individual or entity. On the second anniversary of the Effective Date, all remaining Unclaimed Property and accrued interest or dividends earned thereon will be remitted to and vest in the District. Additionally, such individuals and entities shall be deemed to have waived and forfeited their right to any future payments under the Plan and such funds shall be retained by the District. Notwithstanding the non-payment of any forfeited Claims, such Claims shall be deemed satisfied and discharged as if paid pursuant to the terms of the Plan.

### 4. Distribution of Cash

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Any payment of Cash to be made by the District or its agent pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole option of the District.

### 5. Timeliness of Payments

Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within fourteen (14) Business Days after the date(s) specified in the Plan. Whenever any distribution to be made under the Plan is due on a day that is not a Business Day, such distribution instead shall be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

### 6. Default and Cure

In the event the District fails to make any payment required under the Plan in a timely manner, the affected creditor(s) shall serve the District with a notice of default not later than thirty (30) days after the purported default along with any documentation supporting the alleged default. Not later than sixty (60) days after receipt of the notice of the purported default, the District shall either (i) cure the default or (ii) serve the affected creditor(s) with a statement and supporting documentation contesting the allegation of default. In the event the District contests an alleged default, not later than five (5) Business Days after serving a response to a purported default, the District shall file a motion with the Bankruptcy Court requesting a resolution of the dispute relating to the alleged default and set the motion for hearing on the first available hearing date not sooner than fourteen (14) days after filing the motion. If the Bankruptcy Court rules that the non-payment constitutes an event of default under the Plan, the District shall cure the purported default not later than five (5) Business Days following the entry of a Final Order of the Bankruptcy Court adopting the finding with respect to the purported default.

### 7. Compliance with Tax Requirements

Any and all distributions pursuant to the Plan shall be subject to any applicable tax withholding and reporting requirements imposed on it by any governmental unit. In

1   connection with each distribution which requires the filing of an information return (such as

2   Internal Revenue Service Form 1099 or 1042) or withholding, the District shall file such

3   information return with the Internal Revenue Service and provide any required statements

4   in connection therewith to the recipients of such distribution, or effect any such withholding

5   and deposit all moneys so withheld to the extent required by law. With respect to any

6   entity from whom a tax identification number, certified tax identification number, or other

7   tax information is required by law to avoid withholding has not been received by the

8   District at the time the district is to be made, the District, at its sole option, may withhold

9   the amount required and distribute the balance to such entity or the District may decline to

10  make such distribution(s) until the information is received.

11              **8.      Time Bar to Cash Payments**

12          Checks issued by the District on account of Allowed Claims will be null and void if

13  not negotiated within ninety (90) days from and after the date of issuance thereof.

14  Requests for reissuance of any check shall be submitted in writing to Jeffrey I. Golden via

15  first-class mail addressed to Kelly Adele, Weiland Golden Goodrich LLP, 650 Town

16  Center Drive, Suite 600, Costa Mesa, California 92626, or via email addressed to

17  kadele@wgllp.com. Any request for reissuance of an expired check must be not later than

18  180 calendar days following the initial issuance of the subject check. After such date, the

19  amounts stated in the voided check(s) shall be deemed forfeited and the District shall

20  retain such funds. Any amounts forfeited pursuant to the preceding sentence shall be

21  deemed paid to and received by the subject claimant for purposes of calculating the

22  amounts owing to such creditor under the Plan.

23              **9.      No *De Minimis* Distributions**

24          With the exception of Class 5 Claims (Convenience Class Claims), no payment of

25  less than ten dollars (US$10.00) will be made by the District on account of any Allowed

26  Claim.

27              **10.     No Distributions on Account of Disputed Claims**

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1243409.1

THIRD AMENDED DISCLOSURE
STATEMENT

Notwithstanding anything to the contrary in the Plan, no distributions shall be made on account of any part of any Disputed Claim or Disallowed Claim unless and until such Claim becomes an Allowed Claim and only to the extent such Claim constitutes an Allowed Claim. Distributions made after the Effective Date with respect to Claims that were not Allowed Claims as of the Effective Date, but are later determined to be Allowed Claims, shall be deemed to have been made on time and in accordance with the terms of the Plan.

If any distributions are made prior to the resolution of a dispute pertaining to a Claim, the portion that would be payable on account of such Claim if such Claim was an Allowed Claim, shall be held in a segregated bank account. If the Claim is subsequently adjudicated to be an Allowed Claim, the segregated funds shall be distributed to the holder of such Claim. Any interest accrued on account of the segregated funds shall be paid to and retained by the District.

### 11. No Post-Petition Date Accrual

Unless otherwise specifically provided in the Plan, specifically agreed to by the District in writing, or allowed by Final Order of the Bankruptcy Court, the District will not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

### E. Disputed Claims; Objections to Claims; Prosecution of Objections to Disputed Claims

### 1. Claim Objection Deadline; Prosecution of Objections

The District shall have the right to object to the allowance of Claims with respect to which liability or allowance is disputed in whole or in part. Unless otherwise ordered by the Bankruptcy Court, the District shall file and serve any such objections to Claims (whether by motion or commencement of an adversary proceeding) by not later than one hundred and eighty (180) days after the Effective Date or, in the case of Claims properly filed after the Effective Date, by not later than one hundred and eighty (180) days after the date of filing of such Claims.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

**2. Reserves, Payments, and Distributions with Respect to Disputed Claims**

At such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the District or its agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in the manner set forth in the Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, but in no event more than sixty (60) days thereafter, unless otherwise provided in the Plan, order of the Bankruptcy Court, or agreement between the District and the subject Claim holder. Unless otherwise specifically provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest will be paid on Disputed Claims that later become Allowed Claims.

**F. Continuing Jurisdiction of the Bankruptcy Court**

The Plan provides for the Bankruptcy Court to retain jurisdiction over various matters relating to the Chapter 9 Case, the Plan, and other related items. Readers are encouraged to review the Plan carefully to ascertain the nature of the Bankruptcy Court's continuing jurisdiction following the Effective Date.

**VII. CONFIRMATION AND EFFECTIVE DATE OF THE PLAN**

**Because the law with respect to confirmation of a plan of adjustment is complex, creditors concerned with issues regarding confirmation of the Plan should consult with independent counsel and/or a financial advisor.** The following discussion is intended solely for the purpose of providing basic information concerning certain confirmation issues. The District cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements discussed in this Disclosure Statement include acceptance of the Plan by the requisite number of creditors and whether the Plan is in the "best interests" of creditors. These requirements, however, are not the only requirements for

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1　confirmation and the Bankruptcy Court will not confirm the Plan unless and until it

2　determines that the Plan satisfies all applicable requirements, including requirements

3　which may not be discussed or referenced in this Disclosure Statement.

4　　　　　**A.**　**Voting and Right to be Heard at Confirmation**

5　　　　　**1.**　**Who May Support or Object to Confirmation of the Plan?**

6　　　　Any party in interest may support or object to the confirmation of the Plan. Even

7　parties in interest that may not have a right to vote on the Plan (e.g., individuals and

8　entities in Unimpaired Classes) may still have a right to support or object to confirmation

9　of the Plan by filing pleadings supporting or objecting to confirmation of the Plan.

10　　　　　**2.**　**Who May Vote to Accept or Reject the Plan**

11　　　　A creditor generally has the right to vote for or against the Plan if its Claim is both

12　(i) an Allowed Claim for purposes of voting and (ii) classified in an Impaired Class.

13　Generally, a Claim is deemed allowed if a proof of Claim was timely filed or the Claim is

14　scheduled as undisputed, non-contingent and liquidated; *provided, however*, that if an

15　objection to the Claim has been filed or raised in the Plan or otherwise, or a Claim is

16　otherwise disputed or contested, the claimant cannot vote unless and until the Bankruptcy

17　Court, after notice and a hearing, either overrules the objection or allows the Claim for

18　voting purposes.

19　　　　The holders of the following types of Claims <u>are not</u> entitled to vote on the Plan: (a)

20　Disallowed Claims; (b) Claims that are subject to a pending objection (whether by way of

21　the Plan or independent motion or adversary proceeding) and that have not been allowed

22　for voting purposes; (c) Claims that are not Impaired under the Plan; (d) Administrative

23　Claims, since such Claims are not placed in Classes and are required to receive specific

24　treatment; and (e) Professional Claims, since such Claims are not placed in Classes.

25　　　　Each holder of an Allowed Claim classified into one or more of the Voting Classes

26　shall be entitled to vote each such Claim to accept or reject the Plan.

27　　　　　**3.**　**Votes Required to Confirm Plan**

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

The Bankruptcy Court cannot confirm the Plan unless, among other things, (a) at least one Impaired Class has accepted the Plan without counting the votes of any Insiders within that Class and (b) either all Impaired Classes have voted to accept the Plan, or the Plan can be "crammed-down" with respect to each and every dissenting Impaired Class.

A Class of Claims is considered to have accepted the Plan when more than one-half in number **and** at least two-thirds in dollar amount of the Claims that actually voted in that Class have voted in favor of the Plan.

**B.     The "Best Interests" Test**

The Bankruptcy Court also must determine pursuant to section 943(b)(7) that the Plan is in the "best interests of creditors", which in the chapter 9 context means that the treatment of Claims under the Plan must be better than the only meaningful alternative available, which is dismissal of the Chapter 9 Case. The District submits that the Plan is in the best interests of all creditors because significant payments will be made to all Impaired Classes, and holders of Allowed Claims in all Impaired Classes will receive greater distributions under the Plan than those creditors would receive were the Chapter 9 Case dismissed. *See* Exhibit 4 to Plan Exhibits.

In contrast, in the absence of the Plan, the District's creditors would be left to "fend for themselves." Individual creditor collection actions would likely aggregate, through suits and attachments, to make continued operation of the District's facilities untenable (if not impossible), thus eliminating the ability to pay the obligations of the District. More precisely, but for the adjustment to its obligations proposed through the Plan, the District will not be unable to alter the treatment of certain Claims, including General Unsecured Claims. The District will also lose the benefits afforded to debtors under the Bankruptcy Code, which, in essence, would result in substantial interference in the operations of the Hospital, the SNF, and/or the Clinic as creditors sought to recover collateral and levy against the District's assets to satisfy their Claims, which would prevent the District from utilizing those assets to maintain operations and pay its obligations in an orderly and equitable fashion over a term of years. Furthermore, the District would likely be unable to

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

resolve disputes regarding certain purported Claims (including, without limitation, the

Claim asserted by Optum Bank) without the need for costly and protracted litigation—

expenses that would further diminish, if not decimate, operational capabilities. As a result

of the foregoing, the proposed ballot initiatives underpinning the Plan would likely fail as

the District would be unable to maintain its operations or establish a long-term work-out

plan for the payment of its obligations in the face of operational difficulties causes by the

debt collection efforts of its creditors and the costs of litigation. In short, the District cannot

afford to pay its creditors absent the debt relief afforded by the Plan, and dismissal of the

Chapter 9 Case would likely result in chaos, the closure of the District's facilities and

cessation of its services, and, thus, an inability to not only pay most (if not all) of its

creditors, but an inability to continue providing essential services to the community at

large.

### C.    **Feasibility**

To satisfy the requirement set forth in section 943(b)(7) that the Plan be feasible,

the District must demonstrate the ability to make the payments required under the Plan

while maintaining its operations at the level necessary to the continued viability of the

health care district. Based on the District's analysis of operational revenues, anticipated

bond revenues, and supplemental tax revenues, as well as the projected Plan

distributions, the District is confident it possesses the financial ability to maintain its

current operations, which is necessary to continue providing services to the community,

while simultaneously meeting its obligations under the Plan. Indeed, based on the

financial projections (see Exhibit 4), the District will be able to maintain a positive cash

position while servicing operational and Plan debts and simultaneously maintaining a

reserve for future expenditures, including capital expenditures. The District's projections

contemplate two scenarios. The first is a "worst case" scenario whereby the Court finds

that Optum is entitled to fully secured claim and ViHF is entitled to a fully secured claim.

The second is a scenario whereby HCCA's claim is secured only by the personal property

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

of the District. Since even the "worst case" scenario is feasible pursuant to the projections (see Exhibit 4), the District submits that the Plan is feasible.

**D.    "Cramdown"**

The Bankruptcy Code provides that the Bankruptcy Court may confirm a plan of adjustment that is not accepted by all Impaired Classes if at least one Impaired Class of Claims accepts the Plan and the so-called "cramdown" provisions set forth in sections 1129(b)(1),  (b)(2)(A) and  (b)(2)(B) are satisfied. The Plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of section 943(b), it (a) is "fair and equitable," and (b) does not discriminate unfairly with respect to each Class of Claims that is Impaired under and has not accepted the Plan. The District believes that the Plan satisfies the foregoing requirements and, as such, may be confirmed over the objection of any dissenting Class of Claims.

**As noted above, the District has reserved the right to request that the Bankruptcy Court confirm the Plan by "cramdown" in accordance with sections 1129(b)(1),  (b)(2)(A) and  (b)(2)(B).**

**E.    Conditions Precedent**

**1.    Condition Precedent to Confirmation**

The Plan shall not be confirmed unless and until the following conditions precedent have been satisfied or waived: (1) the Plan satisfies the requirements of section 943(b) of the Bankruptcy Code, as applicable; (2) the District has received any and all authorizations, consents, regulatory approvals, rulings, no-action letters, opinions, and documents that are necessary to implement the Plan and that are required by law, regulation or order, including, but not limited to, those required under section 943(b)(6) of the Bankruptcy Code; and (3) the Bankruptcy Court enters a Confirmation Order in a form and substance satisfactory to the District.

**2.    Conditions Precedent to Effective Date**

The Plan will not become effective and operative unless and until the Effective Date occurs. Section XIII of the Plan sets forth certain conditions to the occurrence of the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Effective Date. The Effective Date will occur on the first Business Day after which the

2  conditions set forth in Section XIII.B of the Plan are satisfied or waived. Based on

3  currently available information, the District anticipates that the Effective Date will occur in

4  or about April 2020.

5               **3.     Non-Occurrence of Effective Date**

6               The Plan provides that, if the Bankruptcy Court confirms the Plan but the conditions

7  precedent to the Effective Date thereof are not satisfied, upon notification submitted by the

8  District to the Bankruptcy Court: (i) the Confirmation Order shall be vacated, (ii) no

9  distributions under the Plan shall be made, (iii) the District and all holders of Claims shall

10 be restored to the *status quo ante* as of the day immediately preceding the Confirmation

11 Date as though the Confirmation Date never occurred, and (iv) all of the District's

12 obligations with respect to the Claims shall remain unchanged and nothing contained

13 herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or

14 against the District or any other entity or to prejudice in any manner the rights, remedies,

15 or claims of the District or any entity in any further proceeding involving the District.

16              **4.     Waiver of Conditions Precedent to Effective Date**

17              Under the Plan, the District may waive in whole or in part any condition to the

18 Effective Date of the Plan or the payment of any Effective Date Payments. Any such

19 waiver of a condition may be effected at any time, without notice or leave or order of the

20 Bankruptcy Court and without any formal action, other than the filing of a notice of such

21 waiver with the Bankruptcy Court.

22      **F.     <u>Effect of Confirmation</u>**

23              Confirmation of the Plan and the occurrence of the Effective Date will have a

24 number of important and binding effects, some of which are summarized below. Readers

25 are encouraged to review Section XI of the Plan carefully and in its entirety to assess the

26 various consequences of confirmation of the Plan.

27              **1.     Dissolution of the Committee**

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1243409.1                           77

1       On the Effective Date, the Committee shall be released and discharged of and from

2 all further authority, duties, responsibilities, and obligations relating to and arising from

3 and in connection with the Chapter 9 Case and the Committee shall be deemed dissolved

4 and its appointment terminated. Any professionals retained by the Committee and/or the

5 members thereof shall not be entitled to compensation or reimbursement of expenses for

6 any services rendered or expenses incurred.

7       **2.**     **Discharge of the District**

8       Pursuant to section 944, upon completion of all payments required under the Plan,

9 the District shall be discharged from all debts (as defined in the Bankruptcy Code) of the

10 District and Claims against the District other than (i) any debt specifically and expressly

11 excepted from discharge by the Plan or the Confirmation Order and (ii) any debt owed to

12 an entity that, before the confirmation of the Plan, had neither notice nor actual knowledge

13 of the Chapter 9 Case.

14       The rights afforded in the Plan and the treatment of all holders of Claims, whether

15 Impaired or Unimpaired, shall be in exchange for and in complete satisfaction, discharge

16 and release of all Claims of any nature whatsoever arising on or before the Effective Date,

17 known or unknown, including any interest accrued or expenses incurred thereon from and

18 after the Petition Date, whether against the District or any of its properties, assets or

19 interests in property.

20       **3.**     **Injunction**

21       Except as otherwise expressly provided in the Plan, all entities who have held, hold

22 or may hold Pre-Confirmation Date Claims shall be permanently enjoined from and after

23 the Confirmation Date from: (i) commencing or continuing in any manner any action or

24 other proceeding of any kind with respect to any such Pre-Confirmation Date Claims

25 against the District or its property; (ii) enforcing, attaching, collecting, or recovering by any

26 manner or means any judgment, award, decree or order against the District or its property

27 with respect to such Pre-Confirmation Date Claims; (iii) creating, perfecting, or enforcing

28 any lien or encumbrance of any kind against the District or its property; and (iv) asserting

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

any right of setoff, subrogation or recoupment of any kind against any obligation due to the District with respect to any such Pre-Confirmation Date Claims.

### 4. Term of Existing Injunctions and Stays

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 9 Case pursuant to sections 105, 362, or 922, or otherwise, and in existence immediately prior to the Confirmation Date, shall remain in full force and effect unless and until the District receives a discharge in accordance with Section XI.A. of the Plan.

### 5. Exculpation

Except with respect to obligations specifically arising pursuant to or preserved in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, obligation, cause of action or liability for any Claim in connection with or arising prior to or on the Effective Date for any act taken in connection with, or related to, (i) the administration of the Chapter 9 Case, (ii) the negotiations, pursuit, confirmation, solicitation of votes for, consummation or implementation of the Plan, (iii) the administration of the Plan or property to be distributed under the Plan, (iv) the Cal. Gov't Code § 53760 process or compliance therewith, (v) any document, release, contract, or other instrument entered into in connection with, or related to, the Plan, and/or (vi) any other transaction contemplated by or entered into in connection with the Plan or entered into during the administration of the Chapter 9 Case; *provided*, *however*, that nothing shall be deemed to release or exculpate any Exculpated Party for its willful misconduct or gross negligence. In all respects, each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.

### 6. Good Faith Compromise

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including, without limitation, the exculpation provisions, constitute a good faith compromise and settlement of all Claims, causes of action and/or controversies relating to any and all rights that a holder of a Claim may have against the District, any

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1 distributions to be made pursuant to the Plan on account of any such Claim, and any and

2 all Claims and causes of action of any party. The entry of the Confirmation Order

3 constitutes the Bankruptcy Court's approval, effective as of the Effective Date, of the

4 compromise or settlement of all such Claims and/or controversies and the Bankruptcy

5 Court's finding that all such compromises or settlements are in the best interests of the

6 District and the holders of Claims, and are fair, equitable, and reasonable.

7 **VIII.     RESERVATION OF RIGHTS OF ACTION**

8        Any and all claims, causes of action, rights of recovery, rights of offset, rights of

9 recoupment, rights to refunds, and similar rights held by the District shall be retained by

10 the District, including, without limitation, the claims and causes of action alleged in the

11 Optum Adversary. The failure to identify any potential or existing Right of Action retained

12 by the District is not intended to and shall not limit the rights of the District to pursue any

13 such action(s). Unless a Right of Action is expressly waived, relinquished, released,

14 compromised, or settled (in the Plan or otherwise), the District expressly reserves all

15 Rights of Action for later adjudication and, as a result, no preclusion doctrine, including the

16 doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel

17 (judicial, equitable, or otherwise), or laches, shall apply to such Rights of Action upon or

18 after the Confirmation Date. In addition, the District expressly reserves the right to pursue

19 or adopt against any other entity any claims alleged in any lawsuit in which the District is a

20 defendant or an interested party.

21 **IX.     RISK FACTORS**

22        Holders of Claims against the District should read and consider carefully the factors

23 set forth below, as well as the other information set forth in this Disclosure Statement and

24 the documents delivered with this Disclosure Statement and/or incorporated by reference,

25 prior to voting to accept or reject the Plan. These risk factors should not, however, be

26 regarded as constituting the only risks involved in connection with the Plan and its

27 implementation.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1243409.1

80

As discussed herein, the Plan is premised on revenues from four principal sources—namely, (i) operational revenues, (ii) federal funding, (iii) partnerships with other entities, and (iv) funds received from LADWP and GBAPCD.

1. With respect to the addition of new services, the District has already began to implement some but not all of the potential new services, and as a result there is a risk that the costs of acquiring the necessary equipment and establishing the treatment facility may exceed the cost estimates, that the operational expenses may exceed the estimated costs, and/or that the demand for such services may be less than the projected demand—thereby reducing the anticipated revenues.

2. With respect to the federal funding and federal grants anticipated by the District, while the District is confident that such grants will be forthcoming, there is a possibility that Merchant McIntyre will be unsuccessful in obtaining federal grants for the District.

3. With respect to the potential revenues from both LADWP and GBAPCD, neither are definite, however both are in the later stages of negotiations. There is a possibility that the amounts received from both LADWP and GBAPCD are smaller than projected.

4. With respect to potential litigation revenues, the District may not prevail in the potential litigation described herein. If the District is unsuccessful, the District may not receive the potential damages awards or may be required to pay certain sums to creditors, including, without limitation, Optum and ViHF. The District, however, does not require the potential damages awards to perform under the Plan and, moreover, has provided for the contingency that the Claims of Optum and/or ViHF are adjudged to be Allowed Secured Claims.

5. The Plan also relies upon operational revenues from the Hospital, the SNF, and the Clinic to fund operations and pay Allowed Claims under the Plan. As

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

1    such, there are several risks related to the District's operations that may

2    affect the Plan, including the following:

3         a.     The demand for medical services in Inyo County may decline

4              and, thus, decrease revenues;

5         b.     Reimbursement from insurance companies and governmental

6              programs (e.g., Medicare and MediCal) may decrease and,

7              thus, decrease revenues; and

8         c.     Costs associated with operating the business (e.g., payroll,

9              medicine, equipment, medical supplies, utilities, etc.) may

10              increase and, thereby, decrease net revenues.

11      There is also a risk that the amount of the Allowed Claims may be greater than

12 currently estimated, in which case distributions to creditors may be reduced.

13 **X.**      **FEDERAL INCOME TAX CONSEQUENCES**

14      The implementation of the Plan may have federal, state, local and foreign tax

15 consequences to the District and its creditors. No tax opinion has been sought or will be

16 obtained with respect to any tax consequences of the Plan. This Disclosure Statement

17 does not constitute and is not intended to constitute either a tax opinion or tax advice to

18 any person, and the summary contained herein is provided for informational purposes

19 only. However, because the District is a municipality and, thus, is treated as a political

20 subdivision of the State of California for federal income tax purposes, the District believes

21 that it will not be subject to any federal income tax liability from the implementation of the

22 Plan.

23      As individual circumstances may differ, and the income tax consequences of a

24 chapter 9 case are complex and uncertain, this summary does not address the federal

25 income tax consequences that may be relevant to the creditors of the District as a result of

26 the Plan. Accordingly, creditors should consult with their own tax advisors regarding the

27 potential income tax consequences of the Plan as it pertains to them.

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1       To ensure compliance with requirements imposed by the Internal Revenue

2  Service, you are hereby notified that any discussion of tax matters contained herein

3  (including any attachments) is not intended or written to be used by any taxpayer,

4  and cannot be used by any taxpayer, for the purpose of avoiding tax-related

5  penalties that otherwise may be imposed under the Internal Revenue Code on the

6  taxpayer. Such discussion of tax matters was written in connection with the

7  solicitation of votes in favor of the Plan. The District and its creditors should seek

8  tax advice regarding the tax consequences to them of the Plan based on their

9  particular circumstances from an independent tax advisor.

10  XI.    <u>RECOMMENDATION AND CONCLUSION</u>

11       The District believes that confirmation and implementation of the Plan represents

12  the best option for the District and its creditors. Accordingly, **the District urges holders**

13  **of Impaired Claims to vote to accept the Plan by so indicating on their Ballots and**

14  **returning them as specified in this Disclosure Statement and on their Ballots.**

15

16  Dated: November 8, 2019        SOUTHERN INYO HEALTHCARE DISTRICT

17

18                        By:

19                            Jaque Hickman

                             President of the Board of Directors for

20                             Southern Inyo Healthcare District

21

22

23  Dated: November 8, 2019        WEILAND GOLDEN GOODRICH LLP

24

25                        By:    */s/ Jeffrey I. Golden*

26                             Jeffrey I. Golden

                             Attorneys for Debtor

27                             Southern Inyo Healthcare District

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1243409.1                  83            THIRD AMENDED DISCLOSURE
                                        STATEMENT