**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Ryan W. Beall, State Bar No. 313774
rbeall@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtor
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>SOUTHERN INYO HEALTHCARE DISTRICT,<br><br>Debtor. | Case No. 1:16-bk-10015-FEC<br><br>Chapter 9<br><br>FEC-5<br><br>**DEBTOR'S OPPOSITION TO ORDER TO SHOW CAUSE REGARDING DISMISSAL**<br><br>**Hearing**:<br>Date:    December 4, 2019<br>Time:    9:00 a.m.<br>Place:    501 I. Street<br>            Sacramento, CA 95814<br>            Courtroom 28 |

**TO THE HONORABLE FREDRICK E. CLEMENT, UNITED STATES BANKRUPTCY JUDGE:**

     Debtor, Southern Inyo Healthcare District (the "Debtor" or "District") hereby submits the following *Opposition to Order to Show Cause Regarding Dismissal* ("Opposition") to the Court's Order to Show Cause Regarding Dismissal ("OSC") issued on November 7, 2019 [Dkt. 751].

**I.    INTRODUCTION**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ......................................................................................2

    A. The District's Impact on the Community ...................................2

    B. The Bankruptcy Case ..................................................................4

    C. The District's Post-Petition Debt ................................................4

III. THE COURT SHOULD NOT DISMISS THE CASE PURSUANT TO THE OSC ..................................................................................................6

    A. Cause Does Not Exist to Dismiss the Case Pursuant to 11 U.S.C § 930(a) ............................................................................6

        1. Post-Petition Debts Need Not Be Paid in the Ordinary Course of Business in Chapter 9 ..................7

        2. Administrative Claims in Chapter 9 ...............................9

        3. Chapter 11 Post-Petition Claims are Distinguishable ..10

        4. The Court Should Refrain from Dismissing the Case Pursuant to Other Considerations Including the Filed Third Amended Plan ....................................................11

    B. The Court Does Not Have Authority to Interfere With the District's Property or Revenue by Dismissing the Case Pursuant to the Cause Stated in the OSC .............................12

        1. Court has Limited Authority in Chapter 9 ....................13

        2. The District's Right to Consent .....................................13

        3. Chapter 9 Limitation on Court's Authority ...................15

IV. CONCLUSION......................................................................................17

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ass'n of Retired Employees of the City of Stockton v. City of Stockton (In re City of Stockton)*, 478 B.R. at 13 ....................................................... 10

*Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092 (9th Cir. 2004) ............................................................ 9

*In re City of Desert Hot Springs*, 339 F.3d 782 (9th Cir. 2003) ....................... 9

*In re City of San Bernardino, Cal.*, 499 B.R. 776 (Bankr. C.D. Cal. 2013) ... 11

*In re City of Stockton, Cal.*, 478 B.R. 8 (Bankr. E.D.Cal. 2012) ....... 13, 15, 16

*In re City of Vallejo*, 403 B.R. 72 (Bankr. E.D. Cal. 2009) ............................ 10

*In re Connolly North America, LLC*, 802 F.3d 810 (6th Cir. 2015) ................. 9

*In re County of Orange*, 179 B.R. 195 (Bankr. C.D. Cal. 1995) ............. 14, 15

*In re Jefferson County, Ala.*, 484 B.R. 427 (Bankr. N.D. Alabama 2012) ....... 9

*In re JZ L.L.C.*, 371 B.R. 412 (9th Cir. B.A.P. 2007) ...................................... 9

*In re New York City OffTrack Betting Corp.*, 434 B.R. 131 (Bankr. S.D.N.Y. 2010) ............................................................................................... 10, 14

*In re Orange County*, 179 B.R. 195 (Bankr. C.D. Cal. 1995) ......................... 9

*In re Richmond Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991) ......... 8

*In re Valley Health System*, 429 B.R. 692 (Bankr. C.D. Cal. 2010) .... 9, 11, 14

*Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091 (9th Cir. 1995) ....................................................................................... 9

*Smith v. Kennedy (In re Smith)*, 235 F.3d 472 (9th Cir. 2000) ........................ 9

**Statutes**

11 U.S.C § 503(b)(1)(A) ....................................................................... 8, 9, 10

11 U.S.C § 1112 ............................................................................................. 8

11 U.S.C. § 105 ............................................................................................ 14

11 U.S.C. § 362(a) ......................................................................................... 8

11 U.S.C. § 363 ............................................................................................ 14

11 U.S.C. § 364(c) ......................................................................................... 8

## **TABLE OF AUTHORITIES (cont.)**

**Page(s)**

11 U.S.C. § 365 ............................................................................................... 8

11 U.S.C. § 503 ............................................................................................. 10

11 U.S.C. § 541 ..................................................................................... 10, 14

11 U.S.C. § 544 ............................................................................................... 8

11 U.S.C. § 549 ............................................................................................... 8

11 U.S.C. § 901(a) .................................................................................... 8, 14

11 U.S.C. § 904 .................................................... 2, 8, 10, 13, 16, 17

11 U.S.C. § 922(a) .......................................................................................... 8

11 U.S.C. § 930 .................................................................. 2, 6, 7, 11, 12

11 U.S.C. § 944 ............................................................................................... 9

11 U.S.C. § 1107 ............................................................................................. 8

**Other Authorities**

5 WILLIAM J. NORTON, JR. WILLIAM L. NORTON III, NORTON BANKRUPTCY LAW
    AND PRACTICE § 90:3 ............................................................................. 10

6 COLLIER ON BANKRUPTCY ¶ 901.04[13][a] ................................................. 10

6 COLLIER ON BANKRUPTCY ¶ 904.01 (Richard Levin & Henry J. Sommer
    eds.,16th ed. Rev. 2010) ...................................................................... 13

COLLIER ON BANKRUPTCY ¶ 930.02[1] (16th ed. Rev. 2010) .......................... 11

The Court should not dismiss the case for the legal and factual reasons set forth below. No provision of the Bankruptcy Code requires that the District pay all post-petition debts in the ordinary course of business in chapter 9. No cause to dismiss the case pursuant to 11 U.S.C. § 930(a) exists in this case.

The District does not consent to an adjudication whether failure to pay undisputed post-petition debts constitutes cause under section 930(a). Therefore, dismissal of the bankruptcy case on those grounds would violate the Court's limited authority under 11 U.S.C. § 904, which prohibits a bankruptcy court from interfering with a chapter 9 debtor's property or revenues or income-generating property, notwithstanding any other power of the court, including section 930.

Finally, dismissal is not in the best interests of the District, its creditors, or the community. The District has filed a Third Amended Plan and proposes to provide more favorable treatment to its creditors through the plan than would be available to creditors if the case was dismissed. Therefore, even if the Court finds that it has the authority to dismiss this case for the reasons stated in the OSC and that failure to pay undisputed post-petition debts in the ordinary course of business constitutes cause under section 930(a), the Court should refrain from dismissing the case especially given the prospect for confirmation the Third Amended Plan. In addition, dismissal will have a significant impact on the community served by the District in its access to health care, jobs, and sources of revenue.

## II. BACKGROUND

### A. The District's Impact on the Community

Inyo County is the second largest county in the State of California covering over 10,220 square miles including Mount Whitney and Death Valley. This diverse and extreme environmental landscape brings a unique set of logistical challenges to health services providers in Inyo County. The District serves the largest share of the square mileage in the county making it the only critical access hospital for hundreds of miles. The District serves the most ethnically diverse population in Inyo County and is relied upon by other

regional health providers, like the Toiyabe Health Project, to provide emergency, radiology, laboratory, and skilled nursing care and rehabilitation services.

Further, the District serves as a vital link in the county emergency medical services system for Inyo County. For instance, the District is a primary participant in the mountain search and rescue service providing emergent care for mountain accidents and other lifesaving medical emergencies covering the Southern Eastern Sierra mountain range.

Losing the District as the critical access hospital serving all of Southern Inyo County would create an untenable situation where individuals are left with the loss of proximity and access to high quality local, CMS licensed critical access hospital. The District is situated approximately 60-70 miles from the next closest medical facility.

In addition to providing critical health services, the District provides employment opportunities for those it serves. The most common employment sectors for those who live in Inyo County, California, are Health Care & Social. In fact, the District is the third largest employer in the region according the Lone Pine Chamber of Commerce. The economic impact of the District extends beyond just employment to those whose services or product the District utilizes in its operations. The economic impact of the District for the region is estimated at $8-10 million on an annual basis according to the Lone Pine Chamber of Commerce.

After closing operations in 2015, the District was re-opened in 2016. During that time until today, the volume of health services provided at the District has steadily grown, with the last 2 years reaching pre-close volumes. Volumes during 2018-2019 are showing substantial growth. With the addition of new management in August 2019, during the last 3 months the District is meeting/exceeding budgeted volumes and improving brand image/reputation image in the District and increasing operation efficiency.

There are a number of key growth metrics. Since 2016, there have been 4,561 emergency room visits. In that time, the District has had 528 Swing bed patient days, and currently has 2 patients per day in Swing beds. There have been nearly 1,200 "billed days" for residents who have used services at the skilled nursing facility ("SNF"). More

than 700 patients have been treated at the District's clinic. The District is extremely important to the Southern Inyo community, and its shut-down would have far reaching ramifications.

### B. The Bankruptcy Case

The District filed a chapter 9 bankruptcy petition in this district, commencing case number 1:16-bk-10015-FEC, on January 4, 2016. An Order for Relief Under Chapter 9 was issued by the Court on July 12, 2016 [Dkt. 195].

On October 7, 2019, two creditors, Rapid Temp, Inc. and Tijuana LLC filed nearly identical Motions for Relief from Stay and/or Motion for Administrative Expenses [Dkts. 671 and 676]. The motions for relief from stay were heard on November 12, 2019. The Court, at the hearing, granted relief from stay but denied the creditors' request for administrative claims.

On November 7, 2019, the Court referencing the motions for relief from stay, issued the OSC requiring the District to show cause why the case should not be dismissed for failure to pay undisputed post-petition debts in the ordinary course of business [Dkt. 751].

On November 8, 2019, the District filed its Third Amended Plan [Dkt. 753] and Third Amended Disclosure Statement [Dkt. 754]. On November 13, 2019, the District filed a notice of errata and the correct Third Amended Plan [Dkt. 763], Third Amended Disclosure Statement [Dkt. 764], and Exhibits to Third Amended Plan [Dkt. 765]. The plan was filed timely according to the Court's imposed deadlines, and the District believes that the plan is confirmable. The District has set a hearing on the Third Amended Disclosure Statement, and believes that confirmation of the plan is likely to occur within a reasonable time.

### C. The District's Post-Petition Debt

The District has generally been paying its undisputed post-petition debt in the ordinary course of business, or has otherwise worked out agreements with post-petition creditors. The District pays a significant amount of expenses every month to post-petition

creditors. Nearly all of the District's post-petition creditors are being paid, either according to the terms of any contract the creditor has with the District, or pursuant to oral or written agreements between the District and the creditor. The District is negotiating with the few remaining creditors that have undisputed post-petition claims that are not currently being paid and the District hopes to have agreements with them soon.

Certain post-petition creditors, including the creditors referenced by the Court in the OSC, are not receiving payment due to the fact that the District disputes their claims. The District is paying post-petition creditors that have undisputed debts that are currently providing services to the District in the ordinary course of business or through another arrangement worked out between the creditor and the District. Furthermore, the District is working diligently to reach agreements with creditors, including the ones referenced in the OSC, who have post-petition claims that are disputed by the District.

For example, the District has recently settled its extensive litigation with Healthcare Conglomerates Associates and Vi Healthcare Finance, Inc., subject to documentation. The District is engaging in settlement discussions with the creditors referenced in the OSC and intends to have reached a settlement with such creditors in short order. Settlement discussions are currently pending between the District and Optum Bank. Finally, the District has worked out numerous agreements, oral and written, with various post-petition creditors in order to work out a payment plan that is feasible for the District.

The District had significant financial problems at the commencement of this case. For that reason, the District was unable to pay all of its creditors in full, as their debts became due, and was forced to prioritize certain expenses in order to continue operations. The District did so by engaging with, and reaching oral or written agreements, with nearly all post-petition creditors that were not receiving full payment as their debts became due. The District has since turned a financial corner and the financial prospects for success of the plan is both likely and feasible. The plan proposes payment to creditors, including post-petition creditors, in excess of what creditors would receive if the case was dismissed.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

## III. THE COURT SHOULD NOT DISMISS THE CASE PURSUANT TO THE OSC

### A. Cause Does Not Exist to Dismiss the Case Pursuant to 11 U.S.C. § 930(a)

While the Court may, but is not required to, dismiss a chapter 9 case pursuant to section 930, the Court should not do so here since (a) cause does not exist to dismiss the case and (b) even if cause did exist to dismiss the case, the Court should evaluate other considerations in the case to determine that dismissal is not warranted. Failure to pay post-petition debts in the ordinary course of business is not one of the enumerated grounds for dismissal under section 930(a) nor is it cause under section 930(a)'s "general cause" provision.

The proposition that failure to pay post-petition debts in the ordinary course of business is cause for dismissal pursuant to section 930(a) is not supported by any legal authority or precedent, either in the Bankruptcy Code or in other chapter 9 cases and appears to be premised upon the assumption that post-petition claims constitute administrative claims which are not being paid in the ordinary course of business. The District is generally paying its post-petition debt in the ordinary course of business, or has reached agreements with post-petition creditors regarding different payment terms. Almost no post-petition debt is entitled to administrative priority and full and prompt payment in chapter 9, and the District has identified several chapter 9 plans that were confirmed with unpaid post-petition debts remaining outstanding and/or classifying unpaid post-petition creditors as general unsecured creditors[1]. In this case, the administrative claims are no more than a few thousand dollars. Therefore, failure to pay some post-petition debt in the ordinary course of business, which may be disputed and certainly is not entitled to administrative priority, is not cause to dismiss a case under § 930(a).

---

[1] *See In re City of San Bernardino, California*, Case No. 6:12-bk-28006-MJ; *In re City of Stockton, California*, Case No. 6:12-bk-32118-CK; *In re Tulare Local Healthcare District*, Case No. 6:17-bk-13797; *In re Valley Health System*, Case No. 6:07-bk-18293-PC.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

Furthermore, even where a court finds that specific grounds for dismissal under § 930(a)(1)-(6) are present, the court is not required to dismiss a case if other considerations make it advisable that the case be retained. 6 COLLIER ON BANKRUPTCY ¶ 930.02[1] (16th ed. Rev. 2010). Therefore, even if the Court does find that failure to pay post-petition debts in the ordinary course of business is "cause" to dismiss a case under § 930(a), the Court should consider whether dismissal would not be in the best interests of the District or its creditors. It is improper for a court to dismiss a chapter 9 case on its own motion prior to considering confirmation of the debtor's plan of adjustment because the bankruptcy court has limited authority to interfere with State control over its municipalities or the property or revenue of the debtor. 6 COLLIER ON BANKRUPTCY ¶ 930.02[3] (16th ed. Rev. 2010). The District has recently filed a Third Amended Plan that is more favorable than dismissal for the District, its creditors, and importantly the Southern Inyo community as this debtor is the sole nonprofit public healthcare entity servicing the Southern Inyo community. The Court should not *sua sponte* dismiss the case prior to considering confirmation of the Third Amended Plan.

### 1. Post-Petition Debts Need Not Be Paid in the Ordinary Course of Business in Chapter 9

The District has identified no cases where a court has dismissed a chapter 9 case for failure to pay post-petition debts in the ordinary course of business. As stated above, chapter 9 plans are confirmed by courts despite the existence of unpaid post-petition debt[2]. Nor is analogy to chapter 11 relevant for the determination of whether failure to pay post-petition debt in the ordinary course is cause to dismiss a chapter 9 case pursuant to § 930(a).

While cause may exist under chapter 11 to dismiss a case for a debtor's failure to pay its post-petition debt as it becomes due pursuant to any of the enumerated reasons in

---

[2] *See In re City of San Bernardino, California*, Case No. 6:12-bk-28006-MJ; *In re City of Stockton, California*, Case No. 6:12-bk-32118-CK; *In re Tulare Local Healthcare District*, Case No. 6:17-bk-13797; *In re Valley Health System*, Case No. 6:07-bk-18293-PC.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

§ 1112, including diminution of the estate, § 1112 is not incorporated in chapter 9. Similarly, while post-petition debt is entitled to administrative priority in chapter 11 pursuant to § 503(b)(1)(A), most post-petition debt in chapter 9 is not entitled to any administrative priority. Therefore, the District identifies no authority, either in the Bankruptcy Code or in other chapter 9 cases, that requires a chapter 9 debtor to pay post-petition debts in the ordinary course of business.

"Section 901(a) of the Bankruptcy Code makes applicable all portions of 46 different sections of chapters 3, 5, and 11 of the Bankruptcy Code in municipal adjustment cases." COLLIER ON BANKRUPTCY ¶ 901.04. "Congress made scrupulous efforts to avoid the application of any section that might permit interference with the political or governmental affairs or powers of the debtor in a municipal adjustment case, such as section 1104, providing for the appointment of a trustee or examiner, or section 363, regulating the disposition by the municipal debtor of its property." *Id.* In addition to those mentioned above, section 1112 of the Bankruptcy Code is not applicable in a chapter 9. *See* 11 U.S.C. § 901(a).

As described by the Ninth Circuit,
> Congress, in an effort to avoid possible constitutional problems, designed chapter 9 of the bankruptcy code in a manner much different from the other chapters. Many of the protections afforded to creditors in the other chapters are missing in chapter 9. The court in *In re Richmond Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991), explained some of the unique aspects of a chapter 9 bankruptcy:
>
>> [Chapter 9 provides] a debtor with an array of bankruptcy powers to enable it to achieve financial rehabilitation with very few, if any, corresponding limitations and duties of the type to which a Chapter 11 debtor is subject. For example, a Chapter 9 debtor is not subject to the reporting and other general duties of a Chapter 11 debtor in possession under section 1107, and pursuant to section 904, may borrow and spend without court authority. Unlike any of the other chapters, Chapter 9 makes no provision for conversion of the case to another chapter or for an involuntary liquidation of any of the debtor's assets. At the same time, a Chapter 9 debtor enjoys a full expanse of bankruptcy powers, including the benefit of an enhanced automatic stay pursuant to sections 362(a) and 922(a), the right to avoid preferences, fraudulent conveyances and other transfers as provided in sections 544 through 549, the authority to borrow monies on the security of liens senior to existing liens of record pursuant to section 364(c), the right to reject executory contracts pursuant to section 365

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

> and the ability to bind all creditors by a confirmed plan pursuant to section 944.

Id. (footnote omitted).

*In re City of Desert Hot Springs*, 339 F.3d 782, 789 (9th Cir. 2003).

> Thus, unlike the other Chapters, Chapter 9 does not attempt to balance the rights of the debtor and its creditors, but rather to meet the special needs of the municipal debtor...
>
> [T]he principle of ordinary or private bankruptcy that the assets of the bankrupt, including his property, must be effectively applied to the debts, is sought to be applied to the situation before us. The bankruptcy of a public entity, however is very different from that of a private person or concern.
>
> It follows that many of the principles that apply in the other chapters of the Bankruptcy Code are of limited assistance in construing in Chapter.

*In re Richmond Sch. Dist.*, 133 B.R. 221

These key distinctions between chapter 9 and other chapters is exactly why courts have consistently confirmed plans with some post-petition debts unpaid. Neither creditors nor courts can interfere with the District's operations and disposition of its assets.

**2.     Administrative Claims in Chapter 9**

Administrative expenses in chapter 9 are narrowly construed. *In re Orange County*, 179 B.R. 195, 201 (Bankr. C.D. Cal. 1995); *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995). In order to be entitled to administrative priority, (1) the claimant must be a creditor; and (2) the creditor must have made a substantial contribution to the chapter 9 case or a chapter 11 bankruptcy estate. *Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096 (9th Cir. 2004). Moreover, even if a claimant can establish that it made a subsequent contribution to a case under chapter 9, the amount of its administrative claim is limited to the actual necessary expense incurred by that creditor. *See In re Connolly North America, LLC*, 802 F.3d 810 (6th Cir. 2015). Absent a "substantial contribution" to the actual chapter 9 bankruptcy case, no unsecured claims, including post-petition claims, are entitled to administrative priority.

Since there is no "estate" in chapter 9, there are no claims entitled to administrative priority pursuant to section 503(b)(1)(A). Section 503(b)(1)(A) of the Bankruptcy Code states that "there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including---(1)(A) the actual, necessary costs and expenses of preserving the estate including—(i) wages, salaries, and commissions for services rendered after the commencement of the case…" 11 U.S.C. § 503(b)(1)(A). There is no bankruptcy estate in chapter 9. *See Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 477-478 (9th Cir. 2000); *In re JZ L.L.C.*, 371 B.R. 412, 419 n.4 (9th Cir. B.A.P. 2007); *In re Jefferson County, Ala.*, 484 B.R. 427, 460 (Bankr. N.D. Alabama 2012); *In re Valley Health System*, 429 B.R. 692 (Bankr. C.D. Cal. 2010); *In re City of Vallejo*, 403 B.R. 72, 78 n.2 (Bankr. E.D. Cal. 2009). Therefore, there are no administrative claims pursuant to § 503(b)(1)(A) in chapter 9 as there cannot be any preservation of the estate, since none exists. Thus, operating expenses, or post-petition services provided to a debtor unrelated to the bankruptcy case, are not entitled to administrative priority.

### 3. Chapter 11 Post-Petition Claims are Distinguishable

In chapter 11, post-petition claims for services rendered to a debtor unrelated to the bankruptcy case, normally termed operating expenses, need to be paid in full as they are entitled to administrative priority. Therefore, courts have found that cause exists to dismiss a chapter 11 case for failure to pay post-petition debts that are statutorily required to be paid in full as administrative claims. However, ongoing operating expenses are not included as administrative expenses in chapter 9. *In re New York City OffTrack Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010) ("Because a chapter 9 debtor's property remains its own and does not inure into a bankruptcy estate as provided by section 541 of the Bankruptcy Code, there can be no administrative expenses for 'the actual and necessary costs of preserving the estate' as contemplated by section 503(b)(1)(A) of the Bankruptcy Code."). Leading treatises agree that operating expenses (i.e. "actual, necessary costs and expenses of preserving the estate") are not entitled to administrative priority in chapter 9. *Id.* at 142 ("Collier observes that because there is no estate in a

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

chapter 9 case, administrative expense claims under section 503 must be limited to 'expenses incurred in connection with the chapter 9 case itself' and not operating expenses. 6 COLLIER ON BANKRUPTCY ¶ 901.04[13][a]. Norton agrees, observing in passing that no operating administrative expenses are permitted in a chapter 9 bankruptcy case. 5 WILLIAM J. NORTON, JR. WILLIAM L. NORTON III, NORTON BANKRUPTCY LAW AND PRACTICE § 90:3."). This conclusion is consistent with, and indeed is mandated by § 904, which prevents the Court from exercising jurisdiction over a municipality's use of its revenues, absent the municipality's consent. *Ass'n of Retired Employees of the City of Stockton v. City of Stockton (In re City of Stockton)*, 478 B.R. at 13; *In re Valley Health Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010).

The District has identified no cases where a court has dismissed a chapter 9 case due to failure to pay post-petition debts in the ordinary course of business. Post-petition debts for services rendered unrelated to the bankruptcy cases are not entitled to administrative priority, and therefore, no cause exists to dismiss this case for failure to pay debts in the ordinary course of business that are not required to be paid under any provision of the Bankruptcy Code.

### 4. The Court Should Refrain from Dismissing the Case Pursuant to Other Considerations Including the Filed Third Amended Plan

While the District contends that there is no cause to dismiss the case, should the Court find that cause exists to dismiss the case under § 930(a) for failure to pay undisputed post-petition debts in the ordinary course of business, the Court should exercise its discretion to not dismiss the case because, due to the other considerations in the case, dismissal would not be in the best interests to either the District or its creditors, including the creditors identified in the Court's OSC. *See* COLLIER ON BANKRUPTCY ¶ 930.02[1] (16th ed. Rev. 2010) (the court should determine if there are other considerations before deciding whether or not the case should be retained or dismissed). Here, dismissal is not in the best interests of creditors, who will receive more under the terms of the filed Third Amended Plan. Dismissal would be disastrous to the District which

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

would be forced to cease operations, and the Southern Inyo community which relies upon the District. Furthermore, because the Third Amended Plan has been filed, the Court should rule on the confirmability of the Third Amended Plan rather than *sua sponte* dismiss the case pursuant to the OSC.

One court refrained from dismissing a chapter 9 case despite a specific finding of bad faith, and clear authority and cause to dismiss the case, because dismissal was not in the best interests of the debtor or its creditors. *In re City of San Bernardino, Cal.*, 499 B.R. 776 (Bankr. C.D. Cal. 2013) ("Even assuming that municipality exhibited lack of good faith in filing for Chapter 9 relief… court would exercise its discretion to refrain from dismissing case, where only one creditor was objecting to municipality's Chapter 9 filing, municipality's cash deficit was real and unchallenged, and dismissal would leave city in financial quagmire without orderly court oversight."). Creditors will receive better treatment under the terms of the District's filed Third Amended Plan than in the case of dismissal. The District has filed a Third Amended Plan that provides for a distribution to unsecured creditors, including the creditors referenced in the OSC. In contrast, if the case was dismissed, the District would be unable to pay its creditors based upon assets currently owned by the District. The District intends to pay creditors with both future operational revenue and alternative sources of revenue, neither of which will be available if the case is dismissed and the District is forced to cease operations.

Furthermore, the District is a hospital in a rural area and is the only convenient location for most residents. If the case were dismissed, the District would be unable to remain open, and would shut its doors to the community. The District would be unable to resolve disputes regarding purported claims against the District without the need for costly and protracted litigation which would come at the expense of the District and its creditors alike.

Under these circumstances, dismissal is extremely detrimental to creditors, the District, and to those the District serves. In fact, the District has filed a Third Amended

Plan, that it believes is confirmable, that will ultimately provide for better treatment for creditors than if the case was dismissed.

### B. The Court Does Not Have Authority to Interfere With the District's Property or Revenue by Dismissing the Case Pursuant to the Cause Stated in the OSC

While the District recognizes that the Court has the authority to dismiss a chapter 9 case under section 930, the Court does not have the legal authority under section 930(a) of the Bankruptcy Code to dismiss the case on the grounds set forth in the OSC. The District did not consent to an adjudication of whether failure to pay post-petition debts constitutes cause and, as such, the Court has no authority to interfere with the District's property or revenue pursuant to section 904. Section 904 states that:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—
> (1) any of the political or governmental powers of the debtor;
> (2) any of the property or revenues of the debtor; or
> (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. Since the District has not consented to an adjudication of whether failure to pay undisputed post-petition debts constitutes cause to dismiss pursuant to section 904, the Court may not "by any stay, order, or decree" interfere with the District in the enumerated ways under section 904.

#### 1. Court has Limited Authority in Chapter 9

Section 904 limits a federal court's authority in chapter 9 bankruptcy cases. *In re City of Stockton, Cal.*, 478 B.R. 8, 17 (Bankr. E.D.Cal. 2012) ("The statutory limit on the authority of the court that is now § 904 has been enacted and amended four times. Each revision has reduced the latitude within which the court can act. The limit has come to be described as 'absolute.'"). Section 904 sets forth substantive limitations on the bankruptcy court's power in its interpretation and construction of chapter 9 and in its administration of

municipal debt adjustment cases. 6 COLLIER ON BANKRUPTCY ¶ 904.01 (Richard Levin & Henry J. Sommer eds.,16th ed. Rev. 2010). The Court is not to involve itself with the day to day operations of the municipality. *Id.* at ¶ 904.01[2].

### 2. The District's Right to Consent

Absent consent, or unless a chapter 9 plan provides so, a federal court may not take any action that interferes with the District's political or governmental powers, property or revenues, or income-producing property, despite any other provision in the Bankruptcy Code or elsewhere that grants power and authority to such court. *In re City of Stockton, Cal.*, 478 B.R. at 20 ("§ 904 is so comprehensive that it can only mean that a federal court can use no tool in its toolkit—no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order—to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property.").

Numerous courts have likewise held that § 904 halts bankruptcy courts from controlling a Chapter 9 debtor's use of its property or revenue. *In re Valley Health System*, 429 B.R. 692 (Bankr. C.D. Cal. 2010) ("Unlike chapter 11, there is no concept of a debtor in possession in chapter 9. Section 541, which defines 'property of the estate,' is not incorporated into chapter 9. Nor is § 363, which regulates the use, sale or lease of property, applicable to a chapter 9 case. *See* 11 U.S.C. § 901(a). By virtue of § 904, a debtor in chapter 9 retains title to, possession of, and complete control over its property and its operations, and is not restricted in its ability to sell, use, or lease its property."); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 140 (S.D.N.Y. 2010) ("In practice, [§ 904] prohibits bankruptcy courts from mandating that a chapter 9 debtor make specific payments in violation of the Tenth Amendment.").

One example of this limited authority can be found in the case of *In re County of Orange*, 179 B.R. 195 (Bankr. C.D. Cal. 1995). In *County of Orange*, the Debtor filed a motion setting forth the conditions under which the County would pay professionals of the Committee, Subcommittees, and members of the Committee. *County of Orange*, 179

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

B.R. at 198. Specifically, the County agreed to pay this compensation at the end of the case based upon a substantial contribution standard. In opposition, the "Employee Subcommittee argued that the court could, and should, order the County to pay any compensation award to its professionals on an interim basis." *Id*. At 198-199. As to consent and interference, the Honorable John E. Ryan provided as follows:

> Dealing with the interim payment issue first, the County has not consented to pay the Bondholder or Employee Subcommittees on an interim basis. The County does not object to an interim allowance based on a substantial contribution standard, but it reserves the right to decide unilaterally whether payment before the end of case is appropriate. The County contends that any order requiring interim payments, without the County's consent, would interfere with the County's property and revenue in violation of Code § 904.

*Id.* at 199. Consequently because the court found there was no consent, it held as follows:

> An order by me that the County pay professionals on an interim basis would constitute interference with 'the property or revenue of the debtor.' *See* § 904(2). Congress apparently recognized such interference as constitutionally suspect when it excluded § 331 from Chapter 9. Based on the foregoing, I hold that Chapter 9 does not empower me to order the County to make interim payments to professionals without the County's consent.

*Id.* at 200. As in the *County of Orange*, here the District has not consented to the Court's determination of how post-petition obligations should be paid other than through the filed Third Amended Plan. Therefore, under the congressional mandate of section 904 and cases interpreting the same, the Court can issue no order which interferes with the "property or revenue of the debtor." If the Court mandates that the District make payments as the Court requires, or else face dismissal, such an order would violate section 904 by impermissibly interfering with the District's property or revenue.

### 3. Chapter 9 Limitation on Court's Authority

Section 904 abrogates bankruptcy courts' authority to interfere with a Chapter 9 debtor's property or revenue even if the court believes that a chapter 9 debtor's actions are unfair. *In re City of Stockton, Cal.*, 478 B.R. at 20. In *In re City of Stockton,* an adversary proceeding was filed wherein, among other things, the Association of Retired

Employees of the City of Stockton sought an injunction prohibiting the City from implementing a retiree health benefit reduction, but the court concluded that that it was unable to enjoin the City from implementing a benefit reduction, even if the City's action may be unfair. *City of Stockton, Cal.*, 478 B.R. at 20 ("The message derived from this history regarding the power of this court to interfere with the City's actions regarding retiree health benefits compels the conclusion that § 904 prevents any federal court from doing what the plaintiffs request, regardless of whether the City's action is fair or unfair."). *See also In re Jefferson County, Ala.*, 474 B.R. 228 (Bankr. N.D. Ala. 2012). A court cannot control a municipality's revenue or property, no matter the court's view on the District's decision of what to do with its property or revenue. Due to section 904, a chapter 9 debtor retains full title and control over its property in a bankruptcy case.

Consequently, pursuant to the express language of the statute, the Court cannot interfere with how the District manages its property or revenue absent consent from the District. *In re City of Stockton, Cal.*, 486 B.R. 194, 198 (Bankr. E.D. Cal. 2013) ("The historical facts of the relationship of *Ashton*[3] and *Bekins*[4], and of the 1976 revisions of chapter IX to the deletion of the qualification 'necessary in the opinion of the judge for essential governmental purposes' from what is now § 904, compel the conclusion that the bankruptcy court cannot prevent a chapter 9 debtor from spending its money for any reason, even foolishly or in a manner that disadvantages other creditors, unless the municipality consents to such judicial oversight.").

The limited power of the Court to manage a chapter 9 debtor's property and/or revenues is the reason why a chapter 9 debtor need not request permission from the Court to settle lawsuits, as any other bankruptcy debtor would. *In re City of Stockton, Cal.*, 486 B.R. at 199 ("Hence, § 904 means that the City can expend its property and revenues during the chapter 9 case as it wishes. It can pay any debt in full without permission from

---

[3] *Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*, 298 U.S. 513 (1936).

[4] *United States v. Bekins*, 304 U.S. 27 (1938).

this court. If it wishes to spend $55,000 settling a lawsuit, it is entitled to do so without needing a permission from this court; such permission would imply a power to disapprove and thereby to interfere with the City's property or revenues that would offend § 904.").

The District has not and does not consent to the Court making any order or determination as to how the District should utilize its property, revenue, or income producing property, outside of the provisions in the District's filed Third Amended Plan. If the Court orders dismissal based upon the District's failure to pay undisputed post-petition debts in the ordinary course of business, such order would interfere with the District's property, revenue, or income-producing property. This argument is consistent with the plain language of section 904, as well as the purpose and history of section 904 which was enacted in order to limit federal court authority in chapter 9 bankruptcies. Therefore, dismissal of the case pursuant to the cause identified in the OSC would be in violation of the Court's authority pursuant to section 904.

**IV.　CONCLUSION**

For the aforementioned reasons, the District respectfully requests the Court to vacate the order to show cause, and not dismiss the Chapter 9 case.


Dated:  November 20, 2019　　　　　　　　WEILAND GOLDEN GOODRICH LLP


　　　　　　　　　　　　　　　　　　　　By:　*/s/ Jeffrey I. Golden*
　　　　　　　　　　　　　　　　　　　　　　　Jeffrey I. Golden
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Debtor
　　　　　　　　　　　　　　　　　　　　　　Southern Inyo Healthcare District