**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
Ryan W. Beall, State Bar No. 313774
rbeall@wgllp.com
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile     714-966-1002

Attorneys for Debtor and Debtor-in-Possession
SOUTHERN INYO HEALTHCARE DISTRICT

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 1:16-bk-10015-FEC |
| SOUTHERN INYO HEALTHCARE DISTRICT, | Chapter 9 |
| | WGG-7 |
| Debtor. | **MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF SEVENTH AMENDED PLAN FOR ADJUSTMENT OF DEBTS OF SOUTHERN INYO HEALTHCARE DISTRICT** |
| | **[Motion to Confirm Seventh Amended Plan for Adjustment of Debts of Southern Inyo Healthcare District, Declaration of Jeffrey I. Golden, Declaration of Peter Spiers, Declaration of Donald Fife, and Declaration of Kelly Adele in Support Thereof Filed Concurrently]** |
| | Hearing Date: |
| | Date:     May 19, 2020 |
| | Time:     1:30 p.m. |
| | Place:     501 I. Street |
| |           Sacramento, CA 95814 |
| |           Courtroom 28 |

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION.........................................................................................................1

II.  STATEMENT OF FACTS.........................................................................................2

   A.   Ballot Analysis ...............................................................................................2

   B.   Financial Situation of the District ................................................................3

      1.   Liabilities of the District ....................................................................3

      2.   Assets of the District ..........................................................................4

         a.   The District's Operations .......................................................4

         b.   Other Sources of Revenue.....................................................6

   C.   Financial Projections and Risk Factors ......................................................6

      1.   Financial Projections..........................................................................6

      2.   Risk Factors ........................................................................................7

   D.   Ongoing Litigation With Optum Bank ........................................................7

III. THE COURT SHOULD CONFIRM THE PLAN ....................................................8

   A.   The Plan Complies with the Provisions of Title 11 Made
      Applicable by Section 901 (Section 943(b)(1)) ............................................9

      1.   Section 1122........................................................................................9

         a.   Separate Classification of Claims .......................................10

         b.   Each Class Contains Only Substantially Similar
            Claims....................................................................................11

      2.   The Plan Satisfies § 1129(b) ............................................................12

         a.   The Plan Satisfies § 1129(b)(2) With Respect to
            Each Nonvoting Creditor.....................................................15

      3.   Section 1122(b) ................................................................................16

      4.   Section 1123......................................................................................17

         a.   Section 1123(a)......................................................................17

         b.   Section 1123(b)......................................................................19

      5.   Section 1129(a)(2) ............................................................................19

      6.   Section 1129(a)(3)............................................................................20

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

7.   Section 1129(a)(6) ................................................................21

8.   Section 1129(a)(8) ................................................................21

9.   Section 1129(a)(10) ..............................................................22

B.   The Plan Complies with the Provisions of Chapter 9 in Sections 941, 942, and 943(b) ........................................................22

1.   The Plan Satisfies the Requirements of Section 943(b) ................23

a.   Compliance with Section 943(b)(1) ......................................23

b.   Compliance with Section 943(b)(2) ......................................23

c.   Compliance with Section 943(b)(3) ......................................23

d.   Compliance with Section 943(b)(4) ......................................24

e.   Compliance with Section 943(b)(5) ......................................25

f.   Compliance with Section 943(b)(6) ......................................27

C.   The Plan is in the Best Interests of Creditors and is Feasible (Section 943(b)(7)) ..................................................................28

1.   The Plan is in the Best Interests of the District's Creditors ........................................................................29

a.   Creditors Will Receive More Under the Plan Than If the Case Was Dismissed ................................................30

2.   The Plan is Feasible ..................................................................31

IV.   CONCLUSION ..................................................................................34

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Ass'n of Retired Employees of the City of Stockton v. City of Stockton (In re City of Stockton)*,
   478 B.R. 8 (Bankr. E.D. Cal. 2012) ................................................................27

*Brinkley v. Chase Manhattan Mortg. & Realty Trust (In re LeBlanc)*,
   622 F.2d 872 (5th Cir. 1980) ........................................................................13

*Case v. Los Angeles Lumber Prods. Co.*,
   308 U.S. 106 (1939)......................................................................................11

*Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)*,
   377 F.3d 1092 (9th Cir. 2004) ......................................................................25

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,
   280 F.3d 648 (6th Cir. 2002) ........................................................................10

*Cnty. Of Orange v. Merril Lynch & Co. (In re Cnty. Of Orange)*,
   191 B.R. 1005 (Bankr. C.D. Cal. 1996) .........................................................29

*Duffy v. U.S. Trustee (In re Cal. Fid.)*,
   198 B.R. 567 (B.A.P. 9th Cir. 1996) ..............................................................20

*Faitoute Iron & Steel Co. v. City of Asbury Park*,
   316 U.S. 502 (1942)......................................................................................30

*Franklin High Yield Tax-Free Income Fund et al. v. City of Stockton, California (In re City of Stockton, California)*,
   542 B.R. 261 (9th Cir. B.A.P. 2015) ................................................................9

*In re AOV Industries, Inc.*,
   792 F.2d 1140 (D.C. Cir. 1986) .....................................................................12

*In re Aztec Co.*,
   107 B.R. 585 (Bankr. M.D. Tenn. 1989) ........................................................13

*In re Barakat*,
   99 F.3d 1520 (9th Cir. 1996) ..................................................................10, 11

*In re Barnwell Cnty. Hosp.*,
   41 B.R. 849 (Bankr. D.S.C. 2012) ...............................................................8, 29

*In re City of Colo. Springs Spring Creek Gen. Improvement Dist.*,
   187 B.R. 683 (Bankr. D. Colo. 1995).............................................................9

*In re City of Vallejo*,
   403 B.R. 72 (Bankr. E.D. Cal. 2009) .............................................................26

*In re Connector 2000 Ass'n, Inc.*,
   337 B.R. 752 (Bankr. D.S.C. 2011) ..........................................8, 20, 22, 32

**<u>TABLE OF AUTHORITIES (cont.)</u>**

**<u>Page(s)</u>**

*In re Connolly North America, LLC*,
   802 F.3d 810 (6th Cir. 2015) ................................................................. 25

*In re Corcoran Hosp. Dist.*,
   233 B.R. 449 (Bankr. E.D. Cal. 1999) ............................................ 8, 12, 13, 14, 29

*In re Greystone III Joint Venture*,
   995 F.2d 1274 (5th Cir. 1991) ................................................................. 12

*In re Jefferson County, Ala.*,
   484 B.R. 427 (Bankr. N.D. Alabama 2012) ........................................... 26

*In re JZ L.L.C.*,
   371 B.R. 412 (9th Cir. B.A.P. 2007) ...................................................... 26

*In re Loop 76, LLC*,
   465 B.R. 525 (9th Cir. B.A.P. 2012) ...................................................... 10

*In re Mount Carbon Metro. Dist.*,
   242 B.R. 18 (Bankr. D. Colo. 1999) ...................................................... 28

*In re New York City OffTrack Betting Corp.*,
   434 B.R. 131 (Bankr. S.D.N.Y. 2010) ................................................... 26

*In re Orange County*,
   179 B.R. 195 (Bankr. C.D. Cal. 1995) .................................................. 25

*In re Pierce County Hous. Auth.*,
   414 B.R. 702 (Bankr. W.D. Wash. 2009) ............................................... 8

*In re Plant Insulation Co.*,
   2012 Bankr. LEXIS 1716 (Bankr. N.D. Cal. Mar. 15, 2012) ................. 13

*In re Rhead*,
   179 B.R. 169 (Bankr. D. Ariz. 1995) ..................................................... 24

*In re Richmond Unified Sch. Dist.*,
   133 B.R. 221 (Bankr. N.D. Cal. 1991) .................................................. 28

*In re Sanitary & Improvement Dist. No. 7*,
   98 B.R. 970 (Bankr. D. Neb. 1989) ...................................................... 24

*In re Sanitary & Improvement Dist., No. 7*,
   98 B.R. 970 (Bankr. D. Neb. 1989 ........................................................ 29

*In re Simmons*,
   288 B.R. 737 (Bankr. N.D. Tex. 2003) ................................................. 13

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..................................................... 20

## **TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*In re Valley Health Sys.*,
    429 B.R. 692 (Bankr. C.D. Cal. 2010) ................................................ 27

*In re Valley Health System*,
    429 B.R. 692 (Bankr. C.D. Cal. 2010) ................................................ 26

*In re Western Real Estate Fund, Inc.*,
    75 B.R. 580 (Bankr. W.D. Okla. 1987) ........................................ 14, 15

*Lorber v. Vista Irr. Dist.*,
    127 F.2d 627 (9th Cir. 1942) ............................................................ 12

*Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*,
    66 F.3d 1091 (9th Cir. 1995) ............................................................ 25

*Mount Carbon Metro. Dist.*,
    242 B.R. 18 (Bankr. D. Colo. 1999)......................................... 21, 29, 32

*New Magma Irr. & Drainage Dist. V. Bd. Of Supervisors (In re New Magma
    Irr. & Drainage Dist.)*,
    193 B.R. 528 (Bankr. D. Ariz. 1994)................................................. 29

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*,
    314 F.3d 1070 (9th Cir. 2002) ..................................................... 20, 21

*Prime Healthcare Mgmt., Inc. v. Valley Health Sys. (In re Valley Health
    Sys.)*,
    429 B.R. 692 (Bankr. C.D. Cal. 2010) ................................................ 31

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v.
    Anderson*,
    390 U.S. 414 (1968)......................................................................... 11

*Sandra L. Stolrow, Inc. v. Stolrow's, Inc. (In re Stolrow's Inc.)*,
    84 B.R. 167 (B.A.P. 9th Cir. 1988) .................................................... 20

*See In re American Solar King Corp.*,
    90 B.R. 808 (Bankr. W.D. Tex. 1988)................................................. 24

*Smith v. Kennedy (In re Smith)*,
    235 F.3d 472 (9th Cir. 2000) ............................................................ 26

*Steelcase Inc. v. Johnston (In re Johnston)*,
    21 F.3d 323 (9th Cir. 1993) ................................................................ 9

*West Coast Life Ins. Co. v. Merced Irr. Dist.*,
    114 F.2d 654 (9th Cir. 1940) ............................................................ 13

## **Statutes**

11 U.S.C. 503(b)(1)(A).................................................................... 26

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

11 U.S.C. § 365 ................................................................................................. 19

11 U.S.C. § 503(b) ............................................................................................ 27

11 U.S.C. § 507(a)(2) ................................................................................. 17, 25

11 U.S.C. § 507(a)(3) ........................................................................................ 17

11 U.S.C. § 507(a)(8) ........................................................................................ 17

11 U.S.C. § 901 ............................................................................................ 9, 17

11 U.S.C. § 901(a) ............................................................................................ 17

11 U.S.C. § 904 ................................................................................................. 27

11 U.S.C. § 941 .......................................................................................... 22, 23

11 U.S.C. § 942 ................................................................................................. 22

11 U.S.C. § 943(b) ........................................................................... 8, 22, 23, 34

11 U.S.C. § 943(b)(1) ................................................................................. 9, 22, 23

11 U.S.C. § 943(b)(2) ........................................................................................ 23

11 U.S.C. § 943(b)(3) ................................................................................. 23, 24

11 U.S.C. § 943(b)(4) ................................................................................. 24, 25

11 U.S.C. § 943(b)(5) ................................................................................. 25, 27

11 U.S.C. § 943(b)(6) ........................................................................................ 27

11 U.S.C. § 943(b)(7) ................................................................................. 28, 29

11 U.S.C. § 1122 .......................................................................................... 9, 24

11 U.S.C. § 1122(a) ............................................................................... 9, 10, 12

11 U.S.C. § 1122(b) ............................................................................... 9, 16, 17

11 U.S.C. § 1123 ........................................................................................ 17, 24

11 U.S.C. § 1123(a) ........................................................................................... 17

11 U.S.C. § 1123(a)(1) ................................................................................. 9, 17

11 U.S.C. § 1123(a)(2) ................................................................................. 9, 17

11 U.S.C. § 1123(a)(3) ................................................................................. 9, 18

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

11 U.S.C. § 1123(a)(4)...................................................................................9, 18

11 U.S.C. § 1123(a)(5)...............................................................................9, 18, 19

11 U.S.C. § 1123(b)....................................................................................9, 17, 19

11 U.S.C. § 1123(b)(1).......................................................................................19

11 U.S.C. § 1123(b)(2).......................................................................................19

11 U.S.C. § 1123(b)(3).......................................................................................19

11 U.S.C. § 1123(d).............................................................................................9

11 U.S.C. § 1124.................................................................................................9

11 U.S.C. § 1125..................................................................................9, 20, 24

11 U.S.C. § 1125(b)............................................................................................20

11 U.S.C. § 1126................................................................................................20

11 U.S.C. § 1126(a).............................................................................................9

11 U.S.C. § 1126(b).............................................................................................9

11 U.S.C. § 1126(c).............................................................................................2

11 U.S.C. § 1126(c).............................................................................................9

11 U.S.C. § 1126(e).............................................................................................9

11 U.S.C. § 1126(f).............................................................................................3

11 U.S.C. § 1126(f).........................................................................................9, 22

11 U.S.C. § 1126(g).............................................................................................9

11 U.S.C. § 1127(a)...........................................................................................24

11 U.S.C. § 1127(d).............................................................................................9

11 U.S.C. § 1128.................................................................................................9

11 U.S.C. § 1129...............................................................................................24

11 U.S.C. § 1129(a)(10)...................................................................................9, 22

11 U.S.C. § 1129(a)(2)................................................................................9, 19, 20

11 U.S.C. § 1129(a)(3)............................................................................9, 20, 21

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

11 U.S.C. § 1129(a)(6)..................................................................................... 9, 21

11 U.S.C. § 1129(a)(8)..................................................................................... 9, 21

11 U.S.C. § 1129(b)................................................................................ 12, 15, 22

11 U.S.C. § 1129(b)(1)....................................................................... 9, 12, 13, 14

11 U.S.C. § 1129(b)(2)............................................................................................ 15

11 U.S.C. § 1129(b)(2)(A)........................................................................ 9, 15, 16

11 U.S.C. § 1129(b)(2)(B)............................................................................... 9, 12

### <u>Other Authorities</u>

5 William J. Norton, Jr. William L. Norton III, Norton Bankruptcy Law
    and Practice § 90:3 ................................................................................ 26

7 Collier on Bankruptcy ¶ 1129.04[3] (15th ed. 2002).................................... 13

*Collier on Bankruptcy*, (Alan N. Resnick & Henry J. Sommer Eds., 16th ed.).. 8, 9, 13, 20,
    22, 23, 24, 26, 28, 29, 31

### <u>Rules</u>

Fed. R. Bank. P. 3019................................................................................. 24

1    Southern Inyo Healthcare District (the "**District**" or "**Debtor**" or "**SIHD**"), a California

2    local healthcare district and debtor under chapter 9 of the Bankruptcy Code, submits this

3    Memorandum of Law ("**Memorandum**") in Support of Confirmation of Seventh Amended

4    Plan for Adjustment of Debts of Southern Inyo Healthcare District ("**Plan**").

5    This Memorandum is supported by the following declarations, filed concurrently

6    herewith: (i) Declaration of Peter Spiers in Support of Confirmation of the Seventh

7    Amended Plan ("**Spiers Declaration**"), CEO of the District; (ii) Declaration of Donald Fife

8    in Support of Confirmation of the Seventh Amended Plan ("**Fife Declaration**"), certified

9    public accountant for the District in connection with the above-captioned bankruptcy case;

10   (iii) Declaration of Jeffrey I. Golden ("**Golden Declaration**"), general insolvency counsel

11   for the District; and (iv) Declaration of Kelly Adele ("**Adele Declaration**"), Ballot Tabulator.

12   The District has, as of the date of the filing of this Memorandum, received no

13   objections to the confirmation of the Plan.

14   **I.    INTRODUCTION**

15   On March 16, 2020, the Court issued its Order Approving Seventh Amended

16   Disclosure Statement and Plan Confirmation Scheduling Order ("**Order Approving**

17   **Disclosure Statement**") (Dkt. 917). On March 17, 2020, the District commenced

18   solicitation of acceptances of its Plan ("**Plan**") (Dkt. 915). The District, by and through its

19   counsel, mailed the Order Approving Disclosure Statement, which provided notice of the

20   Confirmation Hearing, the Plan, the Seventh Amended Disclosure Statement with Respect

21   to the Seventh Amended Plan for the Adjustment of Debts of Southern Inyo Healthcare

22   District ("**Disclosure Statement**") (Dkt. 908), and Exhibits to Seventh Amended Plan for

23   the Adjustment of Debts of Southern Inyo Healthcare District ("**Exhibits**") (Dkt. 910), and

24   where applicable a Ballot for Accepting or Rejecting Seventh Amended Plan for the

25   Adjustment of Debts ("**Ballot**"), in accordance with the Court's Order Approving Disclosure

26   Statement, to all interested parties. The deadline for objections to the Plan is May 5, 2020,

27   and the District is aware of no objections at the time of the filing of this Motion.

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Additionally, the District does not anticipate any objections, having worked diligently to satisfy creditor concerns with the Plan and Disclosure Statement.

Ballots returned to the Balloting Agent on or before April 14, 2020 at 4:00 Pacific Standard Time were counted. The Adele Declaration sets forth tabulation of votes and is being filed concurrently with this Memorandum. There was wide acceptance for the Plan, the District having worked individually with most creditors to ensure consensus. All timely ballots were cast in favor of the Plan. The support for the Plan from all voting creditors is evidence of the District's good faith in proposing the Plan. The District submits this Memorandum in support of confirmation of the Plan under Bankruptcy Code §§ 941 through 946 and the other provisions of titles 11 and 28 applicable to chapter 9 cases. For the reasons set forth below and the supporting evidence in this Chapter 9 case, the District requests entry of an order confirming the Plan.

**II.   STATEMENT OF FACTS**

In its Disclosure Statement, the District described in detail the history of this case and will not repeat that account here. *See* Dkt. 908, pgs. 9-12 and 16-29. By order dated March 16, 2020 [Dkt. 917], the Court approved the Disclosure Statement for mailing to all creditors and set the Confirmation Hearing for May 19, 2020. On or before March 17, 2020, the District provided notice of the Confirmation Hearing to, and served a copy of the Order Approving Disclosure Statement, Disclosure Statement, Plan, and Exhibits on all creditors and interested parties. A true and correct copy of the Exhibits filed in support of the Plan and Disclosure Statement, including the Financial Projections, was filed on March 12, 2020 [Dkt. 910]. *See* Golden Declaration.

**A.   Ballot Analysis**

Pursuant to 11 U.S.C. § 1126(c), a class of claims has accepted the Plan if at least two-thirds in amount and more than one-half in number of the allowed claims voting in the class, accepted the Plan.  The deadline for submitting ballots was April 14, 2020 by 4:00 p.m. (PST) (the "**Ballot Deadline**").  Timely filed ballots have been analyzed and tallied for those classes of claims impaired and entitled to vote on the Plan.  As can be seen from

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

the ballot analysis below and the Adele Declaration filed concurrently with this Memorandum, Classes 1E, 1F, 1G, 1H, 2, 3, 4, and 5 affirmatively voted to accept the Plan. Classes 1A, 1B, and 1C were entitled to vote, but did not cast ballots in connection with the Plan.

| Class | % of Acceptances by Dollar Amount | % of Acceptances by Number of Ballots | % of Rejections by Dollar Amount | % of Rejections by Number of Ballots | Accept or Reject |
|-------|------|------|------|------|------|
| 1A | 0% | 0% | 0% | 0% | Deemed Rejection[1] |
| 1B | 0% | 0% | 0% | 0% | Deemed Rejection[2] |
| 1C | 0% | 0% | 0% | 0% | Deemed Rejection[3] |
| 1E | 100% | 100% | 0% | 0% | Accept |
| 1F | 100% | 100% | 0% | 0% | Accept |
| 1G | 100% | 100% | 0% | 0% | Accept |
| 1H | 100% | 100% | 0% | 0% | Accept[4] |
| 2 | 100% | 100% | 0% | 0% | Accept |
| 3 | 100% | 100% | 0% | 0% | Accept |
| 4 | 100% | 100% | 0% | 0% | Accept |
| 5 | 100% | 100% | 0% | 0% | Accept |

Class 1D is unimpaired and, therefore, is deemed to have accepted the Plan. *See* 11 U.S.C. § 1126(f).

*See* Adele Declaration.

**B.**     **Financial Situation of the District**

     **1.**     **Liabilities of the District**

The District filed its Schedules on or about January 19, 2016. In sum, the Schedules identified the following obligations: (a) 11 Secured Claims totaling $1,998,535.65; and (b) 254 General Unsecured Claims totaling $2,503,239.60. With the exception of the Administrative Claims and Professional Claims specifically outlined in the

---

[1] No ballot was submitted by the claimant in this Class.

[2] No ballot was submitted by the claimant in this Class.

[3] No ballot was submitted by the claimant in this Class.

[4] Healthcare Conglomerates Associates additionally submitted a ballot in favor of the Plan, purportedly in Class 1H, however, Vi Healthcare Finance, Inc., not Healthcare Conglomerates Associates holds the secured claim in that class.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Plan, the District does not have any unsecured Claims entitled to priority treatment under

2  the Bankruptcy Code. *See* Golden Declaration.

3       The Bankruptcy Court established September 30, 2016, as the deadline for the

4  filing of non-administrative proofs of claim against the District. Forty-eight (48) proofs of

5  claim were filed against the District prior to the Claims Bar Date. These Claims represent

6  a total debt of $6,371,984.78. Additionally, six (6) proofs of claim were filed after the

7  Claims Bar Date totaling an additional $2,588,158.37. *See* Golden Declaration.

8       The District objected to several proofs of claim. As a result of the District's

9  objections to claims, more than $5,700,000 in purported priority unsecured claims have

10  been eliminated or reclassified as unsecured claims not entitled to priority. The District's

11  unsecured claims are specified and described in the exhibits filed concurrently with the

12  Plan and Disclosure Statement. Furthermore, the District has additionally reduced its

13  secured claims through litigation and/or negotiation with various secured creditors. The

14  total amount of secured claims is described in the Plan. *See* Golden Declaration.

15          **2.   Assets of the District**

16       The District's assets include, among other things, the real property on which the

17  Hospital is located, medical equipment and supplies, accounts receivables, healthcare

18  receivables, potential claims and causes of action, and other various personal property

19  assets. The District intends to fund the Plan through the following revenue sources: (i)

20  cash on hand prior to the Effective Date from normal operating revenue; (ii) future

21  operating revenue; (iii) grants; and (iv) taxes. Additionally, the District intends to issue

22  revenue bonds that will remain special revenues.

23          **a.   The District's Operations**

24       The District fully explained the hiring of the District's new Chief Executive Officer,

25  Peter J. Spiers, and the changes made to the District since Spiers' arrival in the

26  Disclosure Statement at pages 37 through 42. Specifically, Spiers oversaw the integration

27  of new services offered by the District by both integrating brand new services, and

28  recapturing services that the District provides, but were not being performed on patients.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  Furthermore, Spiers revamped various services, by both revamping the software services

2  used by the District and by implementing goals and various other productivity boosting

3  programs that have been extremely successful for the District.

4         Finally, and perhaps most significantly, Spiers oversaw the significant reduction in

5  expenses, particularly through reducing overtime and worker inefficiencies. Various

6  programs and procedures were out of date before Spiers arrived, and he worked toward

7  updating these which led to increased efficiency and less overtime.

8         As a result of Spiers' leadership, the District has had several very successful

9  financial months. The District has prepared an operational cash flow document for the

10 District's recent financials from July 2019 through March 2020. The operational cash flow

11 document is attached to the Declaration of Don Fife as Exhibit "1." The operational cash

12 flow shows that the District's net cash balance in July 2019 was $361,310. At the end of

13 March 2020, the District's net cash balance was $826,502. *See* Fife Declaration. In

14 November, 2019, revenue and expenses were projected for the entire year of 2020. A

15 comparison of the projections in November 2019 versus the actual activity for the three

16 months ending March 31, 2020 may be summarized as follows:

|  | Three Months Ended March 31, 2020 | | |
|  | Actual | Budget | Difference |
|---|---|---|---|
| Total Revenues | 4,024,946 | 2,100,000 | 1,924,946 |
| Total Expenses | 3,494,452 | 2,038,140 | 1,456,312 |
| Net Operating Cash Inflow | 530,494 | 61,860 | 468,634 |

*See* Fife Declaration. The District has operated successfully post-petition, especially
during the period of time during which Spiers has been the CEO.

        b.     Other Sources of Revenue

Spiers additionally has worked diligently to bring in additional sources of revenue
as outlined in the Disclosure Statement on pages 42 through 44. Spiers sought to partner
the District with various other entities, including other regional hospitals. Such

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  partnerships have largely been successful. Furthermore, Spiers has been active in

2  working toward obtaining additional funds through grants. Spiers has worked with

3  Merchant McIntyre to obtain federal grants and has been active in striking a deal with the

4  Los Angeles Department of Water and Power ("**LADWP**") and the Great Basin Air

5  Pollution Control District ("**GBAPCD**") in obtaining funds from those entities. Finally,

6  Spiers has worked to provide information relevant for the procurement of revenue bonds

7  that will remain as special revenues. As outlined in the Disclosure Statement, the

8  projections to the Disclosure Statement, and the declarations of Peter Spiers, Don Fife,

9  and Kelly Adele, the District has fully disclosed its financial position and believes that the

10 Plan is feasible in light of the District's financial position and projected funds.

11  **C.    Financial Projections and Risk Factors**

12          **1.    Financial Projections**

13          The District has prepared financial projections that are attached as Exhibit 4 to the

14  Exhibits ("**Financial Projections**"). *See* Dkt. 910. The Financial Projections contemplate

15  four separate scenarios in order to deal with the uncertainty regarding Optum Bank's

16  claim. The Financial Projections are fully explained and laid out on pages 47 and 75

17  through 76 of the Disclosure Statement. Common to all scenarios in the Financial

18  Projections, the District estimates that it will generate approximately $10,500,000 in

19  revenue per year as of the Effective Date from operations, and ramping up to $15,000,000

20  per year by 2026. The Financial Projections vary based upon the scenario, but

21  contemplate total payments to holders of allowed claims in the approximate amount of

22  $5,894,951.00. The Financial Projections assume additional revenue in the amounts of: (i)

23  $540,000 per year through federal grants, (ii) $1,000,000 per year through grants from

24  LADWP, (iii) a one-time grant of $600,000 from GBAPCD, (iv) parcel taxes in the

25  approximate amount of $375,000 per year, and (v) ad valorem taxes in the approximate

26  amount of $540,000 per year. *See* Fife Declaration.

27

28

1269962.1

MEMORANDUM OF LAW

In each of the scenarios contemplated in the Financial Projections, the District has shown that the Plan is feasible and funds exist to pay the District's creditors the amounts as listed on the Plan and Disclosure Statement. *See* Fife Declaration.

### 2. Risk Factors

The District outlined risk factors in detail in the Disclosure Statement. Specifically, potential risks include: (i) the cost of implementing new services may not make each new service feasible and viable in increasing the District's revenues and/or there may be less demand than previously considered for each new service; (ii) the possibility that any of the federal grant monies fail to materialize and/or that Merchant McIntyre is unsuccessful in obtaining federal funding each year; (iii) funds from LADWP and GBAPCD are very likely, but not absolutely certain; (iv) demand for medical services in Inyo County may decline; (v) reimbursement from insurance companies and Medicare and MediCal may decrease; (vi) costs associated with operating the business may increase. The District is confident that, notwithstanding these risks, it will be able to operate in a manner that allows it to make payments required by the Plan as well as continue operating to provide healthcare to the community.

### D. Ongoing Litigation With Optum Bank

On August 15, 2017, the District filed an adversary proceeding against Optum Bank, Inc. ("**Optum**"), initiating adv. no. 17-01077 ("**Optum Loan Adversary**"). By and through the Optum Loan Adversary, the District sought a determination from the Court that the Optum Loan was invalid, and therefore Optum's claim should be disallowed. The District and Optum Bank, Inc. each filed Motions for Summary Judgment. On May 22, 2019, the Court heard argument on the competing Motions for Summary Judgment and took the matter as submitted. On February 10, 2020, the Court ruled on the Motions for Summary Judgment, denying the District's motion for summary judgment and granting in part and denying in part Optum's motion for summary judgment. *See* Golden Declaration.

As a result of the Court's ruling, the Optum Loan Adversary has not been resolved, and additional litigation will be required to determine the amount and validity of Optum's

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Claim. The Court additionally issued a scheduling order setting a pretrial conference for

2  hearing on March 30, 2020. Prior to the March 30, 2020, pretrial conference, on March 16,

3  2020, Optum filed a motion to re-open discovery. At the March 30, 2020, pretrial

4  conference, the Court granted the motion in part and denied the motion in part, and

5  continued all hearings in the matter to May 18, 2020 at 1:30 p.m. *See* Golden Declaration.

6       On July 12, 2018, the District commenced an avoidance action against Optum to

7  recover fraudulent and/or preferential transfers to or for the benefit of certain creditors,

8  commencing adv. no. 18-1046 ("**Optum Preference Adversary**"). The Optum Preference

9  Action has essentially been stayed pending the resolution of the Optum Loan Adversary.

10  *See* Golden Declaration.

11       The District has prepared four separate sets of financial projections, each with a

12  corresponding potential outcome in the Optum Loan Adversary. The four sets are

13  discussed in detail in the Disclosure Statement on pages 47 and 75 through 76, and the

14  District is confident that the District's Plan is feasible no matter the outcome in the Optum

15  Loan Adversary. *See* Fife Declaration. All other pending litigation relating to this

16  bankruptcy case has been settled or otherwise disposed of by the District.

17  **III.**    **THE COURT SHOULD CONFIRM THE PLAN**

18       The Court "shall" confirm a plan of adjustment if the District has satisfied all of the

19  applicable confirmation requirements set forth in Section 943(b) by a preponderance of

20  the evidence. *In re Corcoran Hosp. Dist.*, 233 B.R. 449, 452 (Bankr. E.D. Cal. 1999); *In re*

21  *Barnwell Cnty. Hosp.*, 41 B.R. 849, 855-856 (Bankr. D.S.C. 2012); *In re Connector 2000*

22  *Ass'n, Inc.*, 337 B.R. 752, 761 (Bankr. D.S.C. 2011). Section 943(b) lists seven conditions

23  to confirmation. Once those conditions are met, the court must confirm the plan. *In re*

24  *Pierce County Hous. Auth.*, 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009); *Collier on*

25  *Bankruptcy*, ¶ 943.03 (Alan N. Resnick & Henry J. Sommer Eds., 16th ed.). As discussed

26  herein, the Plan meets each of the seven confirmation requirements.

27      **A.**    **The Plan Complies with the Provisions of Title 11 Made Applicable by**

28           **Section 901 (Section 943(b)(1))**

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1    Section 943(b)(1) requires that a plan of adjustment "compl[y] with the provisions of

2  this title made applicable by sections 103(e) and 901 of this title." The chapter 11

3  provisions made applicable by section 901 to the confirmation of a plan of adjustment

4  include sections 1122, 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5),

5  1123(b), 1123(d), 1124, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g),

6  1127(d), 1128, 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1),

7  1129(b)(2)(A), and 1129(b)(2)(B). *See* Golden Declaration. The Plan's compliance with

8  each of the applicable chapter 11 plan confirmation requirements is discussed below.

9                    1.    **Section 1122: Classification of Claims and Interests**

10    A plan proponent has broad discretion to adopt classification schemes in a plan. 7

11  *Collier* ¶ 1122.03[3][a]. Section 1122(a) provides that, except for administrative

12  convenience classes dealt with in Section 1122(b), "a plan may place a claim or an

13  interest in a particular class only if such claim or interest is substantially similar to the

14  other claims or interests of such class." 11 U.S.C. § 1122(a). A claim that is not

15  "substantially similar" to another must be classified separately. *Collier* ¶ 1122.03[3][c]

16  ("[A]s a general rule each holder of an allowed claim secured by a security interest in

17  specific property of the debtor should be placed in a separate class.").

18    While unsecured claims are generally similar, it is well established that the plan

19  proponent of the plan has wide latitude in determining whether similar claims should be

20  separately classified. *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327-328

21  (9th Cir. 1993); *Franklin High Yield Tax-Free Income Fund et al. v. City of Stockton,*

22  *California (In re City of Stockton, California)*, 542 B.R. 261, 280 (9th Cir. B.A.P. 2015)

23  ("Generally, § 1122 allows plan proponents broad discretion to classify claims and

24  interests according to the particular facts and circumstances of each case." (quoting *In re*

25  *City of Colo. Springs Spring Creek Gen. Improvement Dist.*, 187 B.R. 683, 687 (Bankr. D.

26  Colo. 1995)); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,

27  280 F.3d 648, 661 (6th Cir. 2002) (holding that section 1122(a) requires that a claim be

28  classified in a particular class only if it is substantially similar to the other claims in that

class, but it does not require that all similar claims be in the same class, and holding further that the bankruptcy court has substantial discretion to place similar claims in different classes).

If the District can point to a "legitimate business or economic reason" for separate classification, such classification is proper as long as the purpose of separate classification is not to secure the vote of an impaired, consenting class of claims. *In re Barakat*, 99 F.3d 1520, 1525-1526 (9th Cir. 1996); *In re Johnston*, 21 F.3d 323, 328 (9th Cir. 1994); *In re Loop 76, LLC*, 465 B.R. 525, 536 (9th Cir. B.A.P. 2012) (upholding separate classification).

### a.    Separate Classification of Claims

The Plan provides for separate classification of claims based on the differences in the nature of the claims. Class 1 is comprised of 7 separate classes, each consisting of a single secured creditor. Classes 2, 3, and 4 are comprised of unsecured claims. Class 2 consists of unsecured claims arising from relationships with creditors with whom the District entered into post-petition contracts that will not be terminated by the Effective Date. Class 3 consists of unsecured claims arising from relationships with creditors with whom the District entered into post-petition contracts that have been, or will be, terminated by the Effective Date. Class 4 consists of unsecured claims arising from relationships with creditors with whom the District entered into a pre-petition contract or relationship. Class 5 consists of convenience claims in the amount of $250 or less.

The District submits that the Class 2, 3, and 4 claims are validly classified separately from each other because there are good business reasons to do so, the character of the claims are different, and the District is not attempting to create an impaired consenting class by its classification. The District has different nonbankruptcy rights and requirements with respect to these creditors, and has accordingly separately classified the creditors. *See* Golden Declaration. The treatment for Classes 2, 3, and 4 is identical under the Plan.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

The District has reached various settlements with claimants in Classes 2, 3, and 4 that are explained in the Disclosure Statement in greater detail. Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). In the sole and absolute discretion of the District, any or all of the Professional Claims may be paid an amount in excess of what holders of Claims in Class 2 and/or Class 4 would be entitled to receive in accordance with the terms of the Plan; provided, however, that under no circumstances shall any such payments be made on account of any Professional Claims unless and until, and only to the extent that, the District shall have funds sufficient to enable it to satisfy its working capital obligations and the obligations required by the Plan.

No party has filed an objection to the separate classification of unsecured creditors in Classes 2, 3, and 4. There is no evidence that the District classified the unsecured creditors of Classes 2, 3, and 4 separately for the purpose of gerrymandering the vote. *See In re Barakat*, 99 F.3d at 1525-1526. As the vote tabulation shows, the District obtained universal support for the Plan from those creditors who timely returned ballots, and the separate classification of Classes 2, 3, and 4 was not intended to create an impaired consenting class as one is not needed. *See* Golden Declaration. Therefore, the District was well within its discretion to separately classify Class 2, 3, and 4 for good business and economic reasons.

### b. Each Class Contains Only Substantially Similar Claims

No creditor has objected to the classification of any class of creditors, and no creditor has asserted that the claims in Classes 1 through 5 are not substantially similar to the other claims in each such class. Substantially similar claims are those that "share common priority and rights against the debtor's estate." *In re Greystone III Joint Venture*, 995 F.2d 1274, 1278 (5th Cir. 1991). The similarity of claims is not judged by comparing creditor claims, but rather the question is whether the claims in a class have the same or similar legal status in relation to the assets of the debtor. *In re AOV Industries, Inc.*, 792

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   F.2d 1140, 1150 (D.C. Cir. 1986). Each Class is comprised only of claims that are

2   substantially similar to each other, and the Plan satisfies the requirements of Section

3   1122(a). *See* Golden Declaration.

4             2.      **The Plan Satisfies § 1129(b)**

5          Section 1129(b) authorizes the Court to confirm the Plan even if not all impaired

6   classes have accepted the Plan, provided that the Plan has been accepted by at least one

7   impaired class and that "the plan does not discriminate unfairly, and is fair and equitable,

8   with respect to each class of claims or interests that is impaired under, and has not

9   accepted, the plan." 11 U.S.C. § 1129(b)(1). Because impaired Classes 1F, 1G, 1H, 2, 3,

10  and 4 have voted to accept the Plan, the Plan has been accepted by at least one impaired

11  non-insider class. *See* Golden Declaration.

12         Section 1129(b)(2)(B) provides that, for a plan to be fair and equitable, unsecured

13  creditors may receive less than the value of their claims as of the effective date of a plan

14  only if no class of junior claims or interests receives any distribution on account of their

15  claims or interests. 11 U.S.C. § 1129(b)(2)(B). Application of the absolute priority rule to

16  unsecured creditors of a municipal debtor generally is not possible because, in chapter 9,

17  there can be no junior class of equity interests, the class most commonly prevented from

18  receiving or retaining property by the application of the absolute priority rule. *See In re*

19  *Corcoran Hosp. Dist.*, 233 B.R. 449, 458 (Bankr. E.D. Cal. 1999) (holding that the

20  proposed chapter 9 plan did not implicate the absolute priority rule because there were no

21  holders of equity interests in the debtor hospital). Rather, the requirement that a plan be

22  fair and equitable as to unsecured creditors of a municipal debtor is satisfied when

23  creditors receive "all that they can reasonably expect in the circumstances." *See Lorber v.*

24  *Vista Irr. Dist.,* 127 F.2d 627, 639 (9th Cir. 1942) (collecting cases); *cert. denied* 323 U.S.

25  784 (1944); *see also West Coast Life Ins. Co. v. Merced Irr. Dist.*, 114 F.2d 654, 679 (9th

26  Cir. 1940) (affirming confirmation of plan under municipal debtor provisions of Bankruptcy

27  Act of 1898 when the plan payments were "all that could reasonably be expected in all the

28  existing circumstances"). The municipality must still retain adequate funding to continue

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1269962.1                    12                      MEMORANDUM OF LAW

1   operations, because the chapter 9 debtor cannot be dismantled or liquidated. *Corcoran*,

2   233 B.R. at 459; *Collier* ¶ 943.03[1][f][B].

3          Here, the District is proposing to pay creditors what the District's financial

4   projections will allow, which is all that can reasonably be expected. Under the Plan,

5   unsecured creditors in Classes 2, 3, and 4 will each receive a 12% distribution on their

6   claims. The District does not have the financial resources to fully fund its unsecured

7   creditors while continuing to retain sufficient funds to operate and provide medical

8   services for the community. *See* Fife Declaration.

9          Therefore, the District's proposed 12% distribution to unsecured creditors is all that

10  could be reasonably expected under the existing circumstances. *See* Fife Declaration.

11  Therefore, the plan is fair and equitable.

12         By its terms, Section 1129(b)(1) prohibits only unfair discrimination, not all

13  discrimination. *In re Plant Insulation Co.,* 2012 Bankr. LEXIS 1716, at *27-28 (Bankr. N.D.

14  Cal. Mar. 15, 2012); *In re Aztec Co.*, 107 B.R. 585, 588-89 (Bankr. M.D. Tenn. 1989)

15  (same). Indeed, it is "necessarily inherent in the term 'unfair discrimination' . . . that there

16  may be 'fair' discrimination in the treatment of classes of creditors." *In re Simmons*, 288

17  B.R. 737, 747-48 (Bankr. N.D. Tex. 2003) (citing 7 Collier on Bankruptcy ¶ 1129.04[3]

18  (15th ed. 2002)). "By making 'fair[ness]' the touchstone of the legal standard, Congress

19  eschewed any rigid mechanical test and instead made clear that courts should apply a

20  flexible standard that takes all relevant circumstances into account." *Brinkley v. Chase*

21  *Manhattan Mortg. & Realty Trust (In re LeBlanc)*, 622 F.2d 872, 879 (5th Cir. 1980).

22         Here, no party has pointed to any unfair discrimination. No unsecured classes are

23  receiving better treatment than any other unsecured class. The District has reached

24  negotiated settlements with several creditors that are disclosed in the Plan and Disclosure

25  Statement. *See* Golden Declaration. Because settlements are fundamental to the

26  bankruptcy process, creditors who have settled with a debtor and agree to accept a plan

27  or make other valuable concessions may receive more favorable treatment than non-

28  settling creditors without running afoul of section 1129(b)(1)'s prohibition on unfair

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  discrimination. Moreover, no creditor has objected to the separate classification or

2  treatment of any creditor.

3      In *Corcoran*, the court approved the separate classification and preferential

4  treatment of the unsecured claim of a particular creditor, consistent with a settlement

5  agreement with the debtor. The settlement agreement resolved ongoing litigation between

6  the parties and enabled the debtor to propose a plan of adjustment under which it could

7  both "devot[e] its resources to maintaining its hospital operations and [make] the

8  payments under the [p]lan." *Corcoran*, 233 B.R. at 456. The *Corcoran* court explained that

9  "[i]f the debtor were forced to expend resources in continued litigation with [the settling

10  creditor] . . . , it most likely would not have been able to propose a feasible, confirmable

11  [p]lan." Accordingly, "[g]iven the magnitude of [the creditor's] compromise in the

12  [s]ettlement [a]greement, the court [wa]s unable to say that the disparate treatment of [the

13  creditor] from the other unsecured creditors constitute[d] unfair discrimination." *Id.* at 457.

14  Similarly, in *In re Western Real Estate Fund, Inc.*, 75 B.R. 580 (Bankr. W.D. Okla. 1987),

15  secured creditors objected to the debtors' plan of reorganization because "those creditors

16  who ha[d] settled with the debtors . . . obtain[ed] more favorable treatment than those

17  creditors who ha[d] not settled." *Id.* at 585. The court rejected this argument, stating:

18  "[T]hat those creditors which have reached an accommodation with the debtors . . . are to

19  receive differing treatment from that of the remaining creditors[] does not constitute

20  impermissible discrimination." *Id.* at 586. The court explained that denying confirmation of

21  the plan "would discourage and remove any incentive for negotiation and resolution of

22  differences prior to confirmation." *Id.* Because the court believed that settlements or "work

23  outs" are "fundamental to effective reorganization and rehabilitation," it overruled the

24  objections and held that the plan was not unfairly discriminatory. *Id.* Therefore, the Plan

25  conforms with the cramdown requirements of 1129(b).

26          a.    The Plan Satisfies § 1129(b)(2) With Respect to Each

27                Nonvoting Creditor

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

No creditor returned a timely ballot voting against the Plan. However, four classes of creditors did not vote on the Plan: classes 1A – Action Capital Corporation, 1B – Bank of the West/Thermo Fisher Financial Services, Inc., 1C – Canon Financial Services, Inc., and 1D – Cardinal Health 110, LLC. Classes 1A, 1B, and 1C are impaired and could vote on the plan. As a result, despite no creditors voting against the Plan, classes 1A, 1B, and 1C have not accepted the Plan. *See* Golden Declaration. Therefore, the Plan must satisfy § 1129(b)(2)(A) with respect to these classes.

The Plan satisfies § 1129(b)(2)(A) with respect to each of the nonaccepting classes. *See* Golden Declaration. Section 1129(b)(2)(A) provides that:

[w]ith respect to a class of secured claims, the plan provides –

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claims of such claim receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A). To be fair and equitable to each of these secured creditors, the District must either allow the secured creditor to retain its lien or pay the creditor the allowed amount of its secured claim, plus interest at a market rate.

With respect to Class 1A – Action Capital Corporation, the Plan proposes to pay Action Capital Corporation the full amount of its secured claim, plus the remainder of its claim will be allowed as a general unsecured claim. Action Capital Corporation's claim was secured by accounts receivable generated on or before January 31, 2015. The dollar

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

amount of these accounts receivable is $0 and Action Capital Corporation's claim is fully allowed as a general unsecured claim. Therefore, § 1129(b)(2)(A) is met with respect to Action Capital Corporation, which is receiving the value of its secured claim based upon the value of the collateral, and the rest of its claim is allowed as a general unsecured claim in Class 4.

With respect to Class 1B – Bank of the West/Thermo Fisher Financial Services, Inc., the Plan proposes the District surrender the collateral that is the basis for the security of Bank of the West/Thermo Fisher Financial Services, Inc.'s claim, which is an Abbott iSTAT 1 Upgrade from 200 Series and the related equipment and documentation. The remainder of the Class 1B claim that exists after surrender of the collateral will be allowed as a general unsecured claim. Therefore, § 1129(b)(2)(A) is met with respect to Class 1B because Class 1B is receiving the value of its secured claim based upon the value of the collateral, and the rest of its claim is allowed as a general unsecured claim in Class 4.

With respect to Class 1C – Canon Financial Services, Inc., the Plan proposes the District surrender the collateral that is the basis for the security of Canon Financial Services, Inc.'s claim which is certain office equipment. The remainder of the Class 1C claim that exists after surrender of the collateral will be allowed as a general unsecured claim. Therefore, § 1129(b)(2)(A) is met with respect to Class 1C because Class 1C is receiving the value of its secured claim based upon the value of the collateral, and the rest of its claim is allowed as a general unsecured claim in Class 4. *See* Golden Declaration.

### 3. Section 1122(b): Class 5 is Reasonable and Necessary for Administrative Convenience Purposes

Section 1122(b) authorizes plans to create an administrative convenience class of general unsecured claims that are reduced to a specific amount. Class 5 is just such a class in that it allows Class 2, 3, and 4 general unsecured creditors who might receive less than $250 on their allowed claim to elect to receive the lesser of their allowed claim or $250. *See* Golden Declaration. The availability of Class 5 treatment will facilitate settlement with some of the District's creditors, reducing the cost of liquidating and

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

allowing claims after confirmation of the Plan. Class 5 meets the requirements of Section 1122(b).

### 4. Section 1123: The Plan Contains All Mandatory Provisions and the Additional Permitted Provisions

Section 1123(a) sets forth seven requirements which every chapter 11 plan must satisfy in order to be confirmed. The first five are incorporated into chapter 9: §§ 1123(a)(1)-(5). *See* 11 U.S.C. § 901(a). Section 901 also incorporates into chapter 9 the permissive provisions of section 1123(b). As demonstrated below, the Plan fully complies with each of these mandatory and permissive provisions.

#### a. Section 1123(a): Mandatory Plan Provisions

##### i) Section 1123(a)(1): The Plan Designates Classes of Claims

Section 1123(a)(1) requires a plan to designate classes of claims, other than claims of a kind specified in Sections 507(a)(2), 507(a)(3), or 507(a)(8), and classes of interests. 11 U.S.C. § 1123(a)(1). The Plan designates 5 classes of claims, none of which contain claims of the kind specified in Sections 507(a)(2), 507(a)(3), or 507(a)(8) and there are no classes of interests under the Plan as there are no equity holders in this Chapter 9 case. *See* Golden Declaration. Therefore, the Plan satisfies the requirements of Section 1123(a)(1).

##### ii) Section 1123(a)(2): The Plan Specifies the Classes that Are not Impaired

The Plan complies with the requirements of Section 1123(a)(2) by specifying in Section IV of the Plan the classes of claims that are not impaired under the Plan. Class 1D is unimpaired under the Plan and is deemed to have accepted the Plan. *See* Golden Declaration.

##### iii) Section 1123(a)(3): The Plan Describes the Treatment of Impaired Classes

The Plan complies with the requirements of Section 1123(a)(3) in that the Plan specifies the treatment of impaired classes of claim. *See* Plan 16-25; Golden Declaration.

### iv)    Section 1123(a)(4): The Plan Provides the Same Treatment for Each Claim or Interest Within a Class

The Plan complies with the requirements of Section 1123(a)(4) in that the Plan provides the same treatment for each claim of a particular class. *See* Plan 16-25. Each class 1 claim receives its own treatment according to its specific class, and each creditor in Classes 2, 3, 4, and 5 receive the same treatment as each other creditor within such class. No party has objected to the Plan on the basis that it does not satisfy Section 1123(a)(4). *See* Golden Declaration.

### v)    Section 1123(a)(5): The Plan Includes Adequate Means for Its Implementation

Section 1123(a)(5) requires that a plan provide adequate means for its implementation. The Plan sets forth the means for its implementation in Section VII. The District will continue to operate pursuant to its normal services and the expanded services explained herein. The District will continue to collect funds from real property tax revenues and general operations. Additionally, the District plans on obtaining funding from (i) federal grants, (ii) the Los Angeles Department of Water and Power, and (iii) the Great Basin Air Pollution Control District. Finally, the District intends to issue revenue bonds, which will remain special revenues. The District believes that the above sources of revenue will be sufficient to fund the Plan. Fife Declaration.

The Financial Projections show that the District will be able to meet Plan obligations while continuing to operate post-confirmation. The projected revenues and expenses in the Plan are reasonable projections and accord with recent financial data from the District since Spiers was hired as CEO. *See* Fife Declaration. The assumptions made in the Financial Projections are reasonable given the District's position and ability to obtain other sources of revenue from operations. As a result, the requirements of § 1123(a)(5) has been met.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

### b.　Section 1123(b): Permitted Plan Provisions

#### i)　Section 1123(b)(1): Impairment/Nonimpairment

Section 1123(b)(1) provides that a plan may impair or leave unimpaired any class of claims, secured or unsecured, or of interests. The Plan specifies which classes are impaired and which classes are unimpaired. *See* Plan 16-25; Golden Declaration.

#### ii)　Section 1123(b)(2): Assumption/Rejection of Executory Contracts and Unimpaired Leases

Section 1123(b)(2) provides that a plan may, subject to Section 365, provide for the assumption, rejection, or assignment of an executory contract or unexpired lease not previously rejected. In compliance with this provision, the Plan provides in Section VI a description of which contracts and leases will be rejected, and assigned and/or assumed pursuant to the Plan. No party has objected to the assumption, assignment, or rejection of any executory lease. *See* Golden Declaration.

#### iii)　Section 1123(b)(3): Claims Belonging to Debtor

Section 1123(b)(3) provides that a plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor, or the retention and enforcement by the debtor of any such claim or interest. The Plan specifies in Section VIII that the District shall retain all of its claims, causes of action, rights of recovery, rights of offset, recoupment rights to refunds, and similar rights. *See* Golden Declaration.

### 5.　Section 1129(a)(2): The District Has Complied With the Applicable Provisions of Title 11

Section 1129(a)(2) provides that a plan may be confirmed only if the plan proponent complies with the applicable provisions of title 11. The principal purpose of Section 1129(a)(2) is to require that the court ascertain whether the debtor has complied with Section 1125, which requires that the Court approve a disclosure statement containing adequate information before acceptances of a plan may be solicited. *See In re Connector 2000 Ass'n, Inc.*, 337 B.R. 752, 763 (Bankr. D.S.C. 2011); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ("the proponent must comply

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000　Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  with the ban on postpetition solicitation of the plan unaccompanied by a written disclosure

2  statement approved by the court in accordance with Code §§ 1125 and 1126"); 6 *Collier* ¶

3  943.03[1][a]. Section 1125(b) provides that a proponent may not solicit acceptances of its

4  plan unless, at or before the time of such solicitation, there is transmitted to the solicitee

5  both a copy of the plan and a court-approved disclosure statement. *See* 11 U.S.C. §

6  1125(b); *Duffy v. U.S. Trustee (In re Cal. Fid.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996).

7      By order dated March 16, 2020 [Dkt. 917], the Court approved the Disclosure

8  Statement for mailing to all creditors. On or prior to March 17, 2020, the District provided

9  notice of the Confirmation Hearing to, and served a copy of the Disclosure Statement,

10  Plan, and related exhibits and declarations on all creditors. *See* Golden Declaration. The

11  District has complied with the requirements of Section 1129(a)(2).

12          6.    **Section 1129(a)(3): The District Has Proposed the Plan in Good**

13                **Faith and Not by Any Means Forbidden by Law**

14      Section 1129(a)(3) requires that a plan must be proposed in good faith and not by

15  any means forbidden by law. "What constitutes 'good faith' is determined on a case by

16  case basis, based upon the totality of the circumstances. The determination of what

17  constitutes 'good faith' based upon the totality of the circumstances in a particular case

18  will necessarily be a *sui generis* face dependent exercise." 6 *Collier* ¶ 943.03[1][b].

19  Generally, a plan is proposed in good faith if there is a likelihood that the plan will achieve

20  a result consistent with the standards prescribed under the Bankruptcy Code. *See*

21  *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070,

22  1074 (9th Cir. 2002). It also requires a fundamental fairness in dealing with one's

23  creditors, *see Sandra L. Stolrow, Inc. v. Stolrow's, Inc. (In re Stolrow's Inc.)*, 84 B.R. 167,

24  172 (B.A.P. 9th Cir. 1988), though that a creditor's contractual rights are adversely

25  affected does not by itself warrant a bad faith finding. *Sylmar Plaza*, 314 F.3d at 1075.

26      In assessing whether a plan was proposed in good faith, the *Mount Carbon* court

27  determined that the test was whether the Plan allowed an insolvent municipality to

28  restructure its debts in order to continue to provide public services." *Mount Carbon Metro.*

*Dist.,* 242 B.R. 18, 41 (Bankr. D. Colo. 1999). The District's objective in proposing the Plan is to restructure its debts and continue providing services to the community, and this Plan achieves that result. *See* Fife Declaration.

The Plan satisfies the good faith standard. As demonstrated by the records of this Court and the facts discussed in the Disclosure Statement and herein, ever since the District filed its petition for relief under Chapter 9, the District's actions have demonstrated good faith. Furthermore, the fact that the Plan is a consensual plan strongly indicates good faith in the proposal of the Plan. The District's management team and its outside professionals have devoted significant time to negotiating with the District's creditors to settle litigation and resolve claims and disputes. The Plan is the result of these arms-length negotiations among various creditors and the District. *See* Golden Declaration. Therefore, the District has satisfied the requirements of Section 1129(a)(3).

**7.     Section 1129(a)(6): The District is Not Subject to the Jurisdiction of Any Government Regulatory Commission Regarding Its Rates**

The District is not subject to any governmental rate-setting commission and, therefore, Section 1129(a)(6) is not applicable.

**8.     Section 1129(a)(8): The Plan Has Not Been Accepted by All Classes Whose Acceptance is Required**

Section 1129(a)(8) requires that each class of claims or interests has accepted a plan or that such class is not impaired under a plan. An impaired class of claims accepts the plan if the holders of at least two-thirds in dollar amount and more than one-half number, in each case of only the voted claims, vote to accept the plan. 11 U.S.C. § 1126(f). A class which is not impaired is deemed to have accepted the plan. *See* 11 U.S.C. § 1126(f).

As reflected in the Adele Declaration consisting of the ballot tabulation, no classes voted against the Plan. The only ballots timely received were votes in favor of the Plan. *See* Adele Declaration. However, the impaired Classes 1A, 1B, and 1C did not return a vote. *See* Adele Declaration. Therefore, Classes 1A, 1B, and 1C did not vote in favor of

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

the Plan and have not accepted the Plan. Nevertheless, as set forth above, the Plan may still be confirmed as it satisfies the "cramdown" provisions of § 1129(b). *See* Golden Declaration.

Class 1D is unimpaired and thus is deemed to have accepted the plan. *See* 11 U.S.C. § 1126(f).

### 9. Section 1129(a)(10): The Plan Has Been Accepted by an Impaired Class

Section 1129(a)(10) requires that at least one class of claims that is impaired under the plan accept the plan, determined without including acceptances of the plan by any insider. Class 1E (1 vote in favor, 0 votes against), Class 1F (1 in favor, 0 against), Class 1G (1 in favor, 0 against), Class 1H (2 in favor, 0 against), Class 2 (3 in favor, 0 against), Class 3 (2 in favor, 0 against), Class 4 (14 in favor, 0 against), and Class 5 (3 in favor, 0 against) each was an impaired class that voted in favor of the Plan. *See* Adele Declaration. None of the above classes is an insider of the District. *See* Golden Declaration.

### B. The Plan Complies with the Provisions of Chapter 9 in Sections 941, 942, and 943(b)

Aside from the provisions of chapter 11 that are incorporated into chapter 9 through Section 943(b)(1), chapter 9 has provisions that specifically address the plan of adjustment. *See* 6 *Collier* ¶ 943.03[2]. These sections are Sections 941, 942, and 943(b).

Section 941 requires that the plan be proposed by the debtor, and Section 942 governs modifications of the plan. *See id.*; *In re Connector 2000 Ass'n*, 447 B.R. at 764. The Plan meets the requirement Section 941. The Plan additionally meets the requirement of Section 942.

#### 1. The Plan Satisfies the Requirements of Section 943(b)

Section 943(b) provides that the Court shall confirm the Plan if the seven conditions contained therein are met.

##### a. Compliance with Section 943(b)(1)

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Section 943(b)(1) requires that the Plan must meet the requirements of chapter 11 made applicable to chapter 9. The District has shown herein the Plan's compliance with applicable chapter 11 provisions, therefore the Plan complies with Section 943(b)(1). *See supra* Section III.A.

b.     Compliance with Section 943(b)(2)

Section 943(b)(2) requires the Plan comply with the plan confirmation requirements expressly provided in chapter 9. The District has shown herein the Plan's compliance with applicable chapter 9 provisions, therefore the Plan complies with Section 943(b)(2). *See* Golden Declaration.

c.     Compliance with Section 943(b)(3)

Section 943(b)(3) requires that all amounts to be paid by the District or by any person for services or expenses in this case have been fully disclosed and are reasonable. While this section requires the disclosure of payments to be made by the District, "it does not authorize the allowance of, or require the payment of, compensation for services provided to, or reimbursement of expenses incurred by, the debtor. The debtor's obligation to pay for services rendered and expenses incurred is governed by non-bankruptcy law." *Collier* ¶ 943.03[3]. The District's Disclosure Statement discloses the amount of fees owed to professionals from the Petition Date through the filing of the Disclosure Statement.[5] *See* Golden Declaration.

The District is making a nonmaterial modification to the Plan and Disclosure Statement whereby, each professional is authorized to file a request for a court determination of reasonableness of its fees by Friday, April 24, 2020, in order to allow the

---

[5] The District does not consent to the Bankruptcy Court adjudicating whether any other individual or entity constitutes a Professional or may assert a Professional Claim. The District solely consents to the Bankruptcy Court adjudicating the reasonableness of the services rendered and costs incurred by the Professionals for which compensation and/or reimbursement is sought.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Court to determine reasonableness of professional fees.[67] All professionals and the

2  District have agreed to this nonmaterial modification. The additional 5 days will not

3  prejudice any other creditors as the amount of the professional fees was already

4  disclosed. The Plan as modified still satisfies the confirmation requirements set forth in 11

5  U.S.C. §§ 1122, 1123, and 1129.

6               d.      Compliance with Section 943(b)(4)

7         Section 943(b)(4) prevents confirmation of a plan of adjustment that requires the

8  debtor to take any action prohibited by law. This section is intended to prevent chapter 9

9  debtors from using chapter 9 cases for the purpose of circumventing compliance with

10  state law after confirmation. *See In re Sanitary & Improvement Dist. No. 7*, 98 B.R. 970

11  (Bankr. D. Neb. 1989); *Collier* ¶ 943.03[4]. The District intends to comply with all laws,

12  regulations, and ordinances following confirmation, and nothing in the Plan proposes an

13  action in violation of existing applicable laws. Accordingly, the District has satisfied the

14  requirements of Section 943(b)(4).

15               e.      Compliance with Section 943(b)(5)

16

17  _____

18       **[6]** The Plan currently provides that requests for a determination of reasonableness of professional claims must be filed 30 days before confirmation (i.e., April 19, 2020).

19       **[7]** A plan proponent may modify the plan, without leave of court, anytime prior to confirmation. *See*
20  11 U.S.C. § 1127(a). The plan as modified, must meet the requirements of §§ 1122, 1123 and 1125 of the Bankruptcy Code. *See* 11 U.S.C. § 1127(a). FRBP 3019 expressly authorizes the modification of a plan
21  after acceptance, but prior to confirmation, without the resolicitation of votes. FRBP 3019 provides, in relevant part, that:

22           If the court finds after hearing . . . that the proposed modification does not <u>adversely change</u> the treatment of the claim of any creditor or the interest of any equity security holder who has
         not accepted in writing the modification, it shall be deemed accepted by all creditors and
23           equity security holders who have previously accepted the plan.

24       The term "adverse change" is not defined by the Bankruptcy Code or the Bankruptcy Rules. However, courts hold that an adverse change must also be "material" before additional disclosure and
25  solicitation are required. *See In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988). "A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity,
26  if it knew of the modification, would be likely to reconsider its acceptance." *Id.* at 824 (citation omitted). In sum, a plan may be modified prior to confirmation without a new disclosure statement and the resolicitation
27  of votes, if the modification does not materially and adversely affect the rights of creditors who accepted the plan. *See In re Rhead*, 179 B.R. 169, 176 (Bankr. D. Ariz. 1995) (stating that a new disclosure statement
28  and resolicitation of votes are required only if the proposed modification is material); *see also American Solar King*, 90 B.R. at 823 (same).

No creditor filed objection to the Plan as of the date of the filing of this Motion. As a result, none of the creditors have objected to the priority afforded any claims under the Plan, or lack thereof. Section 943(b)(5) provides that a plan cannot be confirmed unless it provides for the payment in full in cash on the effective date of the plan of all claims specified in Section 507(a)(2). Section 507(a)(2) in turn references (i) claims of any Federal Reserve bank for loans authorized under section 13(3) of the Federal Reserve Act, (ii) fees and charges assessed against the estate under chapter 123 of title 28 of the U.S. Code, and (iii) administrative claims allowed under Section 503(b). The District is not aware of any claims based upon Federal Reserve bank loans authorized under section 13(3) of the Federal Reserve Act, or fees and charges assessed under chapter 123 of title 28.

Administrative claims pursuant to 507(a)(2) are extremely limited in chapter 9. Administrative expenses in chapter 9 are narrowly construed. *In re Orange County*, 179 B.R. 195, 201 (Bankr. C.D. Cal. 1995); *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995). In order to be entitled to administrative priority, (1) the claimant must be a creditor; and (2) the creditor must have made a substantial contribution to the chapter 9 case. *Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096 (9th Cir. 2004). Moreover, even if a claimant can establish that it made a substantial contribution to a case under Chapter 9, the amount of its administrative claim is limited to the actual necessary expense incurred by that creditor. *See In re Connolly North America, LLC*, 802 F.3d 810 (6th Cir. 2015). Therefore, the only allowed administrative expenses pursuant to section 507(a)(2) are for claims incurred by a creditor making a substantial contribution to the chapter 9 case.

To the extent that § 503(b)(1)(A) is implicated as a basis for administrative priority with respect to any claim, there are no administrative claims that arise from § 503(b)(1)(A) in chapter 9. Section 503(b)(1)(A) states that "there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including---(1)(A) the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 actual, necessary costs and expenses of preserving the estate including—(i) wages,

2 salaries, and commissions for services rendered after the commencement of the case. . .

3 ." 11 U.S.C. § 503(b)(1)(A). There is no bankruptcy estate in chapter 9. *Smith v. Kennedy*

4 *(In re Smith)*, 235 F.3d 472, 477-478 (9th Cir. 2000); *In re JZ L.L.C.*, 371 B.R. 412, 419

5 n.4 (9th Cir. B.A.P. 2007); *In re Jefferson County, Ala.*, 484 B.R. 427, 460 (Bankr. N.D.

6 Alabama 2012); *In re Valley Health System*, 429 B.R. 692 (Bankr. C.D. Cal. 2010); *In re*

7 *City of Vallejo*, 403 B.R. 72, 78 n.2 (Bankr. E.D. Cal. 2009). Therefore, there are no

8 administrative claims pursuant to § 503(b)(1)(A) in chapter 9 bankruptcies since there, by

9 definition, cannot be any preservation of the estate, since none exists.

10       This conclusion is in line with the only legal authority on the issue. Ongoing

11 operating expenses (generally found to be administrative claims in Chapter 11 cases

12 pursuant to 11 U.S.C. § 503(b)(1)(A)) are not included as administrative expenses. *In re*

13 *New York City OffTrack Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010)

14 ("Because a chapter 9 debtor's property remains its own and does not inure into a

15 bankruptcy estate as provided by section 541 of the Bankruptcy Code, there can be no

16 administrative expenses for 'the actual and necessary costs of preserving the estate' as

17 contemplated by section 503(b)(1)(A) of the Bankruptcy Code."). Leading treatises agree

18 that operating expenses (i.e. "actual, necessary costs and expenses of preserving the

19 estate") are not entitled to administrative priority in Chapter 9. *Id.* at 142 ("Collier observes

20 that because there is no estate in a chapter 9 case, administrative expense claims under

21 section 503 must be limited to 'expenses incurred in connection with the chapter 9 case

22 itself' and not operating expenses. 6 COLLIER ON BANKRUPTCY ¶ 901.04[13][a]. Norton

23 agrees, observing in passing that no operating administrative expenses are permitted in a

24 chapter 9 bankruptcy case. 5 WILLIAM J. NORTON, JR. WILLIAM L. NORTON III, NORTON

25 BANKRUPTCY LAW AND PRACTICE § 90:3."). This conclusion is consistent with, and indeed is

26 mandated by § 904, which prevents the Court from exercising jurisdiction over a

27 municipality's use of its revenues, absent the municipality's consent. *Ass'n of Retired*

28 *Employees of the City of Stockton v. City of Stockton (In re City of Stockton)*, 478 B.R. 8,

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

13 (Bankr. E.D. Cal. 2012); *In re Valley Health Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010).

Advanced Medical Personnel Services filed proof of claim no. 53 for an administrative claim. The District disputes the administrative priority for the claim and will be filing an objection to Advanced Medical Personnel Services' claim of priority. Additionally, Canon Financial Services filed an administrative claim on April 14, 2020, which the Court has indicated a motion needs to be filed and set for hearing. To the extent such a motion is filed, the District will so oppose and if no motion is filed, the District will object to the claim. Finally, on April 17, 2020, creditor Delta Flex Travelers, LLC, filed a request for an administrative claim, and set a hearing on the same for May 19, 2020 at 9:00 a.m. The District has reviewed the request for an administrative claim, and will oppose the request. *See* Golden Declaration.

The Plan's treatment of claims arising under Section 503(b) is consistent with the bankruptcy code. No party has raised any objection to the treatment of any post-petition claim under the Plan or the limited scope of administrative priority provided under the Plan. *See* Golden Declaration. As a result, the Plan satisfies the requirements of Section 943(b)(5).

### f.      Compliance with Section 943(b)(6)

Section 943(b)(6) requires that any regulatory or electoral approval necessary under applicable non-bankruptcy law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned un such approval. The District does not need to obtain any regulatory or electoral approval under applicable non-bankruptcy law in order to carry out the provisions of the Plan. Thus, the Plan satisfies the requirements of Section 943(b)(6).

### C.      The Plan is in the Best Interests of Creditors and is Feasible (Section 943(b)(7))

Section 943(b)(7) requires that the court find that "the plan is in the best interests of creditors and is feasible." 11 U.S.C. § 943(b)(7). As described below, the Plan is in the

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    best interest of creditors because the District has proposed a Plan that is a far better

2    alternative for the District's creditors, collectively, than dismissal of the chapter 9 case.

3    The Plan is feasible because the District's long-range financial plan demonstrates the

4    District's ability to make the payments required under the Plan and still continue to provide

5    healthcare services.

6        The Plan is far better than any alternative. The District has a fundamental duty to

7    its residents to provide them with healthcare critical access services. The principal

8    purpose of a chapter 9 debt restructuring is the continued provision of public services. *In*

9    *re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999). Unlike other

10    chapters of the Bankruptcy Code, chapter 9 does not attempt to balance the rights of the

11    debtor and its creditors, but rather attempts to first meet the special needs of a municipal

12    debtor. *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991).

13    Chapter 9 is designed to assist municipalities in providing vital government services by

14    "providing the debtor with an array of bankruptcy powers to enable it to achieve financial

15    rehabilitation with very few, if any, corresponding limitations and duties of the type to

16    which a Chapter 11 debtor is subject." *Id.* at 224.

17        In proposing a chapter 9 plan for the adjustment of debts, the "debtor must retain

18    sufficient funds with which to operate and to make necessary improvements in and to

19    maintain its facilities." *Collier* ¶ 943.03[7][a]. To hold otherwise would be to place creditor

20    recoveries over the health of the District's residents, which would be antithetical to the

21    purposes of chapter 9. *See Mount Carbon*, 242 B.R. at 41 (holding that a chapter 9 plan

22    was not proposed in good faith and was not feasible because it provided for the

23    satisfaction of debt over the provision of governmental services; stating that the legislative

24    purpose underlying chapter 9 "is to allow an insolvent municipality to restructure its debts

25    in order to continue to provide public services"); *In re Barnwell Cnty. Hosp.*, 459 B.R. 903,

26    907 (Bankr. D.S.C. 2011) (purpose of chapter 9 is to allow municipalities the opportunity

27    to remain in existence through debt adjustment); *New Magma Irr. & Drainage Dist. V. Bd.*

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  *Of Supervisors (In re New Magma Irr. & Drainage Dist.)*, 193 B.R. 528, 532 (Bankr. D.

2  Ariz. 1994) (ultimate purpose of chapter 9 is to beneficially affect the debtor's citizens).

3  Courts assessing plans of adjustment in chapter 9 have emphasized the unique

4  need to consider the general municipal welfare when addressing issues of plan

5  confirmation. *See e.g., Corcoran*, 233 B.R. at 454 (describing the area's economic woes

6  and noting that "[t]he hospital is very important to the community of Corcoran" and that it

7  was "an essential element to the survival of Corcoran as a community"); *Barnwell*, 471

8  B.R. at 869 ("[O]f particular importance to the Court is that the Plan preserves the

9  availability of healthcare services to citizens and patients in the County"). An overarching

10 goal of chapter 9 is to relieve the municipality's residents from the effects of further

11 declining services caused by the enormity of the claims pending against the District, by

12 restructuring that debt. *Collier* ¶ 943.03[7][a].

13        1.    **The Plan is in the Best Interests of the District's Creditors**

14 Given the clear purposes of chapter 9, the best interests of creditors test of Section

15 943(b)(7) requires the Court to make a determination of whether or not the plan as

16 proposed is better than the alternatives. *In re Sanitary & Improvement Dist., No. 7*, 98

17 B.R. 970, 974 (Bankr. D. Neb. 1989). This is a low standard, and any possibility of a

18 payment under a chapter 9 plan is often perceived by creditors as a better alternative than

19 dismissal. *Mount Carbon*, 242 B.R. at 34. Since liquidation of a municipality is not

20 contemplated under chapter 9, and dismissal of the case is the only real alternative to

21 confirmation of a plan, courts require the municipal debtor to show that its plan of

22 adjustment is a better alternative to the creditors than dismissal of the case. *Cnty. Of*

23 *Orange v. Merril Lynch & Co. (In re Cnty. Of Orange)*, 191 B.R. 1005, 1020 (Bankr. C.D.

24 Cal. 1996); *Collier* ¶ 943.03[7].

25 Unlike the best interests test under chapter 11, where a plan proponent must show

26 that each objecting creditor will receive under the plan at least as much as the creditor

27 would receive in a chapter 7 liquidation, no such comparison is available in chapter 9

28 because municipalities cannot be liquidated. Therefore, the best interests test in chapter 9

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  compares what creditors, as a group, receive under the plan, compared to what they

2  could receive if the case were dismissed.

3              a.     Creditors Will Receive More Under the Plan Than If the Case

4                     Was Dismissed

5       The only alternative to confirmation of the Plan is dismissal of the case. That result

6  would be chaos because creditors would be forced to fend for themselves in a frenetic

7  scramble to litigate their claims and attempt to collect (ultimately futilely) on the District. As

8  the Supreme Court held in the chapter 9 case of *Faitoute Iron & Steel Co. v. City of

9  Asbury Park*, 316 U.S. 502, 510 (1942), this "policy of every man for himself is destructive

10  of the potential resources upon which rests the taxing power which in actual fact

11  constitutes the security for unsecured obligations outstanding to a city." The race to the

12  courthouse is not a viable alternative. "The experience of the two modern periods of

13  municipal defaults, after the depressions of '73 and '93, shows that the right to enforce

14  claims against the city through mandamus is the empty right to litigate." *Id.*

15       The District submits that the Plan provides the District's creditor with recoveries

16  greater than they would obtain outside of a bankruptcy case. The creditors appear to have

17  also recognized this, and have overwhelming voted in favor of the Plan. *See* Adele

18  Declaration. The Plan has no opposition or objection, and has been achieved after arms-

19  length negotiations between represented parties. The deals and agreements entered into

20  by the District have, as a result, allowed the District to formulate a plan whereby the

21  District will remain operating while effectuating a significant distribution to unsecured

22  creditors. Additionally, the District has worked with its secured creditors and others to

23  work on payment plans whereby the District will repay significant amounts on all of its

24  other debt. As a result of the District's efforts throughout the course of the bankruptcy

25  case, the District's operations have improved and the District has shown sustained growth

26  and profitability since Spiers' hiring. *See* Fife Declaration. The District's cash on hand is

27  minimal compared to the District's projected payments from operations throughout the

28  Plan. The District estimates that it will generate approximately $15,000,000 per year by

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

2026, and will be able to use these operations to fund the Plan. *See* Fife Declaration. Furthermore, the District is projected to receive revenue from other sources that can be used to fund the Plan. As a result, the District will be able to make such a distribution to creditors as proposed by the Plan only due to the ability of the District to continue operating. *See* Fife Declaration.

As a result, dismissal would not be in the best interests of creditors. The District has achieved various settlements and agreements that are contingent upon the confirmation of the Plan. In the case of dismissal, the District would be subject to various litigation as a result of the failure to effectuate such agreements. *See* Golden Declaration. Between such litigation and the secured debts on the District's assets and real property, the District would not be able to operate and unsecured creditors would likely receive very little, if anything, on behalf of their legitimate claims. The District's current assets are minimal compared to the payments proposed through the Plan. *See* Fife Declaration.

The Plan easily passes muster as a "reasonable effort" to satisfy the claims of the District's creditors, and the Plan is certainly in the best interests of creditors compared to dismissal of the chapter 9 case.

2.    **The Plan is Feasible**

A chapter 9 is feasible if it shows that the debtor can make the payments promised under the plan and maintain post-confirmation operations. *Collier* ¶ 943.03[7][b]. For the Court to find that the District's Plan is feasible, the District needs not prove that success is guaranteed; rather, it must establish that the assumptions and projections underlying the Plan are reasonable and that, as a result the Plan is more likely than not to succeed. *Prime Healthcare Mgmt., Inc. v. Valley Health Sys. (In re Valley Health Sys.)*, 429 B.R. 692, 711 (Bankr. C.D. Cal. 2010) (chapter 9 plan is feasible if "it offers a reasonable prospect of success and is workable"). To prove that the Plan is feasible, the District must show that the District will be able to both maintain healthcare services at the level it deems necessary to the continued viability of the District, and make payments set forth in the Plan. *See e.g., Mount Carbon*, 242 B.R. at 34-35; *Corcoran Hosp. Dist.*, 233 B.R. at

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

453-454 (finding that chapter 9 plan was feasible based on reliable testimony that the debtor would be able to make the payments provided under the plan and that the plan was based on reasonable projections of future income and expenses); *In re Connector 2000 Ass'n*, 447 B.R. 752, 765-766 (Bankr. D.S.C. 2011) (chapter 9 plan was feasible based on reasonable projections regarding debtor's ability to make payments under the plan).

Here, the District's financial projections attached as Exhibit 4 to the Plan represents just the sort of balance that Congress intended the feasibility test to achieve. In preparing its financial projections, the District considered as many contingencies as possible in order to develop the most realistic revenue and expense projections it could. *See* Fife Declaration. Where necessary, the District retained outside professionals with relevant expertise and incorporated their input into the financial projections.

The financial projections are a set of projections that project revenues and expenditures, anticipated cost savings and future revenue enhancement actions necessary for the District to remain cash and budget solvent while providing an adequate level of healthcare to the District's residents while at the same time providing for the District's legitimate creditors. The beginning cash balance is based upon the District's books and records, and the projected expenditures and revenues are taken from recent actual data, to capture an accurate actual financial situation of the District while incorporating the recent changes to the District's operations that have led to substantial increase in revenue with a corresponding decrease in expenses.

The District's financial projections contemplate four separate scenarios, based upon the outcome of the litigation with Optum Bank. In all four scenarios, the following assumptions were made. The projections all contemplate that a determination on the amount of Optum's Claim, asserted to be $2,556,473.27, and whether Optum has any security interest will be decided in approximately August 2020. In each of the scenarios, the District can cashflow. The four different scenarios are outlined in full detail above, however the four scenarios contemplate: (1) that the Court finds that Optum is entitled to a

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

partially secured claim of $225,000; (2) that the Court find that the Optum Claim is fully

secured; (3) that the Court finds that Optum is entitled to a partially secured claim of

$1,425,000; or (4) that the Court finds that Optum has no claim. In any of these scenarios,

the District's Financial projections show that the District can make Plan payments as

proposed. *See* Fife Declaration.

While the financial projections are mere projections of the future, which is

inherently speculative and not certain, the financial projections are reasonable and

appropriate to show that the District will have the resources necessary to fund the Plan

and carry out the District's mission of providing healthcare services to its residents. The

District will continue to monitor the risk factors identified in the Disclosure Statement as

well as those factors outside its control that impact the finances of the District. The

financial projections on which the Plan is predicated are realistic. The financial projections

show that the District is likely able to make the payments set forth in the Plan and still be

able to continue to fulfill its mission to provide healthcare services to the District's

residents.

Finally, on February 17, 2016, the Court entered an order directing the appointment

of a patient care ombudsman [Dkt. 82]. On March 4, 2016, the Office of the United States

Trustee filed a notice indicating that Joseph Rodrigues was appointed as patient care

ombudsman [Dkt. 93]. On April 10, 2020 [Dkt. 921] the patient care ombudsman filed his

26th Report of the Patient Care Ombudsman. The Ombudsman noted that the District had

an occupancy of 28 versus a capacity of 33. The Ombudsman noted the local

Ombudsman Program had not received any concerns, that the facility was clean, that

residents were well-groomed, that the residents were served food that appeared fresh and

smelled appetizing, and that the District explained what changes were made in light of the

COVID-19 pandemic. The Ombudsman reported that a resident wanted furnishings to

store clothing. In response, the District provided the resident with a dresser, and the

resident expressed being satisfied. As a result, there is little doubt that the District can

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  continue to maintain its healthcare services at the level necessary to continue the viability

2  of the District. Therefore, the Plan is feasible, and should be confirmed.

3  **IV.    CONCLUSION**

4        For all the reasons set forth above, the Plan meets all of the requirements set forth

5  in Section 943(b) and should be confirmed.

6

7  Dated:  April 21, 2020          WEILAND GOLDEN GOODRICH LLP

8                                  By:    */s/ Jeffrey I. Golden*

9                                      Jeffrey I. Golden

10                                      Attorneys for Debtor
Southern Inyo Healthcare
District

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1269962.1              34            MEMORANDUM OF LAW